

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## AMARILLO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY − 1 2023

CLERK, U.S. DISTRICT COURT
By_____ Deputy

AARON ABADI,

      Plaintiff

**2−23 C V − 0 7 4 − Z**

CASE # _____

V.

AMERICAN AIRLINES GROUP, INC.,
PJSC AEROFLOT – RUSSIAN AIRLINES
DBA AEROFLOT, AEROVÍAS DE
MÉXICO, S.A. DE C.V. DBA
AEROMEXICO, ALLEGIANT AIR, LLC,
ASIANA AIRLINES, AVIANCA S.A., AZUL
LINHAS AÉREAS BRASILEIRAS S/A,
AUSTRIAN AIRLINES AG, AIR CANADA,
AIR CHINA LIMITED, BRITISH AIRWAYS
PLC, CATHAY PACIFIC AIRWAYS LTD.,
CHINA SOUTHERN AIRLINES COMPANY
LIMITED, DELTA AIR LINES, INC.,
EL AL ISRAEL AIRLINES LTD.,
EMIRATES, ETIHAD AIRWAYS PJSC
DBA ETIHAD AIRWAYS COMPANY,
EVA AIRWAYS CORPORATION,
FINNAIR OYJ, FRONTIER AIRLINES, INC.,
GULF AIR HOLDING B.S.C.,
IBERIA LÍNEAS AÉREAS DE ESPAÑA,

S.A. OPERADORA, SOCIEDAD
UNIPERSONAL, DBA IBERIA AIRLINES,
JETBLUE AIRWAYS CORPORATION,
ALIA – THE ROYAL JORDANIAN
AIRLINES COMPANY DBA ROYAL
JORDANIAN AIRLINES, KENYA AIRWAYS,
KOREAN AIR LINES CO., LTD,
LATAM AIRLINES GROUP S.A.,
LOT POLISH AIRLINES SA, LUFTHANSA
SYSTEMS AMERICAS, INC., SOUTHERN
AIRWAYS EXPRESS, LLC DBA MOKULELE
AIRLINES, PHILIPPINE AIRLINES,
QATAR AIRWAYS Q.C.S.C. DBA QUATAR
AIRWAYS Q.C.S.C. CORPORATION,
ROYAL AIR MAROC, LTD.,
SCANDINAVIAN AIRLINES OF NORTH
AMERICA INC. DBA SAS, SILVER
AIRWAYS, LLC, SINGAPORE AIRLINES,
SOUTHWEST AIRLINES CO.,  SPIRIT
AIRLINES, INC., SUN COUNTRY, INC.
DBA SUN COUNTRY AIRLINES,
SWISS INTERNATIONAL AIR LINES AG.,
AIR TAHITI NUI, TAP PORTUGAL, INC.,
TURKISH AIRLINES, INC., UNITED
AIRLINES, INC., FAST COLOMBIA S.A.S.
DBA VIVA AIR COLOMBIA,
CONCESIONARIA VUELA COMPAÑÍA

DE AVIACIÓN, S.A.B. DE C.V. DBA
VOLARIS, MATTHEW ROBERTS,
ROY GOLDBERG, MIGUEL MOREL,
NATHALIE SIMON, MEDAIRE, INC.,
CENTER FOR EMERGENCY MEDICINE OF
WESTERN PENNSYLVANIA, INC., DBA
 STATMD, ROBERT C. LAND, DEBBIE
CASTLETON, ANITA AYALA, JOSEPH R.
BIDEN, JR., PRESIDENT OF THE UNITED
STATES (IN HIS OFFICIAL CAPACITY)
 NATIONAL INSTITUTES OF HEALTH,
ANTHONY STEPHEN FAUCI (FORMERLY
OF NIH IN HIS INDIVIDUAL  CAPACITY),
 CENTERS FOR DISEASE CONTROL &
PREVENTION, ROBERT RAY REDFIELD
JR.  (FORMERLY OF CDC IN HIS
INDIVIDUAL CAPACITY), US
DEPARTMENT OF HEALTH & HUMAN
SERVICES, AND NUMEROUS UNNAMED
EMPLOYEES/REPRESENTATIVES
OF THE ABOVE DEFENDANTS AND
OTHER CONSPIRATORS AND
VIOLATORS TO BE DETERMINED
THROUGH DISCOVERY,

          Defendants.

**<u>JURY TRIAL REQUESTED</u>**

## COMPLAINT AND JURY DEMAND

Plaintiff, Aaron Abadi, brings this action pro se, against the defendants, which are an overwhelming majority of the airlines that fly to, from, and within the United States, their employees and representatives, including two attorneys representing and assisting the airlines. Additionally, two medical organizations, Medaire and STAT-MD, that assist and enable various airlines with their medical policies and related medical needs and guidance. This complaint also includes federal defendants that facilitated, assisted, aided and abetted, and caused the problems in the first place.

Plaintiff is alleging that these defendants all discriminated against him due to his disability which causes him not to be able to wear a mask, by not allowing him to travel, and/or by requiring him to comply with multiple demands not required of non-disabled people, and not necessary for safety reasons. They conspired to deny him his civil rights, and neglected to prevent interference with his civil rights, when they had that opportunity.

Plaintiff suffered significant losses due to these discriminations, including serious business and employment related losses, emotional and personal distress, the loss of his legal rights, the suffering that all this caused, and other significant

and/or nominal losses. Defendants directly caused these injuries and are jointly and severally liable for the damages caused.

Plaintiff requests injunctive relief, declaratory relief, compensatory damages, punitive damages, and any other relief that the court shall determine, and/or any relief that will become apparent and appropriate upon the exchange of discovery.

Plaintiff is a pro se litigant and hopes that this complaint will be reviewed liberally with that in mind. Plaintiff has put his best efforts to be clear and identify the causes of action with their relation to each defendant. Plaintiff understands that no one wants to see shotgun pleadings or any type of confusion, as it can be difficult to understand and thus to respond. This complaint should be clear enough, although pretty long. My apologies in advance. Thank you in advance for your understanding.

## PARTIES

1)     Plaintiff, Aaron Abadi, is an American citizen, and is a citizen of the State of New York. He resides in the City of New York. His address is 82 Nassau Street, Apt. 140, New York, NY 10038.

2)     Defendant, American Airlines Group, Inc.is incorporated in the State of Delaware, and headquarters is located at 1 Skyview Drive, Fort Worth, Texas

76155 (817)-963-1234. This is located in Tarrant County, which is under the jurisdiction of the Northern District of Texas. It has significant and consistent business in Amarillo, Texas, through its flights from the Amarillo Airport. Their address there is 10801 Airport Blvd Amarillo, TX 79111.

3)   Defendant PJSC AEROFLOT – RUSSIAN AIRLINES DBA AEROFLOT ("Aeroflot"), is a foreign airline with flights to and from the United States. Passengers can book flights to and from Texas, that is then serviced through partner airlines, for the part of the journey that this airline doesn't operate its own planes. Until recently, Aeroflot had a code-sharing arrangement with Delta Airlines. Their United States registered address is 254 SEQUAMS LANE CENTER, WEST ISLIP, NY, UNITED STATES, 11795.

4)   Defendants Aerovías de México, S.A. de C.V. DBA Aeromexico Airlines ("Aeromexico"), is a foreign airline with flights to and from the United States. They operate flights out of Dallas Fort Worth Airport, and passengers can book flights with them from Amarillo, which would be serviced by partner airlines, for the part of the journey that this airline doesn't operate its own planes. Their Texas registered address is 2702 N LOOP W STE 410 HOUSTON, TX 77092-8904. They have a location in the Dallas Fort Worth Airport, Terminal E.

5)   Allegiant Air, LLC, ("Allegiant"), is a domestic airline in the United States headquartered in Las Vegas, NV. It is wholly owned by its parent company,

Allegiant Travel Company, incorporated in Nevada. It has flight routes to and from

Texas. Its registered address in Texas is 211 E. 7TH STREET SUITE 620

AUSTIN, TX 78701. It has significant and consistent business in Amarillo, Texas,

through its flights from the Amarillo Airport. Their address there is 10801 Airport

Blvd Amarillo, TX 79111.

6)      Defendant Asiana Airlines Inc. ("Asiana") is a South Korean airline

headquartered in Seoul, South Korea. It is a foreign airline with flights to and from

the United States. Passengers can book flights to and from Northern Texas

airports, that is then serviced through partner airlines, for the part of the journey

that this airline doesn't operate its own planes. American Airlines is a partner

airline with flights from Amarillo & Dallas. Its USA registered address is at 3530

WILSHIRE BLVD, 1700, LOS ANGLES, CA, UNITED STATES, 90010.

7)      Defendant AVIANCA S.A., ("Avianca"),  is a foreign airline with

flights to and from the United States. Passengers can book flights to and from

Texas, that is then serviced through partner airlines, for the part of the journey that

this airline doesn't operate its own planes. They have their own operations in

Houston Texas that are located at Terminal D at Houston Airport (IAH). Their

Texas registered address is 501 THE MAIN BLDG HOUSTON, TX 77032. Their

Dallas address is 1639 W. 23rd St. Ste.300 DFW Airport, TX 75261.

8)      Defendant Azul Linhas Aéreas Brasileiras S/A ("Azul"), is a Brazilian

carrier based in Barueri, a suburb of São Paulo.  It is a foreign airline with flights

to and from the United States.  Passengers can book flights to and from Northern

Texas, that are then serviced through partner airlines, for the part of the journey

that this airline doesn't operate its own planes. Its USA registered address is at 28

LIBERTY STREET, NEW YORK, NY, 10005.  Additionally, Sabre Corporation

(NASDAQ: SABR), the leading technology provider to the global travel industry,

has signed an agreement with Azul Linhas Aereas Brasileiras to distribute Azul's

fares via the Sabre GDS, which is based in Southlake, Texas, not far from Dallas

Fort Worth Airport.

9)     Defendant Austrian Airlines AG ("Austrian"), is a foreign airline

based in Austria. It flies to and from the United States, and passengers can book

flights to and from Amarillo, Texas on Austrian's website and they will fly them

through partner airlines, for the part of the journey that this airline doesn't operate

its own planes.  United Airlines is one of their partner airlines.   Its U.S. address is

c/o LEGAL DEPARTMENT, 1400 RXR PLAZA WEST TOWER, UNIONDALE,

NY, UNITED STATES, 11556.

10)    Defendant Air Canada is the flag carrier and the largest airline of

Canada by fleet size and passengers carried. Air Canada maintains its headquarters

in Saint-Laurent, Montreal, Quebec. Air Canada has flights to and from the United

States, including to DFW Airport in Texas. Passengers can book flights to and

from Amarillo, Texas on this airline's website and they will fly them through partner airlines, for the part of the journey that this airline doesn't operate its own planes.  United Airlines is one of their partner airlines.   Its local address in Dallas, Texas is at Terminal E at Dallas Fort Worth Airport (DFW), DFW Airport, TX, 75261.

11)   Defendant AIR CHINA LIMITED ("Air China"), is a foreign airline with flights to and from the United States.  Passengers can book flights to and from Texas on their website, that is then serviced through partner airlines, for the part of the journey that this airline doesn't operate its own planes. Their Texas registered address is 701 BRAZOS SUITE 1050 AUSTIN, TX 78701. As per their own website, they have two offices in Houston, TX, one at 3800 Buffalo Speedway Suite 405, Houston, TX 77098, and the other at Houston Airport Office Terminal D, George Bush Intercontinental Airport, Houston, TX 77032.

12)   Defendant British Airways PLC ("British Air") is a foreign airline based in the United Kingdom. They are based at Waterside Box 365, Harmondsworth, United Kingdom. They have a New York office at 11 West 42nd Street, 24th Floor, New York, NY 10036. It flies to and from the United States, and passengers can book flights to and from Amarillo, Texas on British Air's website and they will fly them through partner airlines, for the part of the journey that this airline doesn't operate its own planes.  American Airlines is one of their partner

airlines.   They operate direct flights under their own flag out of Houston, Texas. Their registered address in Northern Texas is, 1999 BRYAN ST., STE. 900 DALLAS, TX 75201.

13)   Defendant Cathay Pacific Airways Ltd. ("Cathay Pacific"), more widely known as Cathay Pacific, is the flag carrier of Hong Kong, with its head office and main hub located at Hong Kong International Airport. It has operations in Northern Texas, and its Texas office is located at SUITE 301, 2520 WEST AIRFIELD DRIVE DFW AIRPORT, TX 75261.

14)   Defendant China Southern Airlines Company Limited (China Southern") is an airline headquartered in Baiyun District, Guangzhou, Guangdong Province and is the largest airline in China. It is a foreign airline with flights to and from the United States.  Passengers can book flights to and from Northern Texas, that are then serviced through partner airlines, for the part of the journey that this airline doesn't operate its own planes. American Airlines is one of their partner airlines. Their office in New York is at 295 MADISON AVENUE, SUITE 4500, NEW YORK, NY, UNITED STATES, 10017.

15)   Defendant Delta Air Lines, Inc. ("Delta"), is one of the major airlines of the United States and a legacy carrier. One of the world's oldest airlines in operation, Delta is incorporated in Delaware, and headquartered in Atlanta, Georgia. It has operations in DFW Airport in Northern Texas. Its registered

address in Texas is 211 E. 7TH STREET SUITE 620 AUSTIN, TX 78701.

16)     Defendant, EL AL ISRAEL AIRLINES LTD. ("ELAL"), is a foreign airline with flights to and from the United States. Passengers can book flights to and from Northern Texas, that are then serviced through partner airlines, for the part of the journey that this airline doesn't operate its own planes. American is one of their partner airlines. They operate codeshare flights to and from Dallas Fort Worth Airport. Its USA office is currently located at New York Sales office Address: 100 Wall Street, 4th floor, New York, NY 10005 Phone (212) 852 0708.

17)     Defendant Emirates is an international airline based in Dubai, in the United Arab Emirates that has multiple flights to and from the United States.  They have non-stop flights from Dallas to Dubai, UAE. Emirates uses Terminal D at Dallas Fort Worth Airport (DFW). Their Texas address is at 3700 North Terminal Road George Bush Intercontinental Airport, Terminal D, Houston, TX.77032.

18)     Defendant ETIHAD AIRWAYS PJSC DBA ETIHAD AIRWAYS COMPANY ("Etihad") is an international airline based in Khalifa City A, near Abu Dhabi City, in the United Arab Emirates. Its Texas registered address is 211 E. 7TH STREET, SUITE 620 AUSTIN, TX 78701. Passengers can book flights to and from Northern Texas, that are then serviced through partner airlines, for the part of the journey that this airline doesn't operate its own planes. American is one of their partner airlines. Its Texas operations are located at 3200 E. Airfield Drive

DFW Airport, Texas 75261.

19)     Defendant Eva Airways Corporation ("EVA") is a foreign airline with operations and flights to and from the United States.  Passengers can book flights to and from Northern Texas, that are then serviced through partner airlines, for the part of the journey that this airline doesn't operate its own planes. Alaska Airlines is one of their partner airlines. Its registered address in Texas is 1999 BRYAN ST., STE. 900 DALLAS, TX 75201

20)     Defendant Finnair OYJ, ("Finnair"), is a foreign airline based in Finland. It flies to and from the United States, and passengers can book flights on their website, to and from Texas through partner airlines, for the part of the journey that this airline doesn't operate its own planes.  It operates direct flights from Dallas Fort Worth Airport. Its U.S. address is 11 W 42ND ST FL 24 NEW YORK, NY 10036-8002.

21)     Defendant FRONTIER AIRLINES, INC. ("Frontier") is a domestic airline in the United States, which is incorporated in and headquartered in Colorado.  It has multiple flight routes to and from Northern Texas. Its registered address in Texas is 211 E. 7TH STREET SUITE 620 AUSTIN, TX 78701.

22)     Defendant GULF AIR HOLDING B.S.C ("Gulf Air"), is a foreign airline with flights to and from the United States.  Passengers can book flights to and from Amarillo, Texas, that are then serviced through partner airlines, for the

part of the journey that this airline doesn't operate its own planes. Their office in Texas is at 3050 Post Oak Blvd, Suite 1320, Houston, TX 77056.

23)    Defendant Iberia Líneas Aéreas de España, S.A. Operadora, Sociedad Unipersonal, DBA Iberia Airlines ("Iberia"), is a flagship airline based in Spain with flights to and from the United States. Passengers can book flights to and from Northern Texas, that are then serviced through partner airlines, for the part of the journey that this airline doesn't operate its own planes. American Airlines is one of their partner airlines. It maintains a U.S. office at 1 World Way, Los Angeles, CA 90045.

24)    Defendant JetBlue Airways Corporation ("JetBlue") is a Delaware corporation, and has its offices in New York City, Utah, and Florida. It has a registered address in Texas at 211 E. 7th Street, Suite 620 Austin, TX 78701. JetBlue is a mostly domestic airline that flies throughout the United States, with many routes to international destinations. Passengers can book flights to and from Northern Texas, that are then serviced through partner airlines, for the part of the journey that this airline doesn't operate its own planes. American Airlines is one of their partner airlines.

25)    Defendant  Alia – The Royal Jordanian Airlines Company, DBA Royal Jordanian Airlines ("Jordanian") is an international airline based in Jordan with flights to and from the United States.  Passengers can book through them

directly to and from Dallas, Texas, and they will fly them through a partner airline, for the part of the journey that this airline doesn't operate its own planes. American Airlines is one of their partner airlines. Their U.S. office is located at 355 LEXINGTON AVE, Fl.14 New York, NY 10017.

26)     Defendant Kenya Airways ("Kenya"), having headquarters in Embakasi, Nairobi Kenya and its USA corporate office address is at Empire State Building, 350 5th Ave, New York, NY 10118, USA. Kenya has direct flights to and from the United States, and passengers can book flights to and from Amarillo, Texas to fly to Kenya and beyond which will in turn fly those passengers through partner airlines, for the part of the journey that this airline doesn't operate its own planes.

27)     Defendant KOREAN AIR LINES CO., LTD ("Korean"), is an international airline based in South Korea, with flights to and from the United states. Passengers can book through them directly to and from Dallas, Texas, and they will fly them through a partner airline, for the part of the journey that this airline doesn't operate its own planes.  Delta & Alaska Airlines are some of their partner airlines. Its Texas registered address is 2333 S.SERVICE RD. TERMINAL D, UL D17, ROOM 334 DALLAS, TX 75261.

28)     Defendant LATAM Airlines Group S.A. ("LATAM") is an airline holding company headquartered in Santiago, Chile. It is considered the largest

airline in Latin America with subsidiaries in Brazil, Colombia, Ecuador, Paraguay and Peru. Passengers can book through them directly to and from Dallas, Texas, and they will fly them through a partner airline, for the part of the journey that this airline doesn't operate its own planes.  Delta Airlines is one of their partner airlines. It maintains a U.S. office at Los Angeles International Airport 380 World Way, Los Angeles, California 90045.

29)    Defendant Lot Polish Airlines SA ("LOT"), is a foreign airline based in Poland with flights to and from the United States.  Passengers can book through them directly to and from Dallas, Texas, and they will fly them through a partner airline, for the part of the journey that this airline doesn't operate its own planes. United Airlines is one of their partner airlines. Their registered address is in New York State at C/O CONDON AND FORSYTH LLP, 7 TIMES SQUARE, SUITE 1800, NEW YORK, NY, UNITED STATES, 10036.

30)    Defendant Lufthansa Systems Americas, Inc. ("Lufthansa"), is a foreign airline with operations and flights to and from Germany.  Passengers can book through them directly to and from Amarillo, Texas, and they will fly them through a partner airline, for the part of the journey that this airline doesn't operate its own planes.  United Airlines is one of their partner airlines. They have their own operations in Houston, TX, including their own direct flights to Germany. Its registered address in Texas is 1999 BRYAN ST., STE. 900 DALLAS, TX 75201.

31)     Defendant SOUTHERN AIRWAYS EXPRESS, LLC DBA Mokulele Airlines ("Mokulele") is a domestic airline incorporated in Delaware, and headquartered in Hawaii. Passengers can book through them directly to and from Amarillo, Texas, and they will fly them through a partner airline, for the part of the journey that this airline doesn't operate its own planes.  American Airlines is one of their partner airlines. It is located at 355 Hukilike Street, Suite 103 Kahului, HI 96732-2973.

32)     Defendant PHILIPPINE AIRLINES ("Philippine"), is a foreign airline with flights to and from the United States.  Passengers can book through them directly to and from Dallas, Texas, and they will fly them through a partner airline, for the part of the journey that this airline doesn't operate its own planes.  Delta & American Airlines are some of their partner airlines. Their USA office is at 5959 West Century Blvd., Suite 600 Los Angeles, CA 90045.

33)     Defendant QATAR AIRWAYS Q.C.S.C. DBA QUATAR AIRWAYS Q.C.S.C. CORPORATION ("Qatar"), is an international airline based in Qatar, with flights to and from the United States.  Passengers can book through them directly to and from Amarillo, Texas, and they will fly them through a partner airline, for the part of the journey that this airline doesn't operate its own planes.  American Airlines is one of their partner airlines. They have their own operations in Dallas, TX, including their own direct flights to Qatar. Its Texas

registered address is 211 E. 7TH STREET, SUITE 620 AUSTIN, TX 78701.

34)   Defendant Royal Air Maroc, LTD. (Maroc"), is a foreign airline with

flights to and from the United States, and passengers can book flights to and from

Texas directly through Maroc, which will in turn fly those passengers through

partner airlines. American Airlines is one of their partner airlines. Their USA

office is at ONE ROCKEFELLER PLAZA, SUITE 1630, NEW YORK, NY,

UNITED STATES, 10020.

35)   Defendant SCANDINAVIAN AIRLINES OF NORTH AMERICA

INC. DBA SAS ("SAS"), is a foreign airline with flights to and from the United

States.  Passengers can book flights to and from Texas, that is then serviced

through partner airlines. Passengers can book through them directly to and from

Amarillo, Texas, and they will fly them through a partner airline, for the part of the

journey that this airline doesn't operate its own planes.  United and American

Airlines are some of their partner airlines. Their Texas registered address is 206 E.

9TH STREET, SUITE 1300 AUSTIN, TX 78701.

36)   Silver Airways LLC, ("Silver") is a United States regional airline

incorporated in Delaware, with its headquarters in Fort Lauderdale–Hollywood

International Airport in Broward County, Florida, near Fort Lauderdale. On

November 9, 2021, Silver Airways began contract flying for Amazon Air with

feeder flights from Albuquerque, New Mexico and Des Moines, Iowa to Amazon's

hub at the Fort Worth Alliance Airport near Fort Worth, Texas. It has substantial business in Texas. Its registered address in Texas is 1999 BRYAN ST SUITE 900 DALLAS, TX 75201.

37)    Singapore Airlines ("SIA") is the flag carrier airline of Singapore with its hub at Singapore Changi Airport. Passengers can book through them directly to and from Dallas, Texas, and they will fly them through a partner airline, for the part of the journey that this airline doesn't operate its own planes.  JetBlue, United, & Alaska Airlines are some of their partner airlines. Its Texas address is 3870 N Terminal Rd, Houston, TX 77032, United States. It runs flights to and from the United States.

38)    Defendant Southwest Airlines Co. ("Southwest") has a location at 2702 Love Field Dr. # HDQ6TX Dallas, TX 75235-1908, which is under this court's jurisdiction. It has significant and consistent business in Amarillo, Texas, through its flights from the Amarillo Airport.  Their address there is 10801 Airport Blvd Amarillo, TX 79111. Southwest is a mostly domestic airline that flies throughout the United States, with several routes to international destinations. It is incorporated in Texas and headquartered in Dallas, Texas.

39)    Defendant SPIRIT AIRLINES, INC. ("Spirit"), is an airline that has multiple operations in Texas, including at the Dallas Fort Worth Airport in Dallas, TX.  Its Texas registered address is 211 E. 7TH STREET SUITE 620 AUSTIN,

TX 78701. It is incorporated in the State of Delaware, and headquartered in

Florida, at 2800 Executive Way, Miramar, Florida.

40)    Defendant Sun Country, Inc. DBA Sun Country Airlines (Sun

Country"), is a domestic airline with flights to and from Dallas and other cities. Its

registered address is 129 S. IRVING SAN ANGELO, TX 76902.  It has operations

out of Dallas Fort Worth Airport, in Texas. It is incorporated in and headquartered

in Minnesota.

41)    Defendant Swiss International Air Lines AG ("Swiss Air"), is a

foreign airline with flights to and from the United States.  Passengers can book

through them directly to and from Amarillo, Texas, and they will fly them through

a partner airline, for the part of the journey that this airline doesn't operate its own

planes.  United Airlines is one of their partner airlines. Their Texas registered

address is 14694 FM 1050 UTOPIA, TX 78884.

42)    Defendant Air Tahiti Nui, ("Air Tahiti"), is a foreign airline with

direct flights to and from the United States. Passengers can book through them

directly to and from Dallas, Texas, and they will fly them through a partner airline,

for the part of the journey that this airline doesn't operate its own planes.

American Airlines is one of their partner airlines. Its U.S. address is at 5901 WEST

CENTURY BLVD. SUITE 1414 LOS ANGELES CA 90045.

43)    Defendant TAP Portugal, Inc. ("TAP"), is the airline of Portugal,

headquartered at Lisbon Airport which also serves as its hub. It is a foreign airline

with flights to and from the United States. Passengers can book through them

directly to and from Dallas, Texas, and they will fly them through a partner airline,

for the part of the journey that this airline doesn't operate its own planes.

American, JetBlue, and United Airlines are some of their partner airlines. Their

Texas registered address is 263 Lafayette Street, 3rd FL Newark, NJ 07105.

44)     Defendant Turkish Airlines, Inc. ("Turkish"), is a foreign airline with

flights to and from the United States. Passengers can book through them directly to

and from Amarillo, Texas, and they will fly them through a partner airline, for the

part of the journey that this airline doesn't operate its own planes.  United Airlines

is one of their partner airlines. Their USA office is at 1400 OLD COUNTRY RD

STE 304 WESTBURY, NY 11590-5119.

45)     Defendant, United Airlines, Inc. (United Airlines") is a domestic and

international United States airline, and has a significant and consistent business in

Amarillo, Texas, through its flights from the Amarillo Airport.  Their address there

is 10801 Airport Blvd Amarillo, TX 79111. It is incorporated in Delaware, and

headquartered at the Willis Tower in Chicago, Illinois.

46)     Fast Colombia S.A.S., DBA Viva Air Colombia ("Viva") and

formerly Viva Colombia, is a Colombian low-cost airline based in Rionegro,

Antioquia, Colombia. It is a subsidiary of Irelandia Aviation and third largest

airline in the country.  They have international flights to and from the United

States. You can book flights from their website to and from Dallas Texas, and they

will fly them through a partner airline, for the part of the journey that this airline

doesn't operate its own planes.  Spirit Airlines is one of their partner airlines. Their

USA address is C T CORPORATION SYSTEM 1200 SOUTH PINE ISLAND

ROAD PLANTATION, FL 33324.

47)    Concesionaria Vuela Compañía de Aviación, S.A.B. de C.V. DBA

Volaris ("Volaris"), is a Mexican low-cost airline based in Santa Fe, Álvaro

Obregón, Mexico City. It has flights to and from the United States. It has

operations out of Dallas Fort Worth Airport, in Texas, amongst other business in

Texas. Its Texas registered address is 9800 AIRPORT BLVD. SAN ANTONIO,

TX 78216.

48)    Matthew Roberts ("Roberts") is the Airport Manager for British Air at

Washington Dulles Airport and at the Baltimore International Airport. His mailing

address is P.O. Box # 17286, Washington, DC 20041. He has identified himself as

the Complaints Resolution Officer for British Air. He was instrumental in

implementing the alleged discriminatory actions, and he was the one to convey

them to the Plaintiff on behalf of his employer, British Air. He is a citizen of the

United Kingdom.

49)    Defendant, Roy Goldberg ("Goldberg") is an attorney with STINSON

LLP, located at 1775 Pennsylvania Avenue, N.W. Suite 800, Washington, D.C. 20006 (202) 728-3005 Email: roy.goldberg@stinson.com. He represents American Airlines in a case where Plaintiff initially tried to join, but eventually withdrew. In this case, however, he is listed as a defendant. Plaintiff alleges that this defendant advised the airline to discriminate against him. He personally participated in the denying of Plaintiff access to fly, and in treating him differently than non-disabled passengers, and is directly responsible for the injuries that were sustained by Plaintiff. It is upon Plaintiff's information and belief that he is a citizen of the District of Columbia.

50)     Defendant  Miguel Morel ("Morel") is an attorney with STINSON LLP, located at Wells Fargo Center, 333 SE 2nd Avenue, Suite 2700, Miami, FL 33131. He represented Spirit Airlines in a case where Plaintiff initially tried to join, but eventually withdrew. Plaintiff alleges that this defendant advised the airline to discriminate against him. He personally participated in the denying of Plaintiff access to fly, and in treating him differently than non-disabled passengers, and is directly responsible for the injuries that were sustained by Plaintiff. It is upon Plaintiff's information and belief that he is a citizen of the State of Florida.

51)     Defendant Nathalie Simon ("Simon") is an employee of Delta in their Customer Care Department. Her work address is Delta Air Lines, Inc. 1030 Delta Boulevard Atlanta, Ga 30354-1989. She was a participant in the alleged

discriminations and related claims, presumably on behalf of Delta. It is upon

Plaintiff's information and belief that she is a citizen of Georgia.

52)    Defendant MedAire, Inc. ("Medaire") is a Nevada Corporation that

describes itself as a medical advisory group delivering "integrated medical and

security solutions for airlines that includes training, equipment, and professional

services for crew and passengers beyond the cabin." Its headquarters is at Suite

450, 4722 North 24th St., Phoenix, AZ 85016. It was a participant in many of the

airlines' discrimination processes and in the overall conspiracy.

53)    Defendant Center for Emergency Medicine of Western Pennsylvania,

Inc., DBA STATMD ("Stat-MD") describes itself as providing "Airline

Consultation Services" including in-flight emergency consultation as well as

fitness-to-fly ground screening. STAT-MD is a nonprofit organization backed by

the resources of the University of Pittsburgh Medical Center. Its headquarters is at

200 Lothrop St. #F1301, Pittsburgh, PA 15213, and it is incorporated in

Pennsylvania. It was an active participant in many of the airlines' discrimination

processes and in the overall conspiracy.

54)    Defendant Robert C. Land ("Land"), is the Senior Vice President

Government Affairs and Associate General Counsel for JetBlue.  His address is at

JetBlue 2701 Queens Plaza N. STE 1 Long Island City, NY 11101-4021. He was

the person who responded to Plaintiff's Department of Transportation ("DOT")

complaint in a letter, confirming that he cannot fly with JetBlue, due to his disability.

55)    Debbie Castleton ("Castleton") works in customer support for JetBlue. Her address is at JetBlue 2701 Queens Plaza N. STE 1 Long Island City, NY 11101-4021. She was the person who responded to Plaintiff's request in an email, confirming that he cannot fly with JetBlue, due to his disability. It is upon Plaintiff's information and belief that she is a citizen of New York.

56)    Anita Ayala is the Complaint Resolution Official ("CRO") for the Customer Relations North America, of Lufthansa. She denied Plaintiff access to fly with the airline, without fulfilling several requirements that are in violation of the Air Carrier Access Act ("ACAA"). Her address is at Lufthansa German Airlines 1400 RXR Plaza West Tower 14th Floor Uniondale, NY 11556. It is upon Plaintiff's information and belief that she is a citizen of New York.

57)    Defendant Biden is the President of the United States and is sued in his official capacity only. His address is The White House 1600 Pennsylvania Avenue NW Washington, DC 20500.

58)    Defendant, NATIONAL INSTITUTES OF HEALTH ("NIH"), is located at 9000 ROCKVILLE PIKE, BETHESDA, MARYLAND 20892. The National Institutes of Health, is a part of the U.S. Department of Health and Human Services, and it is the nation's medical research agency. Their decisions

and actions are utilized and followed throughout the entire country, and often across the globe. Much of the claims herein are based on decisions by this agency.

59)     Defendant Anthony Stephen Fauci (FORMERLY OF NIH IN HIS PERSONAL CAPACITY) ("Dr. Fauci"), is an American physician-scientist and immunologist who served as the director of the National Institute of Allergy and Infectious Diseases (NIAID) part of the NIH, from 1984 to 2022, and was the chief medical advisor to the president from 2021 to 2022. His office address is 31 Center Dr Bldg 31 Bethesda, MD 20892. His decisions and actions were utilized and followed throughout the entire country, and often across the globe. Much of the claims herein are based on decisions by this person.

60)     Defendant, CENTERS FOR DISEASE CONTROL & PREVENTION ("CDC"), is the nation's leading science-based, data-driven, service organization that protects the public's health. It is a division of the U.S. Department of Health and Human Services. It is headquartered at 1600 CLIFTON ROAD, ATLANTA, GA 30329. Their decisions and actions are utilized and followed throughout the entire country, and often across the globe. Much of the claims herein are based on decisions by this agency, their guidelines, and/or mandates.

61)     Defendant Robert Ray Redfield Jr. ("Dr. Redfield"), (FORMERLY OF CDC BEING SUED IN HIS PERSONAL CAPACITY), is an American virologist who served as the director of the Centers for Disease Control and

Prevention and the administrator of the Agency for Toxic Substances and Disease

Registry from 2018 to 2021. His office address is currently listed as 725 W

Lombard St Baltimore, MD 21201. His decisions and actions were utilized and

followed throughout the entire country, and often across the globe. Much of the

claims herein are based on decisions by this person.

62)     Defendant US DEPARTMENT OF HEALTH & HUMAN

SERVICES ("HHS"), is located at 200 INDEPENDENCE AVENUE, S.W.,

WASHINGTON, D.C. 20201. It is the parent agency of NIH and CDC. It is a

cabinet-level executive branch department of the U.S. federal government created

to protect the health of the U.S. people and providing essential human services. Its

motto is "Improving the health, safety, and well-being of America". Their

decisions and actions are utilized and followed throughout the entire country, and

often across the globe. Much of the claims herein are based on decisions by this

agency, their guidelines, and/or mandates.

63)     There were several other employees of the defendants such as

executives, attorneys, and employees that participated in the discrimination and

harassment of this Plaintiff, and also others that will be uncovered during

discovery. Once their information is received, I will then ask this court for leave to

add them as additional defendants.

## BASIS FOR JURISDICTION, VENUE, & STANDING

64)        **Federal Question:** This Court has jurisdiction over this case under 28 U.S.C. § 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." These claims arise under the US Constitution, the Administrative Procedure Act, the Air Carrier Access Act ("ACAA") 14 CFR § 382., 49 USC § 41705, 42 U.S. Code § 1983 Civil action for deprivation of rights, 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights, 42 U.S. Code § 1986, and Section 504 of the Rehabilitation Act of 1973 - 29 U.S.C. § 794, amongst other federal claims.

65)      **Diversity of Citizenship:** The claims are in excess of $75,000 and are against citizens of different states, and are therefore subject to the jurisdiction of this court. 28 USC §1332. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States. (2) citizens of a State and citizens or subjects of a foreign state,"

66)      Plaintiff is a citizen of New York State, Defendants are almost all based in other states, and incorporated in other states, as detailed above in the descriptions of each party.

67)      **Civil Rights:** The District Courts have jurisdiction over this case, because it is a civil rights action, pursuant to 28 U.S. Code § 1343 - Civil rights and

elective franchise: (a)The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1)    To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2)    To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3)    To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4)    To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

68)    **Specific Personal Jurisdiction:** "A more limited form of submission to a state's authority, referred to as "specific jurisdiction," applies only in cases of disputes that "arise out of or are connected with the activities within the state." Int'l Shoe, 326 U.S. at 319, 66 S.Ct. 154." Loyalty Conversion Systems Corporation v. American Airlines, Inc. (E.D. Tex. 2014) 66 F.Supp.3d 813, 819.

69)    This Plaintiff wanted to fly from Amarillo, Texas, and to and from

many other states.  These Defendants all conspired to deny him the ability to fly, and/or deny him the ability to utilize the airlines and transportation options in the same manner or similar to the non-disabled in violation of the statutes listed herein. Plaintiff had been planning a specific trip to California, to then drive to Amarillo, Texas, and from there fly to Europe and Asia. This gives this Court specific jurisdiction over this lawsuit.

70)    Every airline listed as a defendant either flies directly out of Amarillo, Texas, or any person can book a flight on their website from Amarillo, and the airline will fly them through partner airlines.

71)    Personal Jurisdiction because of Texas long-arm statute.  Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. See Fed. Rule Civ. Proc. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located")." Daimler AG v. Bauman (2014) 571 U.S. 117, 125 [134 S.Ct. 746, 753, 187 L.Ed.2d 624].

72)    The Texas Long Arm Statute contains the following; "Sec. 17.042. ACTS CONSTITUTING BUSINESS IN THIS STATE.  In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident: (1)  contracts by mail or otherwise with a Texas resident and either

party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state…" The defendants herein all were doing business in the State of Texas. The airlines together with their employees, all offer flights from Amarillo, and other airports in Texas. The medical defendants offer their medical services on most of those flights. The attorneys for the airlines participated in discrimination by not allowing Plaintiff to fly from Texas, and their business with the airlines that they represent exists in many or most states, including Texas. The federal government and those that worked there created mandates and rules that effect all states.

73)    Venue is proper pursuant to 28 U.S.C. 1391(b) because much of the events giving rise to the allegations in this complaint occurred in this district. All the airline defendants denied Plaintiff his civil rights by not allowing him to fly through their airlines to and from Amarillo Airport, Texas, as they equally denied him travel to and from every other City in the United States and beyond.

74)    **Venue** is proper with regards to the federal agencies and their employees, pursuant to 28 U.S. Code § 1391 (e) 1. "A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial

part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated…"

75)    This Court has the authority to grant declaratory and injunctive relief as well as monetary damages under the Declaratory Judgment Act and this Court's inherent powers. 28 U.S.C. §§ 2201 & 2202.

76)    Plaintiff has standing to sue the defendants because they illegally discriminated against him on the basis of his medical condition by denying him the ability to fly without wearing a mask, and discriminating against him due to his medical disability.

77)    Defendants' violations and actions caused Plaintiff to incur severe financial losses, he was deprived of his civil rights, and suffered emotional damages, among other losses.

78)    **Pendent Jurisdiction:** Plaintiff's state-law claims are fully related to those under which this Court has original jurisdiction that they form part of the same case and controversy under Article III of the Constitution. The state-law claims share common operative facts with the federal-law claims and the parties are identical. Resolving both federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties. Supplemental jurisdiction is therefore appropriate pursuant to 28 USC § 1367.

79)    The two attorneys listed as defendants, Goldberg and Morel, and other

attorneys to be added upon disclosure through discovery, are alleged by defendant to have participated in the discrimination by assisting, advising, and instructing their clients to perform the discriminatory acts described herein. While an attorney normally cannot be sued for defending his/her client, they can certainly be sued if they are complicit. For example, if an attorney gets a client off of a murder charge and he leaves the court, and kills again, the attorney cannot be liable, unless he provides the gun or participates in the murder itself. In this case, Plaintiff alleges that these two attorneys directly participated in the discriminations.

80)    As determined by many courts, and for example, as articulated by the Supreme Court of Wisconsin, "We agree that in most cases, an attorney is immune from liability to third parties based on the attorney's failure to perform a duty owed to a client. However, failure to perform an obligation to a client is entirely distinct from conduct that assists the client committing an unlawful act to the detriment of a third party." Tensfeldt v. Haberman, 319 Wis. 2d 329, 768 N.W.2d 641, 2009 WI 77 (2009) Wisconsin Supreme Court.

81)    In this case, Plaintiff alleges that the attorneys in question assisted in the communication of the discriminations, as they were an active participant in the violations.

82)    Defendants that are federal agencies and their staff are being sued for their complicity in causing the damages by authorizing and promoting illegal

mandates and illegal discrimination that caused the damages described herein, and that will be presented during trial.

83)     Defendants CDC and HHS are being sued for this Court to review their actions and inactions in respect to Administrative Procedure Act laws ("APA"), which this Court has the authority, and for their participation in the discrimination and the conspiracy thereof.

84)     **JOINDER OF DEFENDANTS**: Pursuant to Rule 20 of the Federal Rules of Civil Procedure (a) 2, Defendants can be joined, "if (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

85)     In this case, the Defendants all participated in the same and/or similar discriminations being alleged by Plaintiff. While some causes of action may only apply to certain defendants, ultimately, all defendants were part of the same alleged conspiracy and violated much of the same laws, regulations, and statutes.

86)     The right to relief is asserted against them jointly, severally, and/or with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences.

87)     Additionally, most of the questions of law that exist in this complaint

are common to all defendants.

88)    The U.S. Supreme Court said the following: "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of America v. Gibbs (1966) 383 U.S. 715, 724 [86 S.Ct. 1130, 1138, 16 L.Ed.2d 218]

89)    **Redress:** A court order declaring unlawful and enjoining all defendants' illegal discrimination and violations, plus an award of compensatory and punitive damages, where applicable, would redress Plaintiff's injuries. To the bare minimum, an award of nominal damages can provide significant redress, as the Supreme Court decided in 2021, "nominal damages can redress Uzuegbunam's injury even if he cannot or chooses not to quantify that harm in economic terms." Uzuegbunam v. Preczewski, 141 S.Ct. 792, 802 (U.S., 2021).

## STATEMENT OF FACTS

90)    The NIH and Dr. Fauci funded "gain of function research" in a Chinese laboratory in Wuhan, China, as admitted to publicly by Dr. Fauci.

91)    This lab was working on various dangerous viruses, including COVID type viruses.

92)     A virus leaked out from that lab causing most of the planet to get sick, and caused the death of over 6 million people, as per statistics readily available on the internet.

93)     The Federal Bureau of Investigations ("FBI") and the US Department of Energy ("DOE") both confirmed that a lab leak was the likeliest source of this virus.

94)     Dr. Fauci testified before the Senate and denied that the virus was a lab leak, and Dr. Redfield confirmed publicly that Dr. Fauci lied before the Senate.

95)     In order to slow the spread of the COVID-19 virus, on January 21, 2021, President Biden issued Executive Order 13998 (Exhibit 1), which directs the heads of certain Federal agencies to take immediate actions to require mask-wearing in domestic and international transportation.

96)     This was in spite of all the studies and in spite of Dr. Fauci's own public statements, confirming then what we know now, that masks are almost useless in the protection against Covid-19.

97)     The new President promised the people that he would do a better job than President Trump, and it seems that creating mask mandates, as useless as they were, would show that he is keeping his campaign promises.

98)     In a recent piece in the New York Times (see https://www.outkick.com/fauci-finally-admits-mask-mandates-dont-work/ ), Dr.

Fauci admitted that, ""From a broad public-health standpoint, at the population level, masks work at the margins — maybe 10 percent,"

99)    On or about January 29, 2021, the CDC issued an order (Exhibit 2) directing conveyance operators, which includes airlines, to use best efforts to ensure that any person on the conveyance wears a mask when boarding, disembarking and for the duration of travel.

100)    Recognizing that there are specific instances when wearing a mask may not be feasible, the CDC Order exempts several categories of persons from the mask mandate, including "a person with a disability who cannot wear a mask, or who cannot safely wear a mask because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.). The Americans with Disabilities Act (ADA) defines a person with a disability to include a person who has a physical or mental impairment that substantially limits one or more major life activities.

101)    In that same CDC order, it put a footnote (#8) clarifying its guidance with regards to disability exemptions. It says as follows: "Operators of conveyances or transportation hubs may impose requirements, or conditions for carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the operator, as well as require evidence that the person does not have COVID-19 such as a negative result from a

<u>SARS-CoV-2 viral test or documentation of recovery from COVID-19</u>. CDC definitions for SARS-CoV-2 viral test and documentation of recovery are available in the Frequently Asked Questions at: https://www.cdc.gov/coronavirus/2019-ncov/travelers/ testing-international-air-travelers.html. <u>Operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or transportation hub. Operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance</u>."

102) This footnote from the CDC is in direct contradiction to ACAA law as described herein. The CDC is a federal agency, under the umbrella of the executive branch. It does not have the authority to modify existing disability laws.

103) The Executive Branch would need to approach the Legislative Branch to get them to introduce legislation. That would have never happened, so the CDC took it upon itself on behalf of the President to bypass the legislative branch and create their own legislation.

104) In Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022), the federal judge in Florida made this all clear, as we describe herein, but there was never any question to begin with.

105)  In the months prior, in response to COVID-19, U.S. and foreign air carriers generally have implemented their own policies requiring passengers to wear masks onboard aircraft, even before the issuance of the Executive Order and the CDC Order.  Many carriers have adopted policies that expressly allowed "no exceptions" to their own mask requirement other than for children under the age of two.  People with disabilities that could not wear masks were not permitted to fly, in direct violation of the ACAA, which is a set of laws that makes it illegal for airlines to discriminate against passengers because of their disability.

**ACAA LAWS**

106)  The Air Carrier Access Act ("ACAA") laws (from 382.17 to 382.35) describe the following actions as discrimination:

a.      382.17 "May carriers limit the number of passengers with a disability on a flight?  As a carrier, you must not limit the number of passengers with a disability who travel on a flight."

b.      382.19 "May carriers refuse to provide transportation on the basis of disability? As a carrier, you must not refuse to provide transportation to a passenger with a disability... except... You may refuse to provide transportation to any passenger on the basis of safety, as provided in 49 U.S.C. 44902.  The 49 U.S.C. 44902 refers to safety issues such as someone who doesn't consent to a TSA search

of themselves or their items. They mention another scenario, which also refers to the safety of the flight. Neither refers to wearing a mask. It then says you can refuse a passenger who poses a "direct threat," which is established law that requires a significant risk, which also won't apply in a case where there are no symptoms, and especially this Applicant who has natural immunity.

    c.    382.21 "May carriers limit access to transportation on the basis that a passenger has a communicable disease or other medical condition?" You cannot, unless, again, the person is determined to pose a direct threat.

    d.    382.23 "May carriers require a passenger with a disability to provide a medical certificate?" Essentially, you cannot require a medical certificate unless the "medical condition is such that there is reasonable doubt that the individual can complete the flight safely, without requiring extraordinary medical assistance during the flight." Also, if there's a direct threat of a communicable disease.

    e.    382.25 May a carrier require a passenger with a disability to provide advance notice that he or she is traveling on a flight?" No, except in special circumstances that do not apply here.

    f.    382.33 'May carriers impose other restrictions on passengers with a disability that they do not impose on other passengers?" No, except in special circumstances that do not apply here.

## FEASIBILITY OF MASKS

107) Do masks actually stop the transmission of Covid? That's the big question that everyone is asking.

108) I don't know more than anyone else, but I live my life with my eyes and ears open most of the time.

109) Dr. Anthony Fauci and the entire federal government initially said "do not go out and buy masks, as they're meaningless. The virus particles are too small, and they'll fly right through the masks.

110) There were barely any studies properly done, and peer reviewed, showing benefits of masks in protecting against Covid-19 transmission. On the contrary, the NIH published a study done in the early days of Covid (Exhibit 3) showing the exact opposite. It showed no benefits from the masks.

111) It says, "Conclusions: There was no reduction in per-population daily mortality, hospital bed, ICU bed, or ventilator occupancy of COVID-19-positive patients attributable to the implementation of a mask-wearing mandate."

112) I have seen over sixty studies prior to Covid where they determined that masks were useless for SARS 1 and influenza, and possibly harmful.

113) Suddenly, within about a month and a half, after President Biden takes over the presidency, the science changes drastically. Obviously, that is not the case, but rather the science was misrepresented for political purposes.

114)   At that point the federal government and lots of people were convinced that we all will die if we don't all wear a mask. People told me I should stay home till Covid is over.  They didn't understand how I would want to kill everybody just because I want to leave my home. They thought I was so selfish. They spread out this irrational and insane idea that if one person doesn't wear a mask, everybody dies.

115)   The irrational unsubstantiated insane obsession with masks took over the country and eventually the world. Ironically, <u>having a mask on your chin with your mouth and nose exposed was considered much safer than having no mask at all.</u> I would love to hear how they explain that science.

116)   Real science and real math don't lie.  The original data that was relied upon for not recommending masks was based on real scientific studies performed on thousands of people.  The science in combination with the math can give you some real solid information.  The information before Covid was real.

117)   In a deposition recently (see link in Exhibit 4 page 2), Dr. Fauci was asked why he did not recommend masks initially for Covid. (Case No. 3:22-cv-01213-TAD-KDM at THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA; MONROE DIVISION).

118)   He responded and said, "there was no evidence at the time or any studies that showed outside of the medical environment, i.e., in a hospital or in an

ICU, that masks actually worked in protecting transmission or acquisition."

> Q "Who'd you consult with about the efficacy of masks during that time period? Who'd you talk to in the government about it?"
>
> A "I don't recall who I spoke to."
>
> Q. "Did your opinion on masking change based on new information and new scientific evidence that came forward?"
>
> A "I believe it did, yes."
>
> Q. "Were there placebo-based, randomized, double-blind studies of the efficacy of masking that were done between February and April of 2020?"
>
> A "I don't recall. I'd have to go back and take a close look at the literature. I don't recall."
>
> He then continued to give him the "I don't recall" responses. ABC News counted and found that he said "I don't recall" 174 times during this deposition (Exhibit 4).

119)  As you can see, and if you read through the entire deposition, which is readily available online, you see that there was a two month or shorter period where the federal government went from the statement that "masks are useless" to a new position that "masks are the difference between life and death." Yet, Dr. Fauci who led that push on behalf of President Biden, could not think of any studies that changed his mind.  That is because there weren't any such studies.

120)  DR. ROBERT REDFIELD, formerly the Director of the CDC, testified in front of the senate waving his mask and saying, "this face mask is more guaranteed to protect me against Covid than any Covid vaccine." He was trying to convince everyone that masks are the best protection, which was a lie, and in saying that, he lied in front of the Senate.

121)  I bring this up to make a point.  The airlines make believe that what they're doing by discriminating against me is to keep their passengers safe.  That is an outright lie.

122)  First, as described above, there's no real evidence to date that the typical cloth or surgical mask keeps anyone safer than without it. Even if some masks do work somewhat, over 95% of the people wear the ones that were never expected to work.

123)  Second, the airlines themselves wrote a letter to President Biden (Exhibit 5), signed by executives from several airlines listed here as defendants, and sent from the airline association, Airlines for America.

124)   They wrote the following:
"We supported the Centers for Disease Control and Prevention (CDC) as they made some of these policies federal mandates and imposed additional measures, like predeparture testing and vaccination requirements for international travelers, in an to attempt to slow the introduction of variants into the United States.

However, much has changed since these measures were imposed and they no longer make sense in the current public health context....

Now is the time for the Administration to sunset federal transportation travel restrictions – including the international predeparture testing requirement and the federal mask mandate – that are no longer aligned with the realities of the current epidemiological environment."

125)   This was signed by eight of the airlines listed here as defendants, and an industry organization. I am confident that the rest of the airlines agreed with this viewpoint.

126)   If you analyze this for a second, you realize that this makes no sense. People are still contracting Covid and people are being hospitalized.  Some are even dying.  What changed? Why were they suddenly recommending to stop the whole mask mandate?

127)   Is it just because the numbers went down, so we are figuring that we can now open up the worst virus spreading environment and increase the transmissions tenfold? This makes no sense.

128)   The answer lies in that same letter.  The airline industry leaders said the following:

"Several studies completed before we had the added layer of widespread availability of vaccines, including one from Harvard's T.H. Chan School of Public

Health and another from the U.S. Department of Defense, have concluded that an airplane cabin is one of the safest indoor environments due to the combination of highly filtered air and constant air flow coupled with the downward direction of the air."

129)   Yes, you read that correctly.  "an airplane cabin is one of the safest indoor environments!" Is this a new phenomenon?  Did they rebuild the interiors of all the airplanes and fix that virus transmission problem? Of course, not.  We knew this all along.  They knew this all along.  Harvard and U.S. Department of Defense knew this all along.  It was always the safest environment. These were studies that were performed "before the vaccines."

130)   The letter continues to say, "It makes no sense that people are still required to wear masks on airplanes, yet are allowed to congregate in crowded restaurants, schools and at sporting events without masks, despite none of these venues having the protective air filtration system that aircraft do."

131)   Yet, for some crazy reason, those same airlines that were making this strong argument to the President of the United States, that all the airplanes are perfectly safe, those same airlines were telling poor, disabled, Aaron Abadi, that due to his disability he cannot fly on their planes at all and/or without jumping through hoops, because of the SAFETY OF THE OTHER PASSENGERS. You can't make this stuff up. It was clearly not for reasons of safety and/or health.

132)   In the CDC Appellate Brief, in its appeal to the 11th Circuit (available on pacer; Case: 22-11287) on Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022), the CDC responds to the judge's opinion as follows:

133)   "As in Biden v. Missouri, there is no plausible contention that the exceptions to the mask requirement render it useless in curbing the spread of COVID-19. States that have imposed masking requirements in public spaces and on public transit have included similar exceptions for children, persons with disabilities, and activities like eating. See 86 Fed. Reg. at 8029 n.29 (citing a report of state-by-state mask requirements). Moreover, the exceptions in the CDC's transportation mask order are tailored to minimize the risks of transmission. For example, allowing people to remove their masks "for brief periods" when eating or drinking and "temporarily" when unable to breathe, 86 Fed. Reg. at 8027 & n.7, is consistent with the goal of reducing COVID-19 spread in transportation settings."

134)   In other words, according to the CDC, the purpose of the mask mandate is NOT to completely stop transmission of Covid19, but rather to reduce transmission and significantly mitigate the risks.  The idea is that if most people are wearing masks most of the time, we will have less transmission. Therefore, the CDC is stating that exempting the disabled and allowing them to fly without wearing a mask, does not impede its goals of the mask mandates, and will not create a serious health crisis or direct threat.

135)  If the goal was to avoid any transmission completely, there would be no exceptions for children under 2-years old, no exemptions for the disabled who cannot wear a mask, and no exception for eating or drinking.  How could you eat and drink, if you will thus kill someone. Don't forget, direct threat is the criteria where you can deny access to a disabled person, which is defined as a significant risk, to be discussed below.

136)  Built in to the CDC guidance and mandates were the exemptions for people with this unique and rare disability that causes us not be able to wear a mask. As the CDC argued in their Appellate Brief, <u>this small number of people flying without masks would have barely have effect on overall Covid transmission numbers, if any at all</u>.

137)  As the District Judge explained in her ruling, if the issue was a direct threat, and the CDC was quarantining everyone, and then only releasing those who were no longer a direct threat, the process would be very different.

138)  Clearly, from both the district judge and upon the argument of the CDC themselves, the exemption of children under 2 years old, the exemption of the disabled, and the exception during eating, drinking, and/or necessity for breathing is not a hindrance to the mandate or the projected results of the mandates purpose. All the parties are in agreement to this. The questions before the Circuit Court is not about this, but rather if the CDC had the authority to mandate this to

begin with, and/or if the mandates were arbitrary and capricious.

139)  <u>What the above shows is that there was no evidence to begin with that masks help much, especially the most commonly used ones. The CDC in their guidelines, regulations, and mandates did not believe that giving exemptions to masking would be a direct threat to the rest of the plane. It also shows that the evidence provided near the end of the mask mandates, by the airline industry leaders, shows that there was never a dire need for masking at all; at least not for health or safety purposes.</u>

140)  The excuses that the airlines have been giving that they are not allowing me to fly because of health and safety reasons are not true, are not rational, are not in conformance to the CDC guidance at all, and are not in touch with their own position in that letter that the airlines sent to President Biden.

### **PLAINTIFF'S DISABILITY**

141)  Plaintiff has a disability, specifically sensory processing disorder, and cannot wear a mask. His senses go into overload when he wears anything on his face or head, including glasses, sunglasses, or a baseball cap. This is a permanent condition that he had his entire life and will continue to have for the remainder of his life. He carries around a doctor's letter clarifying that he cannot wear a mask, (Exhibit 6 is the Doctor's letter and a redacted medical chart is Exhibit 7).

142) For an unrelated case in Florida, Plaintiff's Neurologist, Dr. Cristina Drafta, attested to Plaintiff's disability being severe enough that it meets the basic and typically accepted definition of "disability" by ACAA, ADA, and any and all State disability laws, as an impairment that substantially limits one or more major life activities. The document attests to Plaintiff's multiple impairments of major life activities due to his disability (Exhibit 8), and the severity thereof.

143) As per ADA guidelines and ACAA guidelines, which are almost identical in this aspect, this Applicant should be exempt from wearing a mask. See the ADA and Face Mask Policies Southeast ADA Center, where it clearly defines the sensory disability, and states that such a person should be exempt (Exhibit 9).

144) In any case, sensory processing disorder, when activated, creating sensory overload, it limits almost all major life activities, as the Applicant cannot function, which fits the ACAA and ADA criteria of disability completely, and as described in the Plaintiff's Neurologist's letter.

145) In clarifying the definition of disability, ACAA 28 CFR § 36.105 (1) says "Physical or mental impairment means: (i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as: Neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine."

146)    Plaintiff's disorder affects the body system related to the sense of touch, specifically, and is included in the above definition of disability. Touch is the ability to sense pressure, vibration, temperature, pain, and other tactile stimuli. These types of stimuli are detected by mechanoreceptors, thermoreceptors, and nociceptors all over the body, most noticeably in the skin. These receptors are especially concentrated on the tongue, lips, face, palms of the hands, and soles of the feet. The law recognizes that a disorder in the important sense of touch severely limits many major life activities.

147)    Applicant already had Covid in October 2020, as evidenced in the same doctor's letter, therefore without any symptoms, he would not pose a "direct threat" to justify an airline to deny him access due to his disability, and thus his inability to wear a mask.

148)    The ACAA defines this term as follows:    "Direct threat means a significant risk to the health or safety of others…" (14 CFR § 382.3).    Based on the CDC own guidance that "Covid reinfection is rare," and therefore there should not be any direct threat for someone who already had Covid and thus has natural immunity, without obvious symptoms. (Exhibit 10).

149)    While the ACAA allows for airlines to deny passengers with disabilities to fly, if they pose a direct threat, the DOT acknowledges that a person with a disability that cannot wear a mask is not automatically considered a direct threat.

This is evidenced by the attached DOT responses (Exhibit 11) that I finally received regarding the DOT complaints, one from JetBlue and the other American, where the airlines were each found in violation of the ACAA. If the airlines can say that there was a direct threat, they would not be in violation. The DOT did not consider me a direct threat in those two cases. There is no reason to believe that on any different day I would be a direct threat automatically, without any obvious symptoms.

150)   The Equal Employment Opportunity Commission ("EEOC") also made clear that a direct threat would be possible to consider only if the person had Covid19, or had symptoms of Covid19 (Exhibit 12).  Besides, I would never consider flying or going anywhere in public while I had Covid19 or such symptoms, without proper testing and/or medical advice. I am not a selfish person.

### DIRECT THREAT EXCEPTION

151)   There is an exception in the ACAA where an airline can deny access if there's a "direct threat." That exception would not apply here for many reasons.

152)   First, if we were to say that a person without a mask is a direct threat, and deny him access due to his disability, we would have to prove that those other people that are obviously also a direct threat would now remove the risk significantly enough by wearing a mask, that they will no longer be a direct threat. There is no evidence of that, especially with regards to the typical cloth and surgical masks that

the majority wear.

153)  If for argument's sake everyone is considered a direct threat, then if you allow one person who is a direct threat with a mask, and do not allow a disabled person who is also a direct threat without a mask, but with natural immunity, that's classic discrimination.

154)  Second, The Equal Employment Opportunity Commission ("EEOC") themselves only consider a person a direct threat if they're showing symptoms or have Covid. id

155)  Third, from the DOT's own responses to the several complaints that they responded to (as described above) they did not accept a direct threat excuse. They found several of the airlines in violation, and others not in violation, but never allowed them to give a blanket excuse that any and all people without masks are a direct threat.

156)  Fourth, the DOT demands that airlines begin allowing disabled people to fly without masks, if that's their disability issue.  If every person without a mask is a direct threat, why would they demand that? How can they make such a request?

157)  Fifth, a direct threat evaluation must be based on an individualized evaluation. The airlines are setting broad policies for all disabled, without looking at anyone individually.

158)  Sixth, a direct threat is a difficult bar to overcome.  It says that in the

ACAA laws in other words. You cannot just take the entire world and say everyone is a direct threat. See the Pandemic Preparedness paper from the EEOC (mentioned above). It says in there that even if a person has symptoms of a seasonal influenza, you cannot therefore assume they have the pandemic and are a direct threat.

159)    Seventh, this Plaintiff already had Covid as shown earlier. As per CDC and all other studies and reports, Covid reinfection is rare.   When you do an individualized assessment, you will need to determine that a person that has natural immunity without a mask has a lower risk of spreading Covid than another person with a mask that never had Covid.

160)    Eighth, none of these airlines even tried using this excuse. They said things like "for the safety of the passengers," and/or "the DOT/CDC/TSA authorized us to create these rules." They cannot authorize anything of the sort. They do not have that authority.

161)    Ninth, if a person without a mask is a direct threat, how can they allow eating on the plane where the entire plane is maskless for about thirty minutes at a time. If there's a direct threat, which means a significant risk when a person isn't wearing a mask, how careless and negligent could they be to let out all that risk.   Let the people eat before the flight and right afterwards. No one should be allowed to take off their masks during the flight at all.

162)    Tenth, How can they allow children under two to fly without a mask.

They must stay home if they are a direct threat. Yes, all the way in the beginning we thought that children couldn't carry the disease. We found out that we were wrong. Do not allow any children under two on any flight, if you believe such a situation, is a direct threat.

163)  Eleventh, the CDC, TSA, DOT, and almost all (if not all) state and city mandates in the United States list an exemption for people with disabilities who cannot wear a mask. It is always listed immediately after the children-under-two exemption. If we are all automatically a direct threat, how can all these agencies and governments put the whole country in danger like that.

164)  I can go on for days, but the obvious and clear outcome of these eleven arguments show that people with disabilities who cannot wear a mask are not automatically a direct threat. Without symptoms or some evidence to show the existence of a higher risk of the disease than average, they must not be discriminated against.

165)  As shown earlier, the airline industry organization, with signatures from some of the top airlines, many listed here as defendants, wrote a letter to the President and the various government agencies. This letter requested that the mask mandates be stopped on airplanes. They cited that they are no longer necessary, and upon reading it carefully, you can see they never thought it necessary. Yet, many of these same airlines were continuing to make believe that disabled people without

masks still pose a threat, even after sending that letter. This is all so strange.

## AIRLINES & THEIR STAFF'S DISCRIMINATIONS WITH THE
## PARTICIPATION OF ALL THE DEFENDANTS

166)   All the airline corporation defendants, airline personnel defendants, and the attorney defendants refused to allow Plaintiff to access flights at all, and/or unless he fulfilled unlawful requirements. They required this Plaintiff to provide and/or perform special requirements that other passengers were not required. These were in direct violation of ACAA laws as described above and as written in the ACAA laws, and other laws and requirements as detailed in the causes of action below.

167)   The Federal Defendants, both those sued in official capacity and those in individual capacity, caused the problems to begin with, provided guidance that was politically driven and untrue, and encouraged, instructed, and aided and abetted the airlines to do their discriminations.

168)   The medical organization defendants assisted, facilitated, and conspired together with the airlines to cause the same discrimination described.

169)   The various exhibits attached hereto contain much of the requests to the airlines, their requirements, demands, and/or blatant denials.

170)   Some airlines required medical forms to be filled out with a doctor's

approval to fly, <u>even though there was never a question if I can or cannot fly based on my medical status</u>. It is sensory processing disorder not a stroke or heart attack. This is in violation of ACAA as mentioned above & below.

171)   Others required Covid negative tests even though <u>non-disabled passengers do not have such a requirement</u>.  This is a violation of ACAA and many other laws.

172)   Any requirement that is unnecessary to protect for a direct threat, and other passengers are not required to do it, is a violation of the ACAA and other laws, as mentioned above and herein.

173)   These airlines all discriminated against Plaintiff and those similarly situated, without anyone stopping them.

174)   Plaintiff loves to travel for pleasure, and needs to travel for his income.  Plaintiff was barred from traveling due to these violations of his civil rights.

175)   Very few airlines allowed Plaintiff to fly on their planes, leaving Plaintiff mostly grounded for over two years.

176)   These actions and inactions from all the defendants combined, were the direct causes of Plaintiff's injuries described herein.

177)   Many airlines will try to suggest, and some mentioned this to me directly, "If you didn't book a flight, then you cannot claim discrimination."

178)  While I did book several flights initially, I stopped doing that, and first talked to the airline to see if I was even going to have a chance.  If I were to book flights with each airline in order to find out if they will discriminate or not, it would be cost prohibitive. For example, over 50 airlines refused to allow me to fly normally. Let's assume that I booked a reservation on each airline at an average of $1,000 each, that would equal $50,000.  There's no such requirement to book a flight on an airline in order to find out if they will discriminate against you.

179)  See Equal Rights Center v. Uber Technologies, Inc, where the court clarifies this.  If you look up the case, you will see multiple caselaw quoted by that district judge. While in that case he was referring to ADA laws, the courts normally carry that to ACAA and State disability laws, as long as the particular laws do not have a statement to the contrary. It says the following:
"But in the context of the ADA, plaintiffs need not establish that they would have otherwise actually or imminently visited and/or patronized a place with accessibility barriers, because the ADA does not "require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by [Title III of the ADA] does not intend to comply with its provisions." Equal Rights Center v. Uber Technologies, Inc. (D.D.C. 2021) 525 F.Supp.3d 62, 76,

## ADDITIONAL SPECIFIC FACTUAL ALLEGATIONS FOR EACH DEFENDANT

### AMERICAN AIRLINES

180)   On January 24, 2021, defendant American denied Plaintiff access to fly on their airline.  Plaintiff has a recording of that conversation.

181)   Plaintiff filed a complaint on that day to the DOT.

182)   This complaint was responded to finally, on March 4th, 2022, where the DOT found that American violated the law (Exhibit 11).  The DOT did nothing about it, though. They made that clear in their response.

183)   Plaintiff currently has an appeal filed with the DOT. It is over two years since the specific violation happened, that was confirmed by DOT, and yet no resolution, no enforcement action was taken or will be taken, as per DOT.

184)   In that same response from DOT, they report that American claims to have offered to allow me to travel.  That is not accurate.

185)   On November 8, 2021, Plaintiff tried again to fly with American, and again was completely denied. See the correspondence attached (Exhibit 13).

186)   In response to Plaintiff's later request (Exhibit 14), on or about February 22, 2022, American made demands to require an updated doctor's letter and a Covid negative test in order to fly.  According to ACAA, they cannot require

things that are not required by other, non-disabled passengers, as that is discrimination.

187)   After that, on or about March 18, 2022, (Exhibit 15) there was further correspondence between Plaintiff, American, and Roy Goldberg, an attorney representing American. This correspondence confirmed their previous discriminations as described.

188)   Ironically, the CEO of American sent a letter to Biden and others in the government, together with other industry leaders.  In this letter (described above), he describes how masks are unnecessary on airplanes these days, and asks for the mask mandate to be repealed. <u>It is dishonest for American on one hand to say masks are unnecessary for all, and on the other hand, claim that they are banning me, a disabled person, from traveling and/or making it difficult for me to travel for health reasons</u>.

189)   I sent a letter to Roy Goldberg, and he claims to have forwarded it to American. In that letter (Exhibit 16), I present the following question:

a.   "I have attached a letter from the Airlines for America that was signed by your client, American Airlines Chairman & CEO, W. Douglas Parker. In this letter, your client posits that there is no longer a health or safety issue to justify requiring passengers to wear masks, and asks the federal government to do away with the mask mandates on airplanes completely. They write as follows: "Now is

the time for the Administration to sunset federal transportation travel restrictions –

including the international predeparture testing requirement and the federal mask

mandate – that are no longer aligned with the realities of the current

epidemiological environment." To this date your client is refusing to allow me to

fly with their airline, presumably due to health and safety concerns, unless I

perform processes or provide items that non-disabled passengers are not required

to perform and provide, in violation of ACAA law. As you are fully aware, I am of

the disabled class and cannot wear a mask due to my disability. The attached letter

clearly indicates that your client firmly believes that Aaron Abadi not wearing a

mask on a flight will not cause any health concerns, to a point where they are

lobbying to have all passengers be entitled to fly without a mask. Your client can

no longer claim that Aaron Abadi is a significant risk and must wear a mask. I will

ask you and your client one last time to fix this situation and provide me with a

confirmation without any conditions, stating that Aaron Abadi can fly with

American Airlines without wearing a mask, due to his disability. I look forward to

your quick response. Respectfully, Aaron Abadi."


190)   Goldberg responded saying, "Thank you Mr. Abadi.  I will pass this

on to American Airlines." That was on Wednesday, March 23, 2022. I never did

hear back from them.

191)   Their CEO says that the masks are no longer necessary, <u>he confirms that there is no significant risk</u>, yet they won't let me fly without certain unnecessary and discriminatory requirements.

192)   Not allowing me to fly, and then months later saying they will allow me to fly under certain complicated conditions, which is not required for those who are not disabled, is the definition of discrimination as described below in the various causes of action.  This Defendant discriminated against Plaintiff.

193)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

194)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### AEROFLOT

195)   I notified the airline with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a significant health risk.

196)  The airline emailed me on or about September 20, 2021 (Exhibit 17) that I cannot fly with them without a mask.

197)  This airline could have flown me to various countries where I could have completed my business transactions.

198)  Not allowing me to fly due to my disability and inability to wear a mask is discrimination.

199)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

200)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**AEROMEXICO**

201)  I notified the airline with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk. The airline emailed me on or about September 1, 2021, refusing to respond to my question, in other words not

exempting me to fly.

202)   On their website they had some specific requirements (Exhibit 18).
These were discriminatory, as non-disabled are not required to follow those rules.

203)   We exchanged emails again on or about April of 2022 (Exhibit 19),
where they said straightforward that I cannot fly with them without a mask, unless
I follow a list of requirements that are unnecessary and only designed to keep me
from flying.

204)   All regular non-disabled people can fly by just ordering a ticket online
and heading to the airport. This airline requires a special medical form filled out
and signed by a doctor with a seal.

205)   Those medical forms were intended for people who medical
conditions that might not be able to fly at all. Then the doctor must confirm that
they are approved to fly. They are using it for my scenario just to discourage me
from flying. Other people don't need Doctor's approving them to fly before each
flight. I usually fly in excess of 40 flights a year, so I would need a Doctor on
payroll handling my paperwork. I cannot fly under such requirements. This is
unfair and it is discrimination.

206)   Requiring medical forms when unnecessary, is a violation of the
ACAA, as described above.

207)   Not allowing me to fly due to my disability, and then months later

saying they will allow me to fly under certain complicated conditions, which is not required for those who are not disabled, is the definition of discrimination as described below in the various causes of action. This Defendant discriminated against Plaintiff.

208)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

209)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### ALLEGIANT

210)   On or about September 1, 2021, I reached out by email to Allegiant, letting them know about my disability, attaching a doctor's letter confirming it, and asking I can fly on their airliner without a mask, pursuant to ACAA laws, and other disability laws.

211)   On or about September 3, 2021, Allegiant formally denied me access to fly with their airline, to and from any destinations (Exhibit 20).

212)   They wrote the following:

"Thank you for contacting Allegiant regarding your request to fly without a mask. As you know, the US Centers for Disease Control (the "CDC") has issued an Order which now legally requires masks to be worn by all persons traveling by air. (42 U.S.C. 264)  That Order allows for only very narrow exceptions to the mask requirement.  Specifically, the Order states that air carriers are authorized to provide an exception to the mask requirement for those whose physical disability renders them unable to wear a mask, or those who are unable to remove their own mask without assistance.  The CDC Order further authorizes air carriers to implement policies, procedures and requirements to comply with the new law. Because safety for our passengers and crews is always Allegiant's top priority, we review and consider passenger requests to travel mask-free very carefully. Unfortunately, Allegiant will not be able to honor your request to fly without a mask because your circumstance does not fit within the very narrow category of legally permitted exceptions."

213)  I then filed a DOT complaint against them.

214)  In response to my DOT complaint against them, on or about November 9, 2021, Allegiant wrote the following (Exhibit 21):

"On behalf of Allegiant, I am responding to the complaint you submitted to the Department of Transportation (DOT) regarding a Face Mask Exemption. Allegiant strives to provide an excellent experience for all of our customers and sincerely regrets that you had a less than positive experience. As you know, the US Centers for Disease Control (the "CDC") has issued an Order which now legally requires masks to be worn by all persons traveling by air. (42 U.S.C. 264) That Order

allows for only very narrow exceptions to the mask requirement. Specifically, the Order states that air carriers are authorized to provide an exception to the mask requirement for those whose physical disability renders them unable to wear a mask, or those who are unable to remove their own mask without assistance. The CDC Order further authorizes air carriers to implement policies, procedures and requirements to comply with the new law. Because safety for our passengers and crews is always Allegiant's top priority, we review and consider passenger requests to travel mask-free very carefully. Allegiant received a letter from Dr. Yelena Karasina, dated December 3, 2020, requesting a Face Mask Exemption on your behalf. The letter stated you are "suffering from extreme sensitivity," but does not state your "sensitivity" is a disability or qualifies as a disability. Within an email, dated September 1, 2021, you identified yourself as a person with a disability, citing "Sensory Integration Disorder." The letter also states you have "recovered from COVID, and is not contagious." However, the letter does not provide a date when COVID was diagnosed and the letter was written approximately 9 months prior to your request for an exemption."

"After careful review of the letter from Dr. Yelena Karasina, it was determined Allegiant would not be able to honor your request to fly without a mask because your circumstance does not fit within the very narrow category of legally permitted exceptions. Sensory Integration Disorder is not a qualifying disability for a Face Mask Exemption. As standard procedure, Allegiant offered a full refund if you were unable to travel without a compliant Face Mask. However, Allegiant did not have a record of an active reservation in your name."

"According to ACAA Title 14 CFR Part 382 an air carrier must admit or deny a violation to the DOT after receiving a written disability complaint. In this instance, Allegiant will deny a violation when reporting to the DOT."

215)   The DOT reviewed the complaint and they did find them in violation

of the ACAA, on or about October 22, 2022, about a year later (Exhibit 22).

216)   Unfortunately, as is the ongoing problem with the DOT, they have not

been enforcing anything, and they did nothing in this case.

217)   Not allowing me to fly due to my disability and inability to wear a

mask is discrimination.

218)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

219)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**ASIANA**

220)   I notified Asiana with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk. I asked if they will allow me to fly with their airline without a mask.

221)   The airline refuses to allow me to fly with them without a mask, initially, by constantly ignoring my emails. I have been emailing them since on or about Sept 1, 2021. Their response is constantly saying the following. "Thank you for contacting Asiana Airlines Reservation Center, Regional Headquarters, the Americas. We have received your email. It will be processed as soon as possible and in the order it was received."

222)   They obviously received my email multiple times, but refuse to let me fly, by totally ignoring me. This is frustrating and unfair. As a disabled person they're required to accommodate me.

223)   They did not allow me to fly due to my disability and inability to wear a mask. This is blatant discrimination against me due to my disability.  The emails are attached (Exhibit 23).

224)   Finally, I filed a complaint with the DOT, on or about October 29, 2021.

225)   Asiana responded to that email (Exhibit 24), making it very clear again that they will not allow me to fly.

226)   They wrote the following, "We have determined that you are not eligible for an exemption to Asiana's generally applicable mask policy, which currently requires masks or face coverings at all times during flights except at mealtimes."

227)   They continued, "Based upon your correspondence and the doctor's letter, you requested an exemption due to a "sensory integration disorder" that causes "an extreme sensitivity to touch, mostly in the area of [your] head." Notably, in discussing persons with disabilities who might be exempted from the mask requirement based on factors specific to a person, the CDC discussed sensory disabilities.  Specifically, the CDC stated that a "person with a severe sensory

disability" might be exempt if the person "would pose an imminent threat of harm to themselves or others if required to wear a mask." CDC, Disability Exemptions of the Order. The CDC also specifically stated that "[p]ersons who experience discomfort or anxiety while wearing a mask without imminent threat of harm would not qualify for this exemption." Id. Based on this guidance and your doctor's description of your disability, these guidelines indicate that you are not eligible for an exemption."

228)  Their justification is wrong. As you can see from my doctors' letters and documents, I cannot wear a mask, period. This isn't just a discomfort. The law does not allow them to make medical decisions on my disability, especially without their doctors ever talking to me or seeing me.

229)  Their way of banning me from flying was by using this excuse, but ultimately, they straight out denied me from flying.

230)  Additionally, for about two months prior, they were totally ignoring my emails, again, obviously because they didn't want me flying.

231)  Some airline personnel explained to me why airlines were giving me a hard time. They said that other passengers would be upset and make a scene. That's not a good reason to deny passage due to a person's disability.

232)  I was not allowed to fly because I had a disability. I was mistreated and treated differently than non-disabled people. This is discrimination.

233)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

234)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

## AVIANCA

235)   I notified Avianca with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk. I asked if they will allow me to fly with their airline without a mask.

236)   The airline refused to allow me to fly with them without a mask, initially, by constantly ignoring my emails. I have been emailing them since on or about Sept 1, 2021. They did not respond for about a month.

237)   They obviously received my email multiple times, but refuse to let me fly, by totally ignoring me. This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due

to my disability.  The emails are attached (Exhibit 25).

238)  Finally, on or about October 3, 2021, Avianca responded with a letter (Exhibit 26), making it very clear that they will not allow me to fly.

239)  They wrote the following, "After reviewing the document presented by you; Avianca concludes that the letter is not sufficient, to accept an exemption to the face mask policy, especially as document does not include information about his itinerary to confirm if there is no local regulation demanding to wear a mask as no exemption."

240)  Their reasoning is wrong, and barely understandable.  As you can see from my doctors' letters and documents, I cannot wear a mask, period.  This isn't just a discomfort.  The law does not allow them to make medical decisions on my disability, especially without their doctors ever talking to me or seeing me.

241)  Their way of banning me from flying was by using this excuse, but ultimately, they straight out denied me from flying.

242)  Additionally, for about one month prior, they were totally ignoring my emails, again, obviously because they didn't want me flying.

243)  They know which countries they fly to.  If they wanted to suggest that there's a country that doesn't allow mask exemptions, let them point those out. I'm sure that they are wrong about that, but if not, I can avoid those countries.  I needed to get to and from India, Cyprus, Switzerland, United Kingdom, and

several other places.  If I cannot go through one country, then I would have picked another.

244)  It has been my experience that foreign countries treated me wonderfully, with care, empathy, and respectfully. It is very sad that my own country had some strange political bias when it came to masks, to a point that they'll mistreat the disabled to prove their idiotic point.

245)  I was not allowed to fly because I had a disability. I was mistreated and treated differently than non-disabled people. This is discrimination.

246)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

247)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**AZUL**

248)  On or about September 1, 2021, I notified Azul with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's

letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk. I asked if they will allow me to fly with their airline without a mask.

249)   The airline refused to allow me to fly with them without a mask, initially, by constantly ignoring my emails. I have been emailing them since on or about Sept 1, 2021. They did not respond for about 2 months.

250)   They obviously received my email multiple times, but refuse to let me fly, by totally ignoring me. This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.  The emails are attached (Exhibit 27).

251)   Finally, on or about October 3, 2021, Azul responded with a few words, saying, "Hello Aaron, we received your request, I've try to contact you at 516-639-4100 do you have another number that we can contact you?"

252)   I gave them my number, I kept trying to reach them, but to no avail.

253)   On December 13, 2021, they finally responded (Exhibit 28). They wrote the following:

"Regarding your claim about the boarding request without the mask or face shield due to your medical disability, the sensory integration disorder:

custumers within the autism spectrum, intellectual disability or sensory integration disorder that prevent them from properly using a face mask

must present at check-in: the passport; the medical certificate/declaration informing about the special health condition, or the medical certificate/declaration for exemption from the use of a mask."

254)  Now, initially, that may sound like they're finally willing to allow me to fly.  That is not the case.  Several times when airlines said this, I naively booked the ticket, packed my bags, and went to the airport with my doctor's letter. They never let me on.

255)  I already sent them a doctor's letter and my information about my disability.  If they were willing to allow me to fly, they could have responded to my emails, and they could have told me that we will allow you to fly. There should be no need for excessive paperwork and interviews. They can say very simply, yes, you can fly.  I would bring that email with me to the airport.

256)  Each airline had different games to not allow me to fly, but to make believe they're being caring and reasonable. I think British Airways took the cake on that, but Delta was a close second.

257)  Their way of banning me from flying was by using this excuse, but ultimately, they straight out denied me from flying.

258)  Additionally, for over two months prior, they were totally ignoring my emails, again, obviously because they didn't want me flying.

259)  I was not allowed to fly because I had a disability. I was mistreated

and treated differently than non-disabled people. This is discrimination.

260)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

261)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### AUSTRIAN

262)   I notified the airline with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

263)   The airline emailed me on or about September 2, 2021 (Exhibit 29), that I cannot fly with them without a mask, unless I follow a list of requirements that are unnecessary and only designed to keep me from flying. All regular normal people can fly by just ordering a ticket online and heading to the airport.

264)   This airline responded as follows: "If passengers cannot wear a mask for health reasons, they must present a negative Covid-19 PCR test that is not older

than 48 hours at the scheduled start of the journey and a medical certificate on an Austrian Airlines form."

265)   Although they were nice about it, they made an unnecessary hardship for me. The Medical form is for people that have medical issues that need a doctor's approval to fly. Sensory processing disorder is a sensory issue, not a medical issue that would affect my ability to fly. They know that. They use the Medical form to impede my flying. I already had Covid. It's in the Doctor's letter. CDC says Covid reinfection is rare.

266)   These precautions are not designed to protect the other passengers, but rather are designed to make it difficult enough for me that they hope I'll stay home or try another airline.

267)   All normal regular people without disabilities get to just book a flight and hop on a plane, as I have always done before Covid. Someone like me, who has a disability and therefore cannot wear a mask, is made to jump through hoops in order to hopefully get to fly. This is discrimination.

268)   I fly over 40 flights each year. I normally book my flights a few hours before I fly. Most other people can do that now.

269)   I would need my own personal physician to fill out forms for me every several days in order to accommodate such requests.

270)   It should be very simple. I send them my Doctor's letter clarifying that

I have a sensory issue and CANNOT wear a mask or face shield, and that should be the end of it. This does not need to be rewritten right before each flight.

271)  This is a permanent disability, and everyone knows that. Maybe the reason for creating this jumping-through-hoops scenario, is to discourage fakers from lying and playing games. That is their problem. I'm the one that suffers.

272)  Anyway, I don't think that real Doctor's would sign letters that are lies. Let them investigate those that they are skeptical of. I shouldn't have to suffer. This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

273)  The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

274)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

275)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**AIR CANADA**

276)  I notified Air Canada with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk. I asked if they will allow me to fly with their airline without a mask.

277)  The airline refused to allow me to fly with them without a mask, initially, by constantly ignoring my emails. I have been emailing them since on or about Sept 1, 2021. They did not respond for over two months.

278)  They obviously received my email multiple times, but refuse to let me fly, by totally ignoring me. This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.  The emails are attached (Exhibit 30).

279)  When they responded initially, on November 9, 2021, they just wrote the following, "We appreciate your feedback. You can rest assured that an Air Canada representative will get back to you as soon as possible. Thank you for your patience as you wait to hear from us." That was just gaslighting.

280)  They finally responded on or about November 12, 2021, only after I filed a complaint with the DOT. As expected, they were not satisfied with my doctor's letter and were playing games like most of the other airlines.

281)  They wrote as follows:

"According to the US Department of Transportation's Rule on "Non-Discrimination on the Basis of Disability in Air Travel" (14 CFR Part 382), Air Canada is able to request that a passenger provide us with a Medical Certificate completed by their physician when there is medical reasonable doubt that the passenger can complete the flight safely without requiring extraordinary assistance during the flight.

The above said, you provided Air Canada with a doctor's letter - which is not sufficient. The Air Canada mask exemption medical certificate must be completed – at

https://www.aircanada.com/content/dam/aircanada/portal/documents/PDF/en/covid medical-certificate-en.pdf. Once that has been submitted, the MEDA desk will review and advise if the mask exemption is approved. As well, there is a requirement to provide a negative COVID-19 test; the test must be taken within 72 hours of each flight departure."

282)   They know that sensory processing disorder has no effect on my ability to fly.  It is against ACAA law to request the medical certificate.

283)   The other demands were certainly unnecessary and requirements that the non-disabled were not required to perform and provide. As is the same with most other airlines, the useless unnecessary demands are set up to impede my ability to fly anywhere.

284)   This is straightforward discrimination against me due to my disability.

285)   The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

286)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

287)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### AIR CHINA

288)   I notified Air China with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

289)   The airline emailed me that I should call the U.S. office, which I did. The U.S. office of Air China told me that I cannot fly with them without a mask. I recorded this call (in a state where that is legal). This is frustrating and unfair.

290)   As a disabled person they're required to accommodate me. This is