blatant discrimination against me due to my disability. The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

291)   This airline just said no.  Sorry, but we cannot let you fly, since you have a disability and cannot wear a mask.

292)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

293)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### **BRITISH AIR**

294)   On or about December 13, 2020, Plaintiff reached out to the medical clearance unit at British Air explaining the disability and requesting clearance to fly with British Airways without a mask.

295)   On December 14, 2020, British Air medical clearance unit approved his request, advising Plaintiff to carry his doctor's letter to show the staff during the trip upon request (Exhibit 31).

296)   The medical clearance unit understood the law clearly, and if you read their letter, they weren't actually giving me clearance.  They were saying that I do not need clearance.  They were saying, just bring your letter with you to make life easier, which I did. God bless them.

297)   On or about January 17, 2021, Plaintiff purchased a ticket on British Airways to fly from New York to Bangalore, India, where Plaintiff has a very important and valuable business opportunity that he has been working towards for over 6 years. The flight was subsequently canceled, and Plaintiff switched his flight to leave on January 22, 2021.

298)   On January 22, Plaintiff arrived at Terminal and came to his flight with evidence of a medical disability and inability to wear a mask, namely a doctor's letter, and a pre-approval email from the British Airways medical clearance unit. He also had a valid Indian Visa.

299)   The airline check-in staff kept him there for over an hour and a half questioning the disability and saying, "you cannot fly without a mask." Eventually they agreed that they can allow him to fly without a mask, but said they cannot let him board because the visa isn't valid. They called their office in Bangalore and that's what they were told. It was not true, and they admitted that later.

300)   Plaintiff went home and contacted the Indian Consulate and the Bureau of Immigration of India, and received emails from each confirming that the

visa is actually valid.

301) He returned to the airport on Feb 3 and tried again. He went through a very similar routine, where they were trying to explain to him that the laws changed and now, he cannot fly without a mask. Eventually, again they said the visa was not valid, even though Plaintiff showed them the emails from the Indian Consulate and Immigration offices.

302) At the end, they said he should come back Friday night and they will get him on. They said it was just too late, and too close to the flight's departure.

303) On or about Feb 5 they kept Plaintiff there for another hour and eventually said that they cannot fly me to India due to my visa being invalid. This is absolutely not true and I brought them evidence to that.

304) All this time I was staying in Philadelphia at a friend and had to drive a few hours each way to and from the airport.

305) On or about Tuesday Feb 9, I drove to Dulles Airport and talked to the Airport manager, Matt Roberts. Dulles Airport was a relatively similar distance from Philadelphia in the other direction, so it made sense to try from there.

306) I was hoping that maybe the people are different there and I'd be treated better. He seemed nice and helpful. He looked into the visa issue and after an hour of research he told me that the NY check-in staff made a mistake and my visa is absolutely valid. He said he will call me in a day or two to confirm.

307)  I called him on or about Thursday Feb 11, and he told me, yes, the visa is fine, but they cannot allow me to fly without a mask. He sent an email to that effect too (Exhibit 32).

308)  I asked him to speak to the Complaint Resolution Official (CRO), and he said that he's the CRO and he cannot allow me to fly without a mask.

309)  This is so frustrating. They were playing with me. My time has value. My life has value. I need to travel for my income. This is in violation of federal and state laws. This is so unfair.

310)  With the hope that at some point, British Airways and the other defendants realized that they were violating the law, and were prepared to finally allow Plaintiff to fly without a mask, Plaintiff sent another email on December 14, 2021, asking if he can now fly without a mask due to his disability.

311)  Matthew Roberts responded on December 15, 2021, that nothing has changed, confirming that Plaintiff can still not fly without a mask in spite of his disability (Exhibit 33).

312)  The disability discrimination is continuous from January 22, 2021, through December 15, 2021, and ongoing thereafter.

313)  While several other airlines do fly to destinations that are necessary for Plaintiff to reach, only Air France has allowed Plaintiff to fly maskless, without discrimination. In those months/years, Plaintiff had serious difficulty finding

available flights on Air France to Bangalore India, and other places where he needs to travel to and from.

314) This leaves Plaintiff at the mercy of British Air, and as you see, there was and is no mercy at all. Plaintiff was completely unable to fly on any British Air flight during that time.

315) Not allowing Plaintiff to fly, and mistreating him as described due to his disability, when people who are not disabled are not treated this way, that is discrimination.

316) The discriminations described continued even beyond the time that the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days. British Air continued it beyond that time.

317) This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### CATHAY PACIFIC

318) On or about September 1, 2021, I emailed Cathay Pacific Airways, asking if they will allow me to fly on their airline without wearing a mask, as I

have a medical disability. I sent them a copy of my Doctor's letter clarifying that I should not wear a mask, and also attesting to the fact that I already had Covid and therefore I don't pose a direct health risk.  I explained that relevant US laws require them to accommodate me.

319)   They emailed me back (Exhibit 34) that they cannot approve my flying. Then they began questioning my medical diagnosis. They are not my medical doctor, and I doubt Victor Chan from customer service is a medical doctor at all. My Doctor's letter was very clear.

320)   I understand that many people are unaware of the severity of a sensory processing disorder, but I don't believe it is appropriate, nor within the law that I should be required to educate them. I told them that I have a medical disability, I sent them a doctor's letter which is not required by law, and they refused to let me fly. This is discrimination against me for my disability. They can always google it, if they would like.

321)   Let's imagine for a minute if a person asks for a wheelchair, and they want to know what is the reason for the wheelchair.  Normally, they know not to ask these questions.

322)   Imagine they ask, and the person says "I have a torn meniscus." So, they respond, "I have a family member with a torn meniscus, and he can walk just fine." This would be crazy, wrong, and hurtful.  If they asked for a letter from the

doctor in that scenario, the people would be offended and the DOT would probably give them a violation.

323)   I gave them my doctor's letter that very clearly says <u>that I am "unable to wear face mask or face shield, and should not be required to do so."</u> That should be the end of it.

324)   We don't usually require letters from doctors in order to get a wheelchair, or any other disability needs, but due to the fear and panic unique to Covid-19, I provided a doctor's letter to be extra cooperative.  I certainly should not be put to a medical interview by a person who is not a doctor.

325)   I filed a complaint with the DOT, and the airline responded with a similar response.  They clearly refused to allow me to fly.

326)   They discriminated against me by not allowing me to fly and by treating me differently than others due to my medical disability.

327)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

328)   This Defendant's actions and/or inactions directly caused Plaintiff's

injuries.

### CHINA SOUTHERN

329)  I notified the China Southern with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

330)  The airline emailed me on or about September 10, 2021 that I cannot fly with them without a mask (Exhibit 35). This is frustrating and unfair. As a disabled person they're required to accommodate me.

331)  This is blatant discrimination against me due to my disability. The DOT made it very clear to all the airlines that they must honor such exemptions, and the ACAA is pretty clear, but seemingly this airline does not care.

332)  By not allowing me to fly because of my disability and inability to wear a mask, they discriminated against me.

333)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

334)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**DELTA**

335)   Delta airlines claims that they do provide exemptions for the disabled, but they will provide nothing in advance.  You will never know if you can fly until you get there. You must show up in the airport and only then will they make a determination. That alone is discrimination, as non-disabled don't have to have anxieties by coming to the airport and not knowing if they will be able to board.

336)   Several times upon contacting Delta, and asking for a confirmation in advance, they responded that they cannot provide any advance clearance.  They said that at the airport they will be able to give you a medical clearance, if they feel it is appropriate.

337)   The most recent email in that regard was February 23, 2022 (Exhibit 36). It said, "While we would like to offer special consideration in your case, we must have the same process for all passengers with disabilities that prevent them from wearing masks.  Our Fly Clear process can only be done at the airport on the day of departure.  We regret any inconvenience this may cause."

338)   Well, that system did NOT work, and my fears and anxieties turned out to be well founded. I was booked on an Air France flight from Bangalore to Paris, with a two-hour stopover in Paris. My next flight was with Delta, flying to New

York (as a partner airline with Air France). Confirmation Code TGSPV9 on March 31, 2022, Delta Airlines flight number DL263 original flight scheduled for 10:20AM.

339)   Of course, during the entire flight from Bangalore to Paris I was having anxiety and fear, thinking that when I will get to Paris, and Delta will say "sorry, no, you cannot travel with us without a mask," as Delta refused to confirm anything in advance. I cannot wear a mask due to my disability, so that means that I am stuck in Paris.

340)   On that first flight, I tried to calm myself, thinking, "don't worry, they have it down to an organized system. Let the process happen. It will all be okay. You had a great experience last time you flew with Delta, and it will all be okay. Delta is a compassionate and humane airline, and they will take care of people with disabilities." That was my attempt to calm myself.

341)   Well, that certainly didn't happen. First of all, my wheelchair never came and I ended up having to walk with my cane from gate to gate. When I got to the gate, I kept going over to the people at the gate to try to confirm that I will be able to fly. They kept telling me that I need to wait for the Delta supervisor.

342)   You can imagine how nerve-racking that was for me. I had arrived to Paris around 8AM. Eventually, at about 10AM, Ibrahim from Delta came over to me. He seemed like a kind person. He reviewed my doctor's letter and my passport.

He then got on the phone and was talking to Delta Headquarters in the U.S.

343) After a few minutes he got off the phone, apologized, and said that Delta will not allow me to fly without a mask. I asked if I can speak to them. He said sorry, but you cannot. My fears and anxieties were proved right. They discriminated against me due to my disability.

344) This, of course, is a violation of the Air Carrier Access Act. 14 CFR § 382.19 "May carriers refuse to provide transportation on the basis of disability?

(a)   As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part."

345) Now, you might suggest that there was a legitimate safety concern, and if I was on that plane without my mask, I would pose a "direct threat" to other passengers. That is the only good excuse to allow you to deny me access to travel. There are many reasons why that is absurd as described above, but I'll present to you the most pertinent.

346) Please see the attached letter (above) sent by multiple airlines to the President and his cabinet. This was also signed by Ed Bastian, CEO of Delta Air Lines.

347) The letter states that, "The science clearly supports lifting the mask mandate..." And "Now is the time for the Administration to sunset federal

transportation travel restrictions including the international predeparture testing requirement and the federal mask mandate – that are no longer aligned with the realities of the current epidemiological environment."

348)   There is no way that Delta can write and support such a letter, and then turn around to me, and say "you're a direct threat.," This is even without speaking to me.

349)   So, no, the system that they set up for this did not work. It is horrible that they can subject disabled people to sit with so much anxiety, as they refuse to clear us in advance. It is horrible that they were prepared to leave me stranded in Paris. It is horrible that their people will tell me, "sorry, you must wear a mask," as if it is a choice I can make. Do they tell wheelchair passengers, "sorry, but you're going to have to walk?"

350)   What has happened to the people who claim to be the modern compassionate people, who stand up against civil rights abuses around the world? Without any rational reason, we can quickly turn into monsters. "Sorry Mr. disabled guy, stay home," or in this case, "stay in Paris."

351)   Lucky for me, a kind Air France agent helped me get on an Air France flight at 2:20Pm. She was kind and compassionate and saw what I was being put through. It was nice to see some compassion again. Overall, Air France were good people. Most other airlines, were sadly not.

352)  We all know that there is no longer a need for masks on airplanes, as evident from the letter that many of the airline CEOs sent to the President and his Cabinet.

353)  We all know, or certainly should know that the ACAA laws require the airlines to accommodate me. Yet, Delta let me suffer, and continued to refuse to give me a medical clearance in advance until the policy was paused.

354)  I immediately called the disability telephone number from Delta's website (404-209-3434). The message asks for your name & complaint & telephone number, and flight information. It also promises that you will be contacted "on the next business day."  I provided all that and followed it up with an email.  I never heard back from them.

355)  I filed a complaint with the DOT, and then I heard back from Delta by email (Exhibit 37). In that email they explain, "Stat-MD denied the request as SPD is not a justification." (SPD stands for sensory processing disorder)

356)  Here we see a bit of the game that these airlines and medical defendants are playing.  Most airlines either contracted with Stat-MD, or Medaire, and they become the excuse why they don't have to accommodate a disability. "We asked STAT-MD and sorry, they said no. It's not our fault. It's STAT-MD."

357)  I reached out to STAT-MD and they say please talk to your airline. Nice little game they have going.

358) This is what is written on the STAT-MD website: ""STAT-MD supports various airlines uphold their policies, including requirements for face masks. If you are traveling, or are considering traveling, and have questions regarding a wearing a face mask during flight, please contact the specific airline directly. Requests received from passengers or potential passengers are unable to be processed."

359) STAT-MD says, "Don't call me, call the airline." Delta says, "STAT-MD said you cannot fly." Sounds to me like a bunch of middle school children blaming their indiscretions on everyone else.

360) That is why I included both medical advisory companies, as they are an essential part of the conspiracy and the discrimination itself. Yes, they are outside contractors, but they are built in to the system directly as in this case with Delta.

361) Not allowing me to fly and treating me differently than those who are not disabled is the definition of discrimination. Delta and STAT-MD discriminated against this Plaintiff, and didn't even have the decency to get on the phone with him while they left him stranded in France.

362) The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom

Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022.

Most airlines ended the mask rules within several days.

363) This Defendant's actions and/or inactions directly caused Plaintiff's

injuries.

**ELAL**

364) On or about February 10, 2021, ELAL agreed to allow me to fly

without a mask due to my disability (Exhibit 38). That sounded nice, but it was

just a lie.

365) I had a flight booked with ELAL for May 25, 2022. This is even

beyond the time that most other airlines stopped the mask mandates completely.

366) I sent emails and I called them. I gave more than enough notice. They

refused to respond (Exhibit 39).

367) On their website it says that all passengers must wear masks, unless

you receive an approval from the medical department. They ignored me and didn't

allow me to fly due to my disability. They discriminated against me by not

allowing me to fly and by treating me differently than non-disabled.

368) Additionally, in their requirements for a mask exemption, it says that I

would need proof of vaccination, which is another violation of the ACAA, as other

passengers who are not disabled do not need to show that.

369) I called several times and spoke to people who said they will look into

it. No one did.

370)    Eventually, I had to cancel that flight (Exhibit 40), and book with another airline. It was very upsetting, as my 20-year-old daughter was being treated for a blood clot in Israel and I was trying to fly back with her to get her better medical care in New York. The last thing that I needed was that the airline won't let me fly.

371)    They treated me differently than those who are not disabled and thus discriminated against me due to my disability.

372)    The discriminations described continued even beyond the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days. This particular airline continued much longer than most others, as the story shows.

373)    This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**EMIRATES**

374)    On or about December 14, 2020, and again on or about February 8, 2021, Defendant Emirates notified Plaintiff that he will be required to provide a

medical form in order to fly, signed by a doctor confirming that the passenger is capable of flying.

375)  This is in direct violation of  14 CFR § 382.21, "(a) You must not do any of the following things on the basis that a passenger has a communicable disease or infection, unless you determine that the passenger's condition poses a direct threat: (3) Impose on the passenger any condition, restriction, or requirement not imposed on other passengers; or Require the passenger to provide a medical certificate."

376)  The determination of direct threat must be an individualized evaluation. These policies by Emirates were made for everyone who cannot wear a mask. This is in direct violation of this statute, and discrimination against Plaintiff due to his disability.

377)  Plaintiff frequently flies to India and the Middle East, and several times he flew with Emirates. In the two plus years of Covid, Plaintiff had many occasions where he would have flown with Emirates, but could not due to this discrimination.

378)  The airline treated me differently than those without a disability, due to my disability.  Plaintiff incorporates here the same issues as described regarding the various other airlines requiring specialized Medical Forms.

379)  Defendant treated Plaintiff differently due to his disability, as he treats those without disabilities. That is discrimination.

380)  The discriminations described continued at least until the Honorable

Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

381) This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**ETIHAD**

382) In mid-December 2020, Plaintiff asked defendant Etihad to be allowed to fly without a mask due to his disability. Etihad refused access for Abadi to fly (Exhibit 41).

383) While they did mention that <u>maybe</u> their wellness person can offer an exception, they refused to offer that.

384) Their justification is safety and/or health, yet the determination of direct threat must be an individualized evaluation. These policies by Etihad were made for everyone who cannot wear a mask. This is in direct violation of this statute, and discrimination against Plaintiff due to his disability.

385) Plaintiff frequently flies to India and the Middle East, and several times he flew with Etihad. In the two plus years of Covid, Plaintiff had many occasions where he would have flown with Etihad, but could not due to this discrimination.

386)   Finally, Etihad sent an email (Exhibit 42) with a list of requirements. These are all discriminatory, as non-disabled are not required to do anything of the sort. The list included the following:

"1.      Provide a note that the person (include full name, date of birth, and passport number) has a disability that prevents him or her from wearing a face mask or safely wearing a face mask because of a disability as defined by 42 USC 12101, et seq. Such note must, at a minimum, be issued not less than 21 days from the first departure date.  Such note must also certify that notwithstanding the condition that prevents the passenger from wearing a face mask, the passenger is fit to fly for the duration of your journey. For example, if your travel time each direction is 18 hours in the air, the note should make reference to the specific travel time. Assuming the passenger secures such a certified note, the passenger must:

2.  Maintain a hard copy of the note for the duration of travel and make it available for inspection at any time by any Etihad Airways employee and any authorized governmental or airport personnel.

3.  Present at check-in a negative PCR test consistent with the requirements of the passenger's itinerary (the advance time varies by country and are available on www.etihad.com).

4. Agree to an evaluation at check-in, at Etihad Airways' sole discretion, of your fitness to travel, by Etihad Airways' independent medical contractor MedAire

https://www.medaire.com/medaire-old/airlines/solutions/medical-advisory-
services-medlink. This evaluation will be limited to the passenger's physical fitness
to travel.

5. Sit in the seat designated by Etihad Airways - no seat changes are permitted.
This requirement is to facilitate, to the extent practical, maintaining social
distancing of 1.5 - 2 meters (varies by aircraft) to help mitigate the risk of infection
to passengers.

6. Wear a face mask at any time you are out of your assigned seat, or when a
member of cabin crew approaches your seat for cabin service (alternatively - you
can decline all cabin service). This requirement applies irrespective of any
exemption.

7.      Do not leave your assigned seat except to: Enter or exit the aircraft;
Approach the lavatory or return to your assigned seat from the lavatory;
Follow crew instructions; or
React to an emergency situation.

8. Wear a full face shield at times when on board the aircraft. See, e.g.
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7557567/ for acceptable
examples.

9.      Comply with all crew instructions."

        387)   This is all pure discrimination, as it is designed to not allow me to fly

at all, and it is requiring things that non-disabled are not required. Additionally, initially and for months they refused to allow me to fly with them at all. That is discrimination, because they refused to fly me only because of my disability where I cannot wear a mask, while non-disabled people had no problem.

388)    The discriminations described continued at least until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

389)    This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### EVA AIR

390)    I notified the airline with a copy of a doctor's letter multiple times attesting to my inability to wear a mask (Exhibit 43). Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

391)    The airline refuses to allow me to fly with them without a mask, by constantly ignoring my emails. I have been emailing them since Sept 2, 2021. They obviously received my email multiple times, as it did not bounce back, and the

email address is specific to their disability department. They refuse to let me fly, by totally ignoring me. This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

392)   The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

393)   Eventually, in January 2022, they finally responded to my email (Exhibit 44) with apologies, but still refused to allow me to travel.

394)   They discriminated against me because of my disability and treated me differently than those that are not disabled.

395)   The discriminations described continued at least until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

396)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### **FINNAIR**

397)   On or about September 1, 2021, I emailed Finnair and explained my

disability, with a copy of my doctor's letter, and asked if they'll allow me to fly without a mask.

398)   They responded within a few days (Exhibit 45) and said, "If a customer is seeking exemption from wearing a mask (due to medical grounds) we require a MEDIF form and a negative Covid-19 test not older than 72 hrs."

399)   These are all things that the non-disabled are not required to do. They discriminated against me due to my disability.

400)   The medical form (MEDIF) is used when doctors need to confirm that a patient who is seriously ill is approved to fly. People with disabilities have no need for such forms.  People in wheelchairs are not asked for MEDIF forms.  It's against the ACAA Laws as described above.

401)   The purpose here, why airlines want to require these extensive processes, is to discourage travel for someone with my kind of disability. They end up being very successful.

402)   Imagine if for every flight I need a doctor to fill out a whole form confirming that I am Okay to fly.  A responsible honest doctor will not write such a letter without having an in-person appointment, plus some bloodwork. This is not a feasible process; it is just a game.

403)   As described above, ACAA laws consider this discrimination, and rightfully so, because it is only being used as a tactic to keep me off their planes.

404)  They discriminated against me because of my disability and treated me differently than those that are not disabled.

405)  The discriminations described continued at least until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

406)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**FRONTIER**

407)  I reached out to Frontier on or about January 24, 2021, asking if I can fly without a mask due to my disability.

408)  They responded a few days later, saying no, I cannot fly without a mask in spite of my disability (Exhibit 46).

409)  They wrote the following: "Frontier along with most carriers, does require all passengers 2 years of age and older to wear a mask at all points of their travel. This is ticket counter, gate area, onboard the aircraft and baggage claim. Respectfully, there are no exemptions. At this time I believe the only carriers that accept a medical exemption are Delta and Hawaiian."

410)  They refused to allow me to fly with them due to my disability. This is discrimination, as they treated me differently than the non-disabled. I filed a complaint with the DOT.

411)  On or about February 8, 2021, they responded that they now have exemptions, but only under certain strict requirements. They did not confirm that I can travel.

412)  They required a Covid test result, and a ten-day advance notice amongst other demands.  This is unreasonable and discriminatory, as non-disabled do not need to do these things.

413)  They discriminated against me because of my disability and treated me differently than those that are not disabled.

414)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

415)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**GULF AIR**

416) On or about March 20, 2022, I contacted Gulf Air on their website and explained my disability, and asked if they'll allow me to fly without a mask. I attached a letter from my doctor to an email to them.

417) They kept not answering me. They kept saying, "Thank you for contacting Gulf Air and providing us with the opportunity to assist you. Your reference number is SR202228921 which we kindly ask you to include in any further communication with us. We appreciate your patience while we look into your comments and respond to you at the soonest."

418) By ignoring me, they were refusing to allow me to fly, as opposed to non-disabled who can fly at whim.

419) They finally responded on or about June 1, 2022 (Exhibit 47), to say, "Please be advised that for the detailed and updated procedure and information, please visit our website. An online medical form has to be filled up by your consultant doctor. https://www.gulfair.com/special-assistance/medical-cases "

420) In their requirements they require MEDIF form amongst other demands.

421) The medical form (MEDIF) is used when doctors need to confirm that a patient who is seriously ill is approved to fly. People with disabilities have no need for such forms. People in wheelchairs are not asked for MEDIF forms. It's against the ACAA Laws as described above.

422)  The purpose in this case to require these extensive processes is to discourage travel for someone with my kind of disability. They end up being very successful.

423)  Imagine if for every flight I need a doctor to fill out a whole form confirming that I am Okay to fly.  A responsible honest doctor will not write such a letter without having an in-person appointment, plus some bloodwork. This is not a feasible process; it is just a game.

424)  As described above, ACAA laws consider this discrimination, and rightfully so, because it is only being used as a tactic to keep me off their planes.

425)  They discriminated against me because of my disability and treated me differently than those that are not disabled.

426)  The discriminations described continued at least until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

427)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**IBERIA**

428)   I notified Iberia with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

429)   The airline emailed me (Exhibit 48) on or about September 3, 2021 that I cannot fly with them without a\mask, unless I follow a list of requirements that are unnecessary and only designed to keep me from flying.

430)   All regular normal people can fly by just ordering a ticket online and heading to the airport.

431)   This airline requires the following: "In order to confirm your request kindly request you to send our medical form (INCAD form) completed, as well, as the medical report. All the fields in the application have to be filled in capital letters or by typewriter and the application form must be signed by the attendant doctor ..."

432)   The MEDIF form is for people that have medical issues that need a Doctor's approval to fly. Sensory processing disorder is a sensory issue, not a medical issue that would affect my ability to fly. They know that. They use the Medif form to obstruct my flying.

433)   Other passengers don't need to get a Covid test in order to fly. That's another way to chase me away. I already had Covid. It's in the Doctor's letter. CDC

says Covid reinfection is rare. These precautions are not designed to protect the other passengers, but rather are designed to make it difficult enough for me that they hope I'll stay home or try another airline.

434)   All normal regular people without disabilities get to just book a flight and hop on a plane. Someone like me is made to jump through hoops in order to hopefully get to fly. I fly over 40 flights each year. I normally book my flights a few hours before I fly. Most other people can do that now. I would need my own personal physician to fill out forms for me every several days in order to accommodate such requests.

435)   It should be very simple. I send them my Doctor's letter clarifying that I have a sensory issue and CANNOT wear a mask or face shield, and that should be the end of it. This does not need to be rewritten right before each flight. This is a permanent disability, and everyone knows that. Maybe the reason for creating this jumping- through-hoops scenario, is to discourage fakers from lying and playing games. That is their problem. I'm the one that suffers. Anyway, I don't think that real Doctor's would sign letters that are lies. Let them investigate those that they are skeptical of. I shouldn't have to suffer. This is frustrating and unfair. As a disabled person they're required to accommodate me.

436)   This is blatant discrimination against me due to my disability. The DOT made it very clear to all the airlines that they must honor such exemptions,

but seemingly this airline does not care. The ACAA is very clear as described above.

437)    The discriminations described continued at least until the Honorable Kathryn Kimball Mizelle, and beyond, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

438)    This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**JETBLUE**

439)    On December 10, 2020, Plaintiff had a flight booked on JetBlue from Newark Airport to Santo Domingo, Dominican Republic. It was an extremely important business trip, that included meetings with the Dominican President's top people. Plaintiff could not miss those meetings.

440)    Plaintiff notified the check-in staff that he could not wear a mask due to sensory issues. Angelique, the supervisor, demanded that he show documentation. Plaintiff provided a doctor's letter. They were rude and obnoxious and did not allow him to board the plane without a mask.

441)    The doctors letter made it clear that he already had Covid, so it was

not a health issue, as he cannot transmit any disease. It is just a policy issue. They refused to allow him to travel because of his disability.

442)    He did end up going anyway with a mask but it was very painful. Sensory processing disorder when triggered can be extremely painful. Please do not take it as evidence that Plaintiff can wear a mask. It was torture, and Plaintiff never tried that again. In those days, it was a bit easier, as you can seem to be eating most of the flight and not wear the mask, and you weren't bothered. Since then, flight attendants got much more vigilant, and would come after you yelling if your mask was off for several minutes. In any case, it was the first and only time Plaintiff wore a mask for even part of a flight, and he certainly learnt his lesson, that it was not something he can ever try again.

443)    JetBlue did not permit this Plaintiff to fly on its airplanes due to his disability, during the entire mask mandate period, and prior.

444)    JetBlue sent an email (Exhibit 49) and a letter (Exhibit 50) confirming that they will not allow for an exemption for someone with a disability who cannot wear a mask.

445)    Plaintiff frequently flew with JetBlue over the years, and would have flown with JetBlue if not for these discriminations.

446)    Plaintiff was treated horribly and discriminated against by JetBlue due his disability. He was tortured on the flight that he did take. He was refused the

ability to fly without a mask. He was ridiculed, yelled at, and made very uncomfortable in front of hundreds of people in the terminal. All these things were treatments to him due to his disability, while non-disabled had none of these problems.

447)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

448)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**JORDANIAN**

449)   I notified Jordanian with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

450)   I've been trying to get permission to fly since on or about September 2, 2021, but they were ignoring me. The airline finally emailed me (Exhibit 51) November 3rd, 2021, that I cannot fly with them without a mask, unless I follow a

list of requirements that are unnecessary and only designed to keep me from flying.

451)    All regular normal people can fly by just ordering a ticket online and heading to the airport.

452)    This airline requires me to register 10 days in advance, provide a negative Covid test, a medical certificate, and <u>even a vaccine certificate</u>. This is frustrating and unfair.

453)    As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

454)    These requirements are violations of the ACAA laws, as described above.

455)    They discriminated against me because of my disability and treated me differently than those that are not disabled.

456)    The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

457)    This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### KENYA

458)  I notified Kenya with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

459)  The airline emailed me on September 3, 2021 (Exhibit 52) that I cannot fly with them without a mask. This is  frustrating and unfair.

460)  They wrote, "Unfortunately, the Airline in conjunction with the Ministry of Health protocols and the Government does not exempt anyone from wearing a face mask unless toddlers below two years. Therefore, be guided."

461)  As a disabled person  they're required to accommodate me. This is blatant discrimination against me due to my   disability.

462)  The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

463)  Not allowing me to fly is a violation of the ACAA laws, as described above.

464)  They discriminated against me because of my disability and treated me differently than those that are not disabled.

465)  The discriminations described continued at least until the Honorable

Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

466) This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**KOREAN**

467) I notified the airline with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

468) The airline refused to allow me to fly with them without a mask, by constantly ignoring my emails, and/or responding that they're looking into it further, but never approving me for travel.

469) I have been emailing them since Sept 3, 2021. They obviously received my email multiple times, but refuse to let me fly, by not approving me to fly. It has been over two months of this back and forth.

470) As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability. The DOT made it very clear

to all the   airlines that they must honor such exemptions, but seemingly this

airline does not care.

471)   They finally responded on or about November 18, 2021 with a formal

denial (Exhibit 53), saying, "Unfortunately, we regret to inform you that we would

not be able to accommodate your request as sensory integration disorder is not

included under the mask-wearing exempted cases. This decision was made after

considering the CDC and TSA guidelines on disability exemption for mask-

wearing. Due to the above reason, a mask would be required should you wish to

travel on Korean Air."

472)   Not allowing me to fly is a violation of the ACAA laws, as described

above.

473)   They discriminated against me because of my disability and treated

me differently than those that are not disabled.

474)   The discriminations described continued until the Honorable Kathryn

Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for

transportation, by determining that it was arbitrary and capricious, and the CDC

exceeded its authority, amongst other issues. The case was Health Freedom

Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022.

Most airlines ended the mask rules within several days.

475)   This Defendant's actions and/or inactions directly caused Plaintiff's

injuries.

### LATAM

476)  I notified the airline with a copy of a doctor's letter attesting to my inability to wear a mask.  Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

477)  The airline emailed me on September 3, 2021 (Exhibit 54), that I cannot fly with them without a mask, unless I follow a list of requirements that are unnecessary and only designed to keep me from flying.

478)  All regular normal people can fly by just ordering a ticket online and heading to the airport.

479)  This airline responded as follows: "If  you want to travel without a mask, your doctor  must complete the attached form, the Latam  doctors will study it and give you an answer, however, you must remember, this is an ordinance of the health authorities, so finally at the airport they will say the last word."

480)  Notice how at the airport the staff has the last word and can deny me. I can go through the whole process and still get turned away at the airport.

481)  The Medical form is for people that have medical  issues that need a Doctor's approval to fly. Sensory processing disorder is a sensory issue, not a medical issue that would affect my ability to fly.  They know that.  They use the

Medical form to impede my flying.

482)  I already had Covid. It's in the Doctor's letter. CDC says Covid reinfection is rare. These precautions are not  designed to protect the other passengers, but  rather are designed to make it difficult enough for me that they hope I'll stay home or try another airline.

483)  All normal regular people  without disabilities get to just book a flight, and hop on a plane. Someone like me is made to  jump through hoops in order to hopefully get to fly.

484)  I fly over 40 flights each year. I normally book my flights a few hours before I fly. Most other people can do that now. I cannot.

485)  I would need my own personal physician to fill out  forms for me every several days in order to accommodate such requests.

486)  It should be very simple. I send them my Doctor's letter clarifying that I have a sensory issue and CANNOT wear a mask or face shield, and that should be the end of it. This does not need to be rewritten right before each flight.

487)  I have a permanent disability, and everyone knows that sensory processing in an adult does not come on certain days and go away on other days.

488)  Maybe the reason for creating this jumping-through-hoops scenario, is to discourage fakers from lying and playing games. That is their problem. I'm the one that suffers.

489)  Anyway, I don't think that real Doctor's would sign letters that are lies. Let them investigate those that they are skeptical of. I shouldn't have to suffer. This is frustrating and unfair.

490)  As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

491)  The DOT made it very clear  to all the airlines that they must honor such  exemptions, but seemingly this airline does not  care.

492)  After I filed a complaint with the DOT, they doubled down on a subsequent letter (Exhibit 55).

493)  Not allowing me to fly like other people is a violation of the ACAA laws, as described above.

494)  They discriminated against me because of my disability and treated me differently than those that are not disabled.

495)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

496)  This Defendant's actions and/or inactions directly caused Plaintiff's

injuries.

### LOT

497)   I notified LOT with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

498)   The airline emailed me on or about October 12, 2021 (Exhibit 56), finally with a response as follows: "Frankly speaking it is possible for you to fly without a mask, but the final decision is left for the personnel at the gate."

499)   Clearly, I cannot book a flight with them, as when I get to the airport, I may or may not be able board, depending on the mood of the crew.

500)   Additionally, once I reach Poland, if I succeed on the flight there, I may be stuck there indefinitely, if the crew coming back from Poland won't let me board. This is frustrating and unfair.

501)   As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

502)   The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

503)   Not allowing me to fly like other people is a violation of the ACAA laws, as described above.

504)   They discriminated against me because of my disability and treated me differently than those that are not disabled.

505)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

506)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### LUFTHANSA

507)   On or about December 14, 2020, and again on or about February 11, 2021, (Exhibit 57) Defendant Lufthansa notified Plaintiff that he will be required to provide a medical form in order to fly, signed by a doctor confirming that the passenger is capable of flying.

508)   This is in direct violation of  14 CFR § 382.21, "(a) You must not do any of the following things on the basis that a passenger has a communicable disease or infection, unless you determine that the passenger's condition poses a direct threat: (3) Impose on the passenger any condition, restriction, or requirement not imposed on other passengers; or Require the passenger to provide a medical certificate."

509)    The determination of direct threat must be an individualized evaluation. These policies by Lufthansa were made for everyone who cannot wear a mask. This is in direct violation of this statute, and discrimination against Plaintiff due to his disability.

510)    Plaintiff frequently flies to India and the Middle East, and dozens of times he flew with Lufthansa. In the two plus years of Covid, Plaintiff had many occasions where he would have flown with Lufthansa, but could not due to this discrimination.

511)    Not allowing me to fly like other people is a violation of the ACAA laws, as described above.

512)    They discriminated against me because of my disability and treated me differently than those that are not disabled.

513)    The discriminations described continued at least until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

514)    This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**MOKULELE**

515)  I notified the airline with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

516)  The airline emailed me on or about Sept 6, 2021 (Exhibit 58)  that I cannot fly with them without a mask.

517)  They wrote, "Thank you for contacting us concerning this matter. However, face masks are mandatory to fly with us on Southern Airways. We do appreciate your interest in flying with us, if you have any further questions, please do not hesitative to reach out to us." Such a sweet and pleasant wording to use while discriminating.

518)  This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability. The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

519)  Not allowing me to fly like other people is a violation of the ACAA laws, as described above.

520)  They discriminated against me because of my disability and treated me differently than those that are not disabled.

521)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

522)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### **PHILIPPINE**

523)  I notified the airline with a copy of a doctor's letter attesting to my inability to wear a mask.  Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

524)  The airline refuses to allow me to fly with them without a mask, by constantly ignoring my emails, and/or responding that they're looking into it further, but never approving me for travel.  I have been emailing them and posting online since on or about Sept 3, 2021 (Exhibit 59).

525)   They obviously received my email multiple times, but refuse to let me fly, by not responding. It has been over two months of this back and forth.

526)  This is frustrating and unfair. As a disabled person they're required to

accommodate me. This is blatant discrimination against me due to my disability.

527)   The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

528)   In their response they were gaslighting. They wrote, "Dear Valued Customer, <u>Mabuhay!</u> Thank you for reaching out to Philippine Airlines. We have received your email and assigned Reference Number : PAL234009 A handling officer will evaluate your concern and get in touch with you soon.

529)   No one got back to me. It's just a joke. They don't want to let me fly, so all they have to do is ignore me.

530)   Mabuhay, usually means long live, and it used as a greeting or to express good wishes. In this case it meant jump in the lake!

531)   Not allowing me to fly like other people is a violation of the ACAA laws, as described above.

532)   They discriminated against me because of my disability and treated me differently than those that are not disabled.

533)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022.

Most airlines ended the mask rules within several days.

534)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**QATAR**

535)   I notified QATAR with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

536)   The airline emailed me finally on or about Nov 4, 2021 (Exhibit 60) that I cannot fly with them without a mask, unless I follow a list of requirements that are unnecessary and only designed to keep me from flying.

537)   All regular normal people can fly by just ordering a ticket online and heading to the airport. This airline requires me to provide a Covid test and provide a letter from my doctor confirming that I am fit to fly, as per attached email. There's no evidence that a sensory processing disorder is a medical condition that may not be fit to fly. That's just added as a way to discourage me from flying.

538)   Do other passengers without disabilities have to provide such a letter? This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

539)   The DOT made it very clear to all the airlines that they must honor

such exemptions, but seemingly this airline does not care.

540)   Not allowing me to fly like other people is a violation of the ACAA laws, as described above.

541)   They discriminated against me because of my disability and treated me differently than those that are not disabled.

542)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

543)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### MAROC

544)   I notified the airline with a copy of a doctor's letter multiple times attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the   fact that I already had Covid in 2020.  CDC very   clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

545)   The airline refuses to allow me to fly with them without a mask, by constantly ignoring my emails. I have been emailing them since on or about Sept 2,

2021. They sent the automated response (Exhibit 61) as follows: "Dear , We acknowledge receipt of your case and thank you. We'll do our best efforts to process your case as soon as possible. For any information regarding this claim, please use the number above in the subject To follow up your case, kindly respond to the same mail to: safarflyer@royalairmaroc.com With our best regards. Safar Flyer team Référence  ref:_00D24JNjx._500084KJg6y:ref"

546)    However, they never actually responded. It was many months. They obviously received my email multiple times, as it did not bounce back, and the email address is specific to their disability. They also confirmed the receipt as described.

547)    They refused to let me fly, by totally ignoring me. This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability. I also sent it to other email addresses within their company. They did not respond at all.

548)    The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

549)    They were just gaslighting. They were never going to respond, and they never did. They were not interested in letting me fly without a mask. It's probably too complicated for the staff to make any exceptions.

550)  Not allowing me to fly like other people is a violation of the ACAA laws, as described above.

551)  They discriminated against me because of my disability and treated me differently than those that are not disabled.

552)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

553)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**SAS**

554)  I notified SAS with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

555)  The airline emailed me finally on or about September 10, 2021 (Exhibit 62) that I cannot fly with them without a mask, unless I follow a list of requirements that are unnecessary and only designed to keep me from flying.

556)   All regular normal people can fly by just ordering a ticket online and heading to the airport. This airline requires me to provide a Covid test and provide a letter from my doctor's letter that cannot be more than 3 months old. There's no evidence that a sensory processing disorder is a medical condition that will suddenly disappear, so that I need to keep reconfirming.  Must I go to the doctor every three months to double-check that I still have sensory processing disorder?! That's just added as a way to discourage me from flying.

557)   Do other passengers without disabilities have to provide such a letter? This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

558)   The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

559)   Not allowing me to fly like other people is a violation of the ACAA laws, as described above.

560)   They discriminated against me because of my disability and treated me differently than those that are not disabled.

561)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom

Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

562) This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### SILVER

563) I notified Silver with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

564) The airline emailed me on or about September 10, 2021 (Exhibit 63) that I cannot fly with them without a mask, unless I follow a list of requirements that are unnecessary and only designed to keep me from flying.

565) Included in that list was a requirement that I get a letter from the CDC authorizing me to fly. Of course, the CDC doesn't give anyone such a letter.

566) They wanted a letter for the TSA and an approval from the health department.

567) All regular normal people can fly without any of these requirements. That's just added as a way to discourage me from flying. Being that these demands are practically impossible, it is really a way to keep me from flying.

568) Do other passengers without disabilities have to provide such letters?

This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

569) The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

570) Not allowing me to fly like other people is a violation of the ACAA laws, as described above.

571) They discriminated against me because of my disability and treated me differently than those that are not disabled.

572) The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

573) This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### SINGAPORE

574) I notified Singapore with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I

already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

575)   The airline emailed me on or about Sept 8, 2021 (Exhibit 64) that I cannot fly with them without a mask.

576)   They wrote, "Please be informed, on basis of attach document from doctor and as per US CDC's requirement to wear a mask you does not qualify for exemption of mask requirement. Thank you for choosing Singapore Airlines.."

577)   This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability. The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

578)   Not allowing me to fly like other people is a violation of the ACAA laws, as described above.

579)   They discriminated against me because of my disability and treated me differently than those that are not disabled.

580)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022.

Most airlines ended the mask rules within several days.

581)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### SOUTHWEST

582)   On or about May 24, 2021, Southwest responded to Plaintiff's request to fly without a mask, and demanded a list of requirements, in violation of ACAA laws described above and others located in the ACAA. (Exhibit 65 is the response from Southwest, my complaint to the DOT, and Southwest's response to my complaint).

583)   Southwest seemed to justify their actions by saying that the DOT and the CDC authorized them.

584)   While that is evidence to Plaintiff's claims herein that the DOT & CDC aided, abetted, and even instigated these discriminations, the law is clear, discrimination is not allowed.  These actions are violations of federal ACAA laws. Southwest has big fancy and expensive law firms.  They can find out the law.  The DOT, TSA, and/or the CDC cannot put ACAA in abeyance, and Southwest knows that.

585)   Amongst other violations of the ACAA, Southwest required seven days advance notice, a medical form from the doctor confirming that passenger is fit to travel, and a negative covid test.

586)  These are all unnecessary to prove that a passenger is not a direct threat, as is explained herein. The airlines know that a passenger is not automatically a direct threat without a mask. If they were, then the airline would have to prove that those passengers with the mask are no longer a direct threat, even though they take it off when they eat. See Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).

587)  These violations were in place for over two years, as until the mandate ended, Plaintiff could not fly with Southwest.

588)  On December 15 of 2021, the Southwest Airlines CEO at that time, Gary Kelly, told a U.S. Senate panel that "masks don't add much, if anything" in fighting the spread of COVID-19 on airplanes. (described above).

589)  Southwest and the other airlines would prefer the mask mandates are removed completely.  They state clearly that the people would not be at risk, even if everyone did not wear a mask. They cannot then turn around and say, "but until the mandates are removed, Aaron Abadi is a direct threat."  That is an absurd premise.

590)  Other employees, executives, staff, and attorneys of Southwest may be added as defendants, as the discovery process moves forward, and upon receiving leave from the court.

591)  Plaintiff flew with Southwest in the past, Southwest runs routes in

many areas where Plaintiff chooses to fly and needs to fly, and Plaintiff would

have flown with Southwest if not for these discriminations.

592)   They discriminated against me because of my disability and treated

me differently than those that are not disabled.

593)   The discriminations described continued until the Honorable Kathryn

Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for

transportation, by determining that it was arbitrary and capricious, and the CDC

exceeded its authority, amongst other issues. The case was Health Freedom

Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022.

Most airlines ended the mask rules within several days.

594)   This Defendant's actions and/or inactions directly caused Plaintiff's

injuries.

### **SPIRIT**

595)   I notified Spirit with a copy of a doctor's letter attesting to my

inability to wear a mask. Additionally, the doctor's letter attests to the fact that I

already had Covid in 2020. CDC very clearly states that "Covid reinfection is

rare," and therefore, I do not pose a health risk.

596)   The airline emailed me (Exhibit 66) on or about September 3, 2021

that I cannot fly with them without a mask. They gave certain criteria for

exemption, and my disability is not on the list. This is after I sent them all my info,

so they know my issues.

597)   This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

598)   The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

599)   Their response gave me a whole set of requirements, which in itself is discrimination, as non-disabled do not have any such requirements. They discriminated against me because of my disability and treated me differently than those that are not disabled.

600)   Additionally, the real goal here is not to let me fly at all, hence all the crazy requirements. That's discrimination and all of it are violations of ACAA laws.

601)   Here is the gist of their response;

602)   "…If you meet the criteria above, you then need to meet all the requirements by following the steps listed below:

1.   **Contact us 48 hours prior to scheduled departure** to let us know you will be asking for an exemption on the day of your flight. You can contact us through our Chat feature here or via WhatsApp at 855-728-3555 with the words "ADA face mask exemption".

2.   **Arrive at the airport 3 hours prior to your flight's scheduled**

**departure** since you may be screened by our medical experts.

3.       **Have your medical doctor or medical professional complete the Spirit ADA Face Covering Exemption Form or provide a letter from your medical doctor.** This letter needs to be dated 10 days prior to departure for each flight on your itinerary (including your return flight) and needs to meet all the following requirements:

☐       Be on the medical doctor office's official letterhead

☐       Acknowledge that you have a disability recognized under the ADA/ACAA that inhibits you from wearing a mask or from safely wearing one

☐       Acknowledge that the doctor understands that this exemption is not for a person who simply may find mask wearing difficult

☐       State that you are under their care and they specialize in the area pertaining to your disability

☐       Contain the medical professional's NPI number (if available)

☐       Contain the medical professional's license number, license type, and date license was issued

☐       Have the license jurisdiction

☐       Contain the medical doctor's business name

☐       Contain the medical doctor's business phone number

4.       **Present a negative COVID-19 PCR or Antigen test result, taken**

**within 24 hours prior to scheduled departure at the airport.** Please see requirements for testing:

☐     The test result can be in written or electronic form and must include information that identifies the person, a specimen collection date and the type of test."

603)   All regular normal people can fly by just ordering a ticket online and heading to the airport. This airline requires me to provide a Covid test and provide a letter from my doctor's letter that cannot be more than 10 days old. There's no evidence that a sensory processing disorder is a medical condition that will suddenly disappear, so that I need to keep reconfirming.  Must I go to the doctor every 10 days to double-check that I still have sensory processing disorder?! That's just added as a way to discourage me from flying.

604)   Do other passengers without disabilities have to provide such a letter, or any of the other obnoxious demands? This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

605)   The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

606)   Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and it is classic discrimination.

607)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

608)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### SUN COUNTRY

609)   I notified the airline with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

610)   The airline emailed me (Exhibit 67) on or about October 31, 2021 that I cannot fly with them without a mask, unless I follow a list of requirements that are unnecessary and only designed to keep me from flying.

611)   All regular normal people can fly by just ordering a ticket online and heading to the airport. This airline requires me to adhere to a whole set of rules, as per attached email. This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my

disability.

612)   The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

613)   Here is the gist of their requirements from their email:

"Mask Exemption Procedure:

Passengers with a disability who cannot wear a mask, or cannot safely wear a mask, because of that disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.) can apply for a face mask exemption to the CDC order. This is a narrow exemption and is not meant to cover persons for whom mask-wearing may only be difficult. Passengers requesting an exemption must adhere to the following process:

At least 5 days prior to departure

☐    Submit the completed Mask Exemption Form from a licensed medical provider to accessibility@suncountry.com

☐    Sun Country will contact your licensed medical provider to validate the document

☐    Any passenger who presents falsified medical documentation will be subject to suspension of their privileges for future travel on Sun Country

At the airport on each day of travel

☐    Passengers must check-in at the Sun Country ticket counter a

minimum of two (2) hours prior to departure

☐    Passenger must provide proof of a negative COVID-19 test taken within 3 days of the flight or documentation of having recovered from COVID-19 within 90 days of the flight

☐    Acceptable viral test types include antigen tests or a nucleic acid amplification test (NAAT), such as reverse transcription polymerase chain reaction (RT-PCR).

☐    Proof of having recovered from COVID-19 includes documentation of your positive viral test results within the past 90 days and a letter from your healthcare provider or a public health official that states you have been cleared for travel.

☐    These testing requirements apply to all flight segments and may require a negative COVID-19 test for both your outbound and return flight. The negative test must be taken within 3 days of departure."

614)    All regular normal people can fly by just ordering a ticket online and heading to the airport. This airline requires me to jump through hoops in order to fly with them. That's just added as a way to discourage me from flying.

615)    Do other passengers without disabilities have to provide items, or any of the other obnoxious demands? This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against

me due to my disability.

616)   The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

617)   Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and it is classic discrimination.

618)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

619)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### SWISS AIR

620)   I notified Swiss Air with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

621)   The airline emailed me (Exhibit 68) on or about September 8, 2021, that I cannot fly with them without a mask, unless I follow a list of requirements

that are unnecessary and only designed to keep me from flying.

622)   All regular normal people can fly by just ordering a ticket online and heading to the airport. This airline requires me to provide another letter from the doctor, even though I already provided one and a negative Covid test within 48 hours. The rest of the passengers don't have to provide any of that. Without providing that I cannot travel.

623)   This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

624)   The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

625)   Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and it is classic discrimination.

626)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

627)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**AIR TAHITI**

628)  I notified Air Tahiti with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

629)  The airline emailed me on or about October 12, 2021 (Exhibit 69), that I cannot fly with them without a mask, unless I present a more recent Doctor's letter. My medical condition is a permanent condition and I should not be forced to find a doctor to write a new letter every flight that I take.

630)  The purpose of these demands is to discourage me from traveling due to my disability and inability to wear a mask. All regular normal people can fly by just ordering a ticket online and heading to the airport. This is frustrating and unfair.

631)  As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability. The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

632)  Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and it is classic discrimination.

633)   They discriminated against me because of my disability and treated me differently than those that are not disabled.

634)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

635)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**636)   TAP**

637)   I notified TAP with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

638)   I have been trying to reach them via email for two months, starting on or about Sept 3, 2021 (Exhibit 70). They finally responded on or about November 12, 2021, and said that I cannot fly with them without a mask, unless I follow a list of requirements that are unnecessary and only designed to keep me from flying.

639)   They also made it clear that any exemption will only be for "short

periods of time." This means a typical flight from the United States to Portugal, would not be possible for me to fly at all, since it is over 6 hours, and the return is longer.

640)   All regular normal people can fly by just ordering a ticket online and heading to the airport. This airline requires a MEDIF form filled out and signed by a Doctor, and a negative Covid-19 test not older than 72 hrs, and a bit more.

641)   The MEDIF form is used primarily for people that have medical issues that need a Doctor's approval to fly. Sensory processing disorder is a sensory issue, not a medical issue that would affect my ability to fly. They know that. They use the Medif form to impede my flying.

642)   Other passengers don't need to get a Covid test in order to fly. That's another way to chase me away.

643)   I already had Covid. It's in the Doctor's letter. CDC says Covid reinfection is rare. These precautions are not designed to protect the other passengers, but rather are designed to make it difficult enough for me that they hope I'll stay home and/or try another airline.

644)   All normal regular people without disabilities get to just book a flight and hop on a plane. Someone like me is made to jump through hoops in order to hopefully get to fly. I fly over 40 flights each year. I normally book my flights a few hours before I fly. Most other people can do that now.

645)  I would need my own personal in-house physician to fill out forms for me every several days in order to accommodate such requests. It should be very simple. I send them my Doctor's letter clarifying that I have a sensory issue and CANNOT wear a mask or face shield, and that should be the end of it. This does not need to be rewritten right before each flight.

646)  This is a permanent disability, and everyone knows that. Maybe the reason for creating this jumping- through-hoops scenario, is to discourage fakers from lying and playing games. That is their problem. I'm the one that suffers. Anyway, I don't think that real Doctor's would sign letters that are lies. Let them investigate those that they are skeptical of. I shouldn't have to suffer.

647)  This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

648)  The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

649)  Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and it is classic discrimination.

650)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom

Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022.

Most airlines ended the mask rules within several days.

651) This Defendant's actions and/or inactions directly caused Plaintiff's

injuries.

**TURKISH**

652) On or about September 1, 2021 I posted the following on the airline's

website contact form. "I have a sensory integration disorder, which is a medical

disability that causes me not to be able to wear a mask or a face shield. I carry

around a doctor's letter to that effect, that also states that I already had Covid,

which would indicate that there is no significant health risk, as the CDC clearly

states that covid reinfection is rare I have already flown several times without a

mask on airlines that agreed to accommodate me. CDC Guidelines and federal

laws exempt someone like me from wearing a mask. Additionally, DOT instructed

the airlines to allow people like me to fly without a mask. Federal ADA laws

require that you provide an accommodation for disabilities. I would like to travel

on your airline. Can I travel on your airline without a mask? Or can you provide an

accommodation that will allow me to use your airline? Thank you in advance.

Aaron Abadi"

653) They refused to allow me to fly, in an email sent on or about

September 11, 2021 (Exhibit 71).

654) This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability.

655) The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

656) Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and it is classic discrimination.

657) The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

658) This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**UNITED AIRLINES**

659) I notified United Airlines with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

660) On or about December 18, 2020, Plaintiff was denied access to fly by

United Airlines (Exhibit 72), due to my inability to wear a mask, due to my disability.

661) They wrote the following: "It is unfortunate you have a condition that makes it difficult for you to wear a face mask or other permitted face covering. United has determined the possibility of asymptomatic transmission of COVID-19 in the confined space of an airplane is a direct threat to the health and safety of our passengers and crew that can only be mitigated by all onboard wearing a face mask. United has made this determination based on a review of current medical knowledge and CDC guidance. A person with a disability is just as likely to be an asymptomatic spreader of Covid-19 as any other passenger. As noted on our website we are only making exceptions for passengers that are younger than 2 years old."

662) Until the end of the mask mandate, United continued to refuse Plaintiff access to fly. Plaintiff needed to fly with United for his business opportunities, but due to this discrimination, he could not.

663) United responded to Plaintiff (Exhibit 73), pretty much justifying its discrimination.

664) Plaintiff sent United an identical letter that he sent to American above, as United CEO, Scott Kirby signed onto that same letter from the airlines to President Biden, mentioned above asking to have the mask mandates lifted, as the

science no longer justifies it.

665)  If there's no direct threat, why is United entitled to discriminate? There was no response from United. I don't think the airlines realized how signing that letter will expose their dishonesty.

666)  During discovery, Plaintiff expects to be able to identify other possible defendants involved with United in the discrimination and violations herein.

667)  Plaintiff frequently flew with United, and would have flown with United if not for these discriminations.

668)  Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and it is classic discrimination.

669)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

670)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

## VIVA AIR

671)  I notified Viva Air with a copy of a doctor's letter attesting to my inability to wear a mask. Additionally, the doctor's letter attests to the fact that I already had Covid in 2020. CDC very clearly states that "Covid reinfection is rare," and therefore, I do not pose a health risk.

672)  The airline emailed me on or about October 19, 2021 (Exhibit 74) that I cannot fly with them without a mask.

673)  They wrote, "We want to tell you that to fly with the Viva Air airline it is necessary to wear your mask. In case you do not take it, it will not be possible to board the flight."

674)  This is frustrating and unfair. As a disabled person they're required to accommodate me. This is blatant discrimination against me due to my disability. The DOT made it very clear to all the airlines that they must honor such exemptions, but seemingly this airline does not care.

675)  Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and outright discrimination.

676)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom

Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022.

Most airlines ended the mask rules within several days.

677)   This Defendant's actions and/or inactions directly caused Plaintiff's

injuries.

### VOLARIS

678)   I notified VOLARIS with a copy of a doctor's letter attesting to my

inability to wear a mask. Additionally, the doctor's letter attests to the fact that I

already had Covid in 2020. CDC very clearly states that "Covid reinfection is

rare," and therefore, I do not pose a health risk.

679)   The airline emailed me on or about October 1, 2021 (Exhibit 75)  that

I cannot fly with them without a mask.

680)   They wrote, "Airport biosecurity protocols require the use of a face

mask during the entire trip."  In other words, no, you cannot fly with us.

681)   This is frustrating and unfair. As a disabled person they're required to

accommodate me. This is blatant discrimination against me due to my disability.

The DOT made it very clear to all the airlines that they must honor such

exemptions, but seemingly this airline does not care.

682)   Not allowing me to fly like other people is a violation of the ACAA

laws, as described above, and outright discrimination.

683)   The discriminations described continued until the Honorable Kathryn

Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

684) This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

### ROBERTS

685) On Tuesday Feb 9, I drove to Dulles Airport and talked to the Airport manager, Matt Roberts.

686) He seemed nice and helpful. He looked into the visa issue that the New York British Airways check-in staff said is a problem. After an hour of research, he told me that the NY check-in staff made a mistake and my visa is absolutely valid. He said he will call me in a day or two to confirm if I can travel on British Airways.

687) I called him Thursday Feb 11, and he told me, yes, the visa is fine, but they cannot allow me to fly without a mask. He sent an email to that effect too (see British Air above).

688) Plaintiff incorporates the facts regarding British Air, as Roberts was a part of that story.

689)  I asked him to speak to the Complaint Resolution Official (CRO), and he said that he's the CRO and he cannot allow me to fly without a mask. This is so frustrating. They were playing with me. My time has value. My life has value. I need to travel for my income. This is in violation of federal and state laws. This is so unfair.

690)  I was specifically denied the ability to fly because of my disability that I could not wear a mask.

691)  With the hope that at some point, British Airways and the other defendants realized that they were violating the law, and were prepared to finally allow Plaintiff to fly without a mask, Plaintiff sent another email on December 14, 2021 asking if he can now fly without a mask due to his disability.

692)  Matthew Roberts responded on December 15, 2021, that nothing has changed, confirming that Plaintiff can still not fly without a mask in spite of his disability.

693)  The disability discrimination is continuous from January 22, 2021, through December 15, 2021, and ongoing thereafter, indefinitely, until the mask mandate was lifted, and even beyond that.

694)  Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and outright discrimination.

695)  The discriminations described continued until the Honorable Kathryn

Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

696)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.


### ROY GOLDBERG

697)  Plaintiff includes the facts above regarding American in this section regarding Goldberg, as Goldberg was a part of that too.

698)  Goldberg himself is included in this complaint as a defendant. Goldberg has been advising American and other airlines that they're entitled to discriminate.

699)  Normally we cannot sue an attorney for representing a client, but in this case, he was aiding and abetting, advising, assisting, instigating, and/or trying to intimidate the Plaintiff, as you can see in the previous exhibits. He was an essential driving force of the discrimination itself and the overall conspiracy.

700)  For example, if an attorney is representing a thief, the attorney should not and cannot be sued. However, if the attorney was the one fencing the stolen

jewelry, that's a whole nother story.

701)   In discovery, we will be able to get even more evidence to this effect. Additionally, he was an active participant through communicating his clients' illegal discriminations direct to the Plaintiff.

702)   As a disabled person who does not pose any direct threat, as defined in the ACAA, and as confirmed by the American Airlines CEO, and many other airline CEO's, I should be entitled to book a flight, get on that flight without a mask, and go about my day like any normal person.

703)   Instead, I am discriminated against by the airlines with the full support and assistance of their attorney, Goldberg.

704)   Plaintiff frequently flew with American and would have flown with American if not for these discriminations.

705)   Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and outright discrimination.

706)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

707)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**MIGUEL MOREL**

708)   The same issues as presented for Roy Goldberg also apply to Mr. Morel, although, they represented different airlines.

709)   Plaintiff incorporates the facts above regarding Spirit and vice versa, as this Defendant was a big part of that story.

710)   Defendant Morel sent an email to Plaintiff on or about December 27, 2021 (Exhibit 76), discriminating against Plaintiff due to his disability and refusing to allow him to fly.

711)   He conveyed Spirit's denial personally (Exhibit 77).

712)   The only way, his client, Spirit, would allow me to fly, was if I followed a whole list of rules and requirements. These requirements are unnecessary and not required for people without disabilities.

713)   Morel was complicit in the discrimination, and was a driving force, aiding and abetting the violations.

714)   Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and outright discrimination.

715)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for

transportation, by determining that it was arbitrary and capricious, and the CDC̆ exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

716)    This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**NATHALIE SIMON, DELTA**

717)    Plaintiff incorporates the facts written above regarding Delta for this complaint.

718)    In response to my complaints to Delta, on or about April 12, 2022, Nathalie Simon of the customer care department in Delta finally responded. (see above).

719)    Her response said, "I requested and received a report from our team in Paris. The report stated that our agent followed our policy in contacting Stat-MD for a Clearance-to-Fly; however, Stat-MD denied the request as SPD not a justification. As a result, our records show your request was handled properly and no violation of 14CFR, Part 382 has occurred."

720)    SPD stands for, sensory processing disorder.

721)    Delta, Simon, and STAT-MD have no right to deny me the right to travel. I have a disability, and they cannot determine that my disability is not a

disability against my doctor's determination.

722)  Ironically, my doctors see me in person and makes the proper judgment. Delta's rent-a-doctors never saw me.  They did not even speak to me on the phone.

723)  I can't imagine what they did or how they made any determination. ACAA requires an individualized assessment, which was never done.

724)  Delta clearly violated my rights, and discriminated against me.  Simon justified that discrimination and further discriminated against me by the continuation of denying me the right to travel.

725)  Simon is complicit in these violations of the law, and she was assisting Delta in this. If a person works for a company that violates the law, they must leave, and/or report them.  Continuing to work there and joining in with the violations makes her equally responsible.

726)  Defendant Simon discriminated against me because of my disability and treated me differently than those that are not disabled.

727)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

728)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**MEDAIRE**

729)   Medaire is a medical consulting organization. As attested to by Etihad (see above), Medaire are the ones that determine who can or cannot fly.  They made the decision to discriminate against Plaintiff due to his disability and not allow him to fly.

730)   Etihad and many other airlines conspired with Medaire to violate Plaintiff's civil rights.

731)   Medaire never spoke to Plaintiff, never saw Plaintiff, and did not even speak to him through anyone else.

732)   If Medaire was supposed to make an individualized assessment, as required by the ACAA, they failed completely.

733)   After discovery, I'm confident that we will have evidence showing that Medaire was an essential part of the conspiracy to violate our civil rights. It is upon information and belief that they are contracted with many airlines for this aspect.

734)   Medaire believes that they are not responsible, since they are not the airline. Imagine if airlines decided to hire a special agency that will be responsible to decide if a passenger gets a wheelchair, which passengers can have pre-boarding, and who can take onboard an animal required for their disability. That agency is not

the airline, but the airline refers all the decisions to them. When the regulatory agencies and/or the courts try to get involved, because the agency is barring every third request, the airline says, "We have nothing to do with that. Speak with the agency we hired. The consultant agency then says, "We are not an airline. We are not responsible; we don't even reside in your state.

735)  That is precisely what is happening here. There does in fact exist a wide-ranging conspiracy, and Plaintiff suffered significantly from it, precisely because Medaire's actions are central to the discriminations carried out by many of the Defendant Airlines.

736)  Medaire was a major player and component, contracted by the various Airlines. Medaire was at the very center of various airline's discrimination operation. Every violation of rights or of law that the various Defendant Airlines who contract with them, participated in, Medaire was the "key in the lock" that opened the door, supported and implemented the discrimination. In fact, the discrimination and violation of laws could not have been possible without the role of Medical Defendants, Medaire & STAT-MD taking part.

737)  Medaire is included herein as an integral part of the violations, and the overall conspiracy. These two medical vendors who evaluate mask-exemption demands for most of the Airline Defendants, THEY WERE THE HIRED GUNS.

738)  Not allowing me to fly like other people is a violation of the ACAA

laws, as described above, and it is classic discrimination. Participating in those violations and instigating them puts Medaire in each of the same causes of action as the airlines themselves.

739)  Plaintiff incorporates all applicable facts from the various airlines contracted with Medaire, as additionally pertaining to Medaire.

740)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

741)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.


**STAT-MD**

742)  STAT-MD is a medical consulting organization. As attested to by Simon (see above), Stat-MD were the ones that determined that Plaintiff cannot fly on Delta from Paris to New York.  They made the decision to discriminate against him due to his disability and not allow him to fly.  He was to be stuck at his stopover in Paris, and as far as Stat-MD is concerned, he can stay there forever.

743)   Delta conspired with Stat-MD to violate Plaintiff's civil rights.

744)   Stat-MD never spoke to Plaintiff, never saw Plaintiff, and did not even speak to him through anyone else.

745)   If Stat-MD was supposed to make an individualized assessment, as required by the ACAA, they failed completely.

746)   Plaintiff asked the Delta agent at the gate to allow him to speak to someone regarding this, and he was told that he could not.

747)   On March 31, 2022, when Delta chose to leave Plaintiff stranded at the Paris airport, it was Stat-MD who instigated these actions that were in violation and made the determination to not allow Plaintiff to fly back to New York.

748)   Plaintiff incorporates the facts listed above regarding Delta and Simon into these facts about STAT-MD, where each of these three defendants facts all coincide and are connected.

749)   If not for some kind Air France employees, Plaintiff would still be in Paris.

750)   After discovery, I'm confident that we will have more evidence showing that Stat-MD was an essential part of the conspiracy to violate our civil rights.

751)   STAT-MD believes that they are not responsible, since they are not the airline. Imagine if airlines decided to hire a special agency that will be responsible

to decide if a passenger gets a wheelchair, which passengers can have pre-boarding, and who can take onboard an animal required for their disability. That agency is not the airline, but the airline refers all the decisions to them. When the regulatory agencies and/or the courts try to get involved, because the agency is barring every third request, the airline says, "We have nothing to do with that. Speak with the agency we hired. The consultant agency then says, "We are not an airline. We are not responsible; we don't even reside in your state.

752)   That is precisely what is happening here. There does in fact exist a wide-ranging conspiracy, and Plaintiff suffered significantly from it, precisely because STAT-MD's actions are central to the discriminations carried out by many of the Defendant Airlines.

753)   STAT-MD was a major player and component, contracted by the various Airlines. STAT-MD was at the very center of various airline's discrimination operation. Every violation of rights or of law that the various Defendant Airlines who contract with them, participated in, STAT-MD was the "key in the lock" that opened the door, supported and implemented the discrimination. In fact, the discrimination and violation of laws could not have been possible without the role of Medical Defendants, Medaire & STAT-MD taking part.

754)   STAT-MD is included herein as an integral part of the violations, and the overall conspiracy. These two medical vendors who evaluate mask-exemption

demands for most of the Airline Defendants, <u>THEY WERE THE HIRED GUNS</u>.

755)   Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and it is classic discrimination. Participating in those violations and instigating them puts STAT-MD in each of the same causes of action as the airlines themselves.

756)   The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

757)   This Defendant's actions and/or inactions directly caused Plaintiff's injuries.


**ROBERT C. LAND**

758)   Defendant Land, the senior executive from JetBlue, is the one who responded to the Plaintiff after Plaintiff filed a complaint with the DOT.

759)   Plaintiff incorporates here the facts listed above for JetBlue, and vice versa.

760)   Land was very clear in his letter that there will be no exemptions for

the disabled.

761)    He wrote, "(we) allow no exceptions to the face covering requirement."

762)    He did not reach out to the Plaintiff since then to correct that, and till the last day of the mask mandates Plaintiff could not fly with JetBlue, because of his discrimination and violation of the laws.

763)    The DOT responded to the complaint against JetBlue, saying that they were in violation, but that didn't get them to stop the discrimination.

764)    This defendant conspired with others at JetBlue, other airlines, and others to violate Plaintiff's civil rights, and did not intervene to prevent these discriminations, even though he did have the power to do that.

765)    Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and it is classic discrimination. Participating in those violations and instigating them makes Land at least equally responsible for those actions and violations.

766)    The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

767) This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

## DEBBIE CASTLETON

768) Defendant Castleton, the customer support representative from JetBlue, responded to the Plaintiff after Plaintiff filed a complaint with the DOT.

769) Plaintiff incorporates here the facts listed above for JetBlue and LAND, and vice versa.

770) Castleton was very clear in her email (see above JetBlue) that there will be no exemptions for this Plaintiff.

771) She wrote, Customers with disabilities who cannot wear a mask, or cannot safely wear a mask because of permanent disability as defined by the Americans with Disabilities Act may contact us via phone or chat to apply for an exemption from this requirement. Exemptions will be limited on board each flight and will require specific documentation submitted in advance as well as testing and a face shield worn at all times."

772) She did not reach out to the Plaintiff since then to correct that, and till the last day of the mask mandates Plaintiff could not fly with JetBlue, because of her discrimination and violation of the laws.

773) The DOT responded to the complaint against JetBlue, saying that they

were in violation, but that didn't get them to stop the discrimination.

774) This defendant conspired with others at JetBlue and other airlines to violate Plaintiff's civil rights, and did not intervene to prevent these discriminations, even though she did have the power to do that.

775) Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and it is classic discrimination. Participating in those violations and instigating them makes Castleton at least equally responsible for those actions and violations.

776) The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022). This happened on April 18, 2022. Most airlines ended the mask rules within several days.

777) This Defendant's actions and/or inactions directly caused Plaintiff's injuries.


**ANITA AYALA**

778) Anita Ayala is the Complaint Resolution Official ("CRO") for the Customer Relations North America, of Lufthansa.

779)  Plaintiff incorporates here the facts listed above for Lufthansa, above, and vice versa.

780)  She violated Plaintiff's civil rights by denying him access to travel with Lufthansa without following a list of requirements, that non-disabled passengers are not required to follow, and in violation of the ACAA.

781)  Her email of these instructions are attached (see Lufthansa above).

782)  She was complicit in the discrimination, conspired with many others, and did not intervene to prevent it, as she had that power.

783)  Not allowing me to fly like other people is a violation of the ACAA laws, as described above, and it is classic discrimination. Participating in those violations and instigating them makes Ayala at least equally responsible for those actions and violations.

784)  The discriminations described continued until the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority,  amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This happened on April 18, 2022. Most airlines ended the mask rules within several days.

785)  This Defendant's actions and/or inactions directly caused Plaintiff's injuries.

**FEDERAL DEFENDANTS**

786)   The Department of Health & Human Services ("HHS"), the National

Institutes of Health ("NIH"), & the Center for Disease Control & Prevention

("CDC") have a duty to provide to American citizens honest and true guidance

regarding health issues, based on real data, studies, and facts.  Instead, they

breached that duty, and lied to the world, saying that masks were very useful,

necessary, and the best way to protect yourselves from getting and transmitting

Covid19.

787)   Anthony Fauci of the NIH and Dr. Robert Redfield of the CDC

publicly lied to the American people, saying that masks were going to save them

from Covid19, and everyone should wear them, and if you don't wear a mask, that

might cause transmission of the virus, and wearing the mask will avoid most

transmissions.  All the while knowing that this information was false.

788)   The CDC has a duty to put out honest guidance regarding health

and/or safety, and to not discriminate and/or cause discrimination. They breached

that duty by putting out guidance and a mandate for airlines and all transportation

to require everyone to wear a mask.  Although they provided an exemption for

those like myself who have medical disabilities and cannot wear a mask, they

negated that by authorizing airlines to discriminate against the disabled like

myself, to allow them to create multiple requirements and demands for us to follow, if we wanted to fly without a mask. In most cases those requirements made it impossible for me to fly.

789) Dr. Anthony Fauci, was director of the National Institute of Allergy and Infectious Diseases (NIAID) of the National Institutes of Health ("NIH") and the chief medical advisor to the president. He initially told everyone that masks are not necessary for Covid, in line with all previous studies.

790) Once President Biden took office, suddenly the science seemed to have changed and now masks were good and he encouraged it and recommended all the mask mandates. There was no actual change in the data, and in a recent deposition, Dr. Fauci could not point to any new studies that came out between the time he said masks were unnecessary, and the several weeks later, where he said they're urgent and the best way to protect yourself.

791) There were dozens of studies regarding face masks and influenza from prior to Covid-19, and all of them came out that face masks do not provide much protection.

792) The new President needed to make good on a campaign promise, so he rounded up and gathered all his agencies and advisors and they LIED to the people and came out with the mask mandates and the scientific determination that they made up on the spot, that masks are essential to stop the spread of Covid.

793) People were not allowed to go to their family weddings or funerals, no one was allowed to go to their Church or Synagogue, and everyone everywhere had to wear a mask. This was all political. One further proof of that is that at Black Lives Matter rallies, people were permitted to go without masks. Thousands of people attended standing together without distancing and without masks, and the government including Fauci had no problem with it.

794) The airlines themselves sent letters to President Biden saying that the masks are not necessary on the airlines.

795) All these people had a duty to provide honest and true medical and safety information. They are employees of the American people, and their job is to take care of us, lead us and advise us honestly. They did not do that.

796) They have a duty to ensure that through their mandates and instructions, disabled people are not discriminated against. They did the opposite. They encouraged, instructed, and directly caused the discrimination.

797) This discrimination that was caused by all these agencies and employees directly caused serious injuries to this Claimant as will be described below. Claimant was discriminated against and was not permitted to fly on over 50 airlines. These lies told by these federal agencies and employees were the direct cause of Plaintiff's injuries.

### HHS & CDC

798)  The CDC which is a part of the HHS issued the Mask Mandate, pursuant to 42 U.S.C. § 264(a) and 42 C.F.R. §§ 70.2, 71.31(b), and 71.32(b), without allowing comments under the Administrative Procedure Act.

799)  The Mask Mandate requires that, when traveling on conveyances and at transportation hubs, all persons (with limited exceptions) must wear masks. The Mask Mandate also requires conveyance operators and hub operators to make sure that all passengers are wearing masks, except in very limited circumstances.

800) Plaintiff challenges the Mask Mandate pursuant to 5 U.S.C. § 706(2) of the Administrative Procedure Act (the "APA") on grounds that it:

is not in accordance with and exceeds the CDC's statutory and regulatory authority under 42 U.S.C. § 264(a) and 42 C.F.R. §§ 70.2, 71.31(b), and 71.32(b);

is a rule that was enacted without observance of notice and comment procedures required by the APA; and/or

is arbitrary and capricious, in that it exempts children under age 2 without regard to scientific evidence of the impact of prolonged mask use on persons of all ages.

Alternatively, if the Mask Mandate does not exceed Defendants' statutory and regulatory authority, then 42 U.S.C. § 264(a) constitutes an unlawful delegation of legislative authority.

801)   As well, Plaintiff challenges the Executive Order on grounds that it constitutes an improper exercise of legislative authority by the Executive Branch, and that it further improperly asserts a general police power that has traditionally been relegated to the States, in derogation of the Separation of Powers under the United States Constitution.

802)   The CDC Mask Mandate  in part requires conveyance operators (and operators of transportation hubs) to use their best efforts to ensure that "any person on the conveyance wears a mask when board, disembarking, and for the duration of travel." 86 Fed. Reg. at 8026. Those best efforts include, inter alia, "instructing persons that Federal law requires wearing a mask on the conveyance and failure to comply constitutes a violation of Federal law." Id. (emphasis added).

803)   The latter directive constitutes an outright fabrication, as no such "Federal law" exists.

804)   The CDC had taken no action to publish any rule or other agency action of this sort for nearly an entire year since the COVID-19 pandemic was declared as a public health emergency, Defendants sought to justify bypassing the normal rule-making procedures required by the APA – thus claiming a sweeping police power over every person seeking to board a public conveyance or even enter a transportation hub - by calling it an emergency

805)   The potential adverse health effects from this cannot be casually

dismissed. Even healthcare workers who are trained in the use of masks have been susceptible to adverse effects from prolonged mask use during the COVID-19 pandemic

## INJURIES & AFFECTS

806) Plaintiff has been a world traveler, both for business and for pleasure. Attached (Exhibit 78) are some of his itineraries just from January 2019 until Covid started to get heavy, on or about March 2020).

807) As you can see from those fifty plus pages, Plaintiff normally travels a whole lot.

808) Not allowing him his leisure travel is a violation of his rights and discrimination, and can cause serious anxiety, depression, and/or mental illness.

809) Plaintiff was forced to drive spending thousands of dollars more for the little traveling that he did do. That alone was a loss of over $10,000.

810) Plaintiff is disabled and cannot wear a mask. Due to that fact these defendants as a group and each independently denied Plaintiff the ability to travel.

811) People who are not disabled and can therefore wear a mask, were allowed to travel freely. Plaintiff, due to his disability was banned from traveling, and/or the process to get permission to travel was so complicated and/or expensive

that it was not an option for Plaintiff.

812)   In many of the incidents, Plaintiff was shamed publicly, and his personal information became public information.

813)   Not allowing his business-related travel caused him severe financial damages.  Plaintiff is in the waste management and energy business and needed to travel in order to earn a living.

814)   There was a loss of extremely important and lucrative business opportunities due to my inability to travel. The details of these in full, will be described and proven during discovery period prior to the trial.  Plaintiff believes that these damages are in the BILLIONS of Dollars, and expects to prove the same. Much of these situations are ongoing, as the damages are continuing.

815)   The following are some of those business-related damages.

816)   Plaintiff signed an agreement with the "BBMP", which is the municipality of the City of Bangalore, India, to build a waste to energy power plant. That agreement was finally signed on March 28, 2022, but it was based on a State of Karnataka cabinet order from November 18, 2019. The cabinet approved of the project right before Covid hit.

817)   The reason why it took over two years is because Plaintiff was unable to travel.  In order to finalize the deal, Plaintiff needed to travel to various places to negotiate with suppliers, construction companies, investors, government officials,

and much more. The travel ban that was put on this Plaintiff, stalled the project and caused it to be delayed for over a year.

818) The BBMP finally sent a letter threatening that the deal will be canceled if Plaintiff does not arrive there (Exhibit 79). Eventually, Plaintiff was able to arrive in India through Air France and finalize the first agreement of the deal. Very few airlines allow Plaintiff to fly and it is very difficult to impossible to travel.

819) The projected annual profits for the Plaintiff's share alone are $5 million dollars per year. Defendants caused Plaintiff to lose in excess of that amount, due to their discriminations and violations of the law, both federal and state. That project alone will show a loss of at least ten million dollars due to two years inability to move forward.

820) At this time, the deal is still in limbo and may not complete, as the investors who initially committed to fund the entire project, seemed to have lost their patience and moved on. The loss of this deal completely is a loss of at least $500 Million USD.

821) That was just one of many projects that Plaintiff was in the midst of when Covid hit and the discrimination began.

822) I understand that the airlines are obsessed with this mask madness, but I wonder if they were expecting this level of damages.

823) There is an affidavit by Mr. Abdulrahman Khan, COO of National

Environmental Group, LLC ("NEG"), which is the LLC owned by Plaintiff. In that affidavit (Exhibit 80), Mr. Khan attests to the losses that NEG projects sustained due to the Plaintiff's inability to travel. There were more losses even than what was in that affidavit.

824)   Upon discovery, we will provide more information and make witnesses and experts available where necessary. Until then, this affidavit speaks for itself.

825)   The losses documented by this affidavit alone from about two dozen projects, equal in excess of $1.5 Billion Dollars. That is Billion with a "B." This is not fantasy, this is reality. We have signed contracts and all, which we shall provide during discovery, under seal if authorized by the court.

826)   There is the fact that Plaintiff could not be gainfully employed, as his career path in waste management and energy always required constant traveling. Plaintiff's income averaged at about $350,000 per year from the years 2007 to 2013.

827)   At a bare minimum, Defendants should be required to reimburse him for his inability to work, while adjusting the amount with the Consumer Price Index, which averages about 3.77% per year. That brings it to 2023 levels, which should equal a bit over $500,000 per year. The damage was for at least two years, as it takes time to get new work and get back to generating money. That means the damages from just keeping Plaintiff from working alone equals $1 million dollars.

828)   Plaintiff requests nominal damages to redress his losses, if these other

damages are not successfully proven to the satisfaction of the jury and/or the courts.

829)  Plaintiff will work on providing estimates of the actual dollar amounts of the damages, with the evidence necessary to monetize the above injuries and provide a clear dollar amount, in time for a trial. The damages are ongoing, so the figures are fluid.

830)  These numbers for the damages will be made available for initial discovery, and will be updated as required, and as the numbers change.

831)  There were many more projects delayed or derailed by the actions of these defendants. There was a refinery in Sweden to be purchased, a gold mining contract in Sudan, a gold refinery project in South Sudan, Waste to Energy in the Dominican Republic, and mobile power plants for Saudi Arabia. There may be a few more that I missed that will be unearthed during discovery. These will all be assessed during discovery with the information provided in a confidential manner, as to avoid further losses to Plaintiff.

832)  The losses caused by the direct actions of the Defendants have caused Plaintiff to lose billions of dollars, have caused Plaintiff to be so impoverished that he could not afford an attorney, nor can he even afford the docket fees. He had to file a motion for in Forma Pauperis ("IFP"). Imagine the embarrassment.

833)  To clarify one main issue, as clarified in the IFP motion, Plaintiff has no moneys for personal use, but was able to obtain some funding from an investor

that was required to use exclusively as expenses for the projects, and none of it for personal use. Therefore, Plaintiff had money for the flights necessary, if the airlines would have allowed him to fly. At the same time, Plaintiff ran out of money for basic life expenses, due to these discriminations, and thus his inability to have an income. Plaintiff is not permitted by agreement to use that money for personal use.

834)  Plaintiff's rights to travel, his civil rights, his dignity, and his livelihood were stripped from him. This Plaintiff was a wealthy man for decades, running his own businesses and paying a lot of taxes for decades. He invested in certain international projects.  These projects, in order to move forward, Plaintiff needed to be able to travel domestically and internationally.

835)  Plaintiff could not travel due to these defendants and their violations of his rights. This caused his entire business prospects to get delayed and/or destroyed, causing him to run out of money and become penniless.

836)  Even though, there was Air France that said they would take the Plaintiff, there's a limit to flights and times available, there's a pricing issue as it is often too expensive, and Air France has very limited destinations.  Do I go from New York to Florida by stopping in Paris?!

837)  Air France themselves sometimes discriminate and refused Plaintiff access to fly. Some of their flights are through partner carriers that refused Plaintiff and/or discriminated against him. (See Delta above)

838) Plaintiff's business prospects required him to fly to California, England, Switzerland, Israel, Florida, Texas, Chicago, India, Saudi Arabia, United Arab Emirates, and many other destinations. These were almost practically impossible in light of the violations described herein. This caused these deals to delay, and most to be completely lost.

839) Any one of these airlines could have gotten him to some of those destinations. For example, Aeroflot's flight to Russia would get him to Moscow and from there he can get a flight to India. The airlines did not allow this Plaintiff to travel.

840) The damages incurred by taking a man who was always wealthy and cause him to become penniless and to lose his prospective business projects, on an emotional level is difficult to give that a dollar figure. We will work on transferring it to a dollar amount, but there's no dollar amount that can truly compensate for this pain.

841) The damages for taking away a man's rights, forcing him to stay home, causing him anxiety, distress, and emotional problems is hard to put a dollar amount to it. Most people never experienced something like this. It is a form of imprisonment.

842) It was especially that much more difficult for someone who is constantly traveling. I will suggest a dollar amount for this at the very least $5

million, although the damage was much worse. I will defer to the jury, and respect their determination.

843) There are other significant damages in smaller numbers, such as the hassles trying to get flights, the hours and days planning and attempting trips, and the agony and anxiety that all this brought on.

## CLARIFICATION REGARDING MOOTNESS

844) Many of the defendants will try to claim mootness, and especially the federal defendants. I will try to respond to that in advance.

845) In a recent (2016) Supreme Court ruling they said the following: "Here, no court is capable of granting petitioner relief initially sought in the complaint because the short-term FSS contracts have been completed by other contractors. However, the controversy is " 'capable of repetition, yet evading review.' " Spencer v. Kemna, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43. The procurements were fully performed in less than two years after they were awarded, and it is reasonable to expect that the Government will refuse to apply the Rule of Two in a future bid by Kingdomware. Pp. 1975 – 1977." Kingdomware Technologies, Inc. v. U.S. (2016) 579 U.S. 162, 163 [136 S.Ct. 1969, 1971–1972, 195 L.Ed.2d 334].

846) In this case, the evidence is particularly strong, because as the Court presented, the CDC rescinded the ITTR on June 15, 2022, yet several months later,

on Dec. 30, 2022, the CDC reinstated those same or similar restrictions for Hong Kong, China, and Macau (Exhibit 81). It adds even further restrictions by stating, "This requirement also applies if you have been in China, Hong Kong, or Macau in the past 10 days and you are traveling to the United States from one of the following airports: Incheon International Airport (ICN) in Seoul, Republic of Korea; Toronto Pearson International Airport (YYZ) in Canada; and Vancouver International Airport (YVR) in Canada (referred to as Designated Airports)."

847) The explanation provided by the CDC is as follows, "Current Situation: In December 2022, China ended its Zero-COVID policy. Since then, COVID-19 cases have increased rapidly resulting in the highest number of cases per day in China since the start of the pandemic. There are also indications that severe cases and hospitalizations are increasing. There are reports that the healthcare system is overwhelmed and access to health care and medicine is limited. As cases increase, chances of new variants of concern emerging increase as well."

848) As Covid cases increase in various areas, the CDC is monitoring this closely. Any country that has significant increases in Covid to similar levels as in China during December 2022, will be subject to similar restrictions. This Plaintiff has been to all those airports mentioned above on multiple occasions, and plans to be at many of them in the near future. This is a very open and active issue.

849) There's a clear exception to the Mootness Doctrine as described above,

when it is "capable of repetition." Usually, that exception is applied even though there's no evidence of repetition, just evidence or understanding that it CAN be repeated. In our case we have concrete evidence of "capable of repetition," because with regards to Kong Kong, China, Macau, Seoul, Toronto, and Vancouver, the repetition occurred within less than half a year.

850)   With regards to the mask mandate, the CDC stopped enforcing the CDC MASK MANDATE   mask mandate effective April 18, 2022 in light of a court order in Health Freedom Def. Fund, Inc. v. Biden,   99 F. Supp. 3d 1144, 1178 (M.D. Fla. 2022), which declared the CDC MASK MANDATE   unlawful. It would be the Plaintiff's dream come true, if the CDC took that ruling with the humility it deserves and packed up their mask mandates and hid them deep in a basement closet, never to be seen again. Unfortunately, that dream is nothing more than a fantasy.

851)   Instead of accepting defeat, and backing down, the CDC upped its game. It filed an appeal with the Eleventh Circuit (Case: 22-11287 HEALTH FREEDOM DEFENSE FUND, INC. et al v. JOSEPH R. BIDEN, JR., President of the United States, et al.). In its Initial Brief, the CDC says the following:

852)   "The CDC recently found that "requiring masking in the indoor transportation corridor remains necessary for the public health." CDC, CDC Statement on Masks in Public Transportation Settings (Apr. 20, 2022), https://perma.cc/35NJ-WDK6." This statement essentially informs that while the

mask mandates are paused due to the District Court decision, the CDC intends to continue them upon their appeal, if successful.

853) To be clear, THE MASK MANDATES BY THE CDC ARE STILL IN EFFECT, THEY WERE NEVER RESCINDED.

854) The CDC makes that very clear on their website, explaining this in plain English as follows: "To protect CDC's public health authority beyond the ongoing assessment announced last week, CDC has asked DOJ to proceed with an appeal in Health Freedom Defense Fund, Inc., et al., v. Biden, et al. It is CDC's continuing assessment that at this time an order requiring masking in the indoor transportation corridor remains necessary for the public health."

855) This is what the CDC is clarifying. We lost that case in Florida, and the mask mandates on airplanes were lifted. We sincerely believe that these mandates should continue. We plan to continue them, and therefore we filed an appeal, in order to be permitted to reinstate the mask mandates.

856) While there is a possibility that even if they eventually win that appeal, and at that time the need for mask mandates will no longer be there, that is not the CDC's intentions at this time. They are actively pursuing this appeal in order to CONTINUE the mask mandate. That is what they said in their own words. The Eleventh Circuit Court of Appeals also believes that the CDC is planning to reinstate the mandates, because if they were not planning to reinstate it, that appeal would be

moot.

857)  As described, the suggestion that this case should be moot because the mandates are currently somewhat paused, is contrary to settled laws with respect to mootness.

858)  Finally, I will present to you the argument from the other side themselves; literally from opposing counsel. There is a consolidated case against the Transportation Security Administration ("TSA") at the DC Circuit Court of Appeals (Case #21-1220), where the TSA are represented by the same team of DOJ attorneys as the CDC in its appeal to the Eleventh Circuit, with regards to the federal defendants.  In that TSA case the federal government filed a Supplemental Brief responding to the Court's request to provide arguments as to if that case was moot, and/or why it should or should not be considered moot. The TSA response included the following:

859)  "As explained in the government's opening brief, there remains a live controversy regarding petitioners' various arguments that TSA's now-expired directives were ultra vires or were improperly issued without notice and comment. The government's appeal from the vacatur of the related CDC order in Health Freedom—which precipitated the rescission of the latest extension of the challenged directives—is still pending, and the pandemic is ongoing, with new variants having emerged on several occasions. The government has not forsworn its authority to

impose mask directives or its desire to do so if circumstances warrant. Any future mask-related directives issued by TSA will invoke the same authorities that petitioners claim are insufficient, including the authority to proceed without notice and comment. As a result, there is a more-than-speculative chance that a ruling on whether petitioners' arguments that the now-expired directives were ultra vires or were improperly issued without notice and comment would affect the parties' rights in the future. Accordingly, although these aspects of petitioners' arguments are answered on the merits by this Court's decision in Corbett, they are not moot."

860) The federal government; ie: the TSA, the CDC, the HHS, the DOT, the DOJ, the NIH, and maybe some others are working together towards these goals of mandating masks and travel entry restrictions/requirements. We should believe them when they file a brief and tell us in no uncertain terms that this issue is not moot, that they want to reinstate the mandates, and that when given the go-ahead, they will reinstate the mandates. Plaintiff cannot imagine a scenario that would be less moot than this case. The Defendants are yelling from the rooftops, "WE PLAN TO REINSTATE THEM." I think we should believe them.

861) The damages claims are certainly not moot, and certainly the claim for nominal damages cannot be moot, as the Supreme Court recently ruled as follows: "For purposes of this appeal, it is undisputed that Uzuegbunam experienced a completed violation of his constitutional rights when respondents enforced their

speech policies against him. Because "every violation [of a right] imports damage," Webb, 29 F. Cas., at 509, nominal damages can redress Uzuegbunam's injury even if he cannot or chooses not to quantify that harm in economic terms." UZUEGBUNAM et al v. PRECZEWSKI et al - U.S. Supreme Court March 8, 2021.

862)  We can, however, put all that aside and face the real truth.  The real truth is that the CDC Mask Mandate was never rescinded. If the appellate court reverses the district court order canceling the mask mandate, then immediately, without requiring any action, automatically, the mask mandate is in effect indefinitely.

863)  On page 9 of the CDC Mask Mandate  (Exhibit 2) it states, "Until further notice, under 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), and 71.32(b), unless excluded or exempted as set forth in this Order, a person must wear a mask while boarding, disembarking, and traveling on any conveyance into or within the United States."  The keywords here are "UNTIL FURTHER NOTICE."

864)  Then on page 11 of the same document it states, "This Order shall enter into effect on February 1, 2021, at 11:59 p.m. and will remain in effect unless modified or rescinded based on specific public health or other considerations, or until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Service Act (42 U.S.C. 247d) that a public health emergency exists."

865)  The Florida District Court put it aside, but only temporarily. We have yet to get a decision from the Circuit Court. If the Circuit Court reverses the judgment, the mask mandate is in full effect automatically.

866)  There is no chance that such a scenario could be considered moot.

## CAUSES OF ACTION

## COUNT ONE

**867)  AGENCY ACTION NOT IN ACCORDANCE WITH LAW, IN EXCESS OF LEGAL AUTHORITY; VIOLATION OF THE APA.**

868)  Plaintiff incorporates the facts and allegations of the prior paragraphs, and further alleges:

869)  The CDC and the HHS exceeded their legal authority when mandating masks on public transportation.

870)  Under the APA, a court must "hold unlawful and set aside agency action" that is "in excess of statutory . . . authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

871)  The Mask Mandate purports to derive its statutory and regulatory authority from 42 U.S.C. § 264(a) and 42 C.F.R. §§ 70.2, 71.31(b), and 71.32(b).

872)  The Mask Mandate exceeds that authority in several ways.

873) First, neither 42 U.S.C. § 264, nor 42 C.F.R. § 70.2, nor 42 C.F.R. §§ 71.31(b) or 71.32(b) authorizes the CDC to institute such a broad sweeping mandate requiring every person who travels on a public conveyance to don some type of garment or device. To hold otherwise would be "tantamount to creating a general police power." Skyworks, Ltd. v. CDC, Case No. 5:20-cv-2407, 2021 U.S. Dist. LEXIS 44633 at *31 (N.D. Ohio March 10, 2021).

874) Second, Sections 264 and 70.2 permit the CDC to act only if it first "determines that the measures taken by" a state "are insufficient to prevent the spread" of a communicable disease "from such State . . . to any other State." 42 C.F.R. § 70.2. But here, the CDC has made no such determination. Rather, the Mask Mandate recites a broad statement:

"Any state or territory without sufficient mask-wearing requirements for transportation systems within its jurisdiction has not taken adequate measures to prevent the spread of COVID-19 from such state or territory to any other state or territory." 86 Fed. Reg. 8029.

875) This utterly fails to identify measures taken by a particular state, or any state at all, much less how those measures are insufficient.

876) Third, the CDC's reading of its authority under 42 U.S.C. § 264 is divorced from context. The statute gives the CDC the authority to "make and enforce such regulations as in [its] judgment are necessary to prevent the introduction,

transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession." 42 U.S.C. § 264(a). However, the next sentence of the statute clarifies that to "carry[] out and enforc[e]" those regulations, the CDC is authorized to conduct "such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other such measures, as in [CDC's] judgment may be necessary." Id. This "second sentence [of Section 264(a)] operates to limit CDC's enforcement and implementation authority to only those actions resembling 'inspection, fumigation, disinfection, . . . [and] pest extermination." Florida v. Becerra, Case No. 8:21-cv-839, 2021 U.S. Dist. LEXIS 114297, *55 (M.D. Fla. June 18, 2021) (Merryday, D.J.) As such, the second sentence "discloses, illustrates, exemplifies, and limits to measures similar in scope and character the measures contemplated and authorized by Congress when enacting the statute." Id. (citing Yates v. United States, 574 U.S. 528, 546 (2015)). Clearly, mandating that every person setting foot in an airport, bus terminal, train station, aircraft, bus, train, or ship wear a mask over his or her nose and mouth exceeds the scope of that limiting language.

877) Fourth, 42 C.F.R. §§ 71.31(b) and 71.32(b), rather than assist Defendants' sweeping power grab, only serve to illustrate the limited scope of the

CDC's statutory and regulatory authority. Section 71.31(b) provides:

"The [CDC] may require detention of a carrier until the completion of the measures outlined in this part that are necessary to prevent the introduction or spread of a communicable disease. The [CDC] may issue a controlled free pratique to the carrier stipulating what measures are to be met, but such issuance does not prevent the periodic boarding of a carrier and the inspection of persons and records to verify that the conditions have been met for granting the pratique."

878)    But again, the Mask Mandate divorces this provision from context. The meaning of this section is clarified by Section 71.31(a), which addresses a carrier's "arrival at a U.S. port. . . ." It is further clarified by the reference in Section 71.31(b) to a "controlled free pratique," which means "permission for a carrier to enter a U.S. port, disembark, and begin operation under certain stipulated conditions." 42 C.F.R. § 71.1(b). Clearly, then, Section 71.31(b) refers to the CDC's authority to detain a carrier that is suspected of harboring persons, articles, or things that present a risk of communicable disease, or to grant leave to the carrier to enter a U.S. port under certain conditions. That is a far cry from authorizing the CDC to require every person entering a conveyance, anywhere in the U.S., or anywhere in the world where a person is en route to the U.S., to wear a mask.

879)    Section 71.32(b) provides that, whenever the CDC "has reason to believe that any arriving carrier or article or thing on board the carrier is or may be

contaminated with a communicable disease," the CDC "may require detention, disinfection, disinfestation, fumigation, or other related measures. . . ." This clearly relates back to the second sentence of 42 U.S.C. § 264(a) – i.e., it illustrates how narrow and limited the CDC's authority actually is. It certainly does not confer the broad, sweeping power assumed by Defendants in regard to the Mask Mandate.

880)  Additionally, as described above, the mask mandate contains instructions encouraging and allowing airlines to create policies with regards to the disabled that are in clear violation of federal ACAA laws.

## COUNT TWO

### 881)  Failure to Provide Notice and Comment: Violation of the APA

882)  Plaintiff incorporates the facts and allegations of the prior paragraphs, and further alleges:

883)  The CDC and the HHS failed to provide the required Notice & Comment. The APA requires Defendants to provide notice of, and receive comment on, the Mask Mandate. See 5 U.S.C. § 533.

884)  Without specifically citing the "good cause" exception of 5 U.S.C. § 553(b)(B), Defendants lean on the year-old "emergency" of COVID-19 to claim that the Mask Mandate is not a "rule" within the meaning of the APA. 86 Fed. Reg. at 8030. As a result, Defendant did not even invite comments, much less provide for a

notice and comment interval.

885)  First, the Mask Mandate is clearly a "rule" within the meaning of the APA, because it prescribes law (the Mandate literally instructs carriers and transportation hub operators to inform passengers that failure to properly wear a mask constitutes a "violation of Federal law," 86 Fed. Reg. at 8026, even though no corresponding statute exists), and marks the consummation of an agency decision-making process that determines rights or obligations and/or constitutes action from which legal consequences will flow. See 5 U.S.C. § 551(4); Florida v. Becerra, 2021 Dist. LEXIS 114297 at *110 (citations omitted).

886)  Second, the "good cause" exception of 5 U.S.C. § 553(b)(B), which Defendants have only tacitly invoked, is to be "narrowly construed and only reluctantly countenanced," and only "excuses the APA's notice-and-comment procedures in an 'emergency situation.'" Becerra, supra at *123 (citations omitted).

887)  Good cause does not exist when the agency has sufficient time to provide notice and comment. HHS declared COVID-19 a public health emergency early in 2020, and yet did not promulgate the Mask Mandate until early 2021, practically a year later. If the COVID-19 pandemic presented a national emergency in early 2020, that emergency had long passed by early 2021. As noted by the Court in Becerra, "[i]f the existence of a communicable disease alone permitted CDC to find 'good cause,' CDC would seldom, if ever, need to comply with the statutory

requirement for 'good cause' to dispense with notice and comment." Becerra, supra at *126.

## COUNT THREE

888)  **Arbitrary and Capricious Agency Action, in violation of the APA.**

889)  Plaintiff incorporates the facts and allegations of the prior paragraphs, and further alleges:

890)  The CDC and the HHS created a mask mandate that is arbitrary and capricious. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious," as Defendants' actions are here. 5 U.S.C. § 706(2)(A).

891)  First, Defendants disregarded the fact that a protocol already exists under the Federal Aviation Act, and regulations promulgated thereunder by the Federal Aviation Administration (the "FAA"), which address an air carrier's ability to refuse boarding to a passenger based on a threat of communicable disease. See 49 U.S.C. § 44902(b); 14 C.F.R. §§ 382.21 and 382.19(c)(1)-(2). The regulatory regime promulgated by the FAA is comprehensive, and the FAA – which is responsible for interpreting and enforcing statutes governing flight operations – apparently did not deem it necessary to update or amend those regulations during the nearly one-year period from the onset of the COVID-19 pandemic to the date of the Mask Mandate.

892)  Second, an agency "must examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." Encino Motorcars, LLC v. Navarro, 136 S. Ct. 2117, 2125 (2016). Here, Defendants failed to articulate why the Mask Mandate was needed, what specific State measures were inadequate, and why the exemptions under the Mask Mandate were not arbitrarily selected.

893)  For example, Defendants provide no epidemiological basis for drawing the line for exemptions for children at age 2 and under, whereas the World Health Organization ("WHO") recommends against masking children age 5 and under, and recommends that children ages 6-11 wear masks only under limited circumstances.

894)  The Mask Mandate also fails to articulate whether any safety data respecting the effects of long-term mask use for persons of all ages was considered. The Mandate's only exemption for disabilities is for persons "who cannot wear a mask, or cannot safely wear a mask, because of the disability. . . ." 86 Fed. Reg. at 8027. This fails to take into account persons who suffer from anxiety, headaches, and shortness of breath when wearing a mask. Defendants also fail to address the FDA's own uncertainty regarding the efficacy of masks for the general public, as well as concerns regarding the safety of wearing masks for extended periods of time.

895)  Defendants also ignore the fact that the travel industry was, up until the time of the Mask Mandate, effectively self-regulating, and the Mask Mandate

contains no finding to the contrary. The Mandate forecloses carriers from adjusting to changing circumstances, and from offering alternative solutions.

896) Third, the Mask Mandate fails to show that Defendants considered less burdensome alternatives. For example, existing Federal Air Regulations provide guidance for airlines to determine whether they may deny boarding to a passenger based on a "direct threat" of infectious disease. See 14 C.F.R. §§ 382.21 and 382.19(c)(1)-(2).

## COUNT FOUR

**897)  Unconstitutional Delegation of Legislative Power; in Violation of U.S. Const. Art. I, § 1 as to the Mask Mandate.**

898) Plaintiff incorporates the facts and allegations of the prior paragraphs, and further alleges:

899) The CDC and the HHS's mask mandate is in violation of the US Constitution. Article I, Section 1 of the U.S. Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." In other words, only Congress can make laws.

900) If the Mask Mandate does not exceed Defendants' authority under 42 U.S.C. § 264 and its related regulations, then Section 264 constitutes an unconstitutional delegation of legislative authority to the Executive Branch, which

afforded the CDC the power to determine the rights of every person engaged in interstate travel, and to make a sweeping policy decision without any meaningful accountability to the electorate.

901)  In National Federation of Independent Business v. Department of Labor, O.S.H.A., the U.S. Supreme Court addressed a federal vaccine requirement that was similar in that the President and the Executive Branch were creating laws on their own and trying to bypass the Legislative Branch.  The court said the following: "It is not our role to weigh such tradeoffs. In our system of government, that is the responsibility of those chosen by the people through democratic processes. Although Congress has indisputably given OSHA the power to regulate occupational dangers, it has not given that agency the power to regulate public health more broadly. Requiring the vaccination of 84 million Americans, selected simply because they work for employers with more than 100 employees, certainly falls in the latter category." National Federation of Independent Business v. Department of Labor, Occupational Safety and Health Administration (2022) 211 L.Ed.2d 448 [142 S.Ct. 661, 666]

902)  This Plaintiff participated in that case before the Supreme Court, as his case Aaron Abadi v. Dept of Labor, OSHA, Application (21A293) US Supreme Ct. 2022, was consolidated with that same case. Plaintiff was there for the oral arguments, and it was very clear from the discussions that the Executive Branch

should not and cannot bypass the Legislative Branch and the democratic process.

903)  Additionally, as described above, the CDC Mask Mandate encourages and permits airlines to disobey federal ACAA disability laws and to discriminate against the disabled.


**COUNT FIVE**

**904)  Unconstitutional Exercise of Legislative Power; Violation of U.S. Const. Art. I, § 1 as to the Executive Order**

905)  Plaintiff incorporates the facts and allegations of the prior paragraphs, and further alleges:

906)  The President's Executive Order is in violation of the US Constitution. The Executive Order (Exhibit 1) constitutes an unconstitutional exercise of legislative power by the Executive Branch, in that it is not authorized by any statute, and indeed does not even deign to cite any statutory basis.

907)  The Executive Order does not cite any national emergency, nor could it. No such emergency existed at the time that the Executive Order was entered. By then, the COVID-19 pandemic had affected travel in the United States for nearly a year.

908)  Congress could have enacted legislation requiring the wearing of masks on public conveyances during the year that preceded the Executive Order, but

Congress did not do so. No provision of Article II allows a President to enact nationwide edicts, merely because the Legislative Branch has failed to enact legislation that the President would prefer.

909)   The Executive Order is unprecedented in its breadth and impact. Never before has a President of the United States entered an executive order mandating that every citizen of the Republic be required to don a type of garment or device, whether when traveling or otherwise, for any reason whatsoever.

910)   The Executive Order contains no expiration date or sunset provision, and fails to provide any guidance as to when or under what conditions it may be deemed to have expired.


**COUNT SIX**

**911)   Violation of Separation of Powers; Violation of Amendment X to the United States Constitution.**

912)   Plaintiff incorporates the facts and allegations of the prior paragraphs, and further alleges:

913)   The President's Executive Order is in violation of the US Constitution. The Tenth Amendment to the United States Constitution provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the People." U.S. Const. Am. X.

914) The Executive Order impedes on the traditionally-recognized prerogative of the States to protect the public health of their inhabitants under their general police power. The public health power, including the power to quarantine, is still understood as a function of state police power, with the federal role being limited to measures that are "distinctly limited in time, scope, and subject matter." Becerra, supra at *43-44.

915) The Executive Order contains no finding that the public health authority of the States has been somehow inadequate, and contains no finding explaining why, at this late stage in the pandemic, action by the Federal government is suddenly warranted or necessary.

916) On the contrary, all evidence points to the fact that President Biden created this Executive Order in order to keep his campaign promise of forcing masks, without following the legal process, and without even determining if it was necessary from a health perspective at all.

917) As such, the Executive Order violates the Separation of Powers between the States and the Federal Government.

## COUNT SEVEN

918) **42 U.S. Code § 1983 - Civil action for deprivation of rights**

919) Plaintiff incorporates the facts and allegations of the prior paragraphs,

and further alleges:

920) The airline defendants and their employees are in violation of 42 U.S. Code § 1983 - Civil action for deprivation of rights ("1983"), as they violated the various counts listed herein that are for discrimination against someone with a disability.

921) The statute reads as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

922) Typically, a 1983 violation is for law enforcement and police. There is an exception, when a private person is acting under the color of law.

923) " 'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,' " quoting *United States v. Price*, 383 U.S., at 794, 86 S.Ct., at 1157." Lugar v. Edmondson Oil Co., Inc., 102 S.Ct. 2744, 2756, 457 U.S. 922, 941

(U.S.Va.,1982).

924)   The Government created laws unlawfully, and recruited the flight crew to enforce them together.  The police come and will remove a person who violates these fake laws.  This is certainly included as "under the color of the law."

925)   The flight crew believe that they have a higher authority, a quasi police power while on the plane.

926)   Section 46504 of Title 49, United States Code (formerly section 1472(j) of Title 49 Appendix) sets forth the offense of interference with a flight crew member or flight attendant within the special aircraft jurisdiction of the United States, which is defined in 49 U.S.C. § 46501(2). The statute applies to any "individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties." The statute provides for up to 20 years imprisonment, and further provides for imprisonment for any term of years or life if a dangerous weapon is used. Interference with a flight crew member or attendant is a general intent crime, and does not require a specific intent either to intimidate the flight crew member or attendant or to interfere with the performance of his or her duties. United States v. Grossman, 131 F.3d 1449 (11th Cir. 1997).

927)   The flight attendants nowadays are constantly utilizing that power.

They threaten people if they don't put that phone away, or they don't sit in their seat, they'll have them arrested and have the police waiting for them when the plane lands. Try and imagine what would happen if a person pulls out a cigarette on a flight, lights it, and begins to smoke it. That person would be physically removed from his seat to the rear of the plane, the cigarette taken away, and the police waiting for him when he lands.

928) If Plaintiff were to ignore the mask demands from the airlines, and would have said "I have a disability, I cannot wear a mask, I'm entitled to fly without one," and then goes on any of the above listed airline defendants' planes without a mask, all hell would break loose and the police would be there instantly. The people enforcing the law until the police get there and the ones calling the police, are the flight attendants and the pilots.

929) Maybe years ago, these people were there to serve and make sure that passengers had a good flight. It has changed to a point where they often believe that their main job is to maintain order and make sure everyone is following the laws. They go up and down the aisles barking put away your phone, move your seatback into the upright position, no hand luggage on the floor, and lift your mask to cover your nose.

930) This Plaintiff experienced multiple situations during Covid-19, where the flight attendants barked commands, expecting Plaintiff to follow orders, or else.

931)  The violations of this count directly caused Plaintiff's injuries.


**COUNT EIGHT**

**932)  42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.**

933)  For this and all other causes of action, plaintiff realleges and incorporates by reference the allegations and facts contained in the previous paragraphs and all exhibits attached hereto as though set forth fully herein.

934)  All the Defendants conspired to interfere with Plaintiff's civil rights, by conspiring to deprive him of his right to fly and by conspiring to deny him his rights in all the counts listed herein.

935)  42 U.S. Code § 1985 - Conspiracy to interfere with civil rights. " If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;…"

936)  "…if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or

deprivation, against any one or more of the conspirators."

937)  The Supreme Court requires that there be class-based animus. Those words are not in the statute. The concept is that Congress wrote the law initially in regards to racial discrimination, which is a class-based animus. By the fact that Congress did not specify racial discrimination, we can deduce that they meant to include any discrimination. When there is a class-base animus, it is discrimination. When there's no class basis, it is a deprivation of rights, and will not fit into the category of discrimination.

938)  The Supreme court said that disability as a labeled category, all-inclusive, is not a class-based animus for these purposes. We do not experience a concept of discrimination against all people that are disabled.

939)  Mentally disabled people, a sub-category of disabled people, however, can be a class-based animus. It is a specific group and for whatever drives a person or group to discriminate against race, such as hatred, jealousy, ignorance, or any of a million reasons, this can fit the requirements.  We can imagine people having animus towards mentally disabled people. On several cases the Supreme Court considered them a class-based animus. See Olmstead v. L.C., 1999 · Supreme Court of the United States.

940)  While all disabled people are too broad of a category to be considered class-based, people with specific disabilities, such as those with disabilities

towards masks, should fit well as a class-based disability.

941)    Again, the exact animus may be difficult to define or understand. That does not take away the fact that the animus is there.

942)    Animus against black people may be based on a distorted belief that black people are not clean, or uneducated. Animus against Jews may be the distorted belief and generalization that Jews are sly and dishonest. Maybe they'll say, "Jews control the world." Anyone with eyes and a brain know that to be untrue, but we will consider that class-based animus, and that ignorance and irrational bias and animus will drive discrimination. That's what 1985 comes to irradicate.

943)    There needs to be a class that this group shares a specific characteristic that others do not have.

944)    There needs to be an opportunity for animus, bias, anger, and/or fear that is directed toward or about this class. Otherwise, the fact that it is a class, does not justify it to be included in a conspiracy to discriminate statute.

945)    People with disabilities who, because of their disabilities cannot wear a mask, is a new class, created unfortunately by Covid-19, which has received and been the brunt of animus that I have not seen before in my lifetime.

946)    It may sound like an overreaction. I can tell you with great confidence that it is not. I welcome anyone to spend the day with me in places

where masks are required and see the reactions and feel the animus. It is there, it is very strong, and it is open and in your face. For some reason, the ones who are so caring when it comes to other causes, are completely intolerant to our situation. "If you can't wear a mask, then stay home," they say.

947)   The class is a unique group of people with somewhat of an uncommon disorder and/or medical disability, some physical, some mental, and some emotional.

948)   Living within this class and suffering from constant blatant disability discrimination, I often try to understand the perspectives of the offenders. I have now filed complaints, and lawsuits against over 75 major corporations. Large corporations such as Apple, Starbucks, Walmart, Target, Lyft, Caesars, Amtrak MGM Resorts, Greyhound, NYU Langone Health, and at least 40 airlines. Many of these, are companies that feel confident in their virtue, to lecture us on right and wrong, yet Plaintiff alleges that they have discriminated against him and most are standing strong in their belief that they're entitled to discriminate.

949)   How could that be? How could such virtuous people discriminate? As horrible as it sounds, that is the nature of discrimination. I grew up in the 60's and 70's. There was rampant discrimination against black people, Jews, Hispanics, and probably a dozen or so others. Many of those people were virtuous, possibly church-going or religious in any other denomination. It is hard to understand. I

never really understood.

950)  Discrimination, bias, racism, sexism, and so on do not make sense. That is the whole point of it.  If it made sense, it would not be racism or discrimination.  It would be pragmatic intelligent responses to reality.

951)  If a group of people all were dishonest, it would be prudent to avoid doing business with the whole lot.  I don't believe that it would be discrimination.

952)  Racism, discrimination, bias, and the like are specifically closed-minded, inherited, brainwashed, and/or xenophobically driven irrational views of classes of people, that are harmful and hurtful to those classes.  They hardly ever make any sense.

953)  Small children are seldom racist, because they were not yet conditioned to believe these irrational thoughts.

954)  There is a class of individuals that are disabled with the exclusive and unique result that they cannot wear a mask.  There is a very powerful animus that exists throughout our people, our government, and from the top to the bottom, that pervades in our society.

955)  Congress created these statutes to irradicate these irrational biases, and this case fits right into the intent of these laws.

956)  In correspondence with Goldberg, he mentioned that this is a prewar civil rights law that I will be required to pay for his legal fees if I suggest it,

because it is no longer in effect.

957)   With all due respect, I am under the impression that if congress did not repeal this law, it remains in effect.

958)   In Bray v. Alexandria Women's Health Clinic, 1993 · Supreme Court of the United States, we see that this statute is still completely in effect where applicable.

959)   All the defendants together with the unnamed defendants conspired to interfere with my civil rights.

960)   The essential elements of a § 1985 claim is: 1) a conspiracy; 2) to deprive plaintiffs of equal protection or equal privileges and immunities; 3) an act in furtherance of the conspiracy; and 4) an injury or deprivation resulting therefrom. I meet all four elements in bringing this claim against the Airline Defendants.

961)   I expect to prove through discovery that the Airline Defendants conspired – with each other, other air carriers, and within their own companies – to ban disabled flyers because of a discriminatory motive.

962)   The conspiracy is not driven by public-health considerations, as proven above, and since masks are totally worthless in reducing the transmission of respiratory viruses such as COVID-19 and harm human health.

963)   Rather the Airline Defendants are motivated by a class-based,

invidiously discriminatory animus resulting in an unfounded, ridiculous fear that healthy, uninfected disabled travelers who can't wear a face mask are somehow a grave danger.

964)  The Supreme Court gave an example of class animus that would apply to this statute, as opposed to the case at hand, which was regarding abortions, and the class animus was not identifiable. "Some activities may be such an irrational object of disfavor that, if they are targeted, and if they also happen to be engaged in exclusively or predominantly by a particular class of people, an intent to disfavor that class can readily be presumed. A tax on wearing yarmulkes is a tax on Jews." Bray v. Alexandria Women's Health Clinic, (1993) US Supreme Court.

965)  There is some strange animus that many people in America have today, during this Covid pandemic, towards people with disabilities who cannot wear a mask. It is not a fear of the disease, as the same animus does not exist towards those that wear the mask primarily on their chin.

966)  The airline defendants that discriminated against Plaintiff, the federal agencies and lawyers, that encouraged, instigated, and/or aided and abetted, and the others were all conspiring with others to deprive this Plaintiff of his civil rights, in violation of this section.

967)   Congress identified disabled airline passengers as a class of people specifically in need of legal protection. Congressional intent was to protect airline

passengers from discrimination, not to empower the carriers to fly above the law.

968)    The conspiracy is to deprive these individuals of their human rights.

969)    The conspiracy here involves the constitutional right to travel, for which no other remedy exists except a lawsuit under 42 U.S.C. § 1985(3). "The right to pass freely from State to State has been explicitly recognized as among the rights and privileges of National citizenship." *Twining v. New Jersey*, 211 U.S. 78, 97 (1908). "That right, like other rights of national citizenship, is within the power of Congress to protect by appropriate legislation." *Id. at 105-106.*

970)    There is no doubt that conspiring to prevent all disabled passengers from flying who medically can't safely wear a mask, constitutes an invidious discrimination against a protected minority.

971)    It will unquestionably require discovery for Plaintiff to reveal the exact depth of the conspiracy, in light of the extensive facts Plaintiff laid out in his Complaint. However, the fact that there was a conspiracy between all this parties is frankly obvious. These parties had a clear understanding between all of them that they will together not allow passengers to fly without a mask, even though they are disabled and cannot wear a mask.

972)    Plaintiff alleged that Airline Defendants as an industry conspired with each other, with federal agencies and the Medical Defendants involved, and with the individual employees therein to discriminate against them due to their

disabilities.

973)    Defendants may suggest that there is no clear evidence of them conspiring together, like a taped conversation where they are heard discussing between each other and agreeing to discriminate against the disabled as a group. But that's not required by the statute. Take for example, if you see five members of the Ku Klux Klan walking down a street with clubs in their hand, and they find and beat up a black person, do we need to hear them on tape conspiring to get together and beat the person in order to claim conspiracy?! Of course not! The same goes for the airline industry and the federal agencies that instigated the discrimination. They are almost all as an industry, including the federal agencies that govern them, colluding and conspiring to discriminate against Plaintiff and those similarly situated.

974)    *Thomas v. Roach*, 165 F. 3d 137 - Court of Appeals, 2nd Circuit 1999, said, "<u>A conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.</u>' *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir.1995) (quoting *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir.1988))."

975)    The Airline Defendants and the other defendants very clearly show "a tacit understanding to carry out the prohibited conduct," and upon proper discovery, Plaintiff shall provide further evidence.

976)    The class-based animus alleged is about an unprecedented, difficult to believe animus that is obvious from my Complaint and dozens of other complaints and news stories, toward people with a specific disability that did not allow them to don a mask. While it is not the responsibility of the Plaintiff to determine the source or cause of this animus, it is possible that the political divide in the country between pro-maskers and the anti-maskers caused them to have animus towards the <u>mask-disabled</u>, as they did not refuse to differentiate between them and anti-maskers without mask-related disabilities.

977)    We can certainly get to the bottom of the animus during discovery, but the fact that there is a specific animus to people like us with mask related disabilities is absolute, and so thick that it can be sliced with a knife. We felt it every time we entered a store with a mask policy. Medical centers, airlines, courts and others, they would give us a dirty look, even when they finally did let us in. The animus is most definitely there and we will prove that animus before and/or during trial.

978)    "In the *Cameron* case, we affirmed a judgment for plaintiffs in an action brought by a supporter of an incumbent sheriff's opponent who was arrested while distributing campaign leaflets and who charged that his arrest was a part of a conspiracy to deprive him and other supporters of the sheriff's opponent of the equal protection of the laws. In affirming, we held "that § 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate. <u>If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3)."</u> *(emphasis ours)* [*Cameron v. Brock,*] 473 F.2d at 610." [*Glasson v. City of Louisville*, 518 F.2d 899, 912 (6th Cir. 1975)].

979)    In *Lake v. Arnold*, 112 F. 3d 682 - Court of Appeals, 3rd Circuit 1997, where a specific group of disabled people were considered a class-based group for this purpose, it says as follows:

980)    "Discrimination based on handicap, including mental handicap, like that based on gender, often rests on immutable characteristics which have no relationship to ability. Where this is the case, we are convinced that the discrimination is invidious and that the reach of section 1985(3) is sufficiently elastic that the scope of its protection may be extended. In reaching this conclusion we are influenced by a number of factors which lie outside our own conjecture or analysis. We begin with the explicit statement of Congress itself. In enacting the Americans With Disabilities Act, Congress found that: [I]ndividuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society."

981)    In *Farber v. City of Paterson*, 440 F. 3d 131 - Court of Appeals, 3rd Circuit 2006 it says, "the phrase "class-based invidiously discriminatory animus" would confine the authority of this law to the prevention of deprivations which shall attack the equality of rights of American citizens; that any violation of the right, the animus and effect of which is to strike down the citizen, to the end that he may not enjoy equality of rights as contrasted with his and other citizens' rights, shall be within the scope of the remedies of this section *(emphasis ours)*."

982)    As Plaintiff in this case, I am a perfect match to this description. The animus of the Airline Defendants, federal agencies and their employees have denied Plaintiff the equality of rights to travel in every respect and in every reasonable way, as other citizens can, due to our disabilities which prohibited us from wearing a mask.

983)    As written in *Lake v. Arnold*, 112 F. 3d 682 - Court of Appeals, 3rd Circuit 1997, the Court said, "Our own jurisprudence, informed by the reasoning of

our sister court, convinces us that the mentally retarded, as a class, are entitled to the protection afforded by section 1985(3)." If the mentally retarded are entitled to 1985(3) protection in their quest to function in life with their limitations attached, and to pursue happiness in life to the fullest of their opportunities and abilities, however diminished, it cannot be that Americans whose disabilities prevent them from safely masking, and prevents them from breathing — even if that limitation is merely perceived in their minds — that they would also not be afforded the same protection of law, in the same pursuit of happiness in life to fullest of their opportunities and abilities.

984)    In *Life Ins. Co. of North America v. Reichardt*, 591 F. 2d 499 - Court of Appeals, 9th Circuit 1979, the Court held that "Courts construing § 1985(3) have not limited its protection to racial or otherwise suspect classifications. [16] *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975) **(political opponents are a sufficient class)** *(emphasis ours)*; *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973) **(supporters of a political candidate are a sufficient class)** *(emphasis ours)*; *Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972) **(a single family is a sufficient class)** *(emphasis ours)*. See also *Harrison v. Brooks*, 446 F.2d 404 (1st Cir. 1971). Reichardt's allegation that an invidiously discriminatory animus was the motivating force behind the disparate policy terms offered to women is thus sufficient to survive a motion to dismiss for failure to state a claim."

985)    The actions and inactions of all these defendants directly caused the

injuries to the Plaintiff.


**COUNT NINE**

**986)    42 USC § 1986: NEGLECTING TO PREVENT**

**INTERFERENCE WITH CIVIL RIGHTS.**

987)    For this and all other causes of action, plaintiff realleges and

incorporates by reference the allegations and facts contained in the previous

paragraphs and all exhibits attached hereto as though set forth fully herein.

988)    Defendants, employees of American, and all the other airlines, including the Numerous Unnamed defendants (whose names will be obtained during discovery) were aware of the conspiracy to interfere with the civil rights of the disabled by banning Plaintiff and similarly disabled from all flights, or requiring unlawful and discriminatory demands, but did nothing to stop it. These Individual Defendants possess the power to stop the conspiracy today but have not taken any action to do so. This claim is thus ongoing and the one-year statute of limitations does not apply.

989)    "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action…" 42 USC § 1986.

990)    Section 1986 creates a remedy against persons whose acquiescence make conspiracies to interfere with civil rights possible.

991)    Therefore, all to-be-named Individual Defendants in addition to the

listed defendants are personally liable to Plaintiff for neglecting to prevent interference with his civil rights.

992)  Plaintiff's injuries and damages were a direct result of the Defendants' actions.

993)  Therefore, the Airline and Defendants are liable to Plaintiff for violating 42 USC § 1986.

994)  Plaintiff includes all the facts above and the details of the cause of action of 1985 (3) into this cause of action. As is well known, the 1986 statute follows and is subject to the 1985 (3) statute.

995)  Plaintiff alleges that each Defendant herein could have stood up for the Defendants, for human rights, and for the federal and state laws, and could have stopped this conspiracy. A conspiracy can only exist when the various people and entities conspire. Each and every Defendant could have and should have spoken out against the deprivation of our human rights. They did not, and therefore they are in violation of 1986, by neglecting to interfere and stop the discrimination, at least within their own company, the companies that they were advising, and/or their own part of the discriminations.

996)  The statute reads as follows: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in

preventing the commission of the same, neglects or refuses so to do, if such

wrongful act be committed, shall be liable to the party injured, or his legal

representatives, for all damages caused by such wrongful act, which such person

by reasonable diligence could have prevented; and such damages may be recovered

in an action on the case; and any number of persons guilty of such wrongful

neglect or refusal may be joined as defendants in the action…"

997)      Plaintiff alleges that all the Defendants had knowledge and

participated in the discriminations described herein. They each had the ability to

stop the parts of the discrimination that they participated in. If just one airline of

this group said "no, we will not discriminate," that alone would allow Plaintiff an

ability to fly to certain destinations.  That would have stopped a few of the acts of

discrimination.  All of these Defendants had the ability to stop many of the

described acts of discrimination, and they all neglected to stop the discriminations.

On the contrary, they were actively participating and encouraging further

discrimination.

998)      The actions and inactions of all these defendants directly caused

the injuries to Plaintiff.

999)      For example, if Medaire and Stat-MD actually followed the

laws and advised their clients, the airlines that they must not discriminate against

people with mask disabilities and that this conspiracy must stop, they would have

likely listened and the conspiracy would have ended.

1000)    If the federal defendants would have actually followed the laws and notified the airlines that they must not discriminate against people with mask disabilities and that this conspiracy must stop, they would have likely listened and the conspiracy would have ended.

1001)    If each airline defendant would have conveyed to each other that this is illegal, immoral, and wrong, then the conspiracy would have ended. The same goes for each and every defendant herein, and for those that may be added at a later date, upon uncovering their identities through discovery, and upon leave of this court.

1002)    Every Defendant herein had the knowledge that these wrongs conspired to be done, and **mentioned in section 1985 of this title, are** about to be committed, and had the power to prevent or aid in preventing the commission of the same, but neglected and/or refused to do so. They instead participated in the conspiracy and were directly involved in causing such wrongful acts to be committed.


## COUNT TEN

**1003)  Violation of ACAA 14 CFR Part 382 general discrimination.**

1004)  **§ 382.11** "What is the general nondiscrimination requirement of this

part? (a) As a carrier, you must not do any of the following things, either directly or through a contractual, licensing, or other arrangement: (1) You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation;"

1005) Plaintiff incorporates the facts and allegations of the prior paragraphs, and further alleges:

1006)  All the Airline Defendants violated this statute by discriminating against Plaintiff due to his disability, in the provision of air transportation, as described at length above.  They did not allow Plaintiff, who is a disabled person to benefit and utilize their airline, its services, and facilities equally to non-disabled people.

1007)  Defendants' discriminations were the direct cause of Plaintiff's injuries.

1008)  The discriminations were intentional and deliberate.  The airlines took advantage of the lack of enforcement to discriminate freely, all the while knowing there was no health or safety concerns that warranted such actions.

### RE: PRIVATE RIGHT OF ACTION FOR ACAA VIOLATIONS

1009) While there is significant debate as to the question if ACAA violations are subject to a private right of action, and there are many cases where it was

permitted, while more recently it has been denied. However, in this case where the Department of Transportation ("DOT") completely refuses to act, and on the contrary, they encourage the airlines to violate the laws, I believe there must therefore be an implied private right of action.

1010) Let us look at the caselaw, where the circuit courts say that there is no right of action in ACAA, and the Sandoval case from the Supreme Court, that they base this on. In each case, <u>the justification is based on the idea that Congress created a robust and/or comprehensive enforcement through the DOT.</u>

1011) <u>We can understand from there, that if there actually was no robust enforcement by the DOT, not because they weren't doing their job, but because there never was such a requirement by Congress, then those courts erred in their decisions and their decisions do not stand.</u>

1012) Two Circuit Courts (DC Circuit & Second Circuit) have determined very clearly that there was no such demand by Congress, for the DOT to provide a robust, comprehensive enforcement process.

1013) The DOT also believes that and therefore they have not setup anything of the sort.

1014) Why would the courts have to make such a justification and clarification? They should just say that there is no indication in the law that Congress wants a private right of action.  Why the whole explanation elaborating about the

DOT's enforcement.

1015) The answer is simple. Without a real enforcement alternative, since we know Congress wanted these laws to be enforced, the court can assume there is an implied private right of action.

**CASELAW**

1016) From the Second Circuit...

1017) "We agree with the Tenth and Eleventh Circuits that the text and structure of the ACAA manifests no congressional intent to create a private right of action in a federal district court. The statute does not expressly provide a right to sue the air carrier, and that right should not be implied because the statute provides an administrative enforcement scheme designed to vindicate fully the rights of disabled passengers. Lopez v. Jet Blue Airways (2d Cir. 2011) 662 F.3d 593, 597

1018) From the 10th Circuit...

1019) "Moreover, taken together, the text of the ACAA itself ... and the surrounding statutory and regulatory structure create an elaborate and comprehensive enforcement scheme that belies any congressional intent to create .... a private right to sue in a federal district court." Love, 310 F.3d at 1354." Boswell v. Skywest Airlines, Inc. (10th Cir. 2004) 361 F.3d 1263, 1269

1020) From the 11th Circuit...