## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**AARON ABADI,**

      Plaintiff

v.

**AMERICAN AIRLINES GROUP, INC.,**

**ET AL,**

**With additional Defendants:**

**DEPARTMENT OF TRANSPORTATION,**

**PETER PAUL MONTGOMERY**

**BUTTIGIEG, TRANSPORTATION**

**SECURITY ADMINISTRATION,**

**DAVID P. PEKOSKE. ERINN BOSTIC,**

**DEPARTMENT OF JUSTICE,**

      Defendants.

**CASE #  1:23-cv-04033-UA**

## SUPPLEMENTAL COMPLAINT

1) This document and the exhibits attached to it are submitted as a supplement to the Complaint, to become a part of the Complaint.  Rule 15 reads as follows:

"(d) Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order

1

that the opposing party plead to the supplemental pleading within a specified time." Fed. R. Civ. P. 15

2) The following are items to be added and/or modified on the original complaint.  The complaint was originally written for the District Court of Northern Texas, and was transferred from there by the District Judge over there. This will begin with the addition of parties as additional Defendants.

3) Claims presented under the Federal Tort Claims Act ("FTCA") must initially be submitted directly to the appropriate Federal agency. This was done, and the agencies did not resolve them within the 6-month timeframe. These new Defendants are now available to be sued, and/or included in this lawsuit.  Those FTCA claims were filed with the agencies more than six months ago, and therefore they can now be added as Defendants (Exhibit S-01).

**PARTIES: Additional Defendants**

4) New Defendant, **Department of Transportation ("DOT")** is of the executive branch of the federal government, and is located at 1200 New Jersey Ave, SE Washington, DC 20590. It is being included here as a defendant due to its encouraging, approving, authorizing, and aiding and abetting the discriminations described herein. This is about its collusion and the fact that the DOT is the driving force behind the

2

discrimination.  The evidence is there in the attached letters from the airlines where they describe that they're following the instructions of the DOT.

5)  New Defendant **Peter Paul Montgomery Buttigieg ("Mayor Pete")**, is the U.S, Secretary of Transportation. He is sued here in his official capacity. His responsibilities include the direct responsibility given by Congress to enforce the ACAA laws, and protect the disabled from discrimination. His office address is at the U.S. Department of Transportation 1200 New Jersey Ave, SE Washington, DC 20590.

6)  New Defendant **Transportation Security Administration ("TSA")** is an agency of the Department of Homeland Security ("DHS"). It is headquartered at 6955 Springfield Center Dr., Springfield, VA 20598.  Just like the DOT above, the TSA is being sued here for its collusion and discrimination, not the agency review, which is a separate case in the DC Circuit Court.

7)  New Defendant **David P. Pekoske** ("Pekoske") is the Administrator of the TSA. He is sued in individual capacity, in addition to the Defendant TSA. His work address is 6955 Springfield Center Dr., Springfield, VA 20598.

8)  Defendant **Erinn Bostic** ("Bostic") identifies herself on the

LinkedIn website as Deputy Assistant Federal Security Director at U.S.

Department of Homeland Security. She was in charge of the entire TSA

security area at Terminal One in JFK Airport during the TSA

discrimination incident described herein. Her home address is at 303

Atkins Ave, Brooklyn, NY 11208.  Her work address is at TSA Terminal

One, JFK Airport, Jamaica, NY 11430.

9)  Defendant, **Department of Justice ("DOJ")** is of the

executive branch of the federal government and is located at 950

Pennsylvania Ave., N.W. Washington, DC 20530  Tel. 202-514-2217.

10)     All the other Parties originally filed on the initial Complaint

remain as Defendants. Below, Plaintiff includes their addresses as with

respect to the new venue, the District Court of the Southern District of

New York.


**JURISDICTION**

11)     Most of the Jurisdiction in the main Complaint remains accurate.

Plaintiff would like to add the following with respect to the jurisdiction here in

New York.

4

12)    Specific Personal Jurisdiction: "A more limited form of submission to a state's authority, referred to as "specific jurisdiction," applies only in cases of disputes that "arise out of or are connected with the activities within the state." Int'l Shoe, 326 U.S. at 319, 66 S.Ct. 154." Loyalty Conversion Systems Corporation v. American Airlines, Inc. (E.D. Tex. 2014) 66 F.Supp.3d 813, 819.

13)    This Plaintiff lives here in New York City and is a Citizen of the State of New York.

14)     Much of his travels would have been from and/or to New York.

15)    These Defendants all conspired to deny him the ability to fly, and/or deny him the ability to utilize the airlines and transportation options in the same manner or similar to the non-disabled in violation of the statutes listed herein. Plaintiff had been planning a specific trip to California, to Amarillo, Texas, and also to Europe and Asia. This gives this Court specific jurisdiction over this lawsuit.

16)    Every airline listed as a defendant either flies directly out of New York, or any person can book a flight on their website from New York, and the airline will fly them through partner airlines.

17)    Personal Jurisdiction because of New York long-arm statute. Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. See Fed. Rule Civ. Proc. 4(k)(1)(A) (service of process is effective to

5

establish personal jurisdiction over a defendant "who is subject to the jurisdiction

of a court of general jurisdiction in the state where the district court is located")."

Daimler AG v. Bauman (2014) 571 U.S. 117, 125 [134 S.Ct. 746, 753, 187

L.Ed.2d 624].

18)    The New York Long Arm Statute contains the following;

"§ 302. Personal jurisdiction by acts of non-domiciliaries
(a) Acts which are the basis of jurisdiction. As to a cause of action arising from
any of the acts enumerated in this section, a court may exercise personal
jurisdiction over any non-domiciliary, or his executor or administrator, who in
person or through an agent:
1. transacts any business within the state or contracts anywhere to supply goods
or services in the state; or
2. commits a tortious act within the state, except as to a cause of action for
defamation of character arising from the act; or
3. commits a tortious act without the state causing injury to person or property
within the state, except as to a cause of action for defamation of character
arising from the act, if he
(i) regularly does or solicits business, or engages in any other persistent course
of conduct, or derives substantial revenue from goods used or consumed or
services rendered, in the state, or
(ii) expects or should reasonably expect the act to have consequences in the
state and derives substantial revenue from interstate or international commerce;
or
4. owns, uses or possesses any real property situated within the state."


19)    Venue is proper pursuant to 28 U.S.C. 1391(b) because much of the

events giving rise to the allegations in this complaint occurred in this district. All

the airline defendants denied Plaintiff his civil rights by not allowing him to fly

through their airlines to and from New York, as they equally denied him travel to and from every other City in the United States and beyond.

## STATEMENT OF FACTS

20)    TSA and DOT are being included here as defendants, due to their encouraging, approving, authorizing, and aiding and abetting the discriminations described herein. There were separate lawsuits in the DC Circuit Court regarding agency review of their failure to act and against agency actions. This case is about their collusion and the fact that the DOT and the TSA are the driving force behind the discrimination.  The evidence is there in the attached letters from the airlines in the initial exhibits to the complaint, where they describe that they're following the instructions of the DOT and the TSA.

21)    As Secretary of Transportation, Mayor Pete, and the DOT are responsible to protect disabled people by enforcing the Air Carrier Access Act ("ACAA").  Instead, Mayor Pete, and the DOT refused to enforce the disability laws, and conspired with the airlines to help them and authorize them to violate those laws.

22)    The TSA, Pekoske, and the DOT put out directives telling the airlines that they can violate the ACAA, as described at length in the main body of the Complaint. They were an essential part of the violations and the conspiracy.

7

23)    The TSA, lacking statutory or regulatory authority and without giving notice or soliciting comments, produced Health Directives 1542-21-01 (Exhibit S-02), 1544-21-02 (Exhibit S-03), and 1582/84-21-01 (Exhibit S-04), as well as Emergency Amendment 1546-21-01 dated Jan. 31, 2021 (Exhibit S-05), to enforce CDC's ultra vires mask mandate (collectively referred to herein as "the TSA mask mandates"). These four orders went into effect Feb. 1, 2021. There were continuously renewed until stopped by the District Court in Florida.

24)    The four TSA orders require, inter alia, that aircraft, transit bus, intercity bus, intercity rail, commuter rail, subway and other heavy rail, light rail, tram, streetcar, rideshare car, ferry, and other commercial conveyance and transportation hub operators: 1) mandate all passengers wear masks at all times unless outdoors; and 2) report noncompliance by passengers to TSA. The administration claims authority to levy fines starting at $500 for passengers who don't muzzle themselves.

25)    The TSA eventually stopped enforcing the TSA mask mandates, because the Honorable Kathryn Kimball Mizelle, Federal Judge in Florida, ended the mask mandate for transportation, by determining that it was arbitrary and capricious, and the CDC exceeded its authority, amongst other issues. The case was Health Freedom Defense Fund, Inc. v. Biden (M.D. Fla. 2022).  This

happened on April 18, 2022. Most airlines ended the mask rules within several

days.

26)    In the TSA directives, in the footnotes, they write the following:

"Airport operators may impose requirements, or conditions of carriage, on
persons requesting an exemption from the requirement to wear a mask,
including medical consultation by a third party, medical documentation by a
licensed medical provider, and/or other information as determined by the
airport operator, as well as require evidence that the person does not have
COVID-19 such as a negative result from a SAR-CoV-2 viral test or
documentation of recovery from COVID-19…. Airport operators may also
impose additional protective measures that improve the ability of a person
eligible for exemption to maintain social distance (separation from others by 6
feet), such as scheduling travel at less crowded times or on less crowded
conveyances, or seating or otherwise situating the individual in a less crowded
section of the conveyance or airport. Airport operators may further require that
persons seeking exemption from the requirement to wear a mask request an
accommodation in advance.
This is a narrow exception that includes a person with a disability who cannot
wear a mask for reasons related to the disability; who, e.g., do not understand
how to remove their mask due to cognitive impairment, cannot remove a mask
on their own due to dexterity/mobility impairments, or cannot communicate
promptly to ask someone else to remove their mask due to speech impairments
or language disorders, or cannot wear a mask because doing so would impede
the function of assistive devises / technology. It is not meant to cover persons
for whom mask-wearing may only be difficult. CDC intends to issue further
guidance regarding this exception."

27)    These instructions were used by all airlines to say that the TSA

authorized them to create all types of conditions in order to receive an exemption.

9

The Dept of Transportation ("DOT") used this as justification to allow airlines to create their own exemption criteria, even though it would technically violate the ACAA disability laws.

28)    On February 5, 2021, the DOT issued a directive (Exhibit S-06), "Notice of Enforcement Policy ("NEP")," sent out to all the airlines by The Office of Aviation Consumer Protection (OACP), a unit within the Office of the General Counsel of the U.S. Department of Transportation.

29)    The directive states, "OACP will refrain from taking enforcement action against an airline for a period of up to 45 days from the date of this notice, so long as the airline demonstrates that it began the process of compliance as soon as this notice was issued."

30)    In this directive the DOT deliberately conveyed an ambiguous message. It encouraged and directed airlines to implement procedures, rules, and processes to comply with ACAA laws for disabled passengers.

31)    While the directive states that airlines must "revise their mask procedures as needed to comply with the law," the directive itself seems to entitle and encourage the airlines to create multiple procedures and requirements, that airlines have been designing to complicate the process and thus almost completely ban any person that cannot wear a mask due to a disability from flying on an airplane.

32)     These are in direct violation of ACAA laws. Either the DOT encourages these unlawful practices, or these ideas were specific to certain limited cases, where it would be appropriate. In either case, creating blanket rules and requirements for all disabled, expecting all people with mask disabilities to jump through hoops in order to be able to fly, is unlawful, and is clear discrimination as per the ACAA, as described at length in the main Complaint.

33)     The DOJ refused to help.  They are responsible to handle the legal representation for the others, and also, they recommend and advise of the laws. Instead of telling these other agencies and their employees to follow the laws, they encouraged them to violate them, aided and abetted, and even conspired to violate Plaintiff's human rights, as a disabled person.

34)     Additionally, there was at least one specific incident that happened with the TSA, and Bostic as follows.

35)     On or about March 14, 2022 I arrived at JFK Airport, Terminal One to fly on Air France to India.

36)     I confirmed with the airline that I was approved to fly without a mask.

37)     I then went to the security area, where TSA is in charge. I arrived there before 7 PM.

38)     I was asked to put on a mask by the staff there.  I explained about my disability and about the laws.  I showed them my doctor's letter.

11

39)    They said you will have to speak to the woman in charge.

40)    The woman in charge was Erinn Bostic, and she was very rude and made a big scene.

41)    I showed her the letter and explained that I have a medical disability, specifically sensory processing disorder, and I cannot wear a mask. The airline knows about it and cleared me to fly without a mask.

42)    Bostic was refusing to allow me to pass through security area unless I would wear a mask.

43)    I explained to her that the disability laws of the federal, state, and city, all require her to accommodate me, due to my disability. I also reminded her that the TSA mask mandate exempts me from wearing a mask.

44)    She kept telling me that "I know the laws, but it's my job to protect these people here." (pointing to the people working in the security area). Finally, after ten minutes she shlepped me back to the Air France desk and told them they need to send an airline escort with me.

45)    First, she tried to convince an Air France agent that I should not be allowed to fly.  Thank God that didn't work.

46)    I was standing and walking so much, that I had to call for a wheelchair. I was listed as a wheelchair customer, however, usually in this

12

terminal, which is so small, I go without, because it's a short walk. The disability there is that I have a problem with my knee.

47)     When I had to stand around for all that time, I asked for a chair, but they wouldn't oblige.

48)     Bostic yelled at the Air France staff.  She said they must send a member of their staff to escort me if I cannot wear a mask.

49)     I had to wait till 7:30 till a wheelchair arrived. And then I finally went through with an escort from the airline. Why don't the supervisors at least know the laws that they're required to follow and/or enforce?

50)     She was lecturing me that even though the airline allowed me, that's their business. She's in charge of the security area and its people and she needs to protect them.

51)     I told her the law is very clear that I am exempt and you're discriminating against me for my disability. She kept yelling "I'm not discriminating."

52)     She made me walk back to the check-in counters where the manager there said, "yes, he's exempt.".

53)     One TSA guy at security decided to continue to bother me. "Hey, you need to wear a mask."  I said I have a disability. He said, "you still need to wear a mask."

13

54)    The other guy near him started shushing him. I said, it would be fun if when you went home, you actually read the laws that you believe it's your right to enforce, and no, I do not need to wear a mask.

55)    The Disability laws are very important and everyone should have to abide by them, including and especially government employees.

56)    For a few minutes she tried saying that my letter is old and therefore not valid and "you'll need to come back with an updated letter." I explained to her that my disability isn't temporary, it's for life, and the date on the letter is irrelevant. That's when she decided to schlep me back to the check-in counters, hoping to convince them that it wasn't valid.

57)    This is frustrating and I believe the TSA must do a better job educating its people about the laws. It was very uncomfortable and shameful standing in front of 100 people, getting yelled at and mistreated.

58)    She and her people were obnoxious, unaccommodating, and downright rude.

59)    Other people that do not have disabilities weren't being yelled at, weren't being told they cannot go through here, weren't being forced to walk back to the check-in counters, weren't forced to sit around and wait an extra half hour, and weren't being treated rudely.

60)    I was treated that way due to my disabilities.

14

61)    I submitted a complaint to the TSA, and they responded with an apology (Exhibit S-07).

62)    They also made a very silly and ridiculous excuse. They said that the rules change so often and Bostic may have not been up to date.  That's ridiculous, because the disability exemption is the same one that has been there since the beginning of the mask mandates.

63)    All these added Defendants participated in the discrimination and in the conspiracy directly.

64)    Their actions were the direct cause of injuries to the Plaintiff described in the complaint.

65)    The causes of action and damages sought, are the same for all these new Defendants as described in the Complaint for the other Defendants.

66)    The first six causes of action and numbers 30 and 31 do not apply to these added defendants. The rest of them apply either on their direct actions, or through aiding and abetting, and facilitating the discrimination.

67)    Boscit would only be responsible for the following causes of action: Seven, eight, nine, twenty-three, twenty-four, twenty-five, twenty-seven, twenty-eight, twenty-nine, thirty-six, and thirty-seven.

68)    There is very little chance any of the discriminations would have happened if these agencies and their employees followed the law.

15

**CONCLUSION**

69)     The above Defendants were added due to their full participation in acts of discrimination and/or conspiracy to discriminate.

70)     The Jurisdiction was updated, and should be in New York, as decided by the District Judge in Northern Texas, who transferred it here.

71)     All these Defendants should be included in the Complaint as if written therein.

72)     Below is a full list of all the Defendants with their New York addresses, if they have one.  Additionally, I listed their email addresses and/or their most recent attorney's email address.

73)     Before the US Marshal is asked to serve them, Plaintiff hopes the Court will allow him first to email each one a copy of the summons, complaint, and this supplemental complaint, and ask them to email back a waiver of service. Hopefully, we can limit the expense for serving all these defendants.

**PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint and this supplement are not being presented for an

16

improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation);

(2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted this 9th day of July, 2023.

s/*Aaron Abadi*

AARON ABADI, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
516-639-4100  Email:  aa@neg.com

17

DEFENDANTS ADDRESSES & EMAILS

| Legal Name | NY Address | email lawyer | email defendant |
|---|---|---|---|
| AMERICAN AIRLINES GROUP, Inc., | 80 STATE STREET, ALBANY, NY, UNITED STATES, 12207 | roy.goldberg@stinson.com | AmericanAirlinesCustomer Relations@aa.com |
| PJSC AEROFLOT – RUSSIAN AIRLINES DBA AEROFLOT | 254 SEQUAMS LANE CENTER, WEST ISLIP, NY 11795 | ksangdahl@reedsmith.com | |
| MÉXICO, S.A. DE C.V. DBA AEROMEXICO | 110 W. 34th St. #110, New York, NY 10001 | jmaggio@condonlaw.com | |
| ALLEGIANT AIR, LLC | 1201 NORTH TOWN CENTER DRIVE, LAS VEGAS, NV 89144 | bmaye@amm-law.com | acaa@allegiantair.com |
| ASIANA AIRLINES | 3530 WILSHIRE BLVD, 1700, LOS ANGLES, CA 90010 | jjohnston@condonlaw.com | usreservation@flyasiana.com |
| AVIANCA S.A. | 122 E 42nd St #2525, New York, NY 10168 | | ca.com; servicioavianca@avianca.com |
| AZUL LINHAS AÉREAS BRASILEIRAS S/A | 28 LIBERTY STREET, NEW YORK, NY, 10005 | rachel.fischer@voeazul.com.br | amanda.godoy@voeazul.com.br |
| AUSTRIAN AIRLINES AG | c/o LEGAL DEPARTMENT, 1400 RXR PLAZA WEST TOWER, UNIONDALE, NY 11556 | abattista@condonlaw.com | specialcases@austrian.com |
| AIR CANADA | 125 Park Ave, New York, NY 10017 | jeffrey.wood@aircanada.ca | CustomerCare.serviceclient@aircanada.ca |
| AIR CHINA LIMITED | 350 Fifth Ave. Suite 6905 New York, NY 10118 | jacques@catafagofini.com | customer_relations@airchina.com |
| BRITISH AIRWAYS PLC | c/o Anthony U. Battista, Condon & Forsyth LLP, 7 Times Square, 18th Floor, New York, NY 10036 | abattista@condonlaw.com | matthew.roberts@ba.com |
| CATHAY PACIFIC AIRWAYS LTD. | FIFTH AVENUE, NEW YORK, NY, UNITED STATES, 10036 - 4702 | kevin.sutherland@clydeco.us | customercare@cathaypacific.com> |
| CHINA SOUTHERN AIRLINES COMPANY LIMITED | 295 MADISON AVENUE, SUITE 4500, NEW YORK, NY 10017 | kevin.sutherland@clydeco.us | 95539@csair.com |
| DELTA AIR LINES, INC. | CORPORATION SERVICE COMPANY 80 STATE STREET, ALBANY, NY 12207 - 2543 | roy.goldberg@stinson.com | dotdlcare@delta.com |
| EL AL ISRAEL AIRLINES LTD. | 100 Wall Street, 4th floor, New York, NY 10005 | Naaran054@gmail.com | Nagish@elal.co.il |
| EMIRATES | c/o THE CORPORATION 55 E 59TH ST, 5TH FL, NEW YORK, NY 10022 | info@risman-law.com | ekreservations@emirates.com |

| | | | |
|---|---|---|---|
| ETIHAD AIRWAYS PJSC DBA ETIHAD AIRWAYS COMPANY | 40 EXCHANGE PLACE, SUITE 701, NEW YORK, NY 10005 | mdajani@etihad.ae | feedback@etihad.ae |
| EVA AIRWAYS CORPORATION | 1450 BROADWAY, 31ST FLOOR, NEW YORK, NY 10018 | bill.swallow@clydeco.us | feedback@evaair.com |
| FINNAIR OYJ | 11 W 42ND ST FL 24 NEW YORK, NY 10036-8002 | alexander.ross@clydeco.us | sami.sarelius@finnair.fi |
| FRONTIER AIRLINES, INC. | c/o CORPORATION SERVICE COMPANY 80 STATE ST, ALBANY, NY 12207 | bmaye@amm-law.com | frontierairlines@mailca.custhelp.com |
| GULF AIR HOLDING B.S.C. | 147 West 35th Street, Suite 1505, New York, NY 10001 | ryee@paclawteam.com | guestsupport@gulfair.com |
| AÉREAS DE ESPAÑA, S.A. OPERADORA, SOCIEDAD | 1 World Way, Los Angeles, CA 90045 | abattista@condonlaw.com | iberiapmr@iberia.es |
| JETBLUE AIRWAYS CORPORATION | 27-01 Queens Plz N, Suite 6 Long Island City NY 11101 | roy.goldberg@stinson.com | Robert.Land@jetblue.com |
| JORDANIAN AIRLINES COMPANY DBA ROYAL | 355 LEXINGTON AVE, Fl.14 New York, NY 10017 | philip.weissman@clydeco.us | crnyc@rj.com |
| KENYA AIRWAYS | Empire State Building, 350 5th Ave, New York, NY 10118 | johaga@tripleoklaw.com | Mercy.Mulira@kenya-airways.com |
| KOREAN AIR LINES CO., LTD, | 9 NORTH SERVICE RD. ROOM 251, JAMAICA, NY 11430 | jebo@koreanair.com | engreservation@koreanair.com |
| LATAMAIRLINES GROUP S.A. | Terminal 4 , J F K Airport, Jamaica, NY 11430 | rcooper@cgsh.com | support@casounico.zendesk.com |
| LOT POLISH AIRLINES SA | C/O CONDON AND FORSYTH LLP, 7 TIMES SQUARE, SUITE 1800, NEW YORK, NY 10036 | cchristensen@condonlaw.com | kontakt@lot.pl |
| LUFTHANSA SYSTEMS AMERICAS, INC. | 1640 Hempstead Turnpike East Meadow,  NY 11554 | james-robert.stevens@dlh.de | customer.relations@lufthansa.com |
| SOUTHERN AIRWAYS EXPRESS, LLC DBA MOKULELE AIRLINES | 355 Hukilike Street, Suite 103 Kahului, HI 96732-2973 | pkrivda@taftlaw.com | info@mokuleleairlines.com |
| PHILIPPINE AIRLINES | 561 7th Ave 2nd fl, New York, NY 10018 | jjohnston@condonlaw.com | wecare@pal.com.ph |
| Q.C.S.C. DBA QUATAR AIRWAYS Q.C.S.C. | 350 5TH AVENUE, SUITE 7630, NEW YORK, NY, UNITED STATES, 10118 | ammara@qatarairways.com.qa | tellususa@us.qatarairways.com |
| ROYAL AIR MAROC, LTD. | ONE ROCKEFELLER PLAZA, SUITE 1630, NEW YORK, NY, UNITED STATES, 10020 | jmaggio@condonlaw.com | safarflyer@royalairmaroc.com |

| | | | |
|---|---|---|---|
| AIRLINES OF NORTH AMERICA INC. DBA SAS | 122 E. 42ND STREET, 18TH FLOOR, NEW YORK, NY, UNITED STATES, 10168 | mlefland@condonlaw.com | Medaut@sos.eu |
| SILVER AIRWAYS, LLC | 2850 Greene St. Hollywood, FL 33020 | jrmccachren@sgrlaw.com | guestrelations@silverairways.com |
| SINGAPORE AIRLINES | 88 PINE STREET, SUITE 1001, NEW YORK, NY 10005 | scunningham@condonlaw.com | US_Reservations@Singaporeair.com.sg |
| SOUTHWEST AIRLINES CO. | 80 STATE STREET, ALBANY, NY 12207 - 2543 | roy.goldberg@stinson.com;tryan@ryanlg.com;rmartorano@ryanlg.com | mark.shaw@wnco.com |
| SPIRIT AIRLINES, INC. | 80 STATE STREET, ALBANY, NY 12207 | MAMorel@littler.com | customer.Support@Spirit.com |
| SUN COUNTRY, INC. DBA SUN COUNTRY AIRLINES | 80 STATE STREET, ALBANY, NY 12207 - 2543 | sherman.eric@dorsey.com | Accessibility@suncountry.com |
| SWISS INTERNATIONAL AIR LINES AG | 28 LIBERTY ST., NEW YORK, NY, UNITED STATES, 10005 | james-robert.stevens@dlh.de | customerfeedback@swiss.com |
| AIR TAHITI NUI | 1990 E GRAND AVE, STE 300, EL SEGUNDO, CA 90245 | kevin.sutherland@clydeco.us | res.us@airtahitinui.com |
| TAP PORTUGAL, INC. | 263 Lafayette Street, 3rd FL Newark, NJ 07105 | cgosain@steptoe.com | feedback.fc@flytap.com |
| TURKISH AIRLINES, INC. | BUILDING, 350 FIFTH AVENUE, SUITE 7510, NEW YORK, NY 10118 | christopher.carlsen@clydeco.us | |
| UNITED AIRLINES, INC. | 28 LIBERTY ST., NEW YORK, NY 10005 | adolph@seyfarth.com | customercare@united.com |
| FAST COLOMBIA S.A.S. DBA VIVA AIR COLOMBIA | C T CORPORATION SYSTEM 1200 SOUTH PINE ISLAND ROAD PLANTATION, FL 33324 | | Cuentanos@vivaair.com |
| VUELA COMPAÑÍA DE AVIACIÓN, S.A.B. DE C.V. DBA | 1313 PONCE DE LEON BLVD, SUITE 201, Coral Gables, FL, 33134 | giuffrar@sullcrom.com | support@volaris.zendesk.com |
| MATTHEW ROBERTS | c/o Anthony U. Battista, Condon & Forsyth LLP, 7 Times Square, 18th Floor, New York, NY 10036 | abattista@condonlaw.com | matthew.roberts@ba.com |
| ROY GOLDBERG | 1775 Pennsylvania Avenue, N.W. Suite 800, Washington, D.C. 20006 | | roy.goldberg@stinson.com |
| MIGUEL MOREL | c/o STINSON LLP, Wells Fargo Center, 333 SE 2nd Avenue, Suite 2700, Miami, FL 33131 | | MAMorel@littler.com |
| NATHALIE SIMON | c/o Delta Air Lines, Inc. 1030 Delta Boulevard Atlanta, Ga 30354-1989 | roy.goldberg@stinson.com | dotdlcare@delta.com |

| | | | |
|---|---|---|---|
| MEDAIRE, INC. | C/O CORPORATION SERVICE COMPANY 80 STATE STREET, ALBANY, NY 12207 | rlazenby@victorrane.com, balexander@schnader.com | |
| EMERGENCY MEDICINE OF WESTERN | 200 Lothrop St. #F1301, Pittsburgh, PA 15213 | rlazenby@victorrane.com, jconti@dmclaw.com | |
| ROBERT C. LAND | c/o JetBlue 2701 Queens Plaza N. STE 1 Long Island City, NY 11101-4021 | roy.goldberg@stinson.com | Robert.Land@jetblue.com |
| DEBBIE CASTLETON | c/o JetBlue 2701 Queens Plaza N. STE 1 Long Island City, NY 11101-4021 | roy.goldberg@stinson.com | Robert.Land@jetblue.com |
| ANITA AYALA | Lufthansa German Airlines 1400 RXR Plaza West Tower 14th Floor Uniondale, NY 11556 | james-robert.stevens@dlh.de | customer.relations@lufthansa.com |
| JOSEPH R. BIDEN, JR. | The White House 1600 Pennsylvania Avenue NW Washington, DC 20500 | Gail.K.Johnson@usdoj.gov | |
| NATIONAL INSTITUTES OF HEALTH | 9000 ROCKVILLE PIKE, BETHESDA, MARYLAND 20892 | heather.hill@hhs.gov | |
| ANTHONY STEPHEN FAUCI | 31 Center Dr Bldg 31 Bethesda, MD 20892 | heather.hill@hhs.gov | afauci@niaid.nih.gov |
| CENTERS FOR DISEASE CONTROL & PREVENTION | 1600 CLIFTON ROAD, ATLANTA, GA 30329 | heather.hill@hhs.gov | |
| ROBERT RAY REDFIELD JR. | 725 W Lombard St Baltimore, MD 21201 | heather.hill@hhs.gov | olx1@cdc.gov |
| US DEPARTMENT OF HEALTH & HUMAN SERVICES | 200 INDEPENDENCE AVENUE, S.W., WASHINGTON, D.C. 20201 | heather.hill@hhs.gov | |
| U.S. Department of Transportation | 1200 New Jersey Ave, SE Washington, DC 20590 | Gail.K.Johnson@usdoj.gov | |
| Peter Paul Montgomery Buttigieg | c/o U.S. Department of Transportation 1200 New Jersey Ave, SE Washington, DC 20590 | Gail.K.Johnson@usdoj.gov | |
| Transportation Security Administration | 6955 Springfield Center Dr., Springfield, VA 20598 | Gail.K.Johnson@usdoj.gov | |
| David P. Pekoske | c/o TSA 6955 Springfield Center Dr., Springfield, VA 20598 | Gail.K.Johnson@usdoj.gov | |
| Erinn Bostic | 303 Atkins Ave, Brooklyn, NY 11208 | Gail.K.Johnson@usdoj.gov | |
| U.S. Department of Justice | 950 Pennsylvania Ave., N.W. Washington, DC 20530 | Gail.K.Johnson@usdoj.gov | |

EXHIBIT  S-01

**aa@neg.com**

| | |
|---|---|
| **From:** | Johnson, Gail K. (CIV) <Gail.K.Johnson@usdoj.gov> |
| **Sent:** | Tuesday, January 3, 2023 11:55 PM |
| **To:** | aa@neg.com |
| **Subject:** | Your Three FTCA Claims |
| **Attachments:** | [EXTERNAL] FTCA Claim against TSA & officers/employees (135 KB); [EXTERNAL] FTCA Claim against DOT & Buttigieg  (136 KB); [EXTERNAL] FTCA Claim against TSA & officers/employees (136 KB) |

Dear Mr. Abadi:

Your three Federal Tort Claims Act (FTCA) claims have been forwarded to my office.  This office will handle the processing of your claims.  To do so, we need the originals with your signature.  Please send those documents to the attention of the FTCA Director James G. Touhey at the address in my signature block.  Thank you.

Any future inquiries should be by U.S. Mail as we do not have the resources to respond to emails from claimants or their counsel.  Your correspondence, if any, should be sent to the same address used to send your claims.   Thank you for your cooperation in this matter.

Sincerely yours,
Gail
Gail K. Johnson
Supervisory Trial Counsel
U.S. Department of Justice
Federal Tort Claims Act Section
Torts Branch, Civil Division
P.O. Box 888
Benjamin Franklin Station
Washington, D.C.  20044

EXHIBIT S-02

U.S. Department of Homeland Security
**Transportation Security Administration**
6595 Springfield Center Drive
Springfield, Virginia 20598



**Transportation**
**Security**
**Administration**

## MEMORANDUM

To:  Covered Airport Operators

Date:  January 31, 2021

Subject:  Security Directive 1542-21-01

Attached to this memorandum is Security Directive (SD) 1542-21-01: Security Measures – Face Mask Requirements.  This SD is issued to implement the January 21, 2021, Executive Order on promoting measures to prevent the spread of coronavirus disease 2019 (COVID-19) by travelers within the United States and those who enter the country from abroad.  This SD also supports enforcement of the Centers for Disease Control and Prevention (CDC) Order mandating masks issued on January 29, 2021.

All queries concerning the attached SD must be directed to your assigned TSA Federal Security Director.

Darby LaJoye
Senior Official Performing the Duties of the TSA Administrator

Attachment:
Security Directive 1542-21-01



**Transportation
Security
Administration**

U.S. Department of Homeland Security
**Transportation Security Administration**
6595 Springfield Center Drive
Springfield, Virginia 20598

## SECURITY DIRECTIVE

| | |
|---|---|
| NUMBER | SD 1542-21-01 |
| SUBJECT | Security Measures – Mask Requirements |
| EFFECTIVE DATE | 11:59 pm EST on February 1, 2021 |
| EXPIRATION DATE | May 11, 2021 |
| CANCELS AND SUPERSEDES | Not Applicable |
| APPLICABILITY | Airport operators regulated under 49 CFR 1542.103 and airlines that have exclusive area agreements under 49 CFR 1542.111 |
| AUTHORITY | 49 U.S.C. 114 and 44903; 49 CFR 1542.303 |
| LOCATION | Airports within the United States |

### PURPOSE AND GENERAL INFORMATION

Due to the ongoing COVID-19 pandemic and to reduce the spread of the virus, the President issued an Executive Order, *Promoting COVID-19 Safety in Domestic and International Travel*, on January 21, 2021, requiring masks to be worn in airports, on commercial aircraft, and in various modes of surface transportation. On January 27, 2021, the Acting Secretary of Homeland Security determined a national emergency existed requiring the Transportation Security Administration (TSA) to issue this Security Directive (SD) to implement the Executive Order and enforce the related Order[1] issued by the Centers for Disease Control and Prevention (CDC), pursuant to the authority of 49 U.S.C. sections 114 and 44903. Consistent with these mandates and TSA's authority, TSA is issuing this SD requiring masks to be worn to mitigate the spread of COVID-19 during air travel. TSA developed these requirements in consultation with the Federal Aviation Administration and CDC.

---

[1] *See* Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations (CFR) §§ 70.2, 71.31(B), 71.32(B); Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs (January 29, 2021)

## DEFINITIONS

For the purposes of this SD, the following definitions apply:

*Conveyance* has the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle, vessel...or other means of transport, including military."

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[2]

## ACTIONS REQUIRED

Except at locations under the control of an aircraft operator, foreign air carrier, or a federal government agency or their contractors, the airport operator must apply the following measures:

A. The airport operator must make best efforts to provide individuals with prominent and adequate notice of the mask requirements to facilitate awareness and compliance.[3] This notice must also inform individuals of the following:

   1. Federal law requires wearing a mask at all times in and on the airport and failure to comply may result in removal and denial of re-entry.

   2. Refusing to wear a mask in or on the airport is a violation of federal law; individuals may be subject to penalties under federal law.

B. The airport operator must require that individuals in or on the airport wear a mask, except as described in Sections D., E., and F.

   1. If individuals are not wearing masks, ask them to put a mask on.

   2. If individuals refuse to wear a mask in or on the airport, escort them from the airport.

C. The airport operator must ensure direct employees, authorized representatives, tenants, and vendors wear a mask at all times in or on the airport, except as described in Sections D., E., and F.

D. The requirement to wear a mask does not apply under the following circumstances:

   1. When necessary to temporarily remove the mask for identity verification purposes.

---

[2] A properly worn mask completely covers the nose and mouth of the wearer. A mask should be secured to the head, including with ties or ear loops. A mask should fit snugly but comfortably against the side of the face. Masks do not include face shields. Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures. Medical masks and N-95 respirators fulfill the requirements of this SD. CDC guidance for attributes of acceptable masks in the context of this SD is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

[3] Notice may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; or other methods as appropriate.

2. While eating, drinking, or taking oral medications for brief periods.[4]  Prolonged periods of mask removal are not permitted for eating or drinking; the mask must be worn between bites and sips.

3. While communicating with a person who is deaf or hard of hearing, when the ability to see the mouth is essential for communication.

4. If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance.[5]

E. The following conveyances are exempted from this SD:

1. Persons in private conveyances operated solely for personal, non-commercial use.

2. A driver, when operating a commercial motor vehicle as this term is defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle.

F. This SD exempts the following categories of persons from wearing masks:[6]

1. Children under the age of 2.

2. People with disabilities who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.).[7]

3. People for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

---

[4] The CDC has stated that brief periods of close contact without a mask should not exceed 15 minutes. *See* https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html

[5] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask.  Persons who are vomiting should remove the mask until vomiting ceases.  Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.

[6] Airport operators may impose requirements, or conditions of carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the airport operator, as well as require evidence that the person does not have COVID-19 such as a negative result from a SAR-CoV-2 viral test or documentation of recovery from COVID-19. CDC definitions for SAR-CoV-2 viral test and documentation of recovery are available in Frequently Asked Questions at:  https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html.  Airport operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or airport. Airport operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

[7] This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability; who, e.g., do not understand how to remove their mask due to cognitive impairment, cannot remove a mask on their own due to dexterity/mobility impairments, or cannot communicate promptly to ask someone else to remove their mask due to speech impairments or language disorders, or cannot wear a mask because doing so would impede the function of assistive devises/technology.  It is not meant to cover persons for whom mask-wearing may only be difficult.  CDC intends to issue further guidance regarding this exception.

G.  If an individual refuses to comply with mask requirements, follow incident reporting procedures in accordance with the Airport Security Program and provide the following information, if available:

   1.  Date and airport code;

   2.  Individual's full name and contact information;

   3.  Name and contact information for any direct airport employees or authorized representatives involved in the incident; and

   4.  The circumstances related to the refusal to comply.

PREEMPTION

The requirements in this SD do not preempt any State, local, Tribal, or territorial rule, regulation, order, or standard necessary to eliminate or reduce a local safety hazard, which includes public health measures that are the same or more protective of public health than those required in this SD, if that provision is not incompatible with this SD.

ACKNOWLEDGMENT OF RECEIPT

The airport operator must immediately provide written confirmation of receipt of this SD to the Federal Security Director (FSD).

DISSEMINATION REQUIRED

The airport operator must immediately pass the information and measures set forth in this SD to any personnel having responsibilities in implementing the provisions of this directive. The airport operator may share this SD with anyone subject to the provisions of this directive to include but not limited to: federal, state, and local government personnel; direct airport employees or authorized representatives; vendors; tenants; exclusive area agreement holders; contractors; transport personnel; taxi drivers; law enforcement; etc.

APPROVAL OF ALTERNATIVE MEASURES

The operator must immediately notify the FSD whenever any action required by this SD or a TSA-approved alternative measure cannot be carried out. In accordance with 49 CFR 1542.303(d), the airport operator may submit proposed alternative measures and the basis for submitting those measures in writing to the Assistant Administrator for Policy, Plans, and Engagement through the FSD.

Darby LaJoye
Senior Official Performing the Duties of the TSA Administrator

EXHIBIT S-03

U.S. Department of Homeland Security
**Transportation Security Administration**
6595 Springfield Center Drive
Springfield, Virginia 20598



**Transportation
Security
Administration**

## MEMORANDUM

To:  Covered Aircraft Operators

Date:  January 31, 2021

Subject:  Security Directive 1544-21-02

Attached to this memorandum is Security Directive (SD) 1544-21-02: Security Measures – Face Mask Requirements.  This SD is issued to implement the January 21, 2021, Executive Order on promoting measures to prevent the spread of coronavirus disease 2019 (COVID-19) by travelers within the United States and those who enter the country from abroad.  This SD also supports enforcement of the Centers for Disease Control and Prevention (CDC) Order mandating masks issued on January 29, 2021.

All queries concerning the attached SD must be directed to your respective TSA Principal Security Inspector or International Industry Representative.

Darby LaJoye
Senior Official Performing the Duties of the TSA Administrator

Attachment:
Security Directive 1544-21-02

28



**Transportation
Security
Administration**

U.S. Department of Homeland Security
**Transportation Security Administration**
6595 Springfield Center Drive
Springfield, Virginia 20598

## SECURITY DIRECTIVE

NUMBER                          SD 1544-21-02

SUBJECT                         Security Measures – Mask Requirements

EFFECTIVE DATE                  11:59 pm EST on February 1, 2021

EXPIRATION DATE                 May 11, 2021

CANCELS AND SUPERSEDES          Not Applicable

APPLICABILITY                   Aircraft operators regulated under 49 CFR 1544.101

AUTHORITY                       49 U.S.C. 114, 44902, and 44903; 49 CFR 1544.305

LOCATION(S)                     All Locations

### PURPOSE AND GENERAL INFORMATION

Due to the ongoing COVID-19 pandemic and to reduce the spread of the virus, the President
issued an Executive Order, *Promoting COVID-19 Safety in Domestic and International Travel*,
on January 21, 2021, requiring masks to be worn in airports, on commercial aircraft, and in
various modes of surface transportation. On January 27, 2021, the Acting Secretary of
Homeland Security determined a national emergency existed requiring the Transportation
Security Administration (TSA) to issue this Security Directive (SD) to implement the Executive
Order and enforce the related Order[1] issued by the Centers for Disease Control and Prevention
(CDC), pursuant to the authority of 49 U.S.C. sections 114, 44902, and 44903. Consistent with
these mandates and TSA's authority, TSA is issuing this SD requiring masks to be worn to
mitigate the spread of COVID-19 during air travel. The requirements in this SD must be applied
to all persons onboard a commercial aircraft operated by a U.S. aircraft operator, including
passengers and crewmembers. TSA developed these requirements in consultation with the
Federal Aviation Administration and CDC.

---

[1] *See* Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations
(CFR) §§ 70.2, 71.31(B), 71.32(B); Requirement for Persons to Wear Masks While on Conveyances and at
Transportation Hubs (January 29, 2021)

DEFINITIONS

For the purposes of this SD, the following definitions apply:

*Conveyance* has the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle, vessel…or other means of transport, including military."

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[2]

ACTIONS REQUIRED

A. The aircraft operator must provide passengers with prominent and adequate notice of the mask requirements to facilitate awareness and compliance. [3] At a minimum, this notice must inform passengers, at or before check-in and as a pre-flight announcement, of the following:

1. Federal law requires each person to wear a mask at all times throughout the flight, including during boarding and deplaning.

2. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft, and/or penalties under federal law.

3. If wearing oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation, masks should be removed to accommodate oxygen masks.

B. The aircraft operator must not board any person who is not wearing a mask, except as described in Sections D., E., and F.

C. The aircraft operator must ensure that direct employees and authorized representatives wear a mask at all times while on an aircraft or in an airport location under the control of the aircraft operator, except as described in Sections D., E., and F.

D. The requirement to wear a mask does not apply under the following circumstances:

1. When necessary to temporarily remove the mask for identity verification purposes.

---

[2] A properly worn mask completely covers the nose and mouth of the wearer. A mask should be secured to the head, including with ties or ear loops. A mask should fit snugly but comfortably against the side of the face. Masks do not include face shields. Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures. Medical masks and N-95 respirators fulfill the requirements of this SD. CDC guidance for attributes of acceptable masks in the context of this SD is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

[3] Notice may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; printing the requirement on boarding passes; or other methods as appropriate.

Security Directive                                                SD 1544-21-02

2.  While eating, drinking, or taking oral medications for brief periods.[4]  Prolonged periods of mask removal are not permitted for eating or drinking; the mask must be worn between bites and sips.

3.  While communicating with a person who is deaf or hard of hearing, when the ability to see the mouth is essential for communication.

4.  If wearing oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation.

5.  If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance, or otherwise unable to remove the mask without assistance.[5]

E.  The following conveyances are exempted from this SD:

1.  Persons in private conveyances operated solely for personal, non-commercial use.

2.  A driver, when operating a commercial motor vehicle as this term is defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle.

F.  This SD exempts the following categories of persons from wearing masks:[6]

1.  Children under the age of 2.

2.  People with disabilities who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.).[7]

---

[4] The CDC has stated that brief periods of close contact without a face mask should not exceed 15 minutes. *See* https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html

[5] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask. Persons who are vomiting should remove the mask until vomiting ceases. Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.

[6] Aircraft operators may impose requirements, or conditions of carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the aircraft operator, as well as require evidence that the person does not have COVID-19 such as a negative result from a SAR-CoV-2 viral test or documentation of recovery from COVID-19. CDC definitions for SAR-CoV-2 viral test and documentation of recovery are available in Frequently Asked Questions at: https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html. Aircraft operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or airport. Aircraft operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

[7] This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability; who, e.g., do not understand how to remove their mask due to cognitive impairment, cannot remove a mask on their own due to dexterity/mobility impairments, or cannot communicate promptly to ask someone else to

3.  People for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

G.  If a passenger refuses to comply with an instruction given by a crew member with respect to wearing a mask, the aircraft operator must:

1.  Make best efforts to disembark the person who refuses to comply as soon as practicable; and

2.  Follow incident reporting procedures in accordance with its TSA-approved standard security program and provide the following information, if available:

    a. Date and flight number;

    b. Passenger's full name and contact information;

    c. Passenger's seat number on the flight;

    d. Name and contact information for any crew members involved in the incident; and

    e. The circumstances related to the refusal to comply.

PREEMPTION

The requirements in this SD do not preempt any State, local, Tribal, or territorial rule, regulation, order, or standard necessary to eliminate or reduce a local safety hazard, which includes public health measures that are the same or <u>more</u> protective of public health than those required in this SD, if that provision is not incompatible with this SD.

ACKNOWLEDGMENT OF RECEIPT

The aircraft operator must immediately provide written confirmation of receipt of this SD to its Principal Security Inspector (PSI) or International Industry Representative (IIR), as appropriate.

DISSEMINATION REQUIRED

The aircraft operator must immediately pass the information and measures set forth in this SD to any personnel having responsibilities in implementing the provisions of this directive. The aircraft operator may share this SD with anyone subject to the provisions of this directive to include but not limited to: federal, state, and local government personnel; authorized representatives; catering personnel; vendors; airline club staff; contractors; etc.

---

remove their mask due to speech impairments or language disorders, or cannot wear a mask because doing so would impede the function of assistive devises/technology. It is not meant to cover persons for whom mask-wearing may only be difficult. CDC intends to issue further guidance regarding this exception.

Security Directive                                                    SD 1544-21-02

## APPROVAL OF ALTERNATIVE MEASURES

In accordance with 49 CFR 1544.305(d), the aircraft operator must immediately notify its PSI or
IIR, as appropriate, if unable to implement any of the measures in this SD, or in any TSA-
approved alternative measure. The aircraft operator may submit proposed alternative measures
and the basis for submitting those measures to its PSI or IIR.

Darby LaJoye
Senior Official Performing the Duties of the TSA Administrator

U.S. Department of Homeland Security
**Transportation Security Administration**
6595 Springfield Center Drive
Springfield, Virginia 20598

**EXHIBIT S-04**



**Transportation
Security
Administration**

## MEMORANDUM

To:  Covered Owners/Operators

Date:  January 31, 2021

Subject:  Security Directive 1582/84-21-01

Attached to this memorandum is Security Directive (SD) 1582/84-21-01: Security Measures –
Face Mask Requirements.  This SD is issued to implement the January 21, 2021, Executive
Order on promoting measures to prevent the spread of coronavirus disease 2019 (COVID-19) by
travelers within the United States and those who enter the country from abroad.  This SD also
supports enforcement of the Centers for Disease Control and Prevention (CDC) Order mandating
masks issued on January 29, 2021.

This SD applies to the passenger railroads, intercity bus services, and public transportation.
Please refer to the SD for the specific applicability.

All queries concerning the attached SD should be submitted to TSA via email at TSA-
Surface@tsa.dhs.gov

Darby LaJoye
Senior Official Performing the Duties of the TSA Administrator

Attachment:
Security Directive 1582/84-21-01

**Transportation
Security
Administration**

U.S. Department of Homeland Security
**Transportation Security Administration**
6595 Springfield Center Drive
Springfield, Virginia 20598

## SECURITY DIRECTIVE

| | |
|---|---|
| NUMBER | SD 1582/84-21-01 |
| SUBJECT | Security Measures – Mask Requirements |
| EFFECTIVE DATE | 11:59 pm EST on February 1, 2021 |
| EXPIRATION DATE | May 11, 2021 |
| CANCELS AND SUPERSEDES | Not Applicable |
| APPLICABILITY | Each owner/operator identified in 49 CFR 1582.1(a); each owner/operator identified in 49 CFR 1584.1 that provides fixed-route service as defined in 49 CFR 1500.3 |
| AUTHORITY | 49 U.S.C. 114 |
| LOCATION | United States |

### PURPOSE AND GENERAL INFORMATION

Due to the ongoing COVID-19 pandemic and to reduce the spread of the virus, the President issued an Executive Order, *Promoting COVID-19 Safety in Domestic and International Travel*, on January 21, 2021, requiring masks to be worn in airports, on commercial aircraft, and in various modes of surface transportation. On January 27, 2021, the Acting Secretary of Homeland Security determined a national emergency existed requiring the Transportation Security Administration (TSA) to issue this Security Directive (SD) to implement the Executive Order and enforce the related Order[1] issued by the Centers for Disease Control and Prevention (CDC), pursuant to the authority of 49 U.S.C. section 114. Consistent with these mandates and TSA's authority, TSA is issuing this SD requiring masks to be worn to mitigate the spread of COVID-19. The requirements in this SD must be applied to all persons in or on one of the conveyances or a transportation facility used by one of the modes identified above. TSA developed these requirements in consultation with the Department of Transportation (including the Federal Railroad Administration, the Federal Transit Administration, and the Federal Motor Carrier Safety Administration) and the CDC.

---

[1] *See* Order Under Section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 Code of Federal Regulations §§ 70.2, 71.31(B), 71.32(B); Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs (January 29, 2021).

## DEFINITIONS

For the purpose of this SD, the following definitions apply:

*Conveyance* has the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle, vessel...or other means of transport, including military."

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[2]

*Transportation hub/facility* means any airport, bus terminal, marina, seaport or other port, subway stations, terminal (including any fixed facility at which passengers are picked-up or discharged), train station, U.S. port of entry, or any other location that provides transportation subject to the jurisdiction of the United States.

## ACTIONS REQUIRED

A. Owner/Operators must notify passengers with prominent and adequate notice of the mask requirements to facilitate awareness and compliance.[3] At a minimum, this notice must inform passengers, at the time tickets are purchased or when otherwise booking transportation *and* at the time the conveyance departs its location after boarding passengers, of the following:

  1. Federal law requires wearing a mask while on the conveyance and failure to comply may result in denial of boarding or removal.

  2. Refusing to wear a mask is a violation of federal law; passengers may be subject to penalties under federal law.

B. Owner/Operators must require that individuals wear a mask, except as described in Sections D., E., or F., as follows:

  1. Any persons in a public transportation, passenger railroad, or bus conveyance covered by this SD.

  2. Any person in public areas of transportation hubs/facilities controlled by the owner/operator (such as for purposes of purchasing tickets, waiting areas, and platforms for boarding and disembarking) for the duration of travel, boarding, and disembarking.

---

[2] A properly worn mask completely covers the nose and mouth of the wearer. A mask should be secured to the head, including with ties or ear loops. A mask should fit snugly but comfortably against the side of the face. Masks do not include face shields. Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures. Medical masks and N-95 respirators fulfill the requirements of this SD. CDC guidance for attributes of acceptable masks in the context of this SD is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

[3] Notice may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; printing the requirement on tickets; or other methods as appropriate.

C.  Owner/Operators must ensure that direct employees and contractor employees wear a mask at all times when in conveyances or in or around transportation facilities under their control, except as described in Sections D., E., or F.

D.  The requirement to wear a mask does not apply under the following circumstances:

1.  When necessary to temporarily remove the mask for identity verification purposes.

2.  While eating, drinking, or taking oral medications for brief periods[4]. Prolonged periods of mask removal are not permitted for eating or drinking; the mask must be worn between bites and sips.

3.  While communicating with a person who is deaf or hard of hearing, when the ability to see the mouth is essential for communication.

4.  If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance.[5]

E.  The following conveyances are exempted from wearing masks:

1.  Persons in private conveyances operated solely for personal, non-commercial use.

2.  A driver, when operating a commercial motor vehicle as this term is defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle.

F.  This SD exempts the following categories of persons from wearing masks:[6]

1.  Children under the age of 2.

---

[4] The CDC has stated that brief periods of close contact without a mask should not exceed 15 minutes. *See* https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html
[5] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask. Persons who are vomiting should remove the mask until vomiting ceases. Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.
[6] Owner/Operators may impose requirements, or conditions of carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the owner/operator, as well as require evidence that the person does not have COVID-19 such as a negative result from a SAR-CoV-2 viral test or documentation of recovery from COVID-19. CDC definitions for SAR-CoV-2 viral test and documentation of recovery are available in Frequently Asked Questions at: https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html. Owners/Operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or transportation hub/facility Owners/Operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

Security Directive                                                          SD 1582/84-21-01

<hr>

    2. People with disabilities who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.).[7]

    3. People for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

G. Owner/Operators must establish procedures to manage situations with persons who refuse to comply with the requirement to wear a mask. At a minimum, these procedures must ensure that if an individual refuses to comply with an instruction given by the owner/operator with respect to wearing a mask, the owner/operator must:

    1. Deny boarding;

    2. Make best efforts to disembark the individual as soon as practicable; or

    3. Make best efforts to remove the individual from the transportation hub/facility.

H. If an individual's refusal to comply with the mask requirement constitutes a significant security concern, the owner/operator must report the incident to the Transportation Security Operations Center (TSOC) at 1-866-615-5150 or 1-703-563-3240 in accordance with 49 CFR 1570.203.

PREEMPTION

The requirements in this SD do not preempt any State, local, Tribal, or territorial rule, regulation, order, or standard necessary to eliminate or reduce a local safety hazard, which includes public health measures that are the same or more protective of public health than those required in this SD, if that provision is not incompatible with this SD.

PROCEDURES FOR SECURITY DIRECTIVES

A. The owner/operator must immediately provide written confirmation of receipt of this SD via email to TSA at TSA-Surface@tsa.dhs.gov.

B. The owner/operator must immediately disseminate the information and measures in this SD to corporate senior management, security management representatives, and any personnel having responsibilities in implementing the provisions in this directive. The owner/operator may widely share this SD with anyone subject to the provisions of this directive to include,

<hr>

[7] This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability; who, e.g., do not understand how to remove their mask due to cognitive impairment, cannot remove a mask on their own due to dexterity/mobility impairments, or cannot communicate promptly to ask someone else to remove their mask due to speech impairments or language disorders, or cannot wear a mask because doing so would impede the function of assistive devises/technology. It is not meant to cover persons for whom mask-wearing may only be difficult. CDC intends to issue further guidance regarding this exception.

but not limited to, federal, state, and local government personnel; direct owner/operator employees; tenants; contractors; transport personnel; taxi drivers; law enforcement; *etc.*

C. All individuals responsible for implementing this SD must be briefed by the owner/operator. If the owner/operator is unable to implement the measures in this SD, the owner/operator must submit proposed alternative measures and the basis for submitting the alternative measures to TSA for approval.

D. The owner/operator may comment on this SD by submitting data, views, or arguments in writing to TSA via email at TSA-Surface@tsa.dhs.gov . TSA may amend the SD based on comments received. Submission of a comment does not delay the effective date of the SD.

## APPROVAL OF ALTERNATIVE MEASURES

The owner/operator must immediately notify TSA via email at TSA-Surface@tsa.dhs.gov if unable to implement any of the measures in this SD. The owner/operator may submit proposed alternative measures and a justification for adopting those measures to the email addresses above.

Darby LaJoye
Senior Official Performing the Duties of the TSA Administrator

EXHIBIT S-05

U.S. Department of Homeland Security
**Transportation Security Administration**
6595 Springfield Center Drive
Springfield, Virginia 20598



**Transportation
Security
Administration**

## MEMORANDUM

To: Covered Foreign Air Carriers

Date: January 31, 2021

Subject: Emergency Amendment 1546-21-01

Attached to this memorandum is Emergency Amendment (EA) 1546-21-01: Security Measures –
Face Mask Requirements. This EA is issued to implement the January 21, 2021, Executive
Order on promoting measures to prevent the spread of coronavirus disease 2019 (COVID-19) by
travelers within the United States and those who enter the country from abroad. This EA also
supports enforcement of the Centers for Disease Control and Prevention (CDC) Order mandating
masks issued on January 29, 2021.

All queries concerning the attached EA must be directed to your assigned TSA International
Industry Representative.

Darby LaJoye
Senior Official Performing the Duties of the TSA Administrator

Attachment:
Emergency Amendment 1546-21-01

 **Transportation
Security
Administration**

U.S. Department of Homeland Security
**Transportation Security Administration**
6595 Springfield Center Drive
Springfield, Virginia 20598

## EMERGENCY AMENDMENT

| | |
|---|---|
| NUMBER | EA 1546-21-01 |
| SUBJECT | Security Measures – Mask Requirements |
| EFFECTIVE DATE | 11:59 pm EST on February 1, 2021 |
| EXPIRATION DATE | May 11, 2021 |
| CANCELS AND SUPERSEDES | Not Applicable |
| APPLICABILITY | Foreign air carriers regulated under 49 CFR 1546.101(a) and (b) |
| AUTHORITY | 49 U.S.C. 114, 44902, and 44903; 49 CFR 1546.105(d) |
| LOCATION(S) | All flights to, from, or within the United States |

PURPOSE AND GENERAL INFORMATION

Due to the ongoing COVID-19 pandemic and to reduce the spread of the virus, the President issued an Executive Order, *Promoting COVID-19 Safety in Domestic and International Travel*, on January 21, 2021, requiring masks to be worn in airports, on commercial aircraft, and in various modes of surface transportation. On January 27, 2021, the Acting Secretary of Homeland Security determined a national emergency existed requiring the Transportation Security Administration (TSA) to issue this Emergency Amendment (EA) to implement the Executive Order and enforce the related Order[1] issued by the Centers for Disease Control and Prevention (CDC), pursuant to the authority of 49 U.S.C. sections 114, 44902, and 44903. Consistent with these mandates and the TSA's authority, TSA is issuing this EA requiring masks to be worn to mitigate the spread of COVID-19 during air travel. The requirements in this EA must be applied to all persons onboard a commercial aircraft operated by a foreign air carrier, including passengers and crewmembers. TSA developed these requirements in consultation with the Federal Aviation Administration and CDC.

---

[1] *See* Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations (CFR) §§ 70.2, 71.31(B), 71.32(B); Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs (January 29, 2021)

Emergency Amendment                                                              EA 1546-21-01

DEFINITIONS

For the purposes of this EA, the following definitions apply:

*Conveyance* has the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle, vessel…or other means of transport, including military."

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[2]

ACTIONS REQUIRED

A. The foreign air carrier must provide passengers with prominent and adequate notice of the mask requirements to facilitate awareness and compliance. [3]  At a minimum, this notice must inform passengers, at or before check-in and as a pre-flight announcement, of the following:

   1. Federal law requires each person to wear a mask at all times throughout the flight, including during boarding and deplaning.

   2. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft, and/or penalties under federal law.

   3. If wearing oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation, masks should be removed to accommodate oxygen masks.

B. The foreign air carrier must not board any person who is not wearing a mask, except as described in Sections D., E., and F.

C. The foreign air carrier must ensure that direct employees and authorized representatives wear a  mask at all times while on an aircraft or in a U.S.[4] airport location under the control of the foreign air carrier, except as described in Sections D., E., and F.

D. The requirement to wear a mask does not apply under the following circumstances:

   1. When necessary to temporarily remove the mask for identity verification purposes.

---

[2] A properly worn mask completely covers the nose and mouth of the wearer.  A mask should be secured to the head, including with ties or ear loops.  A mask should fit snugly but comfortably against the side of the face.  Masks do not include face shields.  Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures.  Medical masks and N-95 respirators fulfill the requirements of this EA.  CDC guidance for attributes of acceptable masks in the context of this EA is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.
[3] Notice may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; printing the requirement on boarding passes; or other methods as appropriate.
[4] Including U.S. territories:  American Samoa, Guam, the Northern Mariana Islands, the Commonwealth of Puerto Rico, and the U.S. Virgin Islands.

2.  While eating, drinking, or taking oral medications for brief periods.[5]  Prolonged periods of mask removal are not permitted for eating or drinking; the mask must be worn between bites and sips.

3.  While communicating with a person who is deaf or hard of hearing, when the ability to see the mouth is essential for communication.

4.  If wearing oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation.

5.  If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance.[6]

E.  The following conveyances are exempted from this EA:

1.  Persons in private conveyances operated solely for personal, non-commercial use.

2.  A driver, when operating a commercial motor vehicle as this term is defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle.

F.  This EA exempts the following categories of persons from wearing masks:[7]

1.  Children under the age of 2.

2.  People with disabilities who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.).[8]

---

[5] The CDC has stated that brief periods of close contact without a mask should not exceed 15 minutes. *See* https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html

[6] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask.  Persons who are vomiting should remove the mask until vomiting ceases.  Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.

[7] Foreign air carriers may impose requirements, or conditions of carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the foreign air carrier, as well as require evidence that the person does not have COVID-19 such as a negative result from a SAR-CoV-2 viral test or documentation of recovery from COVID-19. CDC definitions for SAR-CoV-2 viral test and documentation of recovery are available in Frequently Asked Questions at: https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html.  Foreign air carriers may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or airport.  Foreign air carriers may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

[8] This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability; who, e.g., do not understand how to remove their mask due to cognitive impairment, cannot remove a mask on their own due to dexterity/mobility impairments, or cannot communicate promptly to ask someone else to remove their mask due to speech impairments or language disorders, or cannot wear a mask because doing so would

3. People for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

G. If a passenger refuses to comply with an instruction given by a crew member with respect to wearing a mask, the foreign air carrier must:

1. Make best efforts to disembark the person who refuses to comply as soon as practicable; and

2. Follow incident reporting procedures in accordance with its TSA-accepted security program or any applicable EAs and provide the following information, if available:

   a. Date and flight number;

   b. Passenger's full name and contact information;

   c. Passenger's seat number on the flight;

   d. Name and contact information for any crew members involved in the incident; and

   e. The circumstances related to the refusal to comply.

PREEMPTION

The requirements in this EA do not preempt any host government, State, local, Tribal, or territorial rule, regulation, order, or standard necessary to eliminate or reduce a local safety hazard, which includes public health measures that are the same or more protective of public health than those required in this EA, if that provision is not incompatible with this EA.

ACKNOWLEDGMENT OF RECEIPT

The foreign air carrier must immediately provide written confirmation of receipt of this EA to its International Industry Representative (IIR), as appropriate.

DISSEMINATION REQUIRED

The foreign air carrier must immediately pass the information and measures set forth in this EA to any personnel having responsibilities in implementing the provisions of this directive. The foreign air carrier may share this EA with anyone subject to the provisions of this directive to include but not limited to: host government, federal, state, and local government personnel; authorized representatives; catering personnel; vendors; airline club staff; contractors; etc.

---

impede the function of assistive devises/technology. It is not meant to cover persons for whom mask-wearing may only be difficult. CDC intends to issue further guidance regarding this exception.

Emergency Amendment                                    EA 1546-21-01

## APPROVAL OF ALTERNATIVE MEASURES

The foreign air carrier must immediately notify its IIR if unable to implement any of the measures in this EA, or in any TSA-approved alternative measure. In accordance with 49 CFR 1546.105, the foreign air carrier may submit proposed alternative measures and the basis for submitting those measures to its IIR.

Darby LaJoye
Senior Official Performing the Duties of the TSA Administrator

EXHIBIT S-06

**UNITED STATES OF AMERICA**
**DEPARTMENT OF TRANSPORTATION**
**OFFICE OF THE SECRETARY**
**WASHINGTON, D.C.**

---

**NOTICE OF ENFORCEMENT POLICY:**
**ACCOMMODATION BY CARRIERS OF PERSONS WITH DISABILITIES**
**WHO ARE UNABLE TO WEAR OR SAFELY WEAR MASKS WHILE ON**
**COMMERCIAL AIRCRAFT**

---

The Office of Aviation Consumer Protection (OACP), a unit within the Office of the General Counsel of the U.S. Department of Transportation (DOT or the Department), is issuing this Notice of Enforcement Policy to remind U.S. and foreign air carriers of their legal obligation to accommodate the needs of passengers with disabilities when developing procedures to implement the Federal mandate on the use of masks to mitigate the public health risks associated with the Coronavirus Disease 2019 (COVID-19).  OACP will exercise its prosecutorial discretion and provide airlines 45 days from the date of this notice to be in compliance with their obligation under the Air Carrier Access Act (ACAA)[1] and the Department's implementing regulation in 14 CFR Part 382 (Part 382) to provide reasonable accommodations to persons with disabilities who are unable to wear or safely wear masks, so long as the airlines demonstrate that they began the process of compliance as soon as this notice was issued.

To carry out the Executive Order on Promoting COVID-19 Safety in Domestic and International Travel (Executive Order),[2] the Centers for Disease Control and Prevention (CDC) issued an order on January 29, 2021 (CDC Order)[3] that, among other things, requires U.S. and foreign air carriers to use their best efforts to ensure that persons on flights to, within, or from[4] the United States wear a mask for the duration of travel, including when boarding and disembarking aircraft. The CDC Order exempts certain categories of persons from the mask-wearing mandate, including a person with a disability who cannot wear a mask, or who cannot safely wear a mask

---

[1] The ACAA, signed into law in 1986, prohibits discrimination by airlines against individuals with disabilities in commercial air transportation.  The Americans with Disabilities Act, signed into law after the ACAA in 1990, prohibits discrimination against individuals with disabilities in employment, state or local government, public accommodations, commercial facilities, telecommunications, and transportation other than by commercial airlines.

[2] Exec. Order No. 13998, 86 FR 7205 (Jan. 26, 2021).

[3] Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations 70.2, 71.31(b), 71.32(b): Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs (CDC Order), *available at* https://www.cdc.gov/quarantine/pdf/Mask-Order-CDC_GMTF_01-29-21-p.pdf.

[4] CDC Order specifies that "[c]onveyance operators must also require all persons to wear masks on board conveyances departing from the United States and for the duration of their travel until the conveyance arrives at the foreign destination if at any time any of the persons onboard (passengers or conveyance operators) will return to the United States while this Order remains in effect." CDC Order at 9.

1

because of the disability.[5]  However, it allows airlines to impose requirements or conditions for carriage on the categories of persons exempted from the mask mandate, whether the person is a child under the age of two, a person for whom wearing a mask would create a risk to workplace safety, health, or job duty, or a person with a disability who is unable to wear or safely wear a mask because of the disability.  Additionally, on January 31, 2021, the Transportation Security Administration (TSA) issued a Security Directive (SD) to aircraft operators on face mask requirements to implement the Executive Order and to support enforcement of the CDC Order mandating masks.[6]  The Department supports actions by the airline industry to have procedures in place requiring passengers to wear masks in accordance with the CDC Order, CDC guidance, and TSA SD.  At the same time, the ACAA and Part 382, which are enforced by OACP, require airlines to make reasonable accommodations, based on individualized assessments, for passengers with disabilities who are unable to wear or safely wear a mask due to their disability. This Notice sets forth the enforcement policy that OACP will apply in determining, on a prospective basis, whether airlines are complying with the requirements of the ACAA and Part 382 when implementing procedures requiring mask-wearing by passengers.

<u>Background</u>

SARS-CoV-2, the virus that causes COVID-19, spreads most often when an infected person coughs, sneezes, or talks, and droplets from the infected individual's mouth or nose are spread through the air and come in contact with people nearby.[7]  Persons with COVID-19 infection may have symptoms of fever, cough, or shortness of breath,[8] or they may be asymptomatic[9] or pre-symptomatic[10] but still able to spread the virus.[11]  CDC has made clear that appropriately worn masks reduce the spread of COVID-19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID-19.[12]

---

[5] CDC Order at 4 and 5 (noting that this is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to disability).

[6] TSA Security Directive 1544-21-02: Security Measures – Face Mask Requirements (January 31, 2021).

[7] *See* Ctrs. for Disease Control & Prevention, *How COVID Spreads*, CDC.gov (last updated Oct. 28, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html; Ctrs. for Disease Control & Prevention, *Considerations for Wearing Masks*, CDC.gov (last updated Dec. 18, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html.

[8] Ctrs. for Disease Control & Prevention, *Symptoms of Coronavirus*, CDC.gov (last updated Dec. 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html.

[9] An asymptomatic case is an individual infected with SARS-CoV-2, who does not exhibit symptoms during the course of infection.   Ctrs. for Disease Control & Prevention, *COVID-19 Pandemic Planning Scenarios*, CDC.gov (last updated Sept. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html.

[10] A pre-symptomatic case of COVID-19 is an individual infected with SARS-CoV-2, who has not exhibited symptoms at the time of testing, but who later exhibits symptoms during the course of the infection.  *COVID-19 Pandemic Planning Scenarios*, *supra* note 8.

[11] *See How COVID Spreads* and *Considerations for Wearing Masks*, *supra* note 6.

[12] CDC Order at 6.

As of January 27, 2021, there have been over 99 million confirmed cases of COVID-19 globally and over 25 million confirmed cases of COVID-19 in the United States, with over 2 million deaths globally and over 400,000 deaths in the United States due to the disease.[13]  To slow the spread of COVID-19, on January 21, 2021, President Biden issued Executive Order 13998, which directs the heads of certain Federal agencies to take immediate actions to require mask-wearing in domestic and international transportation.  The Executive Order further provides that the heads of agencies may make categorical or case-by-case exceptions to policies developed under the order, consistent with applicable law, to the extent that doing so is necessary or required by law.

Pursuant to the Executive Order, on January 29, 2021, CDC issued an order directing conveyance operators, which includes airlines, to use best efforts to ensure that any person on the conveyance, such as an aircraft, wears a mask when boarding, disembarking, and for the duration of travel.  Recognizing that there are specific instances when wearing a mask may not be feasible, the CDC Order exempts several categories of persons from the mask mandate, including "a person with a disability who cannot wear a mask, or who cannot safely wear a mask because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.)."  The Americans with Disabilities Act (ADA) defines a person with a disability to include a person who has a physical or mental impairment that substantially limits one or more major life activities.[14]  To ensure that only qualified persons under the exemptions would be able to travel without a mask, the CDC Order permits operators of transportation conveyances, such as airlines, to impose requirements, or conditions for carriage, on persons requesting an exemption, including requiring a person seeking an exemption to request an accommodation in advance, submit to medical consultation by a third party, provide medical documentation by a licensed medical provider, and/or provide other information as determined by the operator.  The CDC Order also permits operators to require protective measures, such as a negative result from a SARS-CoV-2 viral test or documentation of recovery from COVID-19 or seating or otherwise situating the individual in a less crowded section of the conveyance, e.g., aircraft.[15]

In response to COVID-19, U.S. and foreign air carriers generally have implemented policies requiring passengers to wear masks onboard aircraft even before the issuance of the Executive Order and the CDC Order.  Some carriers have adopted policies that expressly allow "no exceptions" to the mask requirement other than for children under the age of two.[16] OACP has

---

[13] *Id.* at 5.

[14] 42 U.S.C. 12102(4).  OACP notes that the definition of a person with a disability under the ADA is almost identical to the definition of a person with a disability under the Department's ACAA regulation.   See also CDC Order at 4 and 5.

[15] CDC Order at 4. CDC definitions for SARS-CoV-2 viral test and documentation of recovery are available in the Frequently Asked Questions at https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html.

[16] It would be a violation of the ACAA to have an exemption for children under 2 on the basis that children that age cannot wear or safely wear a mask and not to have an exemption for the limited number of individuals with disabilities who similarly cannot wear or safely wear a mask when there is no evidence that these individuals with disabilities would pose a greater health risk to others.  *See* Ctrs. for Disease Control & Prevention, *Information for Pediatric Healthcare Providers*, CDC.gov (last updated Dec. 30, 2020), https://www.cdc.gov/coronavirus/2019-

3

received complaints from persons who assert they have a disability that precludes their wearing a mask, and who contend that they were denied transport by an airline under a "no exceptions allowed" mask policy.

The CDC and other medical authorities recognize that individuals with certain medical conditions may have trouble breathing or other difficulties such as being unable to remove the mask without assistance if required to wear a mask that fits closely over the nose and mouth.[17] The CDC Order provides that a mask is not required in circumstances where an individual is "unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to wear the mask without assistance."[18]  The Order notes that individuals may remove masks "who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask.""[19]  Also, individuals with acute illness may remove the mask if it "interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask."[20]  CDC will issue additional guidance regarding persons who cannot wear a mask on the basis of disability.[21]  Individuals who have a physical or mental impairment that substantially limits one or more major life activities are individuals with a disability for purposes of the ACAA and Part 382.[22]

<u>Legal Authority</u>

The ACAA prohibits U.S. and foreign air carriers from denying air transportation to or otherwise discriminating in the provision of air transportation against a person with a disability by reason of the disability.[23]  When a policy or practice adopted by a carrier has the effect of denying service to or otherwise discriminating against passengers because of their disabilities, the Department's disability regulations in Part 382 require the airline to modify the policy or practice as necessary to provide nondiscriminatory service to the passengers with disabilities, provided that the modifications would not constitute an undue burden or fundamentally alter the airline's program.[24]

Part 382 allows an airline to refuse to provide air transportation to an individual whom the airline determines presents a disability-related safety risk, provided that the airline can demonstrate that

---

ncov/hcp/pediatric-hcp.html (stating that "[r]ecent evidence suggests that compared to adults, children likely have similar viral loads in their nasopharynx, similar secondary infections rates, and can spread the virus to others").

[17] Considerations for Wearing Masks, *supra* note 6.

[18] CDC Order at 4.

[19] CDC Order at 4 (footnote 7).

[20] CDC Order at 4 (footnote 7).

[21] CDC Order at 5 (footnote 9).

[22] 49 U.S.C. 41705(a); 14 CFR 382.3.

[23] 49 U.S.C. 41705(a); 14 CFR 382.11.

[24] 14 CFR 382.13.

4

the individual would pose a "direct threat" to the health or safety of others onboard the aircraft, and that a less restrictive option is not feasible.[25]  To support a determination that an individual poses such a direct threat, the airline must make "an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence," in order to ascertain "(i) [t]he nature, duration, and severity of the risk; (ii) [t]he probability that the potential harm to the health and safety of others will actually occur; and (iii) [w]hether reasonable modifications of policies, practices, or procedures will mitigate the risk."[26]  If the airline has adequately determined, based on such an individualized assessment, that the passenger does pose a direct threat to the health or safety of others because of a disability-related condition, the airline "must select the least restrictive response from the point of view of the passenger, consistent with protecting the health and safety of others," and must, for example, "not refuse transportation to the passenger if [the airline] can protect the health and safety of others by means short of a refusal" to provide transportation.[27]  Furthermore, the Department's regulations permit the airline to impose reasonable conditions, restrictions, or requirements on a passenger who has a "medical condition" that may cause the passenger to pose a risk to the health and safety of others.[28]

<u>Enforcement Policy</u>

The authority to pursue or not to pursue enforcement action against airlines with respect to air travel consumer protection and civil rights requirements, including compliance with the ACAA, lies with OACP.[29]

In accordance with the CDC Order, as conveyance operators, airlines are required to implement face mask policies that treat passengers presumptively as potential carriers of the SARS-CoV-2 virus and, therefore, as presenting a potential threat to the health and safety of other passengers and the crew.[30]  Notably, however, the CDC Order exempts from the mask mandate a person with a disability who cannot wear a mask, or who cannot safely wear a mask because of the

---

[25] 14 CFR 382.19(c)(1), (2).

[26] *Id.*

[27] 14 CFR 382.19(c)(2).

[28] 14 CFR 382.21(a)(3).  The rule recognizes that a passenger with a communicable disease or infection, such as infection with the SARS-CoV-2 virus or other "medical condition," may pose a direct threat to the health and safety of others onboard an aircraft, and the airline may be justified in refusing to transport the passenger or in requiring protective measures to mitigate the risk, consistent with the directives of public health authorities.  14 CFR 382.21(a)–(b).

[29] 49 U.S.C. 41705(c), 46301. The CDC Order requiring aircraft operators to mandate mask use will be enforced by the Transportation Security Administration under its statutory and regulatory authorities, including 49 U.S.C. 106, 114, 44902, 44903, and 46301; and 49 CFR 1542.303, 1544.305, and 1546.105.

[30] CDC Order at 5 ("The virus that causes COVID-19 spreads very easily and sustainably between people who are in close contact with one another (within about 6 feet)."); *id.* at 7 ("Traveling on public conveyances increases a person's risk of getting and spreading COVID-19 by bringing persons in close contact with others, often for prolonged periods, and exposing them to frequently touched surfaces.").

5

disability.  The Department also requires reasonable accommodations for persons with disabilities who are unable to wear masks or are unable to wear them safely.[31]

Airlines have expressed concerns to OACP that a significant number of passengers may claim medical exemption from the mask requirements without an apparent credible basis.  The CDC Order permits airlines to impose requirements or conditions for carriage on a person requesting an exemption, including requiring a person seeking an exemption to request an accommodation in advance, submit to medical consultation by a third party, provide medical documentation by a licensed medical provider, and/or provide other information as determined by the airline.[32]  Similarly, under the Department's disability regulation in 14 CFR Part 382, airlines may impose conditions, restrictions, or requirements on a passenger asserting that a medical condition prevents the passenger from wearing a face mask, because the passenger may pose a direct threat to the health or safety of others, as any passenger is a potential carrier of the SARS-CoV-2 virus.[33]  In short, both the CDC Order and Part 382 permit airlines to require passengers to consult with the airline's medical expert and/or to provide medical evaluation documentation from the passenger's doctor sufficient to satisfy the airline that the passenger does, indeed, have a recognized medical condition precluding the wearing or safe wearing of a mask.

Airlines have also represented to OACP that, given the number of passengers making such claims, it is not practicable for airlines to make the required individualized assessment of appropriate mitigation measures at the airport on the day of the flight.  Under the Department's disability regulation in Part 382, airlines must conduct an individualized assessment of the potential ways to mitigate the risk to others of allowing passengers with disabilities to fly without a mask.[34]  However, Part 382, like the CDC Order, permits airlines to require passengers with disabilities who are unable to wear masks to request an accommodation in advance. Airlines may also require such passengers to check in early and to agree to undergo the required individualized assessment a reasonable period in advance of the scheduled flight, provided that the process is completed on the day of travel.

In addition, airlines may impose protective measures to reduce or prevent the risk to other passengers.  For example, airlines may require protective measures, such as a negative result from a SARS-CoV-2 test,[35] taken at the passenger's own expense, during the days immediately

---

[31] 14 CFR 382.13.

[32] *Id.*

[33] 14 CFR 382.21(a)(3).

[34] 14 CFR 382.19(c)(1).

[35] On January 12, 2021, CDC issued an order requiring any passenger flying into the United States from a foreign country to provide, before boarding the flight, proof of a negative pre-departure test result for SARS-CoV-2, the virus that causes COVID-19, or documentation of recovery from COVID-19 after a previous SARS-CoV-2 infection. This order became effective on January 26, 2021.  Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations 70.2, 71.31(b): Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for All Airlines or Other Aircraft Passengers Arriving into the United States from Any Foreign Country, *available at* https://www.cdc.gov/quarantine/pdf/global-airline-testing-order_2021-01-2_R3-signed-encrypted-p.pdf.

prior to the scheduled flight.[36]  Further, the airline may arrange for additional, appropriate mitigation measures, including arranging for the passenger to sit in a less crowded section of the plane, to take a flight at times when airports are less crowded, and/or scheduling the passenger on a less crowded flight.

To ensure travelers are aware of the face mask requirements, airlines should use their best efforts to make this information easily available.  The Department requires airlines provide information on request, to individuals with disabilities, about any service-related or other limitations on the airline's ability to accommodate passengers with a disability.[37]  Also, CDC and TSA require airlines to provide passengers with prominent and adequate notice to facilitate awareness and compliance with the requirement that masks must be worn, subject to certain limited exemptions, to mitigate the spread of COVID-19 during air travel.[38]  Airlines' obligation to provide information on the face mask requirements includes updating airlines' face mask policies on their websites to ensure accuracy and consistency with the ACAA, CDC Order and TSA SD.[39]

In recognition of the CDC Order, as well as airlines' efforts to minimize the potential for transmission of the virus onboard aircraft by implementing policies requiring passengers to wear masks onboard aircraft even before the issuance of the CDC Order, OACP  will exercise its prosecutorial discretion and provide airlines an opportunity to follow the steps described herein to become compliant before taking further action.[40]  Airlines are expected to review their face mask policies immediately and to revise them as necessary to comply with the ACAA and Department's disability regulation in Part 382.  OACP will refrain from taking enforcement action against an airline for a period of up to 45 days from the date of this notice, so long as the airline demonstrates that it began the process of compliance as soon as this notice was issued. This timeframe should provide airlines with adequate time to review and revise their mask procedures as needed to comply with the law.[41]

---

[36] A positive test result for SARS-CoV-2, the virus that causes COVID-19, is a valid reason for an airline to deny transport to any individual, including an individual with a disability.  CDC recommends isolation to separate people infected with SARS-CoV-2 from people who are not infected.  *See* Ctrs. for Disease Control & Prevention, *Isolate if You are Sick*, CDC.gov (last updated Jan. 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/isolation.html.

[37] 14 CFR 382.41.

[38] CDC Order at 1; TSA SD at 2.

[39] *See* 14 CFR 399.79 (b)(2) (defining an airline's practice as "deceptive" to consumers within the meaning of section 41712 if it is likely to mislead a consumer, acting reasonably under the circumstances, with respect to a material matter).

[40] Every day, we are learning more about how COVID-19 spreads and affects people and communities.  OACP will continue to follow the data and information provided by public health authorities, such as CDC, on actions necessary to limit the spread or impact of SARS-CoV-2 and will make changes to this notice as necessary to be consistent with current medical knowledge and the best available objective evidence.

[41] This document is a temporary notice of enforcement discretion.  Regulated entities may rely on this notice as a safeguard from Departmental enforcement as described herein. To the extent that this notice includes guidance on how regulated entities may comply with existing regulations, it does not have the force and effect of law and is not meant to bind the regulated entities in any way.

7

Questions regarding this Notice may be addressed to the Office of Aviation Consumer Protection (C-70), 1200 New Jersey Avenue, S.E., Washington, D.C. 20590.

By:

Blane A. Workie
***Assistant General Counsel for***
***Office of Aviation Consumer Protection***

Dated:  February 5, 2021

*An electronic version of this document is available at http://www.dot.gov/airconsumer*

8

**aa@neg.com**

| | |
|---|---|
| **From:** | TSA-CustomerSatisfaction <TSA-CustomerSatisfaction@tsa.dhs.gov> |
| **Sent:** | Friday, March 25, 2022 12:52 PM |
| **To:** | aa@neg.com |
| **Subject:** | SR 05282764~ Screening at John F. Kennedy International Airport (JFK) |
| **Attachments:** | TSA Customer Service Factsheet.pdf; TSA Cares Fact sheet.doc |

Dear Mr. Aaron Abadi,

On behalf of the Transportation Security Administration (TSA), I would like to thank you for sharing your screening experience at John F. Kennedy International Airport (JFK) on the evening of March 14, 2022.

I am sorry to hear about your negative experience at our screening checkpoint. I apologize that TSA manager Bostic didn't have better communication with you, and between one another, and was rude and unprofessional. Clearly, no officers should be yelling at anyone. I apologize that you were embarrassed.

We seek to provide the highest level of security and customer service and we regret you had a negative experience at our screening checkpoint. Our policies and procedures focus on ensuring all passengers, regardless of their personal situations and needs, are treated with dignity, respect, and courtesy. **TSA Officers are required to be courteous and respectful throughout the process.**

As directed by President Biden's Executive Order to "Promote COVID-19 Safety in Domestic and International Travel," all passengers who appear older than two years of age are required to wear face masks fully covering the nose and mouth.  This has been extended until **April 18, 2022** and applies to all areas of the airport, including the TSA checkpoint. A TSA Officer will ask you to temporarily lower your mask to verify and confirm your identity.

**If you have a disability and cannot wear a mask**, or cannot safely wear a mask, for reasons related to a disability as defined by the Americans with Disabilities Act, you may be granted an exemption from the face mask requirement. This is a narrow exemption and does not apply to individuals for whom mask-wearing may only be difficult. You must provide medical documentation. The documentation should be on a licensed medical provider's letterhead, include your name, and clearly state that you cannot wear, or cannot safely wear, a mask. If additional screening is required, such as a patdown, you may be asked if you can wear a mask for short duration. **I apologize that manager Bostic didn't understand this latest directive. Our internal policies and procedures can shift quickly so our officers are going to problem solve until they are *completely* confident of their decision, as they should.**

If you will be requesting a medical exemption, you may wish to contact TSA Cares at least 72-hours prior to your trip. You may reach TSA Cares at (855) 787-2227 between 8 a.m. and 11 p.m. (ET) Monday through Friday, or between 9 a.m. and 8 p.m. (ET) on weekends and holidays. TSA Cares representatives are available to assist you with questions about screening policies, procedures, and what to expect at the security checkpoint.

Contacting TSA Cares in advance does not exempt you from the mask mandate, but it will allow TSA to prepare for your arrival at the checkpoint. In addition, medical documentation provided to TSA may not be sufficient to exempt you from wearing a mask while onboard the aircraft or while in other areas of the airport. We recommend contacting the airport and airline to ensure they will exempt you from the mask requirement. You may always ask to speak to a supervisor at any time during the screening process. I have attached more information about the *TSA Cares* program.

For the latest TSA updates on COVID-19, please visit www.tsa.gov/coronavirus. We also encourage you to read the list of TSA COVID-19 FAQs. All health related questions, including quarantine and traveler health requirements, should be directed to local or state health officials or the CDC.

We have also shared this e-mail with the Customer Support Manager at JFK for her awareness.

I have also attached a ***TSA Customer Service Factsheet*** for future flights. For more information on our screening procedures, please visit www.tsa.gov.

Again, we appreciate that you took the time to share your concern with us. Please continue to reach out to us in the future should the need arise. The feedback from the general public is critical for us to continually evaluate our screening processes, as well as our training needs, on a local and national level. **Thank you.**

*Regards,*

*Kristin C. Andrade*
Transportation Security Administration | DHS
Office of Civil Rights and Liberties, Ombudsman, and Traveler Engagement
Program Analyst/ Customer Service Branch

**CONFIDENTIALITY:** This e-mail and attachments are intended for the above name or names only and are confidential. If you are not the intended addressee, or the person responsible for delivering it to the intended addressee, you may neither copy, disseminate, nor distribute it to anyone else or use it in any unauthorized manner. To do so, is prohibited and may be unlawful. If you receive this e-mail by mistake, please advise sender immediately by using the reply facility in your e-mail software and delete it from your computer.



2