IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

AARON ABADI,                          )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )      Case No. 1:23-cv-04033-LJL
                                      )
AMERICAN AIRLINES, INC., et al.,      )
                                      )
          Defendants.                 )

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF AMERICAN AIRLINES, INC., DELTA AIRLINES, INC., JETBLUE AIRWAYS CORPORATION, SOUTHWEST AIRLINES CO., UNITED AIRLINES, INC., ROBERT LAND, ROY GOLDBERG, DEBBIE CASTLETON AND NATHALIE SIMON**

STINSON LLP

Kieran M. Corcoran (KC4935)
100 Wall Street
Suite 201
New York, NY 10005
Tel. (646) 883-7480
Email: kieran.corcoran@stinson.com

Paul Lackey (PL7651)
2200 Ross Avenue, Suite 2900
Dallas, TX 75201
Tel: (214) 560-2206
Email: paul.lackey@stinson.com

M. Roy Goldberg
1775 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C. 20006
Tel: (202) 728-3005
Email: roy.goldberg@stinson.com
(Admitted *Pro Hac Vice*)

Dated: October 30, 2023

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 2

STATEMENT OF FACTS......................................................................................................... 3

APPLICABLE LEGAL STANDARD ........................................................................................ 5

ARGUMENT .......................................................................................................................... 6

I.   THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF 42 U.S.C. § 1985(3). .......... 6

    A.   Section 1985(3) Does Not Apply To Plaintiff's Complaint Of Having To Wear A Mask While Flying During The Pandemic............................................................. 7

    B.   Plaintiff Cannot Use Section 1985(3) To Circumvent The Acaa. ...................................... 8

    C.   The Complaint Fails To Allege The Existence Of A Conspiracy. ..................................... 9

    D.   There Is No Constitutional Right To Travel By Aircraft. ............................................... 12

II.  THE CLAIM FOR VIOLATION OF 42 U.S.C. § 1986 SHOULD BE DISMISSED........................... 12

III. PLAINTIFF'S CLAIMS UNDER SECTIONS 1985(3) AND 1986 AGAINST THE INDIVIDUAL ATTORNEY DEFENDANTS ARE MERITLESS................................................................... 14

IV.  PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION TO SUE THE AIRLINE DEFENDANTS UNDER THE AIR CARRIER ACCESS ACT. ................................................................. 16

V.   PLAINTIFF DOES NOT HAVE A CLAIM AGAINST THE AIRLINE DEFENDANTS FOR VIOLATION OF THE REHABILITATION ACT................................................................ 17

    A.   The Cares Act Funding Did Not Constitute Federal Financial Assistance............................ 18

    B.   Plaintiff Cannot Use The Ra To Circumvent The Acaa. ............................................... 18

VI.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE FIVE AIRLINE DEFENDANTS FOR A VIOLATION OF THE CALIFORNIA UNRUH CIVIL RIGHTS ACT. ................................... 21

VII. PLAINTIFF HAS NO CLAIM AGAINST THE MOVING DEFENDANTS FOR VIOLATION OF THE NEW JERSEY CIVIL RIGHTS LAW AGAINST DISCRIMINATION. ...................................... 25

VIII. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE FIVE AIRLINE DEFENDANTS FOR VIOLATION OF THE NEW YORK CIVIL RIGHTS LAW........................................... 26

IX.  PLAINTIFF HAS NO CLAIM AGAINST THE FIVE AIRLINE DEFENDANTS FOR VIOLATION OF THE TEXAS CIVIL RIGHTS LAW.......................................................................... 26

X.   THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR INTENTIONAL OR UNINTENTIONAL TORT AGAINST THE MOVING DEFENDANTS UNDER THE STATE LAWS OF TEXAS, NEW YORK, NEW JERSEY, CALIFORNIA OR OTHER STATES. ................................................. 27

XI.  PLAINTIFF LACKS A CLAIM FOR NEGLIGENCE AGAINST THE MOVING DEFENDANTS UNDER VARIOUS STATE LAWS....................................................................................... 28

i

XII.    PLAINTIFF'S CLAIMS FOR INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED..................................................................................................29

XIII.   THE CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED. ......................................30

XIV.    THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR PROMISSORY ESTOPPEL AGAINST THE FIVE AIRLINE DEFENDANTS..................................................................36

XV.     THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR INJURIOUS FALSEHOODS. ..................................................................................................
        37

XVI.    THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR INVASION OF PRIVACY.........................37

XVII.   THE CLAIM FOR FRAUDULENT MISREPRESENTATION SHOULD BE DISMISSED..............38

XVIII.  THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR INFRINGEMENT OF A CONSTITUTIONAL RIGHT TO TRAVEL. .........................................................39

XIX.    THE REQUEST FOR NOMINAL DAMAGES SHOULD BE STRICKEN.........................................40

XX.     THE REQUEST FOR PUNITIVE DAMAGES IS PREEMPTED BY THE DEREGULATION ACT. ..................................................................................................40

XXI.    PLAINTIFF LACKS STANDING TO ASSERT HIS CLAIMS AGAINST THE MOVING DEFNDANTS. ..................................................................................................41

XXII.   PLAINTIFF'S CHALLENGE OF AIRLINES' IMPLEMENTATION OF THE FEDERAL TRANSPORTATION MASK MANDATE IS MOOT BY REASON OF THE EXPIRATION OF THE FTMM, AND THE LACK OF ANY MASKING POLICIES CURRENTLY BEING IMPOSED BY THE FIVE AIRLINE DEFENDANTS. .........................................................43

CONCLUSION ..................................................................................................47

CORE/3503476.0004/183648181.3

# TABLE OF AUTHORITIES

**Page(s)**

**Rules**

*Abadi v. Apple, Inc.*,
  Case No. 1:23-cv-03367-PGG-VF, ECF No. 13 (Aug. 21, 2023)............................................5

*Abadi v. Caesars Entm't, Inc.*,
  2022 WL 4117087 (D. Nev. Aug. 1, 2022) ...............................................................................4

*Abadi v. Target Corp.*,
  No. 23-1050, 2023 WL 4045373 (3d Cir. June 16, 2023) ...........................................13, 18, 42

*Adamore v. Southwest Airlines Corp.*,
  2011 WL 6301398 (S.D. Tex. Dec. 15, 2011).....................................................................11, 28

*Air Transport Ass'n of America, Inc. v. Cuomo*,
  520 F.3d 218 (2d Cir. 2008)....................................................................................................28

*Alexander v. Sandoval*,
  532 U.S. 275 (2001).................................................................................................................16

*In re Am. Airlines, Inc. Privacy Litig.*,
  370 F. Supp. 2d 552 (N.D. Tex. 2005) ...................................................................................37

*American Airlines, Inc. v. Wolens*,
  513 U.S. 219 (1995)...............................................................................................33, 34, 38, 40

*Amidax Trading Group v. S.W.I.F.T.*,
  671 F.3d 140 (2d Cir. 2011).....................................................................................................41

*Andreadakis v. CDC*,
  No. 22-cv-52 (DJN), 2022 WL 2674194 (E.D. Va. July 11, 2022) (case
  dismissed) (appeal pending) .............................................................3, 10, 11, 17, 20, 22, 34

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................5, 6

*Azocar v. Delta Air Lines, Inc.*,
  562 F. Supp. 3d 788 (C.D. Cal. 2021) ...................................................................................24

*Badar v. Swissport USA, Inc.*,
  492 F. Supp. 3d 54 (E.D.N.Y. 2020) ................................................................................31, 32

*Bartell v. Lohiser*,
  215 F.3d 550 (6th Cir. 2000) .............................................................................................8, 12

iii

*Bassam v. American Airlines, Inc.*,
    287 Fed. Appx. 309 (5th Cir. 2008) ..................................................................33

*Baur v. Veneman*,
    352 F.3d 625 (2d Cir. 2003) .............................................................................42

*Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n*,
    38 N.Y.2d 397 (1975) ......................................................................................27

*Bender v. City of New York*,
    78 F.3d 787 (2d Cir. 1996) .............................................................................29

*Bergman v. Alaska Airlines, Inc.*,
    484 P.3d 480 (2021) ........................................................................................36

*Best v. BWIA West Indies Airways Ltd.*,
    581 F. Supp. 2d 359 (E.D.N.Y. 2008) ............................................................31

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*,
    765 F.3d 1277 (11th Cir. 2014) ......................................................................40

*Booker v. BWIA West Indies Airways Ltd.*,
    No. 07-CV-2146 (RER), 2007 WL 1351927 (E.D.N.Y. May 8, 2007) .................41

*Boswell v. Skywest Airlines, Inc.*,
    61 F.3d 1263 (10th Cir. 2004) ........................................................................16

*Brandt v. American Airlines, Inc.*,
    No. C 98-2089, 2000 WL 288393 (N.D. Cal. March 13, 2000) ............................33

*Breitling U.S.A., Inc. v. Federal Exp. Corp.*,
    45 F. Supp. 2d 179 (D. Conn. 1999) ..............................................................41

*Cannava v. USAir, Inc.*,
    Civ. A. No. 91-30003-F, 1993 WL 565341 (D. Mass. Jan. 7, 1993) ...................28

*Casperson as Tr. For Samuel M.W. Casperson Dynasty Trust v. Oring*,
    441 F. Supp. 3d 23 (D.N.J. 2020) ..................................................................39

*Chasse v. Humphreys*,
    No. CV–07–189–HU, 2008 WL 4846208 (D. Or. Nov. 3, 2008) ...........................8

*Christian v. Transperfect Global, Inc.*,
    17-cv-5544 (PKC), 2018 WL 4571674 (S.D.N.Y. Sept. 24, 2018) .....................37

*Citadel Mgmt., Inc. v. Telesis Trust, Inc.*,
    123 F. Supp. 2d 133 (S.D.N.Y. 2000) ............................................................42

CORE/3503476.0004/183648181.3

*City of Cleburne v. Cleburne Living Center*,
473 U.S. 432 (1985)......................................................................................8

*Collins v. Giving Back Fund*,
No. 18-cv-8812 (CM), 2019 WL 3564578 (S.D.N.Y. Aug. 6, 2019)................................18, 19

*Compass Airlines, LLC v. Montana Dep't of Lab. and Indus.*,
No. CV 12-105-H-CCL, 2013 WL 4401045 (D. Mont. Aug. 12, 2013) ..........................9, 23

*Conservation Force v. Delta Air Lines, Inc.*,
190 F. Supp. 3d 606 (N.D. Tex. 2016), *aff'd*, 682 Fed. Appx. 310 (5th Cir.
Mar. 20, 2017)...........................................................................................23

*Covino v. Spirit Airlines, Inc.*,
No. 2:20-cv-01039-GMN-NJK, 2021 WL 4248079 (D. Nev. Sept. 17, 2021) .....................23

*D'Amato v. Wis. Gas Co.*,
760 F.2d 1474 (7th Cir. 1985) .........................................................................9

*D'Amico v. Arnold Chevrolet, LLC*,
No. 19618/2010, 2011 WL 1105659 (N.Y. Sup. Ct. 2011).............................................27, 30

*Wright ex rel. D.W. v. Am. Airlines, Inc.*,
248 F.R.D. 572 (E.D. Mo. 2008) ......................................................................39

*Daimler Chrysler Corp. v. Cuno*,
547 U.S. 332 (2006)....................................................................................44

*Davis v. Hudgins*,
896 F. Supp. 561, 571 (E.D. Va. 1995) .............................................................10

*Deeper Life Christian Fellowship, Inc. v. Sobol*,
948 F.2d 79 (2d Cir. 1991)...............................................................................6

*Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc.*,
972 F. Supp. 665 (N.D. Ga. 1997) .....................................................................41

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)...............................................................................5

*Drake v. St. Paul Travelers Ins.*,
No. 6:08–CV–301, 2009 WL 815999 (E.D. Tex. Mar.26, 2009)..........................................11

*Dutta v. Emirates*,
Civil Action No. 3:21-CV-1242-B, 2022 WL 60347 (N.D. Tex. January 6,
2022) ....................................................................................................32

v

*Edmonds-Radford v. Sw. Airlines Co.*,
   17 F.4th 975 (10th Cir. 2021) ...........................................................................21

*El Al Isr. Airlines, Ltd. v. Tseng*,
   525 U.S. 155 (1999)...............................................................................31, 32

*Elliott v. Grp. Med. & Surgical Serv.*,
   714 F.2d 556 (5th Cir.1983) ...............................................................................11

*Elnajjar v. Nw Airlines*,
   *Elnajjar v. Nw Airlines*, No. Civ.A. H-04-680, Civ.A. H-04-681, 2005 WL
   1949545, at *17-18 (S.D. Tex, Aug. 15, 2005) ....................................................38

*Equal Rights Center v. Uber Technologies*,
   525 F. Supp. 3d 62 (D.D.C. 2021)....................................................................43

*Exportaciones del Futoro S.A. de C.V. v. Iconix Brand Group, Inc.*,
   636 F. Supp. 2d 223 (S.D.N.Y. 2009)................................................................37

*Farese v. Scherer*,
   342 F.3d 1223 (11th Cir. 2003) ...........................................................................14

*Farmer v. Cnty. of Westchester*,
   No. 18 CIV. 2691 (NSR), 2022 WL 3902729 (S.D.N.Y. Aug. 30, 2022)............................13

*Fasano v. Federal Reserve Bank of NY*,
   457 F.3d 274 (3d Cir. 2006), *cert. denied*, 549 U.S. 1115 ....................................22

*Fawemimo v. Am. Airlines, Inc.*,
   751 Fed. Appx. 16 (2d Cir. 2018).......................................................................24

*Fields v. BWIA Int'l Airways Ltd.*,
   No. 99-CV-2493, 2000 WL 1091129 (E.D.N.Y. July 7, 2000)................................33

*Fitzpatrick v. Simmons Airlines, Inc.*,
   555 N.W.2d 479 (1996) .......................................................................................26

*Flaster/Greenberg P.C. v. Brendan Airways, LLC*,
   No. 08-4333, 2009 WL 1652156 (D.N.J. June 10, 2009).................................38, 40

*Frederico v. Home Depot*,
   507 F.3d 188 (D.N.J. 2007) ................................................................................39

*Friends of Falun Gong v. Pacific Cultural Enterprise, Inc.*,
   88 F. Supp. 2d 273 (E.D.N.Y. 2003) ..................................................................10

*Gallagher v. Director's Guild of Am.*,
   144 A.D. 2d 261 (1st Dep't 1988) ......................................................................27

vi

*Gerritsen v. de la Madrid Hurtado*,
  819 F.2d 1511 (9th Cir. 1985) ........................................................................7

*Gilmore v. Gonzalez*,
  435 F.3d 1125 (9th Cir. 2006) ..................................................................12, 39

*Griffin v. Breckenridge*,
  403 U.S. 88 (1971)............................................................................................7

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  920 F.3d 1 (D.C. Cir. 2019) ............................................................................6

*Health Freedom Defense Fund, Inc. v. Biden*,
  599 F. Supp. 3d 1144 (M.D. Fla.) ..................................................................44

*Health Freedom Defense Fund v. President*,
  71 Fed. 4th 888 ...................................................................................8, 44, 45

*Heffernan v. Hunter*,
  189 F.3d 405 (3d Cir. 1999)............................................................................14

*Hernandez v. City of New York*,
  No. 21 CIV. 2397 (LGS), 2022 WL 2047577 (S.D.N.Y. June 7, 2022) ................13

*Hingson v. Pacific Southwest Airlines*,
  743 F.2d 1408 (9th Cir. 1984) ........................................................................21

*Holgate v. Baldwin*,
  *infra*, 425 F.3d 671, 676 (9th Cir. 2005).........................................................7, 8

*Hughes v. Sw. Airlines Co.*,
  No. 18 C 5315, 2019 WL 1375927 (N.D. Ill. Mar. 26, 2019) ..................................34

*Ikekpeazu v. Air France*,
  No. Civ.A.04–0711, 2004 WL 2810063 (D. Conn. December 6, 2004) ................32

*Jinn v. Sig Sauer, Inc.*,
  No. 20-cv-1122 (PGG) (RWL), 2023 WL 2919558 (S.D.N.Y. April 12, 2023)........29

*Johnson v. Northwest Airlines, Inc.*,
  No. C 08-02272 VRW, 2010 WL 5564629 (N.D. Cal. May 5, 2010)......................23

*Joseph v. JetBlue Airways Corp.*,
  *supra*, 2012 WL 1204070 (N.D.N.Y. Apr. 11, 2012).......................................28, 38

*Kennedy v. American Airlines, Inc.*,
  195 F. Supp. 3d 646 (D.N.J. 2016), *aff'd*, 760 Fed. Appx. 136 (2019) ..................30

CORE/3503476.0004/183648181.3

*Knaust v. City of Kingston*,
    157 F.3d 86 (2d Cir. 1998) ................................................................................44

*Lee v. AMR Corp.*,
    Civil Action No. 15–2666, 2015 WL 3797330 (E.D. Pa. June 18, 2015) ...............................32

*Longobardi v. City of N.Y.*,
    21 Civ. 2705 (GBD), 2022 WL 1808902 (S.D.N.Y June 2, 2022) ........................................13

*Lopez v. JetBlue Airways*,
    662 F.3d 593 (2d Cir. 2011) ................................................................................16

*Love v. Delta Air Lines*,
    310 F.3d 1347 (11th Cir. 2022) ............................................................................16

*Loving v. Princess Cruise Lines, Ltd.*,
    No. CV 08-2898-JFW-AJWX, 2009 WL 7236419 (C.D. Cal. Mar. 5, 2009) ........................25

*Lucius v. Fort Taco, LLC*,
    No. 21-22397, 2022 WL 335491 (S.D. Fla. Jan. 5, 2022) ...................................................18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................41, 42

*Malik v. Continental Airlines, Inc.*,
    305 F. App'x 165 (5th Cir. 2008) .........................................................................11

*Marcus v. CDC*,
    No. 2:22-cv-02383-SSS-AS, ECF No. 177 (C.D. Cal. Feb. 21, 2023) (case
    dismissed) ...............................................................................3, 17, 23

*Martin v. DHL Express (USA), Inc.*,
    580 F. Supp. 3d 66 (D.N.J. 2022) .........................................................................38

*McGarry v. Delta Air Lines, Inc.*,
    No. CV 18-9827-MWF (EX), 2019 WL 2558199 (C.D. Cal. June 18, 2019),
    *aff'd*, 812 F. App'x 625 (9th Cir. 2020) ...........................................................34

*Montalvo v. Spirit Airlines*,
    508 F.3d 464 (9th Cir. 2007) ................................................................................24

*Montgomery v. Delta Air Lines, Inc.*,
    No. 22-10692, 2023 WL 2400743 (5th Cir. March 8, 2023) ...............................3, 4, 17, 22

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ...............................................................................22

*Nat'l Fed'n of the Blind v. United Airlines, Inc.*,
    813 F.3d 718 (9th Cir. 2016) ...................................................23

*In re Nigeria Charter Flights Contract Litig.*,
    520 F. Supp. 2d 447 (E.D.N.Y.2007) ...............................................30, 31

*Norman v. Trans World Airlines, Inc.*,
    No. 98-CV-7419 (BSJ), 2000 WL 1480367 (S.D.N.Y. Oct. 6, 2000)....................40

*O'Carroll v. Am. Airlines, Inc.*,
    863 F.2d 11 (5th Cir. 1989) ...................................................36

*Onoh v. Northwest Airlines, Inc.*,
    613 F.3d 596 (5th Cir. 2010) ...................................................22

*Order, Montgomery v. Delta Air Lines, Inc.*,
    Case No. 3:21-cv-02715-C, ECF No. 34, *aff'd* 2023 WL 2400743 (5th Cir.
    2023) ...................................................29, 35

*Pica v. Delta Air Lines, Inc.*,
    812 F. App'x 591 (9th Cir. 2020) ...................................................37

*Pogadaev v. Aeroflot-Russian Airlines*,
    Case No. 16-cv-04718-RS, 2017 WL 3267525 (N.D. Cal. July 31, 2017) .............32

*Puckett v. Nw. Airlines, Inc.*,
    131 F. Supp. 2d 379 (E.D.N.Y. 2001) ...................................................43

*Rashid v. Murray*,
    No. 23-cv-6063 (CS), 2023 WL 4586138 (S.D.N.Y. July 18, 2023) .....................12

*Rojas v. Delta Airlines, Inc.*,
    425 F. Supp. 3d 524 (D. Md. 2019) ...................................................39

*Rose v. Tyndale*,
    No. 23-1203, 2023 WL 4839371 (3d Cir. July 28, 2023)....................................10

*Ruta v. Delta Airlines, Inc.*,
    322 F. Supp. 2d 391 (S.D.N.Y. 2004)...................................................28

*Sauter v. State of Nevada*,
    142 F.3d 445, 1998 WL 196630 (9th Cir. 1998) ...................................................9

*Segalman v. Southwest Airlines Co.*,
    895 F.3d 1219 (9th Cir. 2018) ...................................................16

*Seklecki v. CDC*,
    635 F. Supp. 3d 15 (D. Mass. Oct. 12, 2022) (case dismissed)................................3, 9, 17, 36

ix

*Selevan v. N.Y. Thruway Auth.*,
584 F.3d 82 (2d Cir. 2009)........................................................................................41

*Serris v. Chastaine*, No. 2:22-cv-0434-JAM-CKD PS, 2022 WL 715115, at *3
(E.D. Cal. Mar. 10, 2022) .........................................................................................7

*Sever v. Alaska Pulp Corp.*,
978 F.2d 1529 (9th Cir. 1992) ..................................................................................7

*Shotz v. American Airlines, Inc.*,
420 F.3d 1332 (11th Cir. 2005) ...............................................................17, 18, 19

*Smith v. Comair, Inc.*,
134 F.3d 254 (4th Cir. 1998) ....................................................................27, 33, 36

*Sommer v. Dixon*,
709 F.2d 173 (2d Cir. 1983).....................................................................................10

*Sosa v. Lantz*,
No. 3:09cv869 (JBA), 2010 WL 122649 (D. Ct. Jan. 5, 2010) ...............................13

*Sousanis v. Northwest Airlines, Inc.*,
No. C-99-2994, 2000 WL 34015861 (N.D. Cal. March 3, 2000)............................25

*Starker v. Spirit Airlines*,
No. 17-CV-6812 (HBP), 2019 WL 4194572 (S.D.N.Y. Sept. 3, 2019) ...................40

*Summers v. Earth Island Institute*,
555 U.S. 448 (2009).................................................................................................42

*Syed v. Frontier Airlines, Inc.*,
522 F. Supp. 3d 503 (E.D. Mo. 2021)......................................................................27

*T.P. v. Walt Disney Parks and Resorts U.S., Inc.*,
No. CV 15-05346-CJC (EX), 2021 WL 3598574 (C.D. Cal. Apr. 20, 2021) ........25

*Terrafranca v. Virgin Atlantic Airways*,
151 F.3d 108 (3d Cir. 1988).....................................................................................33

*Thurston v. Cherry Hills Triplex*,
941 F. Supp. 2d 520 (D.N.J. 2008) ..........................................................................26

*Trans World Airlines, Inc. v. Franklin Mint Corp.*,
466 U.S. 243 (1984).................................................................................................31

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*,
73 F.3d 1423 (7th Cir. 1996) ...................................................................................40

x

*U.S. Dep't of Trans. v. Paralyzed Veterans of Am.*,
  477 U.S. 597 (1986).................................................................................17

*United States v. Probber*,
  170 F.3d 345 (2d Cir. 1999)....................................................................42

*Vail v. Pan Am Corp.*,
  260 N.J. Super. 292 (N.J. App. 1992)......................................................38

*Voigt v. Savell*,
  70 F.3d 1552 (9th Cir. 1995) .....................................................................7

*Wall v. CDC*,
  543 F. Supp. 3d 1290 (M.D. Fla. 2021).............................................12, 39

*Waters v. Port Authority of New York & New Jersey*,
  158 F. Supp. 2d 415 (D.N.J. 2001) ......................................................32, 33

*Webster v. U.S. Airways, Inc.*,
  11 F. App'x 56 (4th Cir. 2001) .................................................................38

*Weiss v. El Al Israel Airlines, Ltd.*,
  471 F. Supp. 2d 356 (S.D.N.Y. 2006)......................................................28

*Wherry v. BBWS*,
  No. 7:09–CV–25–O, 2009 WL 513221 (N.D. Tex. Feb. 27, 2009) ........11

*Wilhelm v. Cont'l Title Co.*,
  720 F.2d 1173 (10th Cir. 1983) ..................................................................7

*Williams v. Midwest Airlines, Inc.*,
  321 F. Supp. 2d 993 (E.D. Wis.2004).......................................................41

*Wilson v. Frito-Lay N. Am., Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ....................................................25

*Woods v. Empire Health Choice, Inc.*,
  574 F.3d 92 (2d Cir. 2009).........................................................................41

*Yong Wen Mo v. Gee Ming Chan*,
  17 A.D. 3d 356 (2nd Dep't 2005).............................................................27

**Statutes**

42 U.S.C. § 1985(3) ..................................................2, 6, 7, 8, 9, 10, 12, 13

42 U.S.C. § 1986................................................................................2, 12, 13

42 U.S.C. § 1986......................................................................................2, 14

49 U.S.C. § 41713(b)(1) ........................................................................................21

49 U.S.C. § 41705 ...........................................................2, 8, 15, 16, 35, 45, 46

49 U.S.C. § 41713 .....................3, 21, 22, 23, 26, 27, 28, 29, 33, 34, 36, 37, 38, 39, 40

42 U.S.C. § 12181(10) ..........................................................................................43

California Unruh Civil Rights Act Section 51 ...................................2, 21, 23, 24, 25, 26

CPLR § 215(3) ....................................................................................................27

49 U.S.C. § 40101 ................................................................................................24

N.J.S.A. 10:5-5 ..................................................................................................2, 25

N.J.S.A. 10:5-12(f)(1) ..........................................................................................25

New York Civil Rights Law § 8-107 .................................................................2, 26

29 U.S.C. § 794(a) ..........................................................................2, 17, 18, 21, 46

**Other Authorities**

974 UNTS 177 ..................................................................................................30, 31

S. Rep. No. 100-64 (1987) ................................................................................18, 19

United States Constitution Article III .........................................................6, 42, 43, 44

**Regulation**

14 C.F.R. Part 382 ...................................................2, 8, 9, 15, 16, 17, 18, 19, 23, 24, 39

**Statutes**

Fed. R. Civ. P. 9(b) .............................................................................................39

Fed. R. Civ. P. 12(b)(6) ...................................................................................2, 5, 35

Fed R. Civ P. 12(b)(1) .....................................................................................5, 6, 41

# INTRODUCTION

Defendants American Airlines, Inc., Delta Air Lines, Inc., JetBlue Airways Corporation, Southwest Airlines Co., and United Airlines, Inc. (the "Five Airline Defendants"), and Robert Land, Roy Goldberg, Debbie Castleton and Nathalie Simon (collectively, the "Moving Defendants"), respectfully submit that each of the 31 separate counts against them in the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6)., for failure to state a claim for relief. Specifically: (1) Plaintiff's claims for violation of 42 U.S.C. § § 1985(3) and 1986 fail to state a claim for relief; (2) Plaintiff's claims under 42 U.S.C. § 1986 are barred by the one-year statute of limitations; (3) Plaintiff's claims under § § 1985(3) and 1986 against individual attorney defendants are meritless; (4) Plaintiff has no private right of action under the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705, or its implementing regulations at 14 C.F.R. Part 382; (5) Plaintiff has no claim under the Rehabilitation Act, 29 U.S.C. § 794(a); (6) Plaintiff has no claim for violation of the California Unruh Civil Rights Act; (7) Plaintiff has no claim for violation of the New Jersey Civil Rights Law Against Discrimination; (8) Plaintiff has no claim for violation of the New York Civil Rights Law; (10) Counts 23, 24 and 25 for violation of the New York Civil Rights Law § 8-107 are preempted by federal law; (9) Plaintiff has no claim for violation of Texas Civil Rights Law; (10) Plaintiff has no claim for intentional or unintentional tort under the state laws of Texas, New York, New Jersey, California or other states; (11) Plaintiff has no claim for negligence under various state laws; (12) Plaintiff has no claim for infliction of emotional distress under state laws; (13) Plaintiff's claims for breach of contract cannot be sustained; (14) Plaintiff has no claim for promissory estoppel; (15) Plaintiff has no claim for injurious falsehoods; (16) Plaintiff has no claim for fraudulent misrepresentation; (17) there is no merit to Plaintiff's claim for infringement of a constitutional right to travel; (18) Plaintiff's request for nominal damages is

CORE/3503476.0004/183648181.3

baseless; (19) Plaintiff's request for punitive damages is preempted by the Airline Deregulation Act, 49 U.S.C. § 41713; (20) Plaintiff lacks standing to pursue his claims against the Moving Defendants; and (21) Plaintiff's challenge to the Five Airline Defendants' implementation of the Federal Transportation Mask Mandate ("FTMM") is moot because of the expiration of the FTMM, and the lack of any masking policies being imposed by the Five Airline Defendants since April 2022.[1]

## STATEMENT OF FACTS

On May 1, 2023, *pro se* Plaintiff filed a 212-page Complaint in the U.S. District Court for the Northern District of Texas against 46 air carriers, medical consultants, attorneys, airline employees and various federal agencies and officials, because of his opposition to the Federal Transportation Mask Mandate ("FTMM") and the airlines' adherence to the FTMM and their masking policies during the COVID-19 pandemic. ECF No. 3. By order dated May 8, 2023, the N.D. Tex. court *sua sponte* transferred the case to this Court. ECF No. 10.

Plaintiff is part of an online coalition of persons – Americans Against Mask Mandates – who are opposed to having to wear a mask on airplanes during a pandemic. Several of this coalition's *pro se* cases have been dismissed by various courts throughout the country. *See, e.g., Andreadakis v. CDC*, No. 22-cv-52 (DJN), 2022 WL 2674194, at *15 (E.D. Va. July 11, 2022) (case dismissed) (appeal pending); *Marcus v. CDC*, No. 2:22-cv-02383-SSS-AS, ECF No. 177 (C.D. Cal. Feb. 21, 2023) (case dismissed) (leave to file amended complaint granted); *Seklecki v. CDC*, 635 F. Supp. 3d 15, 28 (D. Mass. Oct. 12, 2022) (case dismissed); *see also Montgomery v.*

---

[1] Plaintiff and the Moving Defendants have agreed to the following page limits: (1) 45 pages for the opening brief and Plaintiff's response; and (2) 25 pages for the Moving Defendants' reply brief.

CORE/3503476.0004/183648181.3

*Delta Air Lines, Inc.* (a non-pro se case), No. 22-10692, 2023 WL 2400743, at *5 (5th Cir. March 8, 2023) (affirming district court's grant of airline defendant's motion to dismiss all claims).

Plaintiff has filed lawsuits against corporate and governmental defendants throughout the country, including several filed in this court:

| | | |
|---|---|---|
| 1:21-cv-08071-PAE-JLC | Abadi v. City of New York | filed 09/28/21  closed 07/18/22 |
| 1:21-cv-10825-PGG-SN | Abadi v. British Airways PLC et al | filed 12/16/21  closed 05/02/23 |
| 1:21-cv-11073-RA-GWG | Abadi v. NYU Langone Health System et al | filed 12/27/21 |
| 1:22-cv-01766-KPF | Abadi v. Walt Disney Parks and Resorts U.S., Inc.et al | filed 03/02/22  closed 07/27/22 |
| 1:23-cv-03367-PGG-VF | Abadi v. Apple, Inc. | filed 04/21/23 |
| 1:23-cv-03618-JPC-VF | Abadi v. Lyft, Inc. | filed 04/28/23  closed 07/11/23 |
| 1:23-cv-04033-LJL | Abadi v. American Airlines Inc., et al | filed 05/15/23 |
| 1:23-cv-07413-JGLC | Abadi v. The United States of America et al | filed 08/21/23 |
| 1:23-cv-07645-LTS | Abadi v. Greyhound Lines, Inc. | filed 08/26/23 |
| 1:23-cv-08440-LTS | Abadi v. Biden et al | filed 09/25/23 |

At least one court rejected Plaintiff's *in forma pauperis* allegations. *See Abadi v. Caesars Entm't, Inc.*, 2022 WL 4117087, at *1 (D. Nev. Aug. 1, 2022) ("Considering all of Plaintiff's

CORE/3503476.0004/183648181.3

submissions to the Court, the Court finds that Plaintiff's allegations of poverty are untrue. Plaintiff has expended significant money gambling in the last calendar year, above and beyond the comped money that Plaintiff submits the casinos provide to him. Were Plaintiff's allegations of poverty true, he would not have the money to be able to engage in these activities, which are not the necessities of life. This suggests to the Court that Plaintiff is concealing income to gain access to the Court without having to prepay filing fees, which is acting in bad faith."); *see also* Memorandum of Law in Support of Defendant Apple Inc.'s Motion to Dismiss, *Abadi v. Apple, Inc.*, Case No. 1:23-cv-03367-PGG-VF, ECF No. 13, at 8 (Aug. 21, 2023) ("because Plaintiff's allegations of poverty are untrue, and Plaintiff misrepresented his financial history and assets in bad faith to obtain IFP status, dismissal of his Complaint with prejudice is warranted").

## APPLICABLE LEGAL STANDARD

The Five Airline Defendants request dismissal of the Complaint and action as against them pursuant Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, the facts must be sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (cleaned up). However, the court shall not "accept as true a legal conclusion couched as a factual

allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### Rule 12(b)(1)

Dismissal under Rule 12(b)(1), Fed. R. Civ. P., is proper where, as here, there is a lack of subject matter jurisdiction due to the mootness of the legal claims raised in the Complaint, or the lack of standing on the part of the plaintiff. "Under Article III of the Constitution, federal courts are empowered to adjudicate only actual, ongoing cases or controversies." *Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 81 (2d Cir. 1991). A core element of Article III's case-or-controversy requirement is that the case remains "alive at all stages of judicial proceedings" because "[i]f events subsequent to the filing of a lawsuit resolve the controversy, the case should be dismissed as moot." *Id.* "A case is moot if [the] decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 12 (D.C. Cir. 2019) (internal quotation marks and citations omitted).

## ARGUMENT

### I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF 42 U.S.C. § 1985(3).

Count 8 of the Complaint fails to allege the necessary elements for a claim of conspiracy in violation of 42 U.S.C. § 1985(3). Plaintiff asserts that "People with disabilities who, because of their disabilities cannot wear a mask, is a new class subject to protection under Section 1985(3)," and that "Airline Defendants as an industry conspired with each other, with federal agencies and the Medical Defendants involved, and with the individual employees therein to discriminate against them due to their disabilities." ECF No. 3, ¶¶ 945, 972. The Complaint fails to offer any factual allegations to support these claims.

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege facts which support (1) the existence of a conspiracy, (2) to deprive the plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Additionally, there must be some racial or other class-based, invidiously discriminatory animus behind the conspirators' action. *Id.* To make the requisite showing of class-based animus, "the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights." *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1985); *see Voigt v. Savell,* 70 F.3d 1552, 1564 (9th Cir. 1995). That is, a plaintiff must allege that he is a member of a class of persons that the courts have designated as a suspect or quasi-suspect class "requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985)).

A.    **Section 1985(3) Does Not Apply to Plaintiff's Complaint of Having to Wear a Mask While Flying during the Pandemic.**

"The original purpose of § 1985(3), which was passed as the Ku Klux Klan Act of 1871, was to enforce the rights of African Americans and their supporters." *Holgate v. Baldwin, infra*, 425 F.3d 671, 676 (9th Cir. 2005). It has no application to claims for discrimination on the basis of handicap or mental or physical disability. Stated simply, "[d]isabled individuals do not constitute a 'class' within the meaning of section 1985(3)." *Serris v. Chastaine*, No. 2:22-cv-0434-JAM-CKD PS, 2022 WL 715115, at *3 (E.D. Cal. Mar. 10, 2022) (citing *D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1486 (7th Cir. 1985) ("The legislative history of Section 1985(3) does not suggest a concern for the handicapped"); *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176-77

(10th Cir. 1983) ("We must conclude that a class of 'handicapped persons' . . . was not included as a class in what is now § 1985(3)."); *see also Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000) (plaintiff had no actionable section 1985 claim because statute does not cover claims based on disability-based discrimination or animus); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) (the mentally disabled are not a suspect or quasi-suspect class for purposes of equal protection claims); *Chasse v. Humphreys*, No. CV–07–189–HU, 2008 WL 4846208, at *4 (D. Or. Nov. 3, 2008) ("nothing in the statute or the findings and purposes suggests that the disabled as a group generally, were to be viewed as a suspect or quasi-suspect class for equal protection or section 1985(3) purposes").

In *Holgate, supra*, 425 F.3d at 676, the Ninth Circuit held that claims made by home loan borrowers under 42 U.S.C. § 1985(3) were "frivolous" because of the plaintiffs' failure to "allege in their complaint that they belong to a racial group or an otherwise protected class," and to "allege that the defendants intentionally discriminated against them on such grounds." Similarly here, Plaintiff has failed to allege that he belongs "to a racial group or an otherwise protected class" or to provide any evidence that the Moving Defendants intentionally discriminated against him because of his membership in "a racial group or an otherwise protected class."

## B.    Plaintiff Cannot Use Section 1985(3) to Circumvent the ACAA.

Section 1985(3) also does not apply to the conduct or omissions of airlines or their employees because disability discrimination claims by disabled airline passengers are exclusively governed by the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705, and the DOT implementing regulations, 14 Id. Part 382. The procedure set forth in the ACAA and its implementing regulations provide the exclusive remedy to passengers seeking to pursue a disability discrimination claim against the airlines. "Allowing [plaintiff] to pursue his claim through the mechanism of § 1985(3) would impermissibly intrude on the statutory scheme of both"

the ACAA and § 1985(3). *D'Amato, supra*, 760 F.2d at 1487; *Sauter v. State of Nevada*, 142 F.3d 445, 1998 WL 196630, at *1 (9th Cir. 1998) ("Sauter's allegations of a conspiracy to violate his ADA and ADEA rights implicate an animus toward a congressionally protected class. These claims are not cognizable under § 1985, however, because that section cannot serve as a vehicle to enforce statutory rights when the statute in question has its own remedial structure") (citing *Great Am. Fed. Sav. & Loan Assn. v. Novotny*, 442 U.S. 366 (1979)); *see also Compass Airlines, LLC v. Montana Dep't of Lab. and Indus.*, No. CV 12-105-H-CCL, 2013 WL 4401045, at *14 (D. Mont. Aug. 12, 2013) ("The air carrier is now answerable to the DOT for ACAA regulation violations, and it appears that Congress intended that this be the exclusive remedy in cases not involving breach of contract or bodily injury or death").

"In an analogous context, the Supreme Court has held that § 1985(3) may not be involved to redress violations of Title VII' because if a plaintiff were allowed to assert a Title VII violation through section 1985(3), then he could avoid the 'detailed and specific provisions of the law' and 'bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII.'" *Seklecki v. CDC*, 635 F. Supp. 3d at 28 (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 375-78 (1979)). "Thus, when a statute creates a right and provides a remedial structure, a plaintiff cannot use section 1985(3) to vindicate the same right." *Id*. "Because a statutory scheme and administrative remedies are in place for the ACAA, Plaintiff cannot pursue claims for disability discrimination under section 1985(3). Therefore, Plaintiff's conspiracy claims must be dismissed." *Id. *3*.

### C.     The Complaint Fails to Allege the Existence of a Conspiracy.

In addition to the fact that the § 1985(3) claim fails to identify a classification subject to the statute and cannot be used to circumvent the ACAA, Count 8 is also without merit because of the failure to allege facts to support the conclusory allegation of the existence of a conspiracy. "A

complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss." *Friends of Falun Gong v. Pacific Cultural Enterprise, Inc.*, 88 F. Supp. 2d 273, 279 (E.D.N.Y. 2003); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (holding that conclusory, vague, or general allegations of a conspiracy cannot survive a motion to dismiss); *Rose v. Tyndale*, No. 23-1203, 2023 WL 4839371, at *1 (3d Cir. July 28, 2023) (plaintiff's "complaint is devoid of any allegation that [the defendant] conspired with anyone to discriminate against" plaintiff, and "[s]uch a failure to assert facts from which a conspiratorial agreement can be inferred is fatal to his § 1985 claim") (internal quotation marks omitted).

In *Andreadakis v. CDC*, No. 3:22cv52 (DJN), 2022 WL 2674194, at *11 (E.D. Va. July 11, 2022) (appeal pending), the court dismissed the Section 1985(3) claim filed by an anti-mask plaintiff, stating:

> Claims under § 1985(3) rarely prevail. *Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995) ("Because of the high threshold that a Plaintiff must meet to establish a prima facie case under section 1985, courts often grant motions of dismissal.") (citing *Simmons*, 47 F.3d at 1377 ("This Court, under that standard, has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy, such that the claim can withstand a summary judgment motion.")). Plaintiffs must allege the purported conspiracy with more than mere conclusions. *Simmons*, 47 F.3d at 1377 ("Indeed, we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.").
>
> Here, Plaintiff has not alleged a conspiracy with the required concrete facts. Instead, he merely makes conclusory allegations regarding a conspiracy. Specifically, he alleges that the "Airline Defendants conspired to deprive disabled Americans, a protected class, of our civil rights by adopting policies in Summer 2020 that banned any person medically unable to wear a face mask from using the nation's air transportation system." . . . He does not provide any details on how they conspired. Further, he alleges that he "expect[s] to prove through discovery that the Airline Defendants conspired — with each other, with other air carriers, within their own companies, and with STAT-MD — to ban disabled flyers because of a discriminatory motive." . . . In doing so, he merely parrots the

> requirements of a prima facie claim under § 1985(3). He further alleges that the Airline Defendants "are motivated by a class-based, invidiously discriminatory animus resulting in an unfounded, ridiculous fear that healthy, uninfected disabled travelers who can't wear a face mask are somehow a grave danger." . . . Again, he offers no concrete facts to support these allegations. These allegations simply will not suffice to state a claim under § 1985(3). Accordingly, the Court will dismiss Counts 19 and 20.

2022 WL 2674194, at *9.

As in *Andreadakis*, the Complaint here presents zero factual allegations to support the assertion that the Five Airline Defendants acted in concert, rather than individually, in their treatment of the FTMM and exemption requests. In any event, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Adamore v. Southwest Airlines Corp.*, 2011 WL 6301398, at *5 (S.D. Tex. Dec. 15, 2011) (citing *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993)). A plaintiff's "subjective belief that Defendants discriminated against her on the basis of race, sex, disability, or age, without specific facts pointing to impermissible bias as the motivation, is insufficient to maintain a claim of discrimination." *Adamore, supra; see also Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir.1983) ("a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief"); *Wherry v. BBWS*, No. 7:09–CV–25–O, 2009 WL 513221, at *2 (N.D. Tex. Feb. 27, 2009) (holding that plaintiff's "mere suspicion or belief" of defendant's discriminatory intent is not enough to prevent a motion to dismiss); *Drake v. St. Paul Travelers Ins.*, No. 6:08–CV–301, 2009 WL 815999 at * 7–8 (E.D. Tex. Mar.26, 2009) (holding that plaintiff's conclusory allegations were insufficient to state a claim because he offered no reason to suspect that the defendant's actions had anything to do with the plaintiff's protected class); *Malik v. Continental Airlines, Inc.*, 305 F. App'x 165, 170 (5th Cir. 2008) (unsupported speculation that the airline's treatment of plaintiff was evidence of intentional discrimination, based only upon the

11

fact that the plaintiff was a minority, is insufficient to support a plaintiff's discrimination claims); *Rashid v. Murray*, No. 23-cv-6063 (CS), 2023 WL 4586138, at *3 (S.D.N.Y. July 18, 2023) (plaintiff failed to "allege facts suggesting that two or more persons acted together to deprive him of his rights, as required for a conspiracy claim under Section 1985(3). Plaintiff's assertions only concern actions taken by" one person, "which do not amount to a conspiracy claim. Plaintiff's conspiracy claim is vague and conclusory and must be dismissed for failure to state a claim on which relief may be granted").

### D.  There is No Constitutional Right to Travel by Aircraft.

Finally, although the Complaint alleges that the alleged "conspiracy involves the constitutional right to travel" (ECF No. 3, ¶ 969), courts have ruled that there is no constitutional right to travel domestically onboard aircraft in the United States. *See Gilmore v. Gonzalez*, 435 F.3d 1125, 1136 (9th Cir. 2006) ("the Constitution does not guarantee the right to travel by any particular form of transportation:); *id*. at 1137 ("Gilmore does not possess a fundamental right to travel by airplane"); *Wall v. CDC*, 543 F. Supp. 3d 1290, 1292-93 (M.D. Fla. 2021) (mask mandate did not infringe passenger's constitutional right to travel); *id*. at 1293 ("flying may be Plaintiff's preferred mode of transportation, but it is by no means the only reasonable mode of transportation available to him").

## II.  THE CLAIM FOR VIOLATION OF 42 U.S.C. § 1986 SHOULD BE DISMISSED.

Because the Complaint fails to state a claim of a violation of 42 U.S.C. § 1985(3), there is also no basis for the allegation in Count 9 that the Five Airline Defendants or their employees or counsel are liable for violation of 42 U.S.C. § 1986. Since § 1985(3) forms a predicate for violation of § 1986, the absence of a cause of action under § 1985(3) necessitates the dismissal of the claim under § 1986. *See, e.g.., Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (a prerequisite for a claim under Section 1986 for neglect to prevent a civil rights conspiracy is the action of an

CORE/3503476.0004/183648181.3

actionable conspiracy under Section 1985); *Sosa v. Lantz*, No. 3:09cv869 (JBA), 2010 WL 122649, at *1 (D. Ct. Jan. 5, 2010) ("a viable claim under § 1985 is a prerequisite for an actionable claim under § 1986, and because Plaintiff's claim under § 1985 has been dismissed, so too must his claim under § 1986 be dismissed"). Indeed, the Third Circuit recently dismissed Plaintiff Abadi's Section 1986 claim, stating that "because a § 1986 claim cannot be maintained unless a plaintiff has established a cause of action under § 1985, the District Court correctly dismissed the § 1986 claim as well." *Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *1 (3d Cir. June 16, 2023).

In addition, Plaintiff's Section 1986 claims are time-barred because they were filed more than one year after the challenged conduct. Claims under 42 U.S.C. § 1986 have a one-year statute of limitations, and "the claim accrues when the plaintiff knows or has reason to know of the harm or injury that is the basis of his action." *Farmer v. Cnty. of Westchester*, No. 18 CIV. 2691 (NSR), 2022 WL 3902729, at *4 (S.D.N.Y. Aug. 30, 2022); 42 U.S.C. § 1986 ("But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."). Because Plaintiff did not file the instant Complaint until May 2023 – more than one year after the FTMM was lifted and more than one year after any alleged wrongful activity – Plaintiff's claims are time-barred and must be dismissed as a matter of law. *See Hernandez v. City of New York*, No. 21 CIV. 2397 (LGS), 2022 WL 2047577, at *2 (S.D.N.Y. June 7, 2022) ("[A] court may dismiss a claim on statute-of-limitations grounds at the pleading stage if the complaint clearly shows the claim is out of time.") (internal quotations omitted); *Longobardi v. City of N.Y.*, 21 Civ. 2705 (GBD), 2022 WL 1808902, at *6 (S.D.N.Y June 2, 2022) (granting motion to dismiss Plaintiff's 42 U.S.C. § 1986 claim as time-barred under the one-year statute of limitations).

13

III.    **PLAINTIFF'S CLAIMS UNDER SECTIONS 1985(3) AND 1986 AGAINST THE INDIVIDUAL ATTORNEY DEFENDANTS ARE MERITLESS.**

In addition to the failure to state a claim under 42 U.S.C. § § 1985(3) and 1986, there is no merit to Plaintiff's allegations against airline attorneys (Robert Land and Roy Goldberg) for alleged violation of those statutes. Sections 1985(3) and 1986 may not be used to sue an airline attorney for his or her work in providing legal services to the airline. *See Farese v. Scherer*, 342 F.3d 1223, 1230-32 (11th Cir. 2003) ("as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy"); *Heffernan v. Hunter,* 189 F.3d 405, 408 (3d Cir. 1999) (when an attorney's conduct falls within the scope of his representation of his client, a § 1985 conspiracy cannot exist, which reflects the fact that "[t]he right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns"). In *Farese*, the court stated:

> Noting that disciplinary structures are currently in place to address any wrongful conduct by an attorney, the court stated that an attorney's conduct "within the scope of representation is regulated and enforced by disciplinary bodies established by the courts." *Id.* In fact, "[a]buses in litigation are punishable by sanctions administered by the courts in which the litigation occurs." *Id.; see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 46–47 . . . (1991) (finding that federal courts enjoy inherent powers to sanction attorney conduct and that "the inherent power extends to a full range of litigation abuses"). Moreover, the court noted that an offended third party may also proceed against the offending attorney under state law or report the conduct to state disciplinary bodies. *See Heffernan,* 189 F.3d at 413. The court concluded that this regulatory framework "provides third parties with protection that is lacking in the corporate field." *Id.*
>
> The *Heffernan* court further stated that as long as an attorney's conduct falls within the scope of his representation, the attorney is immune from allegations of § 1985 conspiratorial conduct. *See id.* The court noted, however, that it is "axiomatic that if the challenged conduct occurs outside the scope of representation, no reason for immunity exists and the attorney and the client, as individuals, could form a conspiracy." *Id.* The court cautioned that the scope of the attorney-client relationship is broad and that even if the challenged activity violates the canons of ethics, "so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge under section 1985."[9] *Id.* Therefore, the Third Circuit explained that in order to plead a § 1985 conspiracy involving a client and his attorneys, one must prove that the attorneys were operating outside the scope of

their representation. *See id.; see also Travis v. Gary Cmty. Mental Health Ctr., Inc.,* 921 F.2d 108, 111 (7th Cir.1990) (holding that no conspiracy existed between corporate executives and outside counsel in violation of § 1985(2) and stating that "[t]reating involvement of a lawyer as the key unlocking § 1985 would discourage corporations from obtaining legal advice before acting, hardly a sound step to take"); *Doherty v. Am. Motors Corp.,* 728 F.2d 334, 339–40 (6th Cir.1984) (concluding that the plaintiff did not present any evidence proving the existence of a conspiracy between the defendant and the defendant's attorneys because the attorneys "were motivated not by personal concerns but by concerns for their clients").

We agree with the well-reasoned opinion of the Third Circuit and hold that as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy. Although Farese alleged that Dude and his attorneys engaged in conspiratorial conduct in violation of § 1985, the attorneys did not engage in any conduct outside the scope of their representation. Furthermore, the actions and advocacy of the attorneys appear to have been for the sole benefit of their client rather than for their own personal benefit.

Because we cannot say that the actions of Dude's attorneys were beyond the scope of the attorney-client relationship so as to make them susceptible to characterization as a conspiracy under § 1985, we affirm the district court's dismissal of Farese's § 1985 claims against them. Furthermore, because § 1985 requires conduct by more than one actor, the allegations of misconduct by Dude alone may not support Farese's § 1985 claims. Therefore, we affirm the dismissal of Farese's § 1985 claims against Dude. (342 F.3d at 1231-32).

In this case, the Complaint acknowledges that a person "[n]ormally . . . cannot sue an attorney for representing a client." ECF No. 3-1, at 77 (¶ 699). However, Plaintiff claims that, although "if an attorney is representing a thief, the attorney should not and cannot be sued," "if the attorney was the one fencing the stolen jewelry, that's a whole nother [sic] story." *Id.* at 77-78 (¶ 700). However, the allegation that airline counsel provided legal representation of an airline is hardly the same thing as alleging that the lawyer engaged in the crime of "fencing" stolen jewelry, or any similar crime. The attempt to include lawyers in this litigation merely for having represented the airlines in connection with the Air Carrier Access Act and DOT's implementing regulations (14 C.F.R. Part 382) should be rejected.

15

## IV.    PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION TO SUE THE AIRLINE DEFENDANTS UNDER THE AIR CARRIER ACCESS ACT.

Counts 10, 11, 12, 13, 14, 15, 16, 17 and 18 purport to allege violations of the ACAA.

These claims should be dismissed because private plaintiffs such as Plaintiff lack a private right

of action to allege that an airline violated the ACAA. The ACAA provides that an air carrier:

> [m]ay not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities; (2) the individual has a record of such an impairment; (3) the individual is regarded as having such an impairment. (49 U.S.C. § 41705(a))

However, the ACAA does not expressly bestow the right to sue to enforce this right.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v.

Sandoval*, 532 U.S. 275, 286 (2001). When Congress does not create an explicit private right of

action, courts may interpret the structure and language of the statute to determine if Congress

nevertheless intended to imply a right of action. *Id*. Several circuit courts, including the Second

Circuit, have ruled that the ACAA does not create a private right of action. *See Lopez v. JetBlue

Airways*, 662 F.3d 593, 597 (2d Cir. 2011) (concluding that "the text and structure of the ACAA

manifests no congressional intent to create a private right of action in a federal district court");

*Segalman v. Southwest Airlines Co.*, 895 F.3d 1219, 1229 (9th Cir. 2018) ("In sum, the ACAA's

legislative history is insufficient to overcome the strong suggestion that the statute's remedial

scheme forecloses an implied private cause of action."); *Boswell v. Skywest Airlines, Inc.*, 61 F.3d

1263, 1270 (10th Cir. 2004) ("Congress' creation of a specific means of enforcing the statute

indicates that it did not intend to allow an additional remedy — a private right of action — that it

did not expressly mention at all."); *Love v. Delta Air Lines*, 310 F.3d 1347, 1354 (11th Cir. 2022)

("taken together, the text of the ACAA . . . and the surrounding statutory and regulatory structure

create an elaborate and comprehensive enforcement scheme that belies any congressional intent to create a private remedy").

In *Andreadakis, supra*, 2022 WL 2674194, at *10, the court stated that it found "the reasoning of these circuit courts persuasive," and that the "ACAA does not provide a private right of action for [the anti-mask] Plaintiff to sue the Airline Defendants in this Court." Indeed, no other court to have addressed the issue has allowed the anti-mask plaintiffs to pursue their unfounded claims. *See Marcus v. CDC*, No. 2:22-cv-02383-SSS-AS, ECF No. 177 (C.D. Cal. Feb. 21, 2023) (granting airline defendants' motion to dismiss all claims); *Montgomery v. Delta Air Lines, Inc.*, No. 22-10692, 2023 WL 2400743, at *5 (5th Cir. March 8, 2023) (affirming district court's grant of airline defendant's motion to dismiss all claims); *Seklecki v. CDC*, 635 F. Supp. 3d at 28 (granting airline defendants' motion to dismiss all claims).

## V.    PLAINTIFF DOES NOT HAVE A CLAIM AGAINST THE AIRLINE DEFENDANTS FOR VIOLATION OF THE REHABILITATION ACT.

Count 9 purports to allege that the Five Airline Defendants are liable under the federal Rehabilitation Act, 29 U.S.C. § 794(a) ("RA"). The RA prohibits discrimination against disabled individuals with respect to any program or activity that receives federal financial assistance. *See* 29 U.S.C. § 794(a). Courts have defined the term "federal financial assistance" with respect to the RA "to mean the federal government's provision of a subsidy to an entity." *Shotz v. American Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005). The Supreme Court has held that the RA generally does not apply to commercial airlines, because airlines did not receive federal financial assistance within the meaning of the statute. *See U.S. Dep't of Trans. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 599 (1986).

CORE/3503476.0004/183648181.3

**A.    The CARES Act Funding Did Not Constitute Federal Financial Assistance.**

Because federal "CARES Act" funds were provided to airlines during COVID-19 for the purpose of paying wages, salaries and benefits to airline employees, as opposed to the air carriers' discretionary use, receipt of the funds did not constitute federal financial assistance within the meaning of the RA. *See* S. Rep. No. 100-64, at 17–18 (1987) ("Federal financial assistance extended to a corporation or other entity 'as a whole' refers to situations where the corporation receives general assistance that is not designated for a particular purpose."). Accordingly, Section 504 of the Rehabilitation Act is inapplicable to the Five Airline Defendants. *See Lucius v. Fort Taco, LLC*, No. 21-22397, 2022 WL 335491, at *5-6 (S.D. Fla. Jan. 5, 2022) (Rehabilitation Act inapplicable because PPP loans defendant received were not federal financial assistance within meaning of the Rehabilitation Act); *Collins v. Giving Back Fund*, No. 18-cv-8812 (CM), 2019 WL 3564578, at *11 (S.D.N.Y. Aug. 6, 2019) ("[I]t has been repeatedly held that federal funding to a private entity not primarily engaged in education, health care, housing or parks and recreation, when that funding is earmarked for a particular project or site within the entity's operation, is not 'as a whole' federal funding for purposes of the Rehabilitation Act").

Notably, one court already has ruled that Plaintiff Abadi's claims relating to masking requirements are not subject to the Rehabilitation Act. *See Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *2 (3d Cir. June 16, 2023) (upholding district court ruling that Plaintiff's challenge to the Target Corporation masking policy was not subject to the Rehabilitation Act despite Plaintiff's contention that the Target in-store pharmacies received some Medicare and Medicaid funding).

**B.    Plaintiff Cannot Use the RA to Circumvent the ACAA.**

Count 9 also should be dismissed because Plaintiff may not use the RA to circumvent the absence of a private right of action under the ACAA. *See Shotz v. Am. Airlines, Inc.*, 420 F.3d

18

1332, 1337 (11th Cir. 2005) (RA does not apply to airlines because of their receipt of governmental

assistance following the September 11 attacks). In *Shotz*, the court stated:

> To accept plaintiffs' contention here, one would have to believe that
> Congress intended, in the wake of the September 11 terrorist acts, to
> undermine the ACAA by providing a separate and distinct method
> for addressing an airline carrier's discrimination on the basis of
> disability, one that allows for an individual to bring a private lawsuit
> in a district court—something not available under the ACAA. 49
> U.S.C. § 41705 et seq.; see also Love, 310 F.3d at 1359–60 (11th
> Cir.2002) (holding that there is no implied private right of action to
> sue under the ACAA in federal district court). We decline to accept
> plaintiffs' arguments. Id.

As with the September 11 relief, Congress could not have intended for private parties to avoid all

of the DOT regulations under the ACAA in 14 C.F.R. Part 382 merely because an air carrier

received emergency federal governmental assistance under the CARES Act in connection with the

COVID-19 pandemic.

The legislative history of the amendment to define "program or activity" under the RA also

demonstrates the intended limited scope of Section 504's coverage as it relates to corporations or

private entities, such as airlines. The U.S. Senate Report provides the following explanation of

"federal financial assistance" within the meaning of Section 504:

> **Federal financial assistance extended to a corporation or other
> entity "as a whole" refers to situations where the corporation
> receives general assistance that is not designated for a particular
> purpose.** Federal financial assistance to the Chrysler Company for
> the purpose of preventing the company from going into bankruptcy
> would be an example of assistance to a corporation "as a whole."
> Federal aid which is limited in purpose, e.g., Job Training
> Partnership Act (JTPA) funds, is not considered aid to the
> corporation as a whole, even if it is used at several facilities and the
> corporation has the discretion to determine which of its facilities
> participate in the program.

S. Rep. No. 100-64, at 17–18 (1987) (emphasis added); *see also Collins, supra*, 2019 WL 3564578,

at *11 ("Though Congress chose to broaden the definition of 'program or activity' as it relates to

'all of the operations' of certain public entities, it did not do the same for private ones") (citation and internal quotation marks omitted).

In dismissing the claim of a violation of the RA filed by an anti-mask plaintiff against airlines, the *Andreadakis* court stated:

> Plaintiff alleges that the Rehabilitation Act applies to Defendant Airlines, because they "have accepted financial assistance during the COVID-19 pandemic, subjecting them to the Rehabilitation Act." (Compl. ¶ 689.) Defendants contend that they only received government funds pursuant to the Payroll Support Program established under the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"). (Airline Defs.' Mem. at 13.) They could use this money "exclusively for the continuation of Wages, Salaries, and Benefits" to airline employees. (Airline Defs.' Mem. at 13.) Because the government restricted the way in which they could use the funds, rather than giving them discretion, the funds do not constitute federal financial assistance within the meaning of the Rehabilitation Act. (Airline Defs.' Mem. at 13.)
>
> In Shotz, the Eleventh Circuit found that the Rehabilitation Act did not apply to airlines even though the government had provided them funds via the Stabilization Act in response to the September 11 attacks. 420 F.3d at 1337. The Eleventh Circuit determined that the Stabilization Act responded to the economic crises that the airline industry faced as a result of the terrorist attacks, thus compensating airlines for their losses rather than generally subsidizing them. Id. at 1336. The court found that Congress could not have intended to undermine the ACAA and the accompanying regulatory scheme when it responded to the economic crises. Id. at 1337.
>
> **The Court finds that this reasoning applies here. Plaintiff has not demonstrated that Congress intended the CARES Act to undermine the ACAA. Nor has he rebutted the argument that the CARES Act responded to the economic crises created by COVID-19, compensating the airlines for their losses rather than providing a general subsidy**. Thus, on the record before it, the Court does not find that the CARES Act provided an exception to the Supreme Court's general rule that the Rehabilitation Act does not apply to the airlines.

*Andreadakis*, supra, 2022 WL 2674194, at *9-10 (emphasis added).

Despite the above, Plaintiff insists that the Airline Defendants are subject to the Rehabilitation Act because they signed a paper that said they would be subject to "applicable laws," including the RA. ECF No. 3-2, at 18 ¶ 1130. However, for the reasons set forth above, the RA is not applicable to the airlines because of their receipt of the CARES Act money.

Even if the RA applied because of the airlines' receipt of CARES Act money (and it does not), that money is no longer being paid to airlines. *See, e.g., Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408, 1415 (9th Cir. 1984) (airline not liable for discrimination under the Rehabilitation Act since the record indicated that the airline was not receiving a federal subsidy for airmail carriage at the time the alleged discrimination occurred). Such funding cannot be tied to Plaintiffs' planned flights in 2022 and the injunctive relief they seek on a prospective basis. *See Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 988 (10th Cir. 2021) (Rehabilitation Act did not apply to airline despite monetary benefit from federal funding for airport).

For the reasons cited above, Count 9 should be dismissed.

## VI.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE FIVE AIRLINE DEFENDANTS FOR A VIOLATION OF THE CALIFORNIA UNRUH CIVIL RIGHTS ACT.

Count 20 of the Complaint seeks to allege a claim of a violation of Section 51 of the California Unruh Civil Rights Act. However, there are no allegations against the Five Airline Defendants relating to flights that Plaintiff was denied taking to or from California or that the Five Airline Defendants made any decision within California. In addition, any claim under the Unruh Act is preempted by federal law.

The Deregulation Act preempts Count 20 because it seeks to enforce a state law that relates to an air carrier "service." The Deregulation Act states that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, *or service of an air carrier* . . . ." 49 U.S.C. § 41713(b)(1) (emphasis added). Congress enacted the

Deregulation Act in 1978 "determining that 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices'" in the airline-services market. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (quoting Pub. L. No. 95-504, § 102(a)(4) & (9)). The preemption clause "ensure[s] that the States [do] not undo federal deregulation with regulation of their own." *Id.* (emphasis added). The Supreme Court has interpreted the preemptive effect of the Deregulation Act broadly. Any state law, including state common law, "having a connection with or reference to" airline prices, routes, or services is preempted unless the connection or reference is "too tenuous, remote, or peripheral." *Morales v. Trans World Airlines, Inc.*, 504 U.S. at 384; *see also Montgomery v. Delta Air Lines, Inc.*, No. 22-10692, 2023 WL 2400743, at *5 (5th Cir. March 8, 2023) ("Delta's decision not to provide transportation to Appellants" who refused to wear a mask "is enough for us to hold that the Deregulation Act preempts their claims. Our precedent makes clear that boarding and transportation are undeniably 'services' under the Deregulation Act"); *Andreadakis v. CDC*, *supra*, 2022 WL 2674194, at *11 (in dismissing state anti-discrimination law against airlines, the court stated that: "'Undoubtedly, boarding procedures are a service rendered by an airline … [T]o the extent that Plaintiff could argue that his claim stems from the airlines' refusal to grant him an exemption to the Mask Mandate when selling him a ticket, this . . . would fall under the services provided by an airline"), on appeal to the Fourth Circuit. *Cf. Fasano v. Federal Reserve Bank of NY*, 457 F.3d 274 (3d Cir. 2006), *cert. denied*, 549 U.S. 1115 (suit brought by former employee against Federal Reserve Bank of New York (FRB) alleging violation of NJLAD was preempted on the basis that it conflicted with the Federal Reserve Act, since the NJLAD imposed substantive and procedural burdens well beyond those imposed by federal law); *Onoh v. Northwest Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) ("whether [plaintiff] suffered an intentional infliction of emotional distress ("IIED")

CORE/3503476.0004/183648181.3

when a Northwest agent prohibited her from boarding a flight on the grounds that the State Department would not permit [plaintiff] to travel clearly falls within [the] definition of airline 'services'" under the Deregulation Act); *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 612-13 (N.D. Tex. 2016), *aff'd*, 682 Fed. Appx. 310 (5th Cir. Mar. 20, 2017) (tort law challenge to airline ban against air transportation of animal trophies related to air carrier "services" under the Deregulation Act).

The Unruh Act claim is also preempted by the ACAA, which exclusively governs allegations of discriminatory or unfair treatment of passengers claiming a disability. In *Nat'l Fed'n of the Blind v. United Airlines, Inc.*, 813 F.3d 718 (9th Cir. 2016), the court held that claims for discrimination under the Unruh Act were "field preempted" by the ACAA. *Id.* at 736-37, 740; *see also Covino v. Spirit Airlines, Inc.*, No. 2:20-cv-01039-GMN-NJK, 2021 WL 4248079, at *2-3 (D. Nev. Sept. 17, 2021) (noting that "Multiple courts have interpreted the ACAA to preempt certain state law claims" and holding that plaintiff's claim for intentional infliction of emotional distress arising out of alleged mistreatment by airline employees because of her medical condition was preempted by the ACAA because it was "inextricably intertwined with the alleged ACAA violation") (denying motion to amend complaint as "futile"); *Marcus v. CDC*, No. 2:22-cv-02383-SSS-AS, ECF No. 177 (C.D. Cal. Feb. 21, 2023) (granting airline defendants' motion to dismiss) ("The ACAA thus impliedly preempts Plaintiffs' Unruh Act claim" relating to the airline requirement that Plaintiffs wear masks); *Compass Airlines, LLC v. Mont. Dep't of Labor & Indus.*, No. CV 12-105-H-CCL, 2013 WL 4401045, at *9, 14, 18 (D. Mont. Aug. 12, 2013) (ACAA preempted the plaintiff's intentional infliction of emotional distress and negligent infliction of emotional distress claims); *Johnson v. Northwest Airlines, Inc.*, No. C 08-02272 VRW, 2010 WL 5564629, at *6 (N.D. Cal. May 5, 2010) (finding that the ACAA preempts state-law negligence

CORE/3503476.0004/183648181.3

claims); *Azocar v. Delta Air Lines, Inc.*, 562 F. Supp. 3d 788, 794 (C.D. Cal. 2021) (the "Court finds [the plaintiff's] Unruh and CDPA claims and the associated remedies are impliedly field preempted by the ACAA, and therefore must be dismissed").

The Unruh Act claim is also preempted by the Federal Aviation Act, 49 U.S.C. § 40101, *et seq.*, because it relates to air carrier decisions made for the purpose of enforcing FAA requirements relating to aircraft passenger safety. Although the Federal Aviation Act does not contain an express preemption clause, most courts have held that the Act impliedly preempts state regulation of airline safety. *See, e.g., Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007) (the Federal Aviation Act "preempts the entire field of aviation safety through implied field preemption"). In *Fawemimo v. Am. Airlines, Inc.*, 751 Fed. Appx. 16, 19-20 (2d Cir. 2018), the plaintiff sought damages after allegedly having been hit on her head by a television monitor above her seat while boarding the aircraft. The court held that the state law negligence claim regarding onboard TV monitors was impliedly preempted by the Federal Aviation Act, which was intended by Congress to occupy the field of air safety: "State laws that conflict with the FAA or sufficiently interfere with federal regulation of air safety are thus preempted." The court stated:

> Because the complaint challenges the overall design of the monitors and seats, it depends on a common law rule for monitors and seats that would conflict with requirements established by the federal government. This result would be contrary to the FAA's goal of centralizing, in the federal government, the regulation of air safety . . . . Accordingly, [plaintiff's] claim is incompatible with the federal government's authority to regulate the field of air safety and is preempted. (Id.)

Here, given that the wearing of masks onboard aircraft during a pandemic directly relates to aircraft safety, any attempt to use state law to interfere with safety requirements is preempted by the Federal Aviation Act.

24

Finally, the Complaint fails to assert that the Airline Defendants undertook any challenged acts within the State of California. This is fatal because the Unruh Act only applies to discrimination that takes place within California's jurisdiction. *Sousanis v. Northwest Airlines, Inc.*, No. C-99-2994, 2000 WL 34015861, at *7 (N.D. Cal. March 3, 2000) ("Simply because plaintiff resides in California, purchased her ticket here, and her flight originated here does not mean that the California statutes [including § 17200] she has sued under apply outside the state. The Legislature did not contemplate these statutes reaching outside of the jurisdiction, and they do not. Were it otherwise, airlines would be subject to a variety of statutes in many different jurisdictions, even on the basis of one interstate flight."); *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1148 (N.D. Cal. 2013) (dismissing § 17200 and § 17500 claims based on activity occurring outside of California); *T.P. v. Walt Disney Parks and Resorts U.S., Inc.*, No. CV 15-05346-CJC (EX), 2021 WL 3598574, at *2 (C.D. Cal. Apr. 20, 2021) (plaintiff's "Unruh Act claim fails because the Unruh Act is 'expressly limited to discrimination that takes place within California's borders'"); *Loving v. Princess Cruise Lines, Ltd.*, No. CV 08-2898-JFW-AJWX, 2009 WL 7236419, at *8 (C.D. Cal. Mar. 5, 2009) ("the Unruh Act . . . [does] not apply to claims of nonresidents of California injured by conduct occurring beyond California's borders").

## VII.    PLAINTIFF HAS NO CLAIM AGAINST THE MOVING DEFENDANTS FOR VIOLATION OF THE NEW JERSEY CIVIL RIGHTS LAW AGAINST DISCRIMINATION.

There is similarly no basis for the allegation in Counts 21 and 22 for violation of the New Jersey Civil Rights Law Against Discrimination, N.J.S.A 10:5-5. There are no allegations against the Moving Defendants relating to New Jersey. In addition, any claim under New Jersey law is preempted by federal law. N.J.S.A. 10:5-12(f)(1) states that an "owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation" may not "directly or indirectly refuse, withhold from or deny to any person any of the accommodations,

advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing

thereof . . . on account of the race, creed, color, national origin, ancestry, marital status, civil union

status, domestic partnership status, pregnancy or breastfeeding status, sex, gender identity or

expression, affectional or sexual orientation, disability, liability for service in the Armed Forces of

the United States or nationality of such person . . . ."

To state a claim for perceived handicap discrimination under the NJLAD, a plaintiff must

allege facts showing that defendant perceived plaintiff as having a physical or mental condition

that would qualify as disabled under NJLAD. *See  Thurston v. Cherry Hills Triplex*, 941 F. Supp.

2d 520, 535 (D.N.J. 2008). The Complaint does not cite to any authority for the position that refusal

to wear a mask qualifies as a disability under the NJLAD. However, even if such a showing were

established, Plaintiff's claim is preempted under the Deregulation Act because it is an effort to

enforce a state law that relates to an air carrier "service." *See Fitzpatrick v. Simmons Airlines, Inc.*,

555 N.W.2d 479, 481 (1996) (Deregulation Act preempted claim under the Michigan Civil Rights

Act for discrimination on the basis of weight).

## VIII.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE FIVE AIRLINE DEFENDANTS FOR VIOLATION OF THE NEW YORK CIVIL RIGHTS LAW.

Counts 23, 24 and 25 purport to allege violations of the New York Civil Rights Law § 8-

107. These claims should be dismissed because they are preempted by federal law, as is the case

with the Unruh Act claim (as set forth above).

## IX.    PLAINTIFF HAS NO CLAIM AGAINST THE FIVE AIRLINE DEFENDANTS FOR VIOLATION OF THE TEXAS CIVIL RIGHTS LAW.

There is similarly no basis for the allegation in Count 26 of a violation of the Texas Civil

Rights Laws. Any claim under the Texas law is preempted by federal law (similar to the Unruh

Act claim).

X.   **THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR INTENTIONAL OR UNINTENTIONAL TORT AGAINST THE MOVING DEFENDANTS UNDER THE STATE LAWS OF TEXAS, NEW YORK, NEW JERSEY, CALIFORNIA OR OTHER STATES.**

Federal law also preempts the allegations in Count 27 regarding alleged violation of various state laws for intentional or unintentional tort. First, the Deregulation Act preempts these claims. *See Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998) (Deregulation Act preempted passenger's intentional tort allegations to the extent they were premised on airline's refusal to permit passenger to board his flight); *Syed v. Frontier Airlines, Inc.*, 522 F. Supp. 3d 503, 512 (E.D. Mo. 2021) (airline passenger's state-law claims for negligence and intentional tort were preempted by the ADA). Second, the Complaint fails to allege the requisite elements of the tort claim, including an allegation that the Moving Defendants engaged in "an intentional infliction of economic damage, without excuse or justification." *Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 406 (1975). Third, under New York law, the statute of limitations for a claim for intentional tort is one year. *D'Amico v. Arnold Chevrolet, LLC*, No. 19618/2010, 2011 WL 1105659, at *9 (N.Y. Sup. Ct. 2011) ("The statute of limitations for a *prima facie* tort is one year . . ., including an intentional tort not specifically listed in CPLR § 215(3)"); *Gallagher v. Director's Guild of Am.*, 144 A.D. 2d 261, 262-63 (1st Dep't 1988) ("It appears that every appellate court which has considered the New York statutes at issue here has concluded that a claim for damages for an intentional tort is subject to the one year limitations period"); *Yong Wen Mo v. Gee Ming Chan*, 17 A.D. 3d 356, 358 (2nd Dep't 2005). None of the allegations against the Moving Defendants references acts or omissions that occurred within one year before the Complaint was filed.

XI.    **PLAINTIFF LACKS A CLAIM FOR NEGLIGENCE AGAINST THE MOVING DEFENDANTS UNDER VARIOUS STATE LAWS.**

Federal law preempts the claims in Count 28 alleging negligence under various state laws. The Complaint alleges that "Defendants had a duty to treat Plaintiff with decency, to help him circumvent a policy that would cause him the inability to travel and/or the suffering due to his disability." ¶ 1237. As the Second Circuit recognized in *Air Transport Ass'n of America, Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008), "[a] majority of the circuits to have construed 'service' have held that the term … encompasses matters such as boarding procedures …."; *see also Weiss v. El Al Israel Airlines, Ltd.*, 471 F. Supp. 2d 356, 359 (S.D.N.Y. 2006) (allegedly abusive treatment suffered by passengers was connected to airline service). As a result, the negligence claims are preempted by the Deregulation Act. *See, e.g., Adamore v. Southwest, supra*, 2011 WL 6301398, at *5 ("Accepting as true Plaintiff's allegations that Christina Doe was 'very hostile,' 'uncompassionate,' and that she 'threatened' Plaintiff with a higher fare and thereafter asked her to leave the premises, the agent's rude, demanding, and crass conduct in this context is not so unrelated to airline services that it falls outside the preemptive scope of the Airline Deregulation Act"); *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391, 401 (S.D.N.Y. 2004) (holding that the Deregulation Act preempted claims based on flight attendant's rude comments to plaintiff at the boarding gate because unprofessional conduct "cannot be categorized as outrageous or unreasonable"); *Cannava v. USAir, Inc.*, Civ. A. No. 91-30003-F, 1993 WL 565341, at *4-6 (D. Mass. Jan. 7, 1993) (holding that the Deregulation Act preempted claims based on ticketing agent's conduct in grabbing and tearing up plaintiff's bereavement fare ticket, treating plaintiff rudely, and threatening to call airport security); *Joseph v. JetBlue, supra*, 5:11-cv-1387 (TJM/ATB), 2012 WL 1204070, at *7 (N.D.N.Y. Apr. 11, 2012) ("Allowing a common law tort claim challenging an airline's ability to make decisions such as whether to divert and land a plane safely in the face of

a winter storm subjects airlines to a patchwork of obligations that would eviscerate federal regulations aimed at air safety control. This aspect of the negligence claim is clearly preempted by the Deregulation Act").

## XII. PLAINTIFF'S CLAIMS FOR INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED.

There is also no basis for the claim for infliction of emotional distress in violation of various state laws, as asserted in Count 29. To prevail on a claim for intentional infliction of emotional distress ("IIED") under New York law, a plaintiff must allege and prove: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). "New York courts have imposed a very high threshold for intentional infliction of emotional distress claims, requiring that the conduct must be so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Jinn v. Sig Sauer, Inc.*, No. 20-cv-1122 (PGG) (RWL), 2023 WL 2919558, at *20 (S.D.N.Y. April 12, 2023) (citations omitted).

Plaintiff's allegation of being required to wear a mask to board an aircraft does not rise to the level of outrageous and extreme conduct that is required to support a claim. There is nothing about the allegations involving the Five Airline Defendants that would support a finding of conduct that goes "beyond all possible bounds of decency" or that could be regarded as "atrocious, and utterly intolerable in a civilized community." Plaintiff was asked to wear a mask during a global pandemic, or qualify for an applicable exemption. Such a request clearly does not rise to the level of "outrageous and extreme." *See, e.g., Order, Montgomery v. Delta Air Lines, Inc.*, Case No. 3:21-cv-02715-C, ECF No. 34, at *2 ("as aptly argued by Defendant [Delta], Plaintiff's pleadings" regarding the Delta mask requirement "fail to state a claim for either intentional infliction or

negligent infliction of emotional distress"), *aff'd* 2023 WL 2400743, at *2, *5 (5th Cir. 2023); *Kennedy v. American Airlines, Inc.*, 195 F. Supp. 3d 646, 659 (D.N.J. 2016) (flight attendant failed to adequately allege details on the severity of his alleged distress, so as to make a claim for intentional infliction of emotional distress under New Jersey law), *aff'd*, 760 Fed. Appx. 136 (2019)). Plaintiff also has failed to allege the existence of severe emotional distress caused by the conduct of any of the Five Airline Defendants.

In addition, the claim for IIED is barred by the one-year statute of limitations. *See D'Amico v. Arnold Chevrolet, LLC*, No. 19618/2010, 2011 WL 1105659, at *9 (N.Y. Sup. Ct. 2011) ("The statute of limitations for [the tort of intentional infliction of emotional distress] is one year").

## XIII.   THE CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED.

Count 30 purports to allege a claim for breach of contract, asserting that the "airlines that Plaintiff purchased tickets on, breached their contract by forcing him to wear a mask, attempting to force him to wear a mask, by not allowing him to fly if he does not wear a mask, and/or by not accommodating his special needs." ¶ 1251. To begin with, Plaintiff does not allege that he purchased a ticket from American, United or Southwest, so clearly there is no breach of contract claim against these defendants. The Complaint does allege that Plaintiff purchased a ticket from JetBlue and actually flew on a JetBlue aircraft with a mask to the Dominican Republic. ECF No. 3, ¶ 429-42.  In addition, his allegation against Delta relates to an international flight from France to the United States. *Id.* ¶ 338-51. These claims are preempted by the Montreal Convention, which applies given that the air transportation was international. The "Convention for the Unification of Certain Rules for International Carriage by Air," known as the "Montreal Convention" ("Convention") entered into force in the United States on November 4, 2003, and updated and replaced "the uniform system of liability for international air carriers previously established by the Warsaw Convention." [predecessor to the Montreal Convention]. *See* 974 UNTS 177; *In re*

*Nigeria Charter Flights Contract Litig.,* 520 F. Supp. 2d 447, 452 (E.D.N.Y.2007) (citing *Ehrlich v. Am. Airlines Inc.,* 360 F.3d 366, 371 n. 4 (2d Cir. 2004)). The Dominican Republic, France and the United States have all signed the Montreal Convention. Like its predecessor, the "cardinal purpose" of the Montreal Convention is to establish uniform "rules governing the claims arising from international air transportation." *See El Al Isr. Airlines, Ltd. v. Tseng,* 525 U.S. 155, 169 (1999); *see also Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 256 (1984) (noting that the overriding purpose of the Warsaw Convention was to establish a "stable, predictable, and internationally uniform" system of carrier liability).

The Montreal Convention "governs the uniform system of liability for international air carriers." *Badar v. Swissport USA, Inc*., 492 F. Supp. 3d 54, 57 (E.D.N.Y. 2020). The Convention "preempts state and federal claims that fall within its scope." *Badar*, 492 F. Supp. 3d at 58; *see Best v. BWIA West Indies Airways Ltd*., 581 F. Supp. 2d 359, 362 (E.D.N.Y. 2008) ("By its own terms, the treaty, where applicable, preempts the remedies of a signatory's domestic law, whether or not the application of the Convention will result in recovery in a particular case.") (citing *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999)); *see also* Convention Article 29 (claims under the Convention "can only be brought subject to the conditions and such limits of liability as are set out in this Convention"). Article 29 of the Montreal Convention facilitates this objective by requiring that "any action for damages, however founded . . . can only be brought subject to the conditions and such limits of liability as are set out in this Convention." Montreal Convention, Art. 29. Courts applying the Montreal Convention adhere to this dictate and routinely find that the Convention, where applicable, preempts state law remedies for claims within its "substantive scope." *See In re Nigeria Charter Flights Contract Litig.,* 520 F. Supp. 2d at 453 ("[T]he Montreal Convention preempts state law claims falling within its scope"). The Convention provides the

exclusive remedy for plaintiffs to pursue claims for damages arising under the Convention. *Badar*, *supra*, at *7; *Tseng*, *supra*, at 161.

Article 19 of the Montreal Convention states that an "[air] carrier is liable for damage occasioned by delay in the carriage by air of passengers …. " "'[I]nternational air carriage' has repeatedly been deemed to include activities beyond actual travel," and establish applicability of Article 19. *Lee v. AMR Corp*., Civil Action No. 15–2666, 2015 WL 3797330, at *3 (E.D. Pa. June 18, 2015). By way of example, in *Ikekpeazu v. Air France,* No. Civ.A.04–0711, 2004 WL 2810063 (D. Conn. December 6, 2004), the passport of plaintiff, a surgeon, was confiscated, he was refused boarding on the subject flight, and he had to cancel his upcoming week of surgeries. *Id*. at *1. The Court, agreeing with defendants' motion, found that the facts of the matter "provide a basis for a claim under [Article 19]." *Id.* at *2; *see also Pogadaev v. Aeroflot-Russian Airlines*, Case No. 16-cv-04718-RS, 2017 WL 3267525, at *3 (N.D. Cal. July 31, 2017); *Dutta v. Emirates*, Civil Action No. 3:21-CV-1242-B, 2022 WL 60347, at *8 (N.D. Tex. January 6, 2022).

In *Waters v. Port Authority of New York & New Jersey*, 158 F. Supp. 2d 415 (D.N.J. 2001), the court held that the Warsaw Convention preempted a handicapped passenger's claim for disability discrimination in connection with his flight to Rome, Italy. *Id.* at 437. The court stated that "plaintiff seeks to recover damages for alleged injuries sustained as a result of what he claims were acts of discrimination by the defendants. Although his cause of action is grounded in discrimination statutes, the thrust of his claim is one of personal injury. Undoubtedly, this falls within the scope of the Convention and the goal of providing a uniform scheme of liability." *Id.* at 420.

Finally, the claims for emotional injuries against JetBlue and Delta also should be dismissed because the Montreal Convention does not allow recovery for emotional injuries that

CORE/3503476.0004/183648181.3

are unaccompanied by physical injuries. *See Bassam v. American Airlines, Inc.*, 287 Fed. Appx. 309, 316-17 (5th Cir. 2008) (no recovery of emotional distress damages under Montreal Convention); *Waters, supra*, 158 F. Supp. 2d at 437 (the "Warsaw Convention [predecessor to Montreal] does not allow recovery for emotional injuries that are unaccompanied by physical injuries"); *Terrafranca v. Virgin Atlantic Airways*, 151 F.3d 108, 109-110 (3d Cir. 1988) (post-traumatic stress disorder, anxiety, fear of flying and weight loss were not recoverable injuries under the Warsaw Convention); *Fields v. BWIA Int'l Airways Ltd.*, No. 99-CV-2493, 2000 WL 1091129, at *6 (E.D.N.Y. July 7, 2000) (no recovery for emotional injuries regardless of allegation of willful misconduct); *Brandt v. American Airlines, Inc.*, No. C 98-2089, 2000 WL 288393, at *8 (N.D. Cal. March 13, 2000) (under the Warsaw Convention, airlines are not liable for emotional or psychological injuries not accompanied by physical injury).

In any event, the claim alleging that JetBlue and Delta breached the contract of carriage when requiring Plaintiff to wear a mask when the parties did not agree to it in the contract is preempted by the Deregulation Act because it relates to an air carrier price, route or service. The Supreme Court has recognized a narrow exception to the Deregulation Act's preemption for some breach of contract claims. In *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), the Court carved out an exception for certain contract claims against airlines for actions that seek to enforce the parties' "own, self-imposed undertakings," such as agreements with respect to a frequent flyer program. *Id.* at 228. However, the Court limited this exception to breach of contract actions confined to the terms of the contract, "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id*. at 233. "Thus, when a contract claim cannot be adjudicated without resort to outside sources of law, the claim is still preempted by the [Deregulation Act]." *Smith v. Comair, Inc.*, 134 F.3d 254, 257 (4th Cir. 1998).

In *Andreadakis*, the court stated:

> Here, Plaintiff's breach of contract claim arises out of the Airline Defendants requiring him to wear a mask on the flight or obtain a medical exemption. Put differently, Plaintiff sues the Airlines for enforcing the Mask Mandate — federal law. Thus, Plaintiff's breach of contract claim "directly implicates the airlines' discretion and/or duty under federal law," id, and, therefore, the Deregulation Act preempts it. The Court will dismiss Count Thirty-Five.

2022 WL 2674194, at *12. Similarly here, the breach of contract claim arises out of the air carrier requiring Plaintiff to wear a mask on the flight or obtain a medical exemption, which is a claim against the airline "for enforcing the Mask Mandate – federal law." Accordingly, as in *Andreadakis*, the breach of contract claim "directly implicates the airlines' discretion and/or duty under federal law," and is preempted by the Deregulation Act.

The breach of contract claim also fails to allege the existence of an actual breach. In *Hughes v. Sw. Airlines Co.*, No. 18 C 5315, 2019 WL 1375927, at *1 (N.D. Ill. Mar. 26, 2019), the plaintiff alleged that the airline defendant breached its contract by failing to have sufficient deicing fluid at the airport. However, the plaintiff failed to point to language in the airline contract of carriage that required the air carrier to have sufficient deicing fluid available for a flight. In dismissing the breach of contract claim, the court stated that plaintiff's "failure to sufficiently identify the contractual obligation that Southwest breached not only fails to state a claim for breach of contract but also precludes the Court from finding that [plaintiff] identified a self-imposed undertaking that would bring this breach of contract claim within the *Wolens* exception to ADA preemption." *Id.* at *4; *see also McGarry v. Delta Air Lines, Inc.*, No. CV 18-9827-MWF (EX), 2019 WL 2558199, at *5 (C.D. Cal. June 18, 2019), *aff'd*, 812 F. App'x 625 (9th Cir. 2020) ("But the Contract of Carriage itself contains no self-imposed promise from Delta as to how it will handle customer data. Neither does it promise specific procedures of third-parties . . . that have access to such data.").

Here too, Plaintiff has not identified any language in the JetBlue or Delta contract of carriage that was breached.

In the anti-mask litigation styled *Leia Montgomery and Kristen Meghan Kelly v. Delta Air Lines, Inc.*, Civil Action No. 3:21-CV-2715-C (N.D. Tex.), ECF No. 34 (*aff'd* 2023 WL 2400743), the two plaintiffs in that case alleged that the airline improperly required them to wear a mask onboard their flights. The Second Amended Complaint alleged claims for: breach of contract, invasion of privacy, intentional and negligent infliction of emotional distress, declaratory judgment and injunctive relief. *See* No. 3:21-CV-2715-C, ECF No. 27. In moving to dismiss the plaintiffs' claims pursuant to Rule 12(b)(6), Fed. R. Civ. P., the defendant alleged that the plaintiffs' claims were legally deficient because: (1) the state law causes of action in Claims 1 through 4 of the Second Amended Complaint (for breach of contract, invasion of privacy and intentional and negligent infliction of emotional distress) were preempted by federal law and separately fail to state a claim on which relief may be granted; and (2) the claim for declaratory relief in Claim 5 of the Second Amended Complaint was barred because there is no private right of action to sue for relief – including declaratory relief – under the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705. *See* No. 3:21-CV-2715-C, ECF No. 28. In dismissing the Second Amended Complaint and the action with prejudice, the Court stated:

> The court finds that the Airline Deregulation Act (ADA) preempts Plaintiffs' claims, including their invasion of privacy and other tort claims. Plaintiffs have failed to identify any self imposed undertaking by Defendant in its contract for carriage that would allow Wolens exception to the preemption to apply in this instance. Plaintiffs' claims stem from the federal mask mandate and are directly related to air carrier service of transporting passengers. Likewise, the claims for negligent and intentional infliction of emotional distress are preempted under the Federal Aviation Act (FAA), ADA, and Air Carrier Access Act (ACAA). Furthermore, as aptly argued by Defendant, Plaintiffs' pleadings fail to state a claim for either intentional infliction or negligent infliction of emotion

> distress. Finally, there is no private right of action under the Air
> Carrier Access Act to support Plaintiffs' requests for declaratory and
> injunctive relief.

No. 3:21-CV-27 ECF No. 34, at 1-2.

*See also Seklecki v. CDC*, 635 F. Supp. 3d at 27 ("Seklecki argues that in requiring proof of medical conditions to obtain an exemption from the mask mandate, the airlines were invading his privacy. This claim relates to an air carrier's boarding procedures. Because the ADA preempts enforcement of a state law relating to a service of an air carrier, Count 28 of the complaint is pre-empted.")

In addition, a breach of contract claim based on the refusal to permit Plaintiff to board a flight improperly interferes with the federal regulation of air service. In *Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998), the plaintiff alleged that the defendant airline improperly refused to permit the plaintiff to board his flight because of a lack of identification, and reacted to the plaintiff's angry response by asking local police officers to remove the plaintiff from the airport terminal. *Id.* at 256–57. In rejecting a breach of contract claim, the Fourth Circuit stated that, because the passenger's claim was based on the airline's refusal to permit him to board, "it directly implicates the airline's discretion and/or duty under federal law." *Id.* at 258–59; *see also O'Carroll v. Am. Airlines, Inc.*, 863 F.2d 11, 12–13 (5th Cir. 1989) (ADA preempted a claim arising out of airline refusal to board passenger). Similarly here, the argument that JetBlue and Delta breached their contracts of carriage by requiring him to wear a mask is preempted because of the non-compatibility with the federal regulation of air service.

## XIV. THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR PROMISSORY ESTOPPEL AGAINST THE FIVE AIRLINE DEFENDANTS.

Count 31 purports to allege a state law claim for promissory estoppel. Any such claim is preempted by federal law. *See, e.g., Bergman v. Alaska Airlines, Inc.*, 484 P.3d 480, 484 (2021) (claim for promissory estoppel against Alaska Airlines preempted by the Deregulation Act). In

CORE/3503476.0004/183648181.3

addition to the fact that the legal theory is preempted by federal law, Plaintiff has failed to allege the necessary elements for a claim of promissory estoppel under New York law. Such a claim requires the plaintiff to prove three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance. *Christian v. Transperfect Global, Inc.*, 17-cv-5544 (PKC), 2018 WL 4571674, at *8 (S.D.N.Y. Sept. 24, 2018). However, the Complaint fails to identify a promise (much less one that is clear and unambiguous) from any of the Five Airline Defendants that you would be permitted to fly during the pandemic without a mask.

## XV.   THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR INJURIOUS FALSEHOODS.

Count 33 purports to allege a state law claim for "injurious falsehoods" regarding the efficacy of wearing a mask on an airplane. This cause of action fails to allege a claim for relief. Under New York law, to prevail on a claim for injurious falsehood, a plaintiff must prove the following: (1) the falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages. *Exportaciones del Futoro S.A. de C.V. v. Iconix Brand Group, Inc.*, 636 F. Supp. 2d 223, 232 (S.D.N.Y. 2009). The Complaint fails to allege these requisite elements. In addition, such a state law claim is preempted by the Deregulation Act because it relates to an air carrier "service."

## XVI.   THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR INVASION OF PRIVACY.

Count 34 seeks to allege a state law claim for invasion of privacy.  The state law claim for invasion of privacy is preempted by the Deregulation Act because it relates to the airlines' services. *See, e.g., Pica v. Delta Air Lines, Inc.*, 812 F. App'x 591, 593 (9th Cir. 2020) (affirming dismissal of state law claims for alleged failure to protect personal information and timely notify of a data breach because they were preempted under the Deregulation Act); *In re Am. Airlines, Inc. Privacy*

CORE/3503476.0004/183648181.3

*Litig.*, 370 F. Supp. 2d 552, 564 (N.D. Tex. 2005) (state law claims for invasion of privacy in connection with ticket reservation was preempted under the Deregulation Act); *Elnajjar v. Nw Airlines*, No. Civ.A. H-04-680, Civ.A. H-04-681, 2005 WL 1949545, at *17-18 (S.D. Tex, Aug. 15, 2005) (holding that passenger's invasion of privacy claims for purportedly improper questioning by an agent during check-in process were preempted by the Deregulation Act).

In addition, the Complaint fails to set forth the basis for a claim for invasion of privacy.

## XVII. THE CLAIM FOR FRAUDULENT MISREPRESENTATION SHOULD BE DISMISSED.

Count 36 purports to allege a state law claim for fraudulent misrepresentation, asserting that the "Defendants have falsely represented on their websites, in e-mails to passengers, signage at airports, etc. that 'federal law' requires airline passengers [to] wear face masks," when "Congress has never enacted such a law." Not only does this allegation fail to allege a false statement (federal law included the FTMM), but it also is a state law claim preempted by the Deregulation Act. *See Joseph v. JetBlue Airways Corp.*, *supra,* 2012 WL 1204070, at *5 (N.D.N.Y. Apr. 11, 2012) ("Enforcing the state law deceptive practices statute in this case would have the 'force and effect of law related to a price, route, or service of an air carrier,' as prohibited by the ADA's preemption clause"); *Martin v. DHL Express (USA), Inc.*, 580 F. Supp. 3d 66, 73 (D.N.J. 2022) (consumer's state law claim for fraud against shipper of goods was preempted by the Deregulation Act); *Wolens, supra*, 513 U.S. at 228 (finding that the Deregulation Act preempted the use of state consumer protection law to challenge airline devaluation of frequent flyer earned miles); *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, No. 08-4333, 2009 WL 1652156, at *6 (D.N.J. June 10, 2009) (finding that the Deregulation Act leaves no "room for a consumer fraud claim against an airline" and dismissing the NJCFA claim with prejudice); *Vail v. Pan Am Corp.*, 260 N.J. Super. 292, 294, 296 (N.J. App. 1992) (same); *Webster v. U.S. Airways,*

*Inc.*, 11 F. App'x 56, 57 (4th Cir. 2001) (fraud claim relating to prices and services preempted by the ADA because "it seeks to enforce a legal duty on the defendant that is independent of the parties' contract"); *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 545 (D. Md. 2019) ("Plaintiff's claims of fraud and fraudulent concealment . . . are based on state-imposed obligations, so they are preempted by the ADA and must be dismissed with prejudice").

Count 36 is also preempted by the ACAA. *See Wright ex rel. D.W. v. Am. Airlines, Inc.*, 248 F.R.D. 572, 573 (E.D. Mo. 2008) (state law misrepresentation claims dismissed because of ACAA preemption). Separately, Count 36 fails to allege fraud with particularity, as required by Rule 9(b), Fed. R. Civ. P. Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (D.N.J. 2007). Rule 9(b) heightens a plaintiff's pleading standard for circumstances constituting the fraud, not for damages resulting therefrom. *See Casperson as Tr. For Samuel M.W. Casperson Dynasty Trust v. Oring*, 441 F. Supp. 3d 23, 35 (D.N.J. 2020).

## XVIII. THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR INFRINGEMENT OF A CONSTITUTIONAL RIGHT TO TRAVEL.

Count 37 asserts that the Airline Defendants infringed Plaintiff's purported constitutional right to travel. ¶ 1329-1348. However, Plaintiff does not actually possess a constitutional right to travel onboard the Five Airline Defendants' aircraft. *See Gilmore v. Gonzalez*, 435 F.3d 1125, 1136 (9th Cir. 2006) ("the Constitution does not guarantee the right to travel by any particular form of transportation"); *id.* at 1137 ("Gilmore does not possess a fundamental right to travel by airplane"); *Wall v. CDC*, 543 F. Supp. 3d 1290, 1292-93 (M.D. Fla. 2021) (mask mandate did not infringe on passenger's constitutional right to travel); *id.* at 1293 ("flying may be Plaintiff's

preferred mode of transportation, but it is by no means the only reasonable mode of transportation available to him").

## XIX.  THE REQUEST FOR NOMINAL DAMAGES SHOULD BE STRICKEN.

Realizing the lack of a basis for actual financial damages, the Complaint requests an award of "nominal damages." Page 66. There is no basis for any nominal damages, which are a "trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1291 (11th Cir. 2014) (quoting Black's Law Dictionary 447 (9th ed. 2009)). Here, the Complaint fails to allege the existence of any "legal injury" suffered by Plaintiff. Moreover, recovery of nominal damages is preempted by the Deregulation Act, as it would be enforcing a state law in relation to air carrier "services."

## XX.  THE REQUEST FOR PUNITIVE DAMAGES IS PREEMPTED BY THE DEREGULATION ACT.

The Complaint seeks an award of "punitive damages" in the amount of "at least ten million dollars per Defendant." ECF No. 3 at 68. However, not only is there zero factual basis for any damages, much less punitive damages, the punitive damages request is also preempted by the Deregulation Act. Courts have consistently held that punitive or exemplary damages fall outside the *Wolens* exception and are, therefore, preempted by the ADA. *See, e.g., Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 n.8 (7th Cir. 1996) (holding that a punitive damage claim was preempted because it related to air carrier rates, routes and services and expanded the rights of the plaintiff beyond the terms of the contract); *Starker v. Spirit Airlines*, No. 17-CV-6812 (HBP), 2019 WL 4194572, at *8 (S.D.N.Y. Sept. 3, 2019); *Norman v. Trans World Airlines, Inc.*, No. 98-CV-7419 (BSJ), 2000 WL 1480367, at *6 (S.D.N.Y. Oct. 6, 2000); *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, No. 08–4333, 2009 WL 1652156, at *6 (D.N.J.

June 10, 2009); *Williams v. Midwest Airlines, Inc.*, 321 F. Supp. 2d 993, 996 n. 4 (E.D. Wis.2004);

*Breitling U.S.A., Inc. v. Federal Exp. Corp.*, 45 F. Supp. 2d 179, 185 (D. Conn. 1999); *Deerskin*

*Trading Post, Inc. v. United Parcel Service of America, Inc.*, 972 F. Supp. 665, 673 (N.D. Ga.

1997).   In addition, to the extent that the punitive damages are sought in connection with

international air travel, that request is also preempted by the Montreal Convention. *See Booker v.*

*BWIA West Indies Airways Ltd*., No. 07-CV-2146 (RER), 2007 WL 1351927, at *3-4 (E.D.N.Y.

May 8, 2007) ("plaintiff may not recover punitive damages which are expressly prohibited by

Article 29 of the Montreal Convention").

## XXI. PLAINTIFF LACKS STANDING TO ASSERT HIS CLAIMS AGAINST THE MOVING DEFNDANTS.

Plaintiff lacks the necessary standing to pursue his claims against the Moving Defendants.

To establish standing "a plaintiff is constitutionally required to have suffered (1) a concrete,

particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct

and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.,* 574

F.3d 92, 96 (2d Cir. 2009) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).

The Plaintiff bears the burden of establishing standing "in the same way as any other matter on

which [it] bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the

successive stages of the litigation." *Lujan*, 504 U.S. at 561. Thus, to survive the Moving

Defendants' Rule 12(b)(1) motion to dismiss, Plaintiff must allege facts that affirmatively and

plausibly suggest that he has standing to sue. *See Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88

(2d Cir. 2009). For a plaintiff's alleged harm to be "particularized," it "must affect [him] in a

personal and individual way." *Id*. at 560 n. 1. The requirement that the alleged harm be "concrete"

means that the court "need not credit [a complaint's] conclusory statements without reference to

its factual context." *Amidax Trading Group v. S.W.I.F.T.*, 671 F.3d 140, 146 (2d Cir. 2011)

(cleaned up). As the Second Circuit has emphasized, "a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 637 (2d Cir. 2003). Finally, the requirement of "actual or imminent" harm means that to establish standing, a plaintiff must allege an injury that is non-speculative – allegations of harm that are merely "conjectural or hypothetical" will not suffice. *Lujan*, 504 U.S. at 560; *see also United States v. Probber*, 170 F.3d 345, 349 (2d Cir. 1999) (alleged "injuries [were] too speculative to satisfy the case-or-controversy requirement of Article III"); *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 152 (S.D.N.Y. 2000) (dismissing claim "based upon mere speculation" for lack of standing).

Plaintiff's lack of standing is obvious from the fact that the Complaint does not allege that he bought a ticket on American, Southwest, or United, or that he applied for and was denied a mask exemption from either of those three air carriers. Nor does Plaintiff offer any facts to demonstrate that he was harmed as a result of any acts or omissions of those airlines. Although Plaintiff claims to have flown onboard a JetBlue flight, he acknowledges that he wore a mask on that flight. There are no potential damages that arose from that flight. And for Delta, the Complaint acknowledges that Plaintiff was able to fly on Air France rather than Delta. So once again, Plaintiff has not alleged the existence of any injury that would be compensable in this case. *See Summers v. Earth Island Institute*, 555 U.S. 448, 496 (2009) (rejecting a standing theory premised on a speculative chain of possibilities).

The court in *Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373 (3d Cir. June 16, 2023), held that the lower court properly dismissed Plaintiff Abadi's claim against Target for lack of standing. The court stated that Mr. Abadi's "allegations pertained to a one-time incident occurring in January 2021," after which the store lifted its mask mandate. *Id.* at *2. Although

Plaintiff "argued that the mask requirement may be reinstated and that [he] may be again prevented from shopping in Target without a mask, [his] contentions [were] too speculative to establish Article III standing." *Id.* Similarly here, Plaintiff's contention that the mask mandate may soon return is entirely speculative and insufficient to confer standing for him to pursue his claims against the Moving Defendants.

To the extent Plaintiff relies on Americans with Disabilities Act cases with regard to alleged "futility" in trying to fly on the Five Airline Defendants (*e.g., Equal Rights Center v. Uber Technologies*, 525 F. Supp. 3d 62 (D.D.C. 2021)), those cases are inapplicable here. First, the Americans with Disabilities Act does not apply to claims of discrimination by passengers of air carriers. This is at least in part because aircraft are expressly excluded from the definition of "specified public transportation" in the Americans with Disabilities Act. 42 U.S.C. § 12181(10) ("The term 'specified public transportation' means transportation by bus, rail, or other conveyance (other than aircraft) that provides the general public with general or special service"); *Puckett v. Nw. Airlines, Inc.*, 131 F. Supp. 2d 379, 382 (E.D.N.Y. 2001) (Americans with Disabilities Act does not apply to aircraft). Second, the Americans with Disabilities Act affords declaratory and injunctive relief, which can be rendered futile under the circumstances, but has no relevance where, as here, such requests for equitable relief are entirely moot due to the termination more than one year ago of the FTMM and airline masking policies.

## XXII. PLAINTIFF'S CHALLENGE OF AIRLINES' IMPLEMENTATION OF THE FEDERAL TRANSPORTATION MASK MANDATE IS MOOT BY REASON OF THE EXPIRATION OF THE FTMM, AND THE LACK OF ANY MASKING POLICIES CURRENTLY BEING IMPOSED BY THE FIVE AIRLINE DEFENDANTS.

Plaintiff's claims against the Moving Defendants are moot (and were moot when filed), given the fact that the FTMM was effectively terminated on April 18, 2022, which was more than a year before the Plaintiff filed his Complaint (on May 1, 2023). Mootness, along with the doctrines

43

of standing and ripeness, emanates from the case or controversy requirement of Article III of the United States Constitution and ensures that there exists an actual, live, justiciable claim for the court to resolve. See U.S. CONST. art III, § 2; *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article Ill's 'case' or 'controversy' language, no less than standing does.") (citations omitted); *Knaust v. City of Kingston*, 157 F.3d 86, 87 (2d Cir. 1998) ("we must decide whether intervening events have rendered Knausts' request for injunctive relief moot, for 'Article III of the Constitution limits this Court to consideration of appeals involving a live case or controversy.'") (quotation omitted).

As repeated throughout the Complaint, on April 18, 2022, a federal district judge in the Middle District of Florida issued an order in a case not involving airlines which vacated the FTMM. *See Health Freedom Defense Fund, Inc. v. Biden*, 599 F. Supp. 3d 1144 (M.D. Fla.). The Complaint does not allege any issues with airlines and mask requirements since that April 18, 2022 decision.   On June 22, 2023, the U.S. Court of Appeals for the Eleventh Circuit ruled that the appeal of the district court decision was moot because of the cessation of the FTMM, and vacated the lower court decision on that basis. *See Health Freedom Defense Fund v. President*, 71 Fed. 4th 888 (4th Cir.). In holding that the appeal of the lower court ruling was moot, the Eleventh Circuit stated:

> On April 10, 2023, President Biden signed a joint resolution of Congress that terminated the national emergency. Act of Apr. 10, 2023, Pub. L. No. 118-3, 137 Stat. 6 (2023). More relevant to this case, on May 11, 2023, the HHS Secretary's declaration of a public health emergency expired. See End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Centers for Disease Control and Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html. Therefore, even had the district court sided with the government, the Mandate would have expired by its own terms on May 11, 2023. See 86 Fed Reg. 8025-01 at 8030 ("This Order will remain in effect . . . until the Secretary of Health and Human

> Services rescinds the determination . . . that a public health
> emergency exists.").

*Id*. at 891. The Eleventh Circuit added that "there is no longer any Mandate for us to set aside or

uphold. Indeed, even if we were to decide against Appellees and reverse the district court – as the

government desires – there would be no Mandate to reinstate." *Id*. at 892. The court further stated:

> [T]there is no reasonable basis to expect the Mandate will be
> reinstated if this case is rendered moot. By its own terms, the
> Mandate expired after the HHS Secretary declared that the public
> health emergency has ended, and there is no hint that this decision
> was an effort to avoid further litigation. Further, nothing in the text
> of the Mandate suggests it can be revived after its expiration, and
> there is not a grain of evidence that the CDC has any plans to
> promulgate an identical mandate. And while we recognize that the
> government continues to defend the legality of the Mandate, that
> fact "has little, if anything to do . . . with the voluntary-cessation
> analysis." Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257,
> 1269 (11th Cir. 2020). The question is simply whether there is a
> reasonable basis to expect the challenged conduct to "start up again"
> if this case is declared moot. Friends of the Earth, 528 U.S. at 189,
> 120 S. Ct. 693. We conclude there is not. (Id.)

*See also id.* ("We find Appellees' contention that there is a reasonable expectation that the CDC

will issue another nationwide mask mandate for all conveyances and transportation hubs to be

speculative at best"). The court ruled that the "order and judgment of the district court are

VACATED, and the district court is instructed to DISMISS the case as MOOT." *Id.* at 893-94.

The Complaint filed by Mr. Abadi in this case was moot when filed. But even assuming it

was not, it was rendered moot by the Eleventh Circuit decision in *Health Freedom*. The Complaint

(ECF No. 3, at pages 64-65) seeks a declaration stating that:

> a.      "the Airline Defendants' mask policies violate ACAA and the Rehabilitation Act
> by discriminating against the disabled and issue a permanent injunction prohibiting them
> from engaging in such future conduct";
>
> b.      "the Airline Defendants' policies requiring passengers not known to have a
> communicable disease to wear a face covering violate the Air Carrier Access Act and issue
> a permanent injunction prohibiting them from engaging in such future conduct";

c.    "the Airline Defendants' policies of refusing to provide mask exemptions to the disabled violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct";

d.    "the Airline Defendants' policies refusing transportation solely on the basis of a passenger's disability violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct"; and

e.    "the Airline Defendants' policies requiring a medical certificate from disabled passengers who ask for a mask exemption violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct."

All of these claims are moot because there is no FTMM or any policy being implemented by any of the Five Airline Defendants regarding the wearing of masks on airplanes.

In addition to the declaratory and injunctive relief that Plaintiff seeks, which is now moot, the Complaint also alleges damages "in the amount of up to $4.5 Billion Dollars USD," but fails to link such a huge demand to any factual allegations in the Complaint. Plaintiff may not escape a finding of mootness with regard to the FTMM merely by alleging that he has been monetarily damaged by prior events without providing the basis for any damages. Accordingly, the claims against the Moving Defendants are moot.

CORE/3503476.0004/183648181.3

## CONCLUSION

For the reasons set forth above, the Moving Defendants request that the Complaint and action be dismissed.

Dated: New York, New York
        October 30, 2023

Respectfully submitted,

**STINSON LLP**

By:    */s/ Kieran M. Corcoran*
       Kieran M. Corcoran (KC4935)
       100 Wall Street, Suite 201
       New York, New York 10005
       Tel: (646) 883-7480
       Fax: (646) 883-7472
       kieran.corcoran@stinson.com

       Paul Lackey (PL7651)
       2200 Ross Avenue, Suite 2900
       Dallas, TX 75201
       Tel: (214) 560-2206
       Email: paul.lackey@stinson.com

       M. Roy Goldberg *(Admitted Pro Hac Vice)*
       1775 Pennsylvania Avenue, N.W., Suite 800
       Washington, D.C. 20006
       Tel: (202) 728-3005
       Email: roy.goldberg@stinson.com

       *Counsel for American Airlines, Inc., Delta Air Lines, Inc., JetBlue Airways Corporation, Southwest Airlines Co., United Airlines, Inc., Robert Land, Roy Goldberg, Debbie Castleton and Nathalie Simon.*

47

<u>CERTIFICATE OF SERVICE</u>

On October 30, 2023, I caused a true and accurate copy of the foregoing Memorandum of Law in Support of Motion to Dismiss to be served on Plaintiff Aaron Abadi via email:

Mr. Aaron Abadi
Email: aa@neg.com


and the other parties whose counsel of record are on the Court's CM/ECF system:


*/s/ Kieran M. Corcoran*
Kieran M. Corcoran (KC4935)

48