# EXHIBIT "A" Pursuant to Rule 2(J) of the Honorable Lewis J. Liman's Court Rules

1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10

11  URI MARCUS, YVONNE MARCUS,              Case No. 2:22-cv-02383-SSS-ASx
    AVROHOM GORDON, DEVORAH
12  GORDON & CINDY RUSSO,
                                            **ORDER DENYING PLAINTIFFS'**
13          Plaintiffs,                     **MOTION FOR LEAVE TO FILE A**
                                            **SUR-REPLY [DKT. 168],**
14                                          **GRANTING DEFENDANTS'**
            v.                              **MOTIONS TO DISMISS [DKTS. 86,**
15                                          **92, 95, 97, 133], AND DENYING AS**
    CENTERS FOR DISEASE CONTROL            **MOOT AIRLINE DEFENDANTS'**
16  & PREVENTION, DEPARTMENT OF            **MOTION FOR PROTECITVE**
    HEALTH & HUMAN SERVICES,               **ORDER FOR STAY OF**
17  TRANSPORTATION SECURITY               **DISCOVERY [DKTS. 136, 145]**
    ADMINISTRATION, JULIE
18  CARRIGAN, ALASKA AIRLINES,
    ALLEGIANT AIR, AMERICAN
19  AIRLINES, DELTA AIR LINES,
    FRONTIER AIRLINES, HAWAIIAN
20  AIRLINES, SOUTHWEST AIRLINES,
    UNITED AIRLINES, YET-TO-BE-
21  NAMED EMPLOYEES OF THE 8
    AIRLINES, STAT-MD, & MEDAIRE,
22
            Defendant.
23

24
25
26
27
28

Before the Court are motions to dismiss by Defendants Centers for Disease Control and Prevention ("CDC"), the United States Department of Health & Human Services ("HHS"), the Transportation Security Administration, Julie Carrigan, Acting Division Director of TSA's National Transportation Vetting Center, in her official capacity (collectively, the "Federal Defendants"), [Dkt. 97], Alaska Airlines, Inc., American Airlines, Inc., Delta Air Lines, Inc., Hawaiian Airlines, Inc., Southwest Airlines Co., United Airlines, Inc., Frontier Airlines, Inc., and Allegiant Air, LLC's (collectively, the "Airline Defendants") [Dkt. 86], MedAire, Inc. ("MedAire") [Dkt. 92], STAT-MD [Dkt. 95], and Julie Carrigan, in her individual capacity [Dkt. 133], and the Airline Defendants' motion to stay discovery pending the Court's ruling on the above-mentioned motions to dismiss [Dkts. 136], which MedAire and STAT-MD join [Dkts. 145, 156]. For the reasons below, the Court **GRANTS** all Defendants' motions to dismiss and **DENIES AS MOOT** Airline Defendants' motion to stay.

## I.    BACKGROUND

Plaintiffs bring this lawsuit challenging the Federal Defendants' enforcement of the Federal Transportation Mask Mandate ("FTMM")[1] and the International Traveler Testing Requirement ("ITTR").[2] [Dkt. 1 ¶ 1]. Plaintiffs

---

[1] According to Plaintiffs, the FTMM they seek to challenge consists of 1) Executive Order 13998, 86 Fed. Reg. 7,205 (Jan. 26, 2021); 2) Department of Homeland Security Determination 21-130 (Jan. 27, 2021); 3) CDC Order "Requirement for Persons to Wear Masks While on Conveyances & at Transportation Hubs," 86 Fed. Reg. 8,025 (Feb. 3, 2021); 4) Transportation Security Administration Health Directives 1542-21-01D, 1544-21-02D, and 1582/84-21-01D (March 19, 2022); and 5) TSA Emergency Amendment 1546-21-01D (March 19, 2022). [Dkt. 1 ¶ 2].

[2] According to Plaintiffs, the ITTR they seek to challenge consists of the CDC Order "Requirements for Negative Pre-Departure COVID–19 Test Result or Documentation of Recovery from COVID–19 for All Airline or Other Aircraft Passengers Arriving into the United States from Any Foreign Country." 86 Fed. Reg. 69,256 (Dec. 7, 2021).

1    also claim the Airline Defendants committed acts of unlawful discrimination

2    against them.  Plaintiffs also allege claims against STAT-MD and MedAire, two

3    medical vendors who evaluate mask-exemption demands for several of the

4    Airline Defendants.

5    **A.   The COVID-19 Pandemic**

6    In December 2019, the novel coronavirus, later named SARS-CoV-2, was

7    first detected in Wuhan, Hubei Province, in the People's Republic of China.  *See*

8    *Declaring a Nat'l Emergency Concerning the Novel Coronavirus Disease*

9    *(COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 13, 2020).  The virus causes

10   a respiratory disease known as COVID-19, *id.*, which is highly contagious and

11   poses a risk of "severe" respiratory illness, meaning that infected persons may

12   require hospitalization, intensive care, or the use of a ventilator.  CDC,

13   *Requirement for Negative Pre-Departure COVID-19 Test Result or*

14   *Documentation of Recovery From COVID-19 for all Airline or Other Aircraft*

15   *Passengers Arriving Into the United States From Any Foreign Country*, 86 Fed.

16   Reg. 69,256, 69,259 (Dec. 7, 2021).  Severe cases may be fatal.  *Id.*

17   Additionally, asymptomatic persons can transmit the virus.  86 Fed. Reg. at

18   69,258.

19   On January 31, 2020, the Secretary of HHS declared a public health

20   emergency.[3]  On March 11, 2020, the World Health Organization (WHO)

21   classified COVID-19 as a pandemic.  85 Fed. Reg. at 15,337.  On March 13,

22   2020, then-President Trump declared the outbreak a national emergency.  *Id.*

23   **B.   The FTMM**

24   On January 21, 2021, President Biden issued an Executive Order

25   explaining that public-health experts "have concluded that mask-wearing,

26   _____

27   [3]  HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020),
     https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-
28   nCoV.aspx.

physical distancing, appropriate ventilation, and timely testing can mitigate the risk of travelers spreading COVID-19." Exec. Order No. 13998, *Promoting COVID-19 Safety in Domestic and Int'l Travel*, 86 Fed. Reg. 7205 (Jan. 26, 2021). The Executive Order also directed executive officials to require masks on various forms of transportation and while in transit hubs. *Id.* On January 27, 2021, the Department of Homeland Security issued a Determination of a National Emergency and directed the Transportation Security Administration ("TSA") to support "the [Centers for Disease Control and Prevention ("CDC")] in the enforcement of any orders or other requirements necessary to . . . mitigate the spread of COVID-19 through the transportation system."[4]

On February 3, 2021, the CDC issued the FTMM, which, in general, requires persons to "wear masks over the mouth and nose when traveling on any conveyance (e.g., airplanes, trains, subways, buses, taxis, ride-shares, ferries, ships, trolleys, and cable cars) into or within the United States" and "at any transportation hub." 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021). The TSA then issued directives, applicable to the Airline Defendants, to implement and support enforcement of the FTMM.[5] On February 5, 2021, the Department of Transportation ("DOT") issued a *Notice of Enforcement Policy: Accommodation By Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft*, [Dkt. 1-1 at 14], which provides specific instructions on how airline may implement the FTMM

---

[4] U.S. Dep't. of Homeland Security, *Determination of a National Emergency Requiring Actions to Protect the Safety of Americans Using and Employed by the Transportation System* (Jan. 30, 2021), https://www.dhs.gov/sites/default/files/publications/21_0130_as1_determination -national-emergency.pdf.
[5] TSA Security Directives, 1542-21-01D, 1544-21-02D, and 1582/84-21-01D; and TSA Emergency Amendment 1546-21-01D.

1  in a manner that complies with DOT requirements.  The airlines then began

2  implementing the FTMM accordingly.

3        The CDC stopped enforcing the FTMM effective April 18, 2022, *see*

4  Federal Transit Administration, *Federal Mask Requirement for Transit*,

5  https://www.transit.dot.gov/TransitMaskUp, in light of a court order in *Health*

6  *Freedom Def. Fund, Inc. v. Biden*, 599 F. Supp. 3d 1144 (M.D. Fla. 2022),

7  *appeal docketed*, No. 22-11287 (11th Cir. Apr. 21, 2022), which declared the

8  FTMM unlawful and is now on appeal before the Eleventh Circuit.

9        **C.      The ITTR**

10        On December 25, 2020, the CDC issued an order generally requiring air

11  travelers seeking to depart the United Kingdom with a final destination in the

12  United States to provide documentation of a negative COVID-19 test result to

13  the airline before departure.  *Requirement for Negative Pre-Departure COVID-*

14  *19 Test Result for All Airline Passengers Arriving Into the United States from*

15  *the United Kingdom (UK)*, 85 Fed. Reg. 86,933 (Dec. 31, 2020).  A few weeks

16  later, the UK variant had been identified in North America, along with another

17  highly transmissible variant from South Africa.  *Requirement for Negative Pre-*

18  *Departure COVID-19 Test Result or Documentation of Recovery From COVID-*

19  *19 for All Airline or Other Aircraft Passengers Arriving Into the United States*

20  *From Any Foreign Country*, 86 Fed. Reg. 6331, 6333–34 (Jan. 21, 2021).

21        On January 13, 2021, "[b]ased on increased transmissibility and spread of

22  these new variants of SARS-CoV-2, and to reduce introduction and spread of

23  these and future SARS-CoV-2 variants into the United States," the CDC

24  determined that "expanding current UK pre-departure testing requirements to all

25  foreign countries and U.S.-bound passengers is warranted."  *Id.* at 6334.  On

26  January 26, 2021, the CDC reissued the testing order with minor modifications,

27  superseding the January 13 version.  *Requirement for Negative Pre-Departure*

28  *COVID-19 Test Result or Documentation of Recovery From COVID-19 for all*

1  *Airline or Other Aircraft Passengers Arriving Into the United States From Any*

2  *Foreign Country*, 86 Fed. Reg. 7387 (Jan. 28, 2021). The justification for these

3  testing requirements was that "[i]ndividuals who travel may be at risk for

4  exposure to SARS-CoV-2 before, during, and after travel[,]" which "could

5  result in U.S.-bound travelers further spreading the virus to others during travel,

6  upon arrival in the United States, and at their destinations." *Id.* at 7389.

7  The most recent iteration of the order, the ITTR, was issued on December

8  7, 2021, providing that passengers age 2 and older traveling to the United States

9  from abroad generally must take a COVID-19 test one day before their flight

10  and present a negative test result (or proof of recovery from COVID-19) to

11  board. [Dkt. 97-3 at 2]. "[T]he emergent Omicron variant[,]" a more

12  transmissible strain of SARS-CoV-2 that is now dominant within the United

13  States, was "of critical significance" to the CDC's decision to continue the

14  testing requirement for international travelers. [*Id.* at 4].

15  Effective June 12, 2022, CDC rescinded the international traveler testing

16  order. *Rescinding Requirement for Negative Pre-Departure COVID-19 Test*

17  *Result or Documentation of Recovery From COVID-19 for All Airline or Other*

18  *Aircraft Passengers Arriving Into the United States From Any Foreign Country*,

19  87 FR 36129-01.

20  **II.   LEGAL STANDARD**

21  Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth

22  "a short and plain statement of the claim showing that the pleader is entitled to

23  relief," in order to "give the defendant fair notice of what the . . . claim is and

24  the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

25  (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A defendant may

26  move to dismiss a complaint under Rule 12 for any one of several specified

27  grounds, including lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1),

28

and failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6).

### D. Dismissal Under Rule 12(b)(1)

Rule 12(b)(1) tests whether Plaintiff has met his burden to show that the Court possesses subject matter jurisdiction over the action such that it may adjudicate the claims pressed in the action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994); *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000). A request to dismiss for lack of Article III standing is properly raised as Rule 12(b)(1) challenge to a court's subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A party may seek a Rule 12(b)(1) dismissal based "either on the face of the pleadings or by presenting evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). When a party asserts a facial challenge to subject matter jurisdiction, the Court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

### E. Dismissal Under Rule 12(b)(2)

Where a defendant moves to dismiss a complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). There are two types of personal jurisdiction, general and specific. "General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state 'are so constant and pervasive as to render it essentially at home' in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). Specific jurisdiction over a defendant exists "when a case 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414

n.8 (1984)). The Ninth Circuit has established a three-prong test to determine whether specific jurisdiction over a defendant exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff has the burden of establishing the first two prongs of the test, if either of the first two prongs is not met, specific jurisdiction does not exist. *Id.* If the plaintiff establishes the first two prongs, the burden shifts to the defendant to "present a compelling case" that exercising jurisdiction would be unreasonable. *Id.*

## F.     Dismissal Under Rule 12(b)(6)

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) test the legal sufficiency of the claims asserted in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Subject to Rule 12(b)(6), the Court reviews the complaint for facial plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true

1    (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote

2    omitted).

3            In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are

4    taken as true and construed in the light most favorable to the nonmoving party."

5    *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th

6    Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not

7    need detailed factual allegations," a plaintiff must provide "more than labels and

8    conclusions." *Twombly*, 550 U.S. at 555. Accordingly, to survive a motion to

9    dismiss, a complaint "must contain sufficient factual matter, accepted as true, to

10   state a claim to relief that is plausible on its face," which means that a plaintiff

11   must plead sufficient factual content to "allow[] the Court to draw the

12   reasonable inference that the defendant is liable for the misconduct alleged."

13   *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

14       **G.    Pleading Fraud with Particularity Under Rule 9(b)**

15           When an action alleges fraud, Rule 9(b) imposes additional pleading

16   requirements. A plaintiff alleging fraud "must state with particularity the

17   circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). This requirement

18   means that the plaintiff must identify the "time, place, and specific content of

19   the false representations as well as the identities of the parties to the

20   misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)

21   (citations omitted). "[A]llegations of fraud must be specific enough to give

22   defendants notice of the particular misconduct which is alleged to constitute the

23   fraud charged 'so that they can defend against the charge and not just deny that

24   they have done anything wrong.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d

25   550, 558 (9th Cir. 2010) (citation omitted).

26

27

28

## III.    DISCUSSION

### A.    STAT-MD's Motion to Dismiss

STAT-MD moves to dismiss based on a lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[6]  STAT-MD's role as described in the 159-page complaint is relatively limited.  The FTMM contains an exception for any "person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act."  [Dkt. 1 ¶ 219].  In order to determine which passengers can and cannot safely wear a mask, certain airlines consulted with STAT-MD and/or MedAire to evaluate "mask-exemption demands."  [*Id.* ¶ 7].  According to the Complaint, STAT-MD provides "'Airline Consultation Services' including In-flight emergency consultation as well as fitness-to-fly ground screening."  [*Id.* ¶ 37].  As part of its services, STAT-MD reviews mask-exemption demands submitted by airline clients "without ever talking to the passenger and/or his/her physician."  [*Id.* ¶ 1084].

In February 2022, Plaintiffs Uri and Yvonna Marcus ("Marcus Plaintiffs") purchased tickets to fly on an aircraft operated by Delta Airlines. [*Id.* ¶ 90].  According to the Complaint, STAT-MD consulted with Delta Airlines to deny the Plaintiffs  request for a masking exemption.  [*Id.*].  Based on STAT-MD's alleged conclusion that one or more of the Plaintiffs' alleged medical conditions did not prevent them from wearing a mask, Plaintiffs assert a claim for medical malpractice (Count 39) and a claim for conspiracy to interfere with civil rights (Count 20).

---

[6]  "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits.  Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  *Schwarzenegger*, 374 F.3d at 800–01 (9th Cir. 2004).

The Court lacks general personal jurisdiction over STAT-MD because the complaint is devoid of allegations demonstrating STAT-MD's "constant and pervasive" contacts with California, much less the requisite amount of contacts to render STAT-MD at home in California. *See Martinez*, 764 F.3d at 1066. Moreover, Plaintiffs concede STAT-MD is not subject to general jurisdiction in California. [Dkt. 131 at 7].

The Court also lacks specific personal jurisdiction over STAT-MD. Under the Ninth Circuit's three-prong test, it is Plaintiffs' burden to establish the first two prongs, which are that (1) STAT-MD purposefully directed its activities, consummated some transaction with the forum or resident thereof, or performed some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, and that (2) Plaintiffs' claims against STAT-MD arise out of or relates to STAT-MD's forum-related activities. *See Schwarzenegger*, 374 F.3d at 802.

Plaintiffs' allegations regarding STAT-MD fail to establish prong one of the test. Plaintiffs argue that STAT-MD should be subject to specific personal jurisdiction because of its contractual relationship with Airline Defendants who do business with passengers in California. However, as alleged in the Complaint, STAT-MD only "reviews mask-exemption demands submitted by its airline clients without ever talking to the passenger and/or his/her physician." [Dkt. 1 ¶ 884]. In *Andreadakis v. Ctr. for Disease Control & Prevention*, the court addressed similar allegations against STAT-MD and found plaintiffs' allegations insufficient to establish specific personal jurisdiction:

> Plaintiff alleges that STAT-MD reviews and denies mask-exemption demands for its airline clients "without ever speaking to the passenger or his/her doctor." (Compl. ¶¶ 671, 884.) Plaintiff makes no further allegations against STAT-MD. Plaintiff does not allege that any of this occurs in Virginia, nor that STAT-MD even knows whether the

-11-

exemption request comes from a passenger in Virginia. Indeed, Plaintiff's allegations of wrongdoing stem from the claim that STAT-MD only interacted with the airlines (located outside of Virginia), rather than Plaintiff or his doctors, perhaps located in Virginia. Accordingly, Plaintiff has not alleged that STAT-MD purposefully availed itself of the privilege of conducting business in Virginia.

No. 3:22CV52, 2022 WL 2674194, at *6 (E.D. Va. July 11, 2022). Likewise here, Plaintiffs do not allege that any of STAT-MD's action took place in California or that STAT-MD even knows whether the exemption request comes from a passenger in California. Plaintiffs' allegations do not constitute the type of purposeful direction toward California or purposeful availment of its laws required to establish the first prong of the Ninth Circuit's test for specific personal jurisdiction. The Court thus lacks personal jurisdiction over STAT-MD, and all claims against STAT-MD are **DISMISSED**.

### B. MedAire's Motion to Dismiss

MedAire also moves to dismiss based on a lack of personal jurisdiction. Like STAT-MD, MedAire's role in Plaintiffs' complaint is limited. According to the complaint, Marcus Plaintiffs "booked" roundtrip tickets on Defendant Hawaiian Airlines ("Hawaiian") on February 25, 2022 for round-trip tickets from Los Angeles (LAX) to Honolulu (HNL) on July 7 through July 14, 2022. [Dkt. 1 ¶ 102]. After booking, the Marcus Plaintiffs reached out to Hawaiian to request a mask exemption for their itinerary because they allegedly "are medically disabled and are unable to wear masks." [Dkt. 1 at 304]. Hawaiian informed the Marcus Plaintiffs that guests who are unable to wear a face covering due to a medical condition or disability would need to complete a medical assessment via phone with MedLink (a service provided by MedAire) at the airport on the day of their flight in order to be granted an exemption. [Dkt. 1 ¶ 104; *id.* at 304]. The Marcus Plaintiffs responded that they wanted to

obtain an exemption or provisional exemption prior to their arrival at LAX. [Dkt. 1 ¶ 304].

Plaintiffs allege that "mask exemptions were denied via Hawaiian's illegal 'Fit to Fly' process, which involved a full medical assessment with MedAire, who determined that mask exemptions could not be approved in advance" and that "Hawaiian would make no exceptions to its rule." [Dkt. 1 ¶ 105]. There is no allegation that the Marcus Plaintiffs presented to the gate on the day of travel or underwent any pre-flight telephone screen with MedAire, that MedAire entertained, let alone denied, a request for a mask exemption from the Marcus Plaintiffs, that the Marcus Plaintiffs ever interacted with anyone from MedAire, or that MedAire was ever contacted by Hawaiian in relation to the Marcus Plaintiffs' booking. [*See* Dkt. 1]. Finally, MedAire is not implicated by any other allegation in the Complaint. [*Id.*].

Plaintiffs concede MedAire is not subject to general personal jurisdiction in California. [Dkt. 130 at 28]. They instead contend the Court has specific personal jurisdiction over MedAire "based on those regular and daily actions arising out from the State of California where the Court is located, and out from the connection between those contacts and the lawsuit." [*Id.* at 29]. Plaintiffs further argue, in a conclusory fashion, that the Court has specific personal jurisdiction over MedAire "because of [MedAire's] contacts within the State." [*Id.*]. But similar to their deficient allegations regarding STAT-MD, Plaintiffs' allegations regarding MedAire do not constitute the type of purposeful direction toward California or purposeful availment of its laws required to establish the first prong of the Ninth Circuit's test for specific personal jurisdiction. The Court thus lacks personal jurisdiction over MedAire, and all claims against MedAire are **DISMISSED**.[7]

---

[7] Plaintiffs filed a Motion for Leave to Serve a Sur-Reply Memorandum of Law

## C.   Julie Carrigan's, in Her Individual Capacity, Motion to Dismiss

Defendant Carrigan, in her individual capacity, also argues this Court lacks personal jurisdiction over her.  Plaintiffs do not argue this Court has general personal jurisdiction over her but instead argues that specific personal jurisdiction exists.  However, the complaint is devoid of allegations sufficient to establish this Court has specific personal jurisdiction over Defendant Carrigan.

Plaintiffs first argue that Defendant Carrigan has a wealth of contacts in California in the form of employees she supervises.  However, that Defendant Carrigan supervises employees located in California is insufficient to establish the minimum contacts required for specific personal jurisdiction over her in her individual capacity.  *See Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state.").  Moreover, Plaintiffs' conclusory claim that Defendant Carrigan "individually benefitted from her contacts within the State of California" lacks support from factual allegations.

Plaintiffs also argue that the acts and events at the center of the claims against Defendant Carrigan occurred in California, namely that she sent a letter revoking Plaintiff Uri Marcus' PreCheck eligibility to a Post Office Box located in California and that Plaintiff Uri Marcus suffered injury in California as a result of the revocation.  However, Plaintiffs' claim against Defendant Carrigan

---

[Dkt. 168].  Plaintiffs' motion is more aptly considered as a notice of supplemental authority or a request for judicial notice of the case, *McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 521 (S.D. Tex. 2001).  The Court takes judicial notice under Fed. R. Evid. 201 of *McCaskey* but **DENIES** Plaintiffs' motion for leave to file a sur-reply.  Moreover, upon review, the Court finds that *McCaskey* is inapposite because the allegations regarding MedAire in that case differ significantly from the instant case.

is not the act of sending a letter to Plaintiff Uri Marcus but that she decided to revoke his TSA PreCheck status, which occurred outside of California. Moreover, although Plaintiff Uri Marcus claims he was injured by Defendant Carrigan in California, Plaintiffs' complaint lacks factual allegations to support that claim. As Defendant Carrigan notes, Plaintiff Uri Marcus admits that he lives in Israel and has not flown at all (let alone through California) since December 9, 2020, nearly a year before the TSA PreCheck revocation in November 2021. [Dkt. 166 at 3 n.2 (citing Opp. at 11; Dkt. 1 ¶¶ 20, 115–16, 882–83)].

Plaintiffs also argue personal jurisdiction is proper because Defendant Carrigan was served with the complaint through her attorney in California. But this is incorrect. The Parties filed a joint stipulation that Defendant Carrigan would accept service of process through her attorney who is located in Washington, D.C., not California. [Dkt. 96 at 2–3].

Even considering the totality of Plaintiffs' arguments, Plaintiffs have not met their burden to establish that personal jurisdiction exists over Defendant Carrigan in her individual capacity in California. *See Schwarzenegger*, 374 F.3d at 800. Therefore, all claims against Defendant Carrigan in her individual capacity are **DISMISSED**.

### D. Airline Defendants' Motion to Dismiss

#### 1. *Shotgun Pleading*

Airline Defendants argue that Plaintiffs' complaint should be dismissed because it constitutes a shotgun pleading. Shotgun pleadings violate Federal Rules of Civil Procedure 8(a) and 9(b) because they fail to provide defendants with a clear statement about what they allegedly did wrong, such as "in cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong." *Sollberger v. Wachovia*

*Sec., LLC*, No. CV 09-0766, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).

The complaint does not constitute a shotgun pleading because Plaintiffs have sufficiently identified what each Airline Defendant has allegedly done wrong. Although Airline Defendants point to certain allegations where Plaintiffs have alleged that "Airline Defendants" have violated the law [*see* Dkt. 86-1 at 15 (citing Dkt. 1 ¶¶ 893, 914, 931, 934, 1019, 1025, 1049, 1055, 1061)], Plaintiffs have provided Airline Defendant-specific allegations elsewhere in the complaint that identify the ways in which each Airline Defendant allegedly violated the law [*see, e.g.*, Dkt. 1 ¶¶ 495–589]. Because Plaintiffs' complaint does not constitute a shotgun pleading, the Court thus proceeds to evaluate whether Plaintiffs' allegations against the Airline Defendants are sufficient to state a claim.

**2. *Claims 20 and 21: Conspiracy to Interfere with Civil Rights and Neglecting to Prevent Interference with Civil Rights***

Plaintiffs have failed to sufficiently state claims for civil conspiracy (Claim 20) and neglecting to prevent a conspiracy (Claim 21). To state a claim of civil conspiracy under 42 U.S.C. § 1985(3), "a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of (the) conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'" *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971).

1    Plaintiffs' claim for conspiracy fails because Plaintiffs have only pled

2    conclusory allegations that a conspiracy exists and that the conspiracy was for

3    the purpose of depriving Plaintiffs equal protection of the laws or equal

4    privileges and immunities under the laws. [*See, e.g.*, Dkt. 1 ¶ 904 ("We have

5    presented facts above, and expect to further prove through discovery, that the

6    Airline Defendants conspired – with each other, with other air carriers, within

7    their own companies, and with STAT-MD and MedAire – to ban disabled flyers

8    because of a discriminatory motive.")]. In Plaintiffs' opposition to the instant

9    motion, they fail to identify any non-conclusory allegations in the complaint to

10   support their claim. Thus, Plaintiffs' Claim 20 is **DISMISSED** in its entirety.

11   Similarly, because Plaintiffs have failed to plausibly plead the existence

12   of a conspiracy, they have also necessarily failed to plead that the Airline

13   Defendants' employees neglected to stop a conspiracy. Therefore, Plaintiffs'

14   Claim 21 is also **DISMISSED**.

### 3. *Claims 22–30 under the Rehabilitation Act*

16   Airline Defendants move to dismiss Plaintiffs' Claims 22–30, brought

17   under the Rehabilitation Act, 29 U.S.C. § 794 ("RA"), arguing they are not

18   subject to claims brought under the statute. The RA prohibits discrimination

19   against disabled individuals with respect to any program or activity receiving

20   Federal financial assistance. 29 U.S.C. § 794(a). The Supreme Court has held

21   that the RA generally does not apply to commercial airlines, which did not

22   receive federal financial assistance within the meaning of the statute. *U.S. Dep't*

23   *of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 606 (1986); *see also*

24   *Woods v. Sw. Airlines*, No. CV0906416, 2010 WL 11596478, at *3 (C.D. Cal.

25   June 7, 2010) (finding Southwest Airlines received only compensation, which

26   did not constitute federal financial assistance under the RA).

27   Plaintiffs allege "[t]he Airline Defendants have accepted federal financial

28   assistance during the COVID-19 pandemic, subjecting them to the [RA]." [Dkt.

1 ¶ 914].  While Airline Defendants concede they received money from the U.S.
Government pursuant to the Payroll Support Program established under the
Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), they
argue such funds do not constitute "federal financial assistance" under the RA.

This exact issue was considered by the court in *Andreadakis*, 2022 WL
2674194, at *10, which held the airline defendants received CARES Act
funding to compensate for their economic losses created by COVID-19 and not
as a subsidy that constitutes federal financial assistance under the meaning of
the RA.  This Court agrees.

The Eleventh Circuit decided a similar question in *Shotz v. Am. Airlines,
Inc.*, 420 F.3d 1332, 1337 (11th Cir. 2005) and held that funds airlines received
from the federal government pursuant to the Stabilization Act constituted
compensation for losses in response to the economic crisis caused by the
September 11 terrorist attacks and did not constitute a subsidy or federal
financial assistance subjecting the airline defendants to liability under the RA.
*See also Lucius v. Fort Taco, LLC*, No. 21-22397-CIV, 2022 WL 335491, at *6
(S.D. Fla. Jan. 5, 2022) ("Defendant's receipt of PPP loans [under the CARES
Act] does not constitute federal financial assistance within the meaning of the
Rehabilitation Act.").

So too here.  The Court finds the funds the Airline Defendants received
from the government under the CARES Act were compensation in response to
the economic crises created by COVID-19 and do not constitute a subsidy or
federal financial assistance under the RA.  Airline Defendants are thus not
subject to the RA, and Plaintiffs' Claims 22–30 under the RA are **DISMISSED**.

### 4.    *Claims 23–30 under the Air Carrier Access Act*

Airline Defendants move to dismiss Plaintiffs' Claims 23–30, brought
under the Air Carrier Access Act, 49 U.S.C. § 41705 ("ACAA"), arguing
Plaintiffs lack a private right of action to pursue violations under the statute.  In

-18-

1  Segalman v. Sw. Airlines Co., 895 F.3d 1219, 1222 (9th Cir. 2018), the Ninth

2  Circuit joined the Second, Fifth, Tenth, and Eleventh Circuits in concluding that

3  Congress did not intend to create a private cause of action under the ACAA and

4  held that the ACAA does not create an implied private cause of action.

5  Although Plaintiffs request that the Court "judicially imply a private right of

6  action from a federal statute," [Dkt. 129 at 22–23], the Court is not at liberty to

7  rewrite statutes or create rights of action where none exist.  Plaintiffs' Claims

8  23–30 under the ACAA are thus **DISMISSED**.

9  **5.    *Claim 31:  California Unruh Act***

10      Airline Defendants argue Plaintiffs' Claim 31 under California's Unruh

11  Act, Cal. Civ. Code § 51(b), is preempted by federal law.  "Federal law

12  impliedly preempts state law when the state law 'regulates conduct in a field

13  that Congress intended the Government to occupy exclusively.'"  *Azocar v.*

14  *Delta Air Lines, Inc.*, 562 F. Supp. 3d 788, 792 (C.D. Cal. 2021) (citation

15  omitted).  "Courts should 'more readily' infer preemption 'in the field of

16  aviation' than in other fields because aviation 'is an area of law where the

17  federal interest is dominant.'"  *Id.*

18      Airline Defendants argue Plaintiffs' discrimination claims under the

19  Unruh Act are preempted by the ACAA, which exclusively governs allegations

20  of discriminatory or unfair treatment of passengers claiming a disability.  The

21  Unruh Act prohibits discrimination by business establishments in California

22  from discriminating against individuals with disabilities.  Cal. Civ. Code

23  § 51.1(a).  However, "[t]he ACAA comprehensively addresses not only

24  discrimination in the form of access to services and information, but also with

25  respect to assisting disabled passengers in boarding, deplaning, and connecting

26  to subsequent flights."  *Lagomarsino v. Delta Airlines, Inc.*, No. CV193131,

27  2020 WL 1955314, at *3 (C.D. Cal. Feb. 7, 2020).  The ACAA thus impliedly

28  preempts Plaintiffs' Unruh Act claim.  *See Azocar v. Delta Air Lines, Inc.*, 562

F. Supp. 3d 788, 794 (C.D. Cal. 2021) (dismissing plaintiff's Unruh Act claims as preempted by the ACAA); *Lagomarsino*, 2020 WL 1955314, at *3 (C.D. Cal. Feb. 7, 2020) (same). The Court thus **DISMISSES** Plaintiffs' Claim 31 under the Unruh Act.

### 6. *Claim 32: Breach of Contract*

Airline Defendants move to dismiss Plaintiffs' breach of contract claims as preempted by the Airline Deregulation Act ("ADA"). The ADA allows air carriers to "refuse to transport a passenger . . . the carrier decides is, or might be, inimical to safety." 49 U.S.C.A. § 44902(a)(2) (West). Additionally, the Airline Deregulation act contains a preemption clause that states as follows:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C.A. § 41713(b)(1) (West). The Supreme Court recognized an exception to the ADA for contract claims "alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's breach of its own, self-imposed undertakings." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 220 (1995). The *Wolens* exception is confined to "breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233.

Plaintiffs' breach of contract claim is preempted by the ADA. Plaintiffs claim Airline Defendants breached their respective contracts of carriage by "[f]orcing passengers . . . to wear a mask." [Dkt. 1 ¶ 1011]. However, an airline's refusal to transport a passenger based on safety concerns and the implementation of federal executive orders regarding such concerns are preempted by the ADA. *See* 49 U.S.C.A. §§ 41713(b)(1), 44902(a)(2) (West). The *Wolens* exception does not apply because the decision to implement the

-20-

FTMM—a federally-imposed obligation—"cannot be adjudicated without resort to outside sources of law." *Smith v. Comair, Inc.*, 134 F.3d 254, 257 (4th Cir. 1998) ("Because a court adjudicating Smith's contract claim could not confine itself to the terms of the parties' bargain, *Wolens* is not controlling."). Plaintiffs' breach of contract claim is thus preempted and **DISMISSED**.

### 7.    *Claim 33: Recklessness*

Airline Defendants move to dismiss Plaintiffs' claim for recklessness because reckless endangerment is a criminal not civil cause of action, *see* 6 Am. Jur. 2d Assault and Battery § 20 ("The crime of reckless endangerment is committed when a defendant commits an act that places another in imminent danger of death or serious bodily injury"), and "California does not recognize a cause of action for the tort of reckless endangerment." *Steward v. United States*, No. CV032715, 2006 WL 8443403, at *10 (C.D. Cal. June 8, 2006), *aff'd*, 282 F. App'x 595 (9th Cir. 2008). Plaintiffs do not cite any authority to the contrary. Accordingly, the Court **DISMISSES** Plaintiffs' Claim 33 for recklessness.

### 8.    *Claim 34: Practicing Medicine Without a License*

Plaintiffs' claim 34 alleges Airline Defendants requiring passengers to wear a mask constitutes practicing medicine without a license in violation of the Food Drug and Cosmetics Act ("FDCA"). There is no private right of action under the FDCA. *See Perez v. Nidek Co.*, 711 F.3d 1109, 1119 (9th Cir. 2013). Additionally, Plaintiffs' complaint lacks sufficient factual allegations to state a plausible claim of practicing medicine without a license. Moreover, to the extent Plaintiffs rely on the California constitution for their claims, state law claims regarding an airline's decision to refuse to transport passengers based on safety concerns and the FTMM are preempted by the ADA. *See* 49 U.S.C.A. §§ 41713(b)(1), 44902(a)(2) (West). Plaintiffs' claim for practicing medicine without a license is thus **DISMISSED**.

### 9. Claim 35: Invasion of Privacy

Plaintiffs bring Claim 35, invasion of privacy, under the California constitution. According to Plaintiffs, Airline Defendants illegally invaded Plaintiffs' privacy by asking for medical information to determine whether passengers were eligible for an exemption to the FTMM. Again, this is a state law claim regarding Airline Defendants' concerns of safety and their implementation of the FTMM. Thus, it is preempted by the ADA. *See* 49 U.S.C.A. §§ 41713(b)(1), 44902(a)(2) (West). Plaintiffs' Claim 35 is **DISMISSED**.

### 10. Claim 36: Deceptive and Misleading Trade Practices

Plaintiffs' bring Claim 36, deceptive and misleading trade practices, under the FDCA and Section 41712 of the ADA. However, there is no private right of action under either the FDCA, *Perez*, 711 F.3d at 1119, or Section 41712 of the ADA, *Greenstein v. Peters*, No. CV 08-6104, 2009 WL 654044, at *2 (C.D. Cal. Mar. 10, 2009) (citing *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 302 (1976)). Plaintiffs' Claim 36 is thus **DISMISSED**.

### 11. Claim 37: Fraudulent Misrepresentation

Plaintiffs' Claim 37 alleges Airline Defendants defrauded passengers by falsely representing that "federal law" requires airline passengers to wear face masks and by failing to advise passengers of the risk associated with wearing masks. However, Plaintiffs' claim regarding fraudulent misrepresentation are preempted by the ADA. *See Pica v. Delta Air Lines, Inc.*, No. CV 18-2876, 2018 WL 5861362, at *7 (C.D. Cal. Sept. 18, 2018) (collecting cases). Plaintiffs' Claim 37 is thus **DISMISSED**.

### 12. Claim 38: Infringement on the Constitutional Right to Travel

Plaintiffs' claim that Airline Defendants have deprived them of their constitutional right to travel by requiring them to wear face masks. While

individuals enjoy a constitutional right to travel, *Saenz v. Roe*, 526 U.S. 489, 498 (1999), "[Plaintiffs] do[] not possess a fundamental right to travel by airplane even though it is the most convenient mode of travel for [them]," *Gilmore v. Gonzales*, 435 F.3d 1125, 1137 (9th Cir. 2006). Moreover, as the court in *Andreadakis* noted, Plaintiffs have not been deprived of their right to travel:

> The Airline Defendants have not denied Plaintiff his fundamental right to travel. He may still travel by means other than aircraft. Further, he may travel by aircraft without a mask by obtaining an exemption. Or, he may travel by airplane with a mask. Thus, the Mask Mandate amounts to nothing more than a minor restriction on his travel, such that he cannot bring a claim for the denial of a constitutional right.

No. 3:22CV52, 2022 WL 2674194, at *13. So too here. Accordingly, Plaintiffs' Claim 38 is **DISMISSED**.

### E. Federal Defendants' Motion to Dismiss

#### 1. *Shotgun Pleading*

The Federal Defendants move to dismiss the entire complaint as a shotgun pleading. As discussed above with respect to the Airline Defendants' motion to dismiss, the complaint does not constitute a shotgun pleading. *See supra* Section III.D.1. Thus, the Court will not grant the Federal Defendants' motion on this basis and instead proceeds to evaluate the sufficiency of the individual alleged claims they challenge.

#### 2. *Claim 4: Congressional Review Act*

In Claim 4, Plaintiffs allege CDC and HHS violated the Congressional Review Act ("CRA") because they did not submit the FTMM to Congress prior to implementing it. [Dkt. 1¶ 791 (citing 5 U.S.C. § 801(a)(1)(A))]. However, "federal courts do not have jurisdiction over statutory claims that arise under the CRA." *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 563 (9th Cir. 2019). Plaintiffs' Claim 4 is thus **DISMISSED**.

### 3. *Claim 6: 10th Amendment*

Plaintiffs seek a declaration from the Court stating the FTMM is unconstitutional and the CDC and HHS violated the 10th Amendment of the United States Constitution by issuing the FTMM. The Tenth Amendment states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. However, as Plaintiffs concede, the United States Constitution grants the federal government to regulate interstate commerce. U.S. Const. art. I. § 8, cl. 3; [Dkt. 1 ¶ 781].

Plaintiffs argue that "the 10th Amendment precludes CDC and HHS from applying any national mask mandate to intrastate transportation" and that "[m]ost modes of transportation affected by the FTMM . . . never cross state lines." [Dkt. 1 ¶ 781]. However, the federal government's power to regulate interstate commerce "extends to those intrastate activities which in a substantial way interfere with or obstruct the exercise of the granted power." *Wickard v. Filburn*, 317 U.S. 111, 124 (1942) (citing *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 119 (1942)). Thus, Plaintiffs' allegations that the FTMM regulates some modes of intrastate transportation are insufficient to state a violation of the Tenth Amendment.

Plaintiffs also allege the FTMM violates the anti-commandeering doctrine. While "Congress may not simply 'commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program," "[t]he anticommandeering doctrine does not apply when Congress evenhandedly regulates an activity in which both States and private actors engage." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 78 (2018) (citation omitted). Therefore, "[b]ecause the FTMM applies to public and private mass transportation systems, Plaintiff[s'] Tenth Amendment challenge falls flat." *Wall v. Centers for Disease Control & Prevention*, No.

6:21-CV-975, 2022 WL 1619516, at *2 (M.D. Fla. Apr. 29, 2022). Plaintiffs provide no argument in opposition regarding their anti-commandeering allegations. The Court thus **DISMISSES** Plaintiffs' Claim 6.

#### 4. *Claim 7: Violation of the Fifth Amendment*

Plaintiffs claim they have been denied due process in violation of the Fifth Amendment because they "have been denied mask exemptions by private corporations such as airlines with no opportunity to appeal their decision to a neutral federal decision-maker." [Dkt. 1 ¶ 786]. "To qualify as a constitutionally protected, due process liberty interest, the interest must be 'objectively, deeply rooted in history and tradition of the United States, and must be implicit in concept of ordered liberty, so that neither liberty nor justice would exist if it were sacrificed.'" *Wall v. Centers for Disease Control & Prevention*, No. 6:21-CV-975, 2022 WL 1619516, at *2 (M.D. Fla. Apr. 29, 2022) (quoting *Kerry v. Din*, 576 U.S. 86, 93 (2015) (plurality)). However, the right to travel without a mask in the context of a global pandemic is not such an interest. *See id.* Thus, Claim 7 is **DISMISSED**.

#### 5. *Claims 8 and 15: Violation of the Constitutional Right to Travel*

Plaintiffs' Claims 8 and 15 allege the FTMM and ITTR, respectively, violate Plaintiffs' constitutional right to travel. However, as discussed above with respect to the Airline Defendants' motion to dismiss Plaintiffs' Claim 38, *see supra* Section III.D.12, while individuals enjoy a constitutional right to travel, *Saenz*, 526 U.S. at 498, (1999), "[Plaintiffs] do[] not possess a fundamental right to travel by airplane even though it is the most convenient mode of travel for [them]," *Gilmore*, 435 F.3d at 1137. Moreover, Plaintiffs' scant allegations regarding this purported constitutional violation are insufficient to state a claim that they have been deprived of their right to travel. Therefore, Plaintiffs' Claims 8 and 15 are **DISMISSED**.

### 6. Claims 10 and 16: Violations of the FDCA

Plaintiffs allege that the FTMM and ITTR violate the FDCA by allegedly forcing them to use medical devices that are unapproved by the FDA or under an Emergency Use Authorization ("EUA"). [Dkt. 1 ¶¶ 813–32, 862–70]. However, as discussed above with respect to the Airline Defendants' motion to dismiss Claim 34, there is no private right of action under the FDCA. *See supra* Section III.D.8 (citing *Perez*, 711 F.3d at 1119). Plaintiffs' Claims 10 and 16 are thus **DISMISSED**.

### 7. Claim 17: International Covenant on Civil & Political Rights

Plaintiffs claim the CDC and HHS violated the International Covenant on Civil & Political Rights ("ICCPR") by issuing the International Traveler Testing Requirement ("ITTR"), which generally prohibits airline passengers onto any aircraft destined to the United States from a foreign country unless the passenger presents a negative COVID-19 test or documentation that the passenger has recovered from COVID-19 in the past 90 days. *Requirements for Negative Pre-Departure Covid-19 Test Result or Documentation of Recovery From Covid-19 for All Airline or Other Aircraft Passengers Arriving Into the United States From Any Foreign Country*, 86 FR 69256-03.

But the ICCPR is "not self-executing and so did not itself create obligations enforceable in the federal courts." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004). Claim 17 is thus **DISMISSED**.

### 8. Claim 18: PreCheck Revocation

Plaintiffs claim TSA and Ms. Carrigan, the Acting Division Director of TSA's National Transportation Vetting Center, violated Plaintiff Uri Marcus' rights by revoking his TSA PreCheck status. Pursuant to 49 U.S.C. § 46110, TSA orders are appealable to only "the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for

-26-

the circuit in which the person resides. . . ."  The courts of appeals thus have "exclusive jurisdiction to affirm, amend, modify, or set aside any part of [a TSA order]."  *Id.* § 46110(c).  Orders regarding the PreCheck program are made pursuant to TSA's authority under Part A of Title 49, and therefore fall under section 46110.  *See* 49 U.S.C. § 44919 (governing administration of the PreCheck Program); *see also Gilmore*, 435 F.3d at 1132 ("Courts have given a broad construction to the term 'order'" in Section 46110); *id.* ("finality is key" to the inquiry and "if the order provides a 'definitive' statement of the agency's position, has a 'direct and immediate' effect on the day-to-day business of the party asserting wrongdoing, and envisions 'immediate compliance with its terms,' the order has sufficient finality" to fall under section 46110); [Dkt. 1 at 323 ("This letter constitutes TSA's final decision.")].

Plaintiffs cannot "escape the jurisdictional limitations of § 46110 by claiming that [they] assert[]" a constitutional challenge to the TSA's order.  *See Corbett v. United States*, 458 F. App'x 866, 871 (11th Cir. 2012).  Thus, Plaintiffs characterization of TSA's revocation of Plaintiff Uri Marcus' PreCheck status as "blatant retaliation for his First Amendment-protected activities," [Dkt. 1 ¶ 882], does not grant the Court jurisdiction to review the TSA's order.  Because the Court does not have subject matter jurisdiction over Plaintiffs' Claim 18, it is thus **DISMISSED**.

### F.    Mootness

The Court ordered the Parties to submit supplemental briefing regarding potential mootness of Plaintiffs' claims.  After reviewing the Parties' submissions, the Court finds none of Plaintiffs' claims are moot at this time.

### G.    Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15, 15(a)(2), "[t]he court should freely give leave when justice so requires."  Therefore, the Court **GRANTS** Plaintiffs leave to file an amended complaint.  If Plaintiffs wish to

file an amended complaint, they are **DIRECTED** to do so no later than **March 16, 2023**. Plaintiffs are further **DIRECTED** to file a "redlined" version of the amended complaint identifying all additions and deletions of material as an appendix to the amended complaint. An additional copy of the redlined complaint must be provided to Chambers by email at SSS_Chambers@cacd.uscourts.gov on the same day the amended complaint is filed electronically.

### H. Airline Defendants' Motion for Protective Order for Stay of Discovery

Airline Defendants, joined by Stat-MD and MedAire, seek a stay of discovery, pending the Court's decision on their respective motions to dismiss. In light of the instant ruling deciding all motions to dismiss filed by all Defendants, the Court **DENIES AS MOOT** Airline Defendants' motion for protective order for stay of discovery.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **DENIES** Plaintiffs' motion for leave to file a sur-reply [Dkt. 168];

2. The Court **GRANTS** STAT-MD's motion [Dkt. 95] and **DISMISSES WITHOUT PREJUDICE** all claims against STAT-MD;

3. The Court **GRANTS** MedAire's motion [Dkt. 92] and **DISMISSES WITHOUT PREJUDICE** all claims against MedAire;

4. The Court **GRANTS** Defendant Carrigan's motion [Dkt. 133] and **DISMISSES WITHOUT PREJUDICE** all claims against Defendant Carrigan in her individual capacity;

5. The Court **GRANTS** the Airline Defendants' motion [Dkt. 86] and **DISMISSES WITHOUT PREJUDICE** Claims 20–38;

6. The Court **GRANTS** the Federal Defendants' motion [Dkt. 97] and **DISMISSES WITHOUT PREJUDICE** Claims 4, 6–10, 15–18;

7. The Court **GRANTS** Plaintiffs leave to file an amended complaint no later than March 16, 2023; and

8. The Court **DENIES AS MOOT** Airline Defendants' motion for protective order for stay of discovery [Dkts. 136, 145].

**IT IS SO ORDERED.**

Dated: February 21, 2023

SUNSHINE S. SYKES
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LEIA MONTGOMERY and )
KRISTEN MEGHAN KELLY, )
                         )
         Plaintiffs, )
                         )
v. )
                         )
DELTA AIR LINES, INC., )
                         )
         Defendant. ) Civil Action No. 3:21-CV-2715-C

**ORDER**

On this date, the Court considered Defendant's Motion to Dismiss, Plaintiffs' Response,

and Defendant's Reply. In this lawsuit, Plaintiffs challenge the Defendant's decision to preclude

Plaintiffs from flying onboard Delta aircrafts because of their refusal to wear a mask during the

Covid pandemic and mask mandates. They also allege that they suffered tort damages when

forced to explain personal details related to why they refused to wear a mask.

After considering the arguments and relevant law, the Court is of the opinion that the

Motion should be **GRANTED** for the reasons argued by Defendant in its Motion and Reply.

More specifically, the Court finds that the Airline Deregulation Act (ADA) preempts Plaintiffs'

claims, including their invasion of privacy and other tort claims. Plaintiffs have failed to identify

any self imposed undertaking by Defendant in its contract for carriage that would allow a *Wolens*

exception to the preemption to apply in this instance.[1] Plaintiffs' claims stem from the federal

---

[1]A plaintiff may identify a specific contractual obligation that creates a self-imposed
undertaking for an exception to the Airline Deregulation Act to apply. *See American Airlines v.
Wolens*, 513 U.S. 219, 228-232 (1995).

mask mandate and are directly related to air carrier service of transporting passengers.  Likewise, the claims for negligent and intentional infliction of emotional distress are preempted under the Federal Aviation Act (FAA), ADA, and Air Carrier Access Act (ACAA).  Furthermore, as aptly argued by Defendant, Plaintiffs' pleadings fail to state a claim for either intentional infliction or negligent infliction of emotion distress.  Finally, there is no private right of action under the Air Carrier Access Act to support Plaintiffs' requests for declaratory and injunctive relief.

As such, Plaintiffs' claims are **DISMISSED** with prejudice for the reasons argued by Defendant.

SO ORDERED.

Dated June  /3 , 2022.

SAM R. CUMMINGS
SENIOR UNITED STATES DISTRICT JUDGE

2