## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AARON ABADI,** | |
| Plaintiff | **CASE #  1:23-cv-04033-LJL** |
| V. | |
| **AMERICAN AIRLINES, INC., et al** | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTIONS TO DISMISS BY AMERICAN AIRLINES, INC., DELTA AIRLINES, INC., JETBLUE AIRWAYS CORPORATION, SOUTHWEST AIRLINES CO., UNITED AIRLINES, INC., ROBERT LAND, ROY GOLDBERG, DEBBIE CASTLETON, & NATHALIE SIMON

BY:

AARON ABADI
Pro Se Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
Tel: 516-639-4100
Email:  aa@neg.com

COMES NOW Plaintiff, *pro se*, and responds to Defendants' Motions to Dismiss (Docs. 121-122). The Complaint was pretty thorough and did address many of the issues raised in these motions. Plaintiff will attempt to focus in this response on elaborating on some of that, and/or addressing issues not responded to in the Complaint itself.

Plaintiff, Aaron Abadi, has sensory processing disorder. He cannot wear a mask or glasses, or anything on his head or face. When the airlines started requiring masks, they refused to allow Plaintiff to fly, and/or discriminated against him constantly. He was yelled at, denied access to fly, and even once left stranded in France. This lasted throughout the mask policies and mandates. He provided evidence of his disability, but these airlines did not care.

The inability to travel, caused severe financial injuries to Plaintiff, who is currently penniless and had to file this with the generous help of the Court, through an IFP Motion. Plaintiff had his entire income destroyed and ability to make income was taken from him. The Motion to Dismiss addresses many of the Counts of the Causes of Action, and Plaintiff will respond accordingly.


## ATTACKING THE VICTIM

It seems like the best way to defend oneself nowadays is to attack the victim. These airlines know that they have violated the law, they almost admit it in their

motion. They just figure if they put the victim of their discretions up to scrutiny, then they don't have to pay for their misdeeds. Plaintiff will respond to their allegations.

Defendants are trying to DEFAME Plaintiff through insinuation. The attorneys for sure should know better than that. Isn't this something that deserves sanctions?!

## THERE IS NO COALITION THAT PLAINTIFF IS A PART OF

Defendants mention that "Plaintiff is part of an online coalition of persons – Americans Against Mask Mandates." That is misleading and dishonest. Yes, there is a Facebook group with such a name. Plaintiff is a member of over fifty Facebook groups. These are not coalitions. The Defendants were trying to group all the people together and then make this Plaintiff responsible for someone else's lawsuit and/or actions. That would not be fair.

Every American is entitled to his own due process. How do we know why or how those other Plaintiffs presented their cases? Were they actually disabled? Do they have evidence? Did they file in a timely manner? I can go on for days with these questions. There are so many parts to a lawsuit, and so many reasons a case can be won or lost. This Plaintiff is entitled to a Jury of his peers. How can he get justice, if it means something if someone else had a similar case and he lost. That

is un-American. Besides, I'm sure there are others that did not lose. Did the Defendants list all cases, whether they won or lost, and all the reasons? Of course not.

Yes, there is a guy, Lucas Wall, mentioned below from the case, Wall v. Transportation Sec. Admin, that sued a few of these airlines. He may have suggested that their such a group. It is Plaintiff's understanding that it is not actually an organized group, and Plaintiff is not a member of any such group.

Plaintiff asks this Court to ignore all those cases and allow this Plaintiff his due process, without requiring him to review every other case from this so-called coalition that does not exist.


**PLAINTIFF IS NOT A SERIAL LITIGANT**

The Defendants list many cases that this Plaintiff filed in this and other courts.  The real number is probably many times that. In their motion, Defendants seemingly tried to suggest that Claimant was a serial litigant, assumably because courts do not appreciate such actions. The goal of the Defendants was to appeal to this court's discontent of serial litigants, and those bringing frivolous lawsuits just to bother the courts and annoy people, and maybe make a few dollars on the way. Obviously, the purpose of presenting all those cases were to make it seem like Claimant is a serial litigant.

Please allow me to respond. If Claimant was a serial litigant, why would he have not brought a single complaint or lawsuit prior to the Covid era? Claimant is 58 years old and had ample opportunity to bring lawsuits. The actual truth is that Claimant suffered significantly during Covid, because suddenly big corporations that often lecture us about virtue, were suddenly throwing him out of stores, and modes of transportation, due to his disabilities, and/or banning him from entering. Employees were emboldened and encouraged to yell at him and even on many instances they called the police to remove him.

What happened to our society?! How have we fallen so low?! Not allowing a person with a disability to enter a store, or enter an airplane, due to his disability; is that who we are?! Is there a difference between banning me from entering your store, or banning a person in wheelchair from entering?! Put up a big sign, "everyone must walk; no wheelchairs allowed." Why is one considered very wrong, and the other is encouraged. There seems to be some strange political bias with regards to mask wearing in the United States. In other countries, I'm glad to say that I was treated wonderfully, when I was lucky enough to find an airline that would take me. The second I say medical disability, everyone would immediately accommodate. What happened here in the United States. Have we lost our moral compass due to a little extra fear?!

I have been fighting this in courts, in human rights commissions, and in many forums. I won't stop fighting until I know that this can never happen again. My entire business, my income, and any money that I had was destroyed by these horrible actions done by people who could not get their moral compass in check. I cannot and probably will not survive another situation like this, where during a two-year period I was banned from hotels, stores, airplanes, restaurants, and even hospitals. I will keep fighting until I know that this cannot happen again. You see, because of Claimant's inability to travel and to move about, his income was destroyed. He has been in the waste management industry for thirty years, and his entire career requires extensive travel and interaction with companies and people.

I have settled with at least five companies already. The ones that chose to fight me back, end up spending hundreds of thousands to millions on their legal fees alone. If that's what it takes to discourage future actions like this, then I have been successful. The ones that settle, have it much easier. I accept a few dollars, a fraction of the cost of the filing of a single pleading, and most important, I get some kind of assurance and/or assistance that this can never happen to me again. I usually get a point of contact within the company that I can call in the future if this were to reoccur.

So, no, I am not a serial litigant. I believe that as a disabled person, my rights have been trampled upon. The fact that so many people and companies were

comfortable trampling on my civil rights, and the fact that some lawyers, and even some courts were okay with my rights being stripped from me, does not make me a serial litigant and does not make me wrong in my actions of fighting back.

While I don't consider this in any way similar to Martin Luther King Jr. ("MLK"), I want to point out a simple example. Imagine if MLK were to shy away from his fight, because so many people were comfortable denying human rights to black people in those years. Wouldn't that be sad. He fought and he fought and he won. There is only one way to proceed when a person's human rights are violated; especially when the violations are rampant, and unapologetic.  It is not just for myself.  Hundreds of people shared similar stories over the past two years. We should not have to suffer like this.

Thank God, the suggestions that Defendants made that would make it seem like I am losing everywhere, is NOT TRUE AT ALL. I won an appeal in Florida against Disney and against the Florida Commission on Human Rights. I won against many airlines at the Dept. of Transportation's ("DOT") disability complaint division. These airlines were determined by the DOT to be in violation of federal disability complaints, because they refused to allow me access to fly on their airplanes. Unfortunately, the DOT refused to enforce it or punish them in any way, so hence I filed this lawsuit in federal court against the majority of airlines (46) flying in the United States and from the US abroad, as I believe without

repercussions this can happen again. I claim that their actions directly caused my suffering, my damages, and my loss of business and income.

I won against Target at the Third Circuit Court of Appeals. This is not how I want it to go down. My biggest wins were with companies like Nordstrom, where upon my initial complaint internally to their regional manager, they immediately apologized and offered to send me the $30 pair of shoes that I was trying to buy, until their manager threw me out. The shoes were a nice touch, but the immediate apology was awesome. Best Buy also apologized immediately. There are some decent people left. Trader Joes never threw me out even once. It's the only chain that I went to so many of their stores and the people were wonderful. It is not easy living with a disability. I'm glad that there still are some decent people around.

Sadly, while the lawyers make hundreds of thousands of dollars litigating this, probably knowing it is wrong, the clients spend all that money thinking that I'm just another baloney disability complaint. I will continue fighting until I hit the end of the road or I win. I've had five or six cases in federal circuit courts. I have six or seven cases that I have filed in the US Supreme Court. I cannot stop this fight. No, I am not a serial litigant. I am a person with a disability whose life was destroyed by discrimination. This is happening right here in the United States, the country who lectures every other country on human rights, and by those big

corporations like these airlines, Apple, Target, and Walmart, who love to lecture us on right and wrong! They should first look in the mirror.


## IFP MOTION WAS TRUE

The best trick when you attack the victim of your crimes, is to create a rumor and/or conjecture, and hope it sticks.  Try damaging your victim's reputation. These Defendant's chose to accuse Plaintiff of lying on his Motion for In-Forma Pauperis ("IFP"), without any actual evidence.  They figure that they will present the accusation and hope it sticks. Well, it is absolutely not true and offensive.

Defendants brought the case in Nevada District Court, Abadi v. Caesars Entertainment, where without sufficient evidence the magistrate judge decided to question Plaintiff's indigency. Of the many dozens of cases that Plaintiff brought, only that one case had the IFP overturned. Plaintiff tried to appeal, but was denied. Instead, Plaintiff was allowed to sue in the State of Delaware, where his IFP was approved.

In Abadi v. Walmart in Maine, this issue was brought up, and the judge there found that the claim of indigency was true.  In Abadi v. Target in the Eastern District of Pennsylvania this was brought up, and the Judge determined that there was not sufficient evidence brought to prove any such thing. The Defendants

quoted these cases, so they knew this, but chose not to tell this Court that the other

Courts did not accept such accusations, as there was no evidence.  I ask this Court

to demand that Defendants do not make accusations without any evidence. If

Plaintiff made the allegations in this Complaint without any evidence, his

Complaint would have been dismissed sua sponte.


## 42 U.S.C. § 1985(3) & 1986 – THE FEDERAL CONSPIRACY STATUTES

Plaintiff elaborated in the complaint, carefully addressing all the arguments

that Defendants were going to present with respect to these conspiracy statutes.  I

will just add a few points here.

Defendants state ““The original purpose of § 1985(3), which was passed as

the Ku Klux Klan Act of 1871…”  They try to negate the idea of these statutes, yet

there is caselaw that show that these statutes are alive and active, and will remain

that way, until and unless Congress makes a change.  The Defendants' statement is

disingenuous.

My favorite argument was this: "The Complaint Fails to Allege the

Existence of a Conspiracy."  Wow! Forty-six airlines, federal agencies, medical

advisory companies, and their employees all happen to be doing the exact same

discrimination, yet there was no conspiracy.  It is just coincidence. This was also

addressed in the Complaint. Being that 1985 (3) is valid, then the same goes for 1986.

## PLAINTIFF CAN SUE THE ATTORNEY IN THIS CASE

As described and argued in the Complaint, the attorney, Roy Goldberg, in this case went beyond the level of advising his client, and actually participated in the violations themselves.  He can no longer hide beneath the veil of attorney/client, as he was a participant. If a client robs a bank and his attorney opens the safe for him, he is no longer protected as the attorney.

## ACAA PRIVATE RIGHT OF ACTION

This was addressed thoroughly in the Complaint. There is no binding precedent or settled law saying there is no private right of action.  There is a belief that there is a robust enforcement scheme at the Department of Transportation ("DOT"). That was the entire basis of the idea that there should be no private right. Well, guess what, that was proven wrong.

There probably was no need for major enforcement in the past, because airlines would police themselves, often to avoid bad publicity. We all believed there was an enforcement scheme. No one really knew, because there wasn't much to enforce. Suddenly, there is Covid and an all-encompassing mask mandate, and

we find out very clearly that there is no enforcement at all.  Congress wants these laws to be kept, and it is appropriate for this Court to confirm that the disabled are entitled to enforcement of their laws protecting their civil rights.

The Circuit Court cases were not en-banc and are not binding precedent. They were based on a mistake or misunderstanding.  The Circuit Court cannot say that they cannot require the DOT to enforce the law and simultaneously say that there is a robust enforcement scheme.  It is only possible to be one or the other. This is a contradiction. See the Complaint for more on this argument.


## THE REHABILITATION ACT ("RA")

The RA was also argued thoroughly, and here in their Motion, Defendants admit that they had to sign the paper stating that they would be subject to… the RA. (MTD - Page 33 of 60)

Additionally, Defendants brought a bizarre caselaw from a district court on the other side of the map, from 1981. While this caselaw is not at all binding or even any indication, you can see that the caselaw actually supports our case. The case is Angel v. Pan American World Airways, Inc., 519 F. Supp. 1173 - Dist. Court, Dist. of Columbia 1981. Defendants bring this case (Page 12) to prove that if the airline no longer receives federal funds, they're no longer liable for RA. Defendants failed to point out that in that case in 1981, they were trying to use

funding from November 1, 1956 to bind them to the RA. That would be ridiculous. In our case, it was in the same few months, during the same pandemic, and Defendants signed to the federal government that they will abide by the RA.

Defendants quoted Hingson v. Pacific Southwest Airlines, 743 F. 2d 1408 - Court of Appeals, 9th Circuit 1984 (page 12). They tried to deduce from the wording that if the subsidy from the federal government was given yesterday, then it doesn't count, since they are no longer receiving a subsidy.  That is not what is written.  The point in that case is that the federal funding that they were receiving was never a subsidy at all, but rather payment for carrying mail. The Defendants took the Court's words out of context.

In the last case they quoted, Edmonds-Radford v. SW. Airlines Co (Page 12), they were just bringing frivolous caselaw, probably hoping no one will read it. They themselves explain that that case is about the AIRPORT receiving federal funding and therefore the AIRLINE is not liable for the RA. Of course, they should not be liable based on that distant connection.


**THE CONSTITUTIONAL RIGHT TO TRAVEL**

Defendants brought a bizarre case of Gilmore v. Gonzalez, 435 F.3d 1125, 1136 (9th Cir. 2006), as evidence that American citizens have no constitutional right to travel. The case was about some fellow that wanted the right to travel

without showing any identification. I am surprised that it was not thrown out immediately for being frivolous. It was not a pro se case, so they gave them more latitude.  Sadly, it should be the exact opposite.

There is no comparison to our case. In that case, valid rational restrictions were placed on those who want to travel by plane. There is no constitutional right to travel in any way that a person wants. A person cannot come on an airplane naked, and say if you throw me off, you're interfering with my constitutional rights. That is ridiculous.  There is a constitutional right to travel, and no one can dispute that.  In my case, the Greyhound Bus company, Amtrak, and most airlines denied my right to travel. There were no significant alternative options.

If there was a valid health or safety regulation or policy that was implemented, maybe there would be a justification.  That is not the case here. Here, the CDC, TSA, DOT, and every state mask mandate EXEMPTED THOSE WITH DISABILITIES THAT CANNOT WEAR A MASK. Plaintiff had already had Covid, and thus had natural immunity. As shown in the complaint, the CDC stated at the time that Covid reinfection was rare. There was no valid health issue to be concerned about.

The reason these airlines refused to take this disabled Plaintiff can very likely be due to the complication and confusion it can cause when someone comes on a plane without a mask and others will look and be upset. I did fly without a

mask on several flights, and that aspect was easily resolved.  Either I authorized

the flight attendants to notify the nearby passengers of my medical situation, or I

did it myself. People were very gracious.  There was never a tumult. The airlines

should have worked that through rather than violate my constitutional right to

travel.

The case that Defendants quoted reads as follows:

 "Although we recognized the fundamental right to interstate travel, we also
acknowledged that "burdens on a single mode of transportation do not
implicate the right to interstate travel." Id. at 1205 (citing Monarch Travel
Servs., Inc. v. Associated Cultural Clubs, Inc., 466 F.2d 552, 554 (9th Cir.
1972))." Gilmore v. Gonzales, 435 F.3d 1125, 1136-37 (9th Cir. 2006).

The Defendants in their motion took this case a bit out of context. It did not

just say "there is no constitutional right to travel by plane." That would not be

accurate. In our case here, I was denied access to go by plane, I was denied access

to go by train, I was denied access to go by bus, and I was denied access to use

ride-share services. Then I tried going by car. I did go from New York all the way

to California on two occasions during Covid.  Everywhere I went it was a

challenge.  I can pull up to a gas station and they won't let me in the store to get a

sandwich and a coffee.  Apple, Starbucks, Walmart, Target, Quick Chek, and so

many others would not let me in.  So, if I need to get to California, tell me how I

am able to.  When I originally went by car, I survived, but that was because it was

all the way in the beginning, when the madness was not as severe.

The Court in Gilmore seemed to base its main argument on the fact that, "the identification policy's "burden" is not unreasonable." Meaning, asking people at the airport for identification, is not unreasonable. Yeah. That is real, that makes sense, and that is rational. In our case here, all the guidance and regulations exempted Plaintiff from wearing a mask. Defendants denied this Plaintiff his human rights, and denied this Plaintiff his constitutional right to travel in conjunction with the rest of the transportation industry.

## 42 USC 1986 IS NOT TIME BARRED IN THIS CASE

Defendant quotes the following: ""the claim accrues when the plaintiff knows or has reason to know of the harm or injury that is the basis of his action."

This situation was fluid. The discrimination was continuous over many months. It was difficult if not impossible to know if there will be harm, what that harm would be, and if there was liability to the Defendants. Plaintiff can show that he had no way of knowing he can sue and that he should sue much before he did sue. This can be addressed in the litigation, but should certainly not be addressed here in a motion to dismiss. Besides, 1986 is about people not stopping discrimination when they had the opportunity. Plaintiff could not know who had the opportunity, when and how, until after months of significant research and review.

Additionally, Plaintiff began the process of complaining, by complaining to the Department of Transportation ("DOT"), as he thought that was where his rights were best addressed. After not getting much help there, he filed a petition for review, as described herein. During the time of all this litigation, both in the Courts and in the Administrative Tribunal, the statute of limitation is tolled, especially since initially the Plaintiff was expected to pursue redress exclusively through the DOT.

**STATE CIVIL RIGHTS CLAIMS**

Defendants tried to have the UNRUH & NJLAD & Texas Civil Rights & New York City Civil Rights counts dismissed.  Their rationale is that Plaintiff is not a citizen or resident of California or New Jersey or Texas.  That is not the requirement.  By the fact that Plaintiff needed to travel to California, and was several times in California, but was denied an ability to fly by these airlines in California, to California, and from California, that puts this discrimination right in the jurisdiction of the California UNRUH. The same goes for the other states. New York City ("NYC") doesn't fit this aspect. I'm assuming that was a mistake by the Defendants for including NYC, as Plaintiff lives in NYC, and the JFK Airport and LaGuardia Airport are both in NYC.

Plaintiff has a lot of family in New Jersey, spends a lot of time in New Jersey.  He needed to travel from New Jersey dozens of times. Besides, one of the main airports, local to New York City, is actually in New Jersey. That is Newark Liberty Airport.  Plaintiff travels to and from that airport all the time.  As Plaintiff is writing this response, he is on a plane heading to EWR, Newark Airport.

Preemption does not apply, as the entire purpose of state human rights laws are in addition to federal laws. If preemption existed, these laws would all be meaningless. The only time preemption exists is if there is a conflict. For example, if federal law requires a 15-foot ramp for wheelchair access, and state law says only 14-feet, then the state law would be preempted by the federal law. Adding damages to existing federal law that has no damages, is not a problem of preemption.

Here is a clarification of the preemption concept by the Supreme Court of the United States.

"Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land;. .. any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus, since our decision in McCulloch v. Maryland, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." Maryland v. Louisiana, 451 U. S. 725, 746 (1981). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 230 (1947). Accordingly, "`[t]he purpose of

Congress is the ultimate touchstone' " of pre-emption analysis. Malone v. White Motor Corp., 435 U. S. 497, 504 (1978) (quoting Retail Clerks v. Schermerhorn, 375 U. S. 96, 103 (1963)).

Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U. S. 519, 525 (1977). In the absence of an express congressional command, <u>state law is pre-empted if that law actually conflicts with federal law</u>, see Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n, 461 U. S. 190, 204 (1983), or if federal law so thoroughly occupies a legislative field "`as to make reasonable the inference that Congress left no room for the States to supplement it.' " Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta, 458 U. S. 141, 153 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 U. S., at 230)." Cipollone v. Liggett Group, Inc., 505 US 504 - Supreme Court 1992.

There most certainly is no preemption without a real conflict.

And finally, the bizarre argument that New Jersey law requires a disability, and not being able to wear a mask is not a disability. Plaintiff made his medical issues very clear and his doctors confirmed that he has a valid disability. Defendant wrote the following: "The Complaint does not cite to any authority for the position that refusal to wear a mask qualifies as a disability under the NJLAD." This sounds a bit like gaslighting. NJLAD follows the ADA guidelines for what is a disability. Plaintiff proved that his disability falls under ADA guidelines. Defendants' statement is frankly offensive, as it makes light of Plaintiff's disability and his struggles because of them.

**TORT**

Defendants brought up preemption again. As Plaintiff describes in the Complaint and elsewhere in this document, preemption does not apply here.

With regards to the "one year" comment, I assume they are suggesting that Plaintiff missed the statute of limitations.

First of all, the clock starts on statute of limitations only after the Plaintiff was able to ascertain that he had a case. It took a much longer period for Plaintiff to realize that he can sue. Those were the big questions. Does ACAA have a private right of action? Does it preempt the other claims? Must an aggrieved person work only through the Department of Transportation ("DOT"), or not? Plaintiff followed the procedures described to him by the administrative agency and by the Courts. In the interim, the statute of limitations is tolled.

Plaintiff initially filed Petition for Review for the Second Circuit Court of Appeals to determine those laws. In the Second Circuit it was 21-2807 In Re: Aaron Abadi, filed 11/01/2021. The next case was in the DC Circuit Court of Appeals, case # 22-1012. Both cases were thrown out for similar reasons. The DC Circuit articulated that reason, saying, Plaintiff could not show "a legal requirement that the Department of Transportation ("DOT") resolve his complaints against airlines within a certain time period, nor a legal requirement that DOT take any other discrete action that it allegedly has failed to take."

20

The basic idea was that there was no requirement for the DOT to have a robust enforcement scheme, and therefore, only then would Plaintiff have clearly understood that he has a case that he can take to court. He then applied for a writ of certiorari at the Supreme Court. The writs were denied. The most recent and final denial was Supreme Court case # 22-5026, which was denied on October 3, 2022. It is settled law that the statute of limitations is tolled during these lawsuits.

Additionally, Plaintiff did first try obtaining redress through administrative procedures, by going through the DOT's complaint processes. Those processes are still active, and not yet finalized. Therefore, technically, the statute of limitations should not yet start.

Second, the statute of limitations are not all one year. I won't bore this court with a full list of statute of limitations per state, because of the first explanation, as the statute is tolled.

The Defendants also claim that "the Complaint fails to allege the requisite elements of the tort claim, including an allegation that the Moving Defendants engaged in "an intentional infliction of economic damage, without excuse or justification." That is not true. They should read the Complaint.

## NEGLIGENCE

Defendants want this dismissed due to preemption.  This was responded to in several places in this document and in the Complaint.  That same response applies to negligence.

## INFLICTION OF EMOTIONAL DISTRESS

Defendants claim that "Plaintiff's allegation of being required to wear a mask to board an aircraft does not rise to the level of outrageous and extreme conduct that is required to support a claim."

Imagine if there was a person who needed a wheelchair, and he came to the airline to fly and they said, "Sorry, we don't allow anyone to fly with us if they cannot walk of their own volition." Imagine that they would outright deny someone to fly on their plane just because he needs a wheelchair. We would all say "oh my god! That is extreme and outrageous conduct!"

Imagine if there was a person who wore a Yarmulke, as he was an Orthodox Jew, and he came to the airline to fly and they said, "Sorry, we don't allow anyone to fly with us who is Jewish." They would outright deny someone to fly on their plane just because of his religion. We would all say "oh my god! That is extreme and outrageous conduct!"

Imagine if there was an African-American, and he came to the airline to fly and they said, "Sorry, we don't allow anyone to fly with us who has such a dark skin color." They would outright deny someone to fly on their plane just because of the color of his skin. We would all say "oh my god! That is extreme and outrageous conduct!"

Why would this be different?! All the federal agencies notified the airlines that people with disabilities who cannot wear a mask are exempt from any mask mandates. Why would it be less outrageous to just ban someone, force them to do all sorts of things that non-disabled don't do, and even torture them just because they have a disability?! "Sorry, you cannot come on our plane as you have a disability." Have we lost our sensitivity to humanity?!

## BREACH OF CONTRACT

The Defendants combined many arguments in this one category, that were addressed elsewhere in this document. The preemption issue is addressed, and only applies when there is an actual conflict. Most of the issues brought up in the Motion to Dismiss was already addressed in the Complaint itself.

The attorney for Defendants, Roy Goldberg, knows that I purchased tickets on American Airlines, as we have had emails back and forth regarding that, it is attached to the Complaint (Complaint Exhibit 15), and is the only reason that this

attorney is listed personally as a Defendant. So, I am a bit confused as to what he is suggesting. I did purchase tickets with many of the airlines.

The fact that Plaintiff wore a mask on his flight with JetBlue was addressed in the Complaint (Paragraphs 439-448), and here in this response.

My purchase on Delta through their partner airline, Air France, is described in the Complaint at length.

## PROMISSORY ESTOPPEL

The Complaint says the following. "Defendants in their advertisements, on their websites, in their brochures and statements all allege that they are decent people, that they will treat those with disabilities and/or special needs with care."

American says the following in addition to many similar promises: "Accessible travel: We're dedicated to providing a positive travel experience for all customers."[1]

Delta says the following in addition to many similar promises: "We believe travel is for everyone. It's our priority to deliver the best service and ensure accessibility for all Delta customers."[2]

---

[1] https://www.aa.com/i18n/travel-info/special-assistance/special-assistance.jsp#:~:text=Accessible%20travel&text=You%20can%20request%20special%20assistance,to%20make%20sure%20everything's%20ready.

[2] https://www.delta.com/us/en/accessible-travel-services/overview#:~:text=We%20believe%20travel%20is%20for,will%20be%20available%20to%20assist.

JetBlue says the following in addition to many similar promises: "Accessibility Assistance: Traveling with a wheelchair, a service animal or a medical condition? We'll help make your journey safe and smooth."[3]

Southwest says the following in addition to many similar promises: "Our policies and procedures are developed in accordance with 14 CFR Part 382, Nondiscrimination on the Basis of Disability in Air Travel."[4]

United Airlines says the following in addition to many similar promises: "We want everyone to enjoy traveling, but we know flying can be stressful. So, we've gathered all our best tips, tricks and advice for traveling if you're neurodiverse or if you have a cognitive disability."[5] (The indication being that they will accommodate such people).

There are probably dozens of places on their websites and in their advertisements where they promise to be nice to the disabled. They breached that promise and were horrible.

---

[3] https://www.jetblue.com/at-the-airport/accessibility-assistance
[4] https://www.southwest.com/help/accessible-travel-assistance/your-rights
[5] https://www.united.com/en/us/fly/travel/accessibility-and-assistance/cognitive-disabilities.html

## INJURIOUS FALSEHOODS

Defendants want this dismissed due to preemption.  This was responded to in several places in this document and in the Complaint.  That same response applies to negligence.

Defendants also say, "This cause of action fails to allege a claim for relief." Well, the relief is spelled out.  The Plaintiff had damages from this in combination with many of the other claims. The relief requested to redress these injuries, were detailed at the end of the complaint. The jury will get to decide and determine the level of damages and the relief available.

## INVASION OF PRIVACY

Defendants present Pica v. Delta Air Lines, which is "NOT FOR PUBLICATION."  All the caselaw with respect to preemption, discuss how some things are preempted, while others are not.  The Deregulation Act does not have any connection to privacy issues and there should not be any reason to preempt that.  See the preemption discussions elsewhere in this document.

The Supreme Court weighed in on this as follows: "Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services. The ADA contains no hint of such a role for the

federal courts." American Airlines, Inc. v. Wolens, 513 US 219 - Supreme Court 1995.

There is what is known as a Wolens exception, based on this caselaw, which would certainly apply here and in our Breach of Contract claim, among others. Defendants did not make any arguments as to why it should not apply in this case.


## FRAUDULENT MISREPRESENTATION

Defendants want this dismissed due to preemption.  This was responded to in several places in this document and in the Complaint.  That same response applies to negligence.

Additionally, Defendants claim that the fraudulent misrepresentation was not sufficiently clear.  Plaintif does not believe that this is the case. If the Court agrees with the Defendant, Plaintiff would like to take the opportunity to clarify in an amended complaint.


## NOMINAL DAMAGES

Defendants wrote, "Realizing the lack of a basis for actual financial damages, the Complaint requests an award of "nominal damages.""  Now, why would the Defendants say something that they know is not true?!  Why would an

attorney write something in a motion that he knows is not true?!  It is disrespectful to the Court, and portrays a lack of integrity.

The purpose why Plaintiff presented a request for nominal damages is ensure that there is no chance of the case being dismissed for lack of standing, which as of late seems to be a common strategy to suppress pro se litigants' due process. Plaintiff is not trained as an attorney and can often make silly mistakes that can cause a case not to make it to discovery.  The purpose of including nominal damages was as a failsafe.  In the scenario that there is a problem proving the extensive compensatory damages described, as much of that is fluid, the nominal damages claim can ensure that Plaintiff still has standing.  That can then give Plaintiff more time to gather evidence, discovery, and necessary information to properly prepare for a jury trial, and a successful presentation of solid evidence that con convey the true facts.

The big trick that the attorneys do to avoid trying a case on the merits, is to get it dismissed on a technicality.  This can be easy to do when fighting against inexperienced pro se litigants.  This Plaintiff will try his best to survive the motions to dismiss in order to have his day in court.

In a recent Supreme Court case, the Court ruled that nominal damages can redress a Plaintiff's injury even if he cannot or chooses not to quantify that harm in

economic terms.  Otherwise, a case can be dismissed for lack of Article III standing. The Court explains…

"The common law did not require a plea for compensatory damages as a prerequisite to an award of nominal damages. Nominal damages are not purely symbolic. They are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages." UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. Supreme Court March  8, 2021.

This Plaintiff presented the relief of nominal damages as a failsafe, if the detailed evidence for compensatory damages is not ready in time, in order to avoid a dismissal based on Article III standing. It in no way suggests that Plaintiff "realizes the lack of basis for actual financial damages." The basis was provided to sufficiently allege these claims, and in due time, Plaintiff will gather and present the necessary evidence, and the most updated facts.

As a civilian not trained in law school, I'm sure many steps I take are silly bordering on stupid. That is fine.  At least I have my integrity.


## PUNITIVE DAMAGES

"Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." BMW of North America, Inc. v. Gore, 517 US 559 - Supreme Court 1996.

There are many legal components and variations to the Punitive Damages question.  ADA and RA do not allow for punitive damages.  Many of the violations do allow for Punitive Damages.  Here are some examples.

"Punitive damages are available in "a proper" § 1983 action." Carlson v. Green, 446 US 14 - Supreme Court 1980.

"As early as 1915 the Mississippi Supreme Court had recognized that punitive damages were available in a contract case when "the act or omission constituting the breach of the contract amounts also to the commission of a tort." Pilot Life Ins. Co. v. Dedeaux, 481 US 41 - Supreme Court 1987.

"The Complaint states a claim for punitive damages, which Defendant seeks to dismiss. Dkt. No. 1, at 32-33. Punitive damages may be awarded as a matter of federal law under 42 U.S.C. § 1983 or Georgia law under O.C.G.A. § 51-12-5.1. As to recovery under federal law, "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Similarly, under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care

which would raise the presumption of conscious indifference to consequences."

O.C.G.A. § 51-12-5.1(b).

Plaintiffs apparently admit that they cannot "seek punitive damages under the Montreal Convention." Dkt. No. 15, at 7. However, because the Montreal Convention does not apply to the remaining claims, as pleaded in the Complaint and left after this Order, this concession is unwarranted. Greater factual development is necessary to determine whether Plaintiffs can make a claim for punitive damages. Therefore, Defendant's motion to dismiss this claim is DENIED." Benjamin v. American Airlines, Inc., 32 F. Supp. 3d 1309 - Dist. Court, SD Georgia 2014.

I brought this last case to show that the Punitive Damages Question is complicated, and the preemption question is also sometimes applicable and at other times not. For these issues to be resolved in a motion to dismiss would be unreasonable and unfair.

The preemption question was addressed at length in the Complaint. The first and most important response is that preemption only applies when there is a conflict. There are ADA laws, yet each state created their own disability laws.  If there is blanket preemption, the states are wasting their time, and no state disability claim should ever be acted upon in court. That is not the case.

"The Ninth Circuit found in Gilstrap v. United Air Lines, "[t]he ACAA does not, however, preempt any state remedies that may be available when airlines violate those standards." 709 F.3d 995, 1010 (9th Cir. 2013)" Segalman v. Southwest Airlines Co., 2016 WL 146196, at *3 (E.D.Cal., 2016)

And further, it says, "Federal regulations "do[ ] not, however, preempt any state remedies that may be available when airlines violate those standards." Id.

The Defendants are disputing the Punitive Damages. I don't believe it would be appropriate for the Court to address that now, at the motion to dismiss stage, but rather this is something that should be left for trial, or at least until there's a motion for summary judgment.


**STANDING**

Defendants wrote, "the Complaint does not allege that he bought a ticket on American, Southwest, or United, or that he applied for and was denied a mask exemption from either of those three air carriers."

I never understood how and why an attorney would write something in a pleading that is demonstrably false. Would it be based on the hope that no one will look into it?!

American factual allegations are listed from Paragraphs 180-194 in the Complaint. That should be more than sufficient. There is much more information that can and will be provided for trial and in discovery.

Plaintiff did not have to buy a ticket on any specific airline, in order to be denied. Plaintiff tried to travel on all 46 airlines. If Plaintiff had to buy a ticket on each in order to be considered discriminated against, that would be cost prohibitive to this Plaintiff. The point why sometimes they will ask if a Plaintiff bought a ticket, is to determine if this person is a tester, just looking to sue, or the person actually wanted to travel, but was denied. By the facts presented in the Complaint, it is sufficiently evident that Plaintiff wanted to travel, but was denied.

The same goes for United (Paragraphs 659-670), and Southwest (582-594).

With respect to the TORTURE that Plaintiff suffered on JetBlue, to say that "no potential damages that arose from that flight," is particularly offensive.

Defendants brought the case of Abadi v. Target Corp (No. 23-1050, 2023 WL 4045373 (3d Cir. June 16, 2023)) erroneously. That was an ADA case, which doesn't apply to airlines. Why are we conflating these two sets of laws?! If you look at that ruling by the Third Circuit Court of Appeals, they actually reversed the District Judge's decision with respect to the state human rights violations. It's a bit confusing why Defendants brought this case in the first place.

The aspect with respect to mootness was addressed below (next) under the title "Mootness." But this is an ADA issue with respect to injunction only. Declaratory Relief where applicable, and Damages Relief were in no way moot, and therefore Plaintiff would have standing.

## MOOTNESS

Defendants brought up the MOOTNESS justification multiple times in their motion to dismiss, asking this Court to consider this case moot, as currently the mask requirement is no longer in effect. Ironically, in order to support their position, Defendants presented a Court Order in the case of Marcus v. CDC and attached it to their motion to dismiss (Doc. 122-1 – Exhibit A).

In that court order, the District Judge in that case asked for briefs from the parties regarding mootness, and determined that <u>none of the claims were moot</u>, as follows:

> **F.    Mootness**
>
> The Court ordered the Parties to submit supplemental briefing regarding potential mootness of Plaintiffs' claims.  After reviewing the Parties' submissions, the Court finds none of Plaintiffs' claims are moot at this time.

This issue was also addressed thoroughly in this Complaint. Even till this day there are constant new Covid rules, restrictions, and actions taken by the CDC, private companies, and various government agencies.

The CDC just put a new expansive testing project for multiple diseases at airports.  It was in the news just a few days ago.[6]

Mootness does not apply in this case for multiple reasons. Now, suddenly there are companies, organizations, hospitals, schools and the like that are reinstating mask policies.[7]

In order to be considered moot it has to pass the following test:

““A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.” United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).

If tomorrow morning, there is an increase in the Covid deaths and hospitalizations, it is likely that they will try to reinstate mask mandates. If a new pandemic showed up, it is likely that they will try to reinstate mask mandates. The CDC, NIH, Anthony Fauci, and even Bill Gates have been predicting another

---

[6] https://www.cdc.gov/media/releases/2023/s1107-testing-respiratory-viruses.html
[7] https://www.newsweek.com/mask-mandates-return-list-places-restrictions-1823069

pandemic in the very near future. I would listen to them, because they predicted the

last pandemic.[8]

     The DC Circuit writes the following in a challenge to the TSA mask

mandate: "Because there is a more-than-speculative chance that the challenged

conduct will recur, these cases are not moot." Wall v. Transportation Sec. Admin.,

No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023).

     Besides all that, the fact that there are injuries alleged and damages claimed,

it is important to litigate all the discrimination claims in order to determine if there

was discrimination, get declaratory relief, and only then damages can be applied to

the state claims.  It is still extremely relevant. Even with respect to Federal

Defendants it is thus relevant. The point of mootness stopping a lawsuit, is the idea

that there is nothing the court can do to bring redress or rectify the wrong. The bar

isn't very high.  The Supreme Court recently held that even just nominal damages

is sufficient redress to warrant a litigation.

     "For purposes of this appeal, it is undisputed that Uzuegbunam experienced

a completed violation of his constitutional rights when respondents enforced their

speech policies against him. Because "every violation [of a right] imports

damage," Webb, 29 F. Cas., at 509, nominal damages can redress Uzuegbunam's

---

[8] https://centerforhealthsecurity.org/our-work/tabletop-exercises/event-201-pandemic-tabletop-exercise

injury even if he cannot or chooses not to quantify that harm in economic terms."
UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. Supreme Court March  8,
2021.

Let us put the MOOTNESS claims behind us and move forward on this
litigation.


## **CONCLUSION**

This case is a complex case, with many aspects, both of facts and legal
issues. The above response in conjunction with the Complaint itself should
sufficiently resolve any of the issues brought up in the Motion to Dismiss. The
U.S. Constitution affords each citizen with due process. Plaintiff asks this Court to
allow for the lawsuit to proceed and we can address all these items in trial. A
motion to dismiss should not be used to take away a person's right to justice.

**WHEREFORE**, Plaintiff asks this court to DENY this motion to dismiss in its
entirety.

Respectfully submitted this November 16, 2023.

s/Aaron Abadi
AARON ABADI, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
516-639-4100  Email:  aa@neg.com