UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

AARON ABADI,                                                    :

                        Plaintiff,          :          Case No. 1:23-cv-04033-LJL

           - against -                        :

AMERICAN AIRLINES GROUP INC., et al,          :

                   Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW
IN SUPPORT OF THE JOINT MOTION TO DISMISS BY DEFENDANTS**

**CONCESIONARIA VUELA COMPAÑÍA DE AVIACIÓN, S.A.P.I. DE C.V.
ROYAL AIR MAROC
AEROVÍAS DE MÉXICO S.A. DE C.V.
TRANSPORTES AÉREOS PORTUGUESES, S.A.
SPIRIT AIRLINES, INC.
AVIANCA S.A.
SINGAPORE AIRLINES
LATAM AIRLINES GROUP S.A.
IBERIA LÍNEAS AÉREAS DE ESPAÑA, S.A. OPERADORA, SOCIEDAD
UNIPERSONAL
LOT POLISH AIRLINES, SA
BRITISH AIRWAYS P.L.C.,
AND
MATTHEW ROBERTS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 1

    A.   The Federal Mask Mandate ...................................................................... 1

    B.   Plaintiff's Requests to Travel Without a Mask ......................................... 4

    C.   Procedural History.................................................................................... 9

ARGUMENT ........................................................................................................ 10

    A.   THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT
          MATTHEW ROBERTS.......................................................................... 10

    B.   PLAINTIFF HAS NOT STATED A CLAIM AGAINST THE AIRLINE
          DEFENDANTS ....................................................................................... 12

          1.   Legal Standard ............................................................................. 12

          2.   Plaintiff Fails to State a Claim Under Federal Civil Rights Law .... 13

          3.   Plaintiff Has No Private Right of Action Under the ACAA............. 17

          4.   Plaintiff Has No Cognizable Claim Under the Rehabilitation Act ... 18

          5.   Plaintiff's State Law Claims Are Preempted ................................. 22

          6.   Plaintiff Has No Breach of Contract Claim Against British Airways ............. 28

CONCLUSION....................................................................................................... 30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abadi v. British Airways PLC et. al*,
   2021-cv-10825 PGG, 2022 WL 219998 (S.D.N.Y. Jan. 25, 2022) ..........................................6

*Abadi v. Target Corp.*,
   No. 23-1050, 2023 WL 4045373 (3d Cir. June 16, 2023), *cert. denied,* No. 23-
   5123, 2023 WL 6378722 (U.S. Oct. 2, 2023) ........................................................................22

*Ahlers v. Rabinowitz*,
   684 F.3d 53 (2d Cir. 2012) ....................................................................................................13

*Air Transp. Ass'n of Am., Inc. v. Cuomo*,
   520 F.3d 218 (2d Cir. 2008) ..................................................................................................23

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) .........................................................................................................17, 18

*Am. Airlines, Inc. v. Wolens*,
   513 U.S. 219 (1995) ...............................................................................................................29

*Andreadakis v. Ctr. for Disease Control & Prevention*,
   No. 3:22CV52 (DJN), 2022 WL 2674194 (E.D. Va. July 11, 2022) ...................16, 20, 28, 29

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................................12, 13

*Astra USA, Inc. v. Santa Clara Cnty., Cal.*,
   563 U.S. 110 (2011) ...............................................................................................................21

*Bary v. Delta Airlines, Inc.*,
   No. CIV.A.CV025202(DGT), 2009 WL 3260499 (E.D.N.Y. Oct. 9, 2009),
   *aff'd,* 553 F. App'x 51 (2d Cir. 2014) ...................................................................................19

*Bisbee v. John C. Conover Agency, Inc*.,
   452 A.2d 689 (N.J. App. Div. 1982) ......................................................................................26

*Brannon v. Delta Airlines, Inc*.,
   434 F. Supp. 3d 124 (S.D.N.Y. Jan. 22, 2020) .....................................................................14

*Cheruvu v. HealthNow New York, Inc*.,
   No. 22-1993, 2023 WL 3443362 (2d Cir. May 15, 2023) .................................................13, 14

*Cine SK8, Inc. v. Town of Henrietta*,
   507 F.3d 778 (2d Cir. 2007) ..................................................................................................15

*City of Rancho Palos Verdes, Cal. v. Abrams,*
   544 U.S. 113 (2005)..............................................................................14

*Collins v. Giving Back Fund,*
   No. 18 CIV. 8812 (CM), 2019 WL 3564578 (S.D.N.Y. Aug. 6, 2019) ............................20, 21

*Cox v. Spirit Airlines, Inc.,*
   786 F. App'x 283 (2d Cir. 2019) ...........................................................29

*Cramer v. Skinner,*
   931 F.2d 1020 (5th Cir. 1991) ...............................................................28

*Doe v. Mobile Video Tapes, Inc.,*
   43 S.W.3d 40 (Tex. App. 2001)..............................................................26

*England v. United Airlines, Inc.,*
   627 F. Supp. 3d 963 (N.D. Ill. 2022) ...................................................21

*Fawemimo v. Am. Airlines, Inc.,*
   751 F. App'x 16 (2d Cir. 2018) .........................................................23, 24

*Fondo v. Delta Airlines, Inc.,*
   No. 00 CIV. 2445 (JSM), 2001 WL 604039 (S.D.N.Y. May 31, 2001), *aff'd,*
   25 F. App'x 82 (2d Cir. 2002) ...............................................................30

*Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses*
   *Comm'n,* 634 F.3d 206 (2d Cir. 2011)...................................................24

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny,*
   442 U.S. 366 (1979)...............................................................................16

*Harrell v. New York State Dep't of Corr. & Cmty. Supervision,*
   No. 15-CV-7065 (RA), 2019 WL 3817190 (S.D.N.Y. Aug. 14, 2019)...............................15

*Harris v. Mills,*
   572 F.3d 66 (2d Cir. 2009)............................................................13, 26

*Hayes v. KIK Custom Prod.,*
   No. 7:11-CV-00200, 2011 WL 4963774 (W.D. Va. Oct. 14, 2011) ......................................27

*Health Freedom Def. Fund v. President of United States,*
   71 F.4th 888 (11th Cir. 2023) ...............................................................3

*Henrietta D. v. Bloomberg,*
   331 F.3d 261 (2d Cir. 2003).....................................................................19

*In re Jetblue Airways Corp. Priv. Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................................27

*Killoran v. Westhampton Beach Sch. Dist.*,
  No. 22-204, 2023 WL 4503278 (2d Cir. July 13, 2023)........................................19

*Kreit v. Byblos Bank S.A.L.*,
  No. 22-CV-10751 (LJL), 2023 WL 6977448 (S.D.N.Y. Oct. 22, 2023)...........10, 12

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
  918 F.2d 1039 (2d Cir. 1990)...............................................................................11

*Lopez v. Jet Blue Airways*,
  662 F.3d 593 (2d Cir. 2011)............................................................................17, 18

*Love v. Delta Air Lines*,
  310 F.3d 1347 (11th Cir. 2002) ............................................................................17

*Lucius v. Fort Taco, LLC*,
  No. 21-22397-CIV-WILLIAMS/MCALILEY, 2022 WL 335491 (S.D. Fla.
  Jan. 5, 2022)..........................................................................................................21

*Marcus v. Centers for Disease Control & Prevention*,
  No. 22-cv-02383-SSS-ASx, 2023 WL 3044614 (C.D. Cal. Feb. 21, 2023)...............16, 20, 25

*Martin v. DHL Express (USA), Inc.*,
  580 F. Supp. 3d 66 (D.N.J. 2022) .........................................................................27

*McElwee v. Cnty. of Orange*,
  700 F.3d 635 (2d Cir. 2012)............................................................................19, 22

*Messenger ex rel. Messenger v. Gruner+Jahr Printing & Pub.*,
  94 N.Y.2d 436 (2000) ............................................................................................27

*Metamorfoza, D.O.O. v. Big Funny LLC*,
  No. 19-CV-11743 (RA), 2021 WL 735243 (S.D.N.Y. Feb. 25, 2021) ............10, 11

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)....................................................................................10

*Miller v. Nat'l Broad. Co.*,
  187 Cal. App. 3d 1463 (Cal. Ct. App. 1986) ........................................................27

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992)...............................................................................................23

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
  813 F.3d 718 (9th Cir. 2016) ................................................................................25

*Northwest, Inc. v. Ginsberg*,
  572 U.S. 273 (2014) .........................................................................................23, 29

*Polinovsky v. British Airways, PLC*,
  2012 WL 1506052 (N.D. Ill. Mar. 30, 2012) ........................................................29

*Reynolds v. Barrett*,
  685 F.3d 193 (2d Cir. 2012) ..................................................................................15

*Segalman v. Southwest Airlines Co.*,
  895 F.3d 1219 (9th Cir. 2018) ...............................................................................17

*Seklecki v. Ctr. for Disease Control & Prevention*,
  635 F. Supp. 3d 15 (D. Mass. 2022) .............................................16, 17, 20, 21

*Shotz v. Am. Airlines, Inc.*,
  420 F.3d 1332 (11th Cir. 2005) ......................................................................19, 20

*Smith v. Comair, Inc.*,
  134 F.3d 254 (4th Cir. 1998) ..................................................................................30

*Stokes v. Southwest Airlines*,
  887 F.3d 199 (5th Cir. 2018) ..................................................................................17

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013) ...................................................................................10

*Thomas v. Roach*,
  165 F.3d 137 (2d Cir. 1999) ...................................................................................15

*Town of Southold v. Town of E. Hampton*,
  477 F.3d 38 (2d Cir. 2007) .....................................................................................28

*Tracy v. Freshwater*,
  623 F.3d 90 (2d Cir. 2010) .....................................................................................13

*We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*,
  76 F.4th 130 (2d Cir. 2023) ....................................................................................12

*Wyeth v. Levine*,
  555 U.S. 555 (2009) .................................................................................................25

## Statutes

29 U.S.C. § 794(a) .........................................................................................................19

29 U.S.C. § 794(b)(3) .....................................................................................................20

42 U.S.C. § 264(e) ..........................................................................................................24

42 U.S.C. § 1983 .................................................................................................... *passim*

42 U.S.C. § 1985 .................................................................................................... *passim*

42 U.S.C. § 1986 .................................................................................................... *passim*

Air Carrier Access Act, 49 U.S.C. § 41705 ........................................................... *passim*

Airline Deregulation Act, 49 U.S.C. § 41713(b) .................................................... *passim*

Air Transportation Safety and System Stabilization Act ............................................20

CARES Act .............................................................................................18, 20, 21, 22

N.Y. C.P.L.R. § 301 ...........................................................................................10, 11

N.Y. C.P.L.R. § 302 .....................................................................................10, 11, 12

**Other Authorities**

14 C.F.R. § 382.159 ....................................................................................................14

Fed. R. Civ. P. 9(b) ....................................................................................................27

Fed. R. Civ. P. 12(b)(1) ...............................................................................................3

Fed. R. Civ. P. 12(b)(2) ...................................................................................1, 12, 30

Fed. R. Civ. P. 12(b)(6) .......................................................................................... *passim*

"Notice of Enforcement Policy:  Accommodation by Carriers of Persons with
    Disabilities Who Are Unable to Wear or Safely Wear Masks While on
    Commercial Aircraft," U.S. Dep't of Transp. (Feb. 5, 2021) ...............................3, 25

"Payroll Support Program Extension Agreement," OMB 1505-0263 ....................18, 21

"Requirement for Persons to Wear Masks While on Conveyances and at
    Transportation Hubs," Centers for Disease Control and Prevention, 86 Fed.
    Reg. 8025-01, 2021 WL 352180 (Feb. 3, 2021) ............................................... *passim*

S. Rep. No. 100-64 (1987) ..........................................................................................21

Safety in Domestic and International Travel, Exec. Order No. 13998, 86 Fed. Reg.
    7205 (Jan. 26, 2021).................................................................................................1

## PRELIMINARY STATEMENT

Airline Defendants Concesionaria Vuela Compañía de Aviación, S.A.P.I. de C.V. ("VOLARIS"), Royal Air Maroc ("RAM"), Aerovías de México S.A. de C.V. ("AEROMÉXICO"), Transportes Aéreos Portugueses, S.A. ("TAP"), Spirit Airlines, Inc. ("Spirit"), Avianca S.A. ("AVIANCA"), Singapore Airlines ("SIA"), LATAM Airlines Group S.A. ("LATAM"), Iberia Líneas Aéreas De España, S.A. Operadora, Sociedad Unipersonal ("IBERIA"), LOT Polish Airlines, SA ("LOT"), and British Airways P.L.C. ("British Airways" or "BA") (collectively, the "Airline Defendants"), and individual Defendant Matthew Roberts (together with the Airline Defendants, the "C&F-represented Defendants"), respectfully submit the following Memorandum of Law in support of their Joint Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

## BACKGROUND

### A. The Federal Mask Mandate

On January 21, 2021, in response to the COVID-19 pandemic, President Biden issued an Executive Order setting forth the following policy:

> The Centers for Disease Control and Prevention (CDC), the Surgeon General, and the National Institutes of Health have concluded that mask-wearing, physical distancing, appropriate ventilation, and timely testing can mitigate the risk of travelers spreading COVID-19. Accordingly, to save lives and allow all Americans, including the millions of people employed in the transportation industry, to travel and work safely, it is the policy of my Administration to implement these public health measures consistent with CDC guidelines on public modes of transportation and at ports of entry to the United States.

Promoting COVID-19 Safety in Domestic and International Travel, Exec. Order No. 13998, 86 Fed. Reg. 7205 (Jan. 26, 2021). The Order directed the CDC to "immediately take action, to the extent appropriate and consistent with applicable law, to require masks to be worn in compliance with CDC guidelines in or on [ . . . ] commercial aircraft [ . . . . ]" *Id.*

1

A few days later, the CDC issued an Order titled "Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs." 86 Fed. Reg. 8025-01, 2021 WL 352180 (Feb. 3, 2021) (the "Federal Mask Mandate").  To prevent the spread of COVID-19, the CDC's Order required individuals to wear masks on public conveyances, including aircraft, and required operators of conveyances to ensure their passengers wore masks.  With respect to foreign air carriers, the Order specifically provided:

> Conveyance operators must also require all persons to wear masks while boarding and for the duration of their travel on board conveyances departing from the United States until the conveyance arrives at the foreign destination, if at any time any of the persons onboard (passengers, crew, or conveyance operators) will return to the United States while this Order remains in effect.

Federal Mask Mandate, 86 Fed. Reg. at 8029.  The Federal Mask Mandate exempted from mandatory mask-wearing any "person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act."  *Id*. at 8027.[1]

Following the issuance of the Federal Mask Mandate, the Office of Aviation Consumer Protection of the U.S. Department of Transportation (DOT) issued official guidance to airlines on how to implement the disability exception to the mandate.  *See* "Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft" (Feb. 5, 2021), *available at* https://www.transportation.gov/sites/dot.gov/files/2021-02/Mask%20Notice%20Issued%20on%20Feb%205.pdf ("DOT Enforcement Notice").  The DOT is responsible for implementing and enforcing the Air Carrier Access Act (ACAA) and regulations

---

[1] The Transportation Safety Administration (TSA) issued a similar directive.  *See* TSA Security Directive 1544-21-02: Security Measures – Face Mask Requirements (January 31, 2021).

promulgated thereunder, which exclusively govern the protection of passengers with disabilities in air transportation. *See* 49 U.S.C. § 41705. The purpose of the DOT Enforcement Notice was to direct air carriers about how to comply with the Federal Mask Mandate while also meeting the requirements of the ACAA. *See* DOT Enforcement Notice at 2 ("This Notice sets forth the enforcement policy that OACP will apply in determining, on a prospective basis, whether airlines are complying with the requirements of the ACAA and Part 382 when implementing procedures requiring mask-wearing by passengers.").

The Notice provided that carriers could, consistent with the ACAA, deny transportation to passengers with disabilities who could not or would not wear a mask, on certain conditions. For instance, carriers could require a disabled passenger requesting an exemption from the mask mandate to "consult with the airline's medical expert and/or to provide medical evaluation documentation from the passenger's doctor sufficient to satisfy the airline that the passenger does, indeed, have a recognized medical condition precluding the wearing or safe wearing of a mask." DOT Enforcement Notice at 6. Airlines could also require such passengers to request exemptions in advance and place conditions on their travel, such as the obligation to provide a negative COVID test. *Id*. at 6-7. As evidenced by Plaintiff's own allegations, the Airline Defendants implemented procedures consistent with this DOT guidance while the Federal Mask Mandate was in effect.[2]

---

[2] The Federal Mask Mandate expired at the conclusion of the COVID-19 Public Health Emergency on May 11, 2023. *See* CDC.gov, "Expired Order: Wearing of face masks while on conveyances and at transportation hubs" (May 12, 2023), *available at* https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html. All of Plaintiff's alleged exemption requests occurred in 2020 and 2021, while the Mandate was in effect. To the extent he seeks injunctive or declaratory relief against enforcement of the Mandate, however, his claims are moot and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). *See Health Freedom Def. Fund v. President of United States*, 71 F.4th 888, 894 (11th Cir. 2023) (dismissing as moot claims for injunctive relief lifting the Mandate on the basis that it has been voluntarily lifted and there is no reasonable expectation it will be reinstated).

### B.  Plaintiff's Requests to Travel Without a Mask

Plaintiff alleges that he has been diagnosed with a sensory processing disorder that qualifies as a disability under the ACAA and prevents him from wearing a mask.  *See* Complaint, [DE 3] ("Cmplt.") ¶¶ 141-42.  He has submitted a doctor's note dated December 3, 2020 stating "Mr. Aaron Abadi is suffering from extreme sensitivity to touch, mostly in the area of his head.  For this reason he is unable to wear a face mask or face shield, and should not be required to do so. He has already recovered from COVID, and is not contagious."  Cmplt., Ex. 6 [DE 3-11].

Plaintiff's claims against each of the C&F-represented Defendants arise from their alleged refusal to allow him to board their aircraft without a mask.  *See, e.g*., Cmplt. ¶ 166.  He claims that "over 50 airlines refused to allow me to fly normally," including the C&F-represented Defendants. *Id*. ¶ 178.  He did not purchase a ticket with most of these airlines, but instead claims that, in 2020 and 2021, he submitted requests to many airlines for exemption from the mask mandate and was uniformly rejected.  *Id*. ¶ 178.  In fact, as discussed further below, he requested a mask exemption from each of the Airline Defendants by emailing them a copy of the same doctor's note and in almost every case he was promptly asked to follow the applicable procedures to comply with the Federal Mask Mandate.  Each time an airline asked Plaintiff to provide more information or follow any procedure other than emailing in his doctor's note, he refused and made no further effort to qualify for an exemption.  His specific interactions with the Airline Defendants were as follows:

- *Aeroméxico* – Plaintiff alleges he submitted an exemption request with a doctor's note to Aeroméxico on two occasions.  In reply, the airline emailed him its list of exceptions to the mask mandate, with a bolded section on providing a "medical certificate" containing certain information "to our staff directly at the airport."  *See* Cmplt., Ex. 19 [DE 3-24].  Finding this requirement "unnecessary," Plaintiff did not reply to the email or make any further effort to travel on an Aeroméxico flight.  Cmplt. ¶ 203.

- *Avianca* – Plaintiff alleges he submitted a copy of his doctor's letter "attesting to my inability to wear a mask" in September 2021 but did not initially receive a response. *Id.* ¶ 235. His Complaint includes a copy of a letter response he received "about a month" later informing Plaintiff that his doctor's letter did not contain information sufficient to perform the "individualized assessment" required by the ACAA and identifying additional information needed (*i.e.*, Plaintiff's proposed itinerary). *See id.* ¶¶ 236-238 and Ex. 26 [DE 3-31] (the letter is dated "October 3, 2022" but this is an apparent typo). After receiving the letter from Avianca, Plaintiff made no further effort to travel on an Avianca flight.

- *British Airways and Matthew Roberts* – Plaintiff submitted a request for an exemption with a copy of his doctor's note on December 13, 2020. Cmplt. ¶ 294. The next day, the airline responded, "Although it is mandatory for all passengers to wear a face mask, we do recognise that this may not be possible for everyone. You will be challenged by Airport Personnel and Cabin Crew, so please be prepared to present your Doctors letter at all times." Cmplt., Ex. 31 [DE 3-36]. Plaintiff apparently interpreted this email to mean he did not need to do anything to qualify for an exemption to the mandate. Cmplt. ¶ 296. He purchased a ticket to travel on a BA flight from New York to India, scheduled to depart on January 22, 2021. *Id.* at ¶ 297. He arrived at the terminal with a copy of his doctor's letter and the airline's December 14 email. *Id.* ¶ 298.[3] He alleges he was told he could fly without a mask but was denied boarding due to an issue with his visa to enter India. *Id.* ¶ 299. Plaintiff made several further attempts to fly but continued to be denied due to unspecified visa issues. *Id.* ¶¶ 300-304.

---

[3] In subsequent correspondence to BA, Plaintiff refers to "two emails from the British Airways Medical Clearance Unit approving me to travel without a mask," Cmplt., Ex. 32 [DE 3-37] at 5. This appears to be a reference to the December 14, 2020 correspondence.

On February 9, 2021, Plaintiff drove to Dulles International Airport in Washington to attempt to depart for India from there. *Id.* ¶¶ 305-306. He claims BA's airport manager, Defendant Matthew Roberts, told him his visa was "absolutely valid" but that he would "call me in a day or two to confirm." *Id.* ¶ 306. Two days later, Mr. Roberts called Plaintiff to say BA could not exempt him from the mask mandate based on the doctor's note he had provided. *Id.* ¶ 307. Plaintiff then submitted a complaint by email, to which Mr. Roberts responded on February 12 that "[a] determination has been made that we are unable to accept you for travel according to TSA, CBP and CDC regulations," and offering Plaintiff a refund for his ticket. Cmplt, Ex 32 [DE 3-37] at 2. This appears to refer to the Federal Mask Mandate which had been issued on February 3, 2021. Plaintiff requested the refund, plus additional compensation. *Id.*, Ex 32 [DE 3-37] at 4. Plaintiff sent Mr. Roberts another email on December 14, 2021, not to request an exemption from the mask mandate but to ask whether BA had changed its masking policy since his previous attempt to fly. *See id.*, Ex. 33 [DE 3-38] at 2. Mr. Roberts replied that "nothing has changed since February regarding the rules and regulations on mask wearing in the airport and on-board." *Id.* at 1. Plaintiff made no further effort to purchase a ticket or travel on a BA flight. On December 16, 2021, he sued BA and Mr. Roberts, alleging similar claims to those at issue here, but later withdrew the complaint without prejudice. *See Abadi v. British Airways PLC et. al*, 2021-cv-10825 PGG, 2022 WL 219998 (S.D.N.Y. Jan. 25, 2022).

- *Iberia* – Plaintiff claims he submitted a request for a mask exemption, with a copy of his doctor's note, to Iberia on an unspecified date. Cmplt. ¶ 428. Iberia responded by email acknowledging receipt and requesting that he complete and submit their medical form to allow them to assess his request. Cmplt., Ex 48 [DE 3-53] (enclosing a copy of the form). Plaintiff

found Iberia's request to complete its two-page form "frustrating and unfair," did not complete it and made no further effort to purchase a ticket or travel on an Iberia flight. *See* Cmplt. ¶ 435.

- *LATAM* – Plaintiff claims he submitted a request for a mask exemption, with a copy of his doctor's note, to LATAM on an unspecified date. Cmplt. ¶ 476. Like Iberia, LATAM responded by email enclosing a blank form for Plaintiff to complete to allow the "LATAM doctors" to assess his request. Cmplt., Ex. 54 [DE 3-59]. Plaintiff then submitted a complaint to the DOT, to which LATAM provided a substantive response on November 11, 2021 explaining "Our records indicate that our Contact Center did not state that you would not be able to travel; they indicated that you needed to fill out a form and send it back for revision." Cmplt., Ex. 55 [DE 3-60]. Plaintiff does not claim he ever completed the form or attempted to purchase a LATAM ticket.

- *LOT* – Plaintiff claims he submitted a request for a mask exemption, with a copy of his doctor's note, to LOT on an unspecified date. *Id*. ¶ 497. His Complaint includes an email attaching the note dated September 8, 2021. Cmplt., Ex. 56 [DE 3-61]. LOT responded the same day explaining their policy that "you need to have a document stating that you have a disease that prevents you from" wearing a mask that is "in accordance with a current ordinance introduced by the government." *Id*. at 9. The airline subsequently clarified "the final decision is left for the personnel at the gate." *Id*. at 1. Plaintiff did not reply, purchase a ticket or make any further efforts to travel on a LOT flight.

- *Royal Air Maroc* – Plaintiff claims he requested a mask exemption from RAM "multiple times" beginning September 2, 2021 but never received a response. Cmplt. ¶¶ 544-545. He does not allege he ever purchased a ticket or attempted to travel on a RAM flight, or even considered traveling to any destination to which RAM operates.

- *Singapore Airlines* – Plaintiff claims he submitted a request for a mask exemption with a copy of his doctor's note to SIA on an unspecified date. *Id*. ¶ 574. SIA first requested information about Plaintiff's intended travel itinerary, which he refused to provide. Cmplt., Ex. 64 [DE 3-69] at 2-3. SIA then informed Plaintiff that his doctor's note did not provide a sufficient basis to qualify for a mask exemption "as per US CDC's requirement[.]" *Id*. at 1. Plaintiff refused to provide an updated note and made no further effort to purchase a ticket or travel on an SIA flight.

- *Spirit Airlines* – Plaintiff claims he submitted a request for a mask exemption, with a copy of his doctor's note, to Spirit on an unspecified date. Cmplt. ¶ 595. Spirit responded with detailed instructions on how Plaintiff could qualify for an exemption, including a list of the required contents of a doctor's note. *See* Cmplt., Ex. 66 [DE 3-71]. As he had in every other case, Plaintiff found the requirements to qualify for an exemption "frustrating and unfair." Cmplt. ¶ 604. He made no further effort to qualify for an exemption or travel on a Spirit flight and did not purchase a ticket.

- *TAP Air Portugal* – Plaintiff claims he submitted a request for a mask exemption, with a copy of his doctor's note, to TAP on an unspecified date. Cmplt. at ¶ 637. TAP responded seeking a booking reference to evaluate the request, which Plaintiff never provided. Cmplt., Ex. 70 [DE 3-75] at 5. TAP later followed up explaining its masking policy in greater detail (with a link to the CDC's mask guidance website) and requested that Plaintiff complete a copy of the airline's medical form (which appears to be the same form used by Iberia and several other carriers) and provide a negative COVID test prior to boarding. *Id*. at 3; *see also* Cmplt. ¶¶ 640-641. Plaintiff did not complete the form or make any further efforts to qualify for an exemption or travel on a TAP flight.

- *Volaris* – Plaintiff claims he submitted a request for a mask exemption, with a copy of his doctor's note, to Volaris on an unspecified date. *Id*. ¶ 678. The airline responded with the requirements to qualify for an exemption, including a medical note containing certain information and, for any flight from the US, a negative COVID test. *See* Cmplt., Ex. 75 [DE 3-80] at 3-4. Plaintiff made no effort to provide this information or book a Volaris flight.

## C. Procedural History

Plaintiff commenced this lawsuit by filing a Complaint in the U.S. District Court for the Northern District of Texas (Amarillo) on May 1, 2023. The case was transferred to this Court on May 17, 2023. Plaintiff's motion to proceed in forma pauperis was granted on August 21, 2023. [DE 13]. Since then, each of the C&F-represented Defendants have been served or waived service of process and now join this Motion to Dismiss.[4]

This case should not be viewed in a vacuum. It is part of a larger, apparently coordinated series of similar actions filed by an online coalition of "anti-mask" activists over the past few years, including at least nine other mask-related lawsuits filed by Mr. Abadi since 2021 against such entities as Apple, Lyft, Amtrak, Walt Disney Parks and Resorts, Greyhound, and a range of government officials and agencies, including President Biden. *See* [DE 122] at 3-4 (motion to dismiss filed by another group of airlines and their agents and employees, discussing Mr. Abadi's membership in "Americans Against Mask Mandates" and other pending lawsuits).[5] Mr. Abadi's

---

[4] Defendant LOT Polish Airlines, SA received a Statement of Service by Mail from the U.S. Marshals Service on September 20, 2023. It returned an executed an Acknowledgment of Receipt of Summons and Complaint to the Marshals Service by Federal Express on September 26, 2023. The notice has not yet appeared on the docket. However, LOT has been served and, for avoidance of doubt, hereby waives service and appears.

[5] The C&F-represented Defendants join the previous motions to dismiss filed by other defendants in this action and incorporate their arguments to the extent any basis for dismissal they raise is not addressed in this memorandum.

history as an anti-mask activist and serial litigant cast doubt on his allegation that he had a genuine intention to avail himself of the services of virtually every major airline on Earth during a one-year period.

## ARGUMENT

### A.  THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT MATTHEW ROBERTS

Plaintiff bears the burden to make a prima facie showing that the Court has personal jurisdiction over every Defendant in this case.  *See, e.g., Kreit v. Byblos Bank S.A.L.*, No. 22-CV-10751 (LJL), 2023 WL 6977448, at *3 (S.D.N.Y. Oct. 22, 2023) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)).  A prima facie showing "must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant."  *Id.* at *4.  The Court must construe the pleadings in the light most favorable to the plaintiff but need not "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation."  *Id.* (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).

Plaintiff asserts both federal question and diversity jurisdiction in this case.  Cmplt. ¶¶ 64-72.  To establish either, he would have to satisfy New York's long-arm statute. *See Metamorfoza, D.O.O. v. Big Funny LLC*, No. 19-CV-11743 (RA), 2021 WL 735243, at *3 (S.D.N.Y. Feb. 25, 2021) (holding forum state's long-arm statute governs jurisdiction in a federal question case unless the claim arises under a federal statute providing for nationwide service); *Kreit*, 2023 WL 6977448, at *4 (forum state's long-arm statute governs jurisdiction in a diversity case).  New York provides for both "general" and "specific" long-arm jurisdiction.  *See Kreit*, 2023 WL 6977448, at *4 (citing N.Y. C.P.L.R. §§ 301 and 302).  The former requires a showing that the defendant is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a

finding of its 'presence' in this jurisdiction." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (quotation omitted); *see* N.Y. C.P.L.R. § 301. The latter requires a showing that the defendant either 1) transacted business in New York; 2) committed a tort in New York; 3) committed a tort outside New York causing injury in New York, if the defendant "regularly does or solicits business" in New York or "expects or should reasonably expect the act to have consequences" in New York and "derives substantial revenue" from interstate commerce; or 4) owns real property in New York. *See* N.Y. C.P.L.R. § 302(a).

Plaintiff's factual allegations against Defendant Matthew Roberts, taken as true, cannot support a finding of either general or specific personal jurisdiction in New York. Plaintiff does not allege that Mr. Roberts was ever physically present in New York, let alone "continuously" present. Nor does he allege Mr. Roberts ever transacted business in New York or even knowingly directed a communication to New York. Instead, he claims Mr. Roberts communicated with him in person at Washington Dulles International Airport in February 2021 regarding his attempts to board a BA flight from Washington to India, and later by email in December 2021 regarding BA's masking policies. *See* Cmplt. at ¶¶ 48, 685-696. Although Plaintiff alleges he attempted to take an earlier BA flight out of JFK International Airport in January 2021, that is not the flight he discussed with Mr. Roberts. *See id.* ¶¶ 297-303 (discussing the ticket he purchased for a flight from JFK), ¶ 305 (discussing his first encounter with Mr. Roberts to discuss a new flight departing from Dulles). When Plaintiff emailed Mr. Roberts in December 2021, there was no indication that it was for a flight to or from New York or any specific flight at all. *Id.* ¶¶ 310-311. Even if Mr. Roberts had known Plaintiff would receive his reply in New York, it would not establish personal jurisdiction. *See Metamorfoza*, 2021 WL 735243, at *5 (S.D.N.Y. Feb. 25, 2021) (communicating with customers via email regarding a previous ticket purchase insufficient to establish personal

11

jurisdiction under C.P.L.R. § 302(a)).  The Court need not credit Plaintiff's legal conclusion that Mr. Roberts was "instrumental in implementing" BA's alleged discrimination against him, which in any case seems to be merely a characterization of the February 2021 conversations and December 2021 email.  *See Kreit*, 2023 WL 6977448, at *4 (Court need not "accept as true a legal conclusion couched as a factual allegation.").

Accordingly, the claims against Mr. Roberts should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).  Mr. Roberts also, alternatively, joins in the Airline Defendants' motion to dismiss for failure to state a claim.

## B.  PLAINTIFF HAS NOT STATED A CLAIM AGAINST THE AIRLINE DEFENDANTS

Plaintiff's 296-page, 83-exhibit Complaint casts an exceedingly wide net but fails to come up with any plausible claim for relief against the Airline Defendants.  Despite his allegations of an international, industry-wide conspiracy to violate travelers' civil rights, all thirty-plus causes of action Plaintiff brings against the airlines stem from an alleged violation of the ACAA, which cannot be enforced through private litigation.  His remaining claims are either inadequately plead or preempted by the Airline Deregulation Act of 1978 or ACAA.  Accordingly, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1.  Legal Standard

"To overcome a motion to dismiss for failure to state a claim, a plaintiff's complaint 'must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'"  *We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev*., 76 F.4th 130, 144 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although *pro se* complaints are to be construed liberally, they must still contain sufficient factual allegations "beyond *ipse dixit*" to meet the pleading standard. *Id*. at 75. Moreover, courts in the Second Circuit "have developed a practice of withdrawing this solicitude if a *pro se* litigant is deemed to have become generally experienced in litigation through participation in a large number of previous legal actions." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). That Plaintiff is better versed than the average layman in the issues he raises is reflected in the Complaint's many references to previous lawsuits, including thoroughly cited legal arguments anticipating a motion to dismiss. *See, e.g*., Cmplt. ¶¶ 1016-57.

### 2. Plaintiff Fails to State a Claim Under Federal Civil Rights Law

Plaintiff's first three causes of action against the Airline Defendants, Counts Seven through Nine of the Complaint, are for violation of his civil rights under 42 U.S.C. §§ 1983, 1985, and 1986. None of these claims is plausibly alleged.

To state a claim for relief under Section 1983, Plaintiff must allege that "some person acting under color of state law deprived him of a federal right." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60-61 (2d Cir. 2012). A private person acts "under color of state law" when they are a "willful participant in joint activity with the [s]tate or its agents." *Cheruvu v. HealthNow New York, Inc*., No. 22-1993, 2023 WL 3443362, at *2 (2d Cir. May 15, 2023) (quotation omitted) (alteration in original). The plaintiff must plausibly allege that the private actor and the state "share some common goal to violate the plaintiff's rights." *Id*. (quotation omitted).

Plaintiff argues that flight attendants have a "quasi police power" on board aircraft and that, "if Plaintiff were to ignore the mask demands from the airlines . . . then go[ ] on any of the

above listed airline defendants' planes without a mask, all hell would break loose." Cmplt. ¶¶ 925, 928. He does not allege that he ever actually boarded an aircraft or that any airline employee ever used "quasi police power" to deny him boarding. He does not allege, beyond simply stating it as a conclusion, that any of the Airline Defendants or their employees conspired or cooperated with any state authority with the intent to violate his rights. *See Cheruvu*, 2023 WL 3443362 at *2 ("[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a [section] 1983 claim against the private entity." (quotation omitted)). Without some specific factual allegation that could support a finding that the Airline Defendants barred Plaintiff from boarding because of his disability – as opposed to the direct threat he posed to the health and safety of other passengers or his refusal to follow procedures to qualify for an exemption – he has no prima facie claim under § 1983. *See Brannon v. Delta Airlines, Inc*., 434 F. Supp. 3d 124, 134 (S.D.N.Y. Jan. 22, 2020) (plaintiff failed to prove prima facie discrimination where complaint relied on "pure speculation and conjecture to assert that . . . flight attendants' actions in response to his behavior must have been motivated by their discriminatory biases[.]").

Moreover, Section 1983 cannot be used to enforce federal statutory rights that are already enforceable under their own, more specific statutes. *See City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 121 (2005) ("The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983."). Plaintiff is seeking to enforce his right as a disabled passenger to be free from discrimination, which is codified in the ACAA. *See* 49 U.S.C. § 41705. The ACAA provides a specific mechanism for private enforcement – namely, submission of a complaint for investigation by the DOT. *See id.* at § 41705(c); 14 C.F.R. § 382.159 (setting forth procedure for passengers to file discrimination complaints). The provision of this more restrictive remedy

precludes enforcement of Plaintiff's Section 41705 rights by way of a claim under Section 1983.

Plaintiff's claims under Sections 1985 and 1986 fail for similar reasons. The two claims are interdependent. Section 1985(3) requires a plaintiff to show "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Harrell v. New York State Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7065 (RA), 2019 WL 3817190, at *4 (S.D.N.Y. Aug. 14, 2019) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)). Section 1986 "provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Id.* (quoting *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999)). "In other words, a § 1986 claim must be predicated upon a valid § 1985 claim." *Id.*

To survive a motion to dismiss, a complaint alleging these claims must include facts, not merely "conclusory allegations," of "class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* (quoting *Reynolds v. Barrett*, 685 F.3d 193, 201-02 (2d Cir. 2012)); *see also Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999) ("a plaintiff alleging a conspiracy under § 1985(3) must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.").

Plaintiff alleges the Airline Defendants "conspire[ed] to deprive him of his right to fly and . . . to deny him his rights in all the counts listed herein." Cmplt. ¶ 934. He claims he has been targeted not as a disabled person, but as a member of a subgroup of "people with disabilities who, because of their disabilities, cannot wear masks" – the "mask-disabled." *Id.* ¶¶ 945, 954, 976.

Without conceding that the "mask-disabled" constitute a protected class, Plaintiff does not allege that the Airline Defendants' implementation of the Federal Mask Mandate was motivated by animus against the "mask-disabled" as opposed to, *e.g.*, their obligation to comply with federal law or the CDC's finding that maskless airline passengers posed a threat to public health.  The Complaint is devoid of any specific allegation that any of the Airline Defendants coordinated with each other for the purposes of depriving the mask-disabled of their ability to travel.  Plaintiff acknowledges this deficiency but attempts to bypass it with generalizations and placeholders.  *Id.* ¶ 961 ("I expect to prove through discovery that the Airline Defendants conspired – with each other, other air carriers, and within their own companies – to ban disabled flyers because of a discriminatory motive."); ¶ 977 ("We can certainly get to the bottom of the animus during discovery").  This gambit has been rejected in several previous cases attempting to claim airlines conspired to discriminate against disabled passengers by implementing the Federal Mask Mandate. *See Seklecki v. Ctr. for Disease Control & Prevention*, 635 F. Supp. 3d 15, 23 (D. Mass. 2022) ("In light of COVID-19 pandemic and evolving recommendations on masking in response to the pandemic, there is no plausible allegation that the Airline Defendants were conspiring to harm disabled passengers by imposing a mask requirement."); *Andreadakis v. Ctr. for Disease Control & Prevention*, No. 3:22CV52 (DJN), 2022 WL 2674194, at *9 (E.D. Va. July 11, 2022); *Marcus v. Centers for Disease Control & Prevention*, No. 22-cv-02383-SSS-ASx, 2023 WL 3044614, at *8 (C.D. Cal. Feb. 21, 2023).  It should be rejected here for the same reasons.

Moreover, like Plaintiff's Section 1983 claim, his claims under Sections 1985 and 1986 seek to enforce his right to be free from discrimination during air travel.  This right is protected by the ACAA.  Plaintiff cannot circumvent the ACAA's administrative enforcement regime by bringing a broad claim for civil conspiracy.  *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,

442 U.S. 366, 376 (1979); *Seklecki*, 635 F. Supp. 3d at 22 ("Because a statutory scheme and administrative remedies are in place for the ACAA, Seklecki cannot pursue claims for disability discrimination under section 1985(3)").[6]

### 3. Plaintiff Has No Private Right of Action Under the ACAA

Counts Ten through Eighteen of the Complaint allege that the Airline Defendants violated various provisions of the ACAA in their implementation of the Federal Mask Mandate. The law is well settled in this Circuit and elsewhere that the ACAA does not afford a private right to sue. *See Lopez v. Jet Blue Airways*, 662 F.3d 593, 597 (2d Cir. 2011) ("[T]he text and structure of the ACAA manifests no congressional intent to create a private right of action in a federal district court.") (citing *Alexander v. Sandoval*, 532 U.S. 275 (2001)); *see also Segalman v. Southwest Airlines Co*., 895 F.3d 1219, 1229 (9th Cir. 2018); *Stokes v. Southwest Airlines*, 887 F.3d 199, 202 (5th Cir. 2018); *Love v. Delta Air Lines*, 310 F.3d 1347, 1354 (11th Cir. 2002). The statute instead "provides an administrative enforcement scheme designed to vindicate fully the rights of disabled passengers." *Lopez*, 662 F.3d at 597. Plaintiff is aware of these precedents, citing and discussing them extensively in the Complaint. *See* Cmplt. ¶¶ 1009-1026. He argues that the rationale against implying a private right of action in previous cases does not apply to him because, in his case, administrative enforcement has been "NON-EXISTENT." *Id*. ¶ 1026. Plaintiff's argument should be rejected.

First, the determination of whether a statute implies a private right of action is based on "Congress's intent with the text and structure of [the statute]" in general, not as applied on a case-

---

[6] Plaintiff's claim under Section 1986 is also time-barred because the Complaint was filed more than one year after his alleged attempts to request an exemption. *See* 42 U.S.C. § 1986 ("no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.").

by case basis.  *See Alexander*, 532 U.S. at 288.  The Second Circuit's analysis in *Lopez* looked to

the remedial scheme available under the ACAA and its enabling regulations, all of which are still

in effect.  The question is whether this remedial scheme was "designed to vindicate fully the rights

of disabled passengers" without recourse to private litigation, *Lopez*, 662 F.3d 597, not whether it

did so to the complainant's satisfaction in a given case.  Plaintiff does not point to any change in

the ACAA's enforcement structure since *Lopez* was decided, nor any case law superseding *Lopez*,

so there is no basis to deviate from the Second Circuit's holding.

Second, Plaintiff's allegation that there is no enforcement regime available to him is

contradicted by the Complaint itself.  He cites several complaints he has submitted to the DOT

about the same discrimination he claims here.  *See, e.g.*, Cmplt., Ex. 55 [DE 3-60] (discussing

Plaintiff's DOT complaint against LATAM); Cmplt. ¶ 1028 (discussing Plaintiff's DOT

complaints against JetBlue and American Airlines).  He has also availed himself of his right to

petition appellate courts for review of a DOT action.  *Id*. ¶¶ 1029, 1032.  Plaintiff's dissatisfaction

with the outcomes of this administrative enforcement regime does not give rise to a private right

of action in this Court.

Accordingly, Counts Ten through Eighteen should be dismissed.

### 4.  Plaintiff Has No Cognizable Claim Under the Rehabilitation Act

Count Nineteen of the Complaint is directed at domestic carriers only and therefore affects

only Spirit Airlines among the C&F-represented Defendants.  The claim is premised on Spirit

Airlines' receipt of funds pursuant to the Payroll Support Program and the CARES Act as Congress

attempted to stabilize the U.S. aviation industry during the COVID-19 pandemic. *See* Cmplt. ¶¶

1147-48.  Plaintiff argues that by receiving these funds, domestic carriers, including Spirit,

submitted themselves to the Rehabilitation Act, 29 U.S.C. § 794.  *See* Cmplt. at ¶ 1129-30.  He

claims enforcement of the Federal Mask Mandate violated Section 504 of the Rehabilitation Act.

*Id*. at ¶ 1141.  Section 504 provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a).

To state a claim under Section 504, a plaintiff must "demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to [the Rehabilitation Act]; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).  The essence of a Rehabilitation Act claim is the denial of access to federally-subsidized "public services" on the basis of disability.  *See Killoran v. Westhampton Beach Sch. Dist.*, No. 22-204, 2023 WL 4503278, at *3 (2d Cir. July 13, 2023). Because Spirit Airlines is not a federally-subsidized public service and Plaintiff has not alleged he was denied access to a Spirit Airlines flight on the basis of his disability, Plaintiff cannot state a claim on the second or third elements under the Act.

Here, the Rehabilitation Act does not apply to Spirit Airlines for two primary reasons. First, the Act applies only to entities that receive "federal financial assistance."   Courts have defined this term to mean the federal government's provision of a subsidy, as opposed to compensation. *See Shotz v. Am. Airlines, Inc.,* 420 F.3d 1332, 1335 (11th Cir. 2005); *Bary v. Delta Airlines, Inc.*, No. CIV.A.CV025202(DGT), 2009 WL 3260499, at *6 (E.D.N.Y. Oct. 9, 2009), *aff'd,* 553 F. App'x 51 (2d Cir. 2014) (citing *Shotz* and applying the subsidy/compensation

distinction with regard to a disability claim). When Congress provides emergency aid to stabilize the domestic aviation industry during a crisis, it is providing "compensation" for a loss (*i.e.*, loss of revenue) and not a subsidy, and the Rehabilitation Act therefore does not apply. *See Shotz*, 420 F.3d at 1336 (emergency aid provided to airlines after September 11, 2001 through the Air Transportation Safety and System Stabilization Act was "compensation," not a "subsidy"). Several courts have applied this standard specifically to the payroll support provided to airlines under the CARES Act and found that it did not constitute "federal financial assistance." *See Marcus*, 2023 WL 3044614, at *9; *Andreadakis*, 2022 WL 2674194, at *13; *Seklecki*, 635 F. Supp. 3d at 23.

Second, a subsidy only subjects an entire corporate entity – as opposed to a specific program – to the Rehabilitation Act if the entity is "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation," or if the subsidy is provided to the corporation "as a whole." *See* 29 U.S.C. § 794(b)(3). Plaintiff has not alleged (nor could he plausibly allege) that Spirit Airlines is "principally engaged" in providing education, health care, housing, social services, or parks and recreation to the public. *See Collins v. Giving Back Fund*, No. 18 CIV. 8812 (CM), 2019 WL 3564578, at *10 (S.D.N.Y. Aug. 6, 2019) (finding the "principally engaged in" clause "clearly shows that Congress intended the Rehabilitation Act to apply only to organizations that act as government surrogates by providing what are traditionally conceived of as 'public services.'").

Plaintiff also has not alleged that the Payroll Support Program qualified as aid to Spirit "as a whole." This term is clearly explained in the Rehabilitation Act's legislative history:

> Federal financial assistance extended to a corporation or other entity "as a whole" refers to situations where the corporation receives general assistance that is not designated for a particular purpose.

S. Rep. No. 100-64 at 17 (1987); *see Collins*, 2019 WL 3564578, at *11 ("It has been repeatedly held that federal funding to a private entity not primarily engaged in education, health care, housing or parks and recreation, when that funding is earmarked for a particular project or site within the entity's operations, is not "as a whole" federal funding for purposes of the Rehabilitation Act."); *Lucius v. Fort Taco*, *LLC*, No. 21-22397-CIV-WILLIAMS/MCALILEY, 2022 WL 335491, at *4 (S.D. Fla. Jan. 5, 2022) ("The legislative history of the Rehabilitation Act clarifies that federal financial assistance is extended to a private entity 'as a whole' when the entity 'receives general assistance that is not designated for a particular purpose.'").

Here, the Payroll Support payments were clearly designated for a particular purpose, namely maintaining the employment of airline employees through the COVID-related disruption of the commercial aviation industry. The Payroll Support Extension Agreement, which Plaintiff incorporates into his Complaint, is explicit on this point:

> The Recipient shall use the Payroll Support exclusively for the continuation of payment of Wages, Salaries, and Benefits to the Employees of the Recipient, including the payment of lost Wages, Salaries, and Benefits to Returning Employees.

*See* OMB 1505-0263 at 5. Because the funds Plaintiff alleges here were, according to his own allegations, designated for payroll support, they were not received by Spirit "as a whole" and therefore the Rehabilitation Act does not apply.[7] *See Seklecki*, 635 F. Supp. at 26 (noting that

---

[7] Plaintiff's argument that Spirit Airlines agreed to comply with the Rehabilitation Act to obtain payroll support funding under the CARES Act when it signed the "Payroll Support Program Extension Agreement" (see Cmplt. ¶¶ 1130, 1147 (citing OMB 1505-0263, available at https://omb.report/icr/202309-1505-001/doc/135475900)) similarly fails because, *inter alia*, Plaintiff is not a party to the Agreement. *See England v. United Airlines, Inc.*, 627 F. Supp. 3d 963, 971-72 (N.D. Ill. 2022) (finding Payroll Support Program Agreement does not confer third-party beneficiary rights); *cf. Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 117 (2011) ("A nonparty becomes legally entitled to a benefit promised in a contract . . . only if the contracting parties so intend.").

payroll support provided to airlines under the CARES Act was not extended to the corporation as a whole); *see also Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *2 (3d Cir. June 16, 2023), *cert. denied,* No. 23-5123, 2023 WL 6378722 (U.S. Oct. 2, 2023) (rejecting Plaintiff's argument that Target is covered by the Rehabilitation Act on the basis that Medicare and Medicaid provide funding to its pharmacies because "this allegation does not establish that federal 'assistance is extended to [Target] ... as a whole.'").

Finally, Plaintiff does not allege that he was "denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability," which is required to state a prima facie claim under the Rehabilitation Act.  *See McElwee*, 700 F.3d at 640.  As discussed above, Spirit attempted to assist Plaintiff in obtaining its services by providing him detailed instructions on how to obtain an exemption to the mask mandate.  He never responded to their instructions or attempted to purchase a ticket.  *See* Cmplt. ¶ 604.  He cannot plausibly be said to have been "denied the opportunity" to benefit from Spirit's services when he never made a genuine attempt to access them in the first place.

Accordingly, Count Nineteen should be dismissed as to Spirit Airlines pursuant to Rule 12(b)(6).

### 5.  **Plaintiff's State Law Claims Are Preempted**

Counts Twenty through Thirty-Seven of the Complaint seek (with three exceptions)[8] to recharacterize Plaintiff's federal claims for violations of his rights as a disabled airline passenger

---

[8] Count Thirty, Breach of Contract, applies only to British Airways and will be discussed separately *infra*.  Counts Thirty-Two and Thirty-Five are not directed at the Airline Defendants, and therefore are not addressed herein.

as state regulatory and common law claims against the Airline Defendants.  Because federal law preempts state regulation of commercial airline services, the claims should be rejected.

The Airline Deregulation Act expressly preempts any state or local "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1).  The term "related to" has been broadly interpreted to preempt any state or local law "having a connection with or reference to" any airline service. *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 384 (1992).  The Second Circuit has broadly interpreted the term "services" to include "matters such as boarding procedures, baggage handling, and food and drink-matters incidental to and distinct from the actual transportation of passengers." *Fawemimo v. Am. Airlines, Inc*., 751 F. App'x 16, 19 (2d Cir. 2018) (citing *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008)).  The statute preempts not only state statutes and regulations but also state common law actions that relate to airline services. *See id.* at 18 (citing *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014)).

Here, each of Plaintiff's state regulatory and common law claims arises from the same basic fact pattern:  he claims he was denied boarding (or would have been denied had he actually attempted it) because he did not comply with certain carrier-imposed boarding requirements; specifically, the requirement to wear a mask or submit an appropriate form to qualify for an exception.  His claims therefore "relate to" the Airline Defendants' provision of services and are expressly preempted by 49 U.S.C. § 41713(b)(1).

Plaintiff's state and local claims are also expressly preempted because they arise from the Airline Defendants' enforcement of the Federal Mask Mandate.  The CDC's Order specifically directs all "persons" to wear masks "when traveling on conveyances into and within the United States," and also directs all "conveyance operators" to ensure that all passengers wear masks for

23

the duration of travel.  *See* Federal Mask Mandate, 86 Fed. Reg. at 8026.  It expressly provides that

> Operators of conveyances or transportation hubs may impose requirements, or conditions for carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the operator, as well as require evidence that the person does not have COVID-19 such as a negative result from a SARS-CoV-2 viral test or documentation of recovery from COVID-19.

*Id*. at 8027 n.8.  The Mandate was issued pursuant to the CDC's statutory authority under the Public Health Service Act, which contains the following express preemption provision:

> Nothing in this section or section 266 of this title, or the regulations promulgated under such sections, may be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States), *except to the extent that such a provision conflicts with an exercise of Federal authority under this section* or section 266 of this title.

42 U.S.C. § 264(e) (emphasis added).  The Complaint alleges that the Airline Defendants imposed requirements on his request for an exemption from mask-wearing, such as the requirement to provide adequate medical documentation and a negative COVID test, that were consistent with those listed in Footnote 8 of the Mandate.  To the extent he claims any state or local regulation, or state common law, would have prevented the Airline Defendants from following the Mandate, those laws "conflict with" the Mandate and are expressly preempted under § 264(e).

Finally, because Plaintiff's claims relate to disability accommodations in commercial air travel, an area that is pervasively regulated by the ACAA, they are also implicitly preempted.  When federal regulations fully "occupy a field" of activity, state and local laws whose enforcement would "interfere with" the federal regulations are implicitly barred.  *Fawemimo*, 751 F. App'x at 19-20 (citing *Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 210 (2d Cir. 2011)).  The DOT has exercised authority delegated to it by Congress under the ACAA to promulgate regulations that fully "occupy the field" in certain areas pertaining

24

to airlines' provision of services to passengers with disabilities. *See Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 734 (9th Cir. 2016) (finding an ACAA regulation on accessible airport kiosks is "pervasive and intended to occupy the field of kiosk accessibility."); *Marcus*, 2023 WL 3044614, at *9 (ACAA "comprehensively addresses" boarding procedures for disabled passengers and therefore implicitly preempts state regulatory claims arising from denial of mask exemption request).

Here, Plaintiff points to multiple provisions of the ACAA that apply to his request for accommodation. *See* Cmplt., Counts Ten through Eighteen. The DOT has expressly stated that the ACAA regulations under Part 382 govern airlines' handling of requests for mask exemptions. *See* DOT Enforcement Notice at 6. The DOT's position with respect to the mandate is that the "authority to pursue or not to pursue enforcement action against airlines with respect to air travel consumer protection and civil rights requirements, including compliance with the ACAA, lies with OACP [a subdivision of the DOT]."[9] *Id.* at 5.

Plaintiff's state regulatory and tort claims should also be dismissed under Rule 12(b)(6) because they are not supported by sufficient factual detail. Counts Twenty through Twenty-Six allege violations of California, New Jersey, New York City, and Texas antidiscrimination laws, but provide no more than recitations of the text of each regulation and boilerplate assertions that "All to-be-named Individual Defendants in addition to the listed defendants are personally liable to Plaintiff for the violation of [the regulation]" or "All the defendants have violated these laws." *See* Cmplt. ¶¶ 1157, 1179, 1188, 1197, 1204, 1206, 1213, 1224, 1226. Counts Twenty-Seven through Twenty-Nine do not even recite the elements of any particular state law claim, but assert

---

[9] The agency's interpretation of the preemptive effects of its regulations is entitled to "some weight." *See Nat'l Fed'n of the Blind*, 813 F.3d at 737 (citing *Wyeth v. Levine,* 555 U.S. 555, 576 (2009)).

"intentional and/or unintentional tort," "negligence," and "infliction of emotional distress" under the laws of "Texas, New York, New Jersey, California and/or other states." The only factual allegation supporting each of these claims is that the Defendants injured Plaintiff by "mistreating him," Cmplt. at ¶ 1230, or failing to "help him circumvent a policy that would cause him the inability to travel" – *i.e.*, the Federal Mask Mandate. Cmplt. ¶¶ 1237. These are exactly the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that "do not suffice" under Rule 12(b)(6). *Harris*, 572 F.3d at 72.

Counts Thirty-One (Promissory Estoppel) and Thirty-Three (Injurious Falsehoods) similarly fail for lack of specificity. Neither identifies any actionable statement by any Airline Defendant. *See* Cmplt. ¶ 1273-74 (referring to "advertisements," "websites" and "brochures" of all defendants generally that "alleged that they are decent people"); ¶ 1287 (referring to generic, allegedly false statements about masks and COVID without attributing them to any speaker).

Count Thirty-Four (Invasion of Privacy) alleges Defendants "forced" Plaintiff to "disclose his medical condition and describe in detail his disabilities in order to possibly get an opportunity to fly with them." Cmplt. ¶ 1298. This allegation is directly contradicted by the Complaint itself, which makes clear that Plaintiff refused to disclose medical information to every airline that requested it. While it is not clear under what state tort law Plaintiff brings this claim, any possible claim would depend upon an allegation of an actual, intentional, and unjustified violation of Plaintiff's privacy or misappropriation of his name or image. *See, e.g., Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40, 48 (Tex. App. 2001) (Texas common law invasion of privacy claim requires an "unreasonable, unjustified, or unwarranted" intrusion upon "the solitude of another or his private affairs"); *Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689, 691 (N.J. App. Div. 1982) (New Jersey common law invasion of privacy arises when one "intentionally intrudes, physically

or otherwise, upon the solitude or seclusion of another or his private affairs or concerns"); *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1482-83 (Cal. Ct. App. 1986) (California common law invasion of privacy also requires "intentional" intrusion).[10]  Given that Airline Defendants' requests for medical information were squarely required by the Federal Mask Mandate, they cannot plausibly be considered "unjustified" and "outrageous."

Count Thirty-Six (Fraudulent Misrepresentation), alleges that the Airline Defendants "falsely represented . . . that 'federal law' requires airline passengers wear face masks." Cmplt. ¶ 1322.  Again, Plaintiff's premise is directly contradicted by the Complaint itself, which cites the January 21, 2021 Executive Order and Federal Mask Mandate, two federal laws which required passengers to wear masks and airlines to enforce mask-wearing on flights.  Regardless, the claim fails to attribute any specific statement to any specific defendant, and therefore fails to meet the heightened pleading standard for fraud.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  The claim is also preempted by the Airline Deregulation Act because it constitutes a "direct effort to regulate the manner in which [a carrier] communicates with its customers in connection with" its services. *See In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 315 (E.D.N.Y. 2005) (holding consumer fraud claims "fit[ ] squarely within the range of state law actions" preempted by the ADA); *Martin v. DHL Express (USA), Inc.*, 580 F. Supp. 3d 66, 73 (D.N.J. 2022) (finding that "state common law claims of fraud [. . .] are barred by the broad pre-emptive purpose of the ADA") (internal quotation marks omitted)).  The claim is also preempted by the Federal Mask Mandate and ACAA for the reasons discussed above.

---

[10] New York and Virginia recognize no common law cause of action for invasion of privacy.  *See Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 441 (2000); *Hayes v. KIK Custom Prod.*, No. 7:11-CV-00200, 2011 WL 4963774, at *1 (W.D. Va. Oct. 14, 2011).

Count Thirty-Seven (Infringement of the Constitutional Right to Travel) is also internally inconsistent. Plaintiff claims the Airline Defendants "deprived this disabled American who cannot wear masks for health reasons, of the ability to fly." Cmplt. ¶ 1332. But according to his own allegations, he was never denied boarding by any Airline Defendant (other than British Airways, discussed separately below) as a result of their mask policies. Instead, each Airline Defendant asked Plaintiff to follow its procedures to qualify for an exemption, Plaintiff refused and did not attempt to purchase a ticket. He has not alleged that it was impossible for him to comply with Defendants' procedures by, *e.g.*, filling in the required forms and obtaining a negative COVID test. These safety measures do not constitute an illegal denial of Plaintiff's right to travel. *See Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) ("travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right." (quotation omitted)); *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) ("Minor restrictions on travel simply do not amount to the denial of a fundamental right that can be upheld only if the Government has a compelling justification."). As a federal court recently ruled in a similar case challenging the Federal Mask Mandate:

> [Plaintiff] may still travel by means other than aircraft. Further, he may travel by aircraft without a mask by obtaining an exemption. Or, he may travel by airplane with a mask. Thus, the Mask Mandate amounts to nothing more than a minor restriction on his travel, such that he cannot bring a claim for the denial of a constitutional right.

*Andreadakis*, 2022 WL 2674194, at *13. Plaintiff here is in the same position; his "right to travel" has not been infringed and his claim should similarly be dismissed.

### 6. Plaintiff Has No Breach of Contract Claim Against British Airways

Count Thirty of the Complaint alleges that the Airline Defendants "breached their contract by forcing [Plaintiff] to wear a mask, attempting to force him to wear a mask, by not allowing him to fly if he does not wear a mask, and/or by not accommodating his special needs." Cmplt. ¶ 1251.

Of the C&F-represented Defendants, Plaintiff only alleges he had a contract with British Airways. *Id*. at ¶ 1252-53. The claim against BA should be dismissed because it too is preempted.

The Airline Deregulation Act preempts state contract law claims that "relate to" airline services, including boarding and accommodating passengers with disabilities. *See Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283, 285 (2d Cir. 2019) (citing *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014)). There is a limited exception to this rule for alleged breaches of an airline's "own, self-imposed undertakings" contained on the contract of carriage. *Id*. (quoting *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995)). Plaintiff discusses the exception in the Complaint, citing *Wolens*. Cmplt. ¶ 1257. What Plaintiff does not cite is any provision in his alleged contract with British Airways that would have obligated British Airways to allow him to fly maskless without qualifying for an exemption to the Federal Mask Mandate. Of course, there is no such provision as this would have violated federal law and endangered British Airways' other passengers and crew.[11] In the absence of such a "self-imposed undertaking," the *Wolens* exception does not apply and the claim is preempted. Moreover, British Airways' procedures implementing the Federal Mask Mandate were not "self-imposed" but mandated by the federal government. *See e.g., Polinovsky v. British Airways, PLC*, 2012 WL 1506052, at *3 (N.D. Ill. Mar. 30, 2012). The *Wolens* exception does not apply to a contract claim unless it can be "adjudicated without resort to outside sources of law," including the Mask Mandate. *See Andreadakis*, 2022 WL 2674194, at

---

[11] The Conditions of Carriage do, however, provide that BA may deny boarding to a passenger who has "not observed or obeyed the instructions of our ground staff or a member of the crew of the aircraft relating to safety or security, including, but not limited to, the requirement to comply with health mitigation measures implemented to prevent the spread of infectious disease." *See* BA General Conditions of Carriage § 7a8, *available at* https://www.britishairways.com/en-us/information/legal/british-airways/general-conditions-of-carriage. The Complaint makes it clear Plaintiff had no intention of complying with BA's instructions for obtaining an exemption to the mask mandate. Thus, even if BA had outright refused Plaintiff boarding, he still would not have a breach of contract claim.

*11 (Airline Deregulation Act preempted breach of contract claim based on enforcing Federal Mask Mandate with respect to disabled passenger) (citing *Smith v. Comair, Inc.*, 134 F.3d 254, 257 (4th Cir. 1998)); *Fondo v. Delta Airlines, Inc.*, No. 00 CIV. 2445 (JSM), 2001 WL 604039, at *2 n.3 (S.D.N.Y. May 31, 2001), *aff'd*, 25 F. App'x 82 (2d Cir. 2002) ("[A] contract claim is preempted if reference is required to sources of law outside of the agreement that operate to alter its terms or the parties' obligations.").  Accordingly, Plaintiff's breach of contract claim against British Airways should be dismissed.

## **<u>CONCLUSION</u>**

WHEREFORE, the C&F-represented Defendants respectfully request that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6) together with such other and further relief the Court deems just and proper.

Dated:    New York, New York
          November 20, 2023

CONDON & FORSYTH LLP

By _____

Bartholomew Banino
bbanino@condonlaw.com
Anthony U. Battista
abattista@condonlaw.com
Jonathan E. DeMay
jdemay@condonlaw.com
Zachary Groendyk
zgroendyk@condonlaw.com
Marissa Lefland
mlefland@condonlaw.com
John Maggio
Jmaggio@condonlaw.com
7 Times Square, 18th Floor
New York, New York 10036
(212) 490-9100

*Attorneys for Defendants*

Concesionaria Vuela Compañía de Aviación,
S.A.P.I. de C.V., Royal Air Maroc, Aerovías
de México S.A. de C.V., Transportes Aéreos
Portugueses, S.A., Spirit Airlines, Inc.,
Avianca S.A., Singapore Airlines, LATAM
Airlines Group S.A., Iberia Líneas Aéreas De
España, S.A. Operadora, Sociedad
Unipersonal, LOT Polish Airlines, SA, British
Airways P.L.C., and individual Defendant
Matthew Roberts