## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AARON ABADI,** | |
| Plaintiff | **CASE #  1:23-cv-04033-LJL** |
| V. | |
| **AMERICAN AIRLINES, INC., et al** | |

## PLAINTIFF'S LETTER TO THE COURT RE MOTION FOR JUDGMENT ON THE PLEADINGS BY AMERICAN AIRLINES, INC., DELTA AIRLINES, INC., JETBLUE AIRWAYS CORPORATION, SOUTHWEST AIRLINES CO., UNITED AIRLINES, INC., ROBERT LAND, ROY GOLDBERG, DEBBIE CASTLETON, & NATHALIE SIMON

BY:

AARON ABADI
Pro Se Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
Tel: 516-639-4100
Email:  aa@neg.com

YOUR HONOR;

Plaintiff would like to call to the attention of this Court how the attorney(s) who filed this new "motion for judgment on the pleadings" (Docs 197-198), were playing around with him, and taking advantage of the Plaintiff, as he is pro se.

The attorney, Mr. Roy Goldberg, asked Plaintiff in an email on October 16, 2023 (Exhibit A), if Plaintiff will be okay if the Defendants that he represents (listed above) can file 45 pages for their motion to dismiss. Against my better judgment, I agreed.

After filing the document, on October 30, 2023, Mr. Goldberg sent Plaintiff an email stating "Our MTD brief ended up being 47 pages with the conclusion page. So to be reciprocal please take up to 47 pages for your opposition brief." Again, against my better judgment, I said okay.  At that point, I wasn't going to bother the Court because of two lousy pages. I felt that I would rather win the case on the merits than by limiting the Defendants pages. I didn't need so many pages for my response.

But, now it is getting out of hand. On Nov 16, 2023, Mr. Goldberg asked Plaintiff for a new request (Exhibit B):

"Dear Mr. Abadi, the defendants we represent have identified an additional argument that needs to be included in our brief in support of the motion to dismiss.

We can stick with the 47 page limit and file an amended brief by next Tuesday November 21."

At this point, I said, "No." I wrote back the following:

"Sorry. I already prepared my response and I'm filing it today. You have 47 pages, which is more than anyone would've ever given. You got a chance to write, I don't know, maybe 30 reasons to dismiss the claim give it a rest."

I thought that was the end of it. But it was not. Today, Roy Goldberg filed on behalf of all the clients a motion for judgment on the pleadings (Docs 197-198). This was just another aspect of the motion to dismiss that he forgot to put in the original 47-page motion to dismiss. He gave it a new name, when I wouldn't agree for him to revise it. So, now his motion to dismiss is 63 pages long. I would never have agreed to that. I would never have agreed to 45 or 47 pages under these circumstances. This is them taking advantage of me. It is just a game. When I did not agree to revise the motion to dismiss, he throws it in under another name.

Plaintiff would like to ask the Court to not allow this new motion for judgment on the pleadings, and/or require them to modify the motion to dismiss to 25 pages, since their agreement with Plaintiff was just a trick.

Plaintiff didn't want to bother the Court with this other situation, but on August 4, 2023, all the way at the beginning, Roy Golberg threatened me with sanctions (Exhibit C). The basis of his threat was that the claims were frivolous. I

reminded him, that the Judge did a 28 U.S. Code § 1915 review, and obviously

determined that the claims were not frivolous. I asked him to retract his threats, but

he refused.

It is not easy fighting against dozens of high-end lawyers, but can't there be

some basic ground rules?! Aren't lawyers expected to be of a higher moral fabric?!


**WHEREFORE**, Plaintiff asks this court to discard this new motion to dismiss

that was filed under the guise of a motion for judgment on the pleadings in its

entirety, and/or to require Defendants listed above to revise their initial motion to

dismiss to fit into 25 pages. Additionally, it would be helpful if the Court can ask

Mr. Golberg to stop treating Plaintiff in this way, and any other relief that the

Court deems appropriate.


Respectfully submitted this November 28, 2023.

s/Aaron Abadi

AARON ABADI, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
516-639-4100  Email:  aa@neg.com

EXHIBIT  A

**aa@neg.com**

---

| | |
|---|---|
| **From:** | Aaron Abadi <abadi.rne@gmail.com> |
| **Sent:** | Monday, October 30, 2023 10:09 PM |
| **To:** | Goldberg, Roy |
| **Cc:** | Aaron Abadi; Corcoran, Kieran M. |
| **Subject:** | Re: Abadi v. American Airlines, Inc. (SDNY) -- Page Limits for Motion to Dismiss Briefing |

Okay.

Aaron Abadi


On Oct 30, 2023, at 9:32 PM, Goldberg, Roy <roy.goldberg@stinson.com> wrote:


Good evening Mr. Abadi.  Our MTD brief ended up being 47 pages with the conclusion page.  So to be reciprocal please take up to 47 pages for your opposition brief.  Thanks.

Roy Goldberg
STINSON LLP
1775 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20006
(202) 728-3005
Email: roy.goldberg@stinson.com


**Roy Goldberg**
Partner

STINSON LLP
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-4605
Direct: 202.728.3005  \  Mobile: 301.908.3268  \  Bio

Assistant: WDC.LSSTeam@stinson.com  \  202.572.9910

**STINSON.COM**

---

**From:** Aaron Abadi <abadi.rne@gmail.com>
**Sent:** Monday, October 16, 2023 1:58 PM
**To:** Goldberg, Roy <roy.goldberg@stinson.com>
**Cc:** Aaron Abadi <aa@neg.com>; Corcoran, Kieran M. <kieran.corcoran@stinson.com>
**Subject:** Re: Abadi v. American Airlines, Inc. (SDNY) -- Page Limits for Motion to Dismiss Briefing

Yes. Okay.

Aaron Abadi

On Oct 16, 2023, at 1:46 PM, Goldberg, Roy <roy.goldberg@stinson.com> wrote:

Thanks Mr. Abadi.  Let's agree on 45 pages for the opening brief, 45 pages for you to file the opposition to our motion, and then 25 pages for our reply to your opposition.  Is that what you mean by reciprocal?  Thanks

Roy Goldberg
STINSON LLP
1775 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20006
(202) 728-3005
Email: roy.goldberg@stinson.com

**Roy Goldberg**
Partner

STINSON LLP
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-4605
Direct: 202.728.3005 \ Mobile: 301.908.3268 \ Bio

Assistant: WDC.LSSTeam@stinson.com \ 202.572.9910

**STINSON.COM**

**From:** Aaron Abadi <abadi.rne@gmail.com>
**Sent:** Monday, October 16, 2023 1:03 PM
**To:** Goldberg, Roy <roy.goldberg@stinson.com>
**Cc:** Aaron Abadi <aa@neg.com>; Corcoran, Kieran M. <kieran.corcoran@stinson.com>
**Subject:** Re: Abadi v. American Airlines, Inc. (SDNY) -- Page Limits for Motion to Dismiss Briefing

**External Email – Use Caution**

I'm open to either option as long as it is reciprocal

Aaron Abadi

On Oct 16, 2023, at 12:30 PM, Goldberg, Roy
<roy.goldberg@stinson.com> wrote:

Dear Mr. Abadi, with regard to the defendants represented by Stinson in this matter, we have a deadline in early November to respond to the Complaint.  We are reaching out to see if you will agree to page limits as follows for the motion to dismiss we intend to file.

Pursuant to Judge Liman's Individual Practices, Item I:

*Memoranda of Law. The Court does not impose page limitations on memoranda of law. The parties should agree upon reasonable page limits for principal briefs and reply briefs, exercising their sound judgment so as not to unnecessarily burden the Court. If parties are unable to agree, memoranda in support of and in opposition to motions are limited to 25 pages while reply memoranda are limited to 10 pages. Memoranda of more than 10 pages shall contain a table of contents and table of authorities. The Court reserves the right to impose page limits at any point if parties do not appropriately exercise the latitude afforded under this rule.*

Our proposal is that the brief in support of our motion to dismiss have a page limit of 40 pages; your opposition is limited to 40 pages; and the reply brief is 25 pages.  (We also would be open to 45/45/25 if you prefer that).

Please let us know.  Thanks


Roy Goldberg
STINSON LLP
1775 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20006
(202) 728-3005
Email: roy.goldberg@stinson.com


**Roy Goldberg**
Partner

STINSON LLP
1775 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-4605
Direct: 202.728.3005 \ Mobile: 301.908.3268 \ Bio

Assistant: WDC.LSSTeam@stinson.com \ 202.572.9910

**STINSON.COM**

This communication (including any attachments) is from a law firm and may contain confidential and/or privileged information.  If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

# Exhibit B

**aa@neg.com**

| | |
|---|---|
| **From:** | Aaron Abadi <aa@neg.com> |
| **Sent:** | Thursday, November 16, 2023 2:28 PM |
| **To:** | Goldberg, Roy |
| **Cc:** | abadi.rne@gmail.com; Corcoran, Kieran M. |
| **Subject:** | Re: Abadi v. American Airlines, Inc. et al. (SDNY) |

Sorry. I already prepared my response and I'm filing it today.
You have 47 pages, which is more than anyone would've ever given. You got a chance to write, I don't know, maybe 30 reasons to dismiss the claim give it a rest.

Aaron Abadi
CEO
National Environmental Group
Cell # 516-639-4100


On Nov 16, 2023, at 2:21 PM, Goldberg, Roy <roy.goldberg@stinson.com> wrote:


Dear Mr. Abadi, the defendants we represent have identified an additional argument that needs to be included in our brief in support of the motion to dismiss.  We can stick with the 47 page limit and file an amended brief by next Tuesday November 21.  That would then presumably give you a new four week response period starting from the 21st to file your opposition (which could also be up to 47 pages), and then we would have the 25 page reply after that.

Please let us know if that works for you.  (We know that the other airline defendants have extensions on their motions so the court is not likely to hear ours anytime too soon anyway.)

Roy Goldberg
STINSON LLP
1775 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20006
(202) 728-3005
Email: roy.goldberg@stinson.com


**Roy Goldberg**
Partner

STINSON LLP
1775 Pennsylvania Avenue NW, Suite 800

Washington, DC 20006-4605
Direct: 202.728.3005 \ Mobile: 301.908.3268 \ Bio

Assistant: WDC.LSSTeam@stinson.com \ 202.572.9910

**STINSON.COM**

This communication (including any attachments) is from a law firm and may contain confidential and/or privileged information.  If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

**STINSON**

Roy Goldberg

**PARTNER**

DIRECT: 202.728.3005

OFFICE: 202.785.9100

roy.goldberg@stinson.com

Paul Lackey

**PARTNER**

DIRECT: 214.560.2206

OFFICE: 214.560.2201

paul.lackey@stinson.com

# Exhibit C

August 4, 2023

**VIA EMAIL AND FIRST CLASS MAIL**

Mr. Aaron Abadi
82 Nassau Street
Apartment 140
New York, NY 20038
Email: aa@neg.com

Re:     *Abadi v. American Airlines Group, et al.*, Case No.  1:23-cv-04033-UA (S.D.N.Y.) – "Safe Harbor"
         Letter Under Rule 11, Fed. R. Civ. P.

Dear Mr. Abadi:

        This letter is sent on behalf of American Airlines Group, Inc., Delta Air Lines, Inc., JetBlue Airways Corporation, Southwest Airlines Co., and United Airlines, Inc. (the "Five Airline Defendants"), pursuant to Rule 11, Fed. R. Civ. P., as that Rule has been construed and applied in *Charles Equipment Energy Systems, LLC v. Innio Waukesha Gas Engines, Inc.*, Case No. 22 Civ. 2716 (CM), 2023 WL 2346337 (S.D.N.Y. March 3, 2023), and *Star Mark Mgmt., Inc. v. Koon Chun Hing Key Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012).   For the reasons provided below, your claims against the Five Airline Defendants are baseless and without any arguable basis in law or fact.  The Five Airline Defendants intend to move for sanctions against you, including reasonable attorneys' fees, unless the claims are withdrawn by you within the 21-day period provided by Rule 11, *i.e.*, within three weeks after your receipt of this letter.

        Rule 11(a), Fed. R. Civ. P., states that "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented."  Under Rule 11(b), by "presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

1775 Pennsylvania Avenue N.W., Suite 800, Washington D.C. 20006
2200 Ross Avenue, Suite 2900, Dallas, TX 75201


STINSON LLP    \    STINSON.COM

CORE/3503476.0004/183313334.2

Mr. Aaron Abadi
August 4, 2023
Page 2

(1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)    the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

An unrepresented party may be sanctioned, after a reasonable opportunity to respond, for violating Rule 11 by motion or by the Court upon its own initiative.  Rule 11(c)(1)-(3); *see Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and *pro se* litigants"). In general, courts have been more willing to sanction a *pro se* litigant where he has more familiarity or competence with the law, or has been put on notice as to the possibility of sanctions.  *See Baasch v. Reyer*, 827 F. Supp. 940, 944 (E.D.N.Y. 1993) (imposing sanctions against a *pro se* party); *Colida v. Sony Corp.*, No. 04 Civ. 2093 (RJH), 2005 WL 267231, *4 (S.D.N.Y. Feb. 3, 2004) ("Rule 11 applies to both attorneys and *pro se* litigants in guarding against frivolous, vexatious or scurrilous lawsuits").  "Indeed, the fact that a litigant appears *pro se* does not shield him from Rule 11 sanctions because one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."  *Id*.  You have filed several lawsuits around the country and have more familiarity with the law (and the requirements of Rule 11) than most *pro se* plaintiffs.

1.    **Your challenge of the Five Airline Defendants' prior application of the Federal Transportation Mask Mandate ("FTMM") is moot by reason of the expiration of the FTMM, and the lack of any masking policies currently being imposed by the Five Airline Defendants.**

Your claims against the Five Airline Defendants are moot (and were moot when filed), given the fact that the FTMM was effectively terminated on April 18, 2022, which was more than a year before you filed your Complaint.  As referenced throughout your Complaint, on April 18, 2022, a federal district judge in the Middle District of Florida issued an order in a case not involving airlines which vacated the FTMM. *Health Freedom Defense Fund, Inc. v. Biden*, 599 F. Supp.3d 1144 (M.D. Fla.).  Your Complaint does not allege any issues with airlines and mask requirements since April 18, 2022 decision.

On June 22, 2023, the U.S. Court of Appeals for the Eleventh Circuit issued a decision that ruled that the appeal of the district court decision was moot because of the cessation of the FTMM, and vacated the lower court decision on that basis.  *Health Freedom Defense Fund v. President*, 71 Fed. 4th 888.  In holding that the appeal of the lower court ruling was moot, the Eleventh Circuit stated:

On April 10, 2023, President Biden signed a joint resolution of Congress that terminated the national emergency.  Act of Apr. 10, 2023, Pub. L. No. 118-3, 137 Stat. 6 (2023).  More

Mr. Aaron Abadi
August 4, 2023
Page 3

> relevant to this case, on May 11, 2023, the HHS Secretary's declaration of a public health emergency expired. See End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Centers for Disease Control and Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html. Therefore, even had the district court sided with the government, the Mandate would have expired by its own terms on May 11, 2023. See 86 Fed Reg. 8025-01 at 8030 ("This Order will remain in effect . . . until the Secretary of Health and Human Services rescinds the determination . . . that a public health emergency exists.").

*Id*. at 891. The Eleventh Circuit added that "there is no longer any Mandate for us to set aside or uphold. Indeed, even if we were to decide against Appellees and reverse the district court – as the government desires – there would be no Mandate to reinstate." *Id*. at 892. The court further stated:

> [T]there is no reasonable basis to expect the Mandate will be reinstated if this case is rendered moot. By its own terms, the Mandate expired after the HHS Secretary declared that the public health emergency has ended, and there is no hint that this decision was an effort to avoid further litigation. Further, nothing in the text of the Mandate suggests it can be revived after its expiration, and there is not a grain of evidence that the CDC has any plans to promulgate an identical mandate. And while we recognize that the government continues to defend the legality of the Mandate, that fact "has little, if anything to do . . . with the voluntary-cessation analysis." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1269 (11th Cir. 2020). The question is simply whether there is a reasonable basis to expect the challenged conduct to "start up again" if this case is declared moot. *Friends of the Earth*, 528 U.S. at 189, 120 S. Ct. 693. We conclude there is not. (*Id*.)

*See also id*. ("We find Appellees' contention that there is a reasonable expectation that the CDC will issue another nationwide mask mandate for all conveyances and transportation hubs to be speculative at best.") The court ruled that the "order and judgment of the district court are VACATED, and the district court is instructed to DISMISS the case as MOOT." *Id*. at 893-94.

Your Complaint was moot when filed. But even assuming it was not, it most certainly was rendered moot by the Eleventh Circuit decision in *Health Freedom*. In this case, your Complaint (at pages 64-65) seeks a declaration stating that:

a.    "the Airline Defendants' mask policies violate ACAA and the Rehabilitation Act by discriminating against the disabled and issue a permanent injunction prohibiting them from engaging in such future conduct";

b.    "the Airline Defendants' policies requiring passengers not known to have a communicable disease to wear a face covering violate the Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct";

c.    "the Airline Defendants' policies of refusing to provide mask exemptions to the disabled violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct";

Mr. Aaron Abadi
August 4, 2023
Page 4

d.      "the Airline Defendants' policies refusing transportation solely on the basis of a passenger's disability violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct"; and

e.      "the Airline Defendants' policies requiring a medical certificate from disabled passengers who ask for a mask exemption violate the Rehabilitation Act and Air Carrier Access Act and issue a permanent injunction prohibiting them from engaging in such future conduct."

All of these claims are moot because there is no FTMM or any policy being implemented by any of the Five Airline Defendants regarding the wearing of masks on airplanes.

In addition to the declaratory and injunctive relief you seek, which is clearly now moot, the Complaint also alleges damages "in the amount of up to $4.5 Billion Dollars USD," but fails to link such a huge demand to any factual allegations in the Complaint.  You cannot escape a finding of mootness with regard to the FTMM merely by alleging that you have been monetarily damaged by prior events without providing the basis for any damages proximately caused by any of the Five Airline Defendants.

Accordingly, your claims against the Five Airline Defendants are moot and it is a violation of Rule 11 for you to pursue those claims.

**2.      You lack standing to assert your claims against the Five Airline Defendants.**

Under well-established precedent relating to the requirement of judicial "standing," you lack the necessary standing to pursue your claims against the Five Airline Defendants.  The standing requirement under Article III of the United States Constitution consists of three "irreducible" elements: (1) injury-in-fact, which is an "actual or imminent," "concrete and particularized" harm to a "legally protected interest"; (2) causation in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  For a plaintiff's alleged harm to be "particularized," it "must affect [him] in a personal and individual way."  *Id.* at 560 n. 1.  The requirement that the alleged harm be "concrete" means that the court "need not credit [a complaint's] conclusory statements without reference to its factual context."  *Amidax Trading Group v. S.W.I.F.T.*, 671 F.3d 140, 146 (2d Cir. 2011) (cleaned up).  As the Second Circuit has emphasized, "a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing."  *Baur v. Veneman*, 352 F.3d 625, 637 (2d Cir. 2003).  Finally, the requirement of "actual or imminent" harm means that to establish standing, a plaintiff must allege an injury that is non-speculative – allegations of harm that are merely "conjectural or hypothetical" will not suffice.  *Lujan*, 504 U.S. at 560; *see also United States v. Probber*, 170 F.3d 345, 349 (2d Cir. 1999) (alleged "injuries [were] too speculative to satisfy the case-or-controversy requirement of Article III"); *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp.2d 133, 152 (S.D.N.Y. 2000) (dismissing claim "based upon mere speculation" for lack of standing).

Your lack of standing is obvious from the fact that your Complaint does not allege that you bought a ticket on American, Southwest or United, or that you applied for and was denied a mask exemption from either of those three air carriers.  Nor do you offer any facts to demonstrate that you were harmed as a result of any acts or omissions of those airlines.  Although you claim to have flown onboard a JetBlue flight,

Mr. Aaron Abadi
August 4, 2023
Page 5

you acknowledge that you wore a mask on that flight.  There are no potential damages that arose from that flight.  And for Delta, your Complaint acknowledges that you were able to fly on Air France rather than Delta.  So once again, you have not alleged the existence of any injury that would be compensable in this case.  *See Summers v. Earth Island Institute*, 555 U.S. 448, 496 (2009) (rejecting a standing theory premised on a speculative chain of possibilities).

Notably, the court in *Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373 (3d Cir. June 16, 2023), held that the lower court properly dismissed your claim against Target for lack of standing.  The court stated that your "allegations pertained to a one-time incident occurring in January 2021," after which the store lifted its mask mandate.  *Id.* at *2.  Although you "argued that the mask requirement may be reinstated and that [you] may be again prevented from shopping in Target without a mask, [your] contentions [were] too speculative to establish Article III standing."  *Id.*  Similarly here, your contention that the mask mandate may soon return is entirely speculative and insufficient to confer standing for you to pursue your claims against the Five Airline Defendants.

To the extent you rely on Americans with Disabilities Act cases with regard to alleged "futility" in trying to fly on the Five Airline Defendants (*e.g., Equal Rights Center v. Uber Technologies*, 525 F. Supp.3d 62 (D.D.C. 2021)), those cases are inapplicable here.  First, the Americans with Disabilities Act does not apply to claims of discrimination by passengers of air carriers.  This is at least in part because aircraft are expressly excluded from the definition of "specified public transportation" in the Americans with Disabilities Act.  42 U.S.C. § 12181(10) ("The term 'specified public transportation' means transportation by bus, rail, or other conveyance (other than aircraft) that provides the general public with general or special service"); *Puckett v. Northwest Airlines, Inc.*, 131 F. Supp.2d 379, 382 (E.D.N.Y. 2001) (Americans with Disabilities Act does not apply to aircraft).  Second, the Americans with Disabilities Act affords declaratory and injunctive relief, which can be rendered futile under the circumstances, but has no relevance where, as here, such requests for equitable relief are entirely moot due to the termination more than one year ago of the FTMM and airline masking policies.

Because you do not have standing to pursue your claims against the Five Airline Defendants, your claims are baseless and violate Rule 11.

**3.      Your claim of a  violation of 42 U.S.C. § 1985(3) is baseless.**

Count Eight of the Complaint is baseless because it fails to allege the necessary elements for a claim of conspiracy in violation of 42 U.S.C. § 1985(3).  Plaintiff asserts that "People with disabilities who, because of their disabilities cannot wear a mask, is a new class subject to protection under Section 1985(3)," and that "Airline Defendants as an industry conspired with each other, with federal agencies and the Medical Defendants involved, and with the individual employees therein to discriminate against them due to their disabilities."  Complaint ¶¶ 945, 972.  Your Complaint fails to offer any factual allegations to support these claims.

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege facts which support (1) the existence of a conspiracy, (2) to deprive the plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States.  *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971).  Additionally, there must be

Mr. Aaron Abadi
August 4, 2023
Page 6

some racial or other class-based, invidiously discriminatory animus behind the conspirators' action.  *Id.*  To make the requisite showing of class-based animus, "the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights."  *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1985); *see Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995).  That is, a plaintiff must allege that he is a member of a class of persons that the courts have designated as a suspect or quasi-suspect class "requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection."  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985)).

To begin with, you have failed to demonstrate that you fall under Section 1985(3).  "The original purpose of § 1985(3), which was passed as the Ku Klux Klan Act of 1871, was to enforce the rights of African Americans and their supporters."  *Holgate v. Baldwin, supra*, 425 F.3d at 676.  It has no application to claims for discrimination on the basis of handicap or mental or physical disability.  Stated simply, "[d]isabled individuals do not constitute a 'class' within the meaning of section 1985(3)."  *Serris v. Chastaine*, No. 2:22-cv-0434-JAM-CKD PS, 2022 WL 715115 (E.D. Cal. Mar. 10, 2022) (citing *D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1486 (7th Cir. 1985) ("The legislative history of Section 1985(3) does not suggest a concern for the handicapped"); *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176-77 (10th Cir. 1983) ("We must conclude that a class of 'handicapped persons' . . . was not included as a class in what is now § 1985(3)."); *see also Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000) (plaintiff had no actionable section 1985 claim because statute does not cover claims based on disability-based discrimination or animus); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) (the mentally disabled are not a suspect or quasi-suspect class for purposes of equal protection claims); *Chasse v. Humphreys*, No. CV–07–189–HU, 2008 WL 4846208, *4 (D. Or. Nov. 3, 2008) ("nothing in the statute or the findings and purposes suggests that the disabled as a group generally, were to be viewed as a suspect or quasi-suspect class for equal protection or section 1985(3) purposes").

In *Holgate, supra*, 425 F.3d 671, the Ninth Circuit held that claims made by home loan borrowers under 42 U.S.C. 1985(3) were "frivolous" because of the plaintiffs' failure to "allege in their complaint that they belong to a racial group or an otherwise protected class," and to "allege that the defendants intentionally discriminated against them on such grounds."  *Id.* at 676.  Similarly here, you have failed to allege that you "belong to a racial group or an otherwise protected class" or to provide any evidence that the Five Airline Defendants intentionally discriminated against you because of your membership in "a racial group or an otherwise protected class."  As in *Holgate*, the Complaint here fails "to allege evidence of a conspiracy and an act in furtherance of that conspiracy, which are required elements of a 1985(3) action."  425 F.3d at 676.

Second, you have improperly disregarded the fact that § 1985(3) does not apply to the conduct or omissions of airlines or their employees because disability discrimination claims by disabled airline passengers are exclusively governed by the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705, and the DOT implementing regulations, 14 C.F.R. Part 382.  The procedure set forth in the ACAA and the regulations implementing it provide the exclusive remedy to passengers seeking to pursue a disability discrimination claim.  "Allowing [plaintiff] to pursue his claim through the mechanism of § 1985(3) would impermissibly intrude on the statutory scheme of both" the ACAA and § 1985(3).  *D'Amato, supra*, 760 F.2d at 1487; *Sauter v. State of Nevada*, 142 F.3d 445, 1998 WL 196630, at *1 (9th Cir. 1998) ("Sauter's allegations of a conspiracy to violate his ADA and ADEA rights implicate an animus toward a congressionally protected

class.  These claims are not cognizable under § 1985, however, because that section cannot serve as a vehicle to enforce statutory rights when the statute in question has its own remedial structure") (citing *Great Am. Fed. Sav. & Loan Assn. v. Novotny*, 442 U.S. 366 (1979)).  *See also Compass Airlines, LLC v. Montana Dep't of Lab. and Indus.*, No. CV 12-105-H-CCL, 2013 WL 4401045, at *14 (D. Mont. Aug. 12, 2013) ("The air carrier is now answerable to the DOT for ACAA regulation violations, and it appears that Congress intended that this be the exclusive remedy in cases not involving breach of contract or bodily injury or death").

Third, Count Eight is also meritless because of the failure to allege facts to support the conclusory allegation of the existence of a conspiracy.  To properly allege a conspiracy claim, the complaint must contain specific factual allegations.  "A complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss." *Friends of Falun Gong v. Pacific Cultural Enterprise, Inc.*, 88 F. Supp.2d 273, 279 (E.D.N.Y. 2003); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (holding that conclusory, vague, or general allegations of a conspiracy cannot survive a motion to dismiss); *Rose v. Tyndale*, No. 23-1203, 2023 WL 4839371, *1 (3d Cir. July 28, 2023) (plaintiff's "complaint is devoid of any allegation that [the defendant] conspired with anyone to discriminate against" plaintiff, and "[s]uch a failure to assert facts from which a conspiratorial agreement can be inferred is fatal to his § 1985 claim") (internal quotation marks omitted).

In *Andreadakis v. CDC*, No. 3:22cv52 (DJN), 2022 WL 2674194, *11 (E.D. Va. July 11, 2022, the court dismissed the Section 1985(3) claim filed by an anti-mask plaintiff (a member of your online coalition against masking), stating:

> Claims under § 1985(3) rarely prevail.  *Davis v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995) ("Because of the high threshold that a Plaintiff must meet to establish a prima facie case under section 1985, courts often grant motions of dismissal.") (*citing Simmons*, 47 F.3d at 1377 ("This Court, under that standard, has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy, such that the claim can withstand a summary judgment motion.")).  Plaintiffs must allege the purported conspiracy with more than mere conclusions. *Simmons*, 47 F.3d at 1377 ("Indeed, we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.").

> Here, Plaintiff has not alleged a conspiracy with the required concrete facts.  Instead, he merely makes conclusory allegations regarding a conspiracy.  Specifically, he alleges that the "Airline Defendants conspired to deprive disabled Americans, a protected class, of our civil rights by adopting policies in Summer 2020 that banned any person medically unable to wear a face mask from using the nation's air transportation system." . . . He does not provide any details on how they conspired.  Further, he alleges that he "expect[s] to prove through discovery that the Airline Defendants conspired — with each other, with other air carriers, within their own companies, and with STAT-MD — to ban disabled flyers because of a discriminatory motive." . . . In doing so, he merely parrots the requirements of a prima facie claim under § 1985(3).  He further alleges that the Airline Defendants "are motivated by a class-based, invidiously discriminatory animus resulting in an unfounded, ridiculous fear that healthy, uninfected disabled travelers who can't wear a face mask are somehow

Mr. Aaron Abadi
August 4, 2023
Page 8

a grave danger." . . . Again, he offers no concrete facts to support these allegations. These allegations simply will not suffice to state a claim under § 1985(3). Accordingly, the Court will dismiss Counts 19 and 20.

2022 WL 2674194, at *9.

As in *Andreadakis*, your Complaint presents zero factual allegations to support the assertion that the Five Airline Defendants acted in concert, rather than individually, in their treatment of the FTMM and exemption requests. In any event, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Adamore v. Southwest Airlines Corp.*, 2011 WL 6301398, *5 (S.D. Tex. Dec. 15, 2011) (citing *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993)). A plaintiff's "subjective belief that Defendants discriminated against her on the basis of race, sex, disability, or age, without specific facts pointing to impermissible bias as the motivation, is insufficient to maintain a claim of discrimination." *Adamore, supra; see also Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir.1983) ("a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief"); *Wherry v. BBWS*, No. 7:09–CV–25–O, 2009 WL 513221, at *2 (N.D. Tex. Feb. 27, 2009) (holding that plaintiff's "mere suspicion or belief" of defendant's discriminatory intent is not enough to prevent a motion to dismiss); *Drake v. St. Paul Travelers Ins.*, No. 6:08–CV–301, 2009 WL 815999 at * 7–8 (E.D. Tex. Mar.26, 2009) (holding that plaintiff's conclusory allegations were insufficient to state a claim because he offered no reason to suspect that the defendant's actions had anything to do with the plaintiff's protected class); *Malik v. Continental Airlines, Inc.*, 305 F. App'x 165, 170 (5th Cir. 2008) (unsupported speculation that the airline's treatment of plaintiff was evidence of intentional discrimination, based only upon the fact that the plaintiff was a minority, is insufficient to support a plaintiff's discrimination claims); *Rashid v. Murray*, No. 23-CV-6063 (CS), 2023 WL 4586138, *3 (S.D.N.Y. July 18, 2023) (plaintiff failed to "allege facts suggesting that two or more persons acted together to deprive him of his rights, as required for a conspiracy claim under Section 1985(3). Plaintiff's assertions only concern actions taken by" one person, "which do not amount to a conspiracy claim. Plaintiff's conspiracy claim is vague and conclusory and must be dismissed for failure to state a claim on which relief may be granted").

Finally, although the Complaint alleges that the alleged "conspiracy involves the constitutional right to travel," Complaint ¶ 969, there is, in fact, no constitutional right to travel domestically onboard aircraft in the United States. *See Gilmore v. Gonzalez*, 435 F.3d 1125, 1136 (9th Cir. 2006) ("the Constitution does not guarantee the right to travel by any particular form of transportation:); *id.* at 1137 ("Gilmore does not possess a fundamental right to travel by airplane"); *Wall v. CDC*, 543 F. Supp.3d 1290 (M.D. Fla. 2021) (mask mandate did not infringe passenger's constitutional right to travel); *id.* at 1293 ("flying may be Plaintiff's preferred mode of transportation, but it is by no means the only reasonable mode of transportation available to him").

**4.    Your claim of a violation of 42 U.S.C. § 1986 is unwarranted.**

Because your Complaint fails to state a claim of a violation of 42 U.S.C. § 1985(3), there is also no basis for the allegation in Count Nine that the Five Airline Defendants are liable for violation of 42 U.S.C. § 1986. Since Section 1985(3) forms a predicate for violation of Section 1986, the absence of a cause of action under Section 1985(3) necessitates the dismissal of the claim under Section 1986. *See, e.g.., Bartell*

Mr. Aaron Abadi
August 4, 2023
Page 9

*v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (a prerequisite for a claim under Section 1986 for neglect to prevent a civil rights conspiracy is the action of an actionable conspiracy under Section 1985); *Sosa v. Lantz*, No. 3:09cv869 (JBA), 2010 WL 122649, *1 (D. Ct. Jan. 5, 2010) ("a viable claim under § 1985 is a prerequisite for an actionable claim under § 1986, and because Plaintiff's claim under § 1985 has been dismissed, so too must his claim under § 1986 be dismissed"). Indeed, this is of no possible surprise to you, given that the Third Circuit recently dismissed your Section 1986 claim, stating that "because a § 1986 claim cannot be maintained unless a plaintiff has established a cause of action under § 1985, the District Court correctly dismissed the § 1986 claim as well." *Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, *1 (3d Cir. June 16, 2023).

**5.      Your claims under Sections 1985(3) and 1986 against individual attorney defendants are groundless.**

You also are liable for sanctions under Rule 11 (and attorneys' fees under 42 U.S.C. 1988) because of your baseless attempt to join individual attorneys as defendants in this case. These statutes cannot be used to sue an airline attorney for his or her work in providing legal services to the airline. *See Farese v. Scherer*, 342 F.3d 1223, 1230-32 (11th Cir. 2003) ("as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy"); and *Heffernan v. Hunter*, 189 F.3d 405, 408 (3d Cir. 1999) (when an attorney's conduct falls within the scope of his representation of his client, a § 1985 conspiracy cannot exist, which reflects the fact that "[t]he right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns"). The Complaint fails to set forth any plausible reason for why these cases do not apply here. To the extent you assert that counsel for the Airline Defendants acted other than as counsel for their clients, such allegation is entirely baseless and frivolous.

**6.      You have no private right of action to sue the Five Airline Defendants under the Air Carrier Access Act.**

Counts Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen and Eighteen of the Complaint purport to allege violations of the ACAA. These claims are baseless given the well-settled precedent that private plaintiffs such as Plaintiff lack a private right of action to allege that an airline violated the ACAA. The ACAA provides that an air carrier:

> [m]ay not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities; (2) the individual has a record of such an impairment; (3) the individual is regarded as having such an impairment. (49 U.S.C. § 41705(a))

However, the ACAA does not expressly bestow the right to sue to enforce this right. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). When Congress does not create an explicit private right of action, courts may interpret the structure and language of the statute to determine if Congress nevertheless intended to imply a right of action. *Id*. Several circuit courts, including the Second Circuit, have ruled that the ACAA does not create a private right of action. *See Lopez v. JetBlue Airways*, 662 F.3d 593, 597 (2d Cir. 2011) (concluding that "the text and structure of the ACAA manifests no congressional intent to create a private right of action in a

Mr. Aaron Abadi
August 4, 2023
Page 10

federal district court"); *Segalman v. Southwest Airlines Co.*, 895 F.3d 1219, 1229 (9th Cir. 2018) ("In sum, the ACAA's legislative history is insufficient to overcome the strong suggestion that the statute's remedial scheme forecloses an implied private cause of action."); *Boswell v. Skywest Airlines, Inc.*, 61 F.3d 1263, 1270 (10th Cir. 2004) ("Congress' creation of a specific means of enforcing the statute indicates that it did not intend to allow an additional remedy — a private right of action — that it did not expressly mention at all."); *Love v. Delta Air Lines*, 310 F.3d 1347, 1354 (11th Cir. 2022) ("taken together, the text of the ACAA . . . and the surrounding statutory and regulatory structure create an elaborate and comprehensive enforcement scheme that belies any congressional intent to create a private remedy").

In *Andreadakis, supra*, 2022 WL 2674194, *10, the court stated that it found "the reasoning of these circuit courts persuasive," and that "ACAA does not provide a private right of action for [the anti-mask] Plaintiff to sue the Airline Defendants in this Court."  Indeed, no other court to have addressed the issue has allowed the anti-mask plaintiffs to pursue their unfounded claims.  *See Marcus v. CDC*, No. 2:22-cv-02383-SSS-AS, ECF No. 177 (C.D. Cal. Feb. 21, 2023) (granting airline defendants' motion to dismiss all claims); *Montgomery v. Delta Air Lines, Inc.*, No. 22-10692, 2023 WL 2400743, *5 (5th Cir. March 8, 2023) (affirming district court's grant of airline defendant's motion to dismiss all claims); *Seklecki v. CDC*, No. 22-10155-PBS, 2022 WL 6917049 (D. Mass. Oct. 12, 2022) (granting airline defendants' motion to dismiss all claims).  The lack of a private right of action under the ACAA renders your claims of violation of the ACAA frivolous and a violation of Rule 11.

**7.       You have no claim against the Five Airline Defendants for violation of the Rehabilitation Act.**

Your attempt in Count Nine to subject the Five Airline Defendants to liability under the federal Rehabilitation Act, 29 U.S.C. § 794(a), is also frivolous.  The Rehabilitation Act prohibits discrimination against disabled individuals with respect to any program or activity that receives federal financial assistance.  29 U.S.C. § 794(a).  Courts have defined the term "federal financial assistance" with respect to the Rehabilitation Act "to mean the federal government's provision of a subsidy to an entity."  *Shotz v. American Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005).  The Supreme Court has held that the Rehabilitation Act generally does not apply to commercial airlines, because airlines did not receive federal financial assistance within the meaning of the statute.  *U.S. Dep't of Trans. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 599 (1986).

Because federal "CARES Act" funds were provided to airlines during COVID-19 for the purpose of paying wages, salaries and benefits to airline employees, as opposed to the air carriers' discretionary use, receipt of the funds did not constitute federal financial assistance within the meaning of the Rehabilitation Act.  *See* S. Rep. No. 100-64, at 17–18 (1987) ("Federal financial assistance extended to a corporation or other entity 'as a whole' refers to situations where the corporation receives general assistance that is not designated for a particular purpose.").  Accordingly, Section 504 of the Rehabilitation Act is inapplicable to the Five Airline Defendants.  *See Lucius v. Fort Taco, LLC*, No. 21-22397, 2022 WL 335491, at *5-6 (S.D. Fla. Jan. 5, 2022) (Rehabilitation Act inapplicable because PPP loans defendant received were not federal financial assistance within meaning of the Rehabilitation Act); *Collins v. Giving Back Fund*, No. 18-cv-8812 (CM), 2019 WL 3564578, at *11 (S.D.N.Y. Aug. 6, 2019) ("[I]t has been repeatedly held that federal funding to a private entity not primarily engaged in education, health care, housing or parks and recreation, when that funding is earmarked for a particular project or site within the entity's operation, is not 'as a whole' federal funding for purposes of the Rehabilitation Act").

Mr. Aaron Abadi
August 4, 2023
Page 11

Notably, courts already have ruled that your claims relating to masking requirements are not subject to the Rehabilitation Act. *See Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, *2 (3d Cir. June 16, 2023) (upholding district court ruling that your challenge to the Target Corporation masking policy was not subject to the Rehabilitation Act despite your contention that the Target in-store pharmacies received some Medicare and Medicaid funding).

The Complaint erroneously asserts that the Five Airline Defendants expressly agreed to be subject to the Rehabilitation Act. Compl. ¶ 1149. However, as reflected in the quoted language, the airlines only agreed to be subject to laws that were "applicable" to them. For the reasons set forth above, the CARES Act funding did not subject the airlines to the Rehabilitation Act – therefore, that law was not "applicable" to the airlines. Moreover, you are not permitted to use the Rehabilitation Act to circumvent the absence of a private right of action under the ACAA. *See Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1337 (11th Cir. 2005) (Rehabilitation Act does not apply to airlines because of their receipt of governmental assistance following the September 11 attacks). In *Shotz*, the court stated:

> To accept plaintiffs' contention here, one would have to believe that Congress intended, in the wake of the September 11 terrorist acts, to undermine the ACAA by providing a separate and distinct method for addressing an airline carrier's discrimination on the basis of disability, one that allows for an individual to bring a private lawsuit in a district court— something not available under the ACAA. 49 U.S.C. § 41705 et seq.; *see also Love*, 310 F.3d at 1359–60 (11th Cir.2002) (holding that there is no implied private right of action to sue under the ACAA in federal district court). We decline to accept plaintiffs' arguments. *Id*.

As with the September 11 relief, Congress could not have intended for private parties to avoid all of the DOT regulations under the ACAA in 14 C.F.R. Part 382 merely because an air carrier received emergency federal governmental assistance under the CARES Act in connection with the COVID-19 pandemic.

The legislative history of the amendment to define "program or activity" under the Rehabilitation Act also demonstrates the intended limited scope of Section 504's coverage as it relates to corporations or private entities, such as the airlines. The U.S. Senate Report provides the following explanation of "federal financial assistance" within the meaning of Section 504:

> **Federal financial assistance extended to a corporation or other entity "as a whole" refers to situations where the corporation receives general assistance that is not designated for a particular purpose.** Federal financial assistance to the Chrysler Company for the purpose of preventing the company from going into bankruptcy would be an example of assistance to a corporation "as a whole." Federal aid which is limited in purpose, e.g., Job Training Partnership Act (JTPA) funds, is not considered aid to the corporation as a whole, even if it is used at several facilities and the corporation has the discretion to determine which of its facilities participate in the program.

S. Rep. No. 100-64, at 17–18 (1987) (emphasis added); *see also Collins, supra*, 2019 WL 3564578, *11 ("Though Congress chose to broaden the definition of 'program or activity' as it relates to 'all of the operations' of certain public entities, it did not do the same for private ones") (citation and internal quotation marks omitted).

Mr. Aaron Abadi
August 4, 2023
Page 12

Even if the Rehabilitation Act applied because of the airlines' receipt of CARES Act money (and it does not), that money is no longer being paid to airlines. *See, e.g., Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408 (9th Cir. 1984) (airline not liable for discrimination under the Rehabilitation Act since the record indicated that the airline was not receiving a federal subsidy for airmail carriage at the time the alleged discrimination occurred); *Angel v. Pan Am. World Airways*, 519 F. Supp. 1173 (D.D.C. 1981) (airline not potentially liable under the Rehabilitation Act where the airline received no direct federal subsidies during the time period in question). Such funding cannot be tied to Plaintiffs' planned flights in 2022 and the injunctive relief they seek on a prospective basis. *See also Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975 (10th Cir. 2021) (Rehabilitation Act did not apply to airline despite monetary benefit from federal funding for airport).

In dismissing the claim of a violation of the Rehabilitation Act filed by an anti-mask plaintiff against airlines, the *Andreadakis* court stated:

> Plaintiff alleges that the Rehabilitation Act applies to Defendant Airlines, because they "have accepted financial assistance during the COVID-19 pandemic, subjecting them to the Rehabilitation Act." (Compl. ¶ 689.) Defendants contend that they only received government funds pursuant to the Payroll Support Program established under the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"). (Airline Defs.' Mem. at 13.) They could use this money "exclusively for the continuation of Wages, Salaries, and Benefits" to airline employees. (Airline Defs.' Mem. at 13.) Because the government restricted the way in which they could use the funds, rather than giving them discretion, the funds do not constitute federal financial assistance within the meaning of the Rehabilitation Act. (Airline Defs.' Mem. at 13.)

> In *Shotz*, the Eleventh Circuit found that the Rehabilitation Act did not apply to airlines even though the government had provided them funds via the Stabilization Act in response to the September 11 attacks. 420 F.3d at 1337. The Eleventh Circuit determined that the Stabilization Act responded to the economic crises that the airline industry faced as a result of the terrorist attacks, thus compensating airlines for their losses rather than generally subsidizing them. *Id*. at 1336. The court found that Congress could not have intended to undermine the ACAA and the accompanying regulatory scheme when it responded to the economic crises. *Id*. at 1337.

> **The Court finds that this reasoning applies here. Plaintiff has not demonstrated that Congress intended the CARES Act to undermine the ACAA. Nor has he rebutted the argument that the CARES Act responded to the economic crises created by COVID-19, compensating the airlines for their losses rather than providing a general subsidy.** Thus, on the record before it, the Court does not find that the CARES Act provided an exception to the Supreme Court's general rule that the Rehabilitation Act does not apply to the airlines.

*Andreadakis*, supra, 2022 WL 2674194, at *9-10 (emphasis added).

Mr. Aaron Abadi
August 4, 2023
Page 13

In sum, because there is no basis for subjecting the Five Airline Defendants to liability under the Rehabilitation Act, your claim against the Five Airline Defendants that they violated that Act is frivolous and violates Rule 11.

**8.      You have no claim against the Five Airline Defendants for a violation of the California Unruh Civil Rights Act.**

Your state law claims against the Five Airline Defendants also are frivolous.  Count Twenty of the Complaint seeks to allege a claim of a violation of Section 51 of the California Unruh Civil Rights Act.  However, there are no allegations against the Five Airline Defendants relating to flights that you were denied taking to or from California.  In addition, any claim under the Unruh Act is preempted by federal law.

First, the Deregulation Act preempts Count Twenty because it seeks to enforce a state law – the New Jersey law against intentional infliction of emotional distress – that relates to an air carrier "service." The Deregulation Act states that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, *or service of an air carrier* . . . ."  49 U.S.C. § 41713(b)(1) (emphasis added).  Congress enacted the ADA in 1978 "determining that 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices'" in the airline-services market.  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (quoting Pub. L. No. 95-504, § 102(a)(4) & (9)).  The preemption clause "ensure[s] that the States [do] not undo federal deregulation with regulation of their own."  *Id.*  (emphasis added).  The Supreme Court has interpreted the preemptive effect of the Deregulation Act broadly.  Any state law, including state common law, "having a connection with or reference to" airline prices, routes, or services is preempted unless the connection or reference is "too tenuous, remote, or peripheral."  504 U.S. at 384.  *See Montgomery v. Delta Air Lines, Inc.*, No. 22-10692, 2023 WL 2400743, *5 (5th Cir. March 8, 2023) ("Delta's decision not to provide transportation to Appellants" who refused to wear a mask "is enough for us to hold that the Deregulation Act preempts their claims.  Our precedent makes clear that boarding and transportation are undeniably 'services' under the Deregulation Act"); *Andreadakis v. CDC, supra*, 2022 WL 2674194, at *11 (in dismissing state anti-discrimination law against airlines, the court stated that: "'Undoubtedly, boarding procedures are a service rendered by an airline. . . . [T]o the extent that Plaintiff could argue that his claim stems from the airlines' refusal to grant him an exemption to the Mask Mandate when selling him a ticket, this . . . would fall under the services provided by an airline"), on appeal to the Fourth Circuit.  Cf. *Fasano v. Federal Reserve Bank of NY*, 457 F.3d 274 (3d Cir. 2006), *cert. denied*, 549 U.S. 1115 (suit brought by former employee against Federal Reserve Bank of New York (FRB) alleging violation of NJLAD was preempted on the basis that it conflicted with the Federal Reserve Act, since the NJLAD imposed substantive and procedural burdens well beyond those imposed by federal law); *Onoh v. Northwest Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) ("whether [plaintiff] suffered an intentional infliction of emotional distress ("IIED") when a Northwest agent prohibited her from boarding a flight on the grounds that the State Department would not permit [plaintiff] to travel clearly falls within [the] definition of airline 'services'" under the Deregulation Act); *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp.3d 606, 612-13 (N.D. Tex. 2016), *aff'd*, 682 Fed. Appx. 310 (5th Cir. Mar. 20, 2017) (tort law challenge to airline ban against air transportation of animal trophies related to air carrier "services" under the Deregulation Act).

Mr. Aaron Abadi
August 4, 2023
Page 14

Second, your Unruh Act claim is also preempted by the ACAA, which exclusively governs allegations of discriminatory or unfair treatment of passengers claiming a disability. In *Nat'l Fed'n of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 736-37, 740 (9th Cir. 2016), the court held that claims for discrimination under the Unruh Act were "field preempted" by the ACAA. *See also Covino v. Spirit Airlines, Inc.*, No. 2:20-cv-01039-GMN-NJK, 2021 WL 4248079, *2-3 (D. Nev. Sept. 17, 2021) (noting that "Multiple courts have interpreted the ACAA to preempt certain state law claims" and holding that plaintiff's claim for intentional infliction of emotional distress arising out of alleged mistreatment by airline employees because of her medical condition was preempted by the ACAA because it was "inextricably intertwined with the alleged ACAA violation") (denying motion to amend complaint as "futile"); *Marcus v. CDC*, No. 2:22-cv-02383-SSS-AS, ECF No. 177 (C.D. Cal. Feb. 21, 2023) (granting airline defendants' motion to dismiss) ("The ACAA thus impliedly preempts Plaintiffs' Unruh Act claim" relating to the airline requirement that Plaintiffs wear masks); *Compass Airlines, LLC v. Mont. Dep't of Labor & Indus.*, No. CV 12-105-H-CCL, 2013 WL 4401045, *9, 14, 18 (D. Mont. Aug. 12, 2013) (ACAA preempted the plaintiff's intentional infliction of emotional distress and negligent infliction of emotional distress claims); *Johnson v. Northwest Airlines, Inc.*, No. C 08-02272 VRW, 2010 WL 5564629, *6 (N.D. Cal. May 5, 2010) (finding that the ACAA preempts state-law negligence claims); *Azocar v. Delta Air Lines, Inc.*, 562 F. Supp.3d 788, 794 (C.D. Cal. 2021) (the "Court finds [the plaintiff's] Unruh and CDPA claims and the associated remedies are impliedly field preempted by the ACAA, and therefore must be dismissed").

Third, your Unruh Act claim is also preempted by the Federal Aviation Act, 49 U.S.C. § 40101, et seq., because it relates to air carrier decisions made for the purpose of enforcing FAA requirements relating to aircraft passenger safety. Although the Federal Aviation Act does not contain an express preemption clause, most courts have held that the Act impliedly preempts state regulation of airline safety. *See, e.g., Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007) (the Federal Aviation Act "preempts the entire field of aviation safety through implied field preemption"). In *Fawemimo v. Am. Airlines, Inc.*, 751 Fed. Appx. 16, 19-20 (2d Cir. 2018), the plaintiff sought damages after allegedly having been hit on her head by a television monitor above her seat while boarding the aircraft. The court held that the state law negligence claim regarding onboard TV monitors was impliedly preempted by the Federal Aviation Act, which was intended by Congress to occupy the field of air safety: "State laws that conflict with the FAA or sufficiently interfere with federal regulation of air safety are thus preempted." The court stated:

> Because the complaint challenges the overall design of the monitors and seats, it depends on a common law rule for monitors and seats that would conflict with requirements established by the federal government. This result would be contrary to the FAA's goal of centralizing, in the federal government, the regulation of air safety . . . . Accordingly, [plaintiff's] claim is incompatible with the federal government's authority to regulate the field of air safety and is preempted. (*Id.*)

Here, given that the wearing of masks onboard aircraft during a pandemic directly relates to aircraft safety, any attempt to use state law to interfere with safety requirements is preempted by the Federal Aviation Act.

For all of the reasons set forth above, your Unruh Act claim against the Five Airline Defendants is baseless and it violated Rule 11 for you to file it.

Mr. Aaron Abadi
August 4, 2023
Page 15

9.    **You have no claim against the Five Airline Defendants for violation of the New Jersey Civil Rights Law Against Discrimination.**

There is similarly no basis for the allegation in Counts Twenty-One and Twenty-Two of the violation of the New Jersey Civil Rights Law Against Discrimination, NJSA 10:5-5. Once again, there are no allegations against the Five Airline Defendants relating to New Jersey. In addition, any claim under New Jersey law is preempted by federal law. N.J.S.A. 10:5-12(f)(1), which states that an "owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation" may not "directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of the race, creed, color, national origin, ancestry, marital status, civil union status, domestic partnership status, pregnancy or breastfeeding status, sex, gender identity or expression, affectional or sexual orientation, disability, liability for service in the Armed Forces of the United States or nationality of such person . . . ."

To state a claim for perceived handicap discrimination under the NJLAD, a plaintiff must allege facts showing that defendant perceived plaintiff as having a physical or mental condition that would qualify as disabled under NJLAD. *Thurston v. Cherry Hills Triplex*, 941 F. Supp.2d 420 (D.N.J. 2008). Your Complaint does not cite to any authority for the position that refusal to wear a mask qualifies as a disability under the NJLAD. However, even if such a showing were established, Plaintiff's claim is preempted under the Deregulation Act because it is an effort to enforce a state law that relates to an air carrier "service." See *Fitzpatrick v. Simmons Airlines, Inc.*, 218 Mich. App. 689, 555 N.W.2d 479 (1996) (Deregulation Act preempted claim under the Michigan Civil Rights Act for discrimination on the basis of weight).

10.    **You have no claim against the Five Airline Defendants under the New York Civil Rights Law.**

There is also no basis for the allegation in Counts Twenty-Three, Twenty-Four and Twenty-Five of violations of the New York Civil Rights Law § 8-107 as any claim under that New York law is preempted by federal law, as is the case with your Unruh Act claim (as set forth above).

11.    **You have no claim against the Five Airline Defendants under the Texas Civil Rights Law.**

There is similarly no basis for the allegation in Count Twenty-Six of a violation of the Texas Civil Rights Laws. There are no allegations against the Five Airline Defendants relating to Texas. In addition, any claim under the Texas law is preempted by federal law (similar to the Unruh Act claim).

12.    **You have no claim for intentional or unintentional tort against the Five Airline Defendants under the state laws of Texas, New York, New Jersey, California or other states.**

Federal law also preempts the allegations in Count Twenty-Seven of the Complaint regarding alleged violation of various state laws for intentional or unintentional tort. First, the Deregulation Act preempts these claims. *See Smith v. Comair, Inc.*, 134 F.3d 54 (4th Cir. 1998) (Deregulation Act preempted passenger's intentional tort allegations to the extent they were premised on airline's refusal to permit passenger to board his flight); *Syed v. Frontier Airlines, Inc.*, 522 F. Supp.3d 503 (E.D. Mo. 2021) (airline passenger's state-law claims for negligence and intentional tort were preempted by the ADA). Second, your Complaint fails to allege the requisite elements of the tort claim, including an allegation that the Five Airline Defendants engaged in "an intentional infliction of economic damage, without excuse or

Mr. Aaron Abadi
August 4, 2023
Page 16

justification." *Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 406, 343 N.E.2d 278, 284 (1975). Third, under New York law, the statute of limitations for a claim for intentional tort is one year. *D'Amico v. Arnold Chevrolet, LLC*, 31 Misc. 3d 1201(A), *9 (N.Y. Sup. Ct. 2011) ("The statute of limitations for a *prima facie* tort is one year . . ., including an intentional tort not specifically listed in CPLR § 215(3)"); *Gallagher v. Director's Guild of Am.*, 144 A.D.2d 261, 262-63 (1st Dept. 1988) ("It appears that every appellate court which has considered the New York statutes at issue here has concluded that a claim for damages for an intentional tort is subject to the one year limitations period"); *Yong Wen Mo v. Gee Ming Chan*, 17 A.D. 3d 356, 358 (2nd Dep't, 2005). None of the allegations against the Five Airline Defendants references acts or omissions that occurred within one year before you filed your Complaint.

**13.     You have no claim for negligence against the Five Airline Defendants under various state laws.**

Federal law preempts the claims in Count Twenty-Eight of the Complaint for negligence under various state laws. The Complaint alleges that "Defendants had a duty to treat Plaintiff with decency, to help him circumvent a policy that would cause him the inability to travel and/or the suffering due to his disability." ¶ 1237. As the Second Circuit recognized in *Air Transport Ass'n of America, Inc. v. Cuomo*, 520 F.3d 218, 223 (2008), "[a] majority of the circuits to have construed 'service' have held that the term . . . encompasses matters such as boarding procedures . . . ." *See also Weiss v. El Al Israel Airlines, Ltd.*, 471 F. Supp.2d 356 (S.D.N.Y. 2006) (allegedly abusive treatment suffered by passengers was connected to airline service). As a result, the negligence claims are preempted by the Deregulation Act. *See, e.g., Adamore v. Southwest, supra*, 2011 WL 6301398, *5 ("Accepting as true Plaintiff's allegations that Christina Doe was 'very hostile,' 'uncompassionate,' and that she 'threatened' Plaintiff with a higher fare and thereafter asked her to leave the premises, the agent's rude, demanding, and crass conduct in this context is not so unrelated to airline services that it falls outside the preemptive scope of the Airline Deregulation Act"); *Ruta v. Delta Airlines, Inc.*, 322 F. Supp.2d 391, 401 (S.D.N.Y. 2004) (holding that the Deregulation Act preempted claims based on flight attendant's rude comments to plaintiff at the boarding gate because unprofessional conduct "cannot be categorized as outrageous or unreasonable"); *Cannava v. USAir, Inc.*, Civ. A. No. 91-30003-F, 1993 WL 565341, *4-6 (D. Mass. Jan. 7, 1993) (holding that the Deregulation Act preempted claims based on ticketing agent's conduct in grabbing and tearing up plaintiff's bereavement fare ticket, treating plaintiff rudely, and threatening to call airport security); *Joseph v. JetBlue, supra*, 2012 WL 1204070, at *7 ("Allowing a common law tort claim challenging an airline's ability to make decisions such as whether to divert and land a plane safely in the face of a winter storm subjects airlines to a patchwork of obligations that would eviscerate federal regulations aimed at air safety control. This aspect of the negligence claim is clearly preempted by the Deregulation Act").

**14.     You have no claim for infliction of emotional distress under state laws.**

There is also no basis for the claim for infliction of emotional distress in violation of various state laws, as asserted in Count Twenty-Nine of the Complaint. To prevail on a claim for intentional infliction of emotional distress ("IIED") under New York law, a plaintiff must allege and prove: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). "New York courts have imposed a very high threshold for intentional infliction of emotional distress claims, requiring that the conduct must be so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Jinn*

Mr. Aaron Abadi
August 4, 2023
Page 17

*v. Sig Sauer, Inc.*, No. 20-cv-1122 (PGG) (RWL), 2023 WL 2919558, *20 (S.D.N.Y. April 12, 2023) (citations omitted).

Your allegation of being required to wear a mask to board an aircraft does not rise to the level of outrageous and extreme conduct that is required to support a claim. There is nothing about your allegations involving the Five Airline Defendants that would support a finding of conduct that goes "beyond all possible bounds of decency" or that could be regarded as "atrocious, and utterly intolerable in a civilized community." You were asked to wear a mask during a global pandemic, or qualify for an applicable exemption. To characterize this conduct as "outrageous and extreme" is frivolous. *See, e.g., Order, Montgomery v. Delta Air Lines, Inc.*, Case No. 3:21-cv-02715-C, ECF No. 34, at 2 ("as aptly argued by Defendant [Delta], Plaintiff's pleadings" regarding the Delta mask requirement "fail to state a claim for either intentional infliction or negligent infliction of emotional distress"), *aff'd* 2023 WL 2400743 (5th Cir. 2023); *Kennedy v. American Airlines, Inc.*, 195 F. Supp.3d 646 (D.N.J. 2016) (flight attendant failed to adequately allege details on the severity of his alleged distress, so as to make a claim for intentional infliction of emotional distress under New Jersey law), *aff'd*, 760 Fed. Appx. 136 (2019)). You also have failed to allege the existence of severe emotional distress caused by the conduct of any of the Five Airline Defendants. Your IIED claim never should have been alleged against the Five Airline Defendants.

In addition, your claim for IIED is barred by the one-year statute of limitations. *D'Amico v. Arnold Chevrolet, LLC*, 31 Misc. 3d 1201(A), *9 (N.Y. Sup. Ct. 2011) ("The statute of limitations for the tort of intentional infliction of emotional distress is one year").

**15.    Your allegation of breach of contract is baseless.**

Count Thirty of the Complaint purports to allege a claim for breach of contract, asserting that the "airlines that Plaintiff purchased tickets on, breached their contract by forcing him to wear a mask, attempting to force him to wear a mask, by not allowing him to fly if he does not wear a mask, and/or by not accommodating his special needs." ¶ 1251. To begin with, you do not allege to have purchased a ticket from American, United or Southwest, so clearly there is no breach of contract claim there.

The Complaint alleges that you bought a ticket from JetBlue and actually flew on a JetBlue aircraft with a mask to the Dominican Republic. Compl. ¶ 429-42. In addition, your allegation against Delta relates to an international flight from France to the United States. Compl. ¶ 338-51. These claims are preempted by the Montreal Convention, which applies given that the air transportation was international. The "Convention for the Unification of Certain Rules for International Carriage by Air," known as the "Montreal Convention" ("Convention") entered into force in the United States on November 4, 2003, and updated and replaced "the uniform system of liability for international air carriers previously established by the Warsaw Convention." [predecessor to the Montreal Convention] *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp.2d 447, 452 (E.D.N.Y.2007) (citing *Ehrlich v. Am. Airlines Inc.*, 360 F.3d 366, 371 n. 4 (2d Cir. 2004)). The Dominican Republic, France and the United States have all signed the Montreal Convention. Like its predecessor, the "cardinal purpose" of the Montreal Convention is to establish uniform "rules governing the claims arising from international air transportation." *See El Al Isr. Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169 (1999); *see also Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 256 (1984) (noting that the overriding purpose of the Warsaw Convention was to establish a "stable, predictable, and internationally uniform" system of carrier liability).

Mr. Aaron Abadi
August 4, 2023
Page 18

The Montreal Convention "governs the uniform system of liability for international air carriers." *Badar v. Swissport USA, Inc.*, 2020 U.S. Dist. LEXIS 185392, *5 (E.D.N.Y. 2020). The Convention "preempts state and federal claims that fall within its scope." *Badar*, 2020 U.S. Dist. LEXIS 185392 at *7; *see Best v. BWIA West Indies Airways Ltd.*, 581 F. Supp.2d 359, 362 (E.D.N.Y. 2008) ("By its own terms, the treaty, where applicable, preempts the remedies of a signatory's domestic law, whether or not the application of the Convention will result in recovery in a particular case." (citing *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999)). *See also* Convention Article 29 (claims under the Convention "can only be brought subject to the conditions and such limits of liability as are set out in this Convention"). Article 29 of the Montreal Convention facilitates this objective by requiring that "any action for damages, however founded . . . can only be brought subject to the conditions and such limits of liability as are set out in this Convention." Montreal Convention, Art. 29. Courts applying the Montreal Convention adhere to this dictate and routinely find that the Convention, where applicable, preempts state law remedies for claims within its "substantive scope." *See In re Nigeria Charter Flights Contract Litig.,* 520 F. Supp.2d at 453 ("[T]he Montreal Convention preempts state law claims falling within its scope"). The Convention provides the exclusive remedy for plaintiffs to pursue claims for damages as a result of the claims arising under the Convention. *Badar*, *supra*, at *7; *Tseng*, *supra*, at 161.

Article 19 of the Montreal Convention states that an "[air] carrier is liable for damage occasioned by delay in the carriage by air of passengers . . .." "'[I]nternational air carriage' has repeatedly been deemed to include activities beyond actual travel," and establish applicability of Article 19. *Lee v. AMR Corp.*, 2015 U.S. Dist. LEXIS 78930, at *8 (E.D. Pa. June 18, 2015). By way of example, in *Ikekpeazu v. Air France*, 2004 U.S. Dist. LEXIS 24580 (D. Conn. Dec. 6, 2004), the passport of plaintiff, a surgeon, was confiscated, he was refused boarding on the subject flight, and he had to cancel his upcoming week of surgeries. *Id.* at *2. The Court, agreeing with defendants' motion, found that the facts of the matter "provide a basis for a claim under [Article 19]." 2004 U.S. Dist. LEXIS 24580, at *4; see also *Pogadaev v. Aeroflot-Russian Airlines*, 2017 U.S. Dist. LEXIS 120848 (N.D. Cal. July 31, 2017); *Dutta v. Emirates*, 2022 U.S. Dist. LEXIS 2593 (N.D. Tex. Jan. 6, 2022).

In *Waters v. Port Authority of New York & New Jersey*, 158 F. Supp.2d 415 (D.N.J. 2001), the court held that the Warsaw Convention preempted a handicapped passenger's claim for disability discrimination in connection with his flight to Rome, Italy. The court stated that "plaintiff seeks to recover damages for alleged injuries sustained as a result of what he claims were acts of discrimination by the defendants. Although his cause of action is grounded in discrimination statutes, the thrust of his claim is one of personal injury. Undoubtedly, this falls within the scope of the Convention and the goal of providing a uniform scheme of liability." *Id.* at 420.

Finally, your claims against JetBlue and Delta also must be dismissed because the Montreal Convention does not allow recovery for emotional injuries that are unaccompanied by physical injuries. *See Bassam v. American Airlines, Inc.*, 287 Fed. Appx. 309, 316-17 (5th Cir. 2008) (no recovery of emotional distress damages under Montreal Convention); *Waters, supra*, 158 F. Supp.2d at 437 (the "Warsaw Convention [predecessor to Montreal] does not allow recovery for emotional injuries that are unaccompanied by physical injuries"); *Terrafranca v. Virgin Atlantic Airways*, 151 F.3d 108, 109-110 (3d Cir. 1988) (post-traumatic stress disorder, anxiety, fear of flying and weight loss were not recoverable injuries under the Warsaw Convention); *Fields v. BWIA Int'l Airways Ltd.*, No. 99-CV-2493, 2000 WL 1091129, *6

Mr. Aaron Abadi
August 4, 2023
Page 19

(E.D.N.Y. July 7, 2000) (no recovery for emotional injuries regardless of allegation of willful misconduct); *Brandt v. American Airlines, Inc.*, No. C 98-2089, 2000 WL 288393, *8 (N.D. Cal. March 13, 2000) (under the Warsaw Convention, airlines are not liable for emotional or psychological injuries not accompanied by physical injury).

In any event, the claim alleging that JetBlue and Delta breached the contract of carriage when forcing you to wear a mask when the parties did not agree to it in the contract is preempted by the Deregulation Act because it relates to an air carrier price, route or service. The Supreme Court has recognized a narrow exception to the Deregulation Act's preemption for some breach of contract claims. In *American Airlines, Inc. v. Wolens*, the Court carved out an exception for certain contract claims against airlines for actions that seek to enforce the parties' "own, self-imposed undertakings," such as agreements with respect to a frequent flyer program. 513 U.S. 219, 228 (1995). However, the Court limited this exception to breach of contract actions confined to the terms of the contract, "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. "Thus, when a contract claim cannot be adjudicated without resort to outside sources of law, the claim is still preempted by the [Deregulation Act]." Smith, 134 F.3d at 257.

In *Andreadakis*, the court stated:

Here, Plaintiff's breach of contract claim arises out of the Airline Defendants requiring him to wear a mask on the flight or obtain a medical exemption. Put differently, Plaintiff sues the Airlines for enforcing the Mask Mandate — federal law. Thus, Plaintiff's breach of contract claim "directly implicates the airlines' discretion and/or duty under federal law," *id*, and, therefore, the Deregulation Act preempts it. The Court will dismiss Count Thirty-Five.

2022 WL 2674194, at *12. Similarly here, your breach of contract claim arises out of the air carrier requiring you to wear a mask on the flight or obtain a medical exemption, which is a claim against the airline "for enforcing the Mask Mandate – federal law." Accordingly, as in *Andreadakis*, your breach of contract claim "directly implicates the airlines' discretion and/or duty under federal law," and is preempted by the Deregulation Act.

The breach of contract claim also fails to allege the existence of an actual breach. In *Hughes v. Sw. Airlines Co.*, No. 18 C 5315, 2019 WL 1375927 (N.D. Ill. Mar. 26, 2019), the plaintiff alleged that the airline defendant breached its contract by failing to have sufficient deicing fluid at the airport. However, the plaintiff failed to point to language in the airline contract of carriage that required the air carrier to have sufficient deicing fluid available for a flight. In dismissing the breach of contract claim, the court stated that plaintiff's "failure to sufficiently identify the contractual obligation that Southwest breached not only fails to state a claim for breach of contract but also precludes the Court from finding that [plaintiff] identified a self-imposed undertaking that would bring this breach of contract claim within the *Wolens* exception to ADA preemption." *Id.* at *4; *see also McGarry v. Delta Air Lines, Inc.*, No. CV 18-9827-MWF (EX), 2019 WL 2558199, at *5 (C.D. Cal. June 18, 2019), aff'd, 812 F. App'x 625 (9th Cir. 2020) ("But the Contract of Carriage itself contains no self-imposed promise from Delta as to how it will handle customer data. Neither does it promise specific procedures of third-parties . . . that have access to such data."). Here too, you have not identified any language in the JetBlue or Delta contract of carriage that was breached.

Mr. Aaron Abadi
August 4, 2023
Page 20

In the anti-mask litigation styled *Leia Montgomery and Kristen Meghan Kelly v. Delta Air Lines, Inc.*, Civil Action No. 3:21-CV-27 1 5-C (N.D. Tex.), ECF No. 34 (*aff'd* 2023 WL 2400743), the two plaintiffs in that case alleged that the airline improperly required them to wear a mask onboard their flights. The Second Amended Complaint alleged claims for: breach of contract, invasion of privacy, intentional and negligent infliction of emotional distress, declaratory judgment and injunctive relief. No. 3:21-CV-27, ECF No. 27. In moving to dismiss the plaintiffs' claims pursuant to Rule 12(b)(6), Fed. R. Civ. P., the defendant alleged that the plaintiffs' claims were legally deficient because: (1) the state law causes of action in Claims 1 through 4 of the Second Amended Complaint (for breach of contract, invasion of privacy and intentional and negligent infliction of emotional distress) were preempted by federal law and separately fail to state a claim on which relief may be granted; and (2) the claim for declaratory relief in Claim 5 of the Second Amended Complaint was barred because there is no private right of action to sue for relief – including declaratory relief – under the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705. No. 3:21-CV-27 ECF No. 28. In dismissing the Second Amended Complaint and the action with prejudice, the Court stated:

> The court finds that the Airline Deregulation Act (ADA) preempts Plaintiffs' claims, including their invasion of privacy and other tort claims. Plaintiffs have failed to identify any self imposed undertaking by Defendant in its contract for carriage that would allow *Wolens* exception to the preemption to apply in this instance. Plaintiffs' claims stem from the federal mask mandate and are directly related to air carrier service of transporting passengers. Likewise, the claims for negligent and intentional infliction of emotional distress are preempted under the Federal Aviation Act (FAA), ADA, and Air Carrier Access Act (ACAA). Furthermore, as aptly argued by Defendant, Plaintiffs' pleadings fail to state a claim for either intentional infliction or negligent infliction of emotion distress. Finally, there is no private right of action under the Air Carrier Access Act to support Plaintiffs' requests for declaratory and injunctive relief.

No. 3:21-CV-27 ECF No. 34, at 1-2.

In addition, a breach of contract claim based on the refusal to permit you to board a flight improperly interferes with the federal regulation of air service. In *Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998), the plaintiff alleged that the defendant airline improperly refused to permit the plaintiff to board his flight because of a lack of identification, and reacted to the plaintiff's angry response by asking local police officers to remove the plaintiff from the airport terminal. *Id.* at 256–57. In rejecting a breach of contract claim, the Fourth Circuit stated that, because the passenger's claim was based on the airline's refusal to permit him to board, "it directly implicates the airline's discretion and/or duty under federal law." *Id.* at 258–59; *see also O'Carroll v. Am. Airlines, Inc.*, 863 F.2d 11, 12–13 (5th Cir. 1989) (ADA preempted a claim arising out of airline refusal to board passenger). Similarly here, your argument that JetBlue and Delta breached their contracts of carriage by requiring you to wear a mask is preempted because of the non-compatibility with the federal regulation of air service.

**16.    You have no claim for promissory estoppel.**

Count Thirty-One of the Complaint purports to allege a state law claim for promissory estoppel. Any such claim is preempted by federal law. *See, e.g., Bergman v. Alaska Airlines, Inc.*, 16 Wash. App. 2d 553, 560-61 (2021) (claim for promissory estoppel against Alaska Airlines preempted by the Deregulation

Mr. Aaron Abadi
August 4, 2023
Page 21

Act).  In addition to the fact that your legal theory is preempted by federal law, you have failed to allege the necessary elements for a claim of promissory estoppel under New York law.  Such a claim requires the plaintiff to prove three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance.  *Christian v. Transperfect Global, Inc.*, 17-cv-5544 (PKC), 18 WL 4571674, *8 (S.D.N.Y. Sept. 24, 2018).  However, your Complaint fails to identify a promise (much less one that is clear and unambiguous) from any of the Five Airline Defendants that you would be permitted to fly during the pandemic without a mask.

**17.    You have no claim for injurious falsehoods.**

Count Thirty-Three of the Complaint purports to allege a state law claim for "injurious falsehoods" regarding the efficacy of wearing a mask on an airplane.  This cause of action fails to allege a claim for relief.  Under New York law, to prevail on a claim for injurious falsehood, a plaintiff must prove the following: (1) the falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages.  *Exportaciones del Futoro S.A. de C.V. v. Iconix Brand Group, Inc.*, 636 F. Supp.2d 223, 232 (S.D.N.Y. 2009).  The Complaint fails to allege these requisite elements.  In addition, such a state law claim is preempted by the Deregulation Act because it relates to an air carrier "service."

**18.    You have no claim for invasion of privacy.**

Count Thirty-Four of the Complaint seeks to allege a state law claim for invasion of privacy.   The state law claim for invasion of privacy is preempted by the Deregulation Act because it relates to the airlines' services.  *See, e.g., Pica v. Delta Air Lines, Inc.*, 812 F. App'x 591, 593 (9th Cir. 2020) (affirming dismissal of state law claims for alleged failure to protect personal information and timely notify of a data breach because they were preempted under the Deregulation Act); *In re Am. Airlines, Inc. Privacy Litig.*, 370 F. Supp.2d 552, 564 (N.D. Tex. 2005) (state law claims for invasion of privacy in connection with ticket reservation was preempted under the Deregulation Act); *Elmajjar v. Nw. Airlines, Inc.*, Nos. H-04-681, 2005 U.S. Dist. LEXIS 26792, at *17-18 (S.D. Tex. Aug. 15, 2005) (holding that passenger's invasion of privacy claims for purportedly improper questioning by an agent during check-in process were preempted by the Deregulation Act).

In addition, the Complaint fails to set forth the basis for a claim for invasion of privacy.

**19.    You have no claim for fraudulent misrepresentation.**

Count Thirty-Six of the Complaint purports to allege a state law claim for fraudulent misrepresentation, asserting that the "Defendants have falsely represented on their websites, in e-mails to passengers, signage at airports, etc. that 'federal law' requires airline passengers [to] wear face masks," when "Congress has never enacted such a law."  Not only does this allegation fail to allege a false statement (federal law included the FTMM), but it also is a state law claim preempted by the Deregulation Act.  *See Joseph v. JetBlue Airways Corp.*, No. 5:11-cv-1387 (TJM/ATB), 2012 WL 1204070, *5 (N.D.N.Y. Apr. 11, 2012) ("Enforcing the state law deceptive practices statute in this case would have the 'force and effect of law related to a price, route, or service of an air carrier,' as prohibited by the ADA's preemption clause"); *Martin v. DHL Express (USA), Inc.*, 580 F. Supp.3d 66, 73 (D.N.J. 2022) (consumer's state law claim for fraud against shipper of goods was preempted by the Deregulation Act); *Wolens, supra*, 513 U.S. at 228 (finding that the Deregulation Act preempted the use of state consumer protection law to challenge airline devaluation of

Mr. Aaron Abadi
August 4, 2023
Page 22

frequent flyer earned miles); *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, No. 08-4333, 2009 WL 1652156, *6 (D.N.J. June 10, 2009) (2009) (finding that the Deregulation Act leaves no "room for a consumer fraud claim against an airline" and dismissing the NJCFA claim with prejudice); *Vail v. Pan Am Corp.*, 260 N.J. Super. 292, 294, 296, 616 A.2d 523 (N.J. App. 1992) (same); *Webster v. U.S. Airways, Inc.*, 11 F. App'x 56, 57 (4th Cir. 2001) (fraud claim relating to prices and services preempted by the ADA because "it seeks to enforce a legal duty on the defendant that is independent of the parties' contract"); *Rojas v. Delta Airlines, Inc.*, 425 F. Supp.3d 524, 545 (D. Md. 2019) ("Plaintiff's claims of fraud and fraudulent concealment . . . are based on state-imposed obligations, so they are preempted by the ADA and must be dismissed with prejudice").

Count Thirty-Six is also preempted by the ACAA. *Wright ex rel. D.W. v. Am. Airlines, Inc.*, 248 F.R.D. 572, 573 (E.D. Mo. 2008) (state law misrepresentation claims dismissed because of ACAA preemption).

Separately, Count Thirty-Six fails to allege fraud with particularity, as required by Rule 9(b), Fed. R. Civ. P. Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (D.N.J. 2007). Rule 9(b) heightens a plaintiff's pleading standard for circumstances constituting the fraud, not for damages resulting therefrom. *See Casperson as Tr. For Samuel M.W. Casperson Dynasty Trust v. Oring*, 441 F. Supp.3d 23, 35 (D.N.J. 2020).

**20.      You have no claim for infringement of a constitutional right to travel.**

Count Thirty-Seven of the Complaint asserts that the Airline Defendants infringed on your purported constitutional right to travel.  ¶ 1329-1348.  However, you do not actually possess a constitutional right to travel onboard the Five Airline Defendants' aircraft. *See Gilmore v. Gonzalez*, 435 F.3d 1125, 1136 (9th Cir. 2006) ("the Constitution does not guarantee the right to travel by any particular form of transportation"); *id.* at 1137 ("Gilmore does not possess a fundamental right to travel by airplane"); *Wall v. CDC*, 543 F. Supp.3d 1290 (M.D. Fla. 2021) (mask mandate did not infringe on passenger's constitutional right to travel); *id.* at 1293 ("flying may be Plaintiff's preferred mode of transportation, but it is by no means the only reasonable mode of transportation available to him").

**21.      Your request for nominal damages is baseless.**

Realizing the lack of a basis for actual financial damages, the Complaint requests an award of "nominal damages." Page 66. There is no basis for any nominal damages, which are a "trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1291 (11th Cir. 2014) (quoting Black's Law Dictionary 447 (9th ed. 2009)). Here, the Complaint fails to allege the existence of any "legal injury" suffered by Plaintiff. Moreover, recovery of nominal damages is preempted by the Deregulation Act, as it would be enforcing a state law in relation to air carrier "services."

**22.      Your request for punitive damages is preempted by the Deregulation Act.**

The Complaint seeks an award of "punitive damages" in the amount of "at least ten million dollars per Defendant." Page 68. However, not only is there zero factual basis for any damages, much less punitive damages, your punitive damages request is also preempted by the Deregulation Act. Courts have

Mr. Aaron Abadi
August 4, 2023
Page 23

consistently held that punitive or exemplary damages fall outside the *Wolens* exception and are, therefore, preempted by the ADA.  *See, e.g., Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 n.8 (7th Cir. 1996) (holding that a punitive damage claim was preempted because it related to air carrier rates, routes and services and expanded the rights of the plaintiff beyond the terms of the contract); *Starker v. Spirit Airlines*, No. 17-CV-6812 (HBP), 2019 WL 4194572, at *8 (S.D.N.Y. Sept. 3, 2019); *Norman v. Trans World Airlines, Inc.*, No. 98-CV-7419 (BSJ), 2000 WL 1480367, at *6 (S.D.N.Y. Oct. 6, 2000); *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, No. 08–4333, 2009 WL 1652156, at *6 (D.N.J. June 10, 2009); *Williams v. Midwest Airlines, Inc.*, 321 F. Supp.2d 993, 996 n. 4 (E.D.Wis.2004); *Breitling U.S.A., Inc. v. Federal Exp. Corp.*, 45 F. Supp.2d 179, 185 (D.Conn.1999); *Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc.*, 972 F. Supp. 665, 673 (N.D.Ga.1997).

In conclusion, the claims against the Five Airline Defendants have no merit and are frivolous. Please dismiss all the claims within 21 days, or the Five Airline Defendants will pursue all available relief under Rule 11.  This letter is without prejudice to the sanctions that also may be pursued under 42 U.S.C. § 1988.

Attached to this Safe Harbor Letter is a Notice of Motion for Sanctions.

Sincerely

STINSON LLP

*Roy Goldberg*

Roy Goldberg
Paul Lackey
Kieran M. Corcoran

Counsel for American Airlines, Inc., Delta Air Lines, Inc., JetBlue Airways Corp., Southwest Airlines Co. and United Air Lines, Inc.

Enclosure

CORE/3503476.0004/183313334.2