UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON ABADI,

                                    Plaintiff,                      Civil Action No.:
                                                                    1:23-cv-04033 LJL

                    -against-

AMERICAN AIRLINES, INC., et al.,

                                    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>AIR TAHITI NUI'S MOTION TO DISMISS</u>

Submitted by:

Eckert Seamans Cherin & Mellott, LLC
By: Riyaz G. Bhimani, Esq.
10 Bank Street, Suite 700
White Plains, New York 10606
rbhimani@eckertseamans.com
(914) 286-2806

*Attorneys for Defendant*
*Air Tahiti Nui*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

RELEVANT PROCEDURAL & FACTUAL BACKGROUND ................................................. 1

   I.  PROCEDURAL POSTURE ........................................................................................... 1

   II.  FACTUAL BACKGROUND ....................................................................................... 2

   III.  THE COMPLAINT ................................................................................................... 3

STANDARDS FOR DISMISSAL ........................................................................................... 4

ARGUMENT ........................................................................................................................ 5

   I.  PLAINTIFF'S COMPLAINT FAILS TO ALLEGE PERSONAL
      JURISDICTION ........................................................................................................ 5

   II.  ABSENT INJURY, PLAINTIFF LACKS STANDING ................................................ 7

   III.  THE AIR CARRIER ACCESS ACT DOES NOT PROVIDE A PRIVATE
       CAUSE OF ACTION ................................................................................................. 9

   IV.  PLAINTIFF'S CLAIMS FOR DECLARATORY AND INJUNCTIVE
       RELIEF ARE MOOT ............................................................................................... 11

   V.  PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED .................................... 12

   VI.  PLAINTIFF'S CLAIMS ARE TIME BARRED ....................................................... 14

   VII.  PLAINTIFF HAS NOT STATED A CLAIM FOR WHICH RELIEF CAN
        BE GRANTED ....................................................................................................... 15

      A.  THERE IS NO CONSTITUTIONALLY RECOGNIZED RIGHT TO
         INTERNATIONAL TRAVEL ............................................................................. 16

      B.  PLAINTIFF IS NOT ENTITLED TO RELIEF UNDER 42 U.S.C.
         §§ 1985 OR 1986 ............................................................................................ 17

      C.  TN DOES NOT RECEIVE FEDERAL FUNDING TO ENTITLE
         PLAINTIFF TO RELIEF UNDER THE REHABILITATION ACT ....... 18

CONCLUSION .................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Case Law**

*Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) ........................................................... 12, 13, 14

*Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218 (2d Cir. 2008) ...................................... 13

*Alexander v. Sandoval*, 532 U.S. 275 (2001).............................................................................. 10

*Alhers v. Rabinowitz*, 684 F.3d 53 (2d Cir. 2012) ....................................................................... 16

*Amidax Trading Group v. S.W.I.F.T.*, 671 F.3d 140 (2d Cir. 2011)............................................... 7

*Andreadakis v. Ctr. for Disease Control & Prevention*, No. 3:22CV52 (DJN), 2022 WL 2674194

   (E.D. Va. July 11, 2022) ........................................................................................................ 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 5

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990) ................................... 4

*Baur v. Veneman*, 352 F.3d 625 (2d Cir. 2003). .......................................................................... 8

*Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y. 2d 397 (1975)..............15 (n. 7)

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) ........................................................ 5

*Boswell v. Skywest Airlines, Inc.*, 61 F.3d 1263 (10th Cir. 2004)................................................. 9

*Bugarin v. All Nippon Airways Co., Ltd.*, 513 F. Supp. 3d 1172 (N.D. Cal. 2021)..................... 13

*Citadel Mgmt., Inc., v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133 (S.D.N.Y. 2000)....................... 8

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .............................................................................. 5

*Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161 (2d Cir. 2015) ................................................ 5, 6

*Exxon Mobil Corporation v. Healey*, 28 4th 383 (2d Cir. 2022)................................................. 11

*Fawemimo v. Am. Airlines, Inc.*, 751 F. App'x 16 (2d Cir. 2018)............................................... 13

*Frisone v. Pepsico, Inc.*, 369 F.Supp. 2d 464 (S.D.N.Y. 2005).................................................... 4

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).................................... 5

*Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501 (S.D.N.Y. 2017) ................................ 15 (n. 7)

*Grice v. McMurdy*, 489 F.Supp. 3d 400 (W.D.N.Y. 2020) .................................................... 15 (n.7)

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) ........................................................................ 17

*Haig v. Agee*, 453 U.S. 280 (1981) ......................................................................................... 15

*Hekmat v. U.S. Transp. Sec. Admin.*, 247 F.Supp. 3d 427, 434 (S.D.N.Y. 2017) ...................... 13

*International Shoe Co. v. State of Wash.*, 362 U.S. 310 (1945) ................................................ 5

*Lopez v. JetBlue Airways*, 662 F.3d 593 (2d Cir. 2011) ...................................................... 9, 10

*Love v. Delta Air Lines*, 310 F.3d 1347 (11th Cir. 2002) .......................................................... 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................................. 8

*Maddox v. Bank of New York Mellon Trust Company, N.A.*, 19 F.4th 58 (2d Cir. 2021) .............. 7

*Makarova v. U.S.*, 201 F.3d 110 (2d Cir. 2000) ...................................................................... 4

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ...................... 4

*Morales v. Trans World Airlines Inc.*, 504 U.S. 374 (1992) ...................................................... 12

*Muskrat v. United States*, 219 U.S. 346 (1911) ...................................................................... 7

*National Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459 (1999) ............................................ 18

*Northwest, Inc., et al. v. Ginsberg*, 572 U.S. 273 (2014) ........................................................ 13

*Prezzi v. Schelter*, 469 F.2d 691 (2d Cir. 1972) .................................................................. 1 (n. 1)

*Riddell Sports Inc. v. Brooks*, 872 F.Supp. 73 (S.D.N.Y. 1995) ............................................... 15

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008) ...................................................... 5

*Segalman v. Southwest Airlines Co.*, 895 F.3d 1219 (9th Cir. 2018) .......................................... 9

*Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009) .................................................... 7

*Sommer v. Dixon*, 709 F.2d 173 (2d Cir. 1983) .................................................................... 18

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........................................................................ 7

*Steel Company v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ...................................... 7

*Stordeur v. Computer Associates Inter., Inc.*, 995 F.Supp. 94 (E.D.N.Y. 1998) ......................... 15

*Summers v. Earth Island Institute*, 555 U.S. 448 (2009) ............................................ 8

*United States v. Probber*, 170 F.3d 345 (2d Cir. 1999) .............................................. 8

*U.S. Dept. of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597 (1986) ........................... 18

*Washington v. James*, 782 F.2d 1134 (2d Cir. 1986) ................................................ 16

*Woods v. Empire Health Choice, Inc.*, 574 F.3d 92 (2d Cir. 2009) ...................................... 7

*Zito v. United Airlines, Inc.*, 523 F.Supp. 3d 377 (W.D.N.Y. 2021) ................................. 5, 6

## **Statutes**

42 U.S.C. § 1983 ......................................................................... 3, 16, 18

42 U.S.C. § 1985(3) ......................................................................... 17, 18

42 U.S.C. § 1986 ...................................................................... 3, 14, 15, 17, 18

49 U.S.C. § 41713(b)(1) ........................................................................ 12

Air Carrier Access Act, 49 U.S.C. § 41705 .................................................... 3, 9

Constitution of the United States, Article III ............................................ 7, 11, 12

N.Y. C.P.L.R. § 215(3) ......................................................................... 15

N.Y. C.P.L.R. § 302(a)(1) ....................................................................... 6

Rehabilitation Act, 29 U.S.C. §749(a) .......................................................... 18

## **Federal Rules of Civil Procedure**

Rule 12(b)(1) of the Federal Rules of Civil Procedure ..................................... 1, 4, 9, 12

Rule 12(b)(2) of the Federal Rules of Civil Procedure ......................................... 1, 7

Rule 12(b)(6) of the Federal Rules of Civil Procedure ............... 1, 1(n.1) 14 (n.5) 15, 15 (n. 7), 18

**Regulations**

14 C.F.R. Part 382.................................................................................................................. 3

19 C.F.R. § 122.165(a)........................................................................................................ 16

**Other Sources**

*Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities who are*

*Unable to Wear or Safely Wear Masks while on Commercial Aircraft*, U.S. DOT (Feb. 5, 2021)

(https://www.transportation.gov/airconsumer/masks-notice-of-enforcement-policy) (last accessed

Dec. 4, 2023)....................................................................................................................... 3

Defendant Air Tahiti Nui ("TN"), by its counsel, submits this Memorandum of Law in support of its motion to dismiss Plaintiff Aaron Abadi's ("Plaintiff") Complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

In the Complaint, Plaintiff alleges 38 counts against 61 named defendants. ECF Docs. 3-1, at 3-2. Many of the defendants are U.S. or foreign airlines that Plaintiff alleges, *inter alia*, denied him the opportunity to travel during the COVID-19 pandemic because of his refusal to wear a mask. ECF Doc. 3, at 1-4. Plaintiff contends that as an individual with a disability, the defendants' actions were, among other things, discriminatory, unconstitutional, and conspiratorial. *Id.* at 4. Of the 38 counts asserted against the 61 defendants, TN understands and interprets the Complaint to assert causes of action against it in Counts 7 through 34 and Counts 36 and 37.[1] TN respectfully submits that all counts asserted against TN should be dismissed in their entirety, on multiple grounds, including lack of personal jurisdiction and standing, mootness, preemption, expiration of the statutes of limitation, and failure to state a claim upon which relief can be granted.

## RELEVANT PROCEDURAL & FACTUAL BACKGROUND

### I.    PROCEDURAL POSTURE

On May 1, 2023, Plaintiff filed this action in the United States District Court for the Northern District of Texas. ECF Doc. 9. Eight days later, United States District Judge Matthew J. Kacsmaryk transferred the action to this District after concluding that venue in the Northern

---

[1] To the extent that Plaintiff intended to state causes of action against TN in Counts 1 through 6 or Counts 35 and 38, TN respectfully submits that it is unable to ascertain the cause of action being alleged against it in these counts. For this reason, TN submits that any claims against it which may be included in these counts should be dismissed under Rule 12(b)(6) for Plaintiff's non-compliance with Rule 8 of the Federal Rules of Civil Procedure. *See e.g.*, *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (affirming dismissal of complaint for failure to comply with requirement of Rule 8 that "complaint must set forth a short and plain statement … of a claim showing that the pleader is entitled to relief").

District of Texas was improper. *Id.* Shortly thereafter, this Court granted Plaintiff's Motion for Leave to Proceed *in forma pauperis*. *See* ECF Docs. 5, 13.

According to the Court's docket, On August 23, 2023, the Court *sua sponte* dismissed Plaintiff's claims against the President of the United States, the National Institutes of Health, Dr. Anthony Fauci, the Centers for Disease Control and Prevention ("CDC"), Dr. Robert Redfield, Jr., and the United States Department of Health and Human Services. ECF Doc. 15. At the same time, the Court ordered that the remaining Defendants be served. *Id.*

The following day, Plaintiff requested reconsideration of the Court's August 23, 2023 dismissal Order, and, on August 31, 2023, the Court granted Plaintiff's motion, in part. ECF. Docs. 16, 17. The Court entered a new Order of Service, and, on October 6, 2023, TN was served by the U.S. Marshals Office. ECF Doc. 120. TN timely returned the requisite acknowledgement form, and this Motion timely follows.

## II.    FACTUAL BACKGROUND

In the Complaint, Plaintiff asserts that all claims against TN arise from an email exchange that allegedly occurred on or about October 12, 2021. ECF Doc. 3-1, ¶¶ 628-35. Plaintiff alleges that he emailed TN's U.S. Call Center, Res.US@airtahitinui.com, and advised that he "would like to travel" with TN. ECF Doc. 3-74, at 1. Plaintiff also asked if he would be permitted to travel without a face mask or if TN could provide him an accommodation. *Id.*

At the time of Plaintiff's email to TN, the CDC, following an Executive Order from President Biden, required individuals to wear masks on public conveyances, including aircraft, to mitigate the spread of COVID-19 (the "CDC's federal mask mandate"). *See* ECF Doc. 3-7, at 1-4 (copy of CDC Order). Under the CDC's federal mask mandate, aircraft operators were required to ensure passengers wear masks while boarding the aircraft and for the duration of their travel on

board.  *Id.* at 1.  For those individuals requesting an exemption from the CDC's requirement, the U.S. Department of Transportation ("DOT") allowed aircraft operators to permit passengers to fly without a mask if they could provide "medical evaluation documentation from the passenger's doctor sufficient to satisfy the airline that the passenger does, indeed, have a recognized medical condition precluding the wearing or safe wearing of a mask."  *See Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft*, U.S. DOT (Feb. 5, 2021) (available online).[2]

In compliance with CDC and DOT requirements, and in response to Plaintiff's email inquiry on TN's policy for travelling without a mask, TN requested a doctor's note detailing Plaintiff's medical condition.  ECF Doc. 3-74, at 1.  Two days later, on October 14, 2021, Plaintiff emailed TN a doctor's note purportedly from December 3, 2020.  *Id.* at 3-4.  When TN requested a note dated within the last six months, Plaintiff claimed his disability was permanent and unchanging.  *Id.*  After TN reiterated its request for a more recent doctor's note, Plaintiff did not respond.  *Id.*

## III.    THE COMPLAINT

Plaintiff alleges 30 causes of action against TN, including violations of: (1) 42 U.S.C. §§ 1983, 1985, and 1986 (Counts 7, 8, and 9, respectively); (2) the Air Carrier Access Act and 14 C.F.R. Part 382 (Counts 10 through 18); (3) the Rehabilitation Act (Count 19); (4) State and city civil and human rights statutes (Counts 20 through 26); (5) intentional and unintentional torts, negligence, and breach of contract (Counts 27 through 34 and Count 36); and (6) infringement of the right to travel (Count 37).  ECF Doc. 3-1, at 111-45; ECF Doc. 3-2, at 1-60.  In addition to an award of compensatory damages in the amount of up to $4.5 billion, and nominal and punitive

---

[2] (https://www.transportation.gov/airconsumer/masks-notice-of-enforcement-policy) (last accessed Dec. 4, 2023).

damages in an unspecified amount, Plaintiff is also seeking a declaration that TN's mask policy violates federal law, injunctive relief to prohibit future alleged violations, and reimbursement for the time, costs, and fees incurred in connection with pursuing this litigation.  ECF Doc. 3-2 at 63–67.

## STANDARDS FOR DISMISSAL

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim for relief should be dismissed when the court lacks subject matter jurisdiction.  In considering whether a complaint asserts a sufficient basis for jurisdiction, the court may not attach "presumptive truthfulness" to the complaint's jurisdictional allegations or draw "argumentative inferences favorable to the party asserting jurisdiction." *Frisone v. Pepsico, Inc.*, 369 F.Supp. 2d 464, 469–70 (S.D.N.Y. 2005) (internal quotations omitted).  The plaintiff bears the burden "of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).  If subject matter jurisdiction is not sufficient, the district court lacks the statutory or constitutional power to adjudicate the claims before it. *Id.*

Under Rule 12(b)(2), a claim for relief should be dismissed when the court lacks personal jurisdiction over the defendant.  In combatting a motion to dismiss under Rule 12(b)(2), the plaintiff must allege "legally sufficient allegations of jurisdiction." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  In support, the plaintiff must present "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* at 567 (internal punctuation and quotations omitted) (quoting *Ball*, 902 F.2d at 197).  On a Rule 12(b)(2) motion, the plaintiff bears the burden of showing that a court has

jurisdiction over the defendant.  *Zito v. United Airlines, Inc.*, 523 F.Supp. 3d 377, 382 (W.D.N.Y. 2021).

When a party seeks dismissal under Rule 12(b)(6), the plaintiff must show that the complaint pleads "enough facts to state a claim to relief that is plausible on its face."  *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (internal quotations omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the court must "accept all factual allegations as true" when considering a Rule 12(b)(6) motion, it need not "accept as true a legal conclusion couched as a factual allegation."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 550).  In this regard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

## ARGUMENT

### I.    PLAINTIFF'S COMPLAINT FAILS TO ALLEGE PERSONAL JURISDICTION

In New York, courts exercise personal jurisdiction over foreign entities in two ways, through either general or specific jurisdiction.  *Thackurdeen v. Duke Univ.*, 130 F.Supp. 3d 792, 798 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016).  General jurisdiction arises when a court may hear any claim against a foreign entity because its affiliations within the state are "so 'continuous and systematic' as to render them essentially at home in the forum state."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. State of Wash.*, 362 U.S. 310, 317 (1945)); *see also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (summarizing general jurisdiction standard post-*International Shoe* as requiring that the foreign corporation be "essentially at home in the forum state").  Specific jurisdiction, on the other hand, arises when the defendant transacts business within the state and the claims asserted "arise from that business activity."  *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir.

2015) (explaining personal jurisdiction under New York's long-arm statute, *Personal jurisdiction by acts of non-domiciliaries*, N.Y. C.P.L.R. § 302(a)(1) (April 28, 2008)).

Here, Plaintiff does not allege, nor can he, that TN maintains "continuous" or "systematic" business in New York. To satisfy this jurisdictional standard and thus subjecting itself to general jurisdiction in New York, TN must be either "a New York corporation" or "maintain its principal place of business in the state." *See Zito*, 523 F.Supp. 3d at 384 (explaining that it must be an "exceptional case" to find general jurisdiction when "[i]t is undisputed that [d]efendant is not a New York corporation and does not maintain its principal place of business in this state"). TN, a foreign airline, is an entity of Tahiti, French Polynesia, with its principal place of business in Papeete. *See also*, ECF Doc. 100 (Corporate Disclosure).[3] As a result, Plaintiff cannot make a colorable contention that TN is "essentially at home" in New York, availing it to general jurisdiction.

Plaintiff also fails to illustrate that his claims arise out of TN's business activity in the state to support the Court's exercise of specific personal jurisdiction. Instead, the sole basis for Plaintiff's claims is an email exchange between Plaintiff and TN representatives regarding its mask policy. *See* ECF Doc. 3-1, at 65-66. Plaintiff does not allege that TN transacted business in New York or that TN's communications were done in connection with the transaction of business in NY such that TN has any relationship to New York, let alone "a substantial relationship" sufficient for this Court to confer personal jurisdiction over TN. *See Eades*, 799 F.3d at 169. By failing to plead even these most basic jurisdictional facts, Plaintiff has failed to illustrate that TN "purposefully availed itself of the privilege of doing business in the forum and could foresee being

---

[3] TN does not operate to/from New York and has not been registered to do business in New York since 2011.

haled into court there." *See id.*  As a result, Plaintiff fails to articulate any rationale to support this Court's exercise of specific jurisdiction over TN.

In the absence of either general or specific personal jurisdiction, each of Plaintiff's claims against TN should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.

## II.    ABSENT INJURY, PLAINTIFF LACKS STANDING

Article III of the United States Constitution limits a federal court's power to "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998) (citing *Muskrat v. United States*, 219 U.S. 346, 356-357 (1911)).  To establish standing to bring suit under Article III, the plaintiff must have "suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Maddox v. Bank of New York Mellon Trust Company, N.A.*, 19 F.4th 58, 62 (2d Cir. 2021).  In support, the plaintiff must allege facts that affirmatively and plausibly suggest that he has standing to sue*.  See Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009).  As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing and alleging facts that demonstrate compliance with each of its elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Under the first element necessary to establish constitutional standing, a showing of "particularized" harm requires that the harm alleged "affect[s] [the plaintiff] in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1.  When determining whether the plaintiff's alleged harm is "concrete" under this standard, the court "need not credit [a complaint's] conclusory

statements without reference to its factual context." *See Amidax Trading Group v. S.W.I.F.T.*, 671 F.3d 140, 146 (2d Cir. 2011) (cleaned up). In alleging an injury that is non-speculative, the plaintiff's alleged harms must be more than merely "conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Indeed, in the Second Circuit, "a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 637 (2d Cir. 2003).

Here, Plaintiff fails to demonstrate an injury to support Article III standing. Specifically, Plaintiff fails to illustrate how TN's email correspondence, or other alleged acts or omissions, harmed him in a concrete and tangible way. Instead, Plaintiff's alleged harm is merely speculative: articulating how he *would have been* harmed had he chosen to purchase a ticket with TN and was subsequently denied transportation. *See*, *e.g.*, Compl. at ¶¶ 628–635. Speculative and hypothetical injuries of this nature are precisely the type that courts reject when considering the constitutional sufficiency of Article III standing. *See e.g., Summers v. Earth Island Institute*, 555 U.S. 448, 496 (2009) (rejecting standing theory based on speculative chain of possibilities); *United States v. Probber*, 170 F.3d 345, 349 (2d Cir. 1999) (finding "injuries [were] too speculative to satisfy the case-or-controversy requirement of Article III"); *Citadel Mgmt., Inc., v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 152 (S.D.N.Y. 2000) (dismissing claim "based upon mere speculation" for lack of standing).

Plainly stated, in the absence of evidence illustrating how he actually suffered an injury because of TN's conduct, Plaintiff cannot allege the existence of any compensable or cognizable injury to satisfy the first element of constitutional standing. In turn, Plaintiff lacks standing to assert his claims against TN and this Court lacks subject matter jurisdiction to adjudicate Plaintiff's

contentions.  For this reason, the Complaint against TN should be dismissed, with prejudice, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## III.    THE AIR CARRIER ACCESS ACT DOES NOT PROVIDE A PRIVATE CAUSE OF ACTION

The Air Carrier Access Act ("ACAA") "provides an administrative enforcement scheme designed to vindicate fully the rights of disabled passengers."  *Lopez v. JetBlue Airways*, 662 F.3d 593, 597 (2d Cir. 2011).  In drafting the ACAA, however, Congress chose not to explicitly delineate a private cause of action under which a private party may sue.  *See id.*  When Congress fails to explicitly grant a private right of action in statutory text, principles of statutory interpretation dictate that a court may interpret the statute to determine whether Congress nonetheless intended to imply such a right.  *Id.*

The Second Circuit has decided that Congress neither explicitly nor implicitly intended to codify a private cause of action under the ACAA.  *See Lopez*, 662 F.3d at 597 (determining that "the text and structure of the ACAA manifests no congressional intent to create a private right of action in a federal district court").  The conclusion reached by the Second Circuit is consistent with the holdings in other Circuits.  *See Segalman v. Southwest Airlines Co.*, 895 F.3d 1219, 1229 (9th Cir. 2018) ("In sum, the ACAA's legislative history is insufficient to overcome the strong suggestion that the statute's remedial scheme forecloses an implied private cause of action."); *Boswell v. Skywest Airlines, Inc.*, 61 F.3d 1263, 1270 (10th Cir. 2004) ("Congress' creation of a specific means of enforcing the statute indicates that it did not intend to allow an additional remedy – a private right of action – that it did not expressly mention at all."); *Love v. Delta Air Lines*, 310 F.3d 1347, 1354 (11th Cir. 2002) ("[T]aken together, the text of the ACAA … and the surrounding statutory and regulatory structure create an elaborate and comprehensive enforcement scheme that

belies any congressional intent to create a private remedy[.]").  In other words, Courts both in this Circuit and in several others are in accord that the ACAA does not create a private right of action.

In alleging that this Court should nonetheless permit him to sue under the ACAA, Plaintiff argues that the statute's administrative enforcement structure is "non-existent."  *See* ECF Doc. 3-3, ¶¶ 1009–26.  Thus, he alleges, this Court should deviate from Second Circuit precedent to conclude that, in the absence of administrative enforcement prerogatives in line with his standards, he should be granted a private right of action.  *See id.*  Plaintiff's argument fails and his claims should be dismissed.

First, statutory text is not interpreted on a case-by-case basis to determine if Congress intended to imply a private right of action.  *See Alexander v. Sandoval*, 532 U.S. 275, 288 (2001).  If this Court were to conclude the opposite, it would be contrary to binding court precedent and result in differing statutory interpretations depending on the litigant before it and the forum.[4]  In addition, the Court's decision would undermine well-settled congressional intent by rewriting the statutory text.  Second, in contrast to Plaintiff's allegations, there is an administrative process available for him to adjudicate his claims.  In fact, Plaintiff has submitted a myriad of complaints to DOT and availed himself of his right to seek appellate review of DOT's decisions.  *See* ECF Doc. 3-2, ¶¶ 1029, 1032.  While Plaintiff might be disappointed with the outcome of these DOT enforcement actions and, thus, the ACAA's specific means of enforcing his rights, such dissatisfaction does not give rise to a private right of action.  Indeed, the *Lopez* Court made clear that when determining whether a statute implies a private right of action, courts look to the remedial scheme available and its enabling regulations, not the factual injury alleged in each case and the availability of the individual plaintiff's means of recovery.  *Lopez*, 662 F.3d at 597.

---

[4] Such a ruling would also inevitably and impermissibly result in forum shopping by plaintiffs seeking to pursue private causes of action under the ACAA.

For each of these reasons, and in support of the Second Circuit's unequivocal conclusion that the ACAA does not afford Plaintiff a private right of action, Plaintiff's claims for violations of the ACAA in Counts 10 through 18 must be dismissed.

## IV. PLAINTIFF'S CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE MOOT

In addition to establishing standing to sue, Article III of the United States Constitution also requires the existence of a live case or controversy for a court to resolve. *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022). In other words, "parties must retain a continued 'personal stake in the outcome,' … leaving [the court] to resolve only 'real and substantial controversies admitting of 'specific relief' rather than issue decisions 'advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)). A case may become moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 96 (2d Cir. 2020) (internal quotations omitted).

Here, Plaintiff's claims for declaratory and injunctive relief are premised on TN's now rescinded mask policy. *See* ECF Doc. 3-2, at 64-67, ¶¶ E-L. Specifically, on April 18, 2022, Judge Kathryn Kimball Mizelle of the United States District Court for the Middle District of Florida vacated the CDC's federal mask mandate. *See* ECF Doc. 3-2, ¶ 1353; *see also Health Freedom Defense Fund, Inc. v. Biden*, 599 F.Supp. 3d 1144 (M.D. Fla. 2022). Following the Court's decision, TN, along with most foreign and U.S. airlines, terminated its respective mask policy that was in compliance with the CDC's requirements. The federal mask mandate later expired on its own accord on May 11, 2023. *See* CDC.gov, *Expired Order: Wearing of face masks while on conveyances and at transportation hubs* (May 12, 2023) (available online).

As a result, there is "no longer a 'Case' or 'Controversy' for purposes of Article III" for this Court to adjudicate, *Mangouras*, 980 F.3d at 96, and "[t]here is no reasonable basis to expect the [m]andate will be reinstated if this case is rendered moot." *Health Freedom Defense Fund v. President of United States*, 71 Fed. 4th 888, 892 (4th Cir. 2023) (assessing claims alleging illegality of federal mask mandate).  Plaintiff's contention to the contrary—that his case is capable of repetition and, thus, not moot because "there is a reasonable expectation that the CDC will issue another nationwide mask mandate for all conveyances and transportation hubs"—is "speculative at best."  *See id.*  On the contrary, in the absence of a live case or controversy for this Court to consider, and the lack of any credible evidence that TN will reinstate these policies in the future, Plaintiff's claims for injunctive and declaratory relief are moot.  *See* ECF Doc. 3-2, at 64-67, ¶¶ E-L.  Accordingly, TN respectfully requests that this Court dismiss Plaintiff's declaratory and injunctive relief claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## V.    PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED

Congress enacted the Airline Deregulation Act ("ADA") with the goal of deregulating domestic air travel.  *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995).  "To ensure that the States would not undo federal deregulation with regulation of their own, . . . the ADA included a preemption clause."  *Id.* (internal quotation marks and citation omitted).  In relevant part, the preemption clause provides that: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . .." 49 U.S.C. § 41713(b)(1).

The United States Supreme Court broadly interpreted the preemptive reach of the ADA in *Morales v. Trans World Airlines Inc.*, holding that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted."  504 U.S. 374,

384 (1992).  In the Second Circuit, airline "services" are similarly interpreted broadly, to include matters that are incidental to the actual transportation of passengers.  *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (finding that a state law requiring airlines to provide amenities during long flight delays was preempted); *see also Fawemimo v. Am. Airlines, Inc.*, 751 F. App'x 16, 18–19 (2d Cir. 2018) (finding negligence claim brought by passenger who alleged she hit her head on television monitor while boarding aircraft related to airline "service" and was preempted).

In *Wolens*, the Supreme Court found that the ADA's preemption clause "allows room for court enforcement of contract terms set by the parties themselves."  *Wolens*, 513 U.S. at 222.  In this regard, the contractual relationship between a carrier and its passengers is governed by the carrier's Contract of Carriage.  *Hekmat v. U.S. Transp. Sec. Admin.*, 247 F.Supp. 3d 427, 434 (S.D.N.Y. 2017).  However, "[t]he exception to preemption recognized by *Wolens* is narrow.  Even where a state law claim is based on an airline's self-imposed contractual obligations, the claim is preempted if it 'seeks to enlarge the contractual obligations that the parties voluntarily adopt.'"  *Bugarin v. All Nippon Airways Co., Ltd.*, 513 F. Supp. 3d 1172, 1189 (N.D. Cal. 2021) (quoting *Northwest, Inc., et al. v. Ginsberg*, 572 U.S. 273, 276 (2014)).  In other words, courts are "confine[d] . . . to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."  *Wolens*, 513 U.S. at 246.

Here, Plaintiff's Complaint alleges various state law claims, including violations of state and city civil and human rights statutes (Counts 20 through 26), intentional and unintentional torts, negligence, and breach of contract (Counts 27 through 34 and Count 36).  The factual predicate for each of Plaintiff's state- and common-law claims is an email exchange regarding Plaintiff's request for an exemption to the requirement that he wear a facemask during the COVID-19

pandemic.  *See* ECF Doc. 3-1, ¶¶ 628-35.  As other courts have noted, such claims are related to a provision of an airline's "service" and are plainly preempted.  *See Andreadakis v. Ctr. for Disease Control & Prevention*, No. 3:22CV52 (DJN), 2022 WL 2674194, at *12 (E.D. Va. July 11, 2022) (appeal pending) (preempting plaintiff's state law-based claims against airline defendants when claims arose from defendants requiring plaintiff to adhere to federal mask mandate or submit proof of required medical exemption).  Thus, all of Plaintiff's tort claims and claims for violations of human and civil right statutes are clearly preempted by the ADA and must be dismissed.

Moreover, Plaintiff does not have, and does not properly allege, the existence of a contract with TN.[5]  Thus, Plaintiff has failed to properly plead a claim for breach of contract against TN and cannot contend that his claim qualifies under the *Wolens* exception.  However, even if Plaintiff did have a contract with TN, Plaintiff's claim for breach of contact does not fit within the narrow exception to preemption, which must be based on an airline's breach of its "own, self-imposed undertakings."  *See Wolens*, 513 U.S. at 228.  Indeed, Plaintiff's breach of contract claim relies entirely on external authority:  TN's responsibility to enforce the "Mask Mandate . . . federal law."  *See Andreadakis*, 2022 WL 2674194, at *12.  As such, Plaintiff's breach of contract claim improperly invites the court to interpret external law and, like each of his other state- and common-law claims, is preempted.  *See id.*

## VI.    PLAINTIFF'S CLAIMS ARE TIME BARRED

Under the plain text of 42 U.S.C. § 1986, "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."  Similarly, in New York, the statutes of limitation for intentional torts, intentional infliction of

---

[5] In the absence of a ticket purchase invoking the provisions of TN's contract of carriage, Plaintiff also cannot state a breach of contract claim.  In other words, the parties did not enter into a contract that Plaintiff can arguably allege has been breached.  For this reason, Plaintiff's claims related to breach of contract, in addition to being preempted, should also be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

emotional distress, and injurious falsehoods claims are one year.  *See* C.P.L.R. § 215(3) (Sept. 4, 2019); *see also Stordeur v. Computer Associates Inter., Inc.*, 995 F.Supp. 94, 98 (E.D.N.Y. 1998) (applying § 215(3) to claims of "intentional tort" and "intentional infliction of emotional distress") *and Riddell Sports Inc. v. Brooks*, 872 F.Supp. 73, 76 (S.D.N.Y. 1995) (finding one-year statute of limitations under § 215(3) applies to claim of injurious falsehoods).

Here, the email exchange underpinning Plaintiff's claims allegedly occurred on or about October 12, 2021.  *See* ECF Doc. 3-1, ¶ 628.  Plaintiff's claims asserting violations of § 1986, intentional tort, intentional infliction of emotional distress, and injurious falsehoods, therefore, expired on or around October 12, 2022.[6]  However, Plaintiff did not commence this lawsuit until May 1, 2023.  ECF Doc. 9.  As a result, Plaintiff's claims alleging violations of § 1986 in Court 9; intentional tort in Count 27; intentional infliction of emotional distress in Count 29; and injurious falsehoods in Count 33 are each time-barred by the statute of limitations and must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[7]

## VII.  PLAINTIFF HAS NOT STATED A CLAIM FOR WHICH RELIEF CAN BE GRANTED

To the extent the Court declines to dismiss Plaintiff's claims for any of the reasons articulated above, TN respectfully submits that Plaintiff otherwise fails to present *prima facie* evidence in support of his claims.  Specifically, Plaintiff fails to state claims for which relief can

---

[6] Alternatively, as Plaintiff never purchased a ticket and was never denied the ability to travel, his claims have not yet accrued and this lawsuit is premature.

[7] Plaintiff has also failed to state facts sufficient to support these claims against TN and thus they must be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For example, he has not plead any facts that TN committed injurious falsehood (*i.e.*, "trade libel"), which requires "the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment."  *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 518 (S.D.N.Y. 2017) (internal citations and quotations omitted).  Plaintiff's other claims fare no better.  *See e.g.*, *Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y. 2d 397, 406 (1975) (explaining claim for intentional tort requires "economic damage, without excuse of justification"); *Grice v. McMurdy*, 489 F.Supp. 3d 400, 414 (W.D.N.Y. 2020) (explaining claim for intentional infliction of emotional distress in the Second Circuit requires showing of "extreme and outrageous conduct").

be granted with respect to his allegations under 42 U.S.C. §§ 1983, 1985, and 1986 (Counts 7, 8, and 9, respectively); the Rehabilitation Act (Count 19); and infringement of his right to travel (Count 37).

### A.  THERE IS NO CONSTITUTIONALLY RECOGNIZED RIGHT TO INTERNATIONAL TRAVEL

To state a cause of action under 42 U.S.C. § 1983, the plaintiff must allege that "some person acting under color of state law deprived him of a federal right." *Alhers v. Rabinowitz*, 684 F.3d 53, 60-61 (2d Cir. 2012).  In assessing whether a violation of § 1983 has occurred, courts must evaluate whether (1) the party that allegedly committed the violation was a state actor or "acting under color of state law;" and (2) the conduct alleged constitutes deprivation of a "federal right." *See e.g.*, *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986) (determining first that defendants were state actors and then stating federal rights implicated).  Under the second prong of this analysis, it is well settled that international travel is not a federal right.  *See e.g.*, *Haig v. Agee*, 453 U.S. 280, 306 (1981) (explaining "the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States") (emphasis in original).

TN, as a foreign air carrier, may not offer transportation "between points of the U.S. in a foreign civil aircraft."  19 C.F.R. § 122.165(a) (explaining prohibition on "air cabotage" for foreign-registered aircraft).  In other words, TN may only offer international transportation and does not, nor cannot, offer inter- or intrastate transportation within the United States.  As a foreign air carrier that only offers international transportation, Plaintiff cannot allege that TN violated his right to travel.  Simply stated, there is no federally protected constitutional right to international travel which Plaintiff may allege that TN violated.  For this reason, Plaintiff's claim under § 1983 for Count 7 fails as a matter of law.

Relatedly, Plaintiff's claim for "infringement on the constitutional right to travel" under Count 37 suffers from the same fatal flaw.  Plaintiff seemingly recognizes the limitations associated with his allegation, detailing that "the right to travel *in the United States* is basic to American liberty."  *See* ECF Doc. 3-2, ¶ 1334.  In the absence of any "constitutional right" to international travel and, given that TN only provides international transportation for its passengers, Plaintiff's claim for infringement on his "constitutional right to travel" under Count 37 must similarly be dismissed.

### B.  PLAINTIFF IS NOT ENTITLED TO RELIEF UNDER 42 U.S.C. §§ 1985 OR 1986

Under 42 U.S.C. § 1985(3), two or more persons may be held liable for conspiring with "the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws…."  To state a claim under this section, a plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus…."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Correspondingly, a claim under § 1986 permits liability when a person has knowledge of the conduct under § 1985 "and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do…."  42 U.S.C. § 1986.

Admittedly, TN has struggled to understand the precise contours of Plaintiff's allegations under §§ 1985 and 1986.  Plaintiff has done nothing more than allege, without any evidence or factual assertions in support, that TN has somehow conspired with other US and foreign airlines to deprive him of his rights.  Instead of illustrating how TN allegedly conspired with any of the other defendants, Plaintiff repeats broad proclamations that because each of the defendants maintained mask policies in line with federal law, they somehow agreed to engage in a discriminatory conspiracy.  Under such a threadbare assertion and rambling diatribe, Plaintiff's claims are simply insufficient to pass muster as a viable cause of action under §§ 1985 or 1986.

*See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (explaining that "complaint containing only conclusory, vague or general allegations of conspiracy … cannot withstand a motion to dismiss"). For this reason, Counts 8 and 9 alleging causes of action under §§ 1985(3) and 1986 should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## C.  TN DOES NOT RECEIVE FEDERAL FUNDING TO ENTITLE PLAINTIFF TO RELIEF UNDER THE REHABILITATION ACT

The Rehabilitation Act, 29 U.S.C. § 749(a), prohibits discrimination against individuals with a disability for programs or activities "receiving Federal financial assistance…." The inquiry to determine whether an entity receives "federal financial assistance" in this context is simple—the court assesses whether the defendant was the "recipient of [any] federal assistance." *U.S. Dept. of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 604 (1986). If the answer is no, the Rehabilitation Act does not apply. *Id.*; *see also National Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 467-68 (1999) (reaffirming narrow scope of "recipient" language to include only "those who receive the aid" and not "those who benefit from it"). Here, TN has not received any federal financial assistance which would subject it to the Rehabilitation Act, nor are there any allegations that it does receive such assistance. *See*, *e.g.*, Compl. at ¶ 1129 (claiming generally that many airlines receive federal funding, without specifying that TN or other foreign air carriers are outside this alleged scope). As a result, TN submits that any claim by Plaintiff under the Rehabilitation Act in Count 19 is necessarily inapplicable and must be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth herein, and upon the record of this action, TN respectfully submits that the Complaint against it must be dismissed, in its entirety, with prejudice.


Dated: December 5, 2023
        White Plains, New York

                            Respectfully Submitted,

                            Eckert Seamans Cherin & Mellott, LLC

                            By:  <u>s/ Riyaz G. Bhimani</u>
                                 Riyaz G. Bhimani
                            10 Bank Street, Suite 700
                            White Plains, New York 10606
                            rbhimani@eckertseamans.com
                            (914) 286-2806

                            *Attorneys for Defendant*
                            *Air Tahiti Nui*

19

**Certificate of Service**

I, Riyaz G. Bhimani, hereby certify that a true and correct copy of foregoing

**MEMORANDUM OF LAW IN SUPPORT OF AIR TAHITI NUI'S MOTION TO DISMISS**

was served on December 5, 2023 upon all counsel of record including the Plaintiff *pro se* (at the

e-mail address below) via the Court's CM/ECF Filing Portal, through which service is complete

upon the transmission and receipt of the notice of docket activity of this (these) document(s):

>Mr. Aaron Abadi
>Abadi.rne@gmail.com
>*Plaintiff Pro Se*


>  *s/ Riyaz G. Bhimani*
>Riyaz G. Bhimani

KeyCite Blue Flag – Appeal Notification

Appeal Filed by KLEANTHIS ANDREADAKIS v. CENTERS FOR DISEASE CONTROL AND PREVENTION, 4th Cir., September 12, 2022

2022 WL 2674194
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Richmond Division.

Kleanthis ANDREADAKIS, Plaintiff,

v.

CENTER FOR DISEASE CONTROL
& PREVENTION et al., Defendants.

Civil No. 3:22cv52 (DJN)
|
Signed 07/11/2022

**Attorneys and Law Firms**

Kleanthis N. Andreadakis, Clarksville, TN, Pro Se.

Jonathan Tyler Lucier, US Attorney Office, Richmond, VA, Andrew Francis Freidah, Pro Hac Vice, Civil Division, Federal Programs Branch, Washington, DC, Michael Joseph Gerardi, Pro Hac Vice, Latham & Watkins LLP, Washington, DC, Stephen Michael Pezzi, Pro Hac Vice, Department of Justice, Washington, DC, for Defendants.

**MEMORANDUM OPINION**

David J. Novak, United States District Judge

\*1 Plaintiff Kleanthis Andreadakis filed the instant Complaint (ECF No. 1) challenging the implementation and enforcement of two government-issued COVID-19 safety measures regulating the airline industry. This matter comes before the Court on two motions to dismiss filed by multiple defendants. Defendants American Airlines, Inc., JetBlue Airways Corp., Southwest Airlines Co. and United Airlines, Inc. (collectively, the "Airline Defendants") have filed a Motion to Dismiss the Complaint (ECF No. 78), moving pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all twenty-four counts against them for failure to state a claim. Similarly, Defendant STAT-MD has filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules 12(b)(2) and 12(b)(6) (ECF No. 80), moving to dismiss the two counts against it for lack of personal jurisdiction and

failure to state a claim. For the reasons stated herein, the Court will GRANT the Motions and dismiss all claims against the Airline Defendants and STAT-MD. Additionally, for the reasons stated herein, the Court will DISMISS AS MOOT all claims against Defendants Centers for Disease Control and Prevention ("CDC") and the Department of Health and Human Services ("HHS") (collectively, the "Federal Defendants").

**I. BACKGROUND**

**A. The Challenged Orders**

Plaintiff challenges two government orders relating to the safety of air travel. On January 13, 2021, the CDC issued an order, which it then amended in December 2021 (the "Testing Order"), generally requiring international air travelers to provide proof of a negative COVID-19 test before departure to the United States. *Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery from COVID-19 for All Airline or Other Aircraft Passengers Arriving into the United States from Any Foreign Country*, 86 Fed. Reg. 69,256, 69,258 (Dec. 7, 2021.) Effective June 12, 2022, the CDC rescinded the Testing Order, citing the improvement of other tools used to fight COVID-19. 87 Fed. Reg. 36129 (June 15, 2022).

On February 3, 2021, the CDC issued the Mask Order. CDC, *Order Under Section 361 of the Public Health Service Act, Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021). The Mask Order required persons to "wear masks over the mouth and nose when traveling on any conveyance ... into or within the United States" and "at transportation hubs." *Id.* at 8026. The Mask Order exempted "child[ren] under the age of 2" and anyone "with a disability who cannot wear a mask, or cannot safely wear a mask," among others. *Id.* at 8027. It further exempted "[p]rivate conveyances operated solely for personal, non-commercial use." *Id* at 8028. It did not apply "[w]hile eating, drinking, or taking medication, for brief periods." *Id* at 8027. The CDC last extended the Mask Order to remain in place until May 3, 2022, but thereafter stopped enforcing the Mask Order effective April 18, 2022 due to the court order discussed below.[1] Likewise, the Transportation Security Administration has ceased enforcing its mask-related security directives.

\*2 On April 18, 2022, United States District Judge Kathryn K. Mizelle of the Middle District of Florida issued an order

(the "Vacatur Order") declaring the Mask Order unlawful, vacating it and remanding it to the CDC. *Health Freedom Defense Fund, Inc. v. Biden, et al.*, No. 8:21cv1693 (M.D. Fla.), ECF No. 53. The Government has appealed that ruling. No. 8:21cv1693 (M.D. Fla.), ECF No. 55. The briefing in the appeal has not yet completed, and the Eleventh Circuit has not yet scheduled oral argument. *Health Freedom Defense Fund, Inc. v. Biden, et al.*, No. 22-11287 (11th Cir.).

**B. Plaintiff's Lawsuit**

Plaintiff belongs to a group known as Americans Against Mask Mandates ("AAMM"), which Lucas Wall chairs. AAMM works collectively on lawsuits filed by its members to challenge the Mask Order. On January 28, 2022, Plaintiff, proceeding *pro se*, filed the instant Complaint against the CDC, HHS, American Airlines, JetBlue Airways, Southwest Airlines, United Airlines and STAT-MD. (Compl. (ECF No. 1).) Plaintiff seeks to "permanently enjoin enforcement of the Federal Transportation Mask Mandate and International Traveler Testing Requirement put into place by orders of the [CDC] — under the purported authority of its parent agency, [DHS]." (Compl. at 1-2.) Plaintiff also seeks to "end the unlawful discrimination against the disabled such as [himself] who can't safely wear a mask" by the four Airline Defendants. (Compl. at 2.) He also sues STAT-MD as the "medical vendor that evaluates mask-exemption demands for airlines including Southwest." (Compl. at 2.) Plaintiff brings forty-four counts in his Complaint. These include twelve violations of the Administrative Procedures Act ("APA") related to the creation and implementation of the challenged orders; six constitutional violations based on the restriction of the freedom of travel and the delegation of legislative power; thirteen violations of the Rehabilitation Act and Air Carrier Access Act for various COVID-related flight restrictions placed on air travelers; two counts of civil rights violations; and, various state law claims. Plaintiff brings the tenth case filed by AAMM members in federal courts.

**C. Procedural History**

On January 28, 2022, Plaintiff filed his Complaint. (ECF No. 1.) On February 4, 2022, he filed a Motion for Preliminary Injunction (ECF No. 21) against the Federal Defendants, and, on February 7, 2022, he filed a Motion for Preliminary Injunction (ECF No. 10) against United Airlines. He filed a motion for expedited briefing on both, which the Court denied. (ECF Nos. 11, 22, 27.) In requesting preliminary injunctions, Plaintiff asked the Court to enter an order enjoining Defendants from enforcing the FTMM. Defendants

opposed the request for a preliminary injunction. (ECF Nos. 49-50.)

On February 7, 2022, the Airline Defendants filed a Motion to Transfer Litigation to the Middle District of Florida. (ECF No. 12.) Similarly, on February 17, 2022, the Federal Defendants filed a Motion to Transfer to the Middle District of Florida. (ECF No. 44.) In both transfer motions, Defendants argued that Plaintiff's lawsuit constitutes a substantially similar and in many respects identical lawsuit to Wall's litigation pending before Judge Byron in the Middle District of Florida. They argued that Plaintiff filed this action due to AAMM's dissatisfaction with the litigation pending before Judge Byron in Florida. Plaintiff opposed the transfer motions. (ECF No. 53.)

**\*3** On April 6, 2022, the Airline Defendants filed their Motion to Dismiss. In support, they largely argue that the Air Carrier Access Act of 1986 ("ACAA"), 49 U.S.C. § 41705, and the Airline Deregulation Act ("Deregulation Act"), 49 U.S.C. § 41713(b), preempts Plaintiff's claims and provides the sole remedy for an airline passenger bringing disability discrimination and state law claims against the airlines. (Airline Defs.' Mem. of Law in Supp. of Mot. to Dismiss Compl. ("Airline Defs.' Mem.") (ECF No. 79) at 8, 17-22.) Similarly, the Airline Defendants argue that Plaintiff lacks a private right of action to allege violations of the ACAA. (Airline Defs.' Mem. at 10.) Further, the Airline Defendants aver that Plaintiff's claims under the Rehabilitation Act fail, because they are not subject to that Act. (Airline Defs.' Mem. at 13-15.) Additionally, the Airline Defendants argue that Plaintiff's claim for civil conspiracy under 42 U.S.C. § 1985(3) fails, because that section does not apply to disability discrimination complaints. (Airline Defs.' Mem. at 6-7.) Finally, the Airline Defendants argue that the Court lacks personal jurisdiction over them, because Plaintiff has not alleged that he purchased a ticket to fly from any of the Airline Defendants in Virginia. The Airline Defendants included a *Roseboro* notice with their Motion, advising Plaintiff that he needed to respond within twenty-one days or risk dismissal of his complaint. (ECF No. 78-2.)

On April 8, 2022, Defendant STAT-MD filed its Motion to Dismiss. It primarily argues that the Court lacks personal jurisdiction over Plaintiff's claims against it. (Br. in Supp. of Mot. to Dismiss. ("STAT-MD Mem.") (ECF No. 81) at 5.) Additionally, it argues that Plaintiff's claims for medical malpractice fail, because Plaintiff has not alleged the provision of health care or a physician-patient relationship.

Case 1:23-cv-04033-LJL    Document 213    Filed 12/05/23    Page 29 of 44

Andreadakis v. Center for Disease Control & Prevention, Not Reported in Fed. Supp....

2022 WL 2674194

(STAT-MD Mem. at 6.) Additionally, that claim fails, because Plaintiff did not obtain a certificate of merit before filing suit, as required by Virginia's Medical Malpractice Act. (STAT-MD Mem. at 9.) Finally, STAT-MD argues that the civil conspiracy claims fail to properly allege the existence of a conspiracy, warranting dismissal. (STAT-MD Mem. at 10.) STAT-MD also included a *Roseboro* notice with its Motion, warning Plaintiff that a failure to respond to the motion within twenty-one days could result in the dismissal of his action. (STAT-MD Mem. at 1.)

On April 18, 2022, Plaintiff filed a Motion to Stay Briefing on Defendants' Motions to Dismiss (ECF No. 82), asking the Court to stay his deadline to respond to the motions to dismiss until after resolution of the transfer motions and preliminary injunction motions. On April 22, 2022, the Court denied the stay motion as moot, because it had resolved the transfer motions and preliminary injunction motion. (ECF No. 88.) Plaintiff, however, still failed to respond to the motions to dismiss. Accordingly, on June 14, 2022, the Court ordered Plaintiff to respond to the Motions by June 17, or it would consider the Motions unopposed. (ECF No. 93.) Plaintiff did not respond to the Motions or otherwise ask for an extension by June 17. Instead, on June 21, 2022, he filed a request for an extension of twenty-one (21) days to respond to the Motions, claiming that he had not responded because the Court had not ruled on his Motion to Stay. (ECF No. 94.) The Court denied his request for an extension, because it had ruled on the Motion to Stay, and had previously warned the parties that briefing on any motions would follow the standard briefing schedule provided for in the Local Rules. (ECF No. 98.) Plaintiff has still not filed an opposition to the Motions to Dismiss, and the Court considers the Defendants' bases for dismissal uncontroverted. *See Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (noting that when a plaintiff does not respond in opposition to a motion to dismiss, a district court is "entitled, as authorized [by the Local Rules], to rule on the [defendants'] motion and dismiss [the plaintiff's] suit on the uncontroverted bases asserted therein").

On April 22, 2022, the Court denied the preliminary injunction motion and the transfer motions. (ECF No. 88.) Additionally, the Court ordered the parties to brief the impact of the Vacatur Order on Plaintiff's claims, and whether it rendered any of them moot. Plaintiff responded that it did not moot any of his claims, and that he would continue to press forward with all of his claims. (ECF No. 89.)

## II. STANDARD OF REVIEW

**\*4** "Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citation omitted). If a federal court reviews "only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint," then a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive a motion to dismiss under Rule 12(b)(2). *Id* at 268 (citations omitted). "[T]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction," *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), though the Court need not consider only Plaintiff's proof of personal jurisdiction to decide which inferences it will make, *Mylan Labs., Inc. v. Akzo, N. V.*, 2 F.3d 56, 62 (4th Cir. 1993). "[W]here the defendant has provided evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence." *Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990) (citation omitted).

Similarly, a motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of NC. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and

Case 1:23-cv-04033-LJL    Document 213    Filed 12/05/23    Page 30 of 44

Andreadakis v. Center for Disease Control & Prevention, Not Reported in Fed. Supp....

2022 WL 2674194

conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other pity's liability. *Id* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III. ANALYSIS

The Court will first address Defendant STAT-MD's Motion to Dismiss, finding that it lacks personal jurisdiction over STAT-MD for Plaintiff's claims. Next, the Court will address the Airline Defendants' Motion to Dismiss, finding that none of Plaintiff's claims against them can survive the Airline Defendants' challenge. Finally, although the Federal Defendants have not moved for dismissal, the Court will address why the claims against the Federal Defendants are moot.

### A. The Court Lacks Personal Jurisdiction Over Plaintiff's Claims Against STAT-MD.

Defendant STAT-MD argues that the Court lacks personal jurisdiction over it for Plaintiff's claims. (STAT-MD Mem. at 4-6.) The Court agrees.

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdictional challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every state following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Determinations of personal jurisdiction require a two-step inquiry. First, a court must find that the long-arm statute of the forum state authorizes the exercise of jurisdiction over a nonresident defendant. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Then, the court must find that the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. *Id.*

**\*5** Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of the Fourteenth Amendment Due Process Clause, "the two-prong test collapses into a single inquiry when Virginia is the forum state." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Within those parameters, a court may find that it has either general or specific personal jurisdiction over a defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General personal jurisdiction exists over defendants with "continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). When the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities," a court can assert general jurisdiction over a corporate defendant. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe Co.* 326 U.S. at 318)). Otherwise, a court may exercise specific personal jurisdiction only if a defendant's minimum contacts with the forum state form the basis for the claims in question. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004).

The Court cannot exercise general jurisdiction over STAT-MD. Corporate defendants fall under the general jurisdiction of courts in their place of incorporation and principal place of business. *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021). Here, Plaintiff alleges that "STAT-MD is a non-profit organization backed by the resources of the university of Pittsburgh Medical Center. Its headquarters is at 200 Lothrop St. #F1301, Pittsburgh, PA 15213." (Compl. at 6.) Thus, STAT-MD is not subject to general jurisdiction in Virginia, requiring Plaintiff to establish the Court's specific jurisdiction to survive STAT-MD's personal jurisdiction challenge.

With respect to specific personal jurisdiction, the Fourth Circuit has established a three-part test, requiring trial courts to consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting

Case 1:23-cv-04033-LJL   Document 213   Filed 12/05/23   Page 31 of 44

Andreadakis v. Center for Disease Control & Prevention, Not Reported in Fed. Supp....

2022 WL 2674194

activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd*, 561 F.3d 273, 278 (4th Cir. 2009) (internal quotations and citations omitted). Alternatively, because personal jurisdiction constitutes an individual right, a party may waive that right and submit to the personal jurisdiction of a court by appearance or by providing express or implied consent in "[a] variety of legal arrangements." *Ins. Corp. of Ireland, Ltd v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982).

Under the first prong of the test for specific jurisdiction, the Fourth Circuit has enumerated several nonexclusive factors to consider whether a defendant has purposefully availed itself of the forum state, including:

**\*6**  • whether the defendant maintains offices or agents in the forum state,

• whether the defendant owns property in the forum state,

• whether the defendant reached into the forum state to solicit or initiate business,

• whether the defendant deliberately engaged in significant or long-term business activities in the forum state,

• whether the parties contractually agreed that the law of the forum state would govern disputes,

• whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,

• the nature, quality and extent of the parties' communications about the business being transacted, [and]

• whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs Corp.*, 561 F.3d at 278 (cleaned up). "If, and only if ... the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Id*

"The second prong of the test for specific jurisdiction ... requires that the defendant's contacts with the forum state form the basis of the suit." *Id* at 278-79 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros*

*Nacionales de Columbia, S.A.*, 466 U.S. at 414). Finally, the third prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. Specifically, a court may evaluate "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id* (citing *Burger King Corp.*, 471 U.S. at 477). With this standard in mind, the Court now turns to whether it can exercise personal jurisdiction over STAT-MD.

Plaintiff's scant allegations against STAT-MD do not satisfy the first prong of the test. Plaintiff alleges that STAT-MD reviews and denies mask-exemption demands for its airline clients "without ever speaking to the passenger or his/her doctor." (Compl. ¶¶ 671, 884.) Plaintiff makes no further allegations against STAT-MD. Plaintiff does not allege that any of this occurs in Virginia, nor that STAT-MD even knows whether the exemption request comes from a passenger in Virginia. Indeed, Plaintiff's allegations of wrongdoing stem from the claim that STAT-MD only interacted with the airlines (located outside of Virginia), rather than Plaintiff or his doctors, perhaps located in Virginia. Accordingly, Plaintiff has not alleged that STAT-MD purposefully availed itself of the privilege of conducting business in Virginia. The dearth of allegations connecting STAT-MD's activities to Virginia also render Plaintiff unable to satisfy the second or third prong of the test for personal jurisdiction. Thus, the Court lacks personal jurisdiction over STAT-MD, and the Court will dismiss the claims that Plaintiff brings against it.[2]

## B. The Court Will Dismiss the Claims Against the Airline Defendants.

**\*7**  The Court now turns to the Airline Defendants' Motion to Dismiss. The Court will first address whether the civil conspiracy claims can survive before turning to Plaintiff's claims under the ACAA and the Rehabilitation Act. Finally, the Court will turn to Plaintiff's claims under various state laws and international laws. For the reasons stated below, all of the claims against the Airline Defendants fail.

### i. Plaintiff's Civil Conspiracy Claims Fail.

Case 1:23-cv-04033-LJL    Document 213    Filed 12/05/23    Page 32 of 44

Andreadakis v. Center for Disease Control & Prevention, Not Reported in Fed. Supp....

2022 WL 2674194

In Counts 19 and 20, Plaintiff alleges that the Airline Defendants and STAT-MD conspired to deprive disabled Americans of their civil rights by banning "anyone medically unable to wear a face mask from using the nation's air-transportation system." (Compl. ¶¶ 669-81.) Plaintiff brings this claim under 42 U.S.C. § 1985(3). The Airline Defendants move to dismiss these claims, first asserting that § 1985(3) does not apply to disability discrimination. (Airline Defs.' Mem. at 6-7.) Rather, they claim that § 1985 claims apply only to race-related discrimination conspiracies. (Airline Defs. Mem. at 6-7.)

42 U.S.C. § 1985 states in relevant part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3); *Harrison v. KVAT Food Mgmt., Inc.*, 766 F.2d 155, 156 (4th Cir. 1985).

The statute dates to 1871, when Congress passed the Ku Klux Klan Act to combat racial violence that the Klan and others waged against African Americans in the Reconstruction-Era South. *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1487 (7th Cir. 1985). Section 2 of the Ku Klux Klan Act became § 1985. *Id.* As a threshold matter, "[i]n order to recover under Section 1985(3), a plaintiff must establish that 'some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' action' exists." *D'Amato*, 760 F.2d at 1485 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). The Fourth Circuit has not yet addressed whether § 1985(3) applies to claims for disability discrimination.

The Supreme Court in *Griffin v. Breckenridge* explained that a plaintiff must demonstrate some class-based discriminatory animus motivating the conspirators' actions. 403 U.S. at 102. In *Griffin*, white citizens assaulted Black petitioners who travelled on a highway, and the petitioners alleged that the defendants conspired to do so with racial motivations. *Id.* at 88. The Court held that § 1985(3) extends to

private conspiracies, but some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions must exist. *Id.* at 102. The Court concluded that petitioners did state a cause of action, because it fully alleged that the defendants conspired to commit the assault for racially charged reasons. *Id.* at 103.

In *United Brotherhood of Carpenters v. Scott*, the Supreme Court held that § 1985(3) could not reach conspiracies motivated by bias towards others on account of their economic views, status or activities, and thus it could not reach an alleged conspiracy against nonunion workers. 463 U.S. 825, 837-38 (1983). In that case, a construction company and two employees sued union members for allegedly conspiring to deprive the plaintiffs of equal protection by attacking a construction site, assaulting workers and destroying property. *Id.* at 825. The Court reaffirmed that there must be some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions. *Id.* at 835. The Court further reasoned that the predominant purpose of the statute was to combat animus against Blacks and their supporters in the Reconstruction-era South. *Id.* at 836. The Court withheld judgment on whether § 1985(3) reached any farther than that central concern. *Id.* at 837.

**\*8** In *Harrison v. KVAT Food Mgmt., Inc.*, the Fourth Circuit expressed reluctance to extend the protections of § 1985(3) beyond those classes expressly provided by the Supreme Court. 766 F.2d 155, 161 (4th Cir. 1985). In *Harrison*, a discharged employee alleged that his former employers had conspired to prevent him from running for office as a Republican, but the court ultimately ruled that the protection of § 1985(3) did not extend to claims citing discriminatory animus against a class formed around purely political views. *Id.* at 161. The court reasoned that, based on the Supreme Court's decision in *Scott*, the 1871 Civil Rights Act and § 1985(3) originally intended to protect African Americans and the struggle for civil rights in the post-Civil War South. *See Harrison*, 766 F.2d at 160, 161 ("We are concerned here with a statute enacted to fulfill a particular purpose and designed to meet particular conditions."). *Harrison* further stressed the importance of the decision in *Scott* to withhold judgment on whether § 1985(3) extended further than that central original purpose. *Id.* at 162.

In *Buschi v. Kirven*, the Fourth Circuit held, in relevant part, that employees who called themselves "whistleblowers" could not qualify as a class entitled to protection under

Case 1:23-cv-04033-LJL    Document 213    Filed 12/05/23    Page 33 of 44

Andreadakis v. Center for Disease Control & Prevention, Not Reported in Fed. Supp....

2022 WL 2674194

§ 1985(3), because they did not possess characteristics comparable to race, national origin or sex, nor were they in "unprotected circumstances." 775 F.2d 1240, 1258 (4th Cir. 1985). The court reasoned that, to meet the requirement of class-based discriminatory animus, the class must possess the " 'discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin, and sex.' " Id. at 1257 (quoting Bellamy v. Mason's Stores, Inc., 368 F. Supp. 1025, 1028 (E.D. Va. 1973)).

However, these decisions occurred before the passage of the Americans with Disabilities Act ("ADA") in 1990. In enacting the ADA, Congress found that:

> Individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society.

42 U.S.C. § 12101(a)(7). Thus, Congress elevated the status of disabled individuals in passing the ADA. Thus, although the Fourth Circuit has not applied a § 1985(3) claim to disabled individuals, and construes protected classes narrowly, it has not foreclosed that application since the passage of the ADA. Other courts have determined that the passage of the ADA renders individuals with a disability protected under § 1985(3). See, e.g., Lake v. Arnold, 112 F.3d 686, 687-88 (3d Cir. 1997) (pointing to the ADA as evidence that § 1985(3) protects those with a mental disability). Ultimately, the Court need not definitively determine whether § 1985(3) applies to individuals with disabilities. Assuming, arguendo, that § 1985(3) applies to individuals with a disability, Plaintiff's claim still fails for the reasons stated below.

## ii. Plaintiff Fails to State a Claim Under 1985(3).

The Airline Defendants further argue that Plaintiff fails to state a claim under § 1985(3). The Court agrees.

To prevail on a claim under § 1985(3), a plaintiff must prove:

(1) a conspiracy of two or more persons;

(2) who are motivated by a specific class-based, invidiously discriminatory animus to

(3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all,

(4) and which results in injury to the plaintiff as

(5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). Additionally, "the law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." Id.

**\*9** Claims under § 1985(3) rarely prevail. Davis v. Hudgins, 896 F. Supp. 561, 571 (E.D. Va. 1995) ("Because of the high threshold that a Plaintiff must meet to establish a prima facie case under section 1985, courts often grant motions of dismissal.") (citing Simmons, 47 F.3d at 1377 ("This Court, under that standard, has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy, such that the claim can withstand a summary judgment motion.")). Plaintiffs must allege the purported conspiracy with more than mere conclusions. Simmons, 47 F.3d at 1377 ("Indeed, we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.").

Here, Plaintiff has not alleged a conspiracy with the required concrete facts. Instead, he merely makes conclusory allegations regarding a conspiracy. Specifically, he alleges that the "Airline Defendants conspired to deprive disabled Americans, a protected class, of our civil rights by adopting policies in Summer 2020 that banned any person medically unable to wear a face mask from using the nation's air-transportation system." (Compl. ¶ 671.) He does not provide any details on how they conspired. Further, he alleges that he "expect[s] to prove through discovery that the Airline Defendants conspired — with each other, with other air carriers, within their own companies, and with STAT-MD — to ban disabled flyers because of a discriminatory motive." (Compl. ¶ 680.) In doing so, he merely parrots the requirements of a prima facie claim under § 1985(3). He further alleges that the Airline Defendants "are motivated by a class-based, invidiously discriminatory animus resulting in an unfounded, ridiculous fear that healthy, uninfected disabled

Case 1:23-cv-04033-LJL    Document 213    Filed 12/05/23    Page 34 of 44

Andreadakis v. Center for Disease Control & Prevention, Not Reported in Fed. Supp....

2022 WL 2674194

travelers who can't wear a face mask are somehow a grave danger." (Compl. ¶ 681.) Again, he offers no concrete facts to support these allegations. These allegations simply will not suffice to state a claim under § 1985(3). Accordingly, the Court will dismiss Counts 19 and 20.

### iii. Plaintiff Lacks a Private Right of Action Under the ACAA.

In Counts Twenty-Two through Thirty-Three, Plaintiff brings claims under the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705, alleging that the Airline Defendants discriminated against him on the basis of his disability. (Compl. ¶¶ 699-768.) The Airline Defendants move to dismiss these claims on the basis that no private cause of action exists under the ACAA. (Airline Defs.' Mem. at 10-11.) The Court agrees.

The ACAA provides that an air carrier:

> [m]ay not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities; (2) the individual has a record of such an impairment; (3) the individual is regarded as having such an impairment.

49 U.S.C. § 41705(a).

However, the ACAA does not expressly bestow the right to sue to enforce this right. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). When Congress does not create an explicit private right of action, courts may interpret the structure and language of the statute to determine if Congress nevertheless intended to imply a right of action. *Id.*

Although the Fourth Circuit has not directly addressed this question, other circuits have determined that the ACAA does not create a private right of action. *See Love v. Delta Air Lines*, 310 F.3d 1347, 1354 (11th Cir. 2022) ("Moreover, taken together, the text of the ACAA ... and the surrounding statutory and regulatory structure create an elaborate and comprehensive enforcement scheme that belies any congressional intent to create a private remedy."); *Lopez v. JetBlue Airways*, 662 F.3d 593, 597 (2d Cir. 2011) (concluding that "the text and structure of the ACAA manifests no congressional intent to create a private right of

action in a federal district court"); *Boswell v. Skywest Airlines, Inc.*, 61 F.3d 1263, 1270 (10th Cir. 2004) ("Congress' creation of a specific means of enforcing the statute indicates that it did not intend to allow an additional remedy — a private right of action — that it did not expressly mention at all."); *Segalman v. Southwest Airlines Co.*, 895 F.3d 1219, 1229 (9th Cir. 2018) ("In sum, the ACAA's legislative history is insufficient to overcome the strong suggestion that the statute's remedial scheme forecloses an implied private cause of action.").

**\*10** The Court finds the reasoning of these circuit courts persuasive. The ACAA does not provide a private right of action for Plaintiff to sue the Airline Defendants in this Court. Accordingly, the Court will dismiss his claims under the ACAA.

### iv. Plaintiff's Claims Under the Rehabilitation Act Fail.

Plaintiff also brings claims under the Rehabilitation Act in Counts Twenty-One, Twenty-Two and Twenty-Four through Thirty-Three. The Airline Defendants move to dismiss these claims, arguing that the Rehabilitation Act does not apply to them. (Airline Defs.' Mem. at 13.)

The Rehabilitation Act prohibits discrimination against disabled individuals with respect to any program or activity that receives federal financial assistance. 29 U.S.C. § 794(a). Courts have defined the term "federal financial assistance" with respect to the Rehabilitation Act "to mean the federal government's provision of a subsidy to an entity." *Shotz v. American Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005). The Supreme Court has held that the Rehabilitation Act generally does not apply to commercial airlines, because airlines did not receive federal financial assistance within the meaning of the statute. *U.S. Dep't of Trans. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 599 (1986). However, courts must still determine whether a particular defendant is subject to the statute. "Generally, to determine the applicability of the Rehabilitation Act, a court must determine whether the government intended to give the defendant a subsidy, as opposed to compensation." *Tavares v. United Airlines*, 2015 WL 5026197, at *7 (E.D. Va. Aug. 24, 2015).

Plaintiff alleges that the Rehabilitation Act applies to Defendant Airlines, because they "have accepted financial assistance during the COVID-19 pandemic, subjecting them to the Rehabilitation Act." (Compl. ¶ 689.) Defendants contend that they only received government funds pursuant

Case 1:23-cv-04033-LJL   Document 213   Filed 12/05/23   Page 35 of 44

Andreadakis v. Center for Disease Control & Prevention, Not Reported in Fed. Supp....

2022 WL 2674194

to the Payroll Support Program established under the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"). (Airline Defs.' Mem. at 13.) They could use this money "exclusively for the continuation of Wages, Salaries, and Benefits" to airline employees. (Airline Defs.' Mem. at 13.) Because the government restricted the way in which they could use the funds, rather than giving them discretion, the funds do not constitute federal financial assistance within the meaning of the Rehabilitation Act. (Airline Defs.' Mem. at 13.)

In *Schotz*, the Eleventh Circuit found that the Rehabilitation Act did not apply to airlines even though the government had provided them funds via the Stabilization Act in response to the September 11 attacks. 420 F.3d at 1337. The Eleventh Circuit determined that the Stabilization Act responded to the economic crises that the airline industry faced as a result of the terrorist attacks, thus compensating airlines for their losses rather than generally subsidizing them. *Id.* at 1336. The court found that Congress could not have intended to undermine the ACAA and the accompanying regulatory scheme when it responded to the economic crises. *Id.* at 1337.

The Court finds that this reasoning applies here. Plaintiff has not demonstrated that Congress intended the CARES Act to undermine the ACAA. Nor has he rebutted the argument that the CARES Act responded to the economic crises created by COVID-19, compensating the airlines for their losses rather than providing a general subsidy. Thus, on the record before it, the Court does not find that the CARES Act provided an exception to the Supreme Court's general rule that the Rehabilitation Act does not apply to the airlines. Accordingly, the Court will dismiss Plaintiff's claims under the Rehabilitation Act.

**v. Plaintiff's Claim Under the Virginia Human Rights Act Fails.**

 **\*11** In Count Thirty-Four, Plaintiff brings a claim under the Virginia Human Rights Act ("VHRA") against the Airline Defendants for the alleged disability discrimination. (Compl. ¶¶ 775-88.) The Airline Defendants move to dismiss this count, arguing that several federal laws preempt it. (Airline Defs.' Mem. at 16-18.)

The Airline Deregulation Act provides that:

[A] state, political subdivision of a State, or political authority of at least 2 states may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).

In *Morales v. Trans World Airlines*, the Supreme Court broadly interpreted the scope of the pre-emption provision. 504 U.S. 374 (1992). The Court held that the "relat[ed] to" phrase "express[es] a broad pre-emptive purpose," such that the statute preempts claims that have a "connection with, or reference to" an airline's prices, routes or services. *Id* at 378, 383. The statute preempts even general statutes when particularly applied to airlines. *Id* at 386. Thus, it preempted the application of general state consumer protection statutes to airline fare advertising. *Id.*

Here, Plaintiff seeks to apply a general statute — the VHRA — to the airlines. Specifically, he seeks to enforce his claims under the ACAA by way of the VHRA. (Compl. ¶ 778.) Essentially, he alleges that the airlines discriminated against him by refusing to let him board the plane without a mask, despite his disability preventing him from safely wearing a mask. However, the Fourth Circuit has determined that the Deregulation Act preempts claims related to boarding practices. *See Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998) ("Smith's tort claims are based in part upon Comair's refusal of permission to board. Undoubtedly, boarding procedures are a service rendered by an airline. Therefore, to the extent Smith's claims are based upon Comair's boarding practices, they clearly relate to an airline service and are preempted under the [Deregulation Act].") (cleaned up). Moreover, to the extent that Plaintiff could argue that his claim stems from the airlines' refusal to grant him an exemption to the Mask Mandate when selling him a ticket, this likewise would fall under the services provided by an airline. Accordingly, Plaintiff's claim under the VHRA — Count Thirty-Four — is preempted, and the Court will dismiss it.

**vi. Plaintiff's Breach of Contract Claim Fails.**

In Count 35, Plaintiff brings a breach of confract claim against the Airline Defendants, alleging that the Airline Defendants breached the contract of carriage when forcing Plaintiff to wear a mask when the parties did not agree to it

Case 1:23-cv-04033-LJL    Document 213    Filed 12/05/23    Page 36 of 44

Andreadakis v. Center for Disease Control & Prevention, Not Reported in Fed. Supp....

2022 WL 2674194

in the contract. (Compl. ¶¶ 789-804.) Additionally, Plaintiff claims that United's contract terms requiring face coverings lack legal enforceability. (Compl. ¶ 796.) Defendant argues that the Court must dismiss this Count, arguing that the Deregulation Act preempts the breach of contract claim. (Airline Defs.' Mem. at 18-19.)

The Supreme Court has recognized a narrow exception to the Deregulation Act's preemption for some breach of contract claims. In *American Airlines, Inc. v. Wolens*, the Court carved out an exception for certain contract claims against airlines for actions that seek to enforce the parties' "own, self-imposed undertakings," such as agreements with respect to a frequent flyer program. 513 U.S. 219, 228 (1995). However, the Court limited this exception to breach of contract actions confined to the terms of the contract, "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. "Thus, when a contract claim cannot be adjudicated without resort to outside sources of law, the claim is still preempted by the [Deregulation Act]." *Smith*, 134 F.3d at 257. The Fourth Circuit has held that preemption applies when a contract claim "can only be adjudicated by reference to law and policies external to the parties' bargain," or "directly implicates the airline's discretion and/or duty under federal law." *Id.* at 258.

**\*12**  Here, Plaintiff's breach of contract claim arises out of the Airline Defendants requiring him to wear a mask on the flight or obtain a medical exemption. Put differently, Plaintiff sues the Airlines for enforcing the Mask Mandate — federal law. Thus, Plaintiff's breach of contract claim "directly implicates the airlines' discretion and/or duty under federal law," *id*, and, therefore, the Deregulation Act preempts it. The Court will dismiss Count Thirty-Five.

### vii. Plaintiff's Other State Law Claims Fail.

In Counts Thirty-Six through Forty, Plaintiff alleges various other state law claims, including reckless endangerment, practicing medicine without a license, invasion of privacy, deceptive and misleading trade practices and fraudulent misrepresentation. (Compl. ¶¶ 805-51.) The Airline Defendants move to dismiss these claims as preempted by the Deregulation Act or as failing to state a claim. (Airline Defs.' Mem. at 19-22.)[3]

As discussed above, the Deregulation Act preempts state laws "related to a price, route, or service of an air carrier."

49 U.S.C. § 41713. The Fourth Circuit has recognized that "[s]uits stemming from outrageous conduct on the part of an airline toward a passenger will not be preempted under the [Deregulation Act] if the conduct too tenuously relates or is unnecessary to an airline's services." *Smith*, 134 F.3d at 259. The court gave the example that an airline holding a passenger without a safety or security justification would not give rise to preemption of that passenger's false imprisonment claim.

Here, all of Plaintiff's allegations arise from his claims that the Airline Defendants improperly required him to adhere to the Mask Mandate or submit proof of a required medical exemption. However, all of these relate to the Airlines' services. Additionally, the allegations in no way rise to the level of "outrageous conduct" that would allow them to escape preemption. Instead, the allegations show the Airline Defendants complying with law as set forth in the Mask Mandate. Accordingly, the Court will dismiss Counts Thirty-Six through Forty as preempted.

### viii. Plaintiff's Claim for Infringement of Right to Travel Fails.

In Count Forty-One, Plaintiff alleges that the Airline Defendants infringed on his constitutional right to travel. (Compl. ¶ 852-68.) The Airline Defendants move to dismiss this count, arguing that Plaintiff does not enjoy a constitutional right to travel by airplane. (Airline Defs.' Mem. at 22.) The Court agrees.

Individuals enjoy a constitutional right to travel. *Saenz v. Roe*, 526 U.S. 489, 498 (1999) ("[T]he constitutional right to travel from one State to another is firmly embedded in our jurisprudence."). However, courts have recognized that individuals do not enjoy a constitutional right to travel by the method of their choice. *See, e.g., Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) ("[T]ravelers do not have a constitutional right to the most convenient form of travel[, and] minor restrictions on travel simply do not amount to the denial of a fundamental right."); *Gilmore v. Gonzalez*, 435 F.3d 1125, 1137 (9th Cir. 2006) (noting that the plaintiff "does not possess the fundamental right to travel by airplane even though it is the most convenient mode of travel for him"); *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) ("Minor restrictions on travel simply do not amount to the denial of a fundamental right that can be upheld only if the Government has a compelling justification.").

**\*13** The Airline Defendants have not denied Plaintiff his fundamental right to travel. He may still travel by means other than aircraft. Further, he may travel by aircraft without a mask by obtaining an exemption. Or, he may travel by airplane with a mask. Thus, the Mask Mandate amounts to nothing more than a minor restriction on his travel, such that he cannot bring a claim for the denial of a constitutional right. Accordingly, the Court will dismiss Count Forty-One.

#### ix. Plaintiff's International Covenants Claims Fail.

In Counts Forty-Two and Forty-Three, Plaintiff brings claims for violations of international law. (Compl. ¶¶ 869-82.) Specifically, Plaintiffs claims that the Airline Defendants have violated the International Covenant on Civil & Political Rights ("ICCPR") in Count Forty-Two and the Convention on Civil Aviation in Count Forty-Three. The Airline Defendants move to dismiss these claims, arguing that Plaintiff lacks a cause of action to enforce these covenants. (Airline Defs.' Mem. at 23.) The Court agrees.

Generally, treaties do not carry the force of law that affords an individual a private right of action to enforce its terms. *Medellín v. Texas*, 552 U.S. 491, 505 (2008) ("In sum, while treaties may comprise international commitments, they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms."). More specifically, the Supreme Court has recognized that the ICCPR binds the United States as a matter of common law, but "the United States ratified the [ICCPR] on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004).

Plaintiff has not identified any reason why these two treaties confer a private cause of action that would allow him to prosecute these claims. Accordingly, the Court will dismiss Counts Forty-Two and Forty-Three. In sum, the Court will grant the Airline Defendants' Motion to Dismiss and will dismiss counts Nineteen through Forty-Three.[4]

#### C. Plaintiff's Claims Against the Federal Defendants Are Moot.

Plaintiff brings Counts One through Eighteen against the CDC and HHS, asking the Court to set aside the Mask Mandate and Testing Order and enjoin those agencies from enforcing the mandates. However, the Court lacks subject matter jurisdiction over those claims, because the orders do not remain in effect. Thus, Plaintiff cannot claim a continuing injury that the Court can redress, rendering his claims moot.

The Court has an independent duty to satisfy itself of its own subject matter jurisdiction even where the defendant does not directly challenge it. *Andrus v. Charleston Stone Products Co., Inc.*, 436 U.S. 604, 608 n.6 (1978); *see United States v. Urutyan*, 564 F.3d 679, 684 (4th Cir. 2009) ("Nevertheless, we are obliged to satisfy ourselves of subject-matter jurisdiction, even where the parties concede it."). Indeed, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." *Owens-Illinois v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999). Following the vacatur of the Mask Order, the Court ordered Plaintiff to brief the effect of the Vacatur Order on his claims, including which ones he intended to continue to litigate, and which ones had become moot. (ECF No. 87 at 14-15.) Plaintiff responded that he intended to press forward with all of his claims and that the Vacatur Order had not mooted any of them. (ECF No. 89.) The Court disagrees.

**\*14** Article III of the Constitution limits the Court's jurisdiction to cases and controversies. U.S. Const. art. III, § 2, cl. 1; *Eden, LLC v. Justice*, 36 F.4th 166, 169 (4th Cir. 2022). The mootness doctrine finds its root in the case-or-controversy limitation on federal judicial power, preventing a federal court from issuing advisory opinions on legal questions without a live controversy before it. *Eden*, 36 F.4th at 169. Thus, a "pending lawsuit is rendered moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021). Courts "may only decide cases that matter in the real world" at the time that they decide them. *Eden*, 36 F.4th at 170. Decisions have no "practical effect in the real world" when a plaintiff has already received the relief sought in the lawsuit. *Id* To that end, if "one of the elements essential to standing, like injury-in-fact, no longer obtains," then "a case is moot." *American Federation of Government Employees v. Office of Special Counsel*, 1 F.4th 180, 187 (4th Cir. 2021). In the context of challenging a government order no longer in effect, deciding the legality of the order would amount to issuing "an opinion advising what the law would be upon a hypothetical state of facts, in which the challenged orders had never been rescinded — which [courts] of course lack jurisdiction to provide." *Id.* (cleaned up).

Andreadakis v. Center for Disease Control & Prevention, Not Reported in Fed. Supp....
Case 1:23-cv-04033-LJL    Document 213    Filed 12/05/23    Page 38 of 44
2022 WL 2674194

Here, Plaintiff asks the Court to set aside two orders that the government no longer enforces and that no longer have any legal effect. TSA's Security Directives and Emergency Amendments, the enforcement mechanism of the Mask Order, expired on May 3, 2022. It has not been renewed. Additionally, on April 18, 2022, a federal district court vacated the Mask Order. *Health Freedom Defense Fund*, 2022 WL 1134138. Accordingly, effective April 18, 2022, the CDC considers the Mask Mandate "no longer in effect" and, as a result, "CDC will not enforce the Order."[5]

Likewise, effective June 12, 2022, the CDC rescinded the Testing Order. 87 Fed. Reg. 36129 (June 15, 2022). In rescinding the Testing Order, the CDC cited the "widespread uptake of effective COVID-19 vaccines," immunity bestowed by infection and vaccines and the availability of effective therapeutics. 87 Fed. Reg. at 36130. The CDC determined that these tools available to travelers could replace the testing requirement. *Id* Indeed, the CDC noted that the public did not have these tools available to it in January 2021 when it concluded that the Testing Order constituted a reasonable and necessary measure to help mitigate the spread of COVID-19. *Id.* at 362130-31.

Therefore, because neither order remains in effect, Plaintiff's claims to set aside the Orders do not present a live controversy. Plaintiff claims that the Orders injure him by forcing him to wear a mask while flying or risk a ban from using public airspace. (ECF No. 21 at 26.) Without continued enforcement of the complained-of Orders, neither of these harms can materialize. Thus, Plaintiff can no longer claim an injury-in-fact. Likewise, his claim to standing lacks redressability, as the Court cannot redress Plaintiff's claimed injury. Neither Order remains subject to enforcement, so the Court enjoining their enforcement and setting them aside would provide no additional relief to Plaintiff. As such, his claims against the Federal Defendants are moot. Absent an exception to the mootness doctrine, discussed below, the Court must dismiss his claims.

In arguing that the government will reinstate the Orders (ECF No. 89), Plaintiff appears to invoke the "voluntary cessation" exception to the mootness doctrine. "Pursuant to the voluntary cessation exception, a civil action does not become moot when a defendant voluntarily ceases its allegedly improper behavior, if there is a reasonable chance that the behavior will resume." *Lighthouse Fellowship Church*, 20 F.4th at 162. The exception seeks to eliminate the litigation tactic of "evad[ing] judicial review by temporarily

altering questionable behavior." *Eden, LLC*, 36 F.4th at 170. As in the case here, "in circumstances where a challenged governmental regulation or legislation has expired, the inapplicability of the voluntary cessation exception has been established in several significant situations where mootness has been found." *Lighthouse Fellowship Church*, 20 F.4th at 163 (first citing *Trump v. Hawaii*, 138 S. Ct. 377 (2017) (Mem.); then citing *Kremens v. Bartley*, 431 U.S. 119 (1977); and then citing *Burke v. Barnes*, 479 U.S. 361 (1987).).

**\*15** Here, the Court finds that the voluntary cessation exception does not apply. First, the Court questions whether the exception could even apply to the Mask Order, as Defendants did not *voluntarily* rescind the order. Rather, a federal district court vacated the order and then the gove^ment allowed it to expire. However, even if the exception could apply in this situation, the Court does not find it reasonable to expect that enforcement will recur. The return of enforcement of the Mask Order would require the Eleventh Circuit to vacate the district court's opinion in *Health Freedom Defense Fund*. Then, the TSA would need to renew the enforcement order, which expired on May 3, 2022. Especially in light of the changed circumstances that the CDC cited when lifting the Testing Order, the Court finds this too speculative to invoke the voluntary cessation doctrine.

Additionally, the cessation of enforcement can in no way be attributed to an effort by the government to moot this litigation. The lack of an evasive litigation tactic resembles the defendant's actions in *American Federation of Government Employees v. Office of Special Counsel*, 1 F.4th 180 (4th Cir. 2021), where the plaintiffs challenged an advisory opinion of the Office of Special Counsel ("OSC") that related to the 2020 election. After the district court ruled, but before the Fourth Circuit ruled, the OSC withdrew its opinion, because the 2020 election was over. *Id.* at 284. The Fourth Circuit rejected the application of the "voluntary cessation" doctrine, because "there [was] no whiff of any of the opportunism, on the part of the defendant, that typically supports invocations of mootness exceptions where voluntary cessation of the challenged conduct is at issue." *Id* at 188. The OSC had not withdrawn its opinion "with the aim of avoiding judgment in court" and, therefore, the court dismissed the appeal as moot. *Id* at 188. Likewise, here, Defendants did not rescind or stop enforcing the Orders with the aim of avoiding judgment in this Court, and the Court sees no traces of opportunism in their decisions.

Finding Plaintiff's claims moot comports with how other courts have treated challenges to expired COVID-19 restrictions. For example, in *Lighthouse Fellowship Church*, the Fourth Circuit held that the plaintiff's challenges to Virginia's COVID-19 related restrictions were moot, because the restrictions had ended between the time the district court had ruled and when the Fourth Circuit issued its ruling. 20 F.4th at 161, 166 (4th Cir. 2021.) In finding it unreasonable that Governor Northam would reinstate the expired restrictions, the court relied in large part that "the current circumstances [were] materially different from those present at the outset of the pandemic." *Id.* at 164. The court cited greater knowledge of COVID-19 and how "vaccines and other measures to combat the virus have led to a significant change in the relevant circumstances." *Id.* Thus, the court found it "entirely speculative to assert that Governor Northam" would reinstate the restrictions. *Id.* Thus, the "voluntary cessation" exception to mootness did not apply, and the court dismissed the claims as moot.

Likewise, in *Eden, LLC*, the Fourth Circuit held that plaintiff's challenges to West Virginia's terminated COVID-19 safety measures became moot on appeal. 36 F.4th at 172. The court cited cases from numerous other circuits also finding challenges to terminated COVID-19 related restrictions moot. *Id.* at 171. Yet again, the court cited the change in circumstances, including "vaccines and other measures to combat the virus," to find the "likelihood of recurrence still more remote." *Id.* Accordingly, the court dismissed the plaintiff's claims as moot. *Id.*

Here, the Court finds the reasoning in these recent Fourth Circuit cases compelling. Circumstances have changed, as cited by the CDC in rescinding the Testing Order, including the availability of vaccines and other safety measures employed to combat the virus. Thus, the Court finds it unreasonable to expect that enforcement of these terminated Orders will recur. Therefore, the Court will dismiss Plaintiff's claims against the Federal Defendants as moot.

## IV. CONCLUSION

**\*16** For the reasons stated above, the Court will DISMISS WITHOUT PREJUDICE Counts One through Eighteen for lack of subject matter jurisdiction, because the Court finds these claims moot. Additionally, the Court will GRANT the Airline Defendants' Motion to Dismiss (ECF No. 78), and DISMISS WITH PREJUDICE Plaintiff's claims against the Airlines in Counts Nineteen through Forty-Three for failure to state a claim upon which relief can be granted. Finally, the Court will also GRANT Defendant STAT-MD's Motion to Dismiss (ECF No. 80) and DISMISS WITHOUT PREJUDICE Counts Nineteen and Forty-Four for lack of personal jurisdiction.

An appropriate Order shall issue.

## All Citations

Not Reported in Fed. Supp., 2022 WL 2674194

---

Footnotes

1    Federal Transit Administration, *Federal Mask Requirement for Transit*, https://www.transit.dot.gov/TransitMaskUp (last visited July 5, 2022).

2    Because the personal jurisdiction question presents a threshold inquiry that the Court must first resolve, the Court need not address the arguments raised by STAT-MD in support of its Rule 12(b)(6) motion. However, the Court finds that these arguments have merit. The Court notes that it would also dismiss Plaintiff's claims against STAT-MD for failure to state a claim for the reasons that it dismisses them against the Airline Defendants and for the reasons set forth in STAT-MD's Memorandum, especially in light of Plaintiff's failure to rebut the arguments.

3    Defendants correctly point out that no civil cause of action exists for reckless endangerment (Count Thirty-Six). Even if such a cause of action did exist, it would be preempted for the reasons stated herein. Likewise, even if Plaintiff had alleged facts in Count Thirty-Seven to show that the Airline Defendants practiced medicine without a license (he has not), then such a claim would be preempted.

4    The Airline Defendants argue that the Court lacks personal jurisdiction over Plaintiff's claims against them, because he has not alleged that he bought a ticket to use their services. (Airline Defs.' Mem. at 24.) However, Plaintiff has alleged

**Andreadakis v. Center for Disease Control & Prevention, Not Reported in Fed. Supp....**

2022 WL 2674194

that he attempted to fly or was denied the ability to fly on each of the airlines. (Compl. ¶¶ 8, 10, 18, 23-24.) At this stage, construing these allegations in Plaintiff's favor, the Court finds these allegations sufficient to confer personal jurisdiction.

5    https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid 19.html

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

751 Fed.Appx. 16
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

Janet FAWEMIMO, Plaintiff-Appellant,

v.

AMERICAN AIRLINES,

INC., Defendant-Appellee.

17-589
|
September 19, 2018

**Synopsis**
**Background:** Airline passenger brought negligence action
against airline after she allegedly hit her head on television
monitor above her seat while boarding aircraft. The United
States District Court for the Southern District of New York, P.
Kevin Castel, J., 2017 WL 398387, granted airline's motion
for summary judgment. Passenger appealed.

**Holdings:** The Court of Appeals held that:

[1] passenger's state law negligence claim was expressly
preempted by the Airline Deregulation Act (ADA), and

[2] passenger's negligence claim was impliedly preempted by
federal law.

Affirmed.

West Headnotes (3)

---

**[1]  Carriers 🔑 Rights of action and defenses**
**Federal Preemption 🔑 Aviation and airports**

State law negligence claim brought by airline
passenger, who alleged that she hit her head on
television monitor above her seat while boarding
aircraft, related to an airline "service" within
meaning of Airline Deregulation Act's (ADA)
preemption provision and, thus, was expressly
preempted by the ADA; passenger challenged
size and positioning of monitors used to provide
passengers with safety instructions and in-flight
entertainment, as well as size, arrangement, and
spacing of aircraft seats, and airline's provision
of monitors and seats were matters that Congress
intended to regulate through Federal Aviation
Act (FAA) but otherwise leave unregulated. 49
U.S.C.A. § 41713(b)(1).

6 Cases that cite this headnote

---

**[2]  Carriers 🔑 Rights of action and defenses**
**Federal Preemption 🔑 Aviation and airports**

State law negligence claim brought by airline
passenger, who alleged that she hit her head on
television monitor above her seat while boarding
aircraft, was impliedly preempted by federal
law; Congress intended the Federal Aviation Act
(FAA), as amended by the Airline Deregulation
Act (ADA), to occupy the field of air safety,
and given that airline's installation of monitors
and seats was approved by federal agencies and
passenger challenged the overall design of the
monitors and seats, passenger's claim depended
on a common law rule for monitors and seats that
would conflict with requirements established by
federal government. 49 U.S.C.A. § 41713(b).

8 Cases that cite this headnote

---

**[3]  Federal Courts 🔑 In general; necessity**

To extent that airline passenger, who alleged that
she hit her head on television monitor above her
seat while boarding aircraft, alleged that airline
negligently failed to meet Federal Aviation

Act (FAA) regulations and that her specific monitor and seat were non-compliant with those regulations, that claim was not properly before Court of Appeals; passenger did not raise claim in district court prior to entry of judgment, as although passenger raised claim in untimely opposition to summary judgment, which district court construed as motion for reconsideration, she did not separately appeal from denial of reconsideration. 49 U.S.C.A. § 40101 et seq.

2 Cases that cite this headnote

*17 Appeal from a judgment of the United States District Court for the Southern District of New York (Castel, J.).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Janet Fawemimo, pro se, New York, NY.

FOR DEFENDANT-APPELLEE: Brian P. Morrissey, Michael J. Crowley, Connell Foley LLP, New York, NY.

PRESENT: JON O. NEWMAN, DENNIS JACOBS, ROSEMARY S. POOLER, Circuit Judges,

## SUMMARY ORDER

Janet Fawemimo, pro se, appeals from the district court's grant of summary judgment in her common law tort action against American Airlines, Inc. ("American"). Fawemimo alleged that she hit her head on a television monitor above her seat while boarding an American flight and that her injuries were the result of an unsafe aircraft design. American moved for summary judgment, arguing that Fawemimo's suit was preempted by the Federal Aviation Act ("FAA"), 49 U.S.C. § 40101 et seq., as amended by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b), because the ADA expressly preempts state laws that relate to the price, route, or *18 service of an air carrier and because Congress intended the FAA to occupy the field of air safety. Fawemimo did not file an opposition (despite receiving three extensions of time to do so), and the district court granted summary judgment

for American on the ground that Fawemimo's claims were expressly preempted by the ADA.[1] We review the grant of summary judgment de novo. See Sotomayor v. City of New York, 713 F.3d 163, 164 (2d Cir. 2013). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

The Supremacy Clause of the U.S. Constitution, U.S. Const. art. VI, cl. 2, "invalidates state laws that interfere with, or are contrary to, federal law." Air Transp. Ass'n of Am., Inc. v. Cuomo, 520 F.3d 218, 220 (2d Cir. 2008) (quoting Hillsborough Cty. v. Automated Med. Labs., Inc., 471 U.S. 707, 712, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) ). Preemption may be express when a federal statute "expressly directs that state law be ousted," or implied when "Congress intended the Federal Government to occupy a field extensively, or when state law actually conflicts with federal law." Id. (internal quotation marks and citations omitted).

The ADA was enacted in 1978 after Congress determined that "maximum reliance on competitive market forces would best further efficiency, innovation, and low prices as well as variety [and] quality ... of air transportation." Id. at 222 (internal quotation marks omitted) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ). Preemption is express:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).

In Morales, the Supreme Court held that § 41713(b)(1) may apply to a "state enforcement action[ ] having a connection ... to [an] airline ... service[ ]" so long as the connection is not "too tenuous, remote, or peripheral." 504 U.S. at 384, 390, 112 S.Ct. 2031 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ). More recently, the Court clarified that § 41713(b)(1) applies with equal force to suits brought under state common law, assuming the necessary nexus to an airline service. See Northwest, Inc. v. Ginsberg, 572 U.S. 273, 284, 134 S.Ct. 1422, 188 L.Ed.2d 538 (2014) (addressing breach of implied covenant of good faith and fair dealing in relation to frequent flyer program). "What is important ... is the effect of [the] state law, regulation, or provision, not its form, and the ADA's

deregulatory aim can be undermined just as surely by a state common-law rule as it can be by a state statute or regulation." *Id.* at 283, 134 S.Ct. 1422.

**[1]** Fawemimo's particular common law claim indeed relates to an airline "service" as that term is used in § 41713(b)(1). **\*19** As we recognized in *Air Transport Association of America*, "[a] majority of the circuits to have construed 'service' have held that the term ... encompasses matters such as boarding procedures, baggage handling, and food and drink-matters incidental to and distinct from the actual transportation of passengers." *Air Transp. Ass'n, 520 F.3d at 223* (collecting cases). And we expressly held that the definition includes an airline's provision of "food, water, electricity, and restrooms." *Id.* (holding that a state law requiring airlines to provide amenities during long flight delays was preempted). Fawemimo's complaint challenges the size and positioning of monitors used to provide passengers with safety instructions and in-flight entertainment, as well as the size, arrangement, and spacing of aircraft seats. Like an airline's provision of food, water, or electricity, its provision of monitors and seats are matters that Congress intended to regulate through the FAA, but otherwise leave unregulated in order to permit market forces to promote efficacy, variety, and quality. *See id.* at 222–24. Accordingly, Fawemimo's action is preempted under § 41713(b)(1).

Fawemimo's reliance on *Hodges v. Delta Airlines, Inc., 44 F.3d 334 (5th Cir. 1995)*, is unavailing. In *Hodges*, the Fifth Circuit held that § 41713(b)(1) does not preempt personal injury tort actions because the FAA requires air carriers to obtain insurance for personal injuries or property damage resulting from the operation or maintenance of an aircraft. *See Hodges, 44 F.3d at 336, 338; see also 49 U.S.C. § 41112*. However, the court resolved the tension between the FAA's insurance requirement and its preemption provision by distinguishing claims that challenge airline policies--and are thus related to airline service--from those challenging distinct negligent acts related to the operation of an aircraft. *Hodges, 44 F.3d at 339* (holding that a challenge to an airline's policy permitting carry-on baggage relates to airline service, while a claim based on a flight attendant's failure to properly monitor compliance with overhead rack regulations relates to the safe operation of an aircraft). Thus, under *Hodges*, § 41713(b)(1) preempts claims that challenge airline policies and could potentially create inconsistent standards between states, while leaving room for personal injury actions that allege an airline was negligent in carrying out its policy. *See id.; see also Air Transp. Ass'n, 520 F.3d at 225* (acknowledging that "the FAA

does not preempt all state law tort actions"). Fawemimo's complaint argued that the design of the aircraft's monitors and seats was dangerous. These claims pertain to an airline policy, rather than the negligent installation or maintenance of her specific monitor or seat, and they are therefore preempted under *Hodges*.

**[2]** Moreover, Fawemimo's claims are also barred by implied preemption. Congress intended the FAA, as amended by the ADA, to occupy the field of air safety. *Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n, 634 F.3d 206, 210 (2d Cir. 2011)*. State laws that conflict with the FAA or sufficiently interfere with federal regulation of air safety are thus preempted. *Id.* at 210–211. American produced evidence that its installation of monitors and seats was approved by federal agencies. Because the complaint challenges the overall design of the monitors and seats, it depends on a common law rule for monitors and seats that would conflict with requirements established by the federal government. This result would be contrary to the FAA's goal of centralizing, in the federal government, the regulation of air safety. *See Air Transp. Ass'n., 520 F.3d at 225* (applying implied preemption to prevent state from enacting varying prohibitions on food and drink that would "unravel[ ] the centralized federal framework for air travel"). **\*20** Accordingly, Fawemimo's claim is incompatible with the federal government's authority to regulate the field of air safety and is preempted.

**[3]** To the extent that Fawemimo argues that American negligently failed to meet FAA regulations and that her specific monitor and seat were non-compliant with those regulations, the claim is not properly before this Court because Fawemimo did not raise it in the district court prior to entry of judgment. *See Harrison v. Republic of Sudan, 838 F.3d 86, 96 (2d Cir. 2016)*. While she raised this claim in an untimely opposition to summary judgment, which the district court construed as a motion for reconsideration, she did not separately appeal from the denial of reconsideration. *See Sorensen, 413 F.3d at 295–96*.

We have considered Fawemimo's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the District Court.

### All Citations

751 Fed.Appx. 16

Footnotes

1    After judgment was entered, Fawemimo filed a motion styled as an opposition to American's motion for summary
     judgment. The district court construed that filing as a motion for reconsideration and denied it. Despite having timely
     appealed the court's original preemption ruling, Fawemimo did not appeal the denial of reconsideration. Accordingly,
     Fawemimo's challenge to the preemption ruling is properly before this Court, but the issues raised for the first time in
     Fawemimo's motion for reconsideration are not. *See Sorensen v. City of New York*, 413 F.3d 292, 295–96 (2d Cir. 2005).

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S.
Government Works.