UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
  AARON ABADI,                                                      :

                                              Case No. 1:23-cv-04033-LJL

                            Plaintiff,                  :

                  - against -                         :

AMERICAN AIRLINES GROUP INC., et al,     :

                        Defendants.               :

----------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>JOINT MOTION TO DISMISS BY DEFENDANTS</u>**

**CONCESIONARIA VUELA COMPAÑÍA DE AVIACIÓN, S.A.P.I. DE C.V.
ROYAL AIR MAROC
AEROVÍAS DE MÉXICO S.A. DE C.V.
TRANSPORTES AÉREOS PORTUGUESES, S.A.
SPIRIT AIRLINES, INC.
AVIANCA S.A.
SINGAPORE AIRLINES
LATAM AIRLINES GROUP S.A.
IBERIA LÍNEAS AÉREAS DE ESPAÑA, S.A. OPERADORA, SOCIEDAD
UNIPERSONAL
LOT POLISH AIRLINES, SA
BRITISH AIRWAYS P.L.C.,
AND
MATTHEW ROBERTS**

1

**PRELIMINARY STATEMENT**

Defendants respectfully submit this Reply Memorandum of Law in further support of their Joint Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Plaintiff's Response in Opposition [DE 194] fails to articulate a plausible claim for relief and adds no new material allegations to the Complaint. Instead, it largely consists of restated factual and legal assertions from the Complaint and many of the same Exhibits. *See, e.g.*, Opp. at 27 ("Plaintiff elaborated in the complaint, carefully addressing all the arguments that Defendants were going to present with respect to [42 U.S.C. §§ 1983, 1985, and 1986]"); *id*. at 28 (under the heading "ACAA Private Right of Action," "This was addressed thoroughly in the Complaint."); *id*. at 30 (under the heading "ACAA and ADA Preemption," "Preemption was also addressed in the Complaint and below."); *id*. at 31 ("The [Rehabilitation Act] was also argued thoroughly [in the Complaint]"). This Reply addresses only the handful of new substantive arguments raised in Plaintiff's Opposition, none of which provides a basis on which his case can proceed.[1]

---

[1] Plaintiff argues in the Opposition that he is not a "serial litigant." To clarify, the C&F-represented Defendants raise the issue of Plaintiff's prior litigation history solely as it pertains to the degree of leniency with which the Court should construe the vague and conclusory allegations in his Complaint. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[W]hile a *pro se* litigant should ordinarily be afforded a substantial degree of solicitude, the exact degree thereof will depend upon a variety of factors, including, but not necessarily limited to, the specific procedural context and relevant characteristics of the particular litigant."). Plaintiff acknowledges that he has filed many COVID-related lawsuits raising the same or similar claims to those he seeks to litigate here. *See* Opp. at 21-22. The Complaint and Opposition include arguments about legal issues like preemption and implied private rights of action with citations to relevant case law. *See* Opp. at 24-25. Plaintiff's competence as a litigant therefore appears to be somewhere between that of an average layperson and a lawyer. Ultimately, the Complaint should be dismissed regardless of the degree of solicitude afforded.

## REPLY TO PLAINTIFF'S ARGUMENT

### A.  THE OPPOSITION DOES NOT ALLEGE ANY RELEVANT NEW FACTS.

Plaintiff's Opposition restates a brief narrative of the facts underlying his claims against each of the C&F-represented Defendants.  *See* Opp. at 3-19.  Each reflects the same basic elements: Plaintiff sent each airline a copy of the same doctor's note briefly describing his disability and stating that he could not wear a mask.  In all cases but one (British Airways), he did not purchase a ticket or provide a proposed itinerary.  Each airline then made efforts to comply with its obligations under the Federal Mask Mandate and Air Carrier Access Act (ACAA) regulations, as articulated by the DOT's February 5, 2021 Notice of Enforcement Policy.  *See* Defendants' Memorandum of Law in Support of the Motion to Dismiss [DE 180] at 9-10 (citing these authorities). Thus, each airline replied to Plaintiff explaining what documents and information it needed to make an "individualized assessment" of his ability to travel safely with a mask, as required under the ACAA.[2]  Plaintiff uniformly refused to participate in any process other than emailing his original doctor's note, which he incorrectly believed was sufficient to establish his right to travel maskless.  Plaintiff's Opposition confirms this basic fact pattern with respect to every C&F-represented Defendant and adds no new material allegations beyond the Complaint.

---

[2] Pursuant to the CDC Mask Mandate, airlines were to treat all passengers (including passengers with disabilities) as "presumptive carriers" of COVID-19.  *See* DOT Enforcement Notice at 5. Applying this presumption, carriers were required to conduct an "individualized assessment" of the risk presented by each disabled passenger's mask exemption request, which the DOT indicated could include requiring medical certificates.  *See id*. at 5 n.28; *see also* 14 C.F.R. § 382.28(c) (carriers "may also require a medical certificate for a passenger if he or she has a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight"). A misunderstanding of this basic premise seems to underlie most of Plaintiff's claims in this lawsuit, which stem from his belief that it was "illegal" for carriers to request a medical certificate from him. *See, e.g.*, Opp. at 4, 10, 12.

3

The Opposition, like the Complaint, expresses dissatisfaction with the way the airlines implemented their exemption request procedures, claiming airline staff either took too long to respond to Plaintiff or set overly burdensome requirements. *See, e.g.*, Opp. at 5 (alleging Aeroméxico unduly delayed responses to his exemption request); *id*. at 6 (same for Avianca); *id*. at 14 (same for Royal Air Maroc); *id*. at 18 (same for TAP Portugal); *id*. at 19 (same for Volaris); *id*. at 10 (alleging Iberia's medical certificate request was overly burdensome); *id*. at 11-12 (same for LATAM); *id*. at 15-16 (same for Spirit).[3] Plaintiff has already pursued his remedies under the ACAA by filing DOT complaints against many of the C&F Defendants. *See, e.g.,* Opp. at 7, 11, 13, 15, 19. As discussed in the C&F-represented Defendants' Memorandum of Law, there is no additional private right for him to enforce those claims in this Court. *See Lopez v. JetBlue Airways*, 662 F.3d 593, 597 (2d Cir. 2011). The Opposition raises no new argument that a private right of action exists.

### B. MATTHEW ROBERTS'S DECEMBER 2021 EMAIL TO PLAINTIFF DID NOT CREATE PERSONAL JURISDICTION.

Plaintiff's Opposition seeks to establish personal jurisdiction against British Airways ("BA") employee Matthew Roberts by pointing to an email Mr. Roberts sent him in December 2022 regarding BA's mask exemption policy. *See* Opp. at 25-27. In the email exchange (which was annexed to and

---

[3] By way of clarification with respect to Plaintiff's correspondence with Avianca, the Memorandum of Law suggested that the date of October 3, 2022 on Avianca's response to Plaintiff's exemption request was an "apparent typo." That inference was based on Plaintiff's Complaint, which alleged the letter was received "about a month" after his September 1, 2021 request later specifies the date as "on or about October 2, 2021." *See* Complaint, [DE 3] ¶¶ 236, 238. With his Opposition, Plaintiff now provides a covering email that seems to show Avianca's response was sent on October 3, 2022. Regardless of the response date, Plaintiff agrees that his claim arising from Avianca's processing of his exemption request is governed by the ACAA. *See* Opp. at 7 ("If they wanted a medical certificate, that is against ACAA law[.]"). He therefore has no private right of action arising from the delay. Moreover, it is clear Plaintiff never intended to comply with Avianca's procedures regardless of when its response was sent, because he believed the Mask Mandate and all of the Airline Defendants' efforts to comply with it were *prima facie* illegal.

already discussed in the Complaint), Plaintiff inquired whether "anything had changed" in BA's mask exemption policy since their previous communication. *See* Opp. at 26 (citing Cmplt., Ex. 33 [DE 3-38]). Plaintiff also inquired whether Plaintiff "can now fly either from JFK, EWR, BWI, or Dulles." *Id*. Mr. Roberts replied, "I regret to advise nothing has changed since February regarding the rules and regulations on mask wearing in the airports and on-board. The same criteria applies as last time." *See* Cmplt., Ex. 33 [DE 3-38] at 1. Plaintiff argues that because Mr. Roberts was replying to an inquiry that mentioned airports in four different states, he discriminated against Plaintiff in all four states simultaneously and is therefore subject to personal jurisdiction (presumably in every state Plaintiff listed in his email). This argument is meritless.

Plaintiff asserts both general and specific personal jurisdiction over Mr. Roberts arising from the December 2021 email. *See* Opp. at 27. The Complaint and Opposition fail to raise factual allegations that could plausibly support either. First, Mr. Roberts cannot be subject to general jurisdiction in New York unless the claim arises from business he was conducting here individually, rather than as an employee for a corporation. *See Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 WL 1234042, at *6 (S.D.N.Y. Mar. 31, 2017) ("[A]n individual acting on a corporation's behalf is not subject to general personal jurisdiction under [C.P.L.R.] Section 301."); *Rounds v. Rea*, 947 F. Supp. 78, 85 (W.D.N.Y. 1996) (citing *Laufer v. Ostrow,* 55 N.Y.2d 305 (N.Y. 1982)). Plaintiff does not argue Mr. Roberts was emailing him about BA policy as anything other than a BA employee.

Second, Mr. Roberts cannot be subject to specific jurisdiction on the basis of one email exchange in which Plaintiff made a general reference to potential travel itineraries in four different states. Mr. Roberts did not purposefully direct activity into New York by replying to a general query about BA's nationwide mask policy with the most general answer possible. *See Best Van*

5

*Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) ("To determine the existence of jurisdiction under section 302(a)(1) . . . [c]ourts look to the totality of the defendant's activities within the forum . . . to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes 'purposeful activity'" in New York) (citation omitted). As the "totality" of Mr. Roberts's activities in New York consists of a single email to Plaintiff in which Mr. Roberts simply confirms BA's nationwide mask policy without reference to any specific transaction, Plaintiff cannot establish personal jurisdiction.[4]

### C. PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY FEDERAL LAW.

Plaintiff argues that "preemption is only a problem when there is a conflict" between federal and state law. *See* Opp. at 31, 32. This is incorrect. The Supremacy Clause of the Constitution "invalidates state laws that interfere with, or are contrary to, federal law." *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008) (quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)). Preemption therefore occurs when federal law: 1) expressly ousts state law (express preemption); 2) exclusively occupies the field state law seeks to regulate (field preemption); or 3) actually conflicts with state law (conflict preemption). *See id*. (citing cases). The Motion to Dismiss raises all three types of preemption: express preemption under the Airline Deregulation Act and Public Health Service Act; field preemption under the ACAA; and conflict preemption under the Federal Mask Mandate. *See* [DE 180] at 22-25.

Briefly summarized: insofar as all of Plaintiff's state law claims "relate to" airline "services" (namely, boarding requirements), they are expressly preempted by the Airline

---

[4] In light of Plaintiff's threat to re-file the Complaint against Mr. Roberts in his home state if the Complaint is dismissed as against him for lack of personal jurisdiction, *see* Opp. at 27, Mr. Roberts hereby clarifies that his motion under Rule 12(b)(2) is brought only in the alternative to his motion under 12(b)(6), with which he joins the other C&F-represented Defendants.

Deregulation Act. *See* 49 U.S.C. § 41713(b)(1).  Insofar as all of Plaintiff's state law claims would "conflict with an exercise of federal authority" under the Public Health Service Act (i.e., the CDC's Federal Mask Mandate), they are also expressly preempted under that law.  *See* 42 U.S.C. § 264(e). Insofar as the state laws Plaintiff invokes would have prevented or frustrated the enforcement of the Mask Mandate's requirement for air carriers to impose mask-wearing obligations subject to limited disability-based exemptions, they also directly conflict with the Mandate.  *See* 86 Fed. Reg. at 8026.  Finally, insofar as Plaintiff's state law claims would impose obligations on the Airline Defendants regarding their assessment of his request for accommodation as a disabled passenger presumed to carry a dangerous communicable disease, they interfere in a field exclusively occupied by the ACAA and are impliedly preempted.  *See, e.g.*, 14 C.F.R. 382.23(c).

      Plaintiff's Opposition completely fails to address Defendants' arguments regarding either express preemption (he mentions but does not substantively discuss the Airline Deregulation Act and never mentions the Public Health Service Act) or ACAA field preemption.  Plaintiff's argument regarding the lack of conflict preemption rests on the premise that the Federal Mask Mandate was not federal law.  *See* Opp. at 32 (The "mandate" is not legally binding and is not allowed to conflict with federal ACAA laws."); *id*. at 39 ("[Defendants] give this 'mandate' the value of federal law.  There is no such evidence presented that a letter from DOT or TSA becomes federal law.").

      Plaintiff disregards the pertinent law.  The Federal Mask Mandate was issued by the CDC (with a concurrent order by the Transportation Security Administration) pursuant to an Executive Order of the President and authorized by the Public Health Service Act.  *See* 86 Fed. Reg. at 8026; *id*. at 8030 (providing that the Mandate "shall be enforced by the Transportation Security Administration" as well as other federal, state, and local authorities).  Indeed, the issuance and enforcement of the Mandate is the basis of Plaintiff's claims against the government defendants.  *See*

Cmplt. [DE 3], Counts 1 through 6. Even if the Court were to declare the Mandate illegal now, it could not go back in time and nullify the Mandate's preemptive effect on other laws, or the Airline Defendants' obligations to comply with it, at the time Plaintiff claims he sought exemptions.

Accordingly, for the reasons stated in the Motion to Dismiss, Plaintiff's state law claims are preempted.

### D. THE AIRLINE DEFENDANTS' GENERAL STATEMENTS OF INTENT TO ACCOMMODATE DISABLED PASSENGERS DO NOT GIVE RISE TO A CLAIM FOR PROMISSORY ESTOPPEL.

Plaintiff's Opposition elaborates his claim for promissory estoppel by citing specific statements by each of the Airline Defendants that he purports represent breached "promises." *See* Opp. at 35-38. Each of the statements he cites is a general expression of intent, published on the Airline Defendant's website, to make an effort to accommodate passengers with disabilities (e.g., "Your well-being is our priority," "We work to facilitate accessible air transportation," etc.). As Plaintiff writes, "[t]here are probably dozens of places on their websites and in their advertisements where [Defendants] promise to be nice to the disabled." Opp. at 35.

To state a claim for promissory estoppel, Plaintiff must establish "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance." *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.*, 804 F.2d 787, 793 (2d Cir. 1986) (citing Restatement (Second) of Contracts § 90 (1981)). The Complaint, as supplemented by the Opposition, establishes none of these elements. The general statements of intent to provide accessible services to passengers with disabilities do not unambiguously commit any Airline Defendant to take any specific action for Plaintiff's benefit. *See Esquire*, 804 F.2d 793 (an actionable promise must be "specific, clear and unambiguous"). Moreover, Plaintiff has not alleged that he relied on any of

8

these statements to his detriment – to the contrary, he never bought a ticket with any Airline Defendant other than BA (addressed below) – beyond simply sending email inquiries with the apparent belief that a Defendant would "be nice to him" by granting him an exemption to the Mask Mandate on his own terms. His Complaint provides detailed accounts of each Airline Defendant's efforts to accommodate his disability within the bounds of the Mask Mandate and ACAA, including communicating mask exemption policies to him. In short, Plaintiff has not plausibly identified any broken "promise" that the Court could enforce.

### E. BRITISH AIRWAYS' CONTRACT OF CARRIAGE DID NOT ENTITLE PLAINTIFF TO TRAVEL WITHOUT A MASK.

Plaintiff alleges "multiple breaches" of contract by BA, but only cites one clause of the contract of carriage. *See* Opp. at 42. The clause states, "if you are a passenger with a disability we will carry you where arrangements have been made to provide for your special needs." On its face, the clause applies only "where arrangements have been made" to provide for a passenger's "special needs," and Plaintiff does not allege any such "arrangements" were made in his case. Indeed, it is Plaintiff's refusal to make such arrangements – e.g., provision of an adequate medical certificate – that necessitated BA's refusal to board him. Thus, Plaintiff has not alleged that BA breached the clause he relies on. Insofar as he argues the first part of the sentence, "if you are a passenger with a disability we will carry you," taken in isolation is a categorical undertaking to carry all passengers with disabilities under all circumstances, his reading is facially unreasonable and, moreover, conflicts with both the ACAA and the Federal Mask Mandate and therefore cannot evade preemption. *Fondo v. Delta Airlines, Inc.*, No. 00 CIV. 2445 (JSM), 2001 WL 604039, at *2 n.3 (S.D.N.Y. May 31, 2001), *aff'd*, 25 F. App'x 82 (2d Cir. 2002) ("[A] contract claim is preempted if reference is required to sources of law outside of the agreement that operate to alter its terms or the parties' obligations.")

Furthermore, Plaintiff's argument ignores the specific language in BA's contract of carriage permitting the airline to refuse him boarding for failure to obey instructions regarding "health mitigation measures." *See* General Conditions of Carriage, *See* BA General Conditions of Carriage § 7a8, *available at* https://www.britishairways.com/en-us/information/legal/british-airways/general-conditions-of-carriage.  As discussed in the Motion to Dismiss, the Complaint makes it clear Plaintiff was aware that BA's "health mitigation measures" required him to provide information other than his doctor's note (this is the basis of his "discrimination" claim against Mr. Roberts) and he had no intention of complying with these measures, which he considered unnecessary and illegal.  The Complaint, as elaborated in the Opposition, therefore fails to state a claim for breach of contract against BA.

## CONCLUSION

WHEREFORE, the C&F-represented Defendants respectfully request that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6) together with such other and further relief the Court deems just and proper.

Dated: New York, New York
       December 12, 2023

CONDON & FORSYTH LLP

By: /s/ Bartholomew J. Banino
Bartholomew Banino
bbanino@condonlaw.com
Anthony U. Battista
abattista@condonlaw.com
Jonathan E. DeMay
jdemay@condonlaw.com
Zachary Groendyk
zgroendyk@condonlaw.com
Marissa Lefland
mlefland@condonlaw.com
John Maggio
Jmaggio@condonlaw.com
7 Times Square, 18th Floor
New York, New York 10036
(212) 490-9100

*Attorneys for Defendants*

Concesionaria Vuela Compañía de Aviación, S.A.P.I. de C.V., Royal Air Maroc, Aerovías de México S.A. de C.V., Transportes Aéreos Portugueses, S.A., Spirit Airlines, Inc., Avianca S.A., Singapore Airlines, LATAM Airlines Group S.A., Iberia Líneas Aéreas De España, S.A. Operadora, Sociedad Unipersonal, LOT Polish Airlines, SA, British Airways P.L.C., and individual Defendant Matthew Roberts

11

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

    Beatriz Romero, duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides in Monroe, New York. That on the __12th__ day of __December__ __2023__, deponent served a copy of the within **REPLY MEMORANDUM OF LAW** upon:

    Aaron Abadi, p*ro se*
    82 Nassau Street, Apt. 140
    New York, NY 10038

via ECF filing and at the address designated by said pro se litigant for that purpose by depositing same enclosed in a properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

                                                          _____
                                                                  Beatriz Romero

Sworn to before me this
12th day of December, 2023

_____
Notary Public

ZOILA M CEDENO
Notary Public - State of New York
NO. 01CE0001221
Qualified in Queens County
My Commission Expires Feb 9, 2027

This notarial act was an online notarization