**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **AARON ABADI,**<br><br>            Plaintiff<br><br>V.<br><br>**AMERICAN AIRLINES, INC., et al** | **CASE #  1:23-cv-04033-LJL** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**

**THE MOTION TO DISMISS BY DEFENDANT AIR TAHITI NUI**

BY:

AARON ABADI
Pro Se Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
Tel: 516-639-4100
Email:  aa@neg.com

   COMES NOW Plaintiff, *pro se*, and responds to Defendant Air Tahiti Nui's ("Air Tahiti") Motion to Dismiss (Docs. 212-213). The Complaint was pretty thorough and did address many of the issues raised in these motions. Plaintiff will attempt to focus in this response on elaborating on some of that, and/or addressing issues not responded to in the Complaint itself.

1

Plaintiff, Aaron Abadi, has sensory processing disorder. He cannot wear a mask or glasses, or anything on his head or face. When the airlines started requiring masks, they refused to allow Plaintiff to fly, and/or discriminated against him constantly. At some airlines (not Air Tahiti) he was yelled at, denied access to fly, and even once left stranded in France. This lasted throughout the mask policies and mandates. He provided evidence of his disability, but these airlines did not care.

The inability to travel, caused severe financial injuries to Plaintiff, who is currently penniless and had to file this with the generous help of the Court, through an IFP Motion. Plaintiff had his entire income destroyed and ability to make income was taken from him. The Motion to Dismiss addresses many of the Counts of the Causes of Action, and Plaintiff will respond accordingly.

**REQUIREMENT TO RENEW DOCTOR'S LETTER WAS ILLEGAL**

In their Factual Background (Doc 213, Page 8), Defendant Air Tahiti essentially admits to refusing to allow Plaintiff to fly with them, until and unless Plaintiff provides a more updated doctor's letter with a stamp and signature, otherwise he cannot travel with them.

This is a violation of the Air Carrier Access Act ("ACAA") as described at length in the Complaint. Requiring medical certificates is a violation of ACAA.

"§ 382.23 May carriers require a passenger with a disability to provide a medical certificate?
(a) Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation.
(b) (1) You may require a medical certificate for a passenger with a disability—
(i) Who is traveling in a stretcher or incubator;
(ii) Who needs medical oxygen during a flight; or
(iii) Whose medical condition is such that there is reasonable doubt that the individual can complete the flight safely, without requiring extraordinary medical assistance during the flight."

Plaintiff did not fit into these categories of (i), (ii), and (iii), and Air Tahiti had no right to demand a doctor's letter, and no right to ask for updated, stamped and signed.  If any person requesting a wheelchair had to bring a doctor's note, the world would be in uproar. Now, Plaintiff, out of extra sensitivity to people's fears and their sometimes-irrational ideas, he provided a doctor's letter in the beginning voluntarily.  The letter was signed digitally.  It comes out of the hospital's computer this way.  Any letter and any prescription from NYU Langone usually are done this way.  The signature is there typed, and it is on the hospital letterhead.

The law says that I do not have to provide a medical certificate at all. Air Tahiti denied Plaintiff access to fly on its planes because he could not wear a mask due to his disability.

Sensory processing disorder in an adult is permanent.  Air Tahiti could have asked their medical advisors, and/or they could have just googled it.  The request

3

for a newly dated letter was completely unnecessary. Please understand that if I needed to refresh my doctor's letter every week, my doctor would probably not want to be my doctor anymore. I was being harassed everywhere that I went, and usually at least a half a dozen times each day.

Air Tahiti should have allowed me to travel, once they understood my medical disability. The ACAA laws are set up that I don't need to give advance notice. I walk into the airport, I tell the staff that I have the following disability, and that's it; I should be accommodated immediately.

## JURISDICTION

Air Tahiti was arguing that there was no jurisdiction in New York, as they don't do business in New York. On their website they claim the opposite (last checked 12/27/23). They say, "Ready to fly to New York? It's easy with our online booking platform! Book your flight to New York directly with Air Tahiti Nui."[1] As is clearly understood, tickets from New York to Tahiti can be booked in the same way as the reverse, which means people from New York State can book a round trip ticket directly with Air Tahiti, to leave from New York, and return to New York. An airline doesn't designate a full page on their website for such business if

---

[1] https://us.airtahitinui.com/flights-new-york

it is not expected to be significant. When they decided to do business in New York State, they understood and agreed to abide by its laws and its legal system.

## **PLAINTIFF HAS STANDING**

Plaintiff described injuries to some length. Plaintiff filed claims for redress of damages, declaratory relief, and injunctive relief, among others. The Complaint is pretty extensive.

## **ACAA PRIVATE RIGHT OF ACTION**

This was addressed thoroughly in the Complaint. There is no binding precedent or settled law saying that there is no private right of action. There is a belief that there is a robust enforcement scheme at the Department of Transportation ("DOT"). That was the entire basis of the idea that there should be no private right. Well, guess what, that was proven wrong.

There probably was no need for major enforcement in the past, because airlines would police themselves, often to avoid bad publicity. We may have believed there was an enforcement scheme. No one really knew, because there wasn't much to enforce. Suddenly, there is Covid and an all-encompassing mask mandate, and we find out very clearly that there is no enforcement at all. Congress

wants these laws to be kept, and it is appropriate for this Court to confirm that the disabled are entitled to enforcement of their laws protecting their civil rights.

The Circuit Court cases were not en-banc and there is no binding precedent. They were based on a mistake or misunderstanding. The Circuit Court cannot say that they cannot require or force the DOT to enforce the ACAA laws through an agency review and simultaneously say that there is a robust enforcement scheme. It is only possible to be one or the other. This is a contradiction. If the DOT has a robust enforcement mandate, then the Circuit Court has the authority to review that. The DC and 2nd Circuit Courts both said that they cannot review and force the DOT to enforce the ACAA, which automatically means that there is no mandate for the DOT to have a robust enforcement scheme.

This brings us back to Congress' intentions. Since they created these laws and wanted them to be enforced, now that the DOT does not have that mandate, it automatically implies a private right of action. See the Complaint for more on this argument.

Defendants bring Lopez v. Jet Blue Airways, 662 F.3d 593, 597 (2d Cir. 2011) as evidence and as precedent. They write, "Plaintiff does not point to any change in the ACAA's enforcement structure since Lopez was decided, nor any case law superseding Lopez, so there is no basis to deviate from the Second Circuit's holding."

As described in the Complaint, Lopez says the following: "…because the statute provides an administrative enforcement scheme designed to vindicate fully the rights of disabled passengers." Lopez v. Jet Blue Airways, 662 F. 3d 593 - Court of Appeals, 2nd Circuit 2011.  Plaintiff proved in the Complaint that this is a mistake.  There is no enforcement scheme, and that is exactly why the airlines can do what they want.  They are a cynical bunch.  They discriminate against people with disabilities.  The DOT ignores it, as there is no process set up to enforce it.  Then the airlines go to court to fight it, saying "there is a robust enforcement by the DOT," knowing all that time that this is bogus.

The Lopez case is not precedent.  It relies on Sandoval.  Many lawyers and sometimes judges might rely on Sandoval, but that case is not an ACAA violation.  See the Complaint where Plaintiff clarifies these differences (Paragraph 1050 & 1051). At the time of Lopez, the real truth of the DOT lack of enforcement and lack of ability to enforce was not yet clear.  Covid-19 brought out the low moral character of the airlines, and the absolute inability of the DOT to address it.  The Circuit Court decisions brought down in the Complaint Abadi v. DOT in the 2nd Circuit AKA In Re: Aaron Abadi, and Abadi v. DOT in the DC Circuit (described in the Complaint), showed that the DOT had no real enforcement mandate and therefore the Circuit Courts have no power over them to require enforcement.

Without any real precedent, and with the understanding that there was no real enforcement process set up through the DOT, this Court must look at this with fresh eyes, and make a decision based on the facts and the understanding of the law.

## MOOTNESS

Defendants brought up the MOOTNESS argument. They are asking this Court to consider this case moot, as currently the mask requirement is no longer in effect.

This issue was addressed thoroughly in this Complaint. Even till this day there are constant new Covid rules, restrictions, and actions taken by the CDC, private companies, and various government agencies.

The CDC just put a new expansive testing project for multiple diseases at airports. It was in the news just recently.[2]

Mootness does not apply in this case for multiple reasons. Now, suddenly there are companies, organizations, hospitals, schools and the like that are reinstating mask policies.[3]

---

[2] https://www.cdc.gov/media/releases/2023/s1107-testing-respiratory-viruses.html
[3] https://www.newsweek.com/mask-mandates-return-list-places-restrictions-1823069

In order to claim mootness, the Defendants have a heavy burden to prove, as in *Sheely,* "The "formidable," "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173 (11th Cir. 2007).

In order to be considered moot it has to pass the following test:

""A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).

If tomorrow morning, there is an increase in the Covid deaths and hospitalizations, it is likely that they will try to reinstate mask mandates. If a new pandemic showed up, it is likely that they will try to reinstate mask mandates. The CDC, NIH, Anthony Fauci, and even Bill Gates have been predicting another pandemic in the very near future. I would listen to them, because they predicted the last pandemic.[4]

Besides, initially, before there was a mandate, the airlines all had their own policies, and when the mandate ended, many airlines continued their own policies.

---

[4] https://centerforhealthsecurity.org/our-work/tabletop-exercises/event-201-pandemic-tabletop-exercise

The DC Circuit writes the following in a challenge to the TSA mask mandate: "Because there is a more-than-speculative chance that the challenged conduct will recur, these cases are not moot." Wall v. Transportation Sec. Admin., No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023).

Besides all that, the fact that there are injuries alleged and damages claimed, it is important to litigate all the discrimination claims in order to determine if there was discrimination, get declaratory relief, and only then damages can be applied to the state claims.  It is still extremely relevant. Even with respect to Federal Defendants it is thus relevant. The point of mootness stopping a lawsuit, is the idea that there is nothing the court can do to bring redress or rectify the wrong. The bar isn't very high.  The Supreme Court recently held that even just nominal damages are sufficient redress to warrant a litigation.

"For purposes of this appeal, it is undisputed that Uzuegbunam experienced a completed violation of his constitutional rights when respondents enforced their speech policies against him. Because "every violation [of a right] imports damage," Webb, 29 F. Cas., at 509, nominal damages can redress Uzuegbunam's injury even if he cannot or chooses not to quantify that harm in economic terms." UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. Supreme Court March  8, 2021.

Also, see this Supreme Court decision in full; here is an excerpt:

<u>"A declaratory judgment can then be used as a predicate to further relief, including an injunction</u>. 28 U. S. C. § 2202; see Vermont Structural Slate Co. v. Tatko Brothers Slate Co., 253 F. 2d 29 (C. A. 2d Cir. 1958); United States Lines Co. v. Shaughnessy, 195 F. 2d 385 (C. A. 2d Cir. 1952)."

Powell v. McCormack, 395 US 486 - Supreme Court 1969

Let us put the MOOTNESS claims behind us and move forward on this litigation.

## ACAA & ADA PREEMPTION

The Complaint addresses this issue at length. The truth is that preemption only is a problem when there is a conflict. State law is always valid when it does not override or conflict with federal law. There are ADA laws for disabilities and then almost every state enacted disability law to add to and to complement the ADA. The ACAA is similar.

Here is a clarification of the preemption concept by the Supreme Court of the United States.

> "Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land;. .. any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus, since our decision in McCulloch v. Maryland, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." Maryland v. Louisiana, 451 U. S. 725, 746 (1981). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the

11

historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 230 (1947). Accordingly, "`[t]he purpose of Congress is the ultimate touchstone' " of pre-emption analysis. Malone v. White Motor Corp., 435 U. S. 497, 504 (1978) (quoting Retail Clerks v. Schermerhorn, 375 U. S. 96, 103 (1963)).
Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U. S. 519, 525 (1977). In the absence of an express congressional command, <u>state law is pre-empted if that law actually conflicts with federal law</u>, see Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n, 461 U. S. 190, 204 (1983), or if federal law so thoroughly occupies a legislative field "`as to make reasonable the inference that Congress left no room for the States to supplement it.' " Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta, 458 U. S. 141, 153 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 U. S., at 230)." Cipollone v. Liggett Group, Inc., 505 US 504 - Supreme Court 1992.

There most certainly is no preemption without a real conflict.

Here is another example of preemption issues needing a conflict to be an issue:

"Thus, <u>there is no basis for us to find either that it would have been "impossible" for Independence to comply with both state law and the ACAA, or that state law would have been an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress</u>." English, 496 U.S. at 79, 110 S.Ct. 2270." Elassaad v. Independence Air, Inc., 613 F.3d 119 (2010) 3rd Circuit. (While this is a 3rd Circuit case, the decision is quoted from Supreme Court caselaw).

The truth is that preemption would not apply in this case. Certainly, it should not be enough now to derail this Complaint in the Motion to Dismiss stage.

12

## 42 USC 1986 IS NOT TIME BARRED IN THIS CASE

This situation was fluid. The discrimination was continuous over many months. It was difficult if not impossible to know if there will be harm, what that harm would be, and if there was liability to the Defendants. Plaintiff can show that he had no way of knowing he can sue and that he should sue much before he did sue. This can be addressed in the litigation, but should certainly not be addressed here in a motion to dismiss. Besides, 1986 is about people not stopping discrimination when they had the opportunity. Plaintiff could not know who had the opportunity, when and how, until after months of significant research and review.

Additionally, Plaintiff began the process of complaining, by complaining to the Department of Transportation ("DOT"), as he thought that was where his rights were best addressed. After not getting much help there, he filed a petition for review, as described herein. During the time of all this litigation, both in the Courts and in the Administrative Tribunal, the statute of limitation is tolled, especially since initially the Plaintiff was expected to pursue redress exclusively through the DOT.

## THE CONSTITUTIONAL RIGHT TO TRAVEL

Some of the other Co-Defendants brought caselaw that stated that "minor restrictions on travel simply do not amount to the denial of a fundamental right." They brought Town of Southold v. Town of E. Hampton, 477 F.3d 38, 54 (2d Cir. 2007) ("travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right"). They also brought another case with the same concept.

This has no similarity to our case where almost every airline, Greyhound Buses, Amtrak Trains, and ride-share companies ALL DENIED PLAINTIFF ACCESS and/or created regulations and demands that were in violation of disability laws, which Plaintiff alleges was done deliberately to deny Plaintiff and those similarly situated access to travel.

Here's an example.  A non-disabled person, and a disabled person prior to Covid and now after Covid fears subsided, are able to decide to fly somewhere, book a flight, and get on a plane.  Then when they want to return home, they can book a flight and head home. During these Covid restrictions that were placed on Plaintiff, if Plaintiff wanted to fly, he had to get a medical certificate.  The date had to be right before the flight.  For his flight back, he needs another.  He would have to have a doctor on retainer, to keep providing medical certificates. Then there are always multiple rules added, with the intention of discouraging someone like Plaintiff from traveling.

Many Defendants keep saying that Plaintiff wasn't completely denied, but that's a game. Even airlines like Delta and Air France that formally approved Plaintiff to fly, they had multiple scenarios where Plaintiff was denied, and/or yelled at and asked to leave. British Airways is another example as described herein and in the complaint.

The ACAA laws are clear. Medical Certificates are only for specific situations, where the doctor needs to confirm that patient is physically able to fly. It is illegal to request that for mask mandates. Congress knew what airlines might try to do, and they arranged for a law against that.

Plaintiff shows that his constitutional right to travel was seriously hampered to a point where he lost enormous amounts of money, and was significantly injured. They cannot say with a straight face that this was just a minor restriction on travel. The Andreadakis case (quoted earlier and provided to Plaintiff) that Defendant quoted is obviously different, as the judge states in the quote presented that that Plaintiff could have traveled with a mask. That is NOT the case with this Plaintiff. THIS PLAINTIFF CANNOT TRAVEL WITH A MASK.

## 42 U.S.C. § 1985(3) & 1986 – THE FEDERAL CONSPIRACY STATUTES

Plaintiff elaborated in the complaint, carefully addressing all the arguments that Defendants were going to present with respect to these statutes.

**CONCLUSION**

This case is a complex case, with many aspects, both of facts and legal issues. The above response in conjunction with the Complaint itself should sufficiently resolve any of the issues brought up in the Motion to Dismiss. The U.S. Constitution affords each citizen their own due process. Plaintiff asks this Court to allow for the lawsuit to proceed and we can address all these items in trial. A motion to dismiss should not be used to take away a person's right to justice.

**WHEREFORE**, Plaintiff asks this court to DENY this motion to dismiss in its entirety, and to schedule an Initial Case Management Conference in accordance with Rule 16(b) of the Federal Rules of Civil Procedure.

Respectfully submitted this December 27, 2023.

*s/Aaron Abadi*

AARON ABADI, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
516-639-4100
Email: aa@neg.com