## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AARON ABADI,** | |
| Plaintiff | **CASE #  1:23-cv-04033-LJL** |
| V. | |
| **AMERICAN AIRLINES, INC., et al** | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## THE JOINT MOTION TO DISMISS BY DEFENDANTS,
## FRONTIER AIRLINES, INC. AND ALLEGIANT AIR, LLC

BY:

AARON ABADI
Pro Se Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
Tel: 516-639-4100
Email:  aa@neg.com

COMES NOW Plaintiff, *pro se*, and responds to Defendants' Motions to Dismiss (Docs. 217-218). The Complaint was pretty thorough and did address many of the issues raised in these motions. Plaintiff will attempt to focus in this response on elaborating on some of that, and/or addressing issues not responded to in the Complaint itself.

Plaintiff, Aaron Abadi, has sensory processing disorder. He cannot wear a mask or glasses, or anything on his head or face. When the airlines started requiring masks, they refused to allow Plaintiff to fly, and/or discriminated against him constantly. He was yelled at, denied access to fly, and even once left stranded in France (by other airlines). This lasted throughout the mask policies and mandates. He provided evidence of his disability, but these airlines did not care.

These Defendants, Frontier Airlines, Inc. ("Frontier") and Allegiant Air, LLC ("Allegiant"), each denied Plaintiff access to fly for an extended period of longer than a year. The Dept. of Transportation ("DOT") issued each of them a violation citing that they violated Air Carrier Access Act ("ACAA") federal law by not allowing Plaintiff to fly, and/or by not conducting an individualized assessment to determine if Plaintiff was eligible for an exemption from the mask requirement. (Allegiant DOT violation is at the Complaint Exhibit 22; and Frontier's DOT violation is attached hereto Exhibit B).

The inability to travel, caused severe financial injuries to Plaintiff, who is currently penniless and had to file this with the generous help of the Court, through an IFP Motion. Plaintiff had his entire income destroyed and ability to make income was taken from him. The Motion to Dismiss addresses many of the Counts of the Causes of Action, and Plaintiff will respond accordingly.

## ATTACKING THE VICTIM

It seems like the best way to defend oneself nowadays is to attack the victim. These airlines know that they have violated the law, they almost admit it in their motion by their preemption arguments, and they received violations from the DOT. They just figure if they put the victim of their discretions up to scrutiny, then they don't have to pay for their misdeeds. Plaintiff will respond to their allegations.

Defendants are trying to DEFAME Plaintiff through insinuation. The attorneys for sure should know better than that. Isn't this something that deserves sanctions?!

## THERE IS NO COALITION THAT PLAINTIFF IS A PART OF

Defendants mention that "Plaintiff is part of an online coalition of persons – Americans Against Mask Mandates."  That is misleading and dishonest.  Yes, there is a Facebook group with such a name.  Plaintiff is a member of over fifty

Facebook groups.  These are not coalitions.  The Defendants were trying to group all the people together and then make this Plaintiff responsible for someone else's lawsuit and/or actions.  That would not be fair.

Every American is entitled to his own due process. How do we know why or how those other Plaintiffs presented their cases? Were they actually disabled? Do they have evidence? Did they file in a timely manner? I can go on for days with these questions.  There are so many parts to a lawsuit, and so many reasons a case can be won or lost. This Plaintiff is entitled to a Jury of his peers. How can he get justice, if it means something if someone else had a similar case and he lost.  That is un-American. Besides, I'm sure there are others that did not lose. Did the Defendants list all cases, whether they won or lost, and all the reasons? Of course not.

Yes, there is a guy, Lucas Wall, mentioned below from the case, Wall v. Transportation Sec. Admin, that sued a few of these airlines. He may have suggested that there's such a group. It is Plaintiff's understanding that it is not actually an organized group, and Plaintiff is not a member of any such group.

Plaintiff asks this Court to ignore all those cases and allow this Plaintiff his due process, without requiring him to review every other case from this so-called coalition that does not exist.

## PLAINTIFF IS NOT A SERIAL LITIGANT

The Defendants list many cases that this Plaintiff filed in this and other courts.  The real number is probably many times that. In their motion, Defendants seemingly tried to suggest that Claimant was a serial litigant, assumably because courts do not appreciate such actions. The goal of the Defendants was to appeal to this court's discontent of serial litigants, and those bringing frivolous lawsuits just to bother the courts and annoy people, and maybe make a few dollars on the way. Obviously, the purpose of presenting all those cases were to make it seem like Claimant is a serial litigant.

Please allow me to respond. If Claimant was a serial litigant, why would he have not brought a single complaint or lawsuit prior to the Covid era? Claimant is 58 years old and had ample opportunity to bring lawsuits. The actual truth is that Claimant suffered significantly during Covid, because suddenly big corporations that often lecture us about virtue, were suddenly throwing him out of stores, hospitals, modes of transportation, and other places, due to his disabilities, and/or banning him from entering. Employees were emboldened and encouraged to yell at him and even on many instances they called the police to remove him.

What happened to our society?! How have we fallen so low?! Not allowing a person with a disability to enter a store, or enter an airplane, due to his disability; is that who we are?! Is there a difference between banning me from entering your

store, or banning a person in wheelchair from entering?! Put up a big sign, "everyone must walk; no wheelchairs allowed." Why is one considered very wrong, and the other is encouraged. There seems to be some strange political bias with regards to mask wearing in the United States. In other countries, I'm glad to say that I was treated wonderfully, when I was lucky enough to find an airline that would take me there. The second I say medical disability, everyone would immediately accommodate. This was the case in India and in Germany. What happened here in the United States. Have we lost our moral compass due to a little extra fear?!

I have been fighting this in courts, in human rights commissions, and in many forums. I won't stop fighting until I know that this can never happen again. My entire business, my income, and any money that I had was destroyed by these horrible actions done by people who could not get their moral compass in check. I cannot and probably will not survive another situation like this, where during a two-year period I was banned from hotels, stores, airplanes, restaurants, and even hospitals. I will keep fighting until I know that this cannot happen again. You see, because of Claimant's inability to travel and to move about, his income was destroyed. He has been in the waste management industry for over thirty years, and his entire career requires extensive travel and interaction with companies and people.

I have settled with at least five companies already. The ones that chose to fight me back, end up spending hundreds of thousands to millions on their legal fees alone. If that's what it takes to discourage future actions like this, then I have been successful. The ones that settle, have it much easier. I accept a few dollars, a fraction of the cost of the filing of a single pleading, and most important, I get some kind of assurance and/or assistance that this can never happen to me again. I usually get a point of contact within the company that I can call in the future if this were to reoccur.

So, no, I am not a serial litigant. I believe that as a disabled person, my rights have been trampled upon. The fact that so many people and companies were comfortable trampling on my civil rights, and the fact that some lawyers, and even some courts were okay with my rights being stripped from me, does not make me a serial litigant and does not make me wrong in my actions of fighting back.

While I don't consider this in any way similar to Martin Luther King Jr. ("MLK"), I want to point out a simple example. Imagine if MLK were to shy away from his fight, because so many people were comfortable denying human rights to black people in those years. Wouldn't that be sad. He fought and he fought and he won. There is only one way to proceed when a person's human rights are violated; especially when the violations are rampant, and unapologetic. It is not just for

myself.  Hundreds of people shared similar stories over the past two years. We

should not have to suffer like this. We all need to fight.

Thank God, the suggestions that Defendants made that would make it seem

like I am losing everywhere, is NOT TRUE AT ALL. I won an appeal in Florida

against Disney and against the Florida Commission on Human Rights. I won

against many airlines at the Dept. of Transportation's ("DOT") disability complaint

division. These airlines were determined by the DOT to be in violation of federal

disability complaints, because they refused to allow me access to fly on their

airplanes. Unfortunately, the DOT refused to enforce it or punish them in any way,

so hence I filed this lawsuit in federal court against the majority of airlines (46)

flying in the United States and from the US abroad, as I believe without

repercussions this can happen again. I claim that their actions directly caused my

suffering, my damages, and my loss of business and income.

I won against Target at the Third Circuit Court of Appeals. This is not how I

want it to go down. My biggest wins were with companies like Nordstrom, where

upon my initial complaint internally to their regional manager, they immediately

apologized and offered to send me the $30 pair of shoes that I was trying to buy,

until their manager threw me out. The shoes were a nice touch, but the immediate

apology was awesome. Best Buy also apologized immediately. There are some

decent people left. Trader Joes never threw me out even once. It's the only chain

that I went to so many of their stores and the people were wonderful. It is not easy living with a disability. I'm glad that there still are some decent people around.

Sadly, while the lawyers make hundreds of thousands of dollars litigating this, probably knowing it is wrong, the clients spend all that money thinking that I'm just another baloney disability complaint. I will continue fighting until I hit the end of the road or I win. I've had five or six cases in federal circuit courts. I have six or seven cases that I have filed in the US Supreme Court. I cannot stop this fight. No, I am not a serial litigant. I am a person with a disability whose life was destroyed by discrimination. This is happening right here in the United States, the country who lectures every other country on human rights, and by those same big corporations like these airlines, Apple, Target, and Walmart, who love to lecture us on right and wrong! They should all first look in the mirror.

## DEFENDANTS' FLIGHT ROUTES WHERE ESSENTIAL TO PLAINTIFF

In the Motion to Dismiss (Page 18, Doc 218), Defendants argue that Plaintiff had no need for their specific flight routes, seemingly since they don't fly to India or Saudi Arabia. If one looks at the Complaint, they will see that I needed to fly to California, Texas, and many other places. Doing a business project in India does not mean that all flights head to India. I was raising money from investors for the project. One was in Texas. I needed to meet with several litigation finance

companies, and they were based in California. I actually drove twice across

country out of desperation.  I certainly could not do that every week.

The details are in the Complaint and the exhibits.  See paragraphs 69, 838,

1154, 1155, 1222, 1223, and many other places where it clearly alleges that

Plaintiff needed to travel domestically for business too, to and from areas that are

serviced by both of these airlines. During discovery, I will provide a more

elaborate picture of what they destroyed.  In the interim, this should not be a valid

excuse to have the case dismissed.


## PLAINTIFF MISTAKENLY ATTACHED AN UNSIGNED COPY OF THE AFFIDAVIT (COMPLAINT EXHIBIT 80)

Plaintiff apologizes for that mistake. Attached (Exhibit A) is the signed

copy.


## FRONTIER DENIAL OF PLAINTIFF'S RIGHTS

Frontier claims that Plaintiff never sent doctor's note and never said that he

would like to fly.  That is not true.  See Complaint Exhibit 46, where Plaintiff

offers to provide a doctor's note, and where Plaintiff clearly asks if he can fly with

them.  The DOT understood this too and found them in violation. Defendants were

notified by the DOT, yet they continue to make believe they did nothing wrong.

## PLAINTIFF HAS STANDING

Plaintiff described injuries to some length. Plaintiff filed claims for redress of damages, declaratory relief, and injunctive relief, among others. The Complaint is pretty extensive.

## MOOTNESS

Defendants brought up the MOOTNESS argument. They are asking this Court to consider this case moot, as currently the mask requirement is no longer in effect.

This issue was addressed thoroughly in this Complaint. Even till this day there are constant new Covid rules, restrictions, and actions taken by the CDC, private companies, and various government agencies.

The CDC just put a new expansive testing project for multiple diseases at airports.  It was in the news just recently.[1]

Mootness does not apply in this case for multiple reasons. Now, suddenly there are companies, organizations, hospitals, schools and the like that are reinstating mask policies.[2]

---

[1] https://www.cdc.gov/media/releases/2023/s1107-testing-respiratory-viruses.html
[2] https://www.newsweek.com/mask-mandates-return-list-places-restrictions-1823069

In order to claim mootness, the Defendants have a heavy burden to prove, as in *Sheely,* "The "formidable," "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173 (11th Cir. 2007).

In order to be considered moot it has to pass the following test:

""A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).

If tomorrow morning, there is an increase in the Covid deaths and hospitalizations, it is likely that they will try to reinstate mask mandates. If a new pandemic showed up, it is likely that they will try to reinstate mask mandates. The CDC, NIH, Anthony Fauci, and even Bill Gates have been predicting another pandemic in the very near future. I would listen to them, because they predicted the last pandemic.[3]

Besides, initially, before there was a mandate, the airlines all had their own policies, and when the mandate ended, many airlines continued their own policies.

---

[3] https://centerforhealthsecurity.org/our-work/tabletop-exercises/event-201-pandemic-tabletop-exercise

The DC Circuit writes the following in a challenge to the TSA mask mandate: "<u>Because there is a more-than-speculative chance that the challenged conduct will recur, these cases are not moot</u>." Wall v. Transportation Sec. Admin., No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023).

Besides all that, the fact that there are injuries alleged and damages claimed, it is important to litigate all the discrimination claims in order to determine if there was discrimination, get declaratory relief, and only then damages can be applied to the state claims.  It is still extremely relevant. Even with respect to Federal Defendants it is thus relevant. The point of mootness stopping a lawsuit, is the idea that there is nothing the court can do to bring redress or rectify the wrong. The bar isn't very high.  The Supreme Court recently held that even just nominal damages are sufficient redress to warrant a litigation.

"For purposes of this appeal, it is undisputed that Uzuegbunam experienced a completed violation of his constitutional rights when respondents enforced their speech policies against him. Because "every violation [of a right] imports damage," Webb, 29 F. Cas., at 509, nominal damages can redress Uzuegbunam's injury even if he cannot or chooses not to quantify that harm in economic terms." UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. Supreme Court March  8, 2021.

Also, see this Supreme Court decision in full; here is an excerpt:

<u>"A declaratory judgment can then be used as a predicate to further relief, including

an injunction</u>. 28 U. S. C. § 2202; see Vermont Structural Slate Co. v. Tatko

Brothers Slate Co., 253 F. 2d 29 (C. A. 2d Cir. 1958); United States Lines Co. v.

Shaughnessy, 195 F. 2d 385 (C. A. 2d Cir. 1952)."

Powell v. McCormack, 395 US 486 - Supreme Court 1969

Let us put the MOOTNESS claims behind us and move forward on this

litigation.


## 42 U.S. CODE § 1983 - CIVIL ACTION FOR DEPRIVATION OF RIGHTS

This Motion addresses Count 7, which is 42 U.S. Code § 1983 - Civil action

for deprivation of rights.

The entire mask mandate and the way it is handled by the airlines is

completely under the color of the law. As described in the Complaint the airline

employees were the police for the masks. JetBlue yelled at Plaintiff if he did not

wear a mask.  Delta Airline employees refused to allow Plaintiff onto the plane.

The entire process has become a policing process. Everyone who flew during

Covid can confirm that every airline had many if not all their staff and crew

POLICING the mask mandate and policy. No one would dare enter a plane without

a mask.  The gate agents would not allow them anywhere nearby.  They would call

the police immediately.

Defendants quote West v. Atkins 487 U.S.42,48 (1988). The actual decision and rationale of the Supreme Court in that case, actually supports Plaintiffs' assertion that 1983 does apply here. Defendants quoted a vague statement, but the case itself proves otherwise.  The Court quotes, "Institutional physicians assume an obligation to the mission that the State, through the institution, attempts to achieve." Polk County, 454 U.S. at 454 U. S. 320." The Court's decision is that the Physician would be liable to 1983 in that case. It is not very different from here, where the airlines, the federal agencies, and the local and State agencies all worked in unison to enforce this mandate.

There is another case quoted, Parver v. JetBlue Airlines Corp. 649 Fed. Appx. 539, 543 (9th Cir. 2016). In that case, the Court said that the airlines were not liable. The only reason the airlines were not liable for 1983, was the following: "Here, "Blue Watch" sent an alert to the police and the flight crew pointed Parver out when the officers boarded the plane, which, without more, is insufficient to create a triable question on joint state action." The idea here is that the airline personnel had little to no involvement in policing the requirements.

In our case, as the facts describe, the police consistently come to the plane, when there is an alleged mask violation. The airline personnel are charged with enforcing this mandate, which is illegal and discriminatory when enforcing it against people with disabilities, such as these Plaintiffs. Yes, the federal

government is also involved, but ultimately it is the airline staff that enforces these laws and they work in unison with State and local law enforcement. The fact that there is also a federal mandate involved doesn't negate the state law participation. The airlines created mask mandates long before the federal government followed suit. The airline could not have been enforcing any federal law, because Plaintiffs were exempt from that.

There was a news article of an incident with Spirit Airlines,[4] but this happened on all airlines in much the same way. I bring this article, because it describes how the airline enforces the mask mandate, and how they call the police.

They were enforcing policy in direct conjunction with the state law enforcement on the ground. They would claim that we are causing problems on the flight, not listening to a flight attendant, creating safety issues, and the like. They could not ever have charged Plaintiff with a federal violation of the federal mask mandate, because Plaintiff was exempt.

The Supreme Court held the following:

"…we held that the private party's joint participation with a state official in a conspiracy to discriminate would constitute both "state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights" and

---

[4] https://www.businessinsider.in/thelife/news/spirit-airlines-is-defending-its-decision-to-de-board-an-entire-flight-after-it-says-a-family-refused-to-wear-masks-as-videos-of-the-incident-spark-backlash-online/articleshow/81922657.cms

action " `under color' of law for purposes of the statute." Lugar v. Edmondson Oil Co., 457 US 922 - Supreme Court 1982.

The Airline Defendants most certainly violated 1983, and should be held accountable. Plaintiff is showing in the Complaint and will prove in Court at trial that Defendants coordinated their policing process with the State Police and were thus acting under the color of the law.

## 42 U.S.C. § 1985(3) & 1986 – THE FEDERAL CONSPIRACY STATUTES

Plaintiff elaborated in the complaint, carefully addressing all the arguments that Defendants were going to present with respect to these conspiracy statutes. I will just add a few points here.

Defendants state ""The original purpose of § 1985(3), which was passed as the Ku Klux Klan Act of 1871…"  They try to negate the idea of these statutes, yet there are loads of caselaw that show that these statutes are alive and active, and will remain that way, until and unless Congress makes a change.  The Defendants' statement is disingenuous.

My favorite argument was this: "The Complaint Fails to Allege the Existence of a Conspiracy."  Wow! Forty-six airlines, federal agencies, medical advisory companies, and their employees all happen to be doing the exact same discrimination, yet there was no conspiracy.  It is just coincidence. This was also

addressed in the Complaint. Being that 1985 (3) is valid, then the same goes for

1986.


## 42 USC 1986 IS NOT TIME BARRED IN THIS CASE

This situation was fluid. The discrimination was continuous over many

months. It was difficult if not impossible to know if there will be harm, what that

harm would be, and if there was liability to the Defendants. Plaintiff can show that

he had no way of knowing he can sue and that he should sue much before he did

sue. This can be addressed in the litigation, but should certainly not be addressed

here in a motion to dismiss. Besides, 1986 is about people not stopping

discrimination when they had the opportunity. Plaintiff could not know who had

the opportunity, when and how, until after months of significant research and

review.

Additionally, Plaintiff began the process of complaining, by complaining to

the Department of Transportation ("DOT"), as he thought that was where his rights

were best addressed. After not getting much help there, he filed a petition for

review, as described herein. During the time of all this litigation, both in the Courts

and in the Administrative Tribunal, the statute of limitation is tolled, especially

since initially the Plaintiff was expected to pursue redress exclusively through the

DOT.

## ACAA PRIVATE RIGHT OF ACTION

This was addressed thoroughly in the Complaint. There is no binding precedent or settled law saying there is no private right of action.  There is a belief that there is a robust enforcement scheme at the Department of Transportation ("DOT"). That was the entire basis of the idea that there should be no private right. Well, guess what, that was proven wrong.

There probably was no need for major enforcement in the past, because airlines would police themselves, often to avoid bad publicity. We may have believed there was an enforcement scheme. No one really knew, because there wasn't much to enforce. Suddenly, there is Covid and an all-encompassing mask mandate, and we find out very clearly that there is no enforcement at all.  Congress wants these laws to be kept, and it is appropriate for this Court to confirm that the disabled are entitled to enforcement of their laws protecting their civil rights.

The Circuit Court cases were not en-banc and there is no binding precedent. They were based on a mistake or misunderstanding.  The Circuit Court cannot say that they cannot require the DOT to enforce the law and simultaneously say that there is a robust enforcement scheme.  It is only possible to be one or the other. This is a contradiction. See the Complaint for more on this argument.

Defendants bring Lopez v. Jet Blue Airways, 662 F.3d 593, 597 (2d Cir. 2011) as evidence and as precedent. They write, "Plaintiff does not point to any change in the ACAA's enforcement structure since Lopez was decided, nor any case law superseding Lopez, so there is no basis to deviate from the Second Circuit's holding."

As described in the Complaint, Lopez says the following: "…because the statute provides an administrative enforcement scheme designed to vindicate fully the rights of disabled passengers." Lopez v. Jet Blue Airways, 662 F. 3d 593 - Court of Appeals, 2nd Circuit 2011. Plaintiff proved in the Complaint that this is a mistake. There is no enforcement scheme, and that is exactly why the airlines can do what they want. They are a cynical bunch. They discriminate against people with disabilities. The DOT ignores it, as there is no process set up to enforce it. Then the airlines go to court to fight it, saying "there is a robust enforcement by the DOT," knowing all that time that this is bogus.

The Lopez case is not precedent. It relies on Sandoval. Many lawyers and sometimes judges might rely on Sandoval, but that case is not an ACAA violation. See the Complaint where Plaintiff clarifies these differences (Paragraph 1050 & 1051). At the time of Lopez, the real truth of the DOT lack of enforcement and lack of ability to enforce was not yet clear. Covid-19 brought out the low moral character of the airlines, and the absolute inability of the DOT to address it. The

Circuit Court decisions brought down in the Complaint Abadi v. DOT in the 2nd

Circuit AKA In Re: Aaron Abadi, and Abadi v. DOT in the DC Circuit (described

in the Complaint), showed that the DOT had no real enforcement mandate and

therefore the Circuit Courts have no power over them to require enforcement.

Without any real precedent, and with the understanding that there was no

real enforcement process set up through the DOT, this Court must look at this with

fresh eyes, and make a decision based on the facts and the understanding of the

law.


## THE REHABILITATION ACT ("RA")

The RA was also argued thoroughly in the Complaint itself, and here in their

Motion, Defendants admit that they had to sign the paper stating that they would be

subject to… the RA.  Plaintiff plans to request a copy of the actual signed

agreement in discovery.

Then Defendants write the following:

"Notably, one court already has ruled that Plaintiff Abadi's claims relating to
masking requirements are not subject to the RA. See Abadi, 2023 WL
4045373, *2 (upholding district court ruling that Plaintiff's challenge to the
Target Corporation's mask policy was not subject to the RA despite his
contention that the Target in-store pharmacies received some Medicare and
Medicaid funding). Plaintiff provides no reason to depart from that well-settled
rule here."

What a bizarre comparison! The argument regarding Target is that the pharmacy is a small aspect of their business. Do these airlines also have pharmacies?! I guess the attorneys just assume that the judges will not look up that case, and just take their word for it. If the airlines did not want the liability to the RA, they should not have taken all that money, and they should not have signed that agreement with the federal government requiring them to abide by the RA. With respect to preemption, it is addressed in the Complaint and below.

## ACAA & ADA PREEMPTION

The Complaint addresses this issue at length. The truth is that preemption only is a problem when there is a conflict. State law is always valid when it does not override or conflict with federal law. There are ADA laws for disabilities and then almost every state enacted disability law to add to and to complement the ADA. The ACAA is similar.

Here is a clarification of the preemption concept by the Supreme Court of the United States.

"Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land;. .. any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus, since our decision in McCulloch v. Maryland, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." Maryland v. Louisiana, 451 U. S. 725, 746 (1981). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the

historic police powers of the States [are] not to be superseded by . . . Federal
Act unless that [is] the clear and manifest purpose of Congress." Rice v. Santa
Fe Elevator Corp., 331 U. S. 218, 230 (1947). Accordingly, "`[t]he purpose of
Congress is the ultimate touchstone' " of pre-emption analysis. Malone v.
White Motor Corp., 435 U. S. 497, 504 (1978) (quoting Retail Clerks v.
Schermerhorn, 375 U. S. 96, 103 (1963)).

Congress' intent may be "explicitly stated in the statute's language or implicitly
contained in its structure and purpose." Jones v. Rath Packing Co., 430 U. S.
519, 525 (1977). In the absence of an express congressional command, <u>state
law is pre-empted if that law actually conflicts with federal law</u>, see Pacific
Gas & Elec. Co. v. State Energy Resources Conservation and Development
Comm'n, 461 U. S. 190, 204 (1983), or if federal law so thoroughly occupies a
legislative field "`as to make reasonable the inference that Congress left no
room for the States to supplement it.' " Fidelity Fed. Sav. & Loan Assn. v. De
la Cuesta, 458 U. S. 141, 153 (1982) (quoting Rice v. Santa Fe Elevator Corp.,
331 U. S., at 230)." Cipollone v. Liggett Group, Inc., 505 US 504 - Supreme
Court 1992.

There most certainly is no preemption without a real conflict.

Here is another example of preemption issues needing a conflict to be an

issue:

"Thus, <u>there is no basis for us to find either that it would have been
"impossible" for Independence to comply with both state law and the ACAA,
or that state law would have been an "obstacle to the accomplishment and
execution of the full purposes and objectives of Congress</u>." English, 496 U.S.
at 79, 110 S.Ct. 2270." Elassaad v. Independence Air, Inc., 613 F.3d 119
(2010) 3rd Circuit. (While this is a 3rd Circuit case, the decision is quoted from
Supreme Court caselaw).

The truth is that preemption would not apply in this case. Certainly, it

should not be enough now to derail this Complaint in the Motion to Dismiss stage.

## STATE CIVIL RIGHTS CLAIMS

The Complaint addresses all these issues that Defendants brought up in their Motion to Dismiss. Here is a little more on the issues. Defendants tried to have the UNRUH & NJLAD & Texas Civil Rights & New York City Civil Rights counts dismissed. Their rationale is that Plaintiff did not state a claim, but that is not true. By the fact that Plaintiff needed to travel to California, and was several times in California, but was denied an ability to fly by these airlines in California, to California, and from California, that puts this discrimination right in the jurisdiction of the California UNRUH. The same goes for the other states.

Plaintiff has a lot of family in New Jersey, spends a lot of time in New Jersey. He needed to travel from New Jersey dozens of times. Besides, one of the main airports, local to New York City, is actually in New Jersey. That is Newark Liberty Airport. Plaintiff travels to and from that airport all the time. As Plaintiff is writing this response, he is on a plane heading to EWR, Newark Airport.

Preemption does not apply, as the entire purpose of state human rights laws are in addition to federal laws. If preemption existed, these laws would all be meaningless. The only time preemption exists is if there is a conflict. For example, if federal law requires a 15-foot ramp for wheelchair access, and state law says only 14-feet, then the state law would be preempted by the federal law. Adding

damages to existing federal law that has no damages, is not a problem of

preemption as discussed in the Complaint itself and above.


**TORT**

    Defendants brought up preemption again.  As Plaintiff describes in the

Complaint and elsewhere in this document, preemption does not apply here.

    With regards to the "one year" comment, I assume they are suggesting that

Plaintiff missed the statute of limitations.

    First of all, the clock starts on statute of limitations only after the Plaintiff

was able to ascertain that he had a case. It took a much longer period for Plaintiff

to realize that he can sue. Those were the big questions. Does ACAA have a

private right of action? Does it preempt the other claims?  Must an aggrieved

person work only through the Department of Transportation ("DOT"), or not?

Plaintiff followed the procedures described to him by the administrative agency

and by the Courts. In the interim, the statute of limitations is tolled.

    Plaintiff initially filed Petition for Review for the Second Circuit Court of

Appeals to determine those laws. In the Second Circuit it was 21-2807 In Re:

Aaron Abadi, filed 11/01/2021.  The next case was in the DC Circuit Court of

Appeals, case # 22-1012. Both cases were thrown out for similar reasons.  The DC

Circuit articulated that reason, saying, Plaintiff could not show "a legal

requirement that the Department of Transportation ("DOT") resolve his complaints against airlines within a certain time period, nor a legal requirement that DOT take any other discrete action that it allegedly has failed to take."

The basic idea was that there was no requirement for the DOT to have a robust enforcement scheme, and therefore, only then would Plaintiff have clearly understood that he has a case that he can take to court. He then applied for a writ of certiorari at the Supreme Court. The writs were denied. The most recent and final denial was Supreme Court case # 22-5026, which was denied on October 3, 2022. It is settled law that the statute of limitations is tolled during these lawsuits.

Additionally, Plaintiff did first try obtaining redress through administrative procedures, by going through the DOT's complaint processes. Those processes are still active, and not yet finalized. Therefore, technically, the statute of limitations should not yet start at all.

Second, the statute of limitations are not all one year. I won't bore this court with a full list of statute of limitations per state, because of the first explanation, as the statute is tolled.

The Defendants also claim that "the Complaint fails to allege the requisite elements of the tort claim, including an allegation that the Moving Defendants engaged in "an intentional infliction of economic damage, without excuse or justification." That is not true. They should read the Complaint.

## NEGLIGENCE

The Complaint itself responds to these arguments. And see below.


## INFLICTION OF EMOTIONAL DISTRESS

Defendants claim that "Here, Plaintiff concedes that Defendants were simply following the law, albeit a law he disagrees with."

This is a blatant lie. There is no such law.  The ACAA laws are clear.  The DOT agrees with Plaintiff and gave both airlines violations, yet they have the *Chutzpah* to suggest that they were simply following the law?!

In order to put things in perspective a bit, imagine if there was a person who needed a wheelchair, and he came to the airline to fly and they said, "Sorry, we don't allow anyone to fly with us if they cannot walk of their own volition." Imagine that they would outright deny someone to fly on their plane just because he needs a wheelchair. We would all say "oh my god! That is extreme and outrageous conduct!"

Imagine if there was a person who wore a Yarmulke, as he was an Orthodox Jew, and he came to the airline to fly and they said, "Sorry, we don't allow anyone to fly with us who is Jewish." They would outright deny someone to fly on their

plane just because of his religion. We would all say "oh my god! That is extreme and outrageous conduct!"

Imagine if there was an African-American, and he came to the airline to fly and they said, "Sorry, we don't allow anyone to fly with us who has such a dark skin color." They would outright deny someone to fly on their plane just because of the color of his skin. We would all say "oh my god! That is extreme and outrageous conduct!"

Why would this be different?! All the federal agencies notified the airlines that people with disabilities who cannot wear a mask are exempt from any mask mandates. Why would it be less outrageous to just ban someone, force them to do all sorts of things that non-disabled don't do, and even torture them just because they have a disability?! "Sorry, you cannot come on our plane as you have a disability." Have we lost our sensitivity to humanity?!

## **BREACH OF CONTRACT**

The Defendants combined several arguments in this one category, that were addressed elsewhere in this document. The preemption issue is addressed, and only applies when there is an actual conflict. Most of the issues brought up in the Motion to Dismiss was already addressed in the Complaint itself.

They keep saying how they don't fly much internationally, and they allude to the idea that all of Plaintiff's flight needs were only and exclusively international. That is not true and above I address it, and in the Complaint it describes it. I do not know why they keep saying that silly concept that has no basis at all.

**PROMISSORY ESTOPPEL**

The Complaint says the following. "Defendants in their advertisements, on their websites, in their brochures and statements all allege that they are decent people, that they will treat those with disabilities and/or special needs with care."

Allegiant's website says:[5]

"Allegiant Airlines is committed to making air travel accessible to all passengers, including those with special needs or impairments. The airline has set up a detailed special needs policy to ensure that passengers with disabilities or special needs receive the necessary help and accommodations throughout their flight."

Frontier's website says the following[6] amongst other similar promises:

"Passengers who have a cognitive and/or developmental disability and require assistance should self-identify or have someone do so on their behalf to explain the type of assistance required upon arrival at the airport, at the gate, onboard the aircraft, at any connection points, and at the destination. Assistance is available from the airport ticket counter to/from gates and between gates for connecting flights."

---

[5] https://bookingtrolley.com/blogs/allegiant-airlines/special-needs-policy  (Although this is from a travel blog site, it is an exact copy of the website itself. The website was inaccessible when Plaintiff prepared this)

[6] https://www.flyfrontier.com/travel/travel-info/special-services/?mobile=true

These promises were not kept.  They were never intended to be kept.


## INJURIOUS FALSEHOODS

Defendants want this dismissed since they Defendants were "simply agreeing and complying with the FTMM thereby defeating any allegation of malice." That is not true at all.  This Plaintiff was exempt from the mask mandate, and as Plaintiff showed earlier, the DOT gave each of these airlines a violation for their denying Abadi access to fly, and/or for not performing the required individualized assessment to determine if Abadi should be exempt.

Defendants also say, "This cause of action fails to allege a claim for relief." Well, the relief is spelled out.  The Plaintiff had damages from this in combination with many of the other claims. The relief requested to redress these injuries, were detailed at the end of the complaint. The jury will get to decide and determine the level of damages and the relief available.


## INVASION OF PRIVACY

Defendants present Pica v. Delta Air Lines, which is "NOT FOR PUBLICATION."  All the caselaw with respect to preemption, discuss how some things are preempted, while others are not.  The Deregulation Act does not have

any connection to privacy issues and there should not be any reason to preempt

that.  See the preemption discussions elsewhere in this document.

The Supreme Court weighed in on this as follows: "Nor is it plausible that

Congress meant to channel into federal courts the business of resolving, pursuant

to judicially fashioned federal common law, the range of contract claims relating to

airline rates, routes, or services. The ADA contains no hint of such a role for the

federal courts." American Airlines, Inc. v. Wolens, 513 US 219 - Supreme Court

1995.

There is what is known as a Wolens exception, based on this caselaw, which

would certainly apply here and in our Breach of Contract claim, among others.

Defendants did not make any arguments as to why it should not apply in this case.

Defendants claim that they never required Plaintiff to disclose his private

info, yet they agree that they requested much info and were not yet satisfied.  They

should have trusted Plaintiff, just like they trust those who need wheelchairs.

Requiring medical certificates and personal info was wrong. When Defendants

suggest that Plaintiff gave over the info voluntarily, they have a cynical outlook on

reality. Plaintiff had no chance of even attempting to travel without starting with

all that info.  This is obvious from the info already provided and will be more clear

at trial.

## FRAUDULENT MISREPRESENTATION

Defendants want this dismissed due to preemption.  This was responded to in several places in this document and in the Complaint.  That same response applies to negligence.

Additionally, Defendants claim that the fraudulent misrepresentation was not sufficiently clear.  Plaintiff does not believe that this is the case. If the Court agrees with the Defendant, Plaintiff would like to take the opportunity to clarify in an amended complaint.

## THE CONSTITUTIONAL RIGHT TO TRAVEL

Defendants brought caselaw that stated that "minor restrictions on travel simply do not amount to the denial of a fundamental right." They brought Town of Southold v. Town of E. Hampton, 477 F.3d 38, 54 (2d Cir. 2007) ("travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right"). They also brought another case with the same concept.

This has no similarity to our case where almost every airline, Greyhound Buses, Amtrak Trains, and ride-share companies ALL DENIED PLAINTIFF ACCESS and/or created regulations and demands that were in violation of

disability laws, which Plaintiff alleges was done deliberately to deny Plaintiff and those similarly situated access to travel.

Here's an example. A non-disabled person, and a disabled person prior to Covid and now after Covid fears subsided, are able to decide to fly somewhere, book a flight, and get on a plane. Then when they want to return home, they can book a flight and head home. During these Covid restrictions that were placed on Plaintiff, if Plaintiff wanted to fly, he had to get a medical certificate. The date had to be right before the flight. For his flight back, he needs another. He would have to have a doctor on retainer, to keep providing medical certificates. Then there are always multiple rules added, with the intention of discouraging someone like Plaintiff from traveling.

Many Defendants keep saying that Plaintiff wasn't completely denied, but that's a game. Even airlines like Delta and Air France that formally approved Plaintiff to fly, they had multiple scenarios where Plaintiff was denied, and/or yelled at and asked to leave. British Airways is another example as described herein and in the complaint.

The ACAA laws are clear. Medical Certificates are only for specific situations, where the doctor needs to confirm that patient is physically able to fly. It is illegal to request that for mask mandates. Congress knew what airlines might try to do, and they arranged for a law against that.

Plaintiff shows that his constitutional right to travel was seriously hampered to a point where he lost enormous amounts of money, and was significantly injured. They cannot say with a straight face that this was just a minor restriction on travel.  The Andreadakis case (quoted earlier and provided to Plaintiff) that Defendant quoted is obviously different, as the judge states in the quote presented that that Plaintiff could have traveled with a mask. That is NOT the case with this Plaintiff.  THIS PLAINTIFF CANNOT TRAVEL WITH A MASK.

Defendants also mention again that Plaintiff didn't need to fly to anywhere that Defendants fly, but that was debunked here earlier, and some specifics are in the Complaint as mentioned above.


## PUNITIVE DAMAGES

"Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." BMW of North America, Inc. v. Gore, 517 US 559 - Supreme Court 1996.

There are many legal components and variations to the Punitive Damages question.  ADA and RA do not allow for punitive damages.  Many of the violations do allow for Punitive Damages.  Here are some examples.

"Punitive damages are available in "a proper" § 1983 action." Carlson v. Green, 446 US 14 - Supreme Court 1980.

"As early as 1915 the Mississippi Supreme Court had recognized that punitive damages were available in a contract case when "the act or omission constituting the breach of the contract amounts also to the commission of a tort." Pilot Life Ins. Co. v. Dedeaux, 481 US 41 - Supreme Court 1987.

"The Complaint states a claim for punitive damages, which Defendant seeks to dismiss. Dkt. No. 1, at 32-33. Punitive damages may be awarded as a matter of federal law under 42 U.S.C. § 1983 or Georgia law under O.C.G.A. § 51-12-5.1. As to recovery under federal law, "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Similarly, under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).

Plaintiffs apparently admit that they cannot "seek punitive damages under the Montreal Convention." Dkt. No. 15, at 7. However, because the Montreal Convention does not apply to the remaining claims, as pleaded in the Complaint

and left after this Order, this concession is unwarranted. Greater factual development is necessary to determine whether Plaintiffs can make a claim for punitive damages. Therefore, Defendant's motion to dismiss this claim is DENIED." Benjamin v. American Airlines, Inc., 32 F. Supp. 3d 1309 - Dist. Court, SD Georgia 2014.

I brought this last case to show that the Punitive Damages Question is complicated, and the preemption question is also sometimes applicable and at other times not. For these issues to be resolved in a motion to dismiss would be unreasonable and unfair.

The preemption question was addressed at length in the Complaint. The first and most important response is that preemption only applies when there is a conflict. There are ADA laws, yet each state created their own disability laws. If there is blanket preemption, the states are wasting their time, and no state disability claim should ever be acted upon in court. That is not the case.

"The Ninth Circuit found in Gilstrap v. United Air Lines, "[t]he ACAA does not, however, preempt any state remedies that may be available when airlines violate those standards." 709 F.3d 995, 1010 (9th Cir. 2013)" Segalman v. Southwest Airlines Co., 2016 WL 146196, at *3 (E.D.Cal., 2016)

And further, it says, "Federal regulations "do[ ] not, however, preempt any state remedies that may be available when airlines violate those standards." Id.

The Defendants are disputing the Punitive Damages. I don't believe it would be appropriate for the Court to address that now, at the motion to dismiss stage, but rather this is something that should be left for trial, or at least until there's a motion for summary judgment.

## CONCLUSION

This case is a complex case, with many aspects, both of facts and legal issues. The above response in conjunction with the Complaint itself should sufficiently resolve any of the issues brought up in the Motion to Dismiss. The U.S. Constitution affords each citizen their own due process. Plaintiff asks this Court to allow for the lawsuit to proceed and we can address all these items in trial. A motion to dismiss should not be used to take away a person's right to justice.

**WHEREFORE**, Plaintiff asks this court to DENY this motion to dismiss in its entirety, and to schedule an Initial Case Management Conference in accordance with Rule 16(b) of the Federal Rules of Civil Procedure.

Respectfully submitted this December 27, 2023.

*s/Aaron Abadi*

AARON ABADI, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
516-639-4100
Email:  aa@neg.com