# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AARON ABADI,** | |
|         Plaintiff | <u>**CASE #  1:23-cv-04033-LJL**</u> |
| **V.** | |
| **AMERICAN AIRLINES, INC., et al** | |

## <u>PLAINTIFF'S RESPONSE IN OPPOSITION TO</u>
## <u>MEDAIRE, INC.'S MOTION TO DISMISS</u>

BY:

AARON ABADI
Pro Se Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
Tel: 516-639-4100
Email:  aa@neg.com

COMES NOW Plaintiff, *pro se*, and responds to Defendants Medaire, Inc.'s ("Medaire") Motion to Dismiss (Docs. 232-233). The Complaint was pretty thorough and did address most of the issues raised in this motion. Plaintiff will attempt to focus in this response on elaborating on some of that, and/or addressing issues not responded to in the Complaint itself.

Plaintiff, Aaron Abadi, has sensory processing disorder.  He cannot wear a mask or glasses, or anything on his head or face. When the airlines started requiring masks, they refused to allow Plaintiff to fly, and/or discriminated against him constantly. He was yelled at, denied access to fly, and even once left stranded in France by Delta Airlines. This lasted throughout the mask policies and mandates. He provided evidence of his disability, but these airlines did not care.  The airlines were being advised by one of two main medical advisory groups, who are Defendants in the is case, Medaire and Stat-MD.

This Defendant, Medaire, was directly involved in the denial of access to fly by this Plaintiff, and in the various forms of discrimination perpetrated on Plaintiff by many of the airlines.  It was their job to determine the policy with respect to mask wearing, verses allowing for exemptions for those with disabilities who could nor wear a mask.

Medaire does not just determine policy, the actually train the top staff for the airlines. They teach them what to do and how to do it.  See they're brochure, attached (Exhibit A).  It is titled, "SOLUTIONS FOR ASSISTING PASSENGERS WITH DISABILITIES & SPECIAL NEEDS." They are the maven, they are the teachers, they will tell you how to comply with airline disability requirements. One of their programs offered is, "COMPLAINTS RESOLUTION OFFICIAL ("CRO") TRAINING FOR ACAA COMPLIANCE." They say they're not involved, but this brochure seems to say otherwise.

Here we see a bit of the game that these airlines and medical defendants were playing. Most airlines either contracted with Stat-MD, or Medaire, and these companies became the excuse why they don't have to accommodate a disability.  The airline would say, "We asked STAT-MD or Medaire, and sorry, they said no. It's not our fault. It's STAT-MD or Medaire's fault." I then try to reach out to STAT-MD or Medaire, and they would say please talk to your airline, as we work with them directly and cannot respond. Nice little game they had going.

This is what is written on the STAT-MD website: ""STAT-MD supports various airlines uphold their policies, including requirements for face masks. If you are traveling, or are considering traveling, and have questions regarding a wearing a face mask during flight, please contact the specific airline directly. Requests received from passengers or potential passengers are unable to be processed."  Medaire had an identical process.

Medaire and/or STAT-MD says, "Don't call me, call the airline." The airlines say, "STAT-MD and/or Medaire said you cannot fly." Sounds to me like a bunch of middle school children blaming their indiscretions on everyone else.

That is why I included both medical advisory companies, as they are an essential part of the conspiracy and the discrimination itself, if not the primary cause of it all. Yes, they are outside contractors, but they are built in to the system directly.

The inability to travel, caused severe financial injuries to Plaintiff, who is currently penniless and had to file this with the generous help of the Court, through an IFP Motion. Plaintiff had his entire income destroyed and ability to make income was taken from him. The Motion to Dismiss addresses many of the Counts of the Causes of Action, and Plaintiff will respond accordingly.

**ATTACKING THE VICTIM**

2

It seems like the best way to defend oneself nowadays is to attack the victim. These Defendants all know that they have violated the law, they almost admit it in their motion in their arguments. They just figure if they put the victim of their discretions up to scrutiny, then they don't have to pay for their misdeeds. Plaintiff will respond to their allegations.

Many of the Defendants including this one try to DEFAME Plaintiff through insinuation. The attorneys for sure should know better than that. Isn't this something that deserves sanctions?!

## THERE IS NO COALITION THAT PLAINTIFF IS A PART OF

Defendants mention that "Plaintiff is part of an online coalition of persons – Americans Against Mask Mandates."  That is misleading and dishonest.  Yes, there is a Facebook group with such a name.  Plaintiff is a member of over fifty Facebook groups.  These are not coalitions. The Defendants were trying to group all the people together and then make this Plaintiff responsible for someone else's lawsuit and/or actions.  That would not be fair.

Every American is entitled to his own due process. How do we know why or how those other Plaintiffs presented their cases? Were they actually disabled? Do they have evidence? Did they file in a timely manner? I can go on for days with these questions.  There are so many parts to a lawsuit, and so many reasons a case can be won or lost. This Plaintiff is entitled to a Jury of his peers. How can he get justice, if it means something if someone else had a similar case and he lost.  That is un-American. Besides, I'm sure there are others that did not lose. Did the Defendants list all cases, whether they won or lost, and all the reasons? Of course not.

Yes, there is a guy, Lucas Wall, mentioned below from the case, Wall v. Transportation Sec. Admin, that sued a few of these airlines. He may have suggested that there's such a group. It is Plaintiff's understanding that it is not actually an organized group, and Plaintiff is not a

member of any such group. Plaintiff asks this Court to ignore all those cases and allow this Plaintiff his due process, without requiring him to review every other case from this so-called coalition that does not exist.

## PLAINTIFF IS NOT A SERIAL LITIGANT

The Defendants list many cases that this Plaintiff filed in this and other courts. The real number is probably many times that. In their motion, Defendant seemingly tried to suggest that Claimant was a serial litigant, assumably because courts do not appreciate such actions. The goal of the Defendant was to appeal to this court's discontent of serial litigants, and those bringing frivolous lawsuits just to bother the courts and annoy people, and maybe make a few dollars on the way. Obviously, the purpose of presenting all those cases were to make it seem like Claimant is a serial litigant.

Please allow me to respond. If Claimant was a serial litigant, why would he have not brought a single complaint or lawsuit prior to the Covid era? Claimant is 58 years old and had ample opportunity to bring lawsuits. The actual truth is that Claimant suffered significantly during Covid, because suddenly big corporations that often lecture us about virtue, were suddenly throwing him out of stores, hospitals, modes of transportation, and other places, due to his disabilities, and/or banning him from entering. Employees were emboldened and encouraged to yell at him and even on many instances they called the police to remove him.

What happened to our society?! How have we fallen so low?! Not allowing a person with a disability to enter a store, or enter an airplane, due to his disability; is that who we are?! Is there a difference between banning me from entering your store, or banning a person in wheelchair from entering?! Put up a big sign, "everyone must walk; no wheelchairs allowed." Why is one considered very wrong, and the other is encouraged. There seems to be some strange political

bias with regards to mask wearing in the United States. In other countries, I'm glad to say that I was treated wonderfully, when I was lucky enough to find an airline that would take me there. In these foreign countries, the second I say medical disability, everyone would immediately accommodate. This was the case in India and in Germany. What happened here in the United States. Have we lost our moral compass due to a little extra fear?!

I have been fighting this in courts, in human rights commissions, and in many forums. I won't stop fighting until I know that this can never happen again. My entire business, my income, and any money that I had was destroyed by these horrible actions done by people who could not get their moral compass in check. I cannot and probably will not survive another situation like this, where during a two-year period I was banned from hotels, stores, airplanes, restaurants, and even hospitals. I will keep fighting until I know that this cannot happen again. You see, because of Claimant's inability to travel and to move about, his income was destroyed. He has been in the waste management industry for over thirty years, and his entire career requires extensive travel and interaction with companies and people.

I have settled with at least five companies already. The ones that chose to fight me back, end up spending hundreds of thousands to millions on their legal fees alone. If that's what it takes to discourage future actions like this, then I have been successful. The ones that settle, have it much easier. I accept a few dollars, a fraction of the cost of the filing of a single pleading, and most important, I get some kind of assurance and/or assistance that this can never happen to me again. I usually get a point of contact within the company that I can call in the future if this were to reoccur.

So, no, I am not a serial litigant. I believe that as a disabled person, my rights have been trampled upon. The fact that so many people and companies were comfortable trampling on my

civil rights, and the fact that some lawyers, and even some courts were okay with my rights being stripped from me, does not make me a serial litigant and does not make me wrong in my actions of fighting back.

It is a joke when these Defendants keep quoting Andreadakis v. CDC, No. 22-cv-52, 2022 WL 2674194 (E.D. Va. July 11, 2022) (MTD page 3 in the footnote).  They are so excited, because it was a similar case and they won and the Plaintiff lost.  They forgot to tell the whole story. Plaintiff did not follow instructions and did not respond to the Defendants' Motion to Dismiss.  It is very difficult for a judge to see the Plaintiff's arguments, if he refuses to respond. No, they did not win that case on the merits. Hiding the information by omission is also not being truthful.

Thank God, the suggestions that the various Defendants made that would make it seem like I am losing everywhere, is NOT TRUE AT ALL. I won an appeal in Florida against Disney and against the Florida Commission on Human Rights. I won against many airlines at the Dept. of Transportation's ("DOT") disability complaint division. These airlines were determined by the DOT to be in violation of federal disability complaints, because they refused to allow me access to fly on their airplanes. Unfortunately, the DOT refused to enforce it or punish them in any way, so hence I filed this lawsuit in federal court against the majority of airlines (46) flying in the United States and from the US abroad, as I believe without repercussions this can happen again. I claim that their actions directly caused my suffering, my damages, and my loss of business and income.

I won against Target at the Third Circuit Court of Appeals. This is not how I wanted this all to go down. My biggest wins were with companies like Nordstrom, where upon my initial complaint internally to their regional manager, they immediately apologized and offered to send

me the $30 pair of shoes that I was trying to buy, before their manager threw me out. The shoes were a nice touch, but the immediate apology was awesome. Best Buy also apologized immediately. There are some decent people left. Trader Joes never threw me out even once. It's the only chain that I went to so many of their stores and the people were wonderful. It is not easy living with a disability. I'm glad that there still are some decent people around.

Sadly, while the lawyers make hundreds of thousands of dollars litigating this, probably knowing it is wrong, the clients spend all that money thinking that I'm just another baloney disability complaint. I will continue fighting until I hit the end of the road or I win. I've had five or six cases in federal circuit courts. I have six or seven cases that I have filed in the US Supreme Court. I cannot stop this fight. No, I am not a serial litigant. I am a person with a disability whose life was destroyed by discrimination. This is happening right here in the United States, the country who lectures every other country on human rights, and by those same big corporations like this Defendant, the airlines, Apple, Target, and Walmart, who love to lecture us on right and wrong! They should all first look in the mirror.

## PLAINTIFF DID NOT BOOK A FLIGHT WITH ETIHAD

Somehow Defendant seems to believe that if Plaintiff did not book a flight, even though he was denied access to fly, that is not discrimination.  After Plaintiff went through the trauma with British Airways, he stopped booking first and then finding out if they will let him fly, but rather asked if he can fly first.  It would have cost over $100,000 to buy tickets on all the airlines, as he waits to be denied by an overwhelming majority of them.

I understand the argument that they are trying to make. They want to say that Plaintiff was only a "tester," someone who just attempts to fly in order to sue after they say no.  After reviewing my Complaint and the enormous information presented, it is obvious that I actually

needed to fly, and that I was not playing games.  No, I was not a tester. I did buy over a dozen tickets at times that I was allowed to fly; usually on Air France, and maybe a few times on Delta. I did buy on American Airlines, JetBlue, and on British Airways.  I could not afford to buy the ticket and then hope they'll take me, and if they don't, I would have to wait up to ten days until I get refunded.  It just was not realistic, and it certainly is not a prerequisite to being considered discriminated against.

**SHOTGUN PLEADING**

Without using these exact words, Defendant was accusing Plaintiff of shotgun pleading in his Complaint.  I do not believe that this is true.  Yes, the complaint is lengthy, and yes there's a lot to read. But Plaintiff organized it carefully, detailed each factual allegations for each Defendant separately, and specified which cause of action was alleged on which Defendant.  It would certainly have been simpler and more pleasant if Plaintiff did not have so many complaints against so many people.  That actually would have been wonderful.  Unfortunately, that is not the case. If Plaintiff only had ten more airlines allowing him to fly, he probably would have survived.

While the Plaintiff cannot afford an expensive law firm at this time, and must proceed pro se, he realizes that his pleadings in the complaint may need some improved wording, and he apologizes to the court for that. Plaintiff did not graduate high school, and lacked the financial capability to go to college and law school.

On the other hand, however, from a legal perspective, Plaintiff believes that the complaint is clear enough for the Defendants, who can afford and have hired very sharp attorneys, and that those attorneys can understand very well which causes of action go to which defendant. It is not confusing. It may be long and it may be a bit unprofessional, but it is clear

enough to understand that Plaintiff did state claims for which relief can be granted. The various Defendants' Motions to Dismiss show that the Complaint was understandable and clear enough at the very least.

The Defendant is welcome to debate all the issues of facts and of law at trial, but there is no basis for Medaire to be able to dismiss this before discovery and before a complete trial.

In GJR Investments, Inc. v. County of Escambia, Fla., 132 F. 3d 1359 - Court of Appeals, 11th Circuit 1998, which was a classic case of shotgun pleading, the Circuit Court said, "Rule 8 requires that federal courts give pleadings a liberal reading in the face of a 12(b)(6) motion to dismiss. This admonition is particularly true when the parties are proceeding pro se. Courts do and should show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education."

Here is a very clear and concise description of all types of shotgun pleadings, updated as recently as the year 2015:

> "Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most 1322*1322 common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of 1323*1323 shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Beach County Sheriff's Office, 792 F. 3d 1313 - Court of Appeals, 11th Circuit 2015.

As can be seen from the Complaint, none of these scenarios exist. The biggest headache is the length of this Complaint and its attachments. Unfortunately, the extent of the violations and the number of violators, determined the length, not the Plaintiff.

It is not type one of shotgun pleading, where each count includes the preceding count. It is not type two, "being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," as every claim, story, fact, and allegation are clearly connected to their appropriate cause of action and the appropriate Defendants.

It is not type three, as each claim is separated in a different count. It may not be a perfect job, as I'm sure it is not, but it is not chaotic and unreadable.  Finally, it is not type four, as every claim clearly specifies who it is against. All the Defendants had adequate notice of the claims against them and the grounds upon which each claim rests.

## JURISDICTION

Defendant is trying to argue that there is no jurisdiction over them in this Court. Being that Medaire actively operates significantly in the State of New York, they are under the New York long-arm statute and this Court has jurisdiction.

Specific Personal Jurisdiction: "A more limited form of submission to a state's authority, referred to as "specific jurisdiction," applies only in cases of disputes that "arise out of or are connected with the activities within the state." Int'l Shoe, 326 U.S. at 319, 66 S.Ct. 154." Loyalty Conversion Systems Corporation v. American Airlines, Inc. (E.D. Tex. 2014) 66 F.Supp.3d 813, 819.

This Plaintiff is a citizen of New York State and travels often to and from many other states, and international destinations.  This Defendant conspired with the airlines and others to deny him the ability to fly, and/or deny him the ability to utilize the airlines and transportation

options in the same manner or similar to the non-disabled in violation of the statutes listed herein. As the district judge from Texas determined, this gives this Court specific jurisdiction over this lawsuit.

Medaire services many of these airlines with medical advice including during the mask mandate, advising on the mask policy and exemptions for the disabled. They also handle medical emergencies and situations in all airports that the fly to and from. They were not only advising Etihad.

In their brochure (Exhibit B), where they want to illustrate the need for Medaire, they write the following:

> "Having a travel health and safety partner who can provide your crew medical or safety assistance they need when travelling is essential. Your partner should have vetted providers around the globe to treat illness and injury either via teleconsultation, hotel doctor or at a clinic or Accident & Emergency department of a hospital. It's also important that they have relationships with laboratories in their network for any COVID testing that is needed along the way."

Medaire has vetted providers and professionals across the globe, available at any airport where their clients fly to and from. These airlines do much business in New York and therefore by extension, Medaire does significant business in New York State.

The New York Long-Arm Statute subjects a defendant to specific jurisdiction where the defendant: (1) transacts business within the state; (2) commits a tort within the state; (3) commits a tort outside the state causing injury within the state, if the defendant either, "does or solicits business, or engages in any other persistent course of conduct, . . . derives substantial revenue from goods used or consumed or services rendered, in the state or, expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or

international commerce;" or (4) "owns, uses or possesses any real property situated within the state." N.Y.C.P.L.R. § 302 (a)(1) -(a)(4).

Even according to Medaire's arguments, they still fall under the New York long-arm Statute, since then they committed "a tort outside the state causing injury within the state." Either way, the jurisdiction is right here, in this Court.

## 42 U.S.C. § 1985(3) & 1986 – THE FEDERAL CONSPIRACY STATUTES

Plaintiff elaborated in the complaint, carefully addressing all the arguments that Defendants were going to present with respect to these conspiracy statutes.  I will just add one more point here.

My favorite argument was something like this, The Complaint Fails to Allege the Existence of a Conspiracy.  Wow! Forty-six airlines, federal agencies, medical advisory companies, and their employees all happen to be doing the exact same discrimination, yet there was no conspiracy.  It is just coincidence. This was also addressed in the Complaint. Being that 1985 (3) is valid, then the same goes for 1986.

## 42 USC 1986 IS NOT TIME BARRED IN THIS CASE

This situation was fluid.  The discrimination was continuous over many months.  It was difficult if not impossible to know if there will be harm, what that harm would be, and if there was liability to the Defendants. Plaintiff can show that he had no way of knowing he can sue and that he should sue much before he did sue.  This can be addressed in the litigation, but should certainly not be addressed here in a motion to dismiss. Besides, 1986 is about people not stopping discrimination when they had the opportunity. Plaintiff could not know who had the opportunity, when and how, until after months of significant research and review.

Additionally, Plaintiff began the process of complaining, by complaining to the Department of Transportation ("DOT"), as he thought that was where his rights were best addressed. After not getting much help there, he filed a petition for review, as described herein. During the time of all this litigation, both in the Courts and in the Administrative Tribunal, the statute of limitation is tolled, especially since initially the Plaintiff was expected to pursue redress exclusively through the DOT.

## THE CONSTITUTIONAL RIGHT TO TRAVEL

Other Defendants brought caselaw that stated that "minor restrictions on travel simply do not amount to the denial of a fundamental right." They brought Town of Southold v. Town of E. Hampton, 477 F.3d 38, 54 (2d Cir. 2007) ("travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right"). Medaire also brought another case with the same concept.

This has no similarity to our case where almost every airline, Greyhound Buses, Amtrak Trains, and ride-share companies ALL DENIED PLAINTIFF ACCESS and/or created regulations and demands that were in violation of disability laws, which Plaintiff alleges was done deliberately to deny Plaintiff and those similarly situated access to travel.

Here's an example.  A non-disabled person, and a disabled person prior to Covid and now after Covid fears subsided, are able to decide to fly somewhere, book a flight, and get on a plane. Then when they want to return home, they can book a flight and head home. During these Covid restrictions that were placed on Plaintiff, if Plaintiff wanted to fly, he had to get a medical certificate.  The date had to be right before the flight.  For his flight back, he needs another.  He would have to have a doctor on retainer, to keep providing medical certificates. Then there are

always multiple rules added, with the intention of discouraging someone like Plaintiff from traveling.

By forcing all these rules from the airlines under the design and authority of Defendant, Plaintiff shows that his constitutional right to travel was seriously hampered to a point where he lost enormous amounts of money, and was significantly injured. They cannot say with a straight face that this was just a minor restriction on travel.  The Andreadakis case (quoted earlier and provided to Plaintiff) that Defendant quoted is obviously different, as the judge states in the quote presented that that Plaintiff could have traveled with a mask. That is NOT the case with this Plaintiff.  THIS PLAINTIFF CANNOT TRAVEL WITH A MASK.  Besides, as described earlier, that case has significant flaws and limitations, since Plaintiff did not properly respond to the Motions to Dismiss. Forcing this Plaintiff to be responsible for that is taking away his due process.

## ACAA PRIVATE RIGHT OF ACTION

This was addressed thoroughly in the Complaint. First, ACAA applies to contractors and outside companies doing work for the airlines. The airlines cannot subcontract some work, and/or hire consultants, and then those people do not have to comply with ACAA.  That is not allowed. ACAA§ 382.15 is clear.

> "Do carriers have to make sure that contractors comply with the requirements of this Part?
> (a) As a carrier, you must make sure that your contractors that provide services to the public (including airports where applicable) meet the requirements of this part that would apply to you if you provided the services yourself.
> (b) As a carrier, you must include an assurance of compliance with this part in your contracts with any contractors that provide services to the public that are subject to the requirements of this part. Noncompliance with this assurance is a material breach of the contract on the contractor's part.
> (1) This assurance must commit the contractor to compliance with all applicable provisions of this Part in activities performed on behalf of the carrier.

(2) The assurance must also commit the contractor to implementing directives issued by your CROs under §§ 382.151 through 382.153."

Second, let's be clear, there is no binding precedent or settled law saying there is no private right of action.  There is a belief that there is a robust enforcement scheme at the Department of Transportation ("DOT"). That was the entire basis of the idea that there should be no private right. Well, guess what, that was proven wrong.

There probably was no need for major enforcement in the past, because airlines would police themselves, often to avoid bad publicity. We may have believed there was an enforcement scheme. No one really knew, because there wasn't much to enforce. Suddenly, there is Covid and an all-encompassing mask mandate, and we find out very clearly that there is no enforcement at all.  Congress wants these laws to be kept, and it is appropriate for this Court to confirm that the disabled are entitled to enforcement of their laws protecting their civil rights.

The Circuit Court cases were not en-banc and there is no binding precedent. They were based on a mistake or misunderstanding.  The Circuit Court cannot say that they cannot require the DOT to enforce the law and simultaneously say that there is a robust enforcement scheme.  It is only possible to be one or the other. This is a contradiction. See the Complaint for more on this argument.

Defendants bring Lopez v. Jet Blue Airways, 662 F.3d 593, 597 (2d Cir. 2011) as evidence and as precedent.

As described in the Complaint, Lopez says the following: "…because the statute provides an administrative enforcement scheme designed to vindicate fully the rights of disabled passengers." Lopez v. Jet Blue Airways, 662 F. 3d 593 - Court of Appeals, 2nd Circuit 2011. Plaintiff proved in the Complaint that this is a mistake.  There is no enforcement scheme, and that is exactly why the airlines can do what they want.  They are a cynical bunch.  They

discriminate against people with disabilities.  The DOT ignores it, as there is no process set up to enforce it.  Then the airlines go to court to fight it, saying "there is a robust enforcement by the DOT," knowing all that time that this is bogus.

The Lopez case is not precedent.  It relies on Sandoval.  Many lawyers and sometimes judges might rely on Sandoval, but that case is not an ACAA violation.  See the Complaint where Plaintiff clarifies these differences (Paragraph 1050 & 1051). At the time of Lopez, the real truth of the DOT lack of enforcement and lack of ability to enforce was not yet clear. Covid-19 brought out the low moral character of the airlines, and the absolute inability of the DOT to address it.  The Circuit Court decisions brought down in the Complaint Abadi v. DOT in the 2nd Circuit AKA In Re: Aaron Abadi, and Abadi v. DOT in the DC Circuit (described in the Complaint), showed that the DOT had no real enforcement mandate and therefore the Circuit Courts have no power over them to require enforcement.

Without any real precedent, and with the understanding that there was no real enforcement process set up through the DOT, this Court must look at this with fresh eyes, and make a decision based on the facts and the understanding of the law.

## PREEMPTION BY FEDERAL LAWS

First the Defendant claims that they are not subject to those federal laws, and now they want those same laws to preempt.  You can't have your cake and eat it.  Which is it?!  If they are not subject to those laws, then they are not protected by preemption.

The Complaint addresses the preemption issue at length. The truth is that preemption only is a problem when there is a conflict. State law is always valid when it does not override or conflict with federal law. There are ADA laws for disabilities and then almost every state enacted disability law to add to and to complement the ADA.  The ACAA is similar.

Here is a clarification of the preemption concept by the Supreme Court of the United States.

"Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land;... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus, since our decision in McCulloch v. Maryland, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." Maryland v. Louisiana, 451 U. S. 725, 746 (1981). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 230 (1947). Accordingly, "`[t]he purpose of Congress is the ultimate touchstone' " of pre-emption analysis. Malone v. White Motor Corp., 435 U. S. 497, 504 (1978) (quoting Retail Clerks v. Schermerhorn, 375 U. S. 96, 103 (1963)). Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U. S. 519, 525 (1977). In the absence of an express congressional command, <u>state law is pre-empted if that law actually conflicts with federal law,</u> see Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n, 461 U. S. 190, 204 (1983), or if federal law so thoroughly occupies a legislative field "`as to make reasonable the inference that Congress left no room for the States to supplement it.' " Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta, 458 U. S. 141, 153 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 U. S., at 230)." Cipollone v. Liggett Group, Inc., 505 US 504 - Supreme Court 1992.

There most certainly is no preemption without a real conflict.

Here is another example of preemption issues needing a conflict to be an issue:

"Thus, <u>there is no basis for us to find either that it would have been "impossible" for Independence to comply with both state law and the ACAA, or that state law would have been an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress."</u> English, 496 U.S. at 79, 110 S.Ct. 2270." Elassaad v. Independence Air, Inc., 613 F.3d 119 (2010) 3rd Circuit.  (While this is a 3rd Circuit case, the decision is quoted from Supreme Court caselaw).

The truth is that preemption would not apply in this case.  Certainly, it should not be enough now to derail this Complaint in the Motion to Dismiss stage.

## STATE CIVIL RIGHTS CLAIMS

Defendants says that it is not responsible, as it is not the airline. The problem is that if they're in charge of the process and they are the consultants brought in to handle it, then as Plaintiff keeps pointing out, they're a major part of the discrimination and they should be at least as responsible as the airlines themselves. The Complaint addresses all these issues that Defendants brought up in their Motion to Dismiss.

Preemption does not apply, as the entire purpose of state human rights laws are in addition to federal laws. If preemption existed, these laws would all be meaningless. The only time preemption exists is if there is a conflict. For example, if federal law requires a 15-foot ramp for wheelchair access, and state law says only 14-feet, then the state law would be preempted by the federal law. Adding damages to existing federal law that has no damages, is not a problem of preemption as discussed in the Complaint itself and above.

## PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY THE FTMM

This one seems like a joke. Defendant wants to claim preemption by a mask mandate that is not a law and was never even legal. It certainly cannot preempt anything.

## TORT

Defendant brought up preemption again. As Plaintiff describes in the Complaint and elsewhere in this document, preemption does not apply here.

The Defendant also claims that the Complaint fails to allege the requisite elements of the tort claim. That is not true. They should read the Complaint.

Also, they again claim that they were not involved. We responded to that. If they want to call my complaint a shotgun pleading, what is their motion then? At lease I have a good excuse, as I did not graduate law school.

**NEGLIGENCE:**   The Complaint itself responds to these arguments. And see herein.

## PROMISSORY ESTOPPEL

The Complaint says the following. "Defendants in their advertisements, on their websites, in their brochures and statements all allege that they are decent people, that they will treat those with disabilities and/or special needs with care." See the attached two brochures. These promises are not kept.  They were never intended to be kept. It would seem that they actually focus on teaching airlines how to bypass their laws and the caring for the disabled passengers.

## REHABILITATION ACT ("RA")

The Complaint describes at length how and why Medaire is responsible for the RA.  They do not deny that they receive significant funding from the government.  They must adhere to their commitments.

## INJURIOUS FALSEHOODS

Defendant want this dismissed since they claim that Plaintiff did not identify any relief. But Plaintiff did identify his demand for damages and what the Court deems just and proper.

## MEDICAL MALPRACTICE

Plaintiff was forced by the airlines, to be evaluated by the medical advisors, in order to determine their disability status, and if they can or cannot wear a mask.  They refused to rely on the Plaintiffs' own doctors' letters.  They chose to have Plaintiffs medical conditions reviewed and determined by these agencies, and/or their own employees.

While Plaintiffs did not choose this treatment, Defendants, Medaire & Stat-MD did choose and contract to provide medical services to passengers with disabilities, in order to determine if they should or should not fly without a mask.

Whether they showed up in person, or just gathered some information by phone and/or from the airline staff, in essence they were conducting a medical review on behalf of the airline

and on behalf of the Plaintiffs.  They had a duty to be honest, fair, and protect the patients.  They breached that duty in various ways, as described in the Amended Complaint.

Now, in cases where the medical examination was just to report to an employer about the health of a prospective employee, and his/her ability to do the job, that is not the same as here. There was no medical decision provided to the patient/employee.  Here, a medical decision was made, and the patient was forced to wear a mask, in contrast to his/her own medical doctors' opinions, and ultimately causing severe medical and psychological injuries.

In Keene, the case reads as follows:

"In his motion to strike, Dr. Wiggins asserts he was conducting an examination solely for the purpose of rating the injury to settle the claim and not for care or treatment; there is no physician-patient relationship and hence no duty was owed." Keene v. Wiggins, 69 Cal. App. 3d 308 - Cal: Court of Appeal, 4th Appellate Dist., 1st Div. 1977.

There is no comparison to our case here. Our case would be more similar to a child who goes to the camp doctor and gets pills, and then has some injuries based on that. Although the doctor does work for the camp, and is on the camp's payroll, he/she still has a duty to the child. In our case, there was a medical determination, and a recommendation for the patient. They have a duty to the Plaintiffs, and they breached that duty.

## FRAUDULENT MISREPRESENTATION

Defendant wants this dismissed due to preemption.  This was responded to in several places in this document and in the Complaint.  That same response applies to negligence.

Additionally, Defendants claim that the fraudulent misrepresentation was not sufficiently clear.  Plaintiff does not believe that this is the case. If the Court agrees with the Defendant, Plaintiff would like to take the opportunity to clarify in an amended complaint.

## MOOTNESS

Defendants brought up the MOOTNESS argument. They are asking this Court to consider this case moot, as currently the mask requirement is no longer in effect.

This issue was addressed thoroughly in this Complaint. Even till this day there are constant new Covid rules, restrictions, and actions taken by the CDC, private companies, and various government agencies.

The CDC just put a new expansive testing project for multiple diseases at airports.  It was in the news just recently.[1]

Mootness does not apply in this case for multiple reasons. Now, suddenly there are companies, organizations, hospitals, schools and the like that are reinstating mask policies.[2]

In order to claim mootness, the Defendants have a heavy burden to prove, as in *Sheely,* "The "formidable," "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173 (11th Cir. 2007).

In order to be considered moot it has to pass the following test:

""A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).

If tomorrow morning, there is an increase in the Covid deaths and hospitalizations, it is likely that they will try to reinstate mask mandates. If a new pandemic showed up, it is likely that they will try to reinstate mask mandates. The CDC, NIH, Anthony Fauci, and even Bill Gates

---

[1] https://www.cdc.gov/media/releases/2023/s1107-testing-respiratory-viruses.html
[2] https://www.newsweek.com/mask-mandates-return-list-places-restrictions-1823069

have been predicting another pandemic in the very near future. I would listen to them, because they predicted the last pandemic.[3]

Besides, initially, before there was a mandate, the airlines all had their own policies, and when the mandate ended, many airlines continued their own policies.

The DC Circuit writes the following in a challenge to the TSA mask mandate: "Because there is a more-than-speculative chance that the challenged conduct will recur, these cases are not moot." Wall v. Transportation Sec. Admin., No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023).

Besides all that, the fact that there are injuries alleged and damages claimed, it is important to litigate all the discrimination claims in order to determine if there was discrimination, get declaratory relief, and only then damages can be applied to the state claims. It is still extremely relevant. Even with respect to Federal Defendants it is thus relevant. The point of mootness stopping a lawsuit, is the idea that there is nothing the court can do to bring redress or rectify the wrong. The bar isn't very high.  The Supreme Court recently held that even just nominal damages are sufficient redress to warrant a litigation.

"For purposes of this appeal, it is undisputed that Uzuegbunam experienced a completed violation of his constitutional rights when respondents enforced their speech policies against him. Because "every violation [of a right] imports  damage," Webb, 29 F. Cas., at 509, nominal damages can redress Uzuegbunam's injury even if he cannot or chooses not to quantify that harm in economic terms." UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. Supreme Court March 8, 2021.

---

[3] https://centerforhealthsecurity.org/our-work/tabletop-exercises/event-201-pandemic-tabletop-exercise

Also, see this Supreme Court decision in full; here is an excerpt:

"<u>A declaratory judgment can then be used as a predicate to further relief, including an injunction.</u>
28 U. S. C. § 2202; see Vermont Structural Slate Co. v. Tatko Brothers Slate Co., 253 F. 2d 29
(C. A. 2d Cir. 1958); United States Lines Co. v. Shaughnessy, 195 F. 2d 385 (C. A. 2d Cir.
1952)." Powell v. McCormack, 395 US 486 - Supreme Court 1969

Let us put the MOOTNESS claims behind us and move forward on this litigation.

## PUNITIVE DAMAGES

"Punitive damages may properly be imposed to further a State's legitimate interests in
punishing unlawful conduct and deterring its repetition." BMW of North America, Inc. v. Gore,
517 US 559 - Supreme Court 1996.

There are many legal components and variations to the Punitive Damages question.
ADA and RA do not allow for punitive damages. Many of the violations do allow for Punitive
Damages. Here are some examples.

"Punitive damages are available in "a proper" § 1983 action." Carlson v. Green, 446 US
14 - Supreme Court 1980.

"As early as 1915 the Mississippi Supreme Court had recognized that punitive damages
were available in a contract case when "the act or omission constituting the breach of the
contract amounts also to the commission of a tort." Pilot Life Ins. Co. v. Dedeaux, 481 US 41 -
Supreme Court 1987.

"The Complaint states a claim for punitive damages, which Defendant seeks to dismiss.
Dkt. No. 1, at 32-33. Punitive damages may be awarded as a matter of federal law under 42
U.S.C. § 1983 or Georgia law under O.C.G.A. § 51-12-5.1. As to recovery under federal law, "a
jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's

conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Similarly, under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).

Plaintiffs apparently admit that they cannot "seek punitive damages under the Montreal Convention." Dkt. No. 15, at 7. However, because the Montreal Convention does not apply to the remaining claims, as pleaded in the Complaint and left after this Order, this concession is unwarranted. Greater factual development is necessary to determine whether Plaintiffs can make a claim for punitive damages. Therefore, Defendant's motion to dismiss this claim is DENIED." Benjamin v. American Airlines, Inc., 32 F. Supp. 3d 1309 - Dist. Court, SD Georgia 2014.

I brought this last case to show that the Punitive Damages Question is complicated, and the preemption question is also sometimes applicable and at other times not. For these issues to be resolved in a motion to dismiss would be unreasonable and unfair.

The preemption question was addressed at length in the Complaint. The first and most important response is that preemption only applies when there is a conflict. There are ADA laws, yet each state created their own disability laws. If there is blanket preemption, the states are wasting their time, and no state disability claim should ever be acted upon in court. That is not the case.

"The Ninth Circuit found in Gilstrap v. United Air Lines, "[t]he ACAA does not, however, preempt any state remedies that may be available when airlines violate those

standards." 709 F.3d 995, 1010 (9th Cir. 2013)" Segalman v. Southwest Airlines Co., 2016 WL 146196, at *3 (E.D.Cal., 2016)

And further, it says, "Federal regulations "do[ ] not, however, preempt any state remedies that may be available when airlines violate those standards." Id.

The Defendants are disputing the Punitive Damages. I don't believe it would be appropriate for the Court to address that now, at the motion to dismiss stage, but rather this is something that should be left for trial, or at least until there's a motion for summary judgment.

## CONCLUSION

This case is a complex case, with many aspects, both of facts and legal issues. The above response in conjunction with the Complaint itself should sufficiently resolve any of the issues brought up in the Motion to Dismiss. The U.S. Constitution affords each citizen their own due process. Plaintiff asks this Court to allow for the lawsuit to proceed and we can address all these items in trial. A motion to dismiss should not be used to take away a person's right to justice.

**WHEREFORE**, Plaintiff asks this court to DENY this motion to dismiss in its entirety, and to schedule an Initial Case Management Conference in accordance with Rule 16(b) of the Federal Rules of Civil Procedure.

Respectfully submitted this December 27, 2023.

s/Aaron Abadi

AARON ABADI, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
516-639-4100
Email:  aa@neg.com