# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AARON ABADI,**  Plaintiff  V.  **AMERICAN AIRLINES, INC., et al** | **CASE #  1:23-cv-04033-LJL** |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO
# STAT-MD'S MOTION TO DISMISS

BY:

AARON ABADI
Pro Se Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
Tel: 516-639-4100
Email:  aa@neg.com

COMES NOW Plaintiff, *pro se*, and responds to Defendants Center for Emergency Medicine of Western Pennsylvania d/b/a STAT-MD's ("STAT-MD") Motion to Dismiss (Docs. 234 & 234-1). The Complaint was pretty thorough and did address most of the issues raised in this motion. Plaintiff will attempt to focus in this response on elaborating on some of that, and/or addressing issues not responded to in the Complaint itself.

Plaintiff, Aaron Abadi, has sensory processing disorder. He cannot wear a mask or glasses, or anything on his head or face. When the airlines started requiring masks, they refused to allow Plaintiff to fly, and/or discriminated against him constantly. He was yelled at, denied access to fly, and even once left stranded in France by Delta Airlines, allegedly, as per Delta, on the instructions of STAT-MD. This lasted throughout the mask policies and mandates. He provided evidence of his disability, but these airlines did not care. The airlines were being advised by one of two main medical advisory groups, who are Defendants in this case, Medaire and Stat-MD.

This Defendant, STAT-MD, was directly involved in the denial of access to fly by this Plaintiff, and in the various forms of discrimination perpetrated on Plaintiff by many of the airlines. It was their job to determine the policy with respect to mask wearing, verses allowing for exemptions for those with disabilities who could nor wear a mask.

Here we see a bit of the game that these airlines and medical defendants were playing. Most airlines either contracted with Stat-MD, or Medaire, and these companies became the excuse why they don't have to accommodate a disability. The airline would say, "We asked STAT-MD or Medaire, and sorry, they said no. It's not our fault. It's STAT-MD or Medaire's

fault." I then try to reach out to STAT-MD or Medaire, and they would say please talk to your airline, as we work with them directly and cannot respond. Nice little game they had going.

This is what is written on the STAT-MD website: ""STAT-MD supports various airlines uphold their policies, including requirements for face masks. If you are traveling, or are considering traveling, and have questions regarding a wearing a face mask during flight, please contact the specific airline directly. Requests received from passengers or potential passengers are unable to be processed."  Medaire had an identical process.

Medaire and/or STAT-MD says, "Don't call me, call the airline." The airlines say, "STAT-MD and/or Medaire said you cannot fly." Sounds to me like a bunch of middle school children blaming their indiscretions on everyone else.

That is why I included both medical advisory companies, as they are an essential part of the conspiracy and the discrimination itself, if not the primary cause of it all. Yes, they are outside contractors, but they are built in to the system directly.

The inability to travel, caused severe financial injuries to Plaintiff, who is currently penniless and had to file this with the generous help of the Court, through an IFP Motion. Plaintiff had his entire income destroyed and ability to make income was taken from him. The Motion to Dismiss addresses many of the Counts of the Causes of Action, and Plaintiff will respond accordingly.

**MOOTNESS**

Defendants brought up the MOOTNESS argument. They are asking this Court to consider this case moot, as currently the mask requirement is no longer in effect.

This issue was addressed thoroughly in this Complaint. Even till this day there are constant new Covid rules, restrictions, and actions taken by the CDC, private companies, and various government agencies.

The CDC just put a new expansive testing project for multiple diseases at airports. It was in the news just recently.[1]

Mootness does not apply in this case for multiple reasons. Now, suddenly there are companies, organizations, hospitals, schools and the like that are reinstating mask policies.[2]

In order to claim mootness, the Defendants have a heavy burden to prove, as in *Sheely,* "The "formidable," "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173 (11th Cir. 2007).

In order to be considered moot it has to pass the following test:

""A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).

If tomorrow morning, there is an increase in the Covid deaths and hospitalizations, it is likely that they will try to reinstate mask mandates. If a new pandemic showed up, it is likely that they will try to reinstate mask mandates. The CDC, NIH, Anthony Fauci, and even Bill Gates have been predicting another pandemic in the very near future. I would listen to them, because they predicted the last pandemic.[3]

---

[1] https://www.cdc.gov/media/releases/2023/s1107-testing-respiratory-viruses.html
[2] https://www.newsweek.com/mask-mandates-return-list-places-restrictions-1823069
[3] https://centerforhealthsecurity.org/our-work/tabletop-exercises/event-201-pandemic-tabletop-exercise

Besides, initially, before there was a mandate, the airlines all had their own policies, and when the mandate ended, many airlines continued their own policies.

The DC Circuit writes the following in a challenge to the TSA mask mandate: "<u>Because there is a more-than-speculative chance that the challenged conduct will recur, these cases are not moot</u>." Wall v. Transportation Sec. Admin., No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023).

Besides all that, the fact that there are injuries alleged and damages claimed, it is important to litigate all the discrimination claims in order to determine if there was discrimination, get declaratory relief, and only then damages can be applied to the state claims. It is still extremely relevant. Even with respect to Federal Defendants it is thus relevant. The point of mootness stopping a lawsuit, is the idea that there is nothing the court can do to bring redress or rectify the wrong. The bar isn't very high.  The Supreme Court recently held that even just nominal damages are sufficient redress to warrant a litigation.

"For purposes of this appeal, it is undisputed that Uzuegbunam experienced a completed violation of his constitutional rights when respondents enforced their speech policies against him. Because "every violation [of a right] imports  damage," Webb, 29 F. Cas., at 509, nominal damages can redress Uzuegbunam's injury even if he cannot or chooses not to quantify that harm in economic terms." UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. Supreme Court March 8, 2021.

Also, see this Supreme Court decision in full; here is an excerpt:
"<u>A declaratory judgment can then be used as a predicate to further relief, including an injunction</u>. 28 U. S. C. § 2202; see Vermont Structural Slate Co. v. Tatko Brothers Slate Co., 253 F. 2d 29

(C. A. 2d Cir. 1958); United States Lines Co. v. Shaughnessy, 195 F. 2d 385 (C. A. 2d Cir. 1952)." Powell v. McCormack, 395 US 486 - Supreme Court 1969

Let us put the MOOTNESS claims behind us and move forward on this litigation.

## **SHOTGUN PLEADING**

Defendant is accusing Plaintiff of shotgun pleading in his Complaint. I do not believe that this is true. Yes, the complaint is lengthy, and yes there's a lot to read. But Plaintiff organized it carefully, detailed each factual allegations for each Defendant separately, and specified which cause of action was alleged on which Defendant. It would certainly have been simpler and more pleasant if Plaintiff did not have so many complaints against so many people. That actually would have been wonderful. Unfortunately, that is not the case. If Plaintiff only had ten more airlines allowing him to fly, he probably would have survived.

While the Plaintiff cannot afford an expensive law firm at this time, and must proceed pro se, he realizes that his pleadings in the complaint may need some improved wording, and he apologizes to the court for that. Plaintiff did not graduate high school, and lacked the financial capability to go to college and law school.

On the other hand, however, from a legal perspective, Plaintiff believes that the complaint is clear enough for the Defendants, who can afford and have hired very sharp attorneys, and that those attorneys can understand very well which causes of action go to which defendant. It is not confusing. It may be long and it may be a bit unprofessional, but it is clear enough to understand that Plaintiff did state claims for which relief can be granted. The various Defendants' Motions to Dismiss show that the Complaint was understandable and clear enough at the very least.

The Court in its Order (Doc. 210) stated the following:

<u>"Plaintiff has demonstrated his ability to frame a complaint setting forth his grievances articulately and in language that is understandable</u>." That certainly does not sound like shotgun pleading.

The Defendant is welcome to debate all the issues of facts and of law at trial, but there is no basis for STAT-MD to be able to dismiss this before discovery and before a complete trial.

In GJR Investments, Inc. v. County of Escambia, Fla., 132 F. 3d 1359 - Court of Appeals, 11th Circuit 1998, which was a classic case of shotgun pleading, the Circuit Court said, "Rule 8 requires that federal courts give pleadings a liberal reading in the face of a 12(b)(6) motion to dismiss. This admonition is particularly true when the parties are proceeding pro se. Courts do and should show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education."

Here is a very clear and concise description of all types of shotgun pleadings, updated as recently as the year 2015:

> "Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most 1322*1322 common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of 1323*1323 shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Beach County Sheriff's Office, 792 F. 3d 1313 - Court of Appeals, 11th Circuit 2015.

As can be seen from the Complaint, none of these scenarios exist. The biggest headache is the length of this Complaint and its attachments. Unfortunately, the extent of the violations and the number of violators, determined the length, not the Plaintiff.

It is not type one of shotgun pleading, where each count includes the preceding count. It is not type two, "being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," as every claim, story, fact, and allegation are clearly connected to their appropriate cause of action and the appropriate Defendants.

It is not type three, as each claim is separated in a different count. It may not be a perfect job, as I'm sure it is not, but it is not chaotic and unreadable.  Finally, it is not type four, as every claim clearly specifies who it is against. <u>All the Defendants had adequate notice of the claims against them and the grounds upon which each claim rests</u>.

## **JURISDICTION**

Defendant is trying to argue that there is no jurisdiction over them in this Court. Being that STAT-MD actively operates significantly in the State of New York, they are under the New York long-arm statute and this Court has jurisdiction.

Specific Personal Jurisdiction: "A more limited form of submission to a state's authority, referred to as "specific jurisdiction," applies only in cases of disputes that "arise out of or are connected with the activities within the state." Int'l Shoe, 326 U.S. at 319, 66 S.Ct. 154." Loyalty Conversion Systems Corporation v. American Airlines, Inc. (E.D. Tex. 2014) 66 F.Supp.3d 813, 819.

This Plaintiff is a citizen of New York State and travels often to and from many other states, and international destinations.  This Defendant conspired with the airlines and others to

deny him the ability to fly, and/or deny him the ability to utilize the airlines and transportation options in the same manner or similar to the non-disabled in violation of the statutes listed herein.  As the district judge from Texas determined, this gives this Court specific jurisdiction over this lawsuit.

STAT-MD services many of these airlines with medical advice including during the mask mandate, advising on the mask policy and exemptions for the disabled.  They also handle medical emergencies and situations in all airports that the fly to and from. They were not only advising Delta Airlines.

STAT-MD does screenings of passengers in almost every airport in the United States. This is usually done virtually, by working through the staff of the airlines. Below is a post by STAT-MD that shows this, and also shows how STAT-MD refuses to address its mask decisions and passes the buck back to the airlines.



STAT-MD has vetted providers and professionals across the globe, available at any airport where their clients fly to and from. These airlines do much business in New York and therefore by extension, STAT-MD does significant business in New York State.

The New York Long-Arm Statute subjects a defendant to specific jurisdiction where the defendant: (1) transacts business within the state; (2) commits a tort within the state; (3) commits a tort outside the state causing injury within the state, if the defendant either, "does or solicits business, or engages in any other persistent course of conduct, . . . derives substantial revenue from goods used or consumed or services rendered, in the state or, expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state." N.Y.C.P.L.R. § 302 (a)(1) -(a)(4).

Even according to STAT-MD's arguments, they still fall under the New York long-arm Statute, since then they committed "a tort outside the state causing injury within the state." Either way, the jurisdiction is right here, in this Court.

## **MEDICAL MALPRACTICE**

Plaintiff was forced by the airlines, to be evaluated by the medical advisors, in order to determine their disability status, and if they can or cannot wear a mask. They refused to rely on the Plaintiffs' own doctors' letters. They chose to have Plaintiffs medical conditions reviewed and determined by these agencies, and/or their own employees.

While Plaintiffs did not choose this treatment, Defendants, Medaire & Stat-MD did choose and contract to provide medical services to passengers with disabilities, in order to determine if they should or should not fly without a mask.

Whether they showed up in person, or just gathered some information by phone and/or from the airline staff, in essence they were conducting a medical review on behalf of the airline and on behalf of the Plaintiffs. They had a duty to be honest, fair, and protect the patients. They breached that duty in various ways, as described in the Amended Complaint.

Now, in cases where the medical examination was just to report to an employer about the health of a prospective employee, and his/her ability to do the job, that is not the same as here. There was no medical decision provided to the patient/employee. Here, a medical decision was made, and the patient was forced to wear a mask, in contrast to his/her own medical doctors' opinions, and ultimately causing severe medical and psychological injuries.

In Keene, the case reads as follows:

"In his motion to strike, Dr. Wiggins asserts he was conducting an examination solely for the purpose of rating the injury to settle the claim and not for care or treatment; there is no physician-patient relationship and hence no duty was owed." Keene v. Wiggins, 69 Cal. App. 3d 308 - Cal: Court of Appeal, 4th Appellate Dist., 1st Div. 1977.

There is no comparison to our case here. Our case would be more similar to a child who goes to the camp doctor and gets pills, and then has some injuries based on that. Although the doctor does work for the camp, and is on the camp's payroll, he/she still has a duty to the child. In our case, there was a medical determination, and a recommendation for the patient. They have a duty to the Plaintiffs, and they breached that duty.

## 42 U.S.C. § 1985(3) & 1986 – THE FEDERAL CONSPIRACY STATUTES

Plaintiff elaborated in the complaint, carefully addressing all the arguments that Defendants were going to present with respect to these conspiracy statutes. I will just add one more point here.

My favorite argument was something like this, The Complaint Fails to Allege the Existence of a Conspiracy. Wow! Forty-six airlines, federal agencies, medical advisory companies, and their employees all happen to be doing the exact same discrimination, yet there was no conspiracy. It is just coincidence. This was also addressed in the Complaint. Being that 1985 (3) is valid, then the same goes for 1986.

## 42 USC 1986 IS NOT TIME BARRED IN THIS CASE

This situation was fluid. The discrimination was continuous over many months. It was difficult if not impossible to know if there will be harm, what that harm would be, and if there was liability to the Defendants. Plaintiff can show that he had no way of knowing he can sue and that he should sue much before he did sue. This can be addressed in the litigation, but should certainly not be addressed here in a motion to dismiss. Besides, 1986 is about people not stopping discrimination when they had the opportunity. Plaintiff could not know who had the opportunity, when and how, until after months of significant research and review.

Additionally, Plaintiff began the process of complaining, by complaining to the Department of Transportation ("DOT"), as he thought that was where his rights were best addressed. After not getting much help there, he filed a petition for review, as described herein. During the time of all this litigation, both in the Courts and in the Administrative Tribunal, the

<u>statute of limitation is tolled, especially since initially the Plaintiff was expected to pursue redress exclusively through the DOT</u>.

## REHABILITATION ACT ("RA")

The Complaint describes at length how and why STAT-MD is responsible for the RA. They do not deny that they receive significant funding from the government. They must adhere to their commitments.

## ACAA PRIVATE RIGHT OF ACTION

This was addressed thoroughly in the Complaint. First, ACAA applies to contractors and outside companies doing work for the airlines. The airlines cannot subcontract some work, and/or hire consultants, and then those people do not have to comply with ACAA. That is not allowed. ACAA§ 382.15 is clear.

> "Do carriers have to make sure that contractors comply with the requirements of this Part?
> (a) As a carrier, you must make sure that your contractors that provide services to the public (including airports where applicable) meet the requirements of this part that would apply to you if you provided the services yourself.
> (b) As a carrier, you must include an assurance of compliance with this part in your contracts with any contractors that provide services to the public that are subject to the requirements of this part. Noncompliance with this assurance is a material breach of the contract on the contractor's part.
> (1) This assurance must commit the contractor to compliance with all applicable provisions of this Part in activities performed on behalf of the carrier.
> (2) The assurance must also commit the contractor to implementing directives issued by your CROs under §§ 382.151 through 382.153."

Second, let's be clear, there is no binding precedent or settled law saying there is no private right of action. There is a belief that there is a robust enforcement scheme at the

Department of Transportation ("DOT"). That was the entire basis of the idea that there should be no private right. Well, guess what, that was proven wrong.

There probably was no need for major enforcement in the past, because airlines would police themselves, often to avoid bad publicity. We may have believed there was an enforcement scheme. No one really knew, because there wasn't much to enforce. Suddenly, there is Covid and an all-encompassing mask mandate, and we find out very clearly that there is no enforcement at all.  Congress wants these laws to be kept, and it is appropriate for this Court to confirm that the disabled are entitled to enforcement of their laws protecting their civil rights.

The Circuit Court cases were not en-banc and there is no binding precedent. They were based on a mistake or misunderstanding.  The Circuit Court cannot say that they cannot require the DOT to enforce the law and simultaneously say that there is a robust enforcement scheme.  It is only possible to be one or the other. This is a contradiction. See the Complaint for more on this argument.

Defendants bring Lopez v. Jet Blue Airways, 662 F.3d 593, 597 (2d Cir. 2011) as evidence and as precedent.

As described in the Complaint, Lopez says the following: "…because the statute provides an administrative enforcement scheme designed to vindicate fully the rights of disabled passengers." Lopez v. Jet Blue Airways, 662 F. 3d 593 - Court of Appeals, 2nd Circuit 2011. Plaintiff proved in the Complaint that this is a mistake.  There is no enforcement scheme, and that is exactly why the airlines can do what they want.  They are a cynical bunch.  They discriminate against people with disabilities.  The DOT ignores it, as there is no process set up to enforce it.  Then the airlines go to court to fight it, saying "there is a robust enforcement by the DOT," knowing all that time that this is bogus.

The Lopez case is not precedent. It relies on Sandoval. Many lawyers and sometimes judges might rely on Sandoval, but that case is not an ACAA violation. See the Complaint where Plaintiff clarifies these differences (Paragraph 1050 & 1051). At the time of Lopez, the real truth of the DOT lack of enforcement and lack of ability to enforce was not yet clear. Covid-19 brought out the low moral character of the airlines, and the absolute inability of the DOT to address it. The Circuit Court decisions brought down in the Complaint Abadi v. DOT in the 2nd Circuit AKA In Re: Aaron Abadi, and Abadi v. DOT in the DC Circuit (described in the Complaint), showed that the DOT had no real enforcement mandate and therefore the Circuit Courts have no power over them to require enforcement.

Without any real precedent, and with the understanding that there was no real enforcement process set up through the DOT, this Court must look at this with fresh eyes, and make a decision based on the facts and the understanding of the law.

Defendant incorporated in its Motion to Dismiss the responses from the Motion to Dismiss of its Co-Defendants, American Airlines et al. Plaintiff hereby incorporates his response to that Motion (Doc. 172).

**STATE CIVIL RIGHTS CLAIMS**

Defendant essentially argues that it is not responsible, as it is not the airline. The problem is that if they're in charge of the process and they are the consultants brought in to handle it, then as Plaintiff keeps pointing out, they're a major part of the discrimination and they should be at least as responsible as the airlines themselves. The Complaint addresses all these issues that Defendants brought up in their Motion to Dismiss.

Preemption does not apply, as the entire purpose of state human rights laws are in addition to federal laws. If preemption existed, these laws would all be meaningless. The only time preemption exists is if there is a conflict. For example, if federal law requires a 15-foot ramp for wheelchair access, and state law says only 14-feet, then the state law would be preempted by the federal law. Adding damages to existing federal law that has no damages, is not a problem of preemption as discussed in the Complaint itself and above.

**PREEMPTION BY FEDERAL LAWS**

First the Defendant claims that they are not subject to those federal laws, and now they want those same laws to preempt. You can't have your cake and eat it. Which is it?! If they are not subject to those laws, then they are not protected by preemption.

The Complaint addresses the preemption issue at length. The truth is that preemption only is a problem when there is a conflict. State law is always valid when it does not override or conflict with federal law. There are ADA laws for disabilities and then almost every state enacted disability law to add to and to complement the ADA. The ACAA is similar.

Here is a clarification of the preemption concept by the Supreme Court of the United States.

> "Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land;. .. any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus, since our decision in McCulloch v. Maryland, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." Maryland v. Louisiana, 451 U. S. 725, 746 (1981). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 230 (1947). Accordingly, "`[t]he purpose of Congress is the ultimate touchstone' " of pre-emption analysis. Malone v. White Motor Corp., 435 U. S. 497, 504 (1978) (quoting Retail Clerks v. Schermerhorn, 375 U. S. 96, 103 (1963)).

Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U. S. 519, 525 (1977). In the absence of an express congressional command, <u>state law is pre-empted if that law actually conflicts with federal law</u>, see Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n, 461 U. S. 190, 204 (1983), or if federal law so thoroughly occupies a legislative field "`as to make reasonable the inference that Congress left no room for the States to supplement it.' " Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta, 458 U. S. 141, 153 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 U. S., at 230)." Cipollone v. Liggett Group, Inc., 505 US 504 - Supreme Court 1992.

There most certainly is no preemption without a real conflict.

Here is another example of preemption issues needing a conflict to be an issue:

"Thus, <u>there is no basis for us to find either that it would have been "impossible" for Independence to comply with both state law and the ACAA, or that state law would have been an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress</u>." English, 496 U.S. at 79, 110 S.Ct. 2270." Elassaad v. Independence Air, Inc., 613 F.3d 119 (2010) 3rd Circuit.  (While this is a 3rd Circuit case, the decision is quoted from Supreme Court caselaw).

The truth is that preemption would not apply in this case.  Certainly, it should not be enough now to derail this Complaint in the Motion to Dismiss stage.

**<u>PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY THE FTMM</u>**

This one seems like a joke.  Defendant wants to claim preemption by a mask mandate that is not a law and was never even legal.  It certainly cannot preempt anything.

**<u>TORT</u>**

Defendant brought up preemption again.  As Plaintiff describes in the Complaint and elsewhere in this document, preemption does not apply here.

The Defendant also claims that the Complaint fails to allege the requisite elements of the tort claim.  That is not true.  They should read the Complaint.

**PROMISSORY ESTOPPEL**

The Complaint says the following. "Defendants in their advertisements, on their websites, in their brochures and statements all allege that they are decent people, that they will treat those with disabilities and/or special needs with care."

STAT-MD states on his website, "Our mission is to combine diversion mitigation with expert care of passengers."[4] They write many other similar promises on their website, and in their advertisements, brochures, and documents. These promises are not kept. They were never intended to be kept. It would seem that they actually focus on teaching airlines how to bypass their laws and the caring for the disabled passengers.

**INJURIOUS FALSEHOODS**

Defendant want this dismissed since they claim that Plaintiff did not identify any relief. But Plaintiff did identify his demand for damages and what the Court deems just and proper.

**MULTIPLE CLAIMS**

Defendant argues that the following claims were not articulated thoroughly. Defendant listed them as follows: "(1) "intentional and/or unintentional tort"; (2) negligence; (3) intentional infliction of emotional distress; (4) breach of contract; (5) promissory estoppel; (6) tortious interference; (7) injurious falsehoods; and (8) invasion of privacy."

Plaintiff disagrees.  The Complaint describes enough of a claim sufficient for the Complaint.  During discovery and trial, Plaintiff will take the opportunity to provide more

---

[4] https://www.stat-md.org/about/

evidence, data, and info. The Complaint is supposed to be a short and concise description of the lawsuit. Later, there is an opportunity to go into the details. If the Court agrees with Defendant, Plaintiff would like the opportunity to expand on these claims in an Amended Complaint.

## **CONCLUSION**

This case is a complex case, with many aspects, both of facts and legal issues. The above response in conjunction with the Complaint itself should sufficiently resolve any of the issues brought up in the Motion to Dismiss. The U.S. Constitution affords each citizen their own due process. Plaintiff asks this Court to allow for the lawsuit to proceed and we can address all these items in trial. A motion to dismiss should not be used to take away a person's right to justice.

**WHEREFORE**, Plaintiff asks this court to DENY this motion to dismiss in its entirety, and to schedule an Initial Case Management Conference in accordance with Rule 16(b) of the Federal Rules of Civil Procedure.

Respectfully submitted this January 2, 2024.

*s/Aaron Abadi*
AARON ABADI, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
516-639-4100
Email:  aa@neg.com