UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON ABADI,<br><br>              Plaintiff,<br><br>-against-<br><br>AMERICAN AIRLINES, INC., et al.,<br><br>              Defendants. | 23 Civ. 04033 (LJL)<br><br>**DECLARATION OF YEONTAEK KIM IN SUPPORT OF ASIANA AIRLINES'S MOTION TO DISMISS** |

Yeontaek Kim declares as follows pursuant to 28 U.S.C. § 1746:

1.    I am Legal Counsel on the Legal Affairs Team of Asiana Airlines, Inc. (Asiana). I submit this declaration to inform the Court of certain (a) points of law and regulation of the Republic of Korea relating to its Covid pandemic response, and (b) a point of fact derived from Asiana records, both in support of Asiana's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

2.    Asiana is incorporated in the Republic of Korea, with its principal place of business in Seoul, Republic of Korea.

3.    Mr. Abadi alleges in his Complaint that he had past or potential business dealings in certain listed countries, and a related need to travel to those countries, but nowhere alleges having any past or potential business in the Republic of Korea. See Cmpl. ¶¶ 816, 831, 838; Cmpl. Exs. 78, 80. In the approximate 15-month period from January 2019 until March 2020, when "Covid stated to get heavy," Mr. Abadi allegedly flew internationally only to end-point destinations in India, Israel and Saudi Arabia, Cmpl. ¶ 806; Cmpl. Ex. 78.

4. To my knowledge, Asiana ran a search of its passenger records and found no instance where Mr. Abadi had traveled on Asiana in the past 5 years, which is as far back as we were able to check.

5. According to his Complaint, Mr. Abadi made email and online inquiries of Asiana beginning in September 2021.  Cmpl. ¶ 221.  There is no allegation that he bought or attempted to buy an Asiana ticket.

6. At that time, in terms of flights to and from the United States, Asiana flew between Seoul and each of Honolulu, Los Angeles, New York, San Francisco, and Seattle.  The same is true today, as reflected on Asiana's website:  flyasiana.com/C/US/EN/booking/route.  In particular, Asiana did not fly to or from any city in New Jersey or Texas (although connections could be available from other operating carriers).  Moreover, Asiana flies no domestic United States routes between points in the United States, nor does it fly to any of the international destinations (save two) where Mr. Abadi alleges he has had, or possibly anticipates having in the future, business dealings—namely, the Dominican Republic, England, India, Israel, Saudi Arabia, Sudan, Sweden, Switzerland, or the United Arab Emirates.  See Cmpl. ¶¶ 816, 831, 838; Cmpl. Exs. 78, 80.  Asiana flies from Seoul to England and India, but it is not plausible that Mr. Abadi, to get to those destinations from New York, would route through Seoul, rather than flying directly via another airline.

7. Covid response in the Republic of Korea was governed through various agencies including the Ministry of Health and Welfare, the Korea Disease Control and Prevention Agency (KDCA), the National Police Agency, and the Ministry of Land, Infrastructure and Transport (MOLIT).

8.  Under the Infectious Disease Control and Prevention Act as applicable at that time, air transportation passengers arriving in Seoul were required to undergo a fourteen-day quarantine period. See Attached Ex. A Notice of Embassy of Republic of Korea with attachments, available at https://overseas.mofa.go.kr/sg-en/brd/m_2435/view.do?seq=761244&page=1). Such passengers were required to stay during the 14-day quarantine period at one of several facilities designated by the Korean government, at their own expense (2,100,000 Korean won, or approximately $1600). During their quarantine, passengers were also required to submit to a Reverse Transcription Polymerase Chain Reaction (RT-PCR) Covid test, and achieve a negative result. *Id*.

9.  Following quarantine, all visitors (as with citizens) were required to wear a facemask in all indoor public facilities and in crowded outdoor spaces. See Attached Ex. B (Updated Indoor / Outdoor Masking Policy). This included public facilities relating to transportation including air transportation. See Attached Ex. C (MOLIT Guideline for Air Operators).

10. The facemask policy did not have exceptions; however, the applicable administrative fine scheme in place to enforce the policy did have certain limited exceptions. Persons in the following categories would not be fined for failing to wear a mask where required:

- Minors under the age of 14

- Any person with a brain lesion, developmental disorder or other disability who is unable to wear or take off the mask without help from others

- Any person who has a medical opinion that s/he has difficulty breathing when a mask is worn such as from having a respiratory disease.

See Attached Ex. D (KDCA Standard for Imposition of Penalty Under Administrative Order).

11. Thus, any visitor to the Republic of Korea from aboard not wearing a mask in a public indoor or crowded outdoor space, in order to avoid a fine, would need to prove to the satisfaction of Korean authorities that he or she was entitled to one of these listed exemptions.

12. Given the quarantine and masking restrictions under Korean law and regulation, it is not plausible that Mr. Abadi had a bona fide intent to travel to the Republic of Korea in or around September 2021. As mentioned above, we have no record of him traveling on Asiana previously. Moreover, even if Mr. Abadi could prove in this litigation an exemption under United States law from masking requirements in a United States airport and to board a plane there, he still would have been subject to masking requirements for the rest of his journey and while in Korea, and to avoid a fine he would have needed to prove to the Korean authorities that he was entitled to a mask exemption under applicable Korean administrative fine regulations. Even if he could have avoided a fine, he still would have been required upon arrival in Korea to quarantine for 14 days before engaging in any business, at his own expense, making the Republic of Korea a very unlikely place for him to conduct unspecified business meetings.

13. The Korean Covid-related restrictions discussed above were gradually lifted, and are no longer in effect. As most relevant here, on March 20, 2023, MOLIT lifted the indoor masking requirement at public transportation facilities. See Attached Ex. E (MOLIT Revision of Indoor Mask Requirement).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 9, 2024 in Seoul, Republic of Korea

_____
Yeontaek Kim