UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON ABADI,

                              Plaintiff,

          - v -

AMERICAN AIRLINES, INC., *et al.*,

                              Defendants.

No. 23 Civ. 4033 (LJL)

**MEMORANDUM OF LAW IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Counsel for Federal Defendants*
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2689
E-mail: danielle.marryshow@usdoj.gov

DANIELLE J. MARRYSHOW
Assistant United States Attorney
    – Of Counsel –

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 3

A.      Statutory and Regulatory Background.............................................................. 3

B.      The CDC's Mask Transportation Order ........................................................... 5

C.      This Lawsuit...................................................................................................... 6

LEGAL STANDARD....................................................................................................... 6

ARGUMENT .................................................................................................................... 8

I.      Plaintiff's Claims for Injunctive Relief Should Be Dismissed As Moot ........... 8

II.     Plaintiff's Tort Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction...... 9

III.    Plaintiff's Contract Claims Should Be Dismissed ........................................... 13

IV.     Plaintiff's Claims Under the Civil Rights Act Should Be Dismissed.............. 15

V.      Plaintiff Fails to State a Rehabilitation Act Claim.......................................... 17

VI.     Plaintiff Fails to State a Claim Under *Bivens* ................................................ 19

VII.    Plaintiff's Claims Under State and Local Antidiscrimination Law Should Be
        Dismissed ......................................................................................................... 24

CONCLUSION............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adeleke v. United States*,
 355 F.3d 144 (2d Cir. 2004)....................................................................... 14

*Alroy v. City of New York Law Dep't*,
 69 F. Supp. 3d 393 (S.D.N.Y. 2014)............................................................ 7

*Andreadakis v. Centers for Disease Control & Prevention*,
 No. 22 Civ. 52, 2022 WL 267494 (E.D. Va. Jul. 11, 2022) ........................ 18

*Arar v. Ashcroft*,
 585 F.3d 559 (2d Cir. 2009)......................................................................... 21

*Ariyai v. Forfeiture Support Assocs.*,
 25 F. Supp. 3d 376 (S.D.N.Y. 2012)............................................................ 13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).......................................................................... 7, 19, 20

*B & A Marine Co. v. Am. Foreign Shipping Co.*,
 23 F.3d 709, 713 (2d Cir. 1994)................................................................... 10

*Bary v. Delta Airlines, Inc.*,
 No. 02 Civ. 5202, 2009 WL 3260499 (E.D.N.Y. Oct. 9, 2009) .................. 17

*Beam v. Johnson & Johnson*,
 No. 20 Civ. 19217, 2023 WL 5207832 (D.N.J. Aug. 14, 2023).................. 24

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)...................................................................................... 7

*Bell v. Jendell*,
 980 F. Supp. 2d 555 (S.D.N.Y. 2013).......................................................... 7

*Bhatia v. Yale Sch. of Med.*,
 347 F. App'x 663 (2d Cir. 2009) .................................................................. 16

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
 403 U.S. 388 (1971)...................................................................................... 19

*Bocobo v. Radiology Consultants of South Jersey, P.A.*,
 No. 02 Civ. 1697, 2005 WL 3158053 (D.N.J. Nov. 21, 2005)................... 14

*Britt v. Merrill Lynch & Co., Inc*,
  No. 08 Civ. 5356 (GBD), 2011 WL 4000992 (S.D.N.Y. Aug. 26, 2011) ............................... 25

*C.H. Sanders Co. v. BHAP Housing Devel. Fund Co.*,
  903 F.2d 114 (2d Cir. 1990)........................................................................................... 14

*C.P. Chem Co. v. United States*, 810 F.2d,
  810 F.2d 34 (2d Cir. 1987)............................................................................................. 10

*Callahan v. United States*,
  329 F. Supp. 2d 404 (S.D.N.Y. 2004)............................................................................. 13

*Cangemi v. United States*,
  13 F.4th 115 (2d Cir. 2021) ........................................................................................... 11

*Carlson v. Green*,
  446 U.S. 14 (1980)............................................................................................. 19, 20, 21

*Cates v. Williams*,
  No. 08 Civ. 1529 (HB), 2009 WL 723021 (S.D.N.Y. Mar. 19, 2009) .................................... 10

*Collins v. Giving Back Fund*,
  No. 18 Civ. 8812 (CM), 2019 WL 3564578 (S.D.N.Y. Aug. 6, 2019) .................................... 18

*Coulthurst v. United States*,
  214 F.3d 106 (2d Cir. 2000)............................................................................................ 12

*County of Los Angeles v. Davis*,
  440 U.S. 625 (1979)........................................................................................................ 8

*County of Suffolk v. Sebelius*,
  605 F.3d 135 (2d Cir. 2010)............................................................................................. 8

*Davis v. Passman*,
  442 U.S. 228 (1979)....................................................................................................... 19

*Egbert v. Boule*,
  596 U.S. 482 (2022)..................................................................................... 20, 21, 22, 23

*Falchenberg v. N.Y. State Dep't of Educ.*,
  338 F. App'x 11 (2d Cir. 2009) ....................................................................................... 18

*FDIC v. Meyer*,
  510 U.S. 471 (1994)....................................................................................................... 19

*Feingold v. New York*,
    366 F.3d 138 (2d Cir. 2004).........................................................................................25

*Friends of Falun Gong v. Pac. Cultural Enterprise, Inc.*,
    288 F. Supp. 2d 273 (E.D.N.Y. 2003) .......................................................................16

*Giamatti v. Newton*,
    452 F. App'x. 24 (2d Cir. 2011) ...................................................................................7

*Goe v. Zucker*,
    43 F.4th 19 (2d Cir. 2022) ..........................................................................................17

*Goldfarb v. Solimine*,
    245 N.J. 326 (2021) .....................................................................................................15

*Goode v. U.S. Dep't of Homeland Sec.*,
    815 F. App'x 643 (3d Cir. 2020) .................................................................................24

*Griffin v. Wachovia Mortgage*,
    No. 11 Civ. 148, 2011 WL 13228012 (C.D. Cal. July 25, 2011) ...........................15

*Health Freedom Defense Fund v. Biden*,
    71 F.4th 888 (11th Cir. 2023) .......................................................................................9

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020)..................................................................................................20

*Hernandez v. United States*,
    939 F.3d 191 (2d Cir. 2019)..........................................................................................7

*JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*,
    Nos. 20 Civ. 2299, 20 Civ. 2250, 2020 WL 6203555 (C.D. Cal. Oct. 19, 2020)....................14

*Jones v. Nat'l Commc'n & Surveillance Networks*,
    409 F. Supp. 2d 456 (S.D.N.Y. 2006)........................................................................15

*Kamen v. American Tel. & Co.*,
    791 F.2d 1006 (2d Cir. 1986)........................................................................................7

*Larsen v. U.S. Navy*,
    525 F.3d 1 (D.C. Cir. 2008) ..........................................................................................8

*Logan v. Matveevskii*,
    57 F. Supp. 3d 234 (S.D.N.Y. 2014)..........................................................................10

*Long Island Radio Co. v. NLRB*,
    841 F.2d 474 (2d Cir. 1988) ......................................................................... 7

*Loving v. Princess Cruise Lines, Ltd.*,
    No. 08 Civ. 2898, 2009 WL 7236419 (C.D. Cal. Mar. 5, 2009) ............................. 24

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) .................................................................... 6, 7

*Marcus v. Centers for Disease Control & Prevention*,
    No. 22 Civ. 2383, 2023 WL 3044614 (C.D. Cal. Feb. 21, 2023) ........................... 17

*Marmon v. Mustang Aviation, Inc.*,
    430 S.W.2d 182 (Tex. 1968) ...................................................................... 25

*McIntosh v. United States*,
    No. 15 Civ. 2442 (KMK), 2018 WL 1275119 (S.D.N.Y. Mar. 7, 2018) ...................... 16

*O'Donoghue v. U.S. Soc. Sec. Admin.*,
    828 F. App'x 784 (2d Cir. 2020) ................................................................. 19

*Pierre v. Standard Ins. Co.*,
    No. 20 Civ. 257, 2021 WL 2420415 (W.D. Tex. May 11, 2021) ............................. 15

*Pomerance v. McGrath*,
    2 N.Y.S. 436 (1st Dep't 2015) .................................................................... 14

*Rivera v. United States*,
    928 F.2d 592 (2d Cir. 1991) ...................................................................... 10

*Schweiker v. Chilicky*,
    487 U.S. 412 (1988) ............................................................................... 20

*Seklecki v. Center for Disease Control & Prevention*,
    635 F. Supp. 3d 15 (D. Mass. 2022) ............................................................. 18

*Sereika v. Patel*,
    411 F. Supp. 2d 397 (S.D.N.Y. 2006) ............................................................ 10

*Sobel v. Eggleston*,
    No. 12 Civ. 2551 (DAB), 2013 WL 1344712 (S.D.N.Y. Mar. 28, 2013) ..................... 15

*Spinale v. USDA*,
    621 F. Supp. 2d 112 (S.D.N.Y. 2009) ............................................................. 8

*Spinale v. USDA,*
  No. 05 Civ. 9294 (KMW), 2007 WL 747803 (S.D.N.Y. Mar. 8, 2007) .................................. 14

*Thomas v. Roach,*
  165 F.3d 137 (2d Cir. 1999) ........................................................................................ 17

*Trinity Super Majority, LLC v. Milligan,*
  657 S.W.3d 349 (Tex. Ct. App. 2022) ....................................................................... 14

*United States v. Gaubert,*
  499 U.S. 315 (1991) ............................................................................................ 11, 13

*United States v. Sherwood,*
  312 U.S. 584 (1941) .................................................................................................. 7

*Weathers v. Millbrook Cent. Sch. Dist.,*
  486 F. Supp. 2d 273 (S.D.N.Y. 2007) ....................................................................... 24

*Ziglar v. Abbasi,*
  582 U.S. 120 (2017) .................................................................................... 20, 21, 23

**Statutes**

20 U.S.C. § 3508(b) ........................................................................................................ 4

28 U.S.C. § 1346(a)(2) ................................................................................................. 14

28 U.S.C. § 1491 ........................................................................................................... 14

28 U.S.C. § 2679 ........................................................................................................... 10

28 U.S.C. § 2680 .............................................................................................. 2, 11, 13

29 U.S.C. § 794 .......................................................................................................... 17, 18

42 U.S.C. § 264 ................................................................................................ 3, 4, 11, 22

42 U.S.C. § 1985(3) ...................................................................................................... 16

42 C.F.R. § 70.2 ................................................................................................... 4, 5, 22

42 C.F.R. § 71.32(b) ....................................................................................................... 5

Defendants Department of Health and Human Services ("HHS"), National Institutes of Health ("NIH"), Centers for Disease Control and Prevention ("CDC"), Dr. Anthony Fauci, in his individual capacity, and Dr. Robert Redfield, in his individual capacity (together, the "Federal Defendants") by their attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of its motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court should dismiss the Complaint for the reasons below.

## PRELIMINARY STATEMENT

Plaintiff Aaron Abadi has brought this action against the Federal Defendants, along with several airlines, medical consultants, and other individuals challenging the CDC's now expired order that individuals must wear a face mask while travelling on an airplane. Plaintiff further alleges that despite a disability preventing him from wearing a mask, which exempted him from the CDC's masking requirements, the airline defendants refused to allow him to travel without a mask. The Complaint raises a multitude of claims against the Federal Defendants. Namely, Plaintiff brings claims against the Federal Defendants for violations of the APA, unconstitutional delegation and separation of powers violations, as well as claims under the Federal Tort Claims Act ("FTCA"), Civil Rights Act, and Rehabilitation Act. Plaintiff also brings *Bivens* claims, contract claims, and claims under state antidiscrimination law. He seeks injunctive and declaratory relief, as well as $4.5 billion in damages.

First, the Court should dismiss all of Plaintiff's claims for injunctive relief—namely, his APA, unconstitutional delegation and separation of powers claims—for mootness, given the expiration of the CDC's masking requirements in May 2023. Because, as the Eleventh Circuit has already held, there is no reasonable basis to expect that the masking requirements will be reinstated

now that the COVID-19 related public health emergency declaration has expired, those claims are no longer live and should be dismissed.

Second, the Court should dismiss Plaintiff's FTCA claims—which can be brought only against the United States, rather than any of the named Federal Defendants—for lack of subject matter jurisdiction under the FTCA's discretionary function exception. The discretionary function exception bars claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Because Congress has delegated broad discretionary authority to the Secretary of Health and Human Services to craft regulations needed to prevent the spread of communicable diseases like COVID-19, and at bottom Plaintiff seeks to second guess those policy judgments through a tort action, Plaintiff's tort claims should be dismissed.

Third, the Court should dismiss Plaintiff's contract claims as to HHS, the CDC, and NIH (together, the "Agency Defendants"), because Plaintiff seeks more than $10,000 in damages for the alleged breach of contract. Under the Tucker Act and the "Little Tucker Act," the Court of Federal Claims has exclusive subject matter jurisdiction over non-tort claims against the United States exceeding $10,000 where, as here, there is no independent waiver of sovereign immunity other than the Tucker Act itself. Moreover, Plaintiff fails to state a breach of contract claim or promissory estoppel claim against Dr. Fauci and Dr. Redfield (together, the "Individual Defendants") under applicable state law.

Fourth, the Court should dismiss Plaintiff's claims under Section 1985(3) and 1986 of the Civil Rights Act for several reasons. As an initial matter, any such claims against the Agency Defendants are barred by sovereign immunity. Moreover, Plaintiff has failed to allege facts

regarding the existence of any conspiracy that violated his civil rights—much less the Individual Defendants' involvement in such a conspiracy—sufficient to survive a motion to dismiss these claims.

Fifth, the Court should dismiss Plaintiff's Rehabilitation Act claims. In the first instance, such a claim cannot be brought against the Individual Defendants because there exists no individual liability under the Rehabilitation Act. And because Plaintiff has failed to allege that the airlines are subject to the Rehabilitation Act, Plaintiff has accordingly failed to allege that the Agency Defendants aided or abetted any Rehabilitation Act violation.

Sixth, Plaintiff's *Bivens* claims based on the alleged violation of his constitutional right to travel are not actionable. Plaintiff seeks to create a radically new *Bivens* context, and the special factors of managing a public health emergency and separation of powers counsel hesitation in implying a new *Bivens* remedy in this case. Indeed, Plaintiff merely seeks to use *Bivens* to express his policy disagreements with the federal government, which was expressly disfavored by the Supreme Court in *Ziglar v. Abbasi*.

Finally, Plaintiff's state antidiscrimination claims likewise fail. Such claims cannot be brought against the Agency Defendants because the United States has not waived sovereign immunity for such claims. And Plaintiff has failed to allege that the Individual Defendants took any action that would fall within the reach of the California, New Jersey, Texas, or New York City antidiscrimination laws Plaintiff claims were violated.

## BACKGROUND

### A.  Statutory and Regulatory Background

Congress enacted the Public Health Service Act in 1944. *Consolidation & Revision of Laws Relating to the Public Health Service*, H.R. Rep. No. 1364, 78th Cong. 2d Sess., at 1 (1944). The resulting statute, 42 U.S.C. § 264—part of a broader statutory scheme authorizing the HHS to take

wide-ranging public-health actions, *see id.* §§ 264-272—authorizes the Secretary of HHS[1] "to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession." *Id.* § 264(a). The second sentence of subsection (a) further clarifies that "[f]or purposes of carrying out and enforcing such regulations," the Secretary "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." *Id.* The final subsection provides that the statute and any regulation adopted thereunder supersede state law "to the extent that such a provision conflicts with an exercise of Federal authority." *Id.* § 264(e).

The Secretary has promulgated several regulations implementing these provisions and delegating their enforcement to the CDC. *See* 42 C.F.R. pt. 70; *Control of Communicable Diseases, Apprehension and Detention of Persons With Specific Diseases, Transfer of Regulations*, 65 Fed. Reg. 49,906, 49,907 (Aug. 16, 2000). A regulation now codified at 42 C.F.R. § 70.2 provides the CDC with broad discretion to address the uncontrolled spread of communicable disease. Specifically, if the CDC Director "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases" between or among states, he is empowered to "take such measures to prevent such spread of the diseases as he/she deems reasonably necessary." 42 C.F.R. § 70.2. These measures include, but are not limited to, "inspection, fumigation, disinfection,

---

[1] Although the statute assigns authority to the Surgeon General, all statutory powers and functions of the Surgeon General were transferred to the Secretary of HHS in 1966, 31 Fed. Reg. 8855 (June 25, 1966), 80 Stat. 1610 (1966); *see also* Pub. L. No. 96-88, § 509(b), 93 Stat. 668, 695 (1979) (codified at 20 U.S.C. § 3508(b)). The Secretary has retained these authorities despite the reestablishment of the Office of the Surgeon General in 1987.

sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection." *Id.* In addition, separate longstanding regulations provide that "[w]henever the Director has reason to believe that any arriving carrier . . . is or may be infected . . . with a communicable disease, he/she may require detention, disinfection, . . . or other related measures respecting the carrier or article or thing as he/she considers necessary to prevent the introduction, transmission, or spread of communicable diseases." 42 C.F.R. § 71.32(b); *see also id.* § 71.31(b) (allowing "detention of a carrier until the completion of the measures outlined in this part that are necessary to prevent the introduction or spread of a communicable disease"). And other regulations authorize the CDC to limit interstate travel of infected persons, *see id.* § 70.3, to apprehend and detain persons, *id.* § 70.6, and to conduct medical examinations, *id.* § 70.12, to control the spread of disease.

### B. The CDC's Mask Transportation Order

The CDC issued the transportation mask order (the "Order") on February 3, 2021 in response to the COVID-19 pandemic. CDC, *Order Under Section 361 of the Public Health Service Act, Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021). Generally, the Order required persons to "wear masks over the mouth and nose when traveling on any conveyance . . . into or within the United States" and "at transportation hubs." *Id.* at 8026. In relevant part, the Order exempted anyone "with a disability who cannot wear a mask, or cannot safely wear a mask," among others. *Id.* at 8027.

On May 11, 2023, the public health emergency with respect to COVID-19 expired. *See End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, CDC (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html (last visited February 1, 2023). The Order expired, by its terms, at the end of the public health emergency. *See* 86 Fed.

Reg. 8025-01 at 8030 ("This Order . . . will remain in effect . . . until the Secretary of Health and Human Services rescinds the determination . . . that a public health emergency exists.").

### C.  This Lawsuit

On May 1, 2023, Plaintiff filed the operative Complaint in the United States District Court for the Northern District of Texas against the Federal Defendants, various airlines, medical consultants, and other individuals. On May 8, 2023, the Northern District of Texas transferred the case to this Court *sua sponte*. *See* ECF No. 10. In his Complaint, Plaintiff alleges that he has been diagnosed with a sensory processing disorder that qualifies as a disability and prevents him from wearing a mask. *See* Compl. ¶¶ 141-42. Plaintiff alleges that various airlines refused to allow him to board their airplanes without a mask. *See* Compl. ¶ 166. And while he did not purchase a ticket for most of the airlines named in the Complaint, he claims that in 2020 and 2021 he submitted requests for exemption from the Order to the airlines and was rejected. *See* Compl. ¶ 178.

With respect to the Federal Defendants, Plaintiff alleges that despite the disability exception in the Order (which Plaintiff claims he was entitled to take advantage of), the Federal Defendants "negated" the disability exception "by authorizing airlines to discriminate against the disabled" by "allow[ing] them to create multiple requirements and demands" for the disabled to follow if they wished to fly without a mask. *See* Compl. ¶ 788. Plaintiff also appears to challenge the Order itself (despite his allegation that he is exempt from the Order due to his disability), alleging that the Order was unnecessary because masking does not provide significant protection against COVID-19. *See* Compl. ¶¶ 786-797.

### LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Any waiver of the government's sovereign immunity is to be strictly construed in favor of the government." *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988). On a Rule 12(b)(1) motion, a district court "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). The plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giamatti v. Newton*, 452 F. App'x. 24, 27 (2d Cir. 2011).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept as true the well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the non-movant, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Although a pro se complaint must be construed liberally and with 'special solicitude,' it still has to state a plausible claim for relief." *Alroy v. City of New York Law Dep't*, 69 F. Supp. 3d 393, 401 (S.D.N.Y. 2014) (citations omitted). *Pro se* litigants are "not exempt . . . from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

## ARGUMENT

## I.   PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED AS MOOT

As an initial matter, all of Plaintiff's claims that solely seek injunctive relief—namely, his APA, unconstitutional delegation, and separation of powers claims[2]—are moot because the Order has expired and is no longer in force. "[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation and internal quotation marks omitted). The government's decision to end a policy challenged in litigation may moot a case when (1) "there is no reasonable expectation . . . that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (citation and internal quotation marks omitted) (alteration in original). For example, in *Larsen v. U.S. Navy*, 525 F.3d 1 (D.C. Cir. 2008), the D.C. Circuit considered whether the Navy's decision to rescind a policy had mooted certain challenges to that policy. 525 F.3d at 3-5. Although the plaintiffs alleged that the Navy's ongoing defense of the policy was evidence that it would reenact the policy, the D.C. Circuit found that "the mere power to reenact a challenged [policy] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged [policy] likely will be reenacted." *Id.* at 4 (citation omitted).

The Eleventh Circuit applied the same mootness principles articulated in *Larsen* to conclude that legal challenges to the Order no longer present a live controversy. The Court

---

[2] To the extent Plaintiff seeks money damages for these claims, the Court should dismiss them. *See County of Suffolk v. Sebelius*, 605 F.3d 135, 143 (2d Cir. 2010) (noting that "money damages" are unavailable under the APA); *Spinale v. USDA,* 621 F. Supp. 2d 112, 120 (S.D.N.Y. 2009) ("[C]onstitutional claims for damages brought against the United States are routinely dismissed for lack of subject matter jurisdiction on the grounds of sovereign immunity." (citation and internal quotation marks omitted)).

recognized that the Order has not been in force since 2022, and held that there was "no reasonable basis to expect the [Order] will be reinstated if" the litigation was dismissed as moot. *Health Freedom Defense Fund v. Biden*, 71 F.4th 888, 892-93 (11th Cir. 2023). That is because on May 11, 2023, the public health emergency with respect to COVID-19 expired. *See End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, CDC (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html (last visited February 1, 2023). The Order expired, by its terms, at the end of the public health emergency. *See* 86 Fed. Reg. 8025-01 at 8030 ("This Order . . . will remain in effect . . . until the Secretary of Health and Human Services rescinds the determination . . . that a public health emergency exists.").[3]

"[N]othing in the text of the [Order] suggests it can be revived after its expiration, and there is not a grain of evidence that the CDC has any plans" to do so. *Health Freedom Defense Fund*, 71 F.4th at 892. "[C]onjecture" that CDC may reintroduce a masking requirement in the future "do[es] not establish a reasonable expectation that a mask mandate from the CDC will reissue." *Id.* at 893. That reasoning applies with equal force to this case. Because there is no reasonable basis to expect the Order will be reinstated, and the effect of the alleged violation of the law (*i.e.*, a requirement to wear masks on airplanes) has been eliminated, the Court, following *Larsen* and *Health Freedom*, should dismiss all claims for injunctive relief as moot.

## II.    PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff's various tort claims should be dismissed for lack of subject matter jurisdiction because they are premised on the Government's policy decision to promulgate a mask mandate

---

[3] Plaintiff also appears to challenge President Biden's January 21, 2021 executive order regarding mask mandates on certain modes of transportation, including airplanes. *See* Compl. ¶¶ 904-17. However, that executive order merely instructs the heads of various agencies to "take action, to the extent appropriate and consistent with applicable law, to require masks to be worn in compliance with CDC guidelines." *See* Compl. Ex. A at 1. That action was subsequently taken in the form of the Order, which has now expired.

during a global pandemic, and to determine whether and how to superintend compliance with that mask mandate on commercial airlines. These claims are barred by the discretionary function exception to the FTCA.

As an initial matter, all of the Federal Defendants are improper defendants for FTCA purposes. The FTCA is the exclusive remedy for tort claims against the United States involving the purported negligence of a federal employee acting within the scope of his or her federal employment. 28 U.S.C. § 2679(b)(1); *see also Rivera v. United States*, 928 F.2d 592, 608-09 (2d Cir. 1991). And under the FTCA, "only the United States may be held liable for torts committed by a federal agency, and not the agency itself." *C.P. Chem Co. v. United States*, 810 F.2d 810 F.2d 34, 37 n.1 (2d Cir. 1987); *see also Sereika v. Patel*, 411 F. Supp. 2d 397, 409 (S.D.N.Y. 2006) ("The FTCA precludes tort suits against federal agencies and makes the only proper federal institutional defendant in such an action the United States."). Nor can the Individual Defendants be held liable under the FTCA. The FTCA also "requires that the United States be substituted as *the* party defendant" when "officers or employees of any federal agency" acting within the scope of their employment are sued under the Act.[4] *See, e.g.*, *B & A Marine Co. v. Am. Foreign Shipping Co.*, 23 F.3d 709, 713 (2d Cir. 1994) (emphasis in original). Therefore, for the purposes of Plaintiff's FTCA claims, the United States should be substituted as the defendant in place of the Federal Defendants in this matter.

---

[4] The FTCA contemplates substitution of the United States in place of an individual defendant "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). However, "[a]n express petition for certification is not required and a brief on behalf of named defendants may serve as a petition to certify that they were employees acting within the scope of their employment." *Cates v. Williams*, No. 08 Civ. 1529 (HB), 2009 WL 723021, at *5 (S.D.N.Y. Mar. 19, 2009) (citing *B & A Marine Co.*, 23 F.3d at 715-16). There are no allegations in the Complaint to suggest that Plaintiff disputes whether the Individual Defendants were acting within the scope of their employment, and the Government intends for this memorandum of law to serve as a petition to certify that these defendants were indeed employees acting within the scope of their employment. *See Logan v. Matveevskii*, 57 F. Supp. 3d 234, 285 (S.D.N.Y. 2014) (noting that the "law permits [the Government's] Memorandum of Law to serve [this function"). Should the court, nonetheless, require a formal certification from the U.S. Attorney, such certification can be provided.

But once that substitution is complete, this court lacks subject matter jurisdiction over the claims. The discretionary function exception bars "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "Thus, for acts that fall under the discretionary function exception, the United States has not waived its sovereign immunity, and federal courts lack subject matter jurisdiction over claims premised on those acts." *Cangemi v. United States*, 13 F.4th 115, 130 (2d Cir. 2021). "Because plaintiffs bear the initial burden of showing that their claims against the United States fall within the FTCA's limited waiver of sovereign immunity, plaintiffs also bear the initial burden of showing that their claims are not barred by the discretionary function exception." *Id.*

The Supreme Court's jurisprudence on the discretionary function exception has yielded a two-prong test for determining whether the exception applies. *See United States v. Gaubert*, 499 U.S. 315, 324-25 (1991). The first inquiry is whether the alleged conduct contravened a mandatory statute or regulation. *Id.* at 324. "If the employee violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." *Id.* Here, no mandatory statute or regulation specifically prohibited the Government from promulgating a mask mandate in response to the COVID-19 pandemic. Quite the opposite— Congress has delegated broad discretionary authority to the HHS Secretary (and by extension to the CDC) "to make and enforce such regulations as *in his judgment* are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession." 42 U.S.C. § 264(a) (emphasis added).

11

To the extent that the basis of Plaintiff's tort claims is that the Government should have superintended the airlines' enforcement of the disability exception to the Order, that too is not grounded in any mandatory statute or regulation. Indeed, the enforcement authority in the Order itself is highly general and nonspecific. *See* 86 Fed. Reg. 8025-01 at 8030 ("[T]his Order shall be enforced by the Transportation Security Administration under appropriate statutory and regulatory authorities . . . . This Order shall be further enforced by other federal authorities."). And crucially, Plaintiff does not allege that any mandatory statutes, regulations, or policies were violated in the way that the Government promulgated the Order or chose to superintend the disability exception within the Order.

The analysis therefore turns to the second prong, which considers whether "the judgment or choice in question [is] grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (citations and internal quotation marks omitted). It cannot be fairly disputed that the Order was grounded in public policy considerations. Faced with a deadly global pandemic, the Government made a policy decision that requiring masks on airlines would help stem the spread of COVID-19. *See* 86 Fed. Reg. 8025-01 at 8029 (noting that the Government has "determined" based on its review of the efficacy of masks and the acute harm posed by COVID-19 "that the mask-wearing requirements . . . are reasonably necessary to prevent the further introduction, transmission, or spread of COVID-19 into the United States and among the states and territories"). And the reason that preventing the spread of COVID-19 was a priority was entirely policy based. The Order makes clear that "[r]equiring masks on our transportation systems will protect Americans and provide confidence that we can once again travel safely even during this pandemic," and that "requiring masks will help us control this pandemic and aid in re-opening America's economy." *Id.*

And how to superintend the disability exception in the Order was similarly grounded in public policy considerations. Indeed, "[t]he Supreme Court has noted that 'when established government policy, as expressed or implied by statute, regulations, or agency guidelines, allows the Government agent to exercise discretion, it must be *presumed* that the agent's acts are grounded in public policy when exercising that discretion.'" *Callahan v. United States*, 329 F. Supp. 2d 404, 408 (S.D.N.Y. 2004) (quoting *Gaubert*, 499 U.S. at 324) (emphasis in original). And "for a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324-35. Any alleged tort premised on the notion that the Government should have more closely supervised the airlines' implementation of the disability exception to the Order is grounded in various policy considerations, such as resource allocation when faced with myriad pandemic-related demands.

"The purpose of the discretionary function exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Callahan*, 329 F. Supp. 2d at 407 (quoting *Gaubert*, 499 U.S. at 323). Because at their core Plaintiff's tort claims merely ask this Court to pass judgment on the promulgation and enforcement of the Order, all of his tort claims are barred under the discretionary function exception.[5]

## III.    PLAINTIFF'S CONTRACT CLAIMS SHOULD BE DISMISSED

Plaintiff alleges that the Federal Defendants somehow "aided and abetted" a breach of contract under California, Texas, New Jersey, and New York law between Plaintiff and various

---

[5] Plaintiff's tortious interference claim fails for a separate reason. The Court lacks subject-matter jurisdiction over any such claim because the FTCA excludes from its waiver of sovereign immunity "[a]ny claim arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h); *see also Ariyai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376, 391 (S.D.N.Y. 2012) (dismissing tortious interference claim pursuant to 28 U.S.C. § 2680(h)).

airlines (despite his concession that the Order specifically exempted those with disabilities from wearing a mask). *See* Compl. ¶¶ 1259-63. Plaintiff further alleges that the Federal Defendants are liable for promissory estoppel because they committed to "special treatment for those with disabilities," and he was nonetheless prevented from flying without a mask. Compl. ¶ 1275. This Court lacks subject-matter jurisdiction over these claims to the extent they are brought against the Agency Defendants, and Plaintiff fails to state a claim as to the Individual Defendants.

Plaintiff seeks $4.5 billion in damages, including for the alleged breach of contract and promissory estoppel. *See* Prayer for Relief at M. Under the Tucker Act, 28 U.S.C. § 1491 and "Little Tucker Act," 28 U.S.C. § 1346(a)(2), the Court of Federal Claims has exclusive subject matter jurisdiction over non-tort claims against the United States exceeding $10,000 where there is no independent waiver of sovereign immunity other than the Tucker Act itself. *See C.H. Sanders Co. v. BHAP Housing Devel. Fund Co.*, 903 F.2d 114, 119 (2d Cir. 1990). Absent such a waiver, federal district courts lack jurisdiction over non-tort claims against the United States exceeding $10,000. *See Adeleke v. United States*, 355 F.3d 144, 151-52 (2d Cir. 2004); *see also Spinale v. USDA*, No. 05 Civ. 9294 (KMW), 2007 WL 747803, at *2 (S.D.N.Y. Mar. 8, 2007) (dismissing breach of contact claim seeking more than $10,000 in damages for lack of subject-matter jurisdiction). Because Plaintiff has identified no waiver of sovereign immunity for his breach of contract claim, it must be dismissed for lack of subject matter jurisdiction.

Moreover, to the extent Plaintiff alleges that the Individual Defendants "aided and abetted" any breach of contract between Plaintiff and various airlines in their individual capacities, that claim is not cognizable under Texas, New York, New Jersey, or California law.[6] And while

---

[6] *See, e.g.*, *1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 371 (Tex. Ct. App. 2022); *Pomerance v. McGrath*, 2 N.Y.S. 436, 484 (1st Dep't 2015); *JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*, Nos. 20 Civ. 2299, 20 Civ. 2250, 2020 WL 6203555, at *7 (C.D. Cal. Oct. 19, 2020); *see also Bocobo v. Radiology Consultants of South*

Plaintiff does not specify which state's law applies to his promissory estoppel claim, any such claim against the Individual Defendants must similarly fail under Texas, New York, New Jersey, or California law—the states in which he claims there was a breach of contract. In each of these states, a plaintiff must allege that the defendant broke their promise to state a claim for promissory estoppel.[7] But Plaintiff never alleges that either of the Individual Defendants broke any "promise" that those with disabilities would be exempt from mask mandates on planes. Indeed, it is the opposite—Plaintiff alleges that it is the airlines that failed to accommodate his alleged disability in contravention of CDC guidance. *See, e.g.*, Compl. ¶ 1251. And crucially, nowhere does Plaintiff allege that either of the Individual Defendants took any personal action to interfere with his ability to fly on an airplane without his disability being accommodated. Accordingly, Plaintiff's breach of contract and promissory estoppel claims should be dismissed against the Individual Defendants.

## IV.    PLAINTIFF'S CLAIMS UNDER THE CIVIL RIGHTS ACT SHOULD BE DISMISSED

Plaintiff's claims under Sections 1985 and 1986 of the Civil Rights Act should also be dismissed because any such claims against the Agency Defendants are barred by sovereign immunity, and because he fails to state a claim under either section against the Individual Defendants. As an initial matter, the United States "has not waived its sovereign immunity for claims under Sections 1981 to 1986 of Title 42." *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 466 (S.D.N.Y. 2006). Accordingly, courts have routinely dismissed claims

---

*Jersey, P.A.*, No. 02 Civ. 1697, 2005 WL 3158053, at *10 (D.N.J. Nov. 21, 2005) ("[O]ne who is not a party to a contract may not be sued for a breach arising out of it.").

[7] *See, e.g., Pierre v. Standard Ins. Co.*, No. 20 Civ. 257, 2021 WL 2420415, at *12 (W.D. Tex. May 11, 2021) (dismissing promissory estoppel claim where "Plaintiff . . . fails to allege that Defendants broke the promise to her detriment"); *Goldfarb v. Solimine*, 245 N.J. 326, 341 (2021) (noting that a promissory estoppel claim requires "that the promise incurred a detriment due to [its] reliance [on the promise] when the promisor broke the promise"); *Sobel v. Eggleston*, No. 12 Civ. 2551 (DAB), 2013 WL 1344712, at *6 (S.D.N.Y. Mar. 28, 2013) ("[B]ecause Defendants never broke this promise, Plaintiff has failed to show that he was injured by any reliance on the promise."); *Griffin v. Wachovia Mortgage*, No. 11 Civ. 148, 2011 WL 13228012, at *2 (C.D. Cal. July 25, 2011) (dismissing promissory estoppel claim because *inter alia*, "Plaintiff [did] not sufficiently allege that Defendant broke [the] promise").

against the federal government for violations of Sections 1985 and 1986 for lack of subject matter jurisdiction. *See, e.g.*, *McIntosh v. United States*, No. 15 Civ. 2442 (KMK), 2018 WL 1275119, at *9 (S.D.N.Y. Mar. 7, 2018) (dismissing Section 1985 and 1986 claims on sovereign immunity grounds).

As to the Individual Defendants, Plaintiff has failed to allege sufficient facts to state a claim of conspiracy in violation of 42 U.S.C. § 1985(3). As an initial matter, Plaintiff fails to allege the existence of a conspiracy. To allege a conspiracy sufficient to sustain a section 1985 claim, "the complaint must contain specific factual allegations. A complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss." *Friends of Falun Gong v. Pac. Cultural Enterprise, Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003). Here, the Complaint "does not include any facts that could support an inference of a conspiracy among the various defendants." *Id.* Instead, Plaintiff simply states that the "federal agencies" were members of a conspiracy. *See* Compl. ¶¶ 966, 972. Instead of providing factual support, Plaintiff merely alleges that the conspiracy is "frankly obvious" and that the "parties had a clear understanding between all of them that they will together not allow passengers to fly without a mask, even though they are disabled and cannot wear a mask." Compl. ¶ 971. What is more, none of these scant conspiracy allegations even mention either of the Individual Defendants. These barebones allegations are therefore insufficient to sustain a section 1985(3) claim. *See Bhatia v. Yale Sch. of Med.*, 347 F. App'x 663, 665 (2d Cir. 2009) (holding that *pro se* plaintiff's "claims of a conspiracy to violate his civil rights were vague and conclusory, and insufficient to state a plausible claim under § 1985").

Section 1986 "provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and

having power to prevent or aid, neglects to do so." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999). "Thus, a § 1986 claim must be predicated upon a valid § 1985 claim." *Id.* Accordingly, because Plaintiff has failed to state a plausible section 1985 claim, his section 1986 claim should similarly be dismissed.

## V.    PLAINTIFF FAILS TO STATE A REHABILITATION ACT CLAIM

Plaintiff also fails to state a claim under the Rehabilitation Act. Plaintiff alleges that the defendant airlines violated the Rehabilitation Act by requiring him to wear a mask while traveling by plane, and that the Federal Defendants aided and abetted that violation. As an initial matter, a Rehabilitation Act claim cannot be brought against the Individual Defendants because the Rehabilitation Act does not provide for individual liability. *See Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022).

But any such claim against the Agency Defendants fails too. Plaintiff has not alleged an underlying violation of the Rehabilitation Act for the Agency Defendants to aid or abet. The Rehabilitation Act applies only to entities that receive "[f]ederal financial assistance." 29 U.S.C. § 794(a). And "courts have found that an entity receives financial assistance when it receives a subsidy . . . as opposed to compensation." *Bary v. Delta Airlines, Inc.*, No. 02 Civ. 5202, 2009 WL 3260499, at *7 (E.D.N.Y. Oct. 9, 2009) (citation and internal quotation marks omitted). Plaintiff alleges that the airlines' receipt of funds pursuant to the Payroll Support Program established under the CARES Act constituted the requisite federal financial assistance which made them subject to the Rehabilitation Act. *See* Compl. ¶¶ 1129-30, 1147-48. But courts have specifically held that the payroll support provided to commercial airlines under the CARES Act did not constitute "federal financial assistance." *See, e.g.*, *Marcus v. Centers for Disease Control & Prevention*, No. 22 Civ. 2383, 2023 WL 3044614, at *9 (C.D. Cal. Feb. 21, 2023) (finding "the funds the Airline

Defendants received from the government under the CARES Act were compensation in response to the economic crises created by COVID-19 and do not constitute a subsidy or federal financial assistance under the RA"); *Andreadakis v. Centers for Disease Control & Prevention*, No. 22 Civ. 52, 2022 WL 267494, at *10 (E.D. Va. Jul. 11, 2022) (same).

And even if the receipt of CARES Act funds was properly understood as a general subsidy, a subsidy only subjects an entire corporate entity to the Rehabilitation Act if the entity is "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation," or if the subsidy is provided to the corporation "as a whole." 29 U.S.C. § 794(b)(3). And "[i]t has been repeatedly held that federal funding to a private entity not primarily engaged in education, health care, housing, or parks and recreation, when that funding is earmarked for a particular project or site within the entity's operations, is not 'as a whole' federal funding for the purposes of the Rehabilitation Act." *Collins v. Giving Back Fund*, No. 18 Civ. 8812 (CM), 2019 WL 3564578, at *11 (S.D.N.Y. Aug. 6, 2019). Because "the CARES Act was assistance designated for the particular purpose of covering payroll expenses, and not for general assistance," the airlines cannot be understood as receiving federal funding "as a whole" for Rehabilitation Act purposes. *See Seklecki v. Center for Disease Control & Prevention*, 635 F. Supp. 3d 15, 26 (D. Mass. 2022).

Therefore, because the Rehabilitation Act is inapplicable to the airline defendants that Plaintiff alleges are responsible for the violation, Plaintiff's aiding and abetting claims against the Agency Defendants must be dismissed. Under the Rehabilitation Act, "aiding and abetting is only a viable theory where an underlying violation has taken place." *Falchenberg v. N.Y. State Dep't of*

*Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009). Accordingly, because Plaintiff has failed to plead an underlying violation, Plaintiff's aiding and abetting Rehabilitation Act claims should be dismissed.

## VI.    PLAINTIFF FAILS TO STATE A CLAIM UNDER *BIVENS*

Plaintiff appears to bring *Bivens* claims against the Individual Defendants for a violation of his constitutional right to travel.[8] *See* Compl. ¶¶ 1329-1348. The Court should dismiss this claim because a *Bivens* remedy is not available for the constitutional violation he alleges. Further, even if the Court were to imply a *Bivens* remedy here, Plaintiff has not sufficiently alleged either of the Individual Defendants' personal involvement in the alleged constitutional violation such that either Individual Defendant can be held liable under *Bivens*.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court for the first time recognized a damages remedy to compensate an individual injured by federal officers who violated his constitutional rights. There, a man alleged that he was unconstitutionally searched and arrested in his home by the Federal Bureau of Narcotics in violation of the Fourth Amendment's prohibition against unreasonable search and seizure. *See Bivens*, 403 U.S. at 389; *see also Iqbal*, 556 U.S. at 675. Since Bivens, the Supreme Court has implied a constitutional damages remedy on only two other occasions: to redress an alleged Fifth Amendment equal protection violation by a United States Congressman who admitted to terminating an employee because she was a woman, *see Davis v. Passman*, 442 U.S. 228, 230 (1979), and to redress an alleged Eighth Amendment violation by prison officials whose alleged deliberate indifference to an inmate's asthma led to his death, *see Carlson v. Green*, 446

---

[8] To the extent Plaintiff seeks to assert *Bivens* claims against the Agency Defendants, such claims should be dismissed for lack of jurisdiction. The Supreme Court has expressly declined to expand *Bivens* liability from individual federal officials to federal agencies or other entities. *See FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). Accordingly, "federal entities" cannot be "held liable under *Bivens*." *O'Donoghue v. U.S. Soc. Sec. Admin.*, 828 F. App'x 784, 787 (2d Cir. 2020).

U.S. 14, 16-18 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

In the years since these cases were decided, the Supreme Court has "come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power.'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020)). It has recognized that "creating a cause of action is a legislative endeavor" requiring the weighing of policy considerations—an endeavor "Congress is 'far more competent than the Judiciary'" to undertake. *Egbert*, 596 U.S. at 491 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)); *see also Abbasi*, 582 U.S. at 133-34 (noting policy considerations such as the "substantial costs" and "economic and governmental concerns," as well as Congress's responsibility in determining such liability). For these reasons, the Supreme Court has reiterated on several recent occasions that "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert*, 596 U.S. at 491 (quoting *Abbasi*, 582 U.S. at 135); *see also Iqbal*, 556 U.S. at 675. Thus, when a court is asked to imply a *Bivens* remedy, the judiciary's authority to imply causes of action generally is "at best, uncertain" and the "watchword is caution." *Egbert*, 596 U.S. at 491 (quoting *Hernandez*, 140 S. Ct. at 742).

Before implying a *Bivens* remedy in a given case, a court must apply a rigorous two-step test, which requires it to ask (1) whether a claim "presents a new Bivens context," *Abbasi*, 582 U.S. at 139, and (2) whether "there are 'special factors counselling hesitation in the absence of affirmative action by Congress,'" *id.* at 136 (quoting *Carlson*, 446 U.S. at 18).

At the first step of this test, a court must first consider whether a claim "presents a new *Bivens* context." *Abbasi*, 582 U.S. at 139. This step requires a court to ask whether the case "is

different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.*

Meaningful differences include, but are not limited to,

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

*Id.* at 140. "[T]he new-context inquiry is easily satisfied" by even "small" but "meaningful"

differences between the claim at issue and the Supreme Court's previously approved Bivens

claims. *See id.* at 149. Indeed, "even a modest extension" of the circumstances presented in *Bivens*,

*Davis*, or *Carlson* "is still an extension." *Id.* at 147.

If a case presents a new context, a court must then evaluate whether "there are 'special

factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 136

(quoting *Carlson*, 446 U.S. at 18). If there are such special factors, a *Bivens* remedy will not be

available. *Abbasi*, 582 U.S. at 136. This second step requires a court to consider if there is "an

alternative remedial structure present in a certain case" or exists other special factors indicating

that the judiciary is not "well suited, absent congressional action or instruction, to consider and

weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. The threshold

for whether a factor counsels hesitation "is remarkably low"—"'[h]esitation' is 'counseled'

whenever thoughtful discretion would pause even to consider." *Arar v. Ashcroft*, 585 F.3d 559,

574 (2d Cir. 2009).

As the Supreme Court recently observed, in practice, "th[e]se steps often resolve to a single

question: whether there is any reason to think that Congress might be better equipped to create a

damages remedy." *Egbert*, 596 U.S. at 492. And, as the Supreme Court cautioned in that case,

"*[e]ven a single sound reason* to defer to Congress is enough to require a court to refrain from

creating [a *Bivens*] remedy." *Id.* at 491 (emphasis added) (citation and internal quotation marks omitted); *see also id.* at 492 ("If there is *even a single reason* to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." (emphasis added) (citation and internal quotation marks omitted)).

Plaintiff's *Bivens* claims bear no resemblance to *Bivens*, *Davis,* or *Carlson*. The Supreme Court has never found a claim for an alleged infringement of the constitutional right to travel to be actionable under *Bivens*, much less one based on the implementation of a mask mandate during a global pandemic. That alone makes the context "new" under Supreme Court precedent. *See Egbert*, 596 U.S. at 498 (declining to extend *Bivens* to a First Amendment retaliation claim and noting that "a new context arises when there is a new constitutional right at issue" (internal quotation marks and citation omitted)).

And given that Plaintiff's *Bivens* claims would present a radically new context, this Court should consider that the special factors of protection of public health and separation of powers counsel hesitation in implying a *Bivens* cause of action here. Congress has delegated authority to the Secretary of Health and Human Services to "make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases." 42 U.S.C. § 264; *see* 42 C.F.R. § 70.2 (delegating that authority to the Director of the CDC). Faced with a global pandemic that had killed more than 2.1 million people around the world by January 2021, and on the basis of the evidence that masking "reduce[s] the spread of COVID-19," *see* 86 Fed. Reg. 8025-01 at 8028, the CDC reasonably exercised its delegated authority to prevent the transmission of COVID-19 by requiring masks to be worn on airplanes. Because of the difficulties of managing a public health crisis, in these circumstances "the Judiciary is at least

arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 136).

Further, the Supreme Court has made clear that "a *Bivens* action is not a proper vehicle for altering an entity's policy." *Abbasi*, 582 U.S. at 140 (citation and internal quotation marks omitted). The *Abbasi* Court opined that "claims [that] would call into question the formulation and implementation of a general policy," were particularly fraught with complications because they would "necessarily require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged," and that those consequences "counsel against allowing a *Bivens* action against" high-level officials for policy decisions "for the burden and demand of litigation might well prevent them—or, to be more precise, future officials like them—from devoting the time and effort required for the proper discharge of their duties." *Id.* at 141.

These concerns are present here. Both Individual Defendants were high-level federal officials who participated in the making of policy decisions during a global pandemic in ways that go unspecified in the Complaint. Plaintiff has not alleged, as he must, that either of the Individual Defendants *personally* interfered with his right to travel—he merely conclusorily alleges that the non-airline defendants "assisted, and aided and abetted" the airline defendants in preventing him from flying without a mask. *See Abbasi*, 582 U.S. at 140 ("[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."). And fundamentally, the only acts that Plaintiff places at the feet of either of the Individual Defendants are their statements that masking helped prevent the transmission of COVID-19, which Plaintiff claims was "false," and that Dr. Fauci initially expressed the opinion that masking was not necessary to prevent COVID-19 transmission. *See* Compl. ¶¶ 119-120, 787, 789-90. And while Plaintiff alleges that the CDC

23

eventually promulgated the Order that he appears to disagree with, he does not allege any *personal* role for either of the Individual Defendants for the enforcement of the Order on airlines.

Because Plaintiff merely seeks to use the limited *Bivens* remedy to express a policy disagreement with the federal government, this Court should decline to imply a *Bivens* remedy and dismiss all such claims.

## VII.    PLAINTIFF'S CLAIMS UNDER STATE AND LOCAL ANTIDISCRIMINATION LAW SHOULD BE DISMISSED

Finally, Plaintiff fails to state any plausible claims under state and local antidiscrimination law.[9] As an initial matter, a claim under any state and local antidiscrimination law cannot be brought against the Agency Defendants because the United States has not waived sovereign immunity for such claims. *See Goode v. U.S. Dep't of Homeland Sec.*, 815 F. App'x 643, 645 (3d Cir. 2020) (noting that the United States has not waived sovereign immunity "for suits under state anti-discrimination laws").

As for the Individual Defendants, Plaintiff has failed to state a claim under any of the cited state laws. First, Plaintiff has failed to allege that the Individual Defendants took any challenged acts within the states of California, New Jersey, or Texas. That is fatal to Plaintiff's California Unruh Civil Rights Act, New Jersey Law Against Discrimination ("NJLAD") claims, and Texas civil rights law claims because those states' laws do not cover acts that took place outside the relevant jurisdiction. *See, e.g.*, *Loving v. Princess Cruise Lines, Ltd.*, No. 08 Civ. 2898, 2009 WL 7236419, at *8 (C.D. Cal. Mar. 5, 2009) ("[T]he Unruh Act . . . [does] not apply to claims of nonresidents of California injured by conduct occurring beyond California's borders."); *Beam v. Johnson & Johnson*, No. 20 Civ. 19217, 2023 WL 5207832, at *4 (D.N.J. Aug. 14, 2023)

---

[9] To the extent that all federal claims in the suit are dismissed and all that remains are the state antidiscrimination claims, this Court should decline to exercise supplemental jurisdiction over the state claims. *See Weathers v. Millbrook Cent. Sch. Dist.*, 486 F. Supp. 2d 273, 276 (S.D.N.Y. 2007).

(dismissing NJLAD claims where claims were "based on conduct by non-New Jersey individuals outside of New Jersey"); *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 187 (Tex. 1968) ("[T]he presumption is that [Texas] statute[s] [are] intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state.").[10]

Plaintiff's New York City Human Rights Law claims fail because there exists individual liability only where an individual "actually participated in the conduct giving rise to the discrimination claim." *Britt v. Merrill Lynch & Co., Inc*, No. 08 Civ. 5356 (GBD), 2011 WL 4000992, at *11 (S.D.N.Y. Aug. 26, 2011) (quoting *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004)). The Complaint is devoid of allegations that either of the Individual Defendants had any personal involvement in preventing Plaintiff from boarding an aircraft without a mask. *See supra* pp. 23-24.

Because the United States has not waived sovereign immunity for state antidiscrimination law claims, and Plaintiff has failed to allege that any conduct from the Individual Defendants fall within the ambit of California, New Jersey, Texas, or New York City law, all such claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim.

---

[10] In addition, as Plaintiff acknowledges, the Texas antidiscrimination law upon which he relies prohibits "airplane[s] . . . operating within the state" from "refus[ing] to accept as a passenger a person with a disability because of the person's disability." Tex. Hum Res. § 121.003; *see also* Compl. ¶ 1219. Plaintiff does not allege that either of the Individual Defendants are in the business of operating airlines within the state, placing them outside of the reach of the statute.

Dated: February 1, 2024
      New York, New York

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney for the
                              Southern District of New York

                 By:     _/s/ Danielle J. Marryshow_
                              DANIELLE J. MARRYSHOW
                              Assistant United States Attorney
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Tel.:  (212) 637-2689
                              E-mail: danielle.marryshow@usdoj.gov