## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AARON ABADI,** | |
| Plaintiff | **CASE #  1:23-cv-04033-LJL** |
| V. | |
| **AMERICAN AIRLINES, INC., et al** | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### THE JOINT MOTION TO DISMISS BY DEFENDANTS REPRESENTED
### BY CLYDE & CO., INCLUDING THE FOLLOWING:

### AIR CANADA, AUSTRIAN AIRLINES AG, CATHAY PACIFIC AIRWAYS LIMITED, EMIRATES, ETIHAD AIRWAYS PJSC DBA ETIHAD AIRWAYS COMPANY, EVA AIRWAYS CORPORATION, FINNAIR OYJ, GULF AIR HOLDING B.S.C., QATAR AIRWAYS Q.C.S.C. DBA QATAR AIRWAYS CORPORATION, ALIA – THE ROYAL JORDANIAN AIRLINES COMPANY DBA ROYAL JORDANIAN AIRLINES, KENYA AIRWAYS, KOREAN AIR LINES CO., LTD., DEUTSCHE LUFTHANSA AKTIENGESELLSCHAFT (LUFTHANSA), SWISS INTERNATIONAL AIR LINES AG, TURK HAVA YOLLARI ANONIM ORTAKLIGI, AND ANITA AYALA

BY:

AARON ABADI
Pro Se Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
Tel: 516-639-4100
Email:  aa@neg.com

Plaintiff, acting pro se, hereby responds to the Motion to Dismiss filed by the sixteen Defendants (Docs. 272-283 & 290-292) above. The Complaint thoroughly addressed numerous issues raised in these motions. In this response, Plaintiff aims to further elaborate on certain aspects discussed in the Complaint and/or address issues not previously responded to.

Aaron Abadi, the Plaintiff, suffers from sensory processing disorder, rendering him unable to wear masks, glasses, or any head or facial coverings. When airlines began mandating masks, they consistently refused Plaintiff's right to fly and discriminated against him. He faced verbal abuse, denial of boarding, and was once even stranded in France due to these policies, which persisted despite his provision of evidence of his disability.

The inability to travel inflicted severe financial harm on Plaintiff, who currently finds himself without funds and had to pursue this action with the generous assistance of the Court via an IFP Motion. Plaintiff's entire source of income was decimated, depriving him of any means to earn a living. The Motion to Dismiss addresses various Counts of the Causes of Action, to which Plaintiff will provide appropriate responses.

**Defendants Specific Arguments**

Defendants **Air Canada** (Doc. 280), **Etihad Airways** PJSC d/b/a Etihad Airways Company ("Etihad"), (Doc. 283), **Finnair** OYJ ("Finnair") (Doc. 281),

**Emirates** (Doc. 291), Alia – The **Royal Jordanian Airlines** Company d/b/a Royal Jordanian Airlines ("Royal Jordanian") (Doc. 292), **Kenya Airways** ("Kenya") (Doc. 277), **Korean Air Lines** Co., Ltd. ("Korean Air") (Doc 279), and **Qatar Airways** Group Q.C.S.C. ("Qatar") (Doc 278), all filed declarations wherein they argued that they have no New York or USA office, and that Abadi neither made a reservation nor purchased a ticket.

Defendants **Austrian Airlines AG** ("Austrian"), Deutsche **Lufthansa** Aktiengesellschaft (incorrectly named herein as Lufthansa Systems Americas, Inc. and hereinafter "Lufthansa"), and **Swiss International Air Lines** AG ("Swiss"), filed a combined declaration (Doc. 276) where they also maintained that they do not maintain a principal place of business in the USA.

Defendants **Cathay Pacific Airways** Limited ("Cathay Pacific") (Doc. 290), **Eva Airways** Corporation ("EVA") (Doc. 275), **Turk Hava Yollari Anonim Ortakligi** ("Turkish") (Doc. 274), and **Gulf Air** Group Holding Company B.S.C. (Gulf Air"), all filed declarations where they also declared that they do not maintain a principal place of business in New York or in the USA.

Defendant **Emirates**, additionally provided a copy of the DOT determination that they did not violate the ACAA laws.

There is also one employee participating in this motion, **Anita Ayala** (Ayala"), and several of the airlines were mislabeled in the Complaint.

I have contacted the attorneys regarding the name corrections and am awaiting their response. They have indicated that they will get back to me. Should they agree to the corrections, the matter will be resolved. If not, I will proceed to file a motion to include the correct companies as defendants. Additionally, concerning their lack of a principal place of business in New York or the USA, this Court maintains jurisdiction over all defendants pursuant to the New York Long-Arm Statute outlined herein.

Regarding the issue of Abadi not purchasing tickets, see below under the title "Standing."

## ATTACKING THE VICTIM

The defense's strategy appears to be shifting blame onto the plaintiff, which is evident in their attempt to discredit the plaintiff's character. Despite the insinuations made, the plaintiff will address each allegation in due course.

The assertion that the plaintiff is part of an organized coalition against mask mandates is misleading. While the plaintiff is a member of various Facebook groups, these do not constitute a formal coalition. It is unfair to hold the plaintiff responsible for the actions or lawsuits of others.

Contrary to the defense's portrayal, the plaintiff is not a habitual litigant. Prior to the pandemic, the plaintiff had not pursued legal action. The plaintiff's

actions stem from a genuine belief in defending their rights as a person with disabilities.

The financial repercussions of the plaintiff's inability to travel have been significant, leading to the destruction of their income and livelihood. Settlements have been reached with some companies, while others have opted to engage in prolonged legal battles.

Despite challenges, the plaintiff remains steadfast in their pursuit of justice. The comparison to civil rights activists like Martin Luther King Jr. underscores the seriousness of the plaintiff's cause.

Contrary to the defense's implications, the plaintiff has achieved victories in various legal proceedings, including appeals and complaints filed against corporations and airlines. These actions are not frivolous but are driven by the plaintiff's belief in defending their rights.

Ultimately, the plaintiff's fight against discrimination is rooted in their personal experiences and the belief that everyone deserves fair treatment, regardless of disability.

## GULF HOLDING

The opposing counsel asserts that the plaintiff sued the incorrect corporation. Although Gulf Holding is the sole shareholder of Gulf Air B.S.C., it is not the

airline entity itself. The plaintiff has contacted the attorneys to inquire if they would agree to allow the plaintiff to file a motion to rectify this error.

## STANDING

The movants contend that Abadi lacks standing because his purported travels were merely hypothetical. However, Abadi's necessity to travel to various destinations such as the Middle East, India, Europe, California, Florida, Arizona, and others was not hypothetical but grounded in genuine need. Despite encountering challenges, Abadi successfully journeyed to several of these destinations, as documented in both the Complaint and the Affidavit from Khan (Complaint Exhibit 80), which provides further context.

Furthermore, it is essential to examine the circumstances surrounding Abadi's attempts to secure travel arrangements. He faced rejection from over 50 airlines, a significant portion of which are defendants in this case. Facing difficulties with purchased tickets and unwilling to incur substantial expenses merely to test airlines' compliance with access requirements, particularly when evidence suggests collusion to deny him service due to his disability, Abadi's hesitance is understandable. Requiring the purchase of numerous expensive flights, each costing at least $1,000, solely to establish legal rights would impose an unreasonable burden amounting to $50,000.

The evidence presented underscores Abadi's genuine need to travel, evidenced by instances where he successfully did so, as well as the elucidation provided in Mr. Khan's affidavit. Consequently, mandating the purchase of tickets solely for the purpose of preserving legal rights is unwarranted and impractical in this context.

Each of these airlines have flights to and from New York. AIR CANADA flies to Asia, Europe, and the Middle East, amongst many other places.[1] AUSTRIAN AIRLINES flies all over Europe, and to Israel, India, and other destinations.[2] CATHAY PACIFIC goes to Israel, Europe, India, and many other destinations.[3] EMIRATES[4] & ETIHAD AIRWAYS[5] fly to India, Europe, the Middle East, and more. EVA AIRWAYS has flights throughout Asia, and to and from Europe.[6]  FINNAIR flies to Europe, the Middle East, India, and more.[7] GULF AIR,[8] QATAR AIRWAYS,[9] ROYAL JORDANIAN AIRLINES,[10] and KENYA AIRWAYS[11] all fly to the Middle East, India, Europe, and more.

---

[1] https://vacations.aircanada.com/en/travel-info/where-we-fly
[2] https://www.austrian.com/lhg/at/en
[3] https://flights.cathaypacific.com/destinations/en_US/
[4] https://www.emirates.com/us/english/destinations/
[5] https://www.etihad.com/en-us/destinations
[6] https://en.wikipedia.org/wiki/List_of_EVA_Air_destinations
[7] https://www.finnair.com/us-en/destinations
[8] https://www.gulfair.com/en/destination-guide
[9] https://www.qatarairways.com/en-zw/destinations.html
[10] https://en.wikipedia.org/wiki/List_of_Royal_Jordanian_destinations
[11] https://www.flightconnections.com/route-map-kenya-airways-kq

KOREAN AIR LINES flies to India, Europe, Israel, and more.[12] LUFTHANSA,[13] SWISS,[14] and TURKISH[15] also fly to Israel, India, the Middle East, and Europe.

## **JURISDICTION**

The defendants contend that this Court lacks jurisdiction over them. However, given that these airlines have substantial operations within the State of New York and their discriminatory actions have directly impacted the plaintiff's travel to and from New York, where the plaintiff resides, they fall within the scope of the New York long-arm statute, thereby establishing jurisdiction for this Court.

Specific Personal Jurisdiction: "A more limited form of submission to a state's authority, referred to as "specific jurisdiction," applies only in cases of disputes that "arise out of or are connected with the activities within the state." Int'l Shoe, 326 U.S. at 319, 66 S.Ct. 154."  Loyalty Conversion Systems Corporation v. American Airlines, Inc. (E.D. Tex. 2014) 66 F.Supp.3d 813, 819.

The plaintiff, a resident of New York State, frequently traveled to various states and international destinations. The defendants collaborated with each other and other parties to obstruct his ability to fly and to hinder his access to airlines

---

[12] https://www.koreanair.com/route-map
[13] https://www.lufthansa.com/us/en/flights
[14] https://www.swiss.com/lhg/us/en
[15] https://www.turkishairlines.com/en-us/flight-destinations/

and transportation services in a manner comparable to non-disabled individuals, contravening the statutes referenced herein. As evidenced by the decision of the district judge from Texas, who transferred the case to this Court, these circumstances confer specific jurisdiction upon this Court for this lawsuit.

The New York Long-Arm Statute subjects a defendant to specific jurisdiction where the defendant: (1) transacts business within the state; (2) commits a tort within the state; (3) commits a tort outside the state causing injury within the state, if the defendant either, "does or solicits business, or engages in any other persistent course of conduct, . . . derives substantial revenue from goods used or consumed or services rendered, in the state or, expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state." N.Y.C.P.L.R. § 302 (a)(1) -(a)(4).

## 42 U.S.C § 1983

The mask mandate enforced by airlines operates within the framework of the law. As detailed in the Complaint, airline employees acted as enforcers of this mandate, with instances such as JetBlue personnel reprimanding the plaintiff for not wearing a mask and Delta Airline employees denying him boarding. This enforcement resembles a policing process, evident to anyone who has flown during

the pandemic. However, the defendants' reliance on West v. Atkins 487 U.S.42,48 (1988) to argue against the applicability of 42 U.S.C. §1983 is unfounded. Contrary to their assertion, the decision in West v. Atkins actually supports the plaintiff's claim under §1983.

The Court quotes, "Institutional physicians assume an obligation to the mission that the State, through the institution, attempts to achieve." Polk County, 454 U.S. at 454 U. S. 320." The Court's decision is that the Physician would be liable to 1983 in that case. It is not very different from here, where the airlines, the federal agencies, and the local and State agencies all worked in unison to enforce this mandate.

Similarly, in Parver v. JetBlue Airlines Corp. 649 Fed. Appx. 539, 543 (9th Cir. 2016), the court ruled against liability for the airlines under §1983, primarily due to insufficient involvement in policing requirements. However, in the present case, the facts demonstrate consistent involvement of law enforcement when mask violations occur on planes, illustrating concerted efforts between airlines and state authorities to enforce the mandate, even against individuals with disabilities, as exemplified by the Spirit Airlines incident that was in the news recently.[16]

---

[16] https://www.businessinsider.in/thelife/news/spirit-airlines-is-defending-its-decision-to-de-board-an-entire-flight-after-it-says-a-family-refused-to-wear-masks-as-videos-of-the-incident-spark-backlash-online/articleshow/81922657.cms

The Supreme Court held the following:

"…we held that the private party's joint participation with a state official in a conspiracy to discriminate would constitute both "state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights" and action " `under color' of law for purposes of the statute." Lugar v. Edmondson Oil Co., 457 US 922 - Supreme Court 1982.

The Airline Defendants most certainly violated 1983, and should be held accountable.

## 42 U.S.C. § 1985(3) & 1986 – FEDERAL CONSPIRACY STATUTES

Plaintiff elaborated in the complaint, carefully addressing all the arguments that Defendants were going to present with respect to these statutes.

## ACAA PRIVATE RIGHT OF ACTION

This was addressed thoroughly in the Complaint. There is no binding precedent or settled law saying there is no private right of action.  There is a belief that there is a robust enforcement scheme at the Department of Transportation ("DOT"). That was the entire basis of the idea that there should be no private right. Well, guess what, that was proven wrong.

There probably was no need for major enforcement in the past, because airlines would police themselves, often to avoid bad publicity. We may have believed there was an enforcement scheme. No one really knew, because there

wasn't much to enforce. Suddenly, there is Covid and an all-encompassing mask mandate, and we find out very clearly that there is no enforcement at all.  Congress wants these laws to be kept, and it is appropriate for this Court to confirm that the disabled are entitled to enforcement of their laws protecting their civil rights.

The Circuit Court cases were not en-banc and there is no binding precedent. They were based on a mistake or misunderstanding.  The Circuit Court cannot say that they cannot require the DOT to enforce the law and simultaneously say that there is a robust enforcement scheme.  It is only possible to be one or the other. This is a contradiction. See the Complaint for more on this argument.

Defendants bring Lopez v. Jet Blue Airways, 662 F.3d 593, 597 (2d Cir. 2011) as evidence and as precedent.  They write, "Plaintiff does not point to any change in the ACAA's enforcement structure since Lopez was decided, nor any case law superseding Lopez, so there is no basis to deviate from the Second Circuit's holding."

As described in the Complaint, Lopez says the following: "…because the statute provides an administrative enforcement scheme designed to vindicate fully the rights of disabled passengers." Lopez v. Jet Blue Airways, 662 F. 3d 593 - Court of Appeals, 2nd Circuit 2011.  Plaintiff proved in the Complaint that this is a mistake.  There is no enforcement scheme, and that is exactly why the airlines can do what they want.  They are a cynical bunch.  They discriminate against people

with disabilities.  The DOT ignores it, as there is no process set up to enforce it.

Then the airlines go to court to fight it, saying "there is a robust enforcement by the

DOT," knowing all that time that this is bogus.

 The Lopez case is not precedent.  It relies on Sandoval.  Many lawyers and

sometimes judges might rely on Sandoval, but that case is not an ACAA violation.

See the Complaint where Plaintiff clarifies these differences (Paragraph 1050 &

1051). At the time of Lopez, the real truth of the DOT lack of enforcement and

lack of ability to enforce was not yet clear.  Covid-19 brought out the low moral

character of the airlines, and the absolute inability of the DOT to address it.  The

Circuit Court decisions brought down in the Complaint Abadi v. DOT in the 2nd

Circuit AKA In Re: Aaron Abadi, and Abadi v. DOT in the DC Circuit (described

in the Complaint), showed that the DOT had no real enforcement mandate and

therefore the Circuit Courts have no power over them to require enforcement.

 Without any real precedent, and with the understanding that there was no

real enforcement process set up through the DOT, this Court must look at this with

fresh eyes, and make a decision based on the facts and the understanding of the

law.

## 42 USC 1986 IS NOT TIME BARRED IN THIS CASE

The circumstances surrounding this case were dynamic and enduring, with discrimination persisting over several months. Determining the potential harm, its nature, and liability to the defendants proved challenging if not elusive. The plaintiff can demonstrate a lack of awareness regarding the feasibility and timing of legal action, necessitating a considerable period of investigation before initiating the lawsuit. Such matters are best addressed within the litigation process rather than through a motion to dismiss. Furthermore, the essence of 1986 pertains to individuals failing to intervene against discrimination when presented with the opportunity. However, the plaintiff could not ascertain who had such opportunities, when, or how until extensive research and review unfolded over months.

Moreover, the plaintiff initiated the complaint process by lodging grievances with the Department of Transportation ("DOT"), perceiving it as the appropriate avenue for addressing his rights. Following limited assistance from the DOT, the plaintiff proceeded to file a petition for review, as detailed herein. Throughout the litigation period, encompassing both court proceedings and administrative tribunals, the statute of limitations remains tolled, particularly considering the initial expectation for the plaintiff to exclusively seek redress through the DOT.

## STATE CIVIL RIGHTS CLAIMS

Defendants tried to have the UNRUH & NJLAD & Texas Civil Rights & New York City Civil Rights counts dismissed.

Preemption does not apply, as the entire purpose of state human rights laws are in addition to federal laws. If preemption existed, these laws would all be meaningless. The only time preemption exists is if there is a conflict. For example, if federal law requires a 15-foot ramp for wheelchair access, and state law says only 14-feet, then the state law would be preempted by the federal law. Adding damages to existing federal law that has no damages, is not a problem of preemption.

Even the Defendants know this concept and they themselves use it in their Motion.  They write (Page 33), "…those laws "conflict with" the Mandate and are expressly preempted…"  They know that only a conflict can bring up a preemption issue.  They try to say that there is conflict here, because the "mandate" from the DOT says that they can ask for medical certificates and other ACAA violations. That is not true and not honest.  The "mandate" is not legally binding and is not allowed to conflict with federal ACAA laws.  If they are violating this Plaintiff's rights as to State Law or ACAA law, then they cannot quote a footnote to a letter that was obviously against the law, to authorize their violations of the law.  That is absurd.

Here is a clarification of the preemption concept by the Supreme Court of the United States.

"Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land;. .. any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus, since our decision in McCulloch v. Maryland, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." Maryland v. Louisiana, 451 U. S. 725, 746 (1981). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 230 (1947). Accordingly, "`[t]he purpose of Congress is the ultimate touchstone' " of pre-emption analysis. Malone v. White Motor Corp., 435 U. S. 497, 504 (1978) (quoting Retail Clerks v. Schermerhorn, 375 U. S. 96, 103 (1963)).
Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U. S. 519, 525 (1977). In the absence of an express congressional command, <u>state law is pre-empted if that law actually conflicts with federal law</u>, see Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n, 461 U. S. 190, 204 (1983), or if federal law so thoroughly occupies a legislative field "`as to make reasonable the inference that Congress left no room for the States to supplement it.' " Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta, 458 U. S. 141, 153 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 U. S., at 230)." Cipollone v. Liggett Group, Inc., 505 US 504 - Supreme Court 1992.

There most certainly is no preemption without a real conflict.

Here is another example of preemption issues needing a conflict to be an issue:

"Thus, <u>there is no basis for us to find either that it would have been</u> <u>"impossible" for Independence to comply with both state law and the ACAA,</u> <u>or that state law would have been an "obstacle to the accomplishment and</u> <u>execution of the full purposes and objectives of Congress.</u>" English, 496 U.S. at 79, 110 S.Ct. 2270." Elassaad v. Independence Air, Inc., 613 F.3d 119 (2010) 3rd Circuit.  (While this is a 3rd Circuit case, the decision is quoted from Supreme Court caselaw).

When it comes to those states, those were specific states that Plaintiff did travel, needed to travel more to and from, and was denied by these airlines. They all have flights that they book through and from these states, either direct or through partner airlines.

## **<u>PROMISSORY ESTOPPEL</u>**

The Complaint says the following regarding Promissory Estoppel, "Defendants in their advertisements, on their websites, in their brochures and statements all allege that they are decent people, that they will treat those with disabilities and/or special needs with care."

There are probably dozens of places on their websites and in their advertisements where they promise to be nice to the disabled.  They breached those promises and were just horrible.  Here are some examples:

**Air Canada** says "Air Canada is committed to being a leader in accessible travel…"[17]

**Austrian** says, "We have developed a range of special services for people with disabilities and passengers requiring assistance to comply with EU Regulation 1107/06 regarding the rights of disabled passengers and those with restricted mobility when travelling by air. Our service package for passengers with restricted mobility or sensory perception on direct flights to or from the USA has been designed to be compatible with regulation 14 CFR DOT382."[18]

**Cathay Pacific** says, "Cathay Pacific's vision is simple – to be the world's best airline. Being the best means we strive to excel in everything we do, universally. This includes embracing values of accessibility, diversity, and inclusion, and putting the safety and well-being of our people and customers first."[19]

**Etihad Airways** says, "Flying with a medical condition, have a disability or need to book your child as an unaccompanied minor? Just let us know how we can make your journey easier. Whatever support you need, we're here to help."[20]

**Finnair** says, "Please let us know about your disability or need for assistance in advance, and we will help you with all the arrangements."[21]

**Emirates** says, "Emirates is proud to join the US Department of Transportation in promoting and protecting the rights of passengers with disabilities. We are committed to complying with the Air Carriers Access Act and have implemented our own service standards to ensure the comfort and safety of passengers with disabilities as they travel with us."[22]

---

[17] https://www.aircanada.com/uk/en/aco/home/plan/accessibility.html#/
[18] https://www.austrian.com/us/en/accessible-travel
[19] https://www.cathaypacific.com/cx/en_US/site-help/our-commitment-to-accessibility.html
[20] https://www.etihad.com/en/manage/special-assistance
[21] https://www.finnair.com/us-en/special-assistance-and-health/special-assistance-at-the-airport-and-services-on-board
[22] https://www.emirates.com/us/english/before-you-fly/health/accessible-travel/

**Royal Jordanian Airlines** says, "Royal Jordanian gives its undivided attention to those with special needs and anyone who needs special care during the flight."[23]

**Kenya Airways** says, "Sit back and relax! Travel should be worry-free. That's why we are here to help at every step. We accommodate travelers with all kinds of special needs… Whatever your needs might be, we will make your travel comfortable and easy."[24]

**Korean Air Lines** says, "Accommodating the special needs of passengers with disabilities is a top priority for Korean Air."[25]

**Qatar Airways** says, "Qatar Airways staff is trained as well as mindful of the needs and requirements of our customers who require additional assistance, including individuals with disabilities and unaccompanied minors. We make sure that customers are not discriminated against on the basis of disability."[26]

**Lufthansa** says, "Passengers with reduced mobility are carried in accordance with EU Regulation No. 1107/2006 of 5 July 2006 on the rights of disabled passengers and passengers with reduced mobility. Any passengers travelling to/from the USA are carried in accordance with the U.S. DOT provisions, Title 14, Code of Federal Regulations, Part 382, effective as of 13 May 2009."[27]

**Swiss** says, "We assist passengers with disabilities at the airport and during the flight. Take care of the main preparations so we can get any obstacles out of the way for you."[28]

---

[23] file:///C:/Users/aa/Downloads/special_needs_mod2016.pdf

[24] https://www.kenya-airways.com/en/plan/special-care/

[25] https://www.koreanair.com/us/en/footer/others/customers-service-plan

[26] https://www.qatarairways.com/en/services-special/disability-and-medical.html#:~:text=Qatar%20Airways%20staff%20is%20trained,on%20the%20basis%20of%20disability.

[27] https://www.lufthansa.com/us/en/travellers-with-special-needs

[28] https://www.swiss.com/es/en/prepare/special-care/accessible-travel

**Eva Airways** says, "When you need special assistance because of a physical disability or mental/emotional disability, EVA will provide individual attention and assistance."[29]

**Turkish** says, "We ensure that passengers who are ill or who have disabilities can travel comfortably and in worry-free conditions."[30]

**Gulf Air** says, "Gulf Air is committed to providing a safe and comfortable journey for all our passengers."[31]

## INJURIOUS FALSEHOODS

Defendants seek dismissal on the grounds that they were merely adhering to the mask mandate and therefore cannot be accused of malice. However, this assertion is false. The Plaintiff was exempt from the mask mandate, as evidenced in the Complaint where the Department of Transportation (DOT) explicitly reminded airlines, including the Defendants, of their obligation to adhere to the Air Carrier Access Act (ACAA) despite the mask mandate. The Defendants were aware of the legal requirements necessitating an individualized assessment to ascertain if the Plaintiff should be exempt, which they failed to conduct.

---

[29] https://www.evaair.com/en-global/fly-prepare/special-assistance-and-inquiry/disability-assistance/
[30] https://www.turkishairlines.com/en-us/miles-and-smiles/campaigns/another-facility-for-our-passengers-with-disability/
[31] https://www.gulfair.com/en/help/help-center

Furthermore, Defendants argue that the cause of action lacks a claim for relief. However, the requested relief is clearly stated in the Complaint, with damages incurred in conjunction with other claims outlined. The remedies sought to address these injuries were explicitly detailed at the conclusion of the complaint. The determination of damages and available relief will ultimately be left to the discretion of the jury.

This Count is not time-barred, as described above with respect to 14 USC 1986.

## INVASION OF PRIVACY

This Count is not time-barred, as described above with respect to 14 USC 1986. Preemption was also addressed in the Complaint and above.

## FRAUDULENT MISREPRESENTATION

Defendants seek dismissal based on preemption, which has been addressed extensively in both this document and the Complaint. The same reasoning applies to allegations of negligence and emotional distress.

Furthermore, Defendants argue that the fraudulent misrepresentation claim lacks

clarity. Plaintiff disagrees and, if the Court sides with the Defendants, seeks the

chance to provide clarification in an amended complaint.

## THE CONSTITUTIONAL RIGHT TO TRAVEL

Defendants cited caselaw asserting that minor travel restrictions do not

constitute a denial of a fundamental right, referencing Town of Southold v. Town

of E. Hampton, 477 F.3d 38, 54 (2d Cir. 2007), and similar cases. However, these

precedents are not directly applicable to the present case. Here, Plaintiff contends

that nearly all major transportation providers—airlines, Greyhound Buses, Amtrak

Trains, and ride-share companies—either denied Plaintiff access or imposed

regulations violating disability laws. Plaintiff alleges these actions were

intentionally taken to obstruct travel for Plaintiff and others similarly situated.

For instance, during Covid restrictions, while non-disabled individuals could

simply book and board flights without impediment, Plaintiff faced onerous

requirements, such as obtaining medical certificates for each flight, even for return

trips. This necessitated maintaining ongoing medical relationships solely for the

purpose of securing these certificates, coupled with additional arbitrary rules

seemingly designed to deter Plaintiff from traveling.

Defendants' assertion that Plaintiff wasn't completely denied access overlooks the systemic barriers encountered, including instances where airlines like Delta and Air France, despite formal approval, still denied Plaintiff boarding or subjected him to mistreatment. British Airways' conduct, as detailed in both this narrative and the complaint, provides another illustrative example.

The Air Carrier Access Act (ACAA) explicitly delineates when medical certificates are required, which does not encompass mask mandates. Congress anticipated potential abuses by airlines and enacted laws to prevent such practices.

Plaintiff contends that these restrictions substantially impeded his constitutional right to travel, resulting in significant financial losses and injuries. Defendants' characterization of these restrictions as minor is untenable, particularly given the stark disparity between Plaintiff's experiences and those cited in the Andreadakis case, where the plaintiff's ability to travel with a mask was acknowledged—an option not possible for this Plaintiff in this instance.

The Andreadakis case referenced by the Defendant differs significantly from the present situation. The judge noted that the plaintiff in that case could have traveled with a mask, which is not feasible for this Plaintiff. Furthermore, the Andreadakis case has notable deficiencies and constraints, chiefly because the Plaintiff failed to adequately address the Motions to Dismiss. Imposing

responsibility on this Plaintiff for those shortcomings undermines his right to due process.

## PUNITIVE DAMAGES

"Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." BMW of North America, Inc. v. Gore, 517 US 559 - Supreme Court 1996.

There are many legal components and variations to the Punitive Damages question.  ADA and RA do not allow for punitive damages.  Many of the violations do allow for Punitive Damages.  Here are some examples.

"Punitive damages are available in "a proper" § 1983 action." Carlson v. Green, 446 US 14 - Supreme Court 1980.

"As early as 1915 the Mississippi Supreme Court had recognized that punitive damages were available in a contract case when "the act or omission constituting the breach of the contract amounts also to the commission of a tort." Pilot Life Ins. Co. v. Dedeaux, 481 US 41 - Supreme Court 1987.

"The Complaint states a claim for punitive damages, which Defendant seeks to dismiss. Dkt. No. 1, at 32-33. Punitive damages may be awarded as a matter of federal law under 42 U.S.C. § 1983 or Georgia law under O.C.G.A. § 51-12-5.1.

As to recovery under federal law, "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Similarly, under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).

Plaintiffs apparently admit that they cannot "seek punitive damages under the Montreal Convention." Dkt. No. 15, at 7. However, because the Montreal Convention does not apply to the remaining claims, as pleaded in the Complaint and left after this Order, this concession is unwarranted. Greater factual development is necessary to determine whether Plaintiffs can make a claim for punitive damages. Therefore, Defendant's motion to dismiss this claim is DENIED." Benjamin v. American Airlines, Inc., 32 F. Supp. 3d 1309 - Dist. Court, SD Georgia 2014.

I brought this last case to show that the Punitive Damages Question is complicated, and the preemption question is also sometimes applicable and at other

times not. For these issues to be resolved in a motion to dismiss would be unreasonable and unfair.

The preemption question was addressed at length in the Complaint. The first and most important response is that preemption only applies when there is a conflict. There are ADA laws, yet each state created their own disability laws. If there is blanket preemption, the states are wasting their time, and no state disability claim should ever be acted upon in court. That is not the case.

"The Ninth Circuit found in Gilstrap v. United Air Lines, "[t]he ACAA does not, however, preempt any state remedies that may be available when airlines violate those standards." 709 F.3d 995, 1010 (9th Cir. 2013)" Segalman v. Southwest Airlines Co., 2016 WL 146196, at *3 (E.D.Cal., 2016)

And further, it says, "Federal regulations "do[ ] not, however, preempt any state remedies that may be available when airlines violate those standards." Id.

The Defendants are disputing the Punitive Damages. I don't believe it would be appropriate for the Court to address that now, at the motion to dismiss stage, but rather this is something that should be left for trial, or at least until there's a motion for summary judgment.


**MOOTNESS**

Defendants brought up the MOOTNESS justification hidden in a footnote, as they probably knew that it won't stick. They are asking this Court to consider this case moot, as currently the mask requirement is no longer in effect.

This issue was addressed thoroughly in this Complaint. Even till this day there are constant new Covid rules, restrictions, and actions taken by the CDC, private companies, and various government agencies.

The CDC just put a new expansive testing project for multiple diseases at airports.  It was in the news just recently.[32]

Mootness does not apply in this case for multiple reasons. Now, suddenly there are companies, organizations, hospitals, schools and the like that are reinstating mask policies.[33]

In order to claim mootness, the Defendants have a heavy burden to prove, as in *Sheely,* "The "formidable," "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173 (11th Cir. 2007).

In order to be considered moot it has to pass the following test:

---

[32] https://www.cdc.gov/media/releases/2023/s1107-testing-respiratory-viruses.html
[33] https://www.newsweek.com/mask-mandates-return-list-places-restrictions-1823069

""""A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).

If tomorrow morning, there is an increase in the Covid deaths and hospitalizations, it is likely that they will try to reinstate mask mandates. If a new pandemic showed up, it is likely that they will try to reinstate mask mandates. The CDC, NIH, Anthony Fauci, and even Bill Gates have been predicting another pandemic in the very near future. I would listen to them, because they predicted the last pandemic.[34]

Besides, initially, before there was a mandate, the airlines all had their own policies, and when the mandate ended, many airlines continued their own policies.

The DC Circuit writes the following in a challenge to the TSA mask mandate: "Because there is a more-than-speculative chance that the challenged conduct will recur, these cases are not moot." Wall v. Transportation Sec. Admin., No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023).

Besides all that, the fact that there are injuries alleged and damages claimed, it is important to litigate all the discrimination claims in order to determine if there

---

[34] https://centerforhealthsecurity.org/our-work/tabletop-exercises/event-201-pandemic-tabletop-exercise

was discrimination, get declaratory relief, and only then damages can be applied to the state claims.  It is still extremely relevant. Even with respect to Federal Defendants it is thus relevant. The point of mootness stopping a lawsuit, is the idea that there is nothing the court can do to bring redress or rectify the wrong. The bar isn't very high.  The Supreme Court recently held that even just nominal damages are sufficient redress to warrant a litigation.

"For purposes of this appeal, it is undisputed that Uzuegbunam experienced a completed violation of his constitutional rights when respondents enforced their speech policies against him. Because "every violation [of a right] imports damage," Webb, 29 F. Cas., at 509, nominal damages can redress Uzuegbunam's injury even if he cannot or chooses not to quantify that harm in economic terms." UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. Supreme Court March  8, 2021.

Also, see this Supreme Court decision in full; here is an excerpt:

"A declaratory judgment can then be used as a predicate to further relief, including an injunction. 28 U. S. C. § 2202; see Vermont Structural Slate Co. v. Tatko Brothers Slate Co., 253 F. 2d 29 (C. A. 2d Cir. 1958); United States Lines Co. v. Shaughnessy, 195 F. 2d 385 (C. A. 2d Cir. 1952)."

Powell v. McCormack, 395 US 486 - Supreme Court 1969

Let us put the MOOTNESS claims behind us and move forward on this litigation.

## SOVEREIGN IMMUNITY OF A FOREIGN STATE & JURY TRIAL

There is no immunity for commercial activity, even from a sovereign state. An airline owned by a foreign government is the classic example for the commercial activities exception to such immunity.

See 28 U.S. Code § 1605 - General exceptions to the jurisdictional immunity of a foreign state

> "(a)A foreign state <u>shall not be immune</u> from the jurisdiction of courts of the United States or of the States in any case—
> (2)in which the action is based upon <u>a commercial activity</u> carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

The issue of jury trial can be addressed later, closer to the time of the trial. There is no requirement not to have a jury. The question will be if the judge should be deciding certain facts, or will they be left to the jury to decide. See the Seventh Circuit explanation:

"The other issues we remit to the nonjury trial. But to provide further guidance on remand, we address an ambiguity in the meaning of the term "nonjury trial." Does it mean that the trial must be conducted in the absence of a jury, or merely that the "verdict" must be rendered by the judge rather than by a jury? We think it is latter. In many trials some factual issues are to be resolved by a jury and others by a judge, e.g., Brine v. University of Iowa, 90 F.3d 271 (8th Cir.1996); Nelson v. J.C. Penney Co., 75 F.3d 343 (8th Cir.1996); Young v. Miller, 883 F.2d 1276 (6th Cir.1989); Ogonowski v. State, 87 Md. App. 173, 589 A.2d 513 (1991); People v. Willis, 217 Ill.App.3d 909, 160 Ill.Dec. 644, 577 N.E.2d 1215 (1991), and in these mixed bench/jury trials all the evidence is introduced in the presence of both triers of fact and the jury resolves the issues triable by the jury and the judge the other issues, except that if there are factual issues common to both the jury- and the judge-tried claims the jury's verdict binds the judge. McKnight v. General Motors Corp., 908 F.2d 104 (7th Cir.1990)." Olympia Exp., Inc. v. Linee Aeree Italiane, SPA, 509 F. 3d 347 - Court of Appeals, 7th Circuit 2007.

The Defendants did not provide solid evidence that their airlines are owned completely by the foreign states.  During the discovery process they will have an opportunity to provide that.  If the law provides that they are entitled to deny a jury trial, then so be it.

## CONCLUSION

This case is a complex case, with many aspects, both of facts and legal issues. The above response in conjunction with the Complaint itself should sufficiently resolve any of the issues brought up in the Motion to Dismiss. The

U.S. Constitution affords each citizen their own due process. Plaintiff asks this Court to allow for the lawsuit to proceed and we can address all these items in trial. A motion to dismiss should not be used to take away a person's right to justice.

**WHEREFORE**, Plaintiff asks this court to DENY this motion to dismiss in its entirety, and to schedule an Initial Case Management Conference in accordance with Rule 16(b) of the Federal Rules of Civil Procedure.

Respectfully submitted this 9th Day of February, 2024.

s/Aaron Abadi

AARON ABADI, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
516-639-4100
Email:  aa@neg.com