**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

AARON ABADI,                                    )
                                                )
                    Plaintiff                    )
                                                )
        v.                                       )          Case No. 1:23-cv-04033-LJL
                                                )
AMERICAN AIRLINES, INC., et al.,                )
                                                )
                    Defendants.                  )

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT**
**SOUTHERN AIRWAYS EXPRESS, LLC D/B/A MOKULELE AIRLINES**

**STINSON LLP**
Kieran M. Corcoran (KC4935)
100 Wall Street, Suite 201
New York, New York 10005
Tel: (646) 883-7480
Email: kieran.corcoran@stinson.com

Paul Lackey (PL7651)
2200 Ross Avenue, Suite 2900
Dallas, TX 75201
Tel: (214) 560-2206
Email: paul.lackey@stinson.com

M. Roy Goldberg *(Admitted Pro Hac Vice)*
1775 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C. 20006
Tel: (202) 728-3005
Email: roy.goldberg@stinson.com

***Attorneys for Southern Airways Express,***
***LLC (d/b/a Mokulele Airlines)***

Dated: February 26, 2024

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................**Error! Bookmark not defined.**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS .................................................................................. 1

APPLICABLE STANDARD.............................................................................. 4

ARGUMENT ...................................................................................................... 5

I.    PLAINTIFF HAS FAILED TO DEMONSTRATE THE EXISTENCE OF PERSONAL JURISDICTION OVER MOKULELE................................................... 5

II.   PLAINTIFF LACKS STANDING TO PURSUE HIS CLAIM AGAINST MOKULELE.............................................................................................. 7

III.  THE COMPLAINT FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983. ................ 8

IV.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER 42 U.S.C. §§ 1985(3) AND 1986........................................................................................................... 8

V.    PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION TO PURSUE HIS CLAIM UNDER THE AIR CARRIER ACCESS ACT................................................................ 12

VI.   PLAINTIFF HAS NO CLAIM AGAINST MOKULELE UNDER THE REHABILTATION ACT. .................................................................................. 13

VII.  PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY FEDERAL LAW OR OTHERWISE FAIL TO STATE A CLAIM FOR RELIEF............................................ 15

   A.   The California Unruh Act Claim is Preempted and Otherwise Does Not Apply. ............ 15

   B.   The New Jersey Civil Rights Law Against Discrimination Does Not Apply................... 18

   C.   The New York Civil and Texas Rights Laws Do Not Apply. .......................................... 18

   D.   Plaintiff's State Law Negligence Claims Should Be Dismissed. ...................................... 19

   E.   There is No Basis for Plaintiff's Claim for Intentional Infliction of Emotional Distress. . 20

   F.   Plaintiff Has No Claim for Breach of Contract Against Southern/Mokulele. .................. 21

   G.   The Claim for Promissory Estoppel Should be Dismissed............................................... 21

   H.   There is No Basis for Plaintiff's Claim for Injurious Falsehoods ..................................... 22

   I.   The Claim Invasion of Privacy Should be Dismissed. ...................................................... 22

   J.   Plaintiff's Claim for Fraudulent Misrepresentation is Preempted and Otherwise Fails to State a Claim for Relief........................................................................................................... 23

VIII. PLAINTIFF'S CLAIMS ARE MOOT.................................................................... 24

CONCLUSION.................................................................................................... 24

CERTIFICATE REGARDING SERVICE....................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadi v. Target Corp.*,
No. 23-1050, 2023 WL 4045373 (3d Cir. June 16, 2023) .......................................14

*Adamore v. Southwest*,
Civil Action No. H–11–0564, 2011 WL 6301398 (S.D. Tex. Dec. 15, 2011) .......................19

*Air Transport Ass'n of America, Inc. v. Cuomo*,
520 F.3d 218 (2d Cir. 2008).......................................19

*In re Am. Airlines, Inc. Privacy Litig.*,
370 F. Supp. 2d 552 (N.D. Tex. 2005) .......................................23

*Andreadakis v. CDC*,
No. 22-cv-52 (DJN), 2022 WL 2674194 (E.D. Va. July 11, 2022).......................................2, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................4

*Bartell v. Lohiser*,
215 F.3d 550 (6th Cir. 2000) .......................................10, 12

*Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n*,
38 N.Y.2d 397 (1975) .......................................19

*Beacon Enters., Inc. v. Menzies*,
715 F.2d 757 (2d Cir. 1983).......................................6

*Bender v. City of New York*,
78 F.3d 787 (2d Cir. 1996).......................................20

*Bergman v. Alaska Airlines, Inc.*,
484 P.3d 480 (2021).......................................22

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007).......................................5, 6

*Boswell v. Skywest Airlines, Inc.*,
61 F.3d 1263 (10th Cir. 2004) .......................................13

*Cannava v. USAir, Inc.*,
Civ. A. No. 91-30003-F, 1993 WL 565341 (D. Mass. Jan. 7, 1993).......................................20

ii

*Carlson v. Cuevas*,
    932 F. Supp. 76 (S.D.N.Y. 1996) ...........................................................................6

*Carpenter v. Southern Airways Express*,
    No. 2:21-cv-568, 2021 WL 5937749 (S.D. Ohio Dec. 16, 2021)..........................2, 7

*Casperson as Tr. For Samuel M.W. Casperson Dynasty Trust v. Oring*,
    441 F. Supp. 3d 23 (D.N.J. 2020) .........................................................................24

*Chasse v. Humphreys*,
    No. CV-07-189-HU, 2008 WL 4846208 (D. Or. Nov. 3, 2008) ...........................10

*Christian v. Transperfect Global, Inc.*,
    17-cv-5544 (PKC), 2018 WL 4571674 (S.D.N.Y. Sept. 24, 2018).......................22

*Citadel Mgmt., Inc., v. Telesis Trust, Inc.*,
    123 F. Supp. 2d 133 (S.D.N.Y. 2000)......................................................................8

*City of Cleburne v. Cleburne Living Center*,
    473 U.S. 432 (1985).............................................................................................10

*Collins v. Giving Back Fund*,
    No. 18-cv-8812 (CM), 2019 WL 3564578 (S.D.N.Y. Aug. 6, 2019)...............14, 15

*Compass Airlines, LLC v. Montana Dep't of Lab. and Indus.*,
    No. CV 12-105-H-CCL, 2013 WL 4401045 (D. Mont. Aug. 12, 2013) ...............11

*Covino v. Spirit Airlines, Inc.*,
    No. 2:20-cv-01039-GMN-NJK, 2021 WL 4248079 (D. Nev. Sept. 17, 2021) ......17

*D'Amato v. Wis. Gas Co.*,
    760 F.2d 1474 (7th Cir. 1985) .........................................................................10, 11

*D'Amico v. Arnold Chevrolet, LLC*,
    No. 19618/2010, 2011 WL 1105659 (N.Y. Sup. Ct. 2011)...............................19, 21

*Deeper Life Christian Fellowship, Inc. v. Sobol*,
    948 F.2d 79 (2d Cir. 1991)......................................................................................4

*DiStefano v. Carozzi N. Am., Inc.*,
    286 F.3d 81 (2d Cir. 2001)......................................................................................4

*Edmonds-Radford v. Sw. Airlines Co.*,
    17 F.4th 975 (10th Cir. 2021) ...............................................................................15

*Elnajjar v. Nw Airlines*,
    No. Civ.A. H-04-680, Civ.A. H-04-681, 2005 WL 1949545 (S.D. Tex, Aug.
    15, 2005) ..............................................................................................................23

*Exportaciones del Futoro S.A. de C.V. v. Iconix Brand Group, Inc.*,
   636 F. Supp. 2d 223 (S.D.N.Y. 2009)......................................................................22

*Farmer v. Cnty. of Westchester*,
   No. 18 CIV. 2691 (NSR), 2022 WL 3902729 (S.D.N.Y. Aug. 30, 2022)..............12

*Fawemimo v. Am. Airlines, Inc.*,
   751 Fed. Appx. 16 (2d Cir. 2018)..........................................................................18

*Frederico v. Home Depot*,
   507 F.3d 188 (D.N.J. 2007)...................................................................................24

*Friends of Falun Gong v. Pacific Cultural Enter., Inc.*,
   88 F. Supp. 2d 273 (E.D.N.Y. 2003).....................................................................11

*Gerritsen v. de la Madrid Hurtado*,
   819 F.2d 1511 (9th Cir. 1985)................................................................................9

*Gilmore v. Gonzalez*,
   435 F.3d 1125 (9th Cir. 2006)...............................................................................12

*Great Am. Fed. Sav. & Loan Assn. v. Novotny*,
   442 U.S. 366 (1979)...............................................................................................11

*Griffin v. Breckenridge*,
   403 U.S. 88 (1971)..................................................................................................9

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   920 F.3d 1 (D.C. Cir. 2019)....................................................................................4

*Hingson v. Pacific Southwest Airlines*,
   743 F.2d 1408 (9th Cir. 1984)...............................................................................15

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005)................................................................................10

*Hussein v. Dahabshiil Transfer Servs. Ltd.*,
   230 F. Supp. 3d 167 (S.D.N.Y. 2017)....................................................................4

*Jinn v. Sig Sauer, Inc.*,
   No. 20-cv-1122 (PGG) (RWL), 2023 WL 2919558 (S.D.N.Y. April 12, 2023)....................20

*Joseph v. JetBlue Airways Corp.*,
   No. 5:11–CV–1387 (TJM/ATB), 2012 WL 1204070 (N.D.N.Y. Apr. 11,
   2012).................................................................................................................20, 23

*Kennedy v. American Airlines, Inc.*,
   195 F. Supp. 3d 646 (D.N.J. 2016), *aff'd*, 760 Fed. Appx. 136 (2019) ..................21

*Lopez v. JetBlue Airways*,
  662 F.3d 593 (2d Cir. 2011).............................................................................13

*Love v. Delta Air Lines*,
  310 F.3d 1347 (11th Cir. 2022) ......................................................................13

*Lucius v. Fort Taco, LLC*,
  No. 21-22397, 2022 WL 335491 (S.D. Fla. Jan. 5, 2022)...............................14

*Marcus v. CDC*,
  No. 2:22-cv-02383-SSS-AS, ECF No. 177 (C.D. Cal. Feb. 21, 2023)........2, 17

*Martin v. DHL Express (USA), Inc.*,
  580 F. Supp. 3d 66 (D.N.J. 2022) ...................................................................23

*Montalvo v. Spirit Airlines*,
  508 F.3d 464 (9th Cir. 2007) ..........................................................................17

*Montgomery v. Delta Air Lines, Inc.*,
  Case No. 3:21-cv-02715-C, ECF. No 34, *aff'd* 2023 WL 2400743 (5th Cir. 2023)...............21

*Montgomery v. Delta Air Lines, Inc.*,
  No. 22-10692, 2023 WL 2400743 (5th Cir. March 8, 2023)..........................2, 16

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992)..........................................................................................16

*Nat'l Fed'n of the Blind v. United Airlines, Inc.*,
  813 F.3d 718 (9th Cir. 2016) ..........................................................................17

*Pica v. Delta Air Lines, Inc.*,
  812 F. App'x 591 (9th Cir. 2020)....................................................................23

*Rose v. Tyndale*,
  No. 23-1203, 2023 WL 4839371 (3d Cir. July 28, 2023).................................11

*Ruta v. Delta Airlines, Inc.*,
  322 F. Supp. 2d 391 (S.D.N.Y. 2004)..............................................................19

*Sauter v. State of Nevada*,
  142 F.3d 445 (Table), 1998 WL 196630 (9th Cir. 1998) .................................11

*Schultz v. Sundberg*,
  759 F.2d 714 (9th Cir. 1985) .............................................................................9

*Segalman v. Southwest Airlines Co.*,
  895 F.3d 1219 (9th Cir. 2018) ........................................................................13

*Seklecki v. CDC*,
635 F. Supp. 3d 15 (D. Mass. Oct. 12, 2022) ........................................................2

*Serris v. Chastaine*,
No. 2:22-cv-0434-JAM-CKD PS, 2022 WL 715115 (E.D. Cal. Mar. 10, 2022) ..................10

*Sever v. Alaska Pulp Corp.*,
978 F.2d 1529 (9th Cir. 1992) ...........................................................................9

*Shotz v. American Airlines, Inc.*,
420 F.3d 1332 (11th Cir. 2005) ....................................................................13, 14

*Smith v. Comair, Inc.*,
134 F.3d 254 (4th Cir. 1998) ..........................................................................18

*Sommer v. Dixon*,
709 F.2d 173 (2d Cir. 1983)...........................................................................11

*Summers v. Earth Island Inst.*,
555 U.S. 448 (2009)....................................................................................8

*Syed v. Frontier Airlines, Inc.*,
522 F. Supp. 3d 503 (E.D. Mo. 2021)..................................................................18

*U.S. Bank Nat'l Ass'n v. Bank of Am.*,
916 F.3d 143 (2d Cir. 2019)............................................................................6

*U.S. Dep't of Trans. v. Paralyzed Veterans of Am.*,
477 U.S. 597 (1986)...................................................................................13

*United States v. Probber*,
170 F.3d 345 (2d Cir. 1999)............................................................................8

*Voigt v. Savell*,
70 F.3d 1552 (9th Cir. 1995) ...........................................................................9

*Wall v. CDC*,
543 F. Supp. 3d 1290 (M.D. Fla. 2021) ...............................................................12

*Weiss v. El Al Israel Airlines, Ltd.*,
471 F. Supp. 2d 356 (S.D.N.Y. 2006)..................................................................19

*Wilhelm v. Cont'l Title Co.*,
720 F.2d 1173 (10th Cir. 1983) .......................................................................10

*Wright ex rel. D.W. v. Am. Airlines, Inc.*,
248 F.R.D. 572 (E.D. Mo. 2008) ......................................................................23

**Statutes**

14 C.F.R. Part 382 ............................................................................................8, 10

42 U.S.C. § 1983 ..................................................................................................8

42 U.S.C. § 1985(3) .............................................................................9, 10, 11, 12

42 U.S.C. §§ 1985(3) ...........................................................................................9

42 U.S.C. § 1986 ..............................................................................................9, 12

49 U.S.C. § 41713(b)(1) .....................................................................................16

Air Carrier Access Act, 49 U.S.C. § 41705 ..............................8, 10, 11, 12, 13, 14, 17, 18, 23, 24

Airline Deregulation Act, 49 U.S.C. § 1371 ................................16, 18, 19, 20, 22, 23

Airline Deregulation Act, Pub. L. No. 95-504, § 102(a)(4) & (9) ................................16

California Unruh Act (California Civil Code Section 51) ................................16, 17, 18

CARES Act, S. Rep. No. 100-64 (1987) ..............................................................14, 15

Federal Aviation Act, Pub. L. 85-726, 49 U.S.C. § 1301 ......................................17, 18

Federal Rehabilitation Act, 29 U.S.C. § 794(a) ......................................................13, 14, 15

Fed. R. Civ. P. Rule 9(b) ....................................................................................24

Fed. R. Civ. P. Rule 12(b)(1) ...............................................................................4

Fed. R. Civ. P. Rule 12(b)(2) ...............................................................................4

Fed. R. Civ. P. Rule 12(b)(6) ...............................................................................4

Job Training Partnership Act, Pub. L. 97-300, 29 U.S.C § 1501 ................................15

N.J.S.A 10:5-5 .....................................................................................................18

N.Y. Civil Rights Law § 8-107 ...............................................................................18

N.Y. CPLR § 215(3) .............................................................................................19

N.Y. CPLR § 302 .................................................................................................5

N.Y. CPLR § 302(a)(1) .........................................................................................5

N.Y. CPLR § 302(a)(1)-(4) ....................................................................................5

N.Y. CPLR § 302(a)(2)........................................................................................................6

N.Y. CPLR § 302(a)(3)........................................................................................................6

Texas Civil Rights Laws of 1964 (Title IV) ..............................................................18

## INTRODUCTION

Southern Airways Express, LLC, d/b/a Mokulele Airlines ("Mokulele"), respectfully requests issuance of an order dismissing the Complaint and action filed by Plaintiff Aaron Abadi ("Plaintiff") as against Mokulele.  As set forth below, Plaintiff's claims against Mokulele relating to enforcement of the Federal Transportation Mask Mandate ("FTMM") should be dismissed because: (1) there is no personal jurisdiction over Mokulele – which operates solely within Hawaii; (2) Plaintiff lacks standing to pursue his claims against Mokulele; (3) Plaintiff's federal claims fail to state a claim for relief either because there is no private right of action, the statute is inapplicable, or Plaintiff has not alleged the requisite elements of the claim; and (4) Plaintiff's state law claims are preempted by federal law or otherwise fail to allege the requisite elements of the cause of action.

## STATEMENT OF FACTS

On May 1, 2023, *pro se* Plaintiff filed a 212-page Complaint in the U.S. District Court for the Northern District of Texas against 46 air carriers, medical consultants, attorneys, airline employees and various federal agencies and officials, because of his opposition to the Federal Transportation Mask Mandate ("FTMM") and the airlines' adherence to the FTMM and their masking policies during the COVID-19 pandemic.  Dkt. No. 3.  By order dated May 8, 2023, the N.D. Tex. court *sua sponte* transferred the case to this Court.  Dkt. No. 10.  In July, Plaintiff sought to supplement his Complaint.  Dkt. No. 12, 12-1.

**Plaintiff Aaron Abadi**

Plaintiff is part of an online coalition of persons – Americans Against Mask Mandates – who are opposed to having to wear a mask on airplanes during a pandemic.  Several of this coalition's *pro se* cases have been dismissed by various courts throughout the country.  *See, e.g., Andreadakis v. CDC*, No. 22-cv-52 (DJN), 2022 WL 2674194, at *15 (E.D. Va. July 11, 2022) (case dismissed) (appeal pending); *Marcus v. CDC*, No. 2:22-cv-02383-SSS-AS, ECF No. 177 (C.D. Cal. Feb. 21, 2023) (case dismissed) (leave to file amended complaint granted) (new motions to dismiss pending) (attached hereto as Exhibit B); *Seklecki v. CDC*, 635 F. Supp. 3d 15, 28 (D. Mass. Oct. 12, 2022) (case dismissed); *see also Montgomery v. Delta Air Lines, Inc.* (a non-*pro se* case), No. 22-10692, 2023 WL 2400743, at *5 (5th Cir. March 8, 2023) (affirming district court's grant of airline defendant's motion to dismiss all claims).

Plaintiff also has filed lawsuits against corporate and governmental defendants throughout the country, including several filed in this Court, relating to masking requirements and other corporate and governmental decisions.  *See* Cases listed in Dkt. No. 122, at 4.

**Southern Airways Express, LLC d/b/a Mokulele Airlines**

Southern Airways is based in Palm Beach, Florida at 2875 South Ocean Boulevard, Suite 256, Palm Beach, Florida 33480.  Its Hawaiian operation, known as Mokulele, is based in Hawaii.  The business address for Surf Air is 12111 S. Crenshaw Blvd, Hawthorne, California, 90250.  Declaration of David Anderman, Exhibit A hereto ("Anderman Decl.") ¶ 3.  Southern Airways is a limited liability company organized and existing under the laws of Delaware with its principal place of business in Florida.  It is engaged in the business of the carriage by air of passengers, baggage and cargo.  Anderman Decl. ¶ 6.  Southern Airways has never maintained a principal place of business in New York or Texas.  Anderman Decl. ¶ 7.  Southern' Airways' Hawaiian

2

branded airline Mokulele only flies within the State of Hawaii. It does not operate in the State of New York or Texas. Anderman Decl. ¶ 8. It was Mokulele in Hawaii which Plaintiff Aaron Abadi contacted regarding its masking policy, *Id.*

At all times relevant to the Complaint, Southern Airways' base of operations was and currently is located in Florida. Anderman Decl. ¶ 10. According to Mokulele's records, Aaron Abadi did not: make a reservation for travel on a Mokulele flight between September 2021 and the present; enter into or purchase a contract of carriage for travel on a Mokulele flight between September 2021 and the present; and did not travel on any Mokulele flight between September 2021 and the present. Anderman Decl. ¶ 11. Although Southern Airways has a few employees who work remotely from headquarters and reside in New York, neither Southern Airways nor Mokulele has a physical office or facility in New York. Anderman Decl. ¶ 12.

As set forth in the Complaint and Exhibit 58 thereto, the entirety of Plaintiff's involvement with Mokulele was to ask the airline about its masking requirements in September 2021. Exhibit 58 to the Complaint contains two emails: (1) an email from Plaintiff to Mokulele dated September 2, 2021 and (2) an email response to Plaintiff dated September 6, 2021. Plaintiff asked: "Can I travel on your airline without a mask? Or can you provide an accommodation that will allow me to use your airline?" In response, Plaintiff was informed: "face masks are mandatory . . . . We do appreciate your interest in flying with us. If you have any further questions, please do not hesitate to reach out to us."

Several of the airlines sued by Plaintiff have already filed dispositive motions which are pending. Those arguments are correct and Mokulele maintains that once the Court rules on those pending motions there will not be any valid claims remaining against Mokulele.

## APPLICABLE STANDARD

In response to a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., the plaintiff bears the burden of establishing personal jurisdiction.  *See Hussein v. Dahabshiil Transfer Servs. Ltd.*, 230 F. Supp. 3d 167, 174 (S.D.N.Y. 2017).  When no discovery has occurred, a plaintiff must make a *prima facie* showing of jurisdiction through "legally sufficient allegations" to survive a Rule 12(b)(2) motion.  *Hussein v. Dahabshiil Transfer Services, Ltd.*, 230 F. Supp. 3d at 174.  Courts may rely on materials external to the pleadings in considering a motion to dismiss for lack of personal jurisdiction.  *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

Dismissal under Rule 12(b)(1), Fed. R. Civ. P., is proper where, as here, there is a lack of subject matter jurisdiction due to the mootness of the legal claims raised in the Complaint, or the lack of standing on the part of the plaintiff.  "Under Article III of the Constitution, federal courts are empowered to adjudicate only actual, ongoing cases or controversies."  *Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 81 (2d Cir. 1991).  A core element of Article III's case-or-controversy requirement is that the case remains "alive at all stages of judicial proceedings" because "[i]f events subsequent to the filing of a lawsuit resolve the controversy, the case should be dismissed as moot."  *Id.*  "A case is moot if [the] decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 12 (D.C. Cir. 2019) (cleaned up).

To avoid dismissal for failure to state a claim for relief, under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.    PLAINTIFF HAS FAILED TO DEMONSTRATE THE EXISTENCE OF PERSONAL JURISDICTION OVER MOKULELE.

Plaintiff has failed to meet his burden of demonstrating the existence of personal jurisdiction over Mokukele.  As set forth above, Plaintiff did not try to purchase a ticket on Mokulele and since Mokulele only operates within Hawaii, there is no way that Plaintiff could have booked a flight on Mokulele to fly to or from Plaintiff's home in New York.  Plaintiff does not allege general personal jurisdiction.  He has only alleged specific personal jurisdiction under CPLR § § 302(a)(1)-(4).  *See* Supp. Compl., Dkt. No. 12-1, ¶ 18.

CPLR § 302(a)(1)-(4) authorizes New York courts to exercise jurisdiction over non-domiciliaries when the causes of action in the case "arise[e] from" the following conduct by the defendant: (1) the transaction of any business within the state or contracts anywhere to supply goods or services in New York; (2) the commission of a tortious act within the state . . .; or (3) the commission of a tortious act without the state causing injury to person or property within the state . . . if the tortfeasor (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in New York or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) the ownership, use or possession of any real property situated within the state."  CPLR § 302.

Jurisdiction does not exist over Mokulele under CPLR § 302(a)(1) because Mokulele does not transact business in New York.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (cleaned up).  "Section 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York."

*Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983). Plaintiff does not claim that his causes of action against Mokulele arose out of any activities within New York. The email communications between Plaintiff and Mokulele (Compl. Ex. 58) are not sufficient to establish personal jurisdiction. *See Beacon Enters., Inc. v. Menzies*, 715 F.2d at 766 ("New York courts have consistently refused to sustain § 302(a) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York").

In addition, even assuming for the sake of argument that the Mokulele email advising Plaintiff of the mask mandate and exemption requirements constituted a "tortious act," it does not provide a basis for jurisdiction under CPLR § 302(a)(2) because the email was not sent from New York. Accordingly, that email cannot be considered a "tortious act" committed in New York. *See Carlson v. Cuevas*, 932 F. Supp. 76, 80 (S.D.N.Y. 1996). Similarly, there is no personal jurisdiction under CPLR § 302(a)(3) because the Mokulele email (Compl. Ex. 58) was not sent from New York. Finally, Section 302(a)(4) cannot provide the basis for personal jurisdiction over Mokulele given that none of Plaintiff's claims involves any real property owned, used or possessed by Mokulele in New York.

Because Plaintiff has not met the requirements of New York's long-arm statute, the Court need not engage in the constitutional Due Process analysis for Mokulele. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). In any event, the exercise of personal jurisdiction over Mokulele would violate constitutional due process because Mokulele has not purposely availed itself of the privilege of conducting activities within New York; Plaintiff's claim does not arise out of or relate to the conduct of Mokulele within New York; and the exercise of jurisdiction over Mokulele would not be reasonable under the circumstances. *See U.S. Bank Nat'l Ass'n v. Bank of Am.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up); *cf. Carpenter v. Southern Airways*

*Express*, No. 2:21-cv-568, 2021 WL 5937749, at *6 (S.D. Ohio Dec. 16, 2021) (Southern Airways'
"contacts with Ohio are random, fortuitous, and attenuated.  Accordingly, this Court's exercise of
personal jurisdiction over them would not comport with due process.")

## II.    PLAINTIFF LACKS STANDING TO PURSUE HIS CLAIM AGAINST MOKULELE.

Plaintiff lacks standing to sue Mokulele because he does not allege that he flew on
Mokulele with a mask or that he attempted to board a Mokulele flight without a mask but was
precluded from doing so.  Instead, Plaintiff claims that he asked Mokulele if he could fly without
a mask and was told he would need to apply for and receive an exemption to the mask requirement.
However, Plaintiff did not even apply for the mask exemption from Mokulele.  *See* Compl. Exhibit
58.

Plaintiff also lacks standing to sue Mokulele because he has failed to allege the existence
of any damages caused by the acts of Mokulele.  The essence of Plaintiff's claim for damages is
that he lost billions of dollars in business opportunities because he could not fly to pursue that
business.  Plaintiff alleges that "Not allowing his business-related travel caused him severe
financial damages.  Plaintiff is in the waste management and energy business and needed travel in
order to earn a living."  Compl., Dkt. No. 3, ¶ 813.  Plaintiff adds that "There was a loss of
extremely important and lucrative business opportunities due to my inability to travel.  The details
of these in full, will be described and proven during discovery period prior to the trial."  *Id.*, ¶ 814.
What is missing from these general allegations is any credible allegation that Plaintiff lost business
– much less billions of dollars in business – because of Mokulele's mask requirements and
procedures.  There is not even a scintilla of factual support for such an assertion.  Speculative and
hypothetical injuries of the nature alleged by Plaintiff are precisely the type that courts reject when
considering the constitutional sufficiency of Article III standing.  *See, e.g., Summers v. Earth*

*Island Inst.*, 555 U.S. 448, 496 (2009) (rejecting standing theory based on speculative chain of possibilities); *United States v. Probber*, 170 F.3d 345, 349 (2d Cir. 1999) (finding "injuries [were] too speculative to satisfy the case-or-controversy requirement of Article III"); *Citadel Mgmt., Inc., v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 152 (S.D.N.Y. 2000) (dismissing claim "based upon mere speculation" for lack of standing).

## III.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983.

Count Seven should be dismissed because: (1) 42 U.S.C. § 1983 does not apply because Plaintiff challenges the conduct of private entities and persons to enforce **federal** law, not state law; (2) for a private person to be subject to liability under Section 1983, that person must be "jointly engaged with **state officials** in the challenged action"; (3) while the Complaint refers to the potential role that theoretically might be played by local law enforcement if Plaintiff were to refuse to wear a mask, but this is entirely speculative; (4) even if a state government rather than the federal government had imposed the FTMM, it still would be the case that Mokulele did not act "under color of state law"; (5) requiring a passenger to wear a mask onboard aircraft during a pandemic does not deprive the passenger of any rights, privileges, or immunities secured by the Constitution or laws of the United States; (6) to allow passengers to use Section 1983 to pursue claims for disability discrimination by an air carrier would improperly circumvent the exclusive regime under the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705, and its implementing regulations at 14 C.F.R. Part 382; and (7) the Complaint fails to allege the existence of a conspiracy. Plaintiff cannot create the existence of state action based on his concern that someday in some situation it is possible that a state or local law enforcement officer might get involved because Plaintiff refuses to wear a mask.

## IV.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER 42 U.S.C. §§ 1985(3) AND 1986.

Count 8 of the Complaint fails to allege the necessary elements for a claim of conspiracy in violation of 42 U.S.C. § 1985(3). Plaintiff asserts that "People with disabilities who, because of their disabilities cannot wear a mask, is a new class subject to protection under Section 1985(3)," and that "Airline Defendants as an industry conspired with each other, with federal agencies and the Medical Defendants involved, and with the individual employees therein to discriminate against them due to their disabilities." Dkt. No. 3, ¶¶ 945, 972. The Complaint fails to offer any factual allegations to support these claims.

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege facts which support (1) the existence of a conspiracy, (2) to deprive the plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Additionally, there must be some racial or other class-based, invidiously discriminatory animus behind the conspirators' action. *Id.* To make the requisite showing of class-based animus, "the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights." *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1985); *see Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995). That is, a plaintiff must allege that he is a member of a class of persons that the courts have designated as a suspect or quasi-suspect class "requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985)).

"The original purpose of § 1985(3), which was passed as the Ku Klux Klan Act of 1871, was to enforce the rights of African Americans and their supporters." *Holgate v. Baldwin, infra*,

425 F.3d 671, 676 (9th Cir. 2005). It has no application to claims for discrimination on the basis of handicap or mental or physical disability. Stated simply, "[d]isabled individuals do not constitute a 'class' within the meaning of section 1985(3)." *Serris v. Chastaine*, No. 2:22-cv-0434-JAM-CKD PS, 2022 WL 715115, at *3 (E.D. Cal. Mar. 10, 2022) (citing *D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1486 (7th Cir. 1985) ("The legislative history of Section 1985(3) does not suggest a concern for the handicapped"); *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176-77 (10th Cir. 1983) ("We must conclude that a class of 'handicapped persons' . . . was not included as a class in what is now § 1985(3)."); *see also Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000) (plaintiff had no actionable section 1985 claim because statute does not cover claims based on disability-based discrimination or animus); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) (the mentally disabled are not a suspect or quasi-suspect class for purposes of equal protection claims); *Chasse v. Humphreys*, No. CV-07-189-HU, 2008 WL 4846208, at *4 (D. Or. Nov. 3, 2008) ("nothing in the statute or the findings and purposes suggests that the disabled as a group generally, were to be viewed as a suspect or quasi-suspect class for equal protection or section 1985(3) purposes").

Section 1985(3) also does not apply to the conduct or omissions of airlines because disability discrimination claims by disabled airline passengers are exclusively governed by the ACAA, 49 U.S.C. § 41705, and the DOT implementing regulations, 14 C.F.R. Part 382. The procedure set forth in the ACAA and its implementing regulations provide the exclusive remedy to passengers seeking to pursue a disability discrimination claim against the airlines. "Allowing [plaintiff] to pursue his claim through the mechanism of § 1985(3) would impermissibly intrude on the statutory scheme of both" the ACAA and § 1985(3). *D'Amato, supra*, 760 F.2d at 1487; *Sauter v. State of Nevada*, 142 F.3d 445 (Table), 1998 WL 196630, at *1 (9th Cir. 1998) ("Sauter's

allegations of a conspiracy to violate his ADA and ADEA rights implicate an animus toward a congressionally protected class. These claims are not cognizable under § 1985, however, because that section cannot serve as a vehicle to enforce statutory rights when the statute in question has its own remedial structure") (citing *Great Am. Fed. Sav. & Loan Assn. v. Novotny*, 442 U.S. 366 (1979)); *see also Compass Airlines, LLC v. Montana Dep't of Lab. and Indus.*, No. CV 12-105-H-CCL, 2013 WL 4401045, at *14 (D. Mont. Aug. 12, 2013) ("The air carrier is now answerable to the DOT for ACAA regulation violations, and it appears that Congress intended that this be the exclusive remedy in cases not involving breach of contract or bodily injury or death").

In addition to the fact that the § 1985(3) claim fails to identify a classification subject to the statute and cannot be used to circumvent the ACAA, Count 8 is also without merit because of the failure to allege facts to support the conclusory allegation of the existence of a conspiracy. "A complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss." *Friends of Falun Gong v. Pacific Cultural Enter., Inc.*, 88 F. Supp. 2d 273, 279 (E.D.N.Y. 2003); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (holding that conclusory, vague, or general allegations of a conspiracy cannot survive a motion to dismiss); *Rose v. Tyndale*, No. 23-1203, 2023 WL 4839371, at *1 (3d Cir. July 28, 2023) (plaintiff's "complaint is devoid of any allegation that [the defendant] conspired with anyone to discriminate against" plaintiff, and "[s]uch a failure to assert facts from which a conspiratorial agreement can be inferred is fatal to his § 1985 claim") (internal quotation marks omitted).

Finally, although the Complaint alleges that the alleged "conspiracy involves the constitutional right to travel" (Dkt. No. 3, ¶ 969), courts have ruled that there is no constitutional right to travel domestically onboard aircraft in the United States. See *Gilmore v. Gonzalez*, 435 F.3d 1125, 1136 (9th Cir. 2006) ("the Constitution does not guarantee the right to travel by any

11

particular form of transportation"); *id.* at 1137 ("Gilmore does not possess a fundamental right to travel by airplane"); *Wall v. CDC*, 543 F. Supp. 3d 1290, 1292-93 (M.D. Fla. 2021) (mask mandate did not infringe passenger's constitutional right to travel); *id.* at 1293 ("flying may be Plaintiff's preferred mode of transportation, but it is by no means the only reasonable mode of transportation available to him").

Because the Complaint fails to state a claim of a violation of 42 U.S.C. § 1985(3), there is also no basis for the allegation in Count 9 that Mokulele is liable for violation of 42 U.S.C. § 1986. Since § 1985(3) forms a predicate for violation of § 1986, the absence of a cause of action under § 1985(3) necessitates the dismissal of the claim under § 1986. *See, e.g.., Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000). In addition, Plaintiff's Section 1986 claims are time-barred because they were filed more than one year after the challenged conduct. Claims under 42 U.S.C. § 1986 have a one-year statute of limitations, and "the claim accrues when the plaintiff knows or has reason to know of the harm or injury that is the basis of his action." *Farmer v. Cnty. of Westchester*, No. 18 CIV. 2691 (NSR), 2022 WL 3902729, at *4 (S.D.N.Y. Aug. 30, 2022). Here, the Plaintiff is challenging the sending of an email by Mokulele on September 6, 2021, Compl. Ex. 58, which is well more than one year before the Complaint was filed in May 2023.

## V.    PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION TO PURSUE HIS CLAIM UNDER THE AIR CARRIER ACCESS ACT.

Counts 10, 11, 12, 13, 14, 15, 16, 17 and 18 purport to allege violations of the ACAA. These claims should be dismissed because private plaintiffs such as Plaintiff lack a private right of action to allege that an airline violated the ACAA. Several circuit courts, including the Second Circuit, have ruled that the ACAA does not create a private right of action. See *Lopez v. JetBlue Airways*, 662 F.3d 593, 597 (2d Cir. 2011) (concluding that "the text and structure of the ACAA manifests no congressional intent to create a private right of action in a federal district court");

12

*Segalman v. Southwest Airlines Co.*, 895 F.3d 1219, 1229 (9th Cir. 2018) ("In sum, the ACAA's legislative history is insufficient to overcome the strong suggestion that the statute's remedial scheme forecloses an implied private cause of action."); *Boswell v. Skywest Airlines, Inc.*, 61 F.3d 1263, 1270 (10th Cir. 2004) ("Congress' creation of a specific means of enforcing the statute indicates that it did not intend to allow an additional remedy — a private right of action — that it did not expressly mention at all."); *Love v. Delta Air Lines*, 310 F.3d 1347, 1354 (11th Cir. 2022) ("taken together, the text of the ACAA . . . and the surrounding statutory and regulatory structure create an elaborate and comprehensive enforcement scheme that belies any congressional intent to create a private remedy").

## VI.    PLAINTIFF HAS NO CLAIM AGAINST MOKULELE UNDER THE REHABILTATION ACT.

Count 9 purports to allege a claim for violation of the federal Rehabilitation Act, 29 U.S.C. § 794(a) ("RA"), however Plaintiff has no claim against Mokulele under the RA.  The RA prohibits discrimination against disabled individuals with respect to any program or activity that receives federal financial assistance.  *See* 29 U.S.C. § 794(a).  Courts have defined the term "federal financial assistance" with respect to the RA "to mean the federal government's provision of a subsidy to an entity." *Shotz v. American Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005).  The Supreme Court has held that the RA generally does not apply to commercial airlines, because airlines did not receive federal financial assistance within the meaning of the statute.  *See U.S. Dep't of Trans. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 599 (1986).

Because federal "CARES Act" funds were provided to airlines during COVID-19 for the purpose of paying wages, salaries and benefits to airline employees, as opposed to the air carriers' discretionary use, receipt of the funds did not constitute federal financial assistance within the meaning of the RA.  *See* S. Rep. No. 100-64, at 17–18 (1987) ("Federal financial assistance

extended to a corporation or other entity 'as a whole' refers to situations where the corporation receives general assistance that is not designated for a particular purpose."). Accordingly, Section 504 of the RA is inapplicable to Mokulele. *See Lucius v. Fort Taco, LLC*, No. 21-22397, 2022 WL 335491, at *5-6 (S.D. Fla. Jan. 5, 2022) (RA inapplicable because PPP loans defendant received were not federal financial assistance within meaning of the RA); *Collins v. Giving Back Fund*, No. 18-cv-8812 (CM), 2019 WL 3564578, at *11 (S.D.N.Y. Aug. 6, 2019) ("[I]t has been repeatedly held that federal funding to a private entity not primarily engaged in education, health care, housing or parks and recreation, when that funding is earmarked for a particular project or site within the entity's operation, is not 'as a whole' federal funding for purposes of the Rehabilitation Act").

Notably, one court already has ruled that Plaintiff Abadi's claims relating to masking requirements are not subject to the RA. See *Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *2 (3d Cir. June 16, 2023) (upholding district court ruling that Plaintiff's challenge to the Target Corporation masking policy was not subject to the Rehabilitation Act despite Plaintiff's contention that the Target in-store pharmacies received some Medicare and Medicaid funding).

Count 9 also should be dismissed because Plaintiff may not use the RA to circumvent the absence of a private right of action under the ACAA. *See Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1337 (11th Cir. 2005) (RA does not apply to airlines because of their receipt of governmental assistance following the September 11 attacks). The legislative history of the amendment to define "program or activity" under the RA also demonstrates the intended limited scope of Section 504's coverage as it relates to corporations or private entities, such as airlines. The U.S. Senate Report provides the following explanation of "federal financial assistance" within the meaning of Section 504:

> **Federal financial assistance extended to a corporation or other entity "as a whole" refers to situations where the corporation receives general assistance that is not designated for a particular purpose.** Federal financial assistance to the Chrysler Company for the purpose of preventing the company from going into bankruptcy would be an example of assistance to a corporation "as a whole." Federal aid which is limited in purpose, e.g., Job Training Partnership Act (JTPA) funds, is not considered aid to the corporation as a whole, even if it is used at several facilities and the corporation has the discretion to determine which of its facilities participate in the program.

S. Rep. No. 100-64, at 17–18 (1987) (emphasis added); *see also Collins, supra*, 2019 WL 3564578, at *11 ("Though Congress chose to broaden the definition of 'program or activity' as it relates to 'all of the operations' of certain public entities, it did not do the same for private ones") (citation and internal quotation marks omitted).

Even if the RA applied because of the airlines' receipt of CARES Act money (and it does not), that money is no longer being paid to airlines. *See, e.g., Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408, 1415 (9th Cir. 1984) (airline not liable for discrimination under the Rehabilitation Act since the record indicated that the airline was not receiving a federal subsidy for airmail carriage at the time the alleged discrimination occurred). Such funding cannot be tied to Plaintiffs' planned flights in 2022 and the injunctive relief they seek on a prospective basis. *See Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 988 (10th Cir. 2021) (RA Act did not apply to airline despite monetary benefit from federal funding for airport).

For the reasons cited above, Count 9 should be dismissed.

## VII.   PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY FEDERAL LAW OR OTHERWISE FAIL TO STATE A CLAIM FOR RELIEF.

### A.   The California Unruh Act Claim is Preempted and Otherwise Does Not Apply.

Count 20 of the Complaint seeks to allege a claim of a violation of Section 51 of the California Unruh Civil Rights Act. However, there are no allegations against Mokulele relating

to flights that Plaintiff was denied taking to or from California. In addition, any claim under the Unruh Act is preempted by federal law.

The Deregulation Act preempts Count 20 because it seeks to enforce a state law that relates to an air carrier "service." The Deregulation Act states that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, *or service of an air carrier* . . . ." 49 U.S.C. § 41713(b)(1) (emphasis added). Congress enacted the Deregulation Act in 1978 "determining that 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices'" in the airline-services market. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (quoting Pub. L. No. 95-504, § 102(a)(4) & (9)). The preemption clause "ensure[s] that the States [do] not undo federal deregulation with regulation of their own." *Id.* (emphasis added). The Supreme Court has interpreted the preemptive effect of the Deregulation Act broadly. Any state law, including state common law, "having a connection with or reference to" airline prices, routes, or services is preempted unless the connection or reference is "too tenuous, remote, or peripheral." *Morales v. Trans World Airlines, Inc.*, 504 U.S. at 384; *see also Montgomery v. Delta Air Lines, Inc.*, No. 22-10692, 2023 WL 2400743, at *5 (5th Cir. March 8, 2023) ("Delta's decision not to provide transportation to Appellants" who refused to wear a mask "is enough for us to hold that the Deregulation Act preempts their claims. Our precedent makes clear that boarding and transportation are undeniably 'services' under the Deregulation Act"); *Andreadakis v. CDC, supra*, 2022 WL 2674194, at *11 (in dismissing state anti-discrimination law against airlines, the court stated that: "'Undoubtedly, boarding procedures are a service rendered by an airline . . . [T]o the extent that Plaintiff could argue that his claim stems from the airlines' refusal to grant him an exemption to the Mask Mandate

when selling him a ticket, this . . . would fall under the services provided by an airline"), on appeal to the Fourth Circuit.

The Unruh Act claim is also preempted by the ACAA, which exclusively governs allegations of discriminatory or unfair treatment of passengers claiming a disability.  In *Nat'l Fed'n of the Blind v. United Airlines, Inc.*, 813 F.3d 718 (9th Cir. 2016), the court held that claims for discrimination under the Unruh Act were "field preempted" by the ACAA. *Id.* at 736-37, 740; *see also Covino v. Spirit Airlines, Inc.*, No. 2:20-cv-01039-GMN-NJK, 2021 WL 4248079, at *2-3 (D. Nev. Sept. 17, 2021) (noting that "Multiple courts have interpreted the ACAA to preempt certain state law claims" and holding that plaintiff's claim for intentional infliction of emotional distress arising out of alleged mistreatment by airline employees because of her medical condition was preempted by the ACAA because it was "inextricably intertwined with the alleged ACAA violation") (denying motion to amend complaint as "futile"); *Marcus v. CDC*, No. 2:22-cv-02383-SSS-AS, ECF No. 177 (C.D. Cal. Feb. 21, 2023) (granting airline defendants' motion to dismiss) ("The ACAA thus impliedly preempts Plaintiffs' Unruh Act claim" relating to the airline requirement that Plaintiffs wear masks).

The Unruh Act claim is also preempted by the Federal Aviation Act, 49 U.S.C. § 40101, *et seq.*, because it relates to air carrier decisions made for the purpose of enforcing FAA requirements relating to aircraft passenger safety.  Although the Federal Aviation Act does not contain an express preemption clause, most courts have held that the Act impliedly preempts state regulation of airline safety.  *See, e.g., Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007) (the Federal Aviation Act "preempts the entire field of aviation safety through implied field preemption").  In *Fawemimo v. Am. Airlines, Inc.*, 751 Fed. Appx. 16, 19-20 (2d Cir. 2018), the plaintiff sought damages after allegedly having been hit on her head by a television monitor above

her seat while boarding the aircraft.  The court held that the state law negligence claim regarding onboard TV monitors was impliedly preempted by the Federal Aviation Act, which was intended by Congress to occupy the field of air safety: "State laws that conflict with the FAA or sufficiently interfere with federal regulation of air safety are thus preempted."

Here, given that the wearing of masks onboard aircraft during a pandemic directly relates to aircraft safety, any attempt to use state law to interfere with safety requirements is preempted by the Federal Aviation Act.

**B.    The New Jersey Civil Rights Law Against Discrimination Does Not Apply.**

There is similarly no basis for the allegation in Counts 21 and 22 for violation of the New Jersey Civil Rights Law Against Discrimination, N.J.S.A 10:5-5.  There are no allegations against Mokulele relating to New Jersey.  In addition, any claim under New Jersey law is preempted by the Deregulation Act, the ACAA and the Federal Aviation Act.

**C.    The New York Civil and Texas Rights Laws Do Not Apply.**

Counts 23, 24 and 25 purport to allege violations of the New York Civil Rights Law § 8-107.  These claims should be dismissed because they are preempted by federal law, as is the case with the Unruh Act claim (as set forth above).  There is similarly no basis for the allegation in Count 26 of a violation of the Texas Civil Rights Laws.  Also, any claim under the Texas law is preempted by federal law (similar to the Unruh Act claim).  *See also Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998) (Deregulation Act preempted passenger's intentional tort allegations to the extent they were premised on airline's refusal to permit passenger to board his flight); *Syed v. Frontier Airlines, Inc.*, 522 F. Supp. 3d 503, 512 (E.D. Mo. 2021) (airline passenger's state-law claims for negligence and intentional tort were preempted by the ADA).

The Complaint also fails to allege the requisite elements of the tort claim, including an allegation that Mokulele engaged in "an intentional infliction of economic damage, without excuse

or justification." *Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 406 (1975). Also, under New York law, the statute of limitations for a claim for intentional tort is one year. *D'Amico v. Arnold Chevrolet, LLC*, No. 19618/2010, 2011 WL 1105659, at *9 (N.Y. Sup. Ct. 2011) ("The statute of limitations for a *prima facie* tort is one year . . ., including an intentional tort not specifically listed in CPLR § 215(3)").

>    **D.    Plaintiff's State Law Negligence Claims Should Be Dismissed.**

Federal law preempts the claims in Count 28 alleging negligence under various state laws. The Complaint alleges that "Defendants had a duty to treat Plaintiff with decency, to help him circumvent a policy that would cause him the inability to travel and/or the suffering due to his disability." Dkt. No. 3, ¶ 1237. As the Second Circuit recognized in *Air Transport Ass'n of America, Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008), "[a] majority of the circuits to have construed 'service' have held that the term . . . encompasses matters such as boarding procedures . . . ."; *see also Weiss v. El Al Israel Airlines, Ltd.*, 471 F. Supp. 2d 356, 359 (S.D.N.Y. 2006) (allegedly abusive treatment suffered by passengers was connected to airline service). As a result, the negligence claims are preempted by the Deregulation Act. *See, e.g., Adamore v. Southwest,* Civil Action No. H–11–0564, 2011 WL 6301398, at *5 (S.D. Tex. Dec. 15, 2011) ("Accepting as true Plaintiff's allegations that Christina Doe was 'very hostile,' 'uncompassionate,' and that she 'threatened' Plaintiff with a higher fare and thereafter asked her to leave the premises, the agent's rude, demanding, and crass conduct in this context is not so unrelated to airline services that it falls outside the preemptive scope of the Airline Deregulation Act"); *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391, 401 (S.D.N.Y. 2004) (holding that the Deregulation Act preempted claims based on flight attendant's rude comments to plaintiff at the boarding gate because unprofessional conduct "cannot be categorized as outrageous or usc unreasonable"); *Cannava v. USAir, Inc.*, Civ. A. No. 91-30003-F, 1993 WL 565341, at *4-6 (D. Mass. Jan. 7, 1993) (holding

19

that the Deregulation Act preempted claims based on ticketing agent's conduct in grabbing and tearing up plaintiff's bereavement fare ticket, treating plaintiff rudely, and threatening to call airport security); *Joseph v. JetBlue, supra*, 5:11-cv-1387 (TJM/ATB), 2012 WL 1204070, at *7 (N.D.N.Y. Apr. 11, 2012) ("Allowing a common law tort claim challenging an airline's ability to make decisions such as whether to divert and land a plane safely in the face of a winter storm subjects airlines to a patchwork of obligations that would eviscerate federal regulations aimed at air safety control.  This aspect of the negligence claim is clearly preempted by the Deregulation Act").

### E.    There is No Basis for Plaintiff's Claim for Intentional Infliction of Emotional Distress.

There is also no basis for the claim for infliction of emotional distress in violation of various state laws, as asserted in Count 29.  To prevail on a claim for intentional infliction of emotional distress ("IIED") under New York law, a plaintiff must allege and prove: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.  See *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).  "New York courts have imposed a very high threshold for intentional infliction of emotional distress claims, requiring that the conduct must be so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Jinn v. Sig Sauer, Inc.*, No. 20-cv-1122 (PGG) (RWL), 2023 WL 2919558, at *20 (S.D.N.Y. April 12, 2023) (citations omitted).

Plaintiff's allegation of being told he needs to wear a mask to board an aircraft does not rise to the level of outrageous and extreme conduct that is required to support a claim.  There is nothing about the allegations involving Mokulele that would support a finding of conduct that goes "beyond all possible bounds of decency" or that could be regarded as "atrocious, and utterly

intolerable in a civilized community." *See, e.g.*, Order, *Montgomery v. Delta Air Lines, Inc.*, Case No. 3:21-cv-02715-C, ECF No. 34, at *2 ("as aptly argued by Defendant [Delta], Plaintiff's pleadings" regarding the Delta mask requirement "fail to state a claim for either intentional infliction or negligent infliction of emotional distress") (attached hereto as Exhibit B), *aff'd* 2023 WL 2400743, at *2, *5 (5th Cir. 2023); *Kennedy v. American Airlines, Inc.*, 195 F. Supp. 3d 646, 659 (D.N.J. 2016) (flight attendant failed to adequately allege details on the severity of his alleged distress, so as to make a claim for intentional infliction of emotional distress under New Jersey law), *aff'd*, 760 Fed. Appx. 136 (2019)).

In addition, the claim for IIED is barred by the one-year statute of limitations. *See D'Amico v. Arnold Chevrolet, LLC*, No. 19618/2010, 2011 WL 1105659, at *9 (N.Y. Sup. Ct. 2011) ("The statute of limitations for [the tort of intentional infliction of emotional distress] is one year"). As set forth about, Plaintiff's email correspondence with Mokulele occurred in September 2021, which was more than one year before he filed the Complaint in May 2023.

**F.      Plaintiff Has No Claim for Breach of Contract Against Mokulele.**

Count 30 purports to allege a claim for breach of contract, asserting that the "airlines that Plaintiff purchased tickets on, breached their contract by forcing him to wear a mask, attempting to force him to wear a mask, by not allowing him to fly if he does not wear a mask, and/or by not accommodating his special needs." ¶ 1251. However, Plaintiff does not allege that he purchased a ticket from Mokulele, so clearly there is no breach of contract claim against Mokulele.

**G.      The Claim for Promissory Estoppel Should be Dismissed.**

Count 31 purports to allege a state law claim for promissory estoppel. Any such claim is preempted by federal law. *See, e.g., Bergman v. Alaska Airlines, Inc.*, 484 P.3d 480, 484 (2021) (claim for promissory estoppel against Alaska Airlines preempted by the Deregulation Act). In addition to the fact that the legal theory is preempted by federal law, Plaintiff has failed to allege

the necessary elements for a claim of promissory estoppel under New York law.  Such a claim requires the plaintiff to prove three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance.  See *Christian v. Transperfect Global, Inc.*, 17-cv-5544 (PKC), 2018 WL 4571674, at *8 (S.D.N.Y. Sept. 24, 2018).  However, the Complaint fails to identify a promise (much less one that is clear and unambiguous) from Mokulele that Plaintiff would be permitted to fly during the pandemic without a mask.

### H.    There is No Basis for Plaintiff's Claim for Injurious Falsehoods

Count 33 purports to allege a state law claim for "injurious falsehoods" regarding the efficacy of wearing a mask on an airplane.  This cause of action fails to allege a claim for relief.  Under New York law, to prevail on a claim for injurious falsehood, a plaintiff must prove the following: (1) the falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages.  *See Exportaciones del Futoro S.A. de C.V. v. Iconix Brand Group, Inc.*, 636 F. Supp. 2d 223, 232 (S.D.N.Y. 2009).  The Complaint fails to allege these requisite elements.  In addition, such a state law claim is preempted by the Deregulation Act because it relates to an air carrier "service".  Also, the Complaint does not identify any injurious falsehood attributable to Mokulele.

### I.    The Claim Invasion of Privacy Should be Dismissed.

Count 34 seeks to allege a state law claim for invasion of privacy.  The state law claim for invasion of privacy is preempted by the Deregulation Act because it relates to the airlines' services.  *See, e.g., Pica v. Delta Air Lines, Inc.*, 812 F. App'x 591, 593 (9th Cir. 2020) (affirming dismissal of state law claims for alleged failure to protect personal information and timely notify of a data breach because they were preempted under the Deregulation Act); *In re Am. Airlines, Inc. Privacy Litig.*, 370 F. Supp. 2d 552, 564 (N.D. Tex. 2005) (state law claims for invasion of privacy in

connection with ticket reservation was preempted under the Deregulation Act); *Elnajjar v. Nw Airlines*, No. Civ.A. H-04-680, Civ.A. H-04-681, 2005 WL 1949545, at \*17-18 (S.D. Tex, Aug. 15, 2005) (holding that passenger's invasion of privacy claims for purportedly improper questioning by an agent during check-in process were preempted by the Deregulation Act).

   **J.    Plaintiff's Claim for Fraudulent Misrepresentation is Preempted and Otherwise Fails to State a Claim for Relief.**

   Count 36 purports to allege a state law claim for fraudulent misrepresentation, asserting that the "Defendants have falsely represented on their websites, in e-mails to passengers, signage at airports, etc. that 'federal law' requires airline passengers [to] wear face masks," when "Congress has never enacted such a law."  Not only does this allegation fail to allege a false statement (federal law included the FTMM), but it also is a state law claim preempted by the Deregulation Act.  *See Joseph v. JetBlue Airways Corp., supra*, No. 5:11–CV–1387 (TJM/ATB), 2012 WL 1204070, at \*5 (N.D.N.Y. Apr. 11, 2012) ("Enforcing the state law deceptive practices statute in this case would have the 'force and effect of law related to a price, route, or service of an air carrier,' as prohibited by the ADA's preemption clause"); *Martin v. DHL Express (USA), Inc.*, 580 F. Supp. 3d 66, 73 (D.N.J. 2022) (consumer's state law claim for fraud against shipper of goods was preempted by the Deregulation Act).  Count 36 is also preempted by the ACAA.  *See Wright ex rel. D.W. v. Am. Airlines, Inc.*, 248 F.R.D. 572, 573 (E.D. Mo. 2008) (state law misrepresentation claims dismissed because of ACAA preemption).  Separately, Count 36 fails to allege fraud with particularity, as required by Rule 9(b), Fed. R. Civ. P.  Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (D.N.J. 2007).  Rule 9(b) heightens a plaintiff's pleading standard for

circumstances constituting the fraud, not for damages resulting therefrom. *See Casperson as Tr. For Samuel M.W. Casperson Dynasty Trust v. Oring*, 441 F. Supp. 3d 23, 35 (D.N.J. 2020).

## VIII.   PLAINTIFF'S CLAIMS ARE MOOT.

Finally, Plaintiff's claims should be dismissed as moot.  The parties all acknowledge that the FTMM has not been in place since April 18, 2022, and despite Plaintiff's speculative assertions to the contrary, there is no credible basis to assume that the mask mandate will be reinstalled anytime soon.  The fact that Plaintiff claims to have suffered $4.5 billion in damages is untethered to any facts and there is simply no way to tie that specious assertion to any act of omission of Mokulele.

**<u>CONCLUSION</u>**

For the reasons set forth above, Defendant Southern Airways Express, LLC d/b/a Mokulele Airlines respectfully requests that the Complaint and action as against it be dismissed.

Respectfully submitted,

**STINSON LLP**

By:     */s/ Kieran M. Corcoran*
        Kieran M. Corcoran (KC4935)
        100 Wall Street, Suite 201
        New York, New York 10005
        Tel: (646) 883-7480
        Email: kieran.corcoran@stinson.com

        Paul Lackey (PL7651)
        2200 Ross Avenue, Suite 2900
        Dallas, TX 75201
        Tel: (214) 560-2206
        Email: paul.lackey@stinson.com

        M. Roy Goldberg *(Admitted Pro Hac Vice)*
        1775 Pennsylvania Avenue, N.W., Suite 800
        Washington, D.C. 20006
        Tel: (202) 728-3005
        Email: roy.goldberg@stinson.com

        ***Attorneys for Southern Airways Express,***
        ***LLC (d/b/a Mokulele Airlines)***

Dated: February 26, 2024

## <u>CERTIFICATE REGARDING SERVICE</u>

The undersigned counsel hereby certifies that on February 26, 2024 a copy of this document is being served via CM/ECF on all counsel of record who have agreed to accept service electronically in accordance with the applicable Local Rules and Federal Rules of Civil Procedure.

*/s/ Kieran M. Corcoran*
Kieran M. Corcoran
