## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AARON ABADI,** | |
| Plaintiff | **CASE #  1:23-cv-04033-LJL** |
| V. | |
| **AMERICAN AIRLINES, INC., et al** | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO

## DISMISS BY SOUTHERN AIRWAYS EXPRESS, LLC

BY:

AARON ABADI
Pro Se Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
Tel: 516-639-4100
Email:  aa@neg.com

COMES NOW Plaintiff, *pro se*, and responds to Defendant Southern Airways Express, LLC's ("SAE") Motion to Dismiss (Docs. 331-332). The Complaint was pretty thorough and did address many of the issues raised in this motion. Plaintiff will attempt to focus in this response on elaborating on some of that, and/or addressing issues not responded to in the Complaint itself.

Plaintiff, Aaron Abadi, has sensory processing disorder. He cannot wear a mask or glasses, or anything on his head or face. When the airlines started requiring masks, they refused to allow Plaintiff to fly, and/or discriminated against him constantly. He was yelled at, denied access to fly, and even once left stranded in France. This lasted throughout the mask policies and mandates. He provided evidence of his disability, but these airlines did not care.

The inability to travel, caused severe financial injuries to Plaintiff, who is currently penniless and had to file this with the generous help of the Court, through an IFP Motion. Plaintiff had his entire income destroyed and ability to make income was taken from him. The Motion to Dismiss addresses many of the Counts of the Causes of Action, and Plaintiff will respond accordingly.


**<u>JURISDICTION</u>**

Defendant writes, "Jurisdiction does not exist over Mokulele under CPLR § 302(a)(1) because Mokulele does not transact business in New York." Let us

clarify this point.  Southern Airways Express, LLC does have flights to, from, and/or within the State of New York, and/or certainly had them during the period in question. See the attached document showing a few of their flight's schedules relating to New York State (Exhibit A).

Yes, the division that comes under the name "Mokulele," may not fly in the New York area, but the claim is against SAE as a whole.  The request to fly was made to the airline, and the response denying Plaintiff access to fly flat out was made by the company as a whole, referring to any and all flights. (See Complaint Exhibit 58).

The defendant contends that this Court lacks jurisdiction over them. However, given that the airline has had substantial operations within the State of New York and their discriminatory actions have directly impacted the plaintiff's travel to and from New York, where the plaintiff resides, they fall within the scope of the New York long-arm statute, thereby establishing jurisdiction for this Court.

Specific Personal Jurisdiction: "A more limited form of submission to a state's authority, referred to as "specific jurisdiction," applies only in cases of disputes that "arise out of or are connected with the activities within the state." Int'l Shoe, 326 U.S. at 319, 66 S.Ct. 154."  Loyalty Conversion Systems Corporation v. American Airlines, Inc. (E.D. Tex. 2014) 66 F.Supp.3d 813, 819.

The plaintiff, a resident of New York State, frequently traveled to various states and international destinations. The various defendants collaborated with each other and other parties to obstruct his ability to fly and to hinder his access to airlines and transportation services in a manner comparable to non-disabled individuals, contravening the statutes referenced herein. As evidenced by the decision of the district judge from Texas, who transferred the case to this Court, these circumstances confer specific jurisdiction upon this Court for this lawsuit.

The New York Long-Arm Statute subjects a defendant to specific jurisdiction where the defendant: (1) transacts business within the state; (2) commits a tort within the state; (3) commits a tort outside the state causing injury within the state, if the defendant either, "does or solicits business, or engages in any other persistent course of conduct, . . . derives substantial revenue from goods used or consumed or services rendered, in the state or, expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state." N.Y.C.P.L.R. § 302 (a)(1) -(a)(4).


**STANDING**

The Defendant asserts that the Plaintiff lacks standing on the grounds that he did not attempt to board a plane and was not denied access, nor did he make any

reservations. The opposing party argues that Abadi's claim to standing is unfounded because his supposed travel plans were speculative. However, Abadi's need to travel to multiple destinations, including the Middle East, India, Europe, California, Florida, Arizona, and others, was genuine and not merely hypothetical. Despite facing obstacles, Abadi successfully traveled to several of these locations, as evidenced in the Complaint and its accompanying exhibits. Abadi's purpose for travel was essential, as he sought financing for several significant projects. Flights to various destinations within the United States were crucial for securing such funding. Abadi's inability to utilize multiple airlines in concert resulted in substantial financial losses. Additionally, the distress stemming from being barred from air travel inflicted further harm on Abadi.

Furthermore, it is essential to examine the circumstances surrounding Abadi's attempts to secure travel arrangements. He faced rejection from over 50 airlines, a significant portion of which are defendants in this case. Facing difficulties with purchased tickets and unwilling to incur substantial expenses merely to test airlines' compliance with access requirements, particularly when evidence suggests collusion to deny him service due to his disability, Abadi's hesitance is understandable. Requiring the purchase of numerous expensive flights, each costing at least $1,000, solely to establish legal rights would impose an unreasonable burden amounting to $50,000.

The evidence presented underscores Abadi's genuine need to travel, evidenced by instances where he successfully did so, as well as the elucidation provided in Mr. Khan's affidavit in the Complaint (Exhibit 80). Consequently, mandating the purchase of tickets solely for the purpose of preserving legal rights is unwarranted and impractical in this context.

## 42 U.S.C. § 1983 – DEPRIVATION OF RIGHTS UNDER THE COLOR OF LAW

The entire mask mandate and the way it is handled by the airlines is completely under the color of the law. As described in the Complaint the airline employees were the police for the masks. JetBlue yelled at Plaintiff if he did not wear a mask.  Delta Airline employees refused to allow Plaintiff onto the plane. The entire process has become a policing process. Everyone who flew during Covid can confirm that. No one would dare enter a plane without a mask.  The gate agents would not allow them anywhere nearby.  They would call the police immediately.

In this case Plaintiff was denied access by the airline because he has a disability and could not wear a mask.  Had he ignored them and bought a ticket, and checked in for a flight, the airline would have called the local police to remove him and arrest him. That fits into the legal definition of under the color of law.

Other Defendants quote West v. Atkins 487 U.S.42,48 (1988). The actual decision and rationale of the Supreme Court in that case, actually supports Plaintiffs' assertion that 1983 does apply here. Defendants quoted a vague statement, but the case itself proves otherwise. The Court quotes, "Institutional physicians assume an obligation to the mission that the State, through the institution, attempts to achieve." Polk County, 454 U.S. at 454 U. S. 320." The Court's decision is that the Physician would be liable to 1983 in that case. It is not very different from here, where the airlines, the federal agencies, and the local and State agencies all worked in unison to enforce this mandate.

There is another case, Parver v. JetBlue Airlines Corp. 649 Fed. Appx. 539, 543 (9th Cir. 2016). In that case, the Court said that the airlines were not liable. The only reason the airlines were not liable for 1983, was the following: "Here, "Blue Watch" sent an alert to the police and the flight crew pointed Parver out when the officers boarded the plane, which, without more, is insufficient to create a triable question on joint state action." The idea here is that the airline personnel had little to no involvement in policing the requirements.

In our case, as the facts describe, the police consistently come to the plane, when there is an alleged mask violation. The airline personnel are charged with enforcing this mandate, which is illegal and discriminatory when enforcing it against people with disabilities, such as these Plaintiffs. Yes, the federal

government is also involved, but ultimately it is the airline staff that enforces these laws and they work in unison with State and local law enforcement.  The fact that there is a federal law involved doesn't negate the state law participation. The airlines created mask mandates long before the federal government followed suit. The airline could not have been enforcing any federal law, because Plaintiffs were exempt from that.

There was a news article of incident with Spirit Airlines[1], but this happened on all airlines in much the same way.  I bring this article, because it describes how the airline enforces the mask mandate, and how they call the police.

They were enforcing policy in direct conjunction with the state law enforcement on the ground. They would claim that we are causing problems on the flight, not listening to a flight attendant, creating safety issues, and the like. They could not ever have charged Plaintiff with a federal violation of the federal mask mandate, because Plaintiff was exempt.

The Supreme Court held the following:

"…we held that the private party's joint participation with a state official in a conspiracy to discriminate would constitute both "state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights" and action " `under color' of law for purposes of the statute." Lugar v. Edmondson Oil Co., 457 US 922 - Supreme Court 1982.

---

[1] https://www.businessinsider.in/thelife/news/spirit-airlines-is-defending-its-decision-to-de-board-an-entire-flight-after-it-says-a-family-refused-to-wear-masks-as-videos-of-the-incident-spark-backlash-online/articleshow/81922657.cms

The Airline Defendants most certainly violated § 1983, and should be held accountable.

## 42 U.S.C. § 1985(3) & 1986 – THE FEDERAL CONSPIRACY STATUTES

Plaintiff elaborated in the complaint, carefully addressing all the arguments that the various Defendants were going to present with respect to these conspiracy statutes. I will just add a few points here.

Defendant states ""The original purpose of § 1985(3), which was passed as the Ku Klux Klan Act of 1871…" They try to negate the idea of these statutes, yet there is caselaw that show that these statutes are alive and active, and will remain that way, until and unless Congress makes a change. The Defendant's statement is disingenuous.

My favorite argument was this: "The Complaint Fails to Allege the Existence of a Conspiracy." Wow! Forty-six airlines, federal agencies, medical advisory companies, and their employees all happen to be doing the exact same discrimination, yet there was no conspiracy. It is just coincidence. This was also addressed in the Complaint. Being that 1985 (3) is valid, then the same goes for 1986.

## 42 USC 1986 IS NOT TIME BARRED IN THIS CASE

Defendant quotes the following: ""the claim accrues when the plaintiff knows or has reason to know of the harm or injury that is the basis of his action."

This situation was fluid.  The discrimination was continuous over many months.  It was difficult if not impossible to know if there will be harm, what that harm would be, and if there was liability to the Defendant. Plaintiff can show that he had no way of knowing he can sue and that he should sue much before he did sue.  This can be addressed in the litigation, but should certainly not be addressed here in a motion to dismiss. Besides, 1986 is about people not stopping discrimination when they had the opportunity. Plaintiff could not know who had the opportunity, when and how, until after months of significant research and review.

Additionally, Plaintiff began the process of complaining, by complaining to the Department of Transportation ("DOT"), as he thought that was where his rights were best addressed. After not getting much help there, he filed a petition for review, as described herein. During the time of all this litigation, both in the Courts and in the Administrative Tribunal, the statute of limitation is tolled, especially since initially the Plaintiff was expected to pursue redress exclusively through the DOT.

## THE CONSTITUTIONAL RIGHT TO TRAVEL

Defendants brought a bizarre case of Gilmore v. Gonzalez, 435 F.3d 1125, 1136 (9th Cir. 2006), as evidence that American citizens have no constitutional right to travel. The case was about some fellow that wanted the right to travel without showing any identification. I am surprised that it was not thrown out immediately for being frivolous. It was not a pro se case, so they gave them more latitude.  Sadly, it should be the exact opposite.

There is no comparison to our case. In that case, valid rational restrictions were placed on those who want to travel by plane. There is no constitutional right to travel in any way that a person wants. A person cannot come on an airplane naked, and say if you throw me off, you're interfering with my constitutional rights. That is ridiculous.  There is a constitutional right to travel, and no one can dispute that.  In my case, the Greyhound Bus company, Amtrak, and most airlines denied my right to travel. There were no significant alternative options.

If there was a valid health or safety regulation or policy that was implemented, maybe there would be a justification.  That is not the case here. Here, the CDC, TSA, DOT, and every state mask mandate EXEMPTED THOSE WITH DISABILITIES THAT CANNOT WEAR A MASK. Plaintiff had already had Covid, and thus had natural immunity. As shown in the complaint, the CDC

stated at the time that Covid reinfection was rare. There was no valid health issue to be concerned about.

The reason these airlines refused to take this disabled Plaintiff can very likely be due to the complication and confusion it can cause when someone comes on a plane without a mask and others will look and be upset. I did fly without a mask on several flights, and that aspect was easily resolved.  Either I authorized the flight attendants to notify the nearby passengers of my medical situation, or I did it myself. People were very gracious.  There was never a tumult. The airlines should have worked that through rather than violate my constitutional right to travel.

The case that Defendants quoted reads as follows:

 "Although we recognized the fundamental right to interstate travel, we also acknowledged that "burdens on a single mode of transportation do not implicate the right to interstate travel." Id. at 1205 (citing Monarch Travel Servs., Inc. v. Associated Cultural Clubs, Inc., 466 F.2d 552, 554 (9th Cir. 1972))." Gilmore v. Gonzales, 435 F.3d 1125, 1136-37 (9th Cir. 2006).

The Defendants in their motion took this case a bit out of context. It did not just say "there is no constitutional right to travel by plane." That would not be accurate. In our case here, I was denied access to go by plane, I was denied access to go by train, I was denied access to go by bus, and I was denied access to use ride-share services. Then I tried going by car. I did go from New York all the way to California on two occasions during Covid.  Everywhere I went it was a

challenge.  I can pull up to a gas station and they won't let me in the store to get a

sandwich and a coffee.  Apple, Starbucks, Walmart, Target, Quick Chek, and so

many others would not let me in.  So, if I need to get to California, tell me how I

am able to.  When I originally went by car, I survived, but that was because it was

all the way in the beginning, when the madness was not as severe.

The Court in Gilmore seemed to base its main argument on the fact that, "the

identification policy's "burden" is not unreasonable." Meaning, asking people at

the airport for identification, is not unreasonable. Yeah. That is real, that makes

sense, and that is rational. In our case here, all the guidance and regulations

exempted Plaintiff from wearing a mask. Defendants denied this Plaintiff his

human rights, and denied this Plaintiff his constitutional right to travel in

conjunction with the rest of the transportation industry.


## ACAA PRIVATE RIGHT OF ACTION

This was addressed thoroughly in the Complaint. There is no binding

precedent or settled law saying there is no private right of action.  There is a belief

that there is a robust enforcement scheme at the Department of Transportation

("DOT"). That was the entire basis of the idea that there should be no private right.

Well, guess what, that was proven wrong.

There probably was no need for major enforcement in the past, because airlines would police themselves, often to avoid bad publicity. We all believed there was an enforcement scheme. No one really knew, because there wasn't much to enforce. Suddenly, there is Covid and an all-encompassing mask mandate, and we find out very clearly that there is no enforcement at all.  Congress wants these laws to be kept, and it is appropriate for this Court to confirm that the disabled are entitled to enforcement of their laws protecting their civil rights.

The Circuit Court cases were not en-banc and are not binding precedent. They were based on a mistake or misunderstanding.  The Circuit Court cannot say that they cannot require the DOT to enforce the law and simultaneously say that there is a robust enforcement scheme.  It is only possible to be one or the other. This is a contradiction. See the Complaint for more on this argument.

## THE REHABILITATION ACT ("RA")

The RA was also argued thoroughly, and here in their Motion, Defendants seem to admit by not denying it, that they had to sign the paper stating that they would be subject to… the RA.  Plaintiff plans to request a copy of the actual signed agreement in discovery.

## STATE CIVIL RIGHTS CLAIMS

Defendants tried to have the UNRUH & NJLAD & Texas Civil Rights & New York City Civil Rights counts dismissed.

Preemption does not apply, as the entire purpose of state human rights laws are in addition to federal laws. If preemption existed, these laws would all be meaningless. The only time preemption exists is if there is a conflict. For example, if federal law requires a 15-foot ramp for wheelchair access, and state law says only 14-feet, then the state law would be preempted by the federal law. Adding damages to existing federal law that has no damages, is not a problem of preemption.

Here is a clarification of the preemption concept by the Supreme Court of the United States.

> "Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land;. .. any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Thus, since our decision in McCulloch v. Maryland, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." Maryland v. Louisiana, 451 U. S. 725, 746 (1981). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 230 (1947). Accordingly, "`[t]he purpose of Congress is the ultimate touchstone' " of pre-emption analysis. Malone v. White Motor Corp., 435 U. S. 497, 504 (1978) (quoting Retail Clerks v. Schermerhorn, 375 U. S. 96, 103 (1963)).

Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U. S. 519, 525 (1977). In the absence of an express congressional command, <u>state law is pre-empted if that law actually conflicts with federal law</u>, see Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n, 461 U. S. 190, 204 (1983), or if federal law so thoroughly occupies a legislative field "`as to make reasonable the inference that Congress left no room for the States to supplement it.' " Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta, 458 U. S. 141, 153 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 U. S., at 230)." Cipollone v. Liggett Group, Inc., 505 US 504 - Supreme Court 1992.

There most certainly is no preemption without a real conflict.

Here is another example of preemption issues needing a conflict to be an issue:

"Thus, <u>there is no basis for us to find either that it would have been "impossible" for Independence to comply with both state law and the ACAA, or that state law would have been an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress</u>." English, 496 U.S. at 79, 110 S.Ct. 2270." Elassaad v. Independence Air, Inc., 613 F.3d 119 (2010) 3rd Circuit.  (While this is a 3rd Circuit case, the decision is quoted from Supreme Court caselaw).

**<u>NEGLIGENCE</u>**

Defendants want this dismissed due to preemption.  This was responded to above and in the Complaint.  That same response applies to negligence.

## INFLICTION OF EMOTIONAL DISTRESS

Defendant claims that "Plaintiff's allegation of being required to wear a mask to board an aircraft does not rise to the level of outrageous and extreme conduct that is required to support a claim."

Imagine if there was a person who needed a wheelchair, and he came to the airline to fly and they said, "Sorry, we don't allow anyone to fly with us if they cannot walk of their own volition." Imagine that they would outright deny someone to fly on their plane just because he needs a wheelchair. We would all say "oh my god! That is extreme and outrageous conduct!"

Imagine if there was a person who wore a Yarmulke, as he was an Orthodox Jew, and he came to the airline to fly and they said, "Sorry, we don't allow anyone to fly with us who is Jewish." They would outright deny someone to fly on their plane just because of his religion. We would all say "oh my god! That is extreme and outrageous conduct!"

Imagine if there was an African-American, and he came to the airline to fly and they said, "Sorry, we don't allow anyone to fly with us who has such a dark skin color." They would outright deny someone to fly on their plane just because of the color of his skin. We would all say "oh my god! That is extreme and outrageous conduct!"

Why would this be different?! All the federal agencies notified the airlines that people with disabilities who cannot wear a mask are exempt from any mask mandates. Why would it be less outrageous to just ban someone, force them to do all sorts of things that non-disabled don't do, and even torture them just because they have a disability?! "Sorry, you cannot come on our plane as you have a disability." Have we lost our sensitivity to humanity?!

## **PROMISSORY ESTOPPEL**

The Complaint says the following. "Defendants in their advertisements, on their websites, in their brochures and statements all allege that they are decent people, that they will treat those with disabilities and/or special needs with care."

There are probably dozens of places on their websites and in their advertisements where they promise to be nice to the disabled. They breached those promises and were just horrible. Here is an example:

Defendant SAE writes in its brochure[2] the following:

"4.1. Passengers with Disabilities and Special Needs: SAE complies with the U.S. Department of Transportation's regulation titled "Nondiscrimination on the

---

[2] https://mokuleleairlines.com/wp-content/uploads/2023/01/Op-Participant-Agreement-03JAN23.pdf

Basis of Disability in Air Travel" (14 CFR Part 382) and offers special services to assist Passengers with disabilities."

## **INJURIOUS FALSEHOODS**

Defendant wants this dismissed due to preemption.  This was responded to in several places in this document and in the Complaint.  That same response applies here.

Defendant also says that Plaintiff failed to state a claim. The claim is in the complaint. It seems that the Defendant seeks dismissal on the grounds that they were merely adhering to the mask mandate and therefore cannot be accused of malice. However, this assertion is false. The Plaintiff was exempt from the mask mandate, as evidenced in the Complaint where the Department of Transportation (DOT) explicitly reminded airlines, including the Defendants, of their obligation to adhere to the Air Carrier Access Act (ACAA) despite the mask mandate. The Defendant was aware of the legal requirements necessitating an individualized assessment to ascertain if the Plaintiff should be exempt, which they failed to conduct.

Furthermore, Defendant argues that the cause of action lacks a claim for relief. However, the requested relief is clearly stated in the Complaint, with damages incurred in conjunction with other claims outlined. The remedies sought

to address these injuries were explicitly detailed at the conclusion of the complaint.

The determination of damages and available relief will ultimately be left to the

discretion of the jury.

 This Count is not time-barred, as described above with respect to 14 USC

1986.


**<u>INVASION OF PRIVACY</u>**

 Defendant presented Pica v. Delta Air Lines, which is "NOT FOR

PUBLICATION."  All the caselaw with respect to preemption, discuss how some

things are preempted, while others are not.  The Deregulation Act does not have

any connection to privacy issues and there should not be any reason to preempt

that.  See the preemption discussions elsewhere in this document.

 The Supreme Court weighed in on this as follows: "Nor is it plausible that

Congress meant to channel into federal courts the business of resolving, pursuant

to judicially fashioned federal common law, the range of contract claims relating to

airline rates, routes, or services. The ADA contains no hint of such a role for the

federal courts." American Airlines, Inc. v. Wolens, 513 US 219 - Supreme Court

1995.

There is what is known as a Wolens exception, based on this caselaw, which would certainly apply here and in our Breach of Contract claim, among others. Defendant did not make any arguments as to why it should not apply in this case.

## FRAUDULENT MISREPRESENTATION

Defendant wants this dismissed due to preemption. This was responded to in several places in this document and in the Complaint.

Additionally, Defendants claim that the fraudulent misrepresentation was not sufficiently clear. Plaintiff does not believe that this is the case. If the Court agrees with the Defendant, Plaintiff would like to take the opportunity to clarify in an amended complaint.

## MOOTNESS

Defendant SAE brought up the MOOTNESS justification in its motion to dismiss, asking this Court to consider this case moot, as currently the mask requirement is no longer in effect.

This issue was also addressed thoroughly in this Complaint. Even till this day there are constant new Covid rules, restrictions, and actions taken by the CDC, private companies, and various government agencies.

The CDC just put a new expansive testing project for multiple diseases at airports.  It was in the news just a few days ago.[3]

Mootness does not apply in this case for multiple reasons. Now, suddenly there are companies, organizations, hospitals, schools and the like that are reinstating mask policies.[4]

In order to be considered moot it has to pass the following test:

""A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).

If tomorrow morning, there is an increase in the Covid deaths and hospitalizations, it is likely that they will try to reinstate mask mandates. If a new pandemic showed up, it is likely that they will try to reinstate mask mandates. The CDC, NIH, Anthony Fauci, and even Bill Gates have been predicting another pandemic in the very near future. I would listen to them, because they predicted the last pandemic.[5]

---

[3] https://www.cdc.gov/media/releases/2023/s1107-testing-respiratory-viruses.html
[4] https://www.newsweek.com/mask-mandates-return-list-places-restrictions-1823069
[5] https://centerforhealthsecurity.org/our-work/tabletop-exercises/event-201-pandemic-tabletop-exercise

The DC Circuit writes the following in a challenge to the TSA mask mandate: "<u>Because there is a more-than-speculative chance that the challenged conduct will recur, these cases are not moot</u>." Wall v. Transportation Sec. Admin., No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023).

Besides all that, the fact that there are injuries alleged and damages claimed, it is important to litigate all the discrimination claims in order to determine if there was discrimination, get declaratory relief, and only then damages can be applied to the state claims. It is still extremely relevant. Even with respect to Federal Defendants it is thus relevant. The point of mootness stopping a lawsuit, is the idea that there is nothing the court can do to bring redress or rectify the wrong. The bar isn't very high. The Supreme Court recently held that even just nominal damages is sufficient redress to warrant a litigation.

"For purposes of this appeal, it is undisputed that Uzuegbunam experienced a completed violation of his constitutional rights when respondents enforced their speech policies against him. Because "every violation [of a right] imports damage," Webb, 29 F. Cas., at 509, nominal damages can redress Uzuegbunam's injury even if he cannot or chooses not to quantify that harm in economic terms." UZUEGBUNAM et al v. PRECZEWSKI et al - U.S. Supreme Court March 8, 2021.

Let us put the MOOTNESS claims behind us and move forward on this litigation.

## <u>CONCLUSION</u>

This case is a complex case, with many aspects, both of facts and legal issues. The above response in conjunction with the Complaint itself should sufficiently resolve any of the issues brought up in the Motion to Dismiss. The U.S. Constitution affords each citizen with due process. Plaintiff asks this Court to allow for the lawsuit to proceed and we can address all these items in trial. A motion to dismiss should not be used to take away a person's right to justice.

**WHEREFORE**, Plaintiff asks this court to DENY this motion to dismiss in its entirety.

Respectfully submitted this February 27, 2024.

*s/Aaron Abadi*

AARON ABADI, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
516-639-4100
Email:  aa@neg.com