## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AARON ABADI,** | |
| Plaintiff | **CASE #  1:23-cv-04033-LJL** |
| V. | |
| **AMERICAN AIRLINES, INC., et al** | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## FEDERAL DEFENDANTS' MOTION TO DISMISS

BY:

AARON ABADI
Pro Se Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
Tel: 516-639-4100
Email:  aa@neg.com

Plaintiff, acting pro se, hereby responds to the Motion to Dismiss filed by the Federal Defendants (Docs. 383 & 384). The Complaint thoroughly addressed numerous issues raised in this motion. In this response, Plaintiff aims to further elaborate on certain aspects discussed in the Complaint and/or address issues not previously responded to.

Aaron Abadi, the Plaintiff, suffers from sensory processing disorder, rendering him unable to wear masks, glasses, or any head or facial coverings. When airlines began mandating masks, they consistently refused Plaintiff's right to fly and discriminated against him. He faced verbal abuse, denial of boarding, and was once even stranded in France due to these policies, which persisted despite his provision of evidence of his disability.

The inability to travel inflicted severe financial harm on Plaintiff, who currently finds himself without funds and had to pursue this action with the generous assistance of the Court via an IFP Motion. Plaintiff's entire source of income was decimated, depriving him of any means to earn a living. Plaintiff alleges that these Federal Defendants facilitated and even led the charge to causing these blatant human rights violations, directly causing the extensive damages renumerated in the Complaint. The Motion to Dismiss addresses various Counts of the Causes of Action, to which Plaintiff will provide appropriate responses.

## MOOTNESS

Defendants brought up the MOOTNESS stating the following:

"The government's decision to end a policy challenged in litigation may moot a case when (1) "there is no reasonable expectation . . . that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."

They are asking this Court to consider this case moot, as currently the mask requirement is no longer in effect.

This issue was addressed thoroughly in this Complaint. Even till this day there are constant new Covid rules, restrictions, and actions taken by the CDC, private companies, and various government agencies.

The CDC just put a new expansive testing project for multiple diseases at airports.  It was in the news recently.[1]

Mootness does not apply in this case for multiple reasons. Now, suddenly there are companies, organizations, hospitals, schools and the like that are reinstating mask policies.[2]

In order to claim mootness, the Defendants have a heavy burden to prove, as in *Sheely,* "The "formidable," "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the

---

[1] https://www.cdc.gov/media/releases/2023/s1107-testing-respiratory-viruses.html
[2] https://www.newsweek.com/mask-mandates-return-list-places-restrictions-1823069

party asserting mootness." Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173 (11th Cir. 2007).

In order to be considered moot it has to pass the following test:

""A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).

If tomorrow morning, there is an increase in the Covid deaths and hospitalizations, it is likely that they will try to reinstate mask mandates. If a new pandemic showed up, it is likely that they will try to reinstate mask mandates. The CDC, NIH, Anthony Fauci, and even Bill Gates have been predicting another pandemic in the very near future. I would listen to them, because they predicted the last pandemic.[3]

Besides, initially, before there was a mandate, the airlines all had their own policies, and when the mandate ended, many airlines continued their own policies.

The DC Circuit writes the following in a challenge to the TSA mask mandate: "Because there is a more-than-speculative chance that the challenged

---

[3] https://centerforhealthsecurity.org/our-work/tabletop-exercises/event-201-pandemic-tabletop-exercise

conduct will recur, these cases are not moot." Wall v. Transportation Sec. Admin.,

No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023).

Besides all that, the fact that there are injuries alleged and damages claimed,

it is important to litigate all the discrimination claims in order to determine if there

was discrimination, get declaratory relief, and only then damages can be applied to

the state claims.  It is still extremely relevant. Even with respect to Federal

Defendants it is thus relevant. The point of mootness stopping a lawsuit, is the idea

that there is nothing the court can do to bring redress or rectify the wrong. The bar

isn't very high.  The Supreme Court recently held that even just nominal damages

are sufficient redress to warrant a litigation.

"For purposes of this appeal, it is undisputed that Uzuegbunam experienced

a completed violation of his constitutional rights when respondents enforced their

speech policies against him. Because "every violation [of a right] imports

damage," Webb, 29 F. Cas., at 509, nominal damages can redress Uzuegbunam's

injury even if he cannot or chooses not to quantify that harm in economic terms."

UZUEGBUNAM et al v. PRECZEWSKI  et al - U.S. Supreme Court March  8,

2021.

Also, see this Supreme Court decision in full; here is an excerpt:

"A declaratory judgment can then be used as a predicate to further relief, including

an injunction. 28 U. S. C. § 2202; see Vermont Structural Slate Co. v. Tatko

Brothers Slate Co., 253 F. 2d 29 (C. A. 2d Cir. 1958); United States Lines Co. v.

Shaughnessy, 195 F. 2d 385 (C. A. 2d Cir. 1952)."

Powell v. McCormack, 395 US 486 - Supreme Court 1969.

Recently, the United States Congress and the President enacted the "FAA

Reauthorization Act of 2024," also known as the Securing Growth and Robust

Leadership in American Aviation Act (HR3935). This comprehensive legislation,

signed into law on May 16, 2024, includes a specific provision on page 393 of the

410-page Act that states:

> "(b) PROHIBITION ON IMPLEMENTATION.—The Administrator may not
> implement or enforce any requirement that—…(3) passengers of air carriers be
> vaccinated against COVID–19 or wear a mask as a result of a COVID–19
> related public health measure."

HR3935 explicitly prohibits the FAA from enforcing COVID-19 vaccine

and mask mandates for air travel. This provision highlights Congress's recognition

of the potential for such mandates to be reinstated, directly challenging the

Defendants' claims of mootness.

A case becomes moot when the underlying issues are resolved or when the

parties lack a legally cognizable interest in the outcome, thus eliminating the

required standing. As established in Lujan v. Defenders of Wildlife, 504 U.S. 555

(1992), standing necessitates an injury in fact, causation, and redressability.

Without these elements due to mootness, the court must dismiss the case for lack

of jurisdiction. Additionally, as demonstrated in DeFunis v. Odegaard, 416 U.S. 312 (1974), and Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167 (2000), a case is moot if there is no longer a live controversy or any possibility for the court to grant effectual relief.

Furthermore, according to principles established in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), and supported by Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803), and King v. Burwell, 576 U.S. 473 (2015), the judiciary's role is to interpret and apply the law according to congressional intent, rather than to legislate from the bench.

In HR3935, Congress clearly states that there should be no vaccine or mask mandates by the FAA for airlines. This indicates that Congress considers this a live controversy, affirming the possibility for the court to grant effectual relief. Therefore, the court should DENY Defendants' Motion to Dismiss due to mootness in light of this new legislation and congressional intent.

Let us put the MOOTNESS claims behind us and move forward on this litigation.


**FTCA - DISCRETIONARY FUNCTION EXCEPTION**

First the Defendants claim that their actions were due to their acting within the scope of their office or employment at the time of the incident out of which the

claim arose.  Plaintiff has a difficult time accepting that violating the law and

violating a person's human rights was within the scope of their jobs. Certainly, this

should not be subject to a Motion to Dismiss.  There needs to be discovery,

testimony, and a trial to fulfill the due process requirements here.

Then, their main argument is that this falls under the DISCRETIONARY

FUNCTION EXCEPTION. In their own words, the Defendants quote the Supreme

Court as follows:

> "The first inquiry is whether the alleged conduct contravened a mandatory
> statute or regulation. Id. at 324. "If the employee violates [a] mandatory
> regulation, there will be no shelter from liability because there is no room for
> choice and the action will be contrary to policy."

The entire Complaint is about how the Federal Defendants circumvented the

existing Air Carrier Access Act ("ACAA"), and encouraged, aided and abetted,

and even created new rules in direct contrast to the ACAA.  Thankfully, in a recent

decision, the Supreme Court helped bring the Federal agencies down to size, by

reversing Chevron Deference. But, these Federal Defendants have the arrogance to

believe that they can modify the laws whenever they like, and not have to answer

for it.

The discretionary function exception does not exclude actions that are not

within the agency's discretion.  These agencies and their staff violated existing

laws without regard to them, mandating and authorizing airlines and their staff to violate federal, state, city human rights laws.

For example, the CDC in its mask mandate (Compl. Exhibit 2 page 4 footnote 8) writes the following:

> "8 Operators of conveyances or transportation hubs may impose requirements, or conditions for carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the operator, as well as require evidence that the person does not have COVID-19 such as a negative result from a SARS-CoV-2 viral test or documentation of recovery from COVID-19. CDC definitions for SARS-CoV-2 viral test and documentation of recovery are available in the Frequently Asked Questions at: https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html. Operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or transportation hub. Operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance."

These items were reiterated by the TSA in its mandate. This was pushed and encouraged by all the Federal Defendants, and actually by all the Defendants. The TSA wrote the following in its mandate (Supplement to Compl, Doc 12-1, Exh S-03, Page 31, in the footnotes):

> "6 Aircraft operators may impose requirements, or conditions of carriage, on persons requesting an exemption from the requirement to wear a mask,

including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the aircraft operator, as well as require evidence that the person does not have COVID-19 such as a negative result from a SAR-Co V-2 viral test or documentation of recovery from COVID-19. CDC definitions for SAR-Co V-2 viral test and documentation of recovery are available in Frequently Asked Questions at: https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html. Aircraft operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or airport. Aircraft operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance."

The DOT wrote very similar in its Notice of Enforcement Policy

(Supplement to Compl, Doc 12-1, Exh S-06, Page 46 & 47), as follows:

"The CDC Order exempts certain categories of persons from the mask-wearing mandate, including a person with a disability who cannot wear a mask, or who cannot safely wear a mask because of the disability. However, it allows airlines to impose requirements or conditions for carriage on the categories of persons exempted from the mask mandate, whether the person is a child under the age of two, a person for whom wearing a mask would create a risk to workplace safety, health, or job duty, or a person with a disability who is unable to wear or safely wear a mask because of the disability. Additionally, on January 31, 2021, the Transportation Security Administration (TSA) issued a Security Directive (SD) to aircraft operators on face mask requirements to implement the Executive Order and to support enforcement of the CDC Order mandating masks. The Department supports actions by the airline industry to have procedures in place requiring passengers to wear masks in accordance with the CDC Order, CDC guidance, and TSA SD. At the same time, the ACAA and Part 382, which are enforced by OACP, require airlines to make reasonable

accommodations, based on individualized assessments, for passengers with disabilities who are unable to wear or safely wear a mask due to their disability. This Notice sets forth the enforcement policy that OACP will apply in determining, on a prospective basis, whether airlines are complying with the requirements of the ACAA and Part 382 when implementing procedures requiring mask-wearing by passengers."

"To ensure that only qualified persons under the exemptions would be able to travel without a mask, the CDC Order permits operators of transportation conveyances, such as airlines, to impose requirements, or conditions for carriage, on persons requesting an exemption, including requiring a person seeking an exemption to request an accommodation in advance, submit to medical consultation by a third party, provide medical documentation by a licensed medical provider, and/or provide other information as determined by the operator. The CDC Order also permits operators to require protective measures, such as a negative result from a SARS-CoV-2 viral test or documentation of recovery from COVID-19 or seating or otherwise situating the individual in a less crowded section of the conveyance, e.g., aircraft." (Ibid page 48)

These are all direct violations of the Air Carrier Access Act ("ACAA"), and therefore violations of all the State and City human rights laws that are built upon the federal human rights laws. The following is a list of the various laws being violated by these federal agencies, their staff, and those directing them. All the violations are listed in their documents directly as shown above from their own words.

| Federal Agency Authorized Airlines: | Violation of ACAA | Which States... |
|---|---|---|
| to require a medical consultation by a third party | 382.23 | you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation |
| to require medical documentation by a licensed medical provider | 382.23 | you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation |
| to require any other information as determined by the aircraft operator | 382.33 | you must not subject passengers with a disability to restrictions that do not apply to other passengers |
| to require a Covid negative test or documentation or documentation of recovery | 382.33 | you must not subject passengers with a disability to restrictions that do not apply to other passengers |
| to require scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or airport | 382.33 | you must not subject passengers with a disability to restrictions that do not apply to other passengers |
| to require that persons seeking exemption to request an accommodation in advance | 382.25 | you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight |
| Each of the above is also a violation of this ACAA law | 382.33 | you must not subject passengers with a disability to restrictions that do not apply to other passengers |

There were multiple other violations as will be addressed at trial. These are not actions and authorizations that these agencies and these Defendants can

approve. They cannot modify laws without Congressional action. Their actions are not subject to their discretion.

The Defendant's reliance on the Discretionary Function Exception (DFE) under the Federal Tort Claims Act (FTCA) is misplaced. While the DFE generally protects federal agencies and employees from liability for discretionary actions, this protection does not extend to actions that violate specific legal mandates or mandatory directives. Several key cases demonstrate this principle.

In Berkovitz v. United States, 486 U.S. 531 (1988), the Supreme Court held that the DFE does not apply when a federal employee's conduct violates a mandatory regulation or policy that leaves no room for discretion. The Court clearly stated that "if the employee's conduct cannot be said to be based on the purposes that the regulatory regime seeks to accomplish, the discretionary function exception will not apply." Thus, any actions taken by the Defendant in violation of specific, mandatory directives cannot be shielded by the DFE.

The Court concluded with the following: "Because petitioners may yet show, on the basis of materials obtained in discovery or otherwise, that the conduct challenged here did not involve the permissible exercise of policy discretion, the invocation of the discretionary function exception to dismiss petitioners' lot release

<u>claim was improper.</u>"  Plaintiff here believes that he should be afforded the same opportunity in this case.

Similarly, in United States v. Gaubert, 499 U.S. 315 (1991), the Supreme Court reaffirmed that discretionary actions are protected only when they involve an element of judgment or choice and are grounded in considerations of public policy. Importantly, the Court reiterated that the DFE does not apply if a federal employee's conduct does not involve such judgment or choice and instead is governed by a mandatory statute, regulation, or policy.

Further, the Ninth Circuit in Whisnant v. United States, 400 F.3d 1177 (9th Cir. 2005), explicitly stated that the DFE does not protect actions that are unconstitutional or beyond the scope of statutory authority. The court noted, "Discretionary conduct cannot be shielded when it violates the Constitution, federal statutes, or agency regulations."

In In re Glacier Bay, 71 F.3d 1447 (9th Cir. 1995), the Ninth Circuit reinforced this concept by holding that the DFE does not apply when federal employees fail to follow a specific and mandatory directive. The decision underscored that the protection provided by the DFE is unavailable when there is a violation of specific mandatory policies or regulations.  The Court wrote the following: "…when a "`federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the exception will

not apply."  In our case the ACAA was very clear as to the specific laws and actions for almost any scenario.

Given these precedents, it is clear that the DFE does not shield the Defendant from liability for actions taken in violation of specific legal requirements or mandatory directives. Therefore, the Defendant's motion to dismiss on the grounds of the Discretionary Function Exception should be denied.

If, as the Defendants claim, this case must be against the United States, the Plaintiff asks the Court to approve such a modification/addition.

## BOSTIC

The Defendant is minimizing her horrendous treatment of a man with a serious disability.  She publicly embarrassed me for a period of time, and paraded me across the airport.  She caused significant anxiety and emotional distress and trauma.

## REHABILITATION ACT, SECTION 1985(3), SECTION 1986, AIR CARRIER ACCESS ACT, AND BIVENS CLAIMS

Defendants argue that these claims should be treated the same as they were treated for the Airline and Medical Defendants.  Plaintiff includes here his arguments in response to those other Motions to Dismiss.

## STATE AND LOCAL ANTIDISCRIMINATION LAW

The Complaint speaks for itself and was pretty clear. Bostic certainly personally discriminated against Plaintiff.

## CONCLUSION

This case is a complex case, with many aspects, both of facts and legal issues. The above response in conjunction with the Complaint itself should sufficiently resolve any of the issues brought up in the Motion to Dismiss. The U.S. Constitution affords each citizen their own due process. Plaintiff asks this Court to allow for the lawsuit to proceed and we can address all these items in trial. A motion to dismiss should not be used to take away a person's right to justice.

It is understood by this Plaintiff that Defendants were required to serve him a Notice as per Local Rules, which was never done.

**WHEREFORE**, Plaintiff asks this court to DENY this motion to dismiss in its entirety, and to schedule an Initial Case Management Conference in accordance with Rule 16(b) of the Federal Rules of Civil Procedure.

Respectfully submitted this 12th Day of July, 2024.

*s/Aaron Abadi*

AARON ABADI, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
516-639-4100
Email:  aa@neg.com