UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/16/2024__
```

------------------------------------------------------------------X
: 
AARON ABADI                                                       :
:
            Plaintiff,                                         :
:
      -v-                                                      :
:
AMERICAN AIRLINES, INC., et al.,                                 :
:
          Defendants.                                       :
:
------------------------------------------------------------------X

                        23-cv-4033 (LJL)

                OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

    Defendants, the Department of Health and Human Services ("HHS"), Centers for Disease

Control and Prevention ("CDC"), National Institute of Health ("NIH"), Department of

Transportation (DOT), Pete Buttigieg, Secretary of the DOT, in his official capacity, the

Transportation Security Administration ("TSA"), Department of Justice ("DOJ") (together, the

"Agency Defendants"), David P. Pekoske, Administrator of the TSA, in his individual capacity,

Erinn Bostic, in her individual capacity, Dr. Anthony Fauci, in his individual capacity, and Dr.

Robert Redfield, in his individual capacity (together, the "Individual Defendants" and with the

Agency Defendants, the "Federal Defendants"), move pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6) for an order dismissing the complaint against them.  Dkt. No.

383.

## BACKGROUND

    The Court has described the allegations of the complaint at length in a prior Opinion and

Order.  Dkt. No. 346.  The Court accepts those allegations as true and construes them broadly

and liberally to state the strongest claims they suggest, given Plaintiff's pro se status.  *See, e.g.,*

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006).

Plaintiff is a New York resident with a sensory processing disorder that prevents him from wearing a mask.  Dkt. No. 3 ("Complaint" or "Compl.") ¶¶ 1, 141.  He also "travels a whole lot," *id.* ¶ 807, both for his work and for pleasure, *id.* ¶¶ 174, 806–807.  Plaintiff generally challenges the previously effective CDC order that individuals were required to wear face masks while travelling in airports and on airplanes during the COVID-19 pandemic.

On January 21, 2021, on his first full day in office, President Biden signed Executive Order 13998, Promoting COVID-19 Safety in Domestic and International Travel, 86 Fed. Reg. 7205 (Jan. 21, 2021), directing the Secretaries of Labor, HHS, Transportation (including through the Administrator of the Federal Aviation Administration ("FAA")), Homeland Security (including through the Administrator of the TSA), and the heads of other executive departments and agencies to "immediately take action, to the extent appropriate and consistent with applicable law, to require masks to be worn in compliance with CDC guidelines in or on," among other places, airports and commercial aircrafts.  *Id.* § 2(a).

Following the Executive Order, on or about January 29, 2021, the CDC issued an order, Dkt. No. 3-7 (the "CDC Order" or "Mask Mandate"), intended to slow the spread of the deadly COVID-19 virus that caused "most of the planet to get sick, and caused the death [sic] of over 6 million people."  Compl. ¶ 92.  In pertinent part, the Mask Mandate directed conveyance operators, including airlines, to use best efforts to ensure that any person on the conveyance wears a mask when boarding, disembarking, and for the duration of travel.  *Id.* ¶ 99.  The CDC Order contained an exemption for "a person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act." *Id.* ¶ 100.  However, a footnote to the CDC Order made clear that "Operators of conveyances or transportation hubs may impose requirements, or conditions for carriage, on persons requesting

an exemption from the requirement to wear a mask, including medical consultation by a third

party, medical documentation by a licensed medical provider, and/or other information as

determined by the operator, as well as require evidence that the person does not have COVID-19

such as a negative result from a SARS-CoV-2 viral test or documentation of recovery from

COVID-19."  CDC Order at 4 n.8.  By its terms, the Mask Mandate's duration was tied to the

determination by the HHS Secretary that a public health emergency existed.  It stated that it

would remain "in effect unless modified or rescinded based on specific public health or other

considerations, or until the Secretary of Health and Human Services rescinds the determination

under section 319 of the Public Health Service Act (42 U.S.C. 247(d)) that a public health

emergency exists." *Id.* at 8030.  The Mask Mandate expired on May 11, 2023, the date that the

HHS Secretary's declaration of a public health emergency expired.  *See Expired Order: Wearing*

*of face masks while on conveyances and at transportation hubs*, CDC.gov (May 12, 2023),

https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

Plaintiff was impacted by the Mask Mandate during the period it was in effect.  He

booked travel on several airlines during that period and contracted numerous others, in each

instance presenting a letter from a doctor stating that he was unable to wear a mask or face shield

and requesting that he be permitted to fly without wearing a mask.  Compl. ¶¶ 69, 178, 797.

However, as a general matter, the airlines denied him that exemption on the basis of the doctor's

note alone, often requiring him to fill out additional documentation or to submit a negative

COVID-19 test.  In some instances, he was denied permission to fly without a mask outright.  As

a result, Plaintiff was not able to fly, causing him financial damages and non-monetary harm.  *Id*.

¶¶ 808, 813–814, 825–827.

## PROCEDURAL HISTORY

On May 1, 2023, Plaintiff sued the 46 airlines who he contended declined to allow him to fly mask-free, several employees of the airlines, two attorneys who represented the airlines, two medical advisory groups (MedAire, Inc. and the Center for Emergency Medicine of Western Pennsylvania, doing business as STAT-MD), and several governmental defendants, including the NIH, CDC, HHS, certain federal employees, and the President of the United States, alleging a host of statutory and tort claims stemming from the airlines' refusal to allow him to fly without a mask. Dkt. No. 3. Plaintiff also alleges that the Executive Order and Mask Mandate are unlawful.[1]

Plaintiff filed his Complaint on May 1, 2023, in the United States District Court for the Northern District of Texas. *Id.* By order of May 8, 2023, the District Court for the Northern District of Texas *sua sponte* transferred the case to this Court. Dkt. No. 10. On July 10, 2023, Plaintiff moved to supplement his Complaint to add allegations addressing jurisdiction in New York as well as to add allegations against the DOT, Pete Buttigieg, as Secretary of the DOT, the TSA, David P. Pekoske, and Errin Bostic, Dkt. No. 12, and on March 29, 2024, the Court granted that motion and deemed the supplemental complaint filed at Dkt. No. 12-1 to be incorporated into the original complaint filed at Dkt. No. 3. *See* Dkt. No. 347.

Also on March 29, 2024, the Court signed an Opinion and Order, granting the motion of certain of the airline defendants and their employees to dismiss the complaint against them. Dkt. No. 346. The Court held that Plaintiff failed to state a claim that the moving defendants violated his constitutional rights because he did not plausibly allege that any of those defendants was a state actor, that Plaintiff did not allege a conspiracy for the purpose of depriving him of the

---

[1] The Court dismissed Plaintiff's claims against President Biden on August 31, 2023 as barred by the doctrine of absolute immunity. *See* Dkt. No. 17.

equal protection of the laws or of equal privileges and immunities under the laws sufficient to satisfy Section 1985(3) of Title 42 of the U.S. Code, that he did not allege a violation of Section 1986 of Title 42 of the U.S. Code because he did not allege a violation of Section 1985, that the Air Carrier Access Act did not confer a private right of action, that Plaintiff's Rehabilitation Act claim failed because he did not allege either the receipt of federal financial assistance or exclusion on the basis of disability, that Plaintiff's claims for discrimination under state or municipal law were either preempted by the Air Carriers Access Act of 1986 ("ACAA") or the Airline Deregulation Act or failed to state a claim for relief, that Plaintiff's state law tort and contract claims failed to state a claim for relief, and that Plaintiff failed to state a claim for deprivation of his constitutional right to travel.

On May 31, 2024, the Court signed a Stipulation and Order of Dismissal dismissing the claims against the remaining airline defendants, MedAire, Inc. and STAT-MD, leaving the Federal Defendants as the only remaining defendants.  Dkt. No. 376.

On June 28, 2024, the Federal Defendants filed this motion to dismiss along with a memorandum of law in support of the motion.  Dkt. Nos. 383–384.  Plaintiff filed a memorandum of law in opposition to the motion to dismiss on July 12, 2024.  Dkt. No. 385. Federal Defendants filed their reply memorandum of law in further support of the motion to dismiss on July 19, 2024.  Dkt. No. 386.

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a "court must accept the material facts as alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (quoting *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994)).  However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

When adjudicating a motion to dismiss under Rule 12(b)(6), the court considers not only the well-pleaded allegations of the complaint but documents incorporated by reference and "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382–83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order).

The Court construes pro se pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest.  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).

## DISCUSSION

Plaintiff brings numerous claims against the Federal Defendants.  He alleges that the Mask Mandate violates the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* against the

CDC and HHS (Counts 1–3) and represents an unconstitutional delegation of legislative power in violation of Article I of the United States Constitution (Counts 4–5), and that the Executive Order violates the separation of powers doctrine and the Tenth Amendment (Count 6). He also alleges violations of 42 U.S.C. § 1985 (Count 8) and 42 U.S.C. § 1986 (Count Nine), as well as violations of the ACAA (counts 10–18), the Rehabilitation Act (Count 19), and various state and city anti-discrimination laws (Counts 20–26). In Counts 27 to 36, Plaintiff alleges claims for intentional and/or unintentional tort, infliction of emotional distress, promissory estoppel, injurious falsehoods, invasion of privacy, fraudulent misrepresentation, and tortious interference with contract. Finally, Count 37 alleges infringement of Plaintiff's constitutional right to travel.[2]

The Federal Defendants argue that all claims against them must be dismissed. The Federal Defendants assert that Plaintiff's claims under the APA and the United States Constitution with respect to the Mask Mandate and the Executive Order are moot as the Mask Mandate is no longer in effect. They also argue that Plaintiff's state-law tort claims are properly brought only against the United States Government under the Federal Tort Claims Act ("FTCA") and are barred by the discretionary function exemption to that statute. They argue that the Court lacks subject matter jurisdiction over Plaintiff's claim for promissory estoppel because it is a claim that arises out of interference with contract rights and thus is excluded from the FTCA's waiver of sovereign immunity. The Federal Defendants further argue that Plaintiff's contract claims and claims for promissory estoppel against HHS, the CDC, and NIH are barred by the doctrine of sovereign immunity and fail to state a claim for relief against Dr. Fauci and

---

[2] The Court does not construe the Complaint as alleging a claim against the Federal Defendants under 42 U.S.C § 1983, which applies only to state, not federal, actors. *See Dotson v. Greisa*, 398 F.3d 156, 162 (2d Cir. 2005) (citing *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.4 (2d Cir. 1991)).

Dr. Redfield.  Next, the Federal Defendants argue that Plaintiff's Rehabilitation Act, Section 1985(3), Section 1986, and claims under the ACAA, and the *Bivens* doctrine should be dismissed for the same reasons that the Court dismissed the identical claims against the three airline defendants and under the law of the case doctrine.  They further argue that Plaintiff's claims under the state and local antidiscrimination laws are barred by the doctrine of sovereign immunity to the extent they are asserted against those defendants that are federal agencies and fail to state a claim to the extent they are asserted against those defendants that are individuals. Finally, they argue that the complaint fails to state any tort claims based on the conduct of Defendant Bostic.

Plaintiff makes no argument as to why the Court's prior Opinion and Order dismissing his Rehabilitation Act, Section 1985(3), Section 1986, the ACAA, and *Bivens* claims against the moving airline defendants would not apply equally to the Federal Defendants and those claims are therefore dismissed for the reasons stated in the Court's March 29, 2024 Opinion and Order and under the law of the case doctrine.  *See Slotkin v. Citizens Cas. Co. of New York*, 614 F.2d 301, 312 (2d Cir. 1979) (law of the case doctrine reflects the "general practice of refusing to reopen what has been decided").  Plaintiff also fails to respond to the Federal Defendants' argument that his contract claims are barred by the doctrine of sovereign immunity and those claims are thus deemed abandoned, *see Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014), and additionally, are dismissed for the reasons stated in the Federal Defendants' memorandum of law in support of the motion to dismiss.  The Court addresses in turn the remaining claims asserted by Plaintiff.

I.     **Plaintiff's Claims under the APA and Claims for Unconstitutional Delegation and Violation of Separation of Powers**

In Counts One through Three of the Complaint, Plaintiff challenges the Mask Mandate as violative of the Administrative Procedure Act.  Compl. ¶¶ 867–896.  Plaintiff alleges that the Mask Mandate is not in accordance with law, was adopted without observance of the notice and comment procedures required by the APA, and is arbitrary and capricious.  *Id*. ¶ 800.  In Count Four, Plaintiff alleges that the Mask Mandate violates Article 1, Section 1 of the Constitution because it is the product of the unconstitutional delegation of legislative authority.  *Id*. ¶¶ 897–903.  In Counts Five and Six, Plaintiff challenges the Executive Order on the grounds that it constitutes an improper exercise of legislative authority by the Executive Branch and that it improperly asserts a general police power that has traditionally been relegated to the States in derogation of the separation of powers under the Constitution.  *Id*. ¶ 801.  Plaintiff seeks orders declaring the Executive Order and Mask Mandate unlawful, vacating the Mask Mandate and permanently enjoining its enforcement worldwide, and enjoining CDC and HHS from in the future issuing any orders requiring a person to wear a face mask in the absence of specific authority enacted into law by Congress.  Dkt. No. 3-2 at ECF pp. 63–64.

Defendants argue that Plaintiff's claims under the APA, and for unconstitutional delegation and separation of powers that seek injunctive relief are moot because the Mask Mandate has expired and is no longer in force.  Dkt. No. 384 at 9.

Article III of the United States Constitution requires an actual case or controversy to exist at all stages of federal court review to support a court's subject matter jurisdiction.  *See Preiser v. Hewkirk*, 422 U.S. 395, 401 (1975).  The mootness doctrine is derived from the constitutional requirement that the power of federal courts depends upon the existence of live cases or controversies.  *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam); *see also In re*

*Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999) (per curiam). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). When "the parties lack a legally cognizable interest in the outcome, a case is moot and the federal court is divested of jurisdiction over it." *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001) (cleaned up). "[A] case that is 'live' at the outset may become moot 'when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.'" *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (internal citations omitted).

There are two well-recognized exceptions to the mootness doctrine. The "capable of repetition, yet evading review" exception to the mootness doctrine applies only in "exceptional situations" "where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Ramos v. N.Y.C. Dep't of Educ.*, 447 F. Supp. 3d 153, 158 (S.D.N.Y. 2020) (quoting *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of Watervliet*, 260 F.3d 114 (2d Cir. 2001)). To satisfy this exception, a plaintiff must show that they are "reasonably likely" to find themselves in a dispute raising the same issues; "mere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or demonstrated probability of recurrence." *Id.* (quoting *Dennin v. Conn. Interscholastic Athletic Conference, Inc.*, 94 F.3d 96, 101 (2d Cir. 1996)). As the Supreme Court has stated: "the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). It is the plaintiff's burden to

show that a lawsuit is not moot because the case is capable of repetition yet evades review.  *See Video Tutorial Servs., Inc. v. MCI Telecomms. Corp.*, 79 F.3d 3, 6 (2d Cir. 1996) (noting that plaintiff bears the burden of demonstrating that a controversy is capable of repetition yet evading review); *Ramos*, 447 F. Supp. 3d at 158.

The second exception to the mootness doctrine is the voluntary cessation doctrine, which provides that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *MHANY Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).  It is premised on the principle that "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *Id*. (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001)). "Were it otherwise, a crafty party could always evade review of a questionable policy, undermine the authority of the courts, and impose impossible burdens on the party who would challenge it by altering the policy the moment a lawsuit is filed only to reinstate it the moment it is dismissed." *Saba v. Cuomo*, 535 F. Supp. 3d 282, 297 (S.D.N.Y. 2021).  "To overcome the voluntary cessation exception, [defendants] must show that '(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  *Lallave v. Martinez*, 609 F. Supp. 3d 164, 177 (quoting *MHANY Mgmt.*, 819 F.3d at 603).  "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Holland*, 758 F.3d at 223–24 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)); *see Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016) (noting that a defendant

bears a "heavy burden of persuasion" with respect to the two prongs of the voluntary cessation doctrine (quoting *U. S. v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968))); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

In *Health Freedom Defense Fund v. President of the United States*, 71 F.4th 888 (11th Cir. 2023), the Eleventh Circuit considered the precise question presented here, *i.e.*, whether a challenge to the Mask Mandate had become moot in light of the Mask Mandate's expiration and answered that question "Yes." The Court finds the Eleventh Circuit's reasoning compelling. The Eleventh Circuit held that an APA challenge to the Mask Mandate had become moot because the Mask Mandate had expired on its own terms and "there [wa]s no longer any Mandate for [the court] to set aside or uphold." *Id.* at 892. It also held that none of the exceptions to the mootness doctrine applied. The voluntary cessation doctrine did not apply because there was "no reasonable basis to expect the Mandate will be reinstated if this case is rendered moot" and "nothing in the text of the Mandate suggests it can be revived after its expiration, and there is not a grain of evidence that the CDC has any plans to promulgate an identical mandate." *Id.* The exception for disputes that are capable of repetition yet evading review did not apply because there was no "reasonable, non-speculative expectation that the alleged unlawful action [would] happen again." *Id.* at 893. The court reasoned:

> Appellees point to the CDC's broad interpretation of the Public Health Services Act of 1944, 58 Stat. 703, § 361(a), as amended, 42 U.S.C. § 264(a) and suggest that the CDC could use this interpretation to promulgate a similar mask mandate to fight against more ubiquitous diseases like the common cold and influenza. Yet, conjectures of future harms like these do not establish a reasonable expectation that a mask mandate from the CDC will reissue. Indeed, since the Public Health Services Act's enactment in 1944, no government authority has ever invoked the law to require masking for common respiratory diseases. We have no basis to expect that 79-year trend to change. Moreover, while we think a legal degree confers many advantages, we do not believe it equips us to accurately predict if or when another global respiratory pandemic will infect our shared world.

*Id.* The court added:

12

> [T]he COVID-19 pandemic of 2020 is often compared to the influenza pandemic
> of 1918.  Given the primary comparator occurred over a century earlier, we simply
> have no reasonable basis to conclude the same parties will be involved in a future
> controversy if a similar situation ever does arise again.  Indeed, putting aside the
> unanswerable question of where Appellees might be in this hypothetical situation,
> there is no guarantee that the president at that time would order agencies to issue a
> similar mask mandate or that such a mandate would come from the CDC as opposed
> to another agency.

*Id*. at 893–94.

Plaintiff offers no convincing reason why the Court should not follow the decision of the

Eleventh Circuit in *Health Freedom Defense Fund*.  He relies on an earlier unpublished decision

by the D.C. Circuit in *Wall v. TSA*, 2023 WL 1830810 (D.C. Cir. Feb. 9, 2023) in which he was a

party and in which the Court held that a challenge to a different mask mandate issued by the TSA

was not moot even though the agency had allowed the security directive to expire after a decision

by the United States District Court for the Middle District of Florida had stricken down the Mask

Mandate.  *See* Dkt. No. 385 at 4–5.  But *Wall* was decided in the midst of the pandemic and

months before the HHS Secretary allowed the declaration of a public health emergency to expire.

The D.C. Circuit observed that the Government was actively seeking to overturn the decision of

the Middle District of Florida and that the TSA had itself represented that there was more than a

non-speculative chance that the agency would invoke the same authorities to readopt another

masking mandate in the future.  *Id*. at *2.  It thus concluded that "[b]ecause there is a more-than-

speculative chance that the challenged conduct will recur, these cases are not moot."  *Id*.  This

case is in an entirely different posture.  The President of the United States has signed a joint

resolution of Congress that terminated the national emergency, Act of Apr. 10, 2023, Pub. L. No.

118-3, 137 Stat. 6 (2023), the declaration of a public health emergency has expired, the appeal

that the Government was prosecuting at the time of *Wall* has been determined to be moot, and

there is no indication whatsoever that the public health emergency will recur or that, if it does, the CDC will adopt a Mask Mandate.

Plaintiff also relies on the passage and signature into law of the FAA Reauthorization Act of 2024, also known as the Securing Growth and Robust Leadership in American Aviation Act (HR 3935). Dkt. No. 385 at 6. That law contains a specific provision that prohibits the FAA from "implement[ing] or enforc[ing] any requirement that . . . passengers of air carriers be vaccinated against COVID-19 or wear a mask as a result of a COVID-19 related public health measure." Pub. L. 118-63, 138 Stat. 1025, 1417 (2024). Leaving aside that this case involves the CDC and not the FAA, the passage of the FAA Reauthorization Act of 2024 demonstrates the wisdom of the mootness doctrine in leaving to the political branches, and not to the courts, the resolution of difficult social and political issues that represent only a hypothetical controversy at the time they are presented.

Finally, Plaintiff argues that he seeks not only injunctive relief but also declaratory relief and nominal damages. Dkt. No. 385 at 5–6. Those arguments are not availing. "The Declaratory Judgment Act alone does not provide a court with jurisdiction." *California v. Texas*, 593 U.S. at 672 (internal citation omitted). Plaintiff's challenges to the Executive Order and Mask Mandate are moot because those orders are no longer in effect and there is no reasonable expectation that they, or any orders like them, will be revived by the President or the CDC. It thus does not matter that Plaintiff seeks declaratory as well as injunctive relief. A declaration that the Mask Mandate was adopted in violation of the APA or that the Executive Order violated Article 1 of the Constitution can no more give Plaintiff relief at this stage than an injunction based on the same legal conclusions. *See Nat'l Res. Def. Council v. Zinke*, 2020 WL 5766323, at *10 (S.D.N.Y. Sept. 28, 2020) ("'if a case is moot, a request for declaratory judgment will not

resuscitate the lawsuit, unless an exception to the mootness doctrine applies'") (quoting *Center for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 226–27 (D.D.C. 2017)). And, as to damages, the APA's waiver of sovereign immunity does not extend to money damages. *See Cnty. of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 143 (2d Cir. 2010); *see also Ercole v. LaHood*, 2010 WL 1286317, at *9 (E.D.N.Y. Mar. 30, 2010) ("[p]rinciples of sovereign immunity . . . prevent plaintiffs from seeking money damages under the APA") (citing *Adeleke v. United States*, 355 F.3d 144, 152 n. 7 (2d Cir.2008)); *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999). Thus, Counts 1 through 6 are dismissed as moot.

## II.    Plaintiff's Tort Claims Based on the CDC Order

Plaintiff alleges a series of torts by "all defendants," Compl. ¶¶ 1230, 1238, 1245, 1287, 1298, including intentional and/or unintentional tort, *id.* ¶¶ 1228–1234; negligence, *id.* ¶¶ 1235–1241; infliction of emotional distress, *id.* ¶¶ 1242–1248; promissory estoppel, *id.* ¶¶ 1271–1277; injurious falsehoods, *id.* ¶¶ 1285–1295; invasion of privacy, *id.* ¶¶ 1296–1309; and fraudulent misrepresentation, *id.* ¶¶ 1319–1328. In addition, Plaintiff alleges a claim for tortious interference against HHS, CDC, NIH, "and the attorneys." *Id.* ¶¶ 1278-1284. *See also* Dkt. No. 12-1 ("Supp. Compl.") ¶ 66 (asserting that causes of action seven through 29 and 32 through 37 apply to the additional defendants "either on their direct actions, or through aiding and abetting, and facilitating the discrimination").

Plaintiff's complaint is founded on regulatory actions taken by the Federal Defendants. Plaintiff alleges that HHS, CDC, and NIH all had a duty to provide "honest and true guidance regarding health issues" but breached that duty by "saying that masks were very useful, necessary, and the best way to protect yourselves from getting and transmitting Covid19." Compl. ¶ 786. Fauci of the NIH and Redfield of the CDC "publicly lied to the American people," by saying that masks were useful. *Id.* ¶ 787. Plaintiff also alleges that the DOT and

Secretary Buttigieg, the TSA and its administrator, David Pekoske were the "driving force behind the discrimination" suffered by Plaintiff through the directives they issued, Supp. Compl. ¶ 20, and that they and the United States Department of Justice refused to enforce the law and "refused to help," *id*. ¶ 33.  Plaintiff claims that "[t]he TSA, Pekoske, and the DOT put out directives telling the airlines that they can violate the ACAA."  *Id*. ¶ 22.  The TSA issued four directives effective February 1, 2021, requiring aircraft, transit buses, intercity buses, intercity rail, commuter rail, subway and other heavy rail, light trail, tram, streetcar, rideshare car, ferry, and other commercial conveyance and transportation hub operators to 1) mandate all passengers to wear masks at all times unless outdoors; and 2) report noncompliance by passengers to TSA." *Id*. ¶ 24.  The TSA's directives were used by the airlines to say that the TSA authorized them to create "all types of conditions to receive an exemption." *Id*. ¶ 27.  According to Plaintiff, the DOT issued a directive on February 5, 2021 that, although it ostensibly required the airlines to comply with the law, "itself seems to entitle and encourage the airlines to create multiple procedures and requirements, that airlines have been designing to complicate the process and thus almost completely ban any person that cannot wear a mask due to a disability from flying on an airplane."  *Id*. ¶ 31.  Plaintiff alleges that the directives "are in direct violation of ACAA laws."  *Id*. ¶ 32.[3]

The Federal Defendants argue that the United States Government should be substituted for the federal agencies and employees named by Plaintiff and that once the substitution is completed, the Court should dismiss Plaintiff's tort claims (other than tortious interference with contract) for lack of subject matter jurisdiction under the discretionary function exception to the

---

[3] The single Federal Defendant alleged to have been involved in an incident with Plaintiff is Bostic.  Supp. Compl. ¶¶ 34–62.

Federal Tort Claims Act ("FTCA").  Dkt. No. 384 at 11.  As to the tortious interference claim, the Federal Defendants argue that the Court lacks subject matter jurisdiction over that claim because the FTCA excludes from its waiver of sovereign immunity "[a]ny claim arising out of . . . . interference with contract rights."  28 U.S.C. § 2680(h).  The Federal Defendants' arguments are well-taken.

"[T]he FTCA 'accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties,' while simultaneously abrogating the Federal Government's respondeat superior liability for some of those acts."  *Aryai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376, 388 (S.D.N.Y. 2012) (quoting *Osborn v. Haley*, 549 U.S. 225, 229 (2007)); *see Carroll v. Trump*, 49 F.4th 759, 765 (2d Cir. 2022).  The FTCA provides, in relevant part, that the federal district courts have "exclusive jurisdiction" over damages claims against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  "The remedy against the United States [provided by the FTCA] . . . is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee."  28 U.S.C. § 2679(b)(1); *see Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991).  "The FTCA's purpose is both to allow recovery by people injured by federal employees or by agents of the Federal Government, and, at the same time, to immunize such employees and agents from liability for negligent or wrongful acts done in the scope of their employment."  *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005).

The Court orders the United States Government substituted for the Federal Defendants on Plaintiff's tort claims.  The FTCA provides that a civil action or proceeding commenced upon a claim or the negligent or wrongful act or omission of an employee of the Government is deemed to be an action against the United States under the FTCA "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose."  28 U.S.C. § 2679(d)(1).  Courts have held, and Plaintiff does not dispute, that a memorandum of law submitted by the United States Attorney can serve as a petition to certify that the named defendants were employees acting within the scope of their employment at the time the claim arose.  *See Logan v. Matveevskii*, 57 F. Supp. 3d 234, 285 (S.D.N.Y. 2014); *see also Davila v. Gutierrez*, 330 F. Supp. 925, 935 (S.D.N.Y. 2018); *Fernandini v. Samuels*, 2017 WL 2544039, at *2 (S.D.N.Y. June 9, 2017).  Here, the United States Attorney for the Southern District of New York has submitted a memorandum stating that it intends the memorandum "to serve as a petition to certify that th[e] defendants were indeed employees acting within the scope of their employment."  Dkt. No. 384 at 11 n.4.  Although Plaintiff disputes that the conduct alleged in the Complaint falls within the discretionary function exception, he does not challenge the adequacy of the Government's certification.  He asks: "If, as the Defendants claim, this case must be against the United States, the Plaintiff asks the Court to approve such a modification/addition."  Dkt. No. 385 at 15.[4]

---

[4] The merits of the Attorney General's certification that the employee sued was acting within the scope of his office or employment are judicially reviewable.  *See De Martinez v. Lamagno*, 515 U.S. 417, 434 (1995); *Carroll*, 49 F.4th at 766.  However, to trigger the Court's *de novo* review, the plaintiff must "allege with particularity facts relevant to the scope-of-employment issue." *McHugh v. Univ. of Vermont*, 966 F.2d 67, 74 (2d Cir. 1992), *abrogated in part on other grounds by Osborn v. Haley*, 549 U.S. 225 (2007); *Bello v. United States*, 93 F. App'x 288, 289–90 (2d Cir. 2004); *Cepeda v. United States*, 2020 WL 4194632, at *2 (S.D.N.Y. July 21, 2020); *Aryai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376, 388 (S.D.N.Y. 2012).  "The scope of employment inquiry is governed by the *respondeat superior* law of the state in which the alleged

The Federal Defendants argue that Plaintiff's state-law tort claims based on the CDC Order must be dismissed under the discretionary function exception to the FTCA's waiver of sovereign immunity. By its terms, "the exception covers '[n]ot only agencies of government . . . but all employees exercising discretion,'" *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984) (quoting *Dalehite v. United States*, 346 U.S. 15, 33 (1953)). The statute provides that the Government is not liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The exception "'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (quoting *Varig Airlines*, 467 U.S. at 808). The Second Circuit has described a two-part test, termed the Berkovitz-Gaubert test, as "the framework for evaluating whether particular governmental conduct falls under" the discretionary function exception:

> According to the Berkovitz-Gaubert test, the [discretionary function exception] bars suit only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve "an element of judgment or choice" and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in "considerations of public policy" or susceptible to policy analysis.

---

tort occurred." *Carroll*, 49 F.4th at 772. New York law holds that an employee's tortious acts fall within the scope of his employment if "done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Riviello v. Waldron*, 391 N.E.2d 1278, 1279 (N.Y. 1979); *see Bello*, 93 F. App'x at 290. Plaintiff has not alleged facts that call into question the determination that the government agencies and employees sued here were acting within the scope of their employments.

*Coulthurst v. United States*, 214 F.3d 106, 109–10 (2d Cir. 2000).

"Because plaintiffs bear the initial burden of showing that their claims against the United States fall within the FTCA's limited waiver of sovereign immunity, plaintiffs also bear the initial burden of showing that their claims are not barred by the discretionary function exception." *Cangemi v. United States*, 13 F.4th 115, 130 (2d Cir. 2021); *see also United States v. Gaubert*, 499 U.S. 315, 324–25 (1991) ("For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime"). Plaintiff has alleged neither that "the United States' allegedly tortious act (or failure to act) was inconsistent with a specific mandatory directive"—*i.e.*, a "federal statute, regulation, or policy [that] specifically prescribes a course of action for [the federal government] to follow," nor that "the allegedly tortious judgment or choice in question [wa]s not grounded in considerations of public policy or susceptible to policy analysis," *Cangemi*, 13 F.4th at 130.

Plaintiff has identified no "federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow," *Berkovitz*, 486 U.S. at 536, and that any Federal Defendant violated in this instance. Congress has delegated broad discretionary authority to the Secretary of HHS (and by extension to the CDC) "to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession." 42 U.S.C. § 264(a). Nor can Plaintiff plausibly dispute that the Mask Mandate and directives he challenges were grounded in considerations of public policy. The Mask Mandate and the other directives were grounded on what the relevant agencies believed was necessary to stem the spread of a deadly disease. The

Mask Mandate's objectives included the "[p]reservation of human life," "[m]aintaining a safe and secure operating transportation system," mitigating the spread of COVID-19, and supporting governmental response efforts to COVID-19. CDC Order at 4. The CDC Order described that that there had, at that time, been 99,638,507 confirmed cases of COVID-19 globally, resulting in over 2 million deaths, including over 400,000 deaths in the United States alone and that the virus spread very easily and that according to studies, masks could help prevent people with COVID-19 from spreading the virus. *Id.* at 5–6. The CDC determined that mask-wearing was reasonably necessary to prevent the further introduction, transmission, or spread of COVID-19 into the United States and among the states and territories given that America's transportation systems are essential and requiring masks would aid in re-opening the economy—including so that life-saving medication and medical providers could be carried across the nation and America's children and teachers could get to school and workers to their jobs—while controlling the pandemic. *Id.* at 8.

Count 32 also must be dismissed against the Federal Defendants for a separate reason. That count alleges a claim for tortious interference. Compl. ¶¶ 1278–1284. Plaintiff alleges that "there was a contract and/or understanding where the airlines committed to accommodate disabled people" and that "Defendants, HHS, CDC, NIH, and the attorneys wrongfully interfered in Plaintiff's contracts with the airlines" as described in his claims for breach of contract and promissory estoppel. *Id.* ¶¶ 1280–1281. However, "the FTCA does not waive the Federal Government's immunity with respect to claims for tortious interference." *Aryai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376, 391 (S.D.N.Y. 2012); *see Epstein v. F.C.C.*, 101 F.3d 108 (2d Cir. 1996); *Chen v. United States*, 854 F.2d 622, 628 n.2 (2d Cir. 1988); *Murdock v. Microsoft Corp.*, 2015 WL 5460190, at *4 (S.D.N.Y. Aug. 19, 2015); *Dixon v. United States*,

2014 WL 23427, at *5 (S.D.N.Y. Jan. 2, 2014).  Accordingly, Plaintiff's claim for tortious

interference against the Federal Defendants must be dismissed for lack of subject matter

jurisdiction.[5]

### III.   Claims under State and Local Antidiscrimination Law

In Counts 20 through 26, Plaintiff alleges that "[a]ll the defendants" violated the anti-

discrimination laws of the States of California, New Jersey, and Texas and the City of New York

by discriminating against him in his access to air flights on the basis of his disability or aiding

and abetting discrimination.  Compl. ¶¶ 1151-1227.  Plaintiff's ostensible theory is that the

airlines treated him differently than others who were permitted to fly because, as a result of his

disability, he could not wear a mask, or that the airlines violated the law by failing to make an

accommodation for him.  The role of the Federal Defendants in aiding and abetting the airlines is

not spelled out other than that they promulgated and/or enforced the Mask Mandate.

The Federal Defendants argue that Plaintiff's claims under state and local anti-

discrimination law should be dismissed because, as to the Agency Defendants, the United States

has not waived its sovereign immunity and, as to the Individual Defendants, Plaintiff has failed

to state a claim for relief.  Dkt. No. 384 at ECF p. 22.

"It is axiomatic that the United States may not be sued without its consent and that the

existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206,

212 (1983).  The government consents to be sued only when Congress expresses its intention to

waive the government's sovereign immunity clearly in statutory text.  *United States v. Nordic*

---

[5] Count 36, for fraudulent misrepresentation, also is exempted from the FTCA's waiver of
sovereign immunity and thus the Court lacks subject matter jurisdiction over the claim for that
reason as well.  28 U.S.C. § 2680(h).  *See United States v. Neustadt*, 366 U.S. 696 (1961) (FTCA
exemption applies to both fraudulent and negligent misrepresentation); *Gonzalez v. United
States*, 2014 WL 3738179, at *6 (D. Conn. July 29, 2014).

*Village, Inc.*, 503 U.S. 30, 37 (1994).  The United States, however, has not consented to be sued for violation of state or local anti-discrimination laws.  *See Goode v. United States Dep't of Homeland Sec.*, 815 F. App'x 643, 645 (3d Cir. 2020); *Molz v. Fed. Aviation Admin.*, 2023 WL 2238108, at *4 (D.N.J. Feb. 27, 2023); *Holt v. Shinseki*, 2013 WL 5797382, at *3 (W.D. Pa. Oct. 28, 2013).  Accordingly, the claims against the Agency Defendants are dismissed for lack of subject matter jurisdiction.

The Federal Defendants further argue that Plaintiff has not alleged that any of the Individual Defendants took any challenged action within the states of California, New Jersey, or Texas, as required for liability under the laws of those States.  Dkt. No. 384 at 22–23 (citing *Loving v. Princess Cruise Lines, Ltd.*, 2009 WL 7236419, at *8 (C.D. Cal. Mar. 5, 2009) (California law); *Beam v. Johnson & Johnson*, 2023 WL 5207832, at *4 (D.N.J. Aug. 14, 2023) (New Jersey law); *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 187 (Tex. 1968) (Texas law).  They also argue that, with the exception of Defendant Bostic, none of the Individual Defendants is alleged to have been involved in applying the Mask Mandate to Plaintiff or "actually participated in the conduct giving rise to the discrimination claim," *Britt v. Merrill Lynch & Co., Inc.*, 2011 WL 4000992, at *11 (S.D.N.Y. Aug. 26, 2011) (quoting *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004); *see Castillo v. Isakov*, 2023 WL 6664552, at *7 (S.D.N.Y. Oct. 12, 2023), so as to establish liability under the New York City Human Rights Law ("NYCHRL").  Dkt. No. 384 at 23.  Plaintiff's only response is to say "[t]he Complaint speaks for itself and was pretty clear" and that "Bostic certainly personally discriminated against Plaintiff."  Dkt. No. 385 at 16.  But the Complaint does not allege any action by any Individual Defendant in California, Texas or New Jersey, or any participation by any Individual Defendant

in the administration of the Mask Mandate to Plaintiff in New York (other than Bostic).  Thus, the claims against those Individual Defendants must be dismissed.

As to Erinn Bostic and the NYCHRL claim, Plaintiff must allege that "unlawful discrimination was one of the motivating factors" for the unequal treatment.  *See Cardwell v. Davis Polk & Wardwell LLP*, 2020 WL 6274826, at *19 (S.D.N.Y. Oct. 24, 2020) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).  Even under the liberal standards of the NYCHRL, which is broader than corresponding federal and state statutes, a plaintiff must allege that they were treated less well at least in part because of a protected characteristic.  *Id*.  The NYCHRL is not a "general civility code."  *Williams v. N.Y.C. Housing Auth.*, 872 N.Y.S. 2d 27, 40 (1st Dep't 2009).  Nor does it bar conduct that amounts to "petty slights and trivial inconveniences."  *Id*. at 80; *see also Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 580 ("generally uncivilized behavior" or "generalized hostility" not actionable under the NYCHRL).  Further, to state a claim under the NYCHRL, a Plaintiff must show some evidence from which discrimination can be inferred.  *Mohamed v. NYU*, 2015 WL 3387218, at *27 (S.D.N.Y. May 21, 2015) *report and recommendation adopted* 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015).

Plaintiff has not stated a claim under the NYCHRL.  Plaintiff alleges that Bostic was "obnoxious, unaccommodating, and downright rude," "yelled" at Plaintiff, and that she required an Air France staff member to escort Plaintiff through security.  Supp. Compl. ¶ 48, 57, 58.  He alleges that his interactions with Bostic took place within an approximately 30-minute time frame.  *id.* ¶¶ 37, 49.  Even under the liberal standards of the NYCHRL, this conduct does not amount to discrimination.  The conduct and its effects were trivial—Plaintiff, although he had to go to the Air France desk and be escorted, indeed proceeded through security 30 minutes after

arriving at the airport (and part of the wait was for the arrival of a wheelchair that Plaintiff had requested). *Id*. This is nothing more than a small inconvenience. And being "yelled at" is akin to a petty slight that is not sufficient to state a claim under the NYCHRL. Indeed, being yelled at by someone from the TSA is the type of minor annoyance that nearly all air travelers experience on a regular basis. Further, there are no factual allegations that plausibly give rise to an inference that Bostic had any discriminatory intent. Rather, Plaintiff's allegations indicate that Bostic was motivated by what she viewed as her role in protecting the public at the airport from COVID-19. *Id.* ¶ 44, 50. And, by Plaintiff's own allegations, Bostic was yelling at other people besides him and those people did not have disabilities. *Id*. ¶ 48 ("Bostic yelled at the Air France staff.").

Accordingly, the State and New York City anti-discrimination claims against the Individual Defendants are dismissed for failure to state a claim for relief.

## IV.    Tort Claims Based on the Conduct of Defendant Bostic

Plaintiff alleges that defendant Erinn Bostic was the Deputy Assistant Federal Security Director at the Department of Homeland Security. *Id.* ¶ 8. In that capacity, she was in charge of the entire TSA security area at Terminal One at John F. Kennedy International Airport in the Queens, New York. *Id*. On or about March 14, 2022, Bostic was "obnoxious, unaccommodating, and downright rude" when Plaintiff attempted to go through security at JFK airport to take an Air France flight to India. *Id*. ¶¶ 35, 58. Notwithstanding that Plaintiff was approved to fly without a mask and that Plaintiff presented a doctor's letter to her and explained his medical disability, Bostic was "very rude" to Plaintiff and initially refused to allow him to pass through security without wearing a mask. *Id*. ¶¶ 36, 40–42. Bostic told Plaintiff that his letter was old and not valid and that he would have to return with an updated letter. *Id*. ¶ 56. Bostic then escorted Plaintiff back to the Air France desk where she first tried to convince the

Air France agent that Plaintiff should not be allowed to fly and then told the agent that they needed to send an airline escort with him. *Id.* ¶¶ 44–45, 48. About half an hour after Plaintiff first arrived in the TSA security area, he was permitted to go through security in a wheelchair and with an escort from the airline. *Id.* ¶¶ 37, 49, 59. Plaintiff complains that other persons who did not have disabilities were not subject to the same treatment to which he was subject. *Id.* ¶¶ 59-60. Plaintiff alleges that Bostic is liable on causes of action seven through nine, 23 to 25, 27 to 29, 36, and 37. *Id.* ¶ 67.

The Federal Defendants argue that Bostic's conduct does not constitute a tort under the laws of negligence, intentional infliction of emotional distress, or fraudulent misrepresentation and is not a "intentional/unintentional" tort as pleaded by Plaintiff. Dkt. No. 384 at 14. Plaintiff responds that Bostic "publicly embarrassed me for a period of time, and paraded me across the airport," causing him "significant anxiety and emotional distress and trauma." Dkt. No. 385 at 15. Plaintiff has not stated a claim against the United States based on Bostic's behavior.

## A.    Negligence

The FTCA provides that the United States shall be liable with respect to tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C § 2674. "To establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon by Solomon v. City of New York*, 489 N.E.2d 1294, 1294 (N.Y. 1985); *see also* Dkt. No. 346 at 92–93. Plaintiff's claim against the Government based on Bostic's alleged negligence fails at the threshold. Plaintiff alleges that Bostic "had a duty to treat Plaintiff with decency, to help him circumvent a policy that would cause him the inability to travel and/or the suffering due to his disability," Compl. ¶ 1237, and that Bostic was "rude" and forced him to wait for an additional thirty minutes and be escorted through security by an Air

France employee because it was her job to protect the other people at the airport. Supp. Compl. ¶¶ 40–60. Whether Bostic, as a federal employee entrusted with the protection of the public at large, owed a duty to Plaintiff individually is a matter of law that a court can resolve. *See Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 356, 367 (S.D.N.Y. 2008); *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (citing *Waters v. N. Y. C. Hous. Auth.*, 505 N.E. 2d 922, 923 (N.Y. 1987).

Plaintiff has not established that Bostic owed him individually any duty. There is no particular relationship between Bostic and Plaintiff that would indicate she owed him a duty. *Cf. Landon v. Kroll Laboratory Specialists, Inc.*, 934 N.Y.S. 2d 183 (2d Dep't 2011) (describing that courts "limit the universe of permissible plaintiffs so as not to impose a duty of reasonable care enforceable by any member of an indeterminate class of persons, present and prospective, known and unknown, directly or indirectly injured by any negligence"). There is generally no freestanding affirmative right to governmental aid. *See DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 196. Moreover, Plaintiff's claim that Bostic owed him a duty to help him "circumvent" the Mask Mandate also fails because under the FTCA, the government is only liable to the extent a private individual would be liable. *See Figueroa v. U.S.*, 739 F. Supp. 2d 138, 141 (E.D.N.Y. 2010). Insofar as Bostic's allegedly negligent conduct was in not appropriately helping Plaintiff navigate his exemption to the Mandate at the airport, there is no private analog and thus no liability under the FTCA. *Id.* (holding that the FTCA barred negligence claim arising from negligent issuance of a passport based on forged documents because there is no private analog); *see also Akutowicz v. United States*, 859 F. 2d 1122 (2d Cir. 1988) (FTCA barred negligence claim based on conduct in connection with loss of plaintiff's citizenship because no private analog); *Dorking Genetics v. U.S.*, 76 F.3d 1261, 1266 (2d Cir.

1996) (no FTCA claim for failing to prohibit export of diseased cattle because there is no recognized duty of a private person to do so).

Nor did Bostic undertake any voluntary duty to help Plaintiff navigate his exemption from the Mask Mandate so as to invoke a Good Samaritan duty. *Dorking*, 76 F.3d at 1267. New York recognizes the Good Samaritan tort of negligence where "one who assumes a duty to act, even though gratuitously, may thereby become subject to the duty of acting carefully." *Id*. But Bostic assumed no such duty to assist Plaintiff. She simply performed her job as a TSA supervisor ensuring that the public was safe from the spread of COVID-19. And in fact, Bostic's conduct that allegedly inconvenienced Plaintiff as an individual could also be seen as Bostic performing her job duties with reasonable care so as to protect the public as a whole. Any duties Bostic had as a federal employee would be to the public as a whole, not to Plaintiff as an individual. Further, there is no legally cognizable duty not to be rude or to treat others with "decency." While Bostic's behavior "may have jeopardized the goodwill" of Plaintiff, "it clearly does not rise to the level of a tort" because Bostic did not owe Plaintiff a duty to provide a "stress-free flight environment" or "provide him with a customer service system that would provide him with his relief of choice." *Farash*, 574 F. Supp. 2d at 367–68.

### B.    Intentional Infliction of Emotional Distress

Under New York law, in order to state a claim for intentional infliction of emotional distress, a plaintiff must plead: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *see also* Dkt. No. 346 at 96. "These requirements, especially that of extreme and outrageous conduct, 'are rigorous and difficult to satisfy.'" *Moraes v. White*, 571 F. Supp. 3d 77, 104 (S.D.N.Y. 2021) (quoting *Howell v. N.Y. Post Co.*, 612

N.E.2d 699, 702 (N.Y. 1993)).  The conduct alleged must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985); *see also Chanko v. Am. Broad. Cos. Inc.*, 49 N.E.3d 1171, 1179 (N.Y. 2016); *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983).  Mere rudeness is not enough.  *See Kaye v. Trump*, 873 N.Y.S.2d 5, 6 (1st Dept 2009).

Bostic is alleged to have been in charge of transportation security at John F. Kennedy International Airport.  Supp. Compl. ¶ 8.  Taking Plaintiff's allegations as true and construing them liberally and broadly, Bostic delayed Plaintiff by half an hour in going through security to make sure that he was authorized to travel without a mask by Air France.  The Court assumes, as it must, that Bostic was "obnoxious, unaccommodating, and downright rude," *id.* ¶ 58, in doing so.  The conduct, though regrettable, cannot be said to go beyond all bounds of decency or to be intolerable to a civilized society.  *See, e.g.*, *Stephens v. Shuttle Assocs., L.L.C.*, 547 F. Supp. 2d 269, 274 (S.D.N.Y. Apr. 10, 2008) (plaintiff did not state claim for IIED where bus driver asked her to power off her wheelchair without explaining why and delayed her transportation for forty minutes); *Stabuer v. N. Y. C. Transit Auth.*, 781 N.Y.S. 2d 26, 27 (plaintiff did not state claim for IIED where bus driver was rude and frequently used profanity).

### C.    Fraudulent Misrepresentation

Additionally, Plaintiff has not stated a claim for fraudulent misrepresentation based on Bostic's conduct.  In Count 36, Plaintiff argues that the Defendants "falsely represented on their websites, in e-mails to passengers, signage at airports, etc. that 'federal law' requires airline passengers to wear face masks."  Compl. ¶ 1322.  He also claims that Defendants did not tell anyone "of the dozens of health risks of covering our sources of oxygen or that the scientific consensus is that masks are totally worthless in reducing COVID-19 spread."  *Id.* ¶ 1323.

Federal Defendants argue that Plaintiff has not alleged any specific statement made by Bostic that she knew to be false or made with reckless disregard to its truth, nor has Plaintiff alleged that he relied on any such statement by Bostic. Dkt. No. 384 at ECF p. 24.

Fraud requires at least 1) a false statement of material or important fact; 2) made with scienter or intent; 3) reliance; and 4) injury. *See Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892, 898 (N.Y. 1999). Plaintiff has not stated a claim for fraud based on Bostic's conduct. Plaintiff does not allege what statement by Bostic was made while Bostic knew it was false or recklessly disregarded the truth nor does Plaintiff plead reliance on such a statement by Bostic. Indeed, to the extent Plaintiff takes issue with Bostic's alleged statements that he was required to wear a mask, Plaintiff clearly did not rely on that since as he describes, he did not in fact wear a mask and within approximately thirty minutes of arriving at the airport he in fact proceeded through security with an Air France representative without a mask. Supp. Compl. ¶¶ 40–60. As the Court described in its prior Opinion and Order, Plaintiff has also not stated a claim for fraudulent concealment because such a claim requires that all elements of fraud are met in addition to other elements. Dkt. No. 346 at 119–20. Because Plaintiff has not stated a claim for fraud, neither has he stated a claim for fraudulent concealment.

### D.    Intentional / Unintentional Tort

Finally, Plaintiff's claim for "[i]ntentional and/or unintentional Tort" is dismissed for the same reasons described in Court's prior opinion. Dkt. No. 346. As this Court previously described, the only wrong that Plaintiff alleges in connection with this Count is that Defendants "caused torts against Plaintiff intentionally by not allowing him to travel and by mistreating him[.]" Compl. ¶ 1230. Thus this claim "does nothing more than what the Court would do on its own initiative with a pro se litigant—construe the Complaint to raise the strongest claims that it supports." Dkt. No. 346 at 90 n.41. In his opposition to the Federal Defendants' motion to

dismiss, Plaintiff wrote that Bostic "publicly embarrassed [him] for a period of time, and paraded [him] across the airport," which caused "significant anxiety and emotional distress and trauma." Dkt. No. 385 at 15.  As already described, the conduct alleged in the Complaint fails to state a tort claim based on Bostic's conduct.

**CONCLUSION**

For the foregoing reasons, the motions to dismiss are GRANTED.  The Clerk of Court is respectfully directed to close Dkt. Nos. 306 and 383.  Because the Court has dismissed all of the Defendants, the Clerk of Court also is directed to issue judgment and to close this case.

SO ORDERED.

Dated: August 16, 2024
       New York, New York                                      _____
                                                                      LEWIS J. LIMAN
                                                               United States District Judge